# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COMMON CAUSE, *et al.*,

        Plaintiffs,

vs.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

        Defendants.

Case No.   1:26-cv-01352-SLS

**DECLARATION OF JOHN B. HILL**

I, John B. Hill, declare as follows:

1.     I am Senior Litigation Counsel at Citizens for Responsibility and Ethics in Washington ("CREW") and counsel for Plaintiffs in the above-captioned action.

2.     In a February 2, 2026, interview on the Dan Bongino Show, President Trump said "[t]he Republicans should say we want to take over, we should take over the voting, and at least many, 15 places the Republicans ought to nationalize the voting." A true and correct video of that interview is available here: https://vimeo.com/1161365870, at 14:24.

3.     In a February 3, 2026, press conference, President Trump was asked "Mr. President, what exactly did you mean when you said that you should nationalize elections?" President Trump responded "I want to see elections be honest. And if a state can't run an election, I think the people behind me should do something about it because, you know, if you think about it, a state is an agent for the federal government in elections. I don't know why the federal government doesn't do them anyway." A true and correct video of that press conference is available here: https://www.youtube.com/watch?v=xcEw3TCktIw.

4.      A true and correct copy of the following article, Erica L. Green, Michael Gold & Robert Jimison, *Trump Repeats Call to 'Nationalize' Elections, as White House Walks It Back*, N.Y. Times (Feb. 3, 2026), is available here

https://www.nytimes.com/2026/02/03/us/politics/trump-save-act-elections.html and attached hereto as Exhibit 1.

5.      A true and correct copy of an August 18, 2025, Truth Social post from the account @realDonaldTrump is available here

https://truthsocial.com/@realDonaldTrump/posts/115049485680941254 and attached hereto as Exhibit 2.

6.      A true and correct copy of Executive Order No. 14399, Ensuring Citizenship Verification and Integrity in Federal Elections, 91 Fed. Reg. 17125 (Mar. 31, 2026), is available here https://www.govinfo.gov/content/pkg/FR-2026-04-03/pdf/2026-06601.pdf and attached hereto as Exhibit 3.

7.      A true and correct copy of Executive Order No. 14248, Preserving and Protecting the Integrity of American Elections, 90 Fed. Reg. 14005 (Mar. 25, 2025), is available here https://www.govinfo.gov/content/pkg/FR-2025-03-28/pdf/2025-05523.pdf and attached hereto as Exhibit 4.

8.      On April 19, 2026, U.S. Department of Justice ("DOJ") Assistant Attorney General for Civil Rights Harmeet Dhillon appeared on FOX News. A true and correct video of that appearance is available here: https://www.youtube.com/watch?v=3eJVzgDj5TY.

9.      A true and correct copy of the relevant excerpts from a transcript of the March 26, 2026, hearing held in *United States v. Amore*, No. 25-cv-639 (D.R.I.), is attached hereto as Exhibit 5.

2

10.     A true and correct copy of the relevant excerpts from a transcript of the March 19, 2026, hearing held in *United States v. Thomas*, No. 26-cv-00021, ECF No. 86 (D. Conn.), is attached hereto as Exhibit 6.

11.     A true and correct copy of the Declaration of DOJ Acting Chief to the Voting Section within the Civil Rights Division Eric Neff, filed in *United States v. Galvin,* No. 25-cv-13816, ECF No. 70-2 (D. Mass. Feb. 27, 2026) is available here https://storage.courtlistener.com/recap/gov.uscourts.mad.293151/gov.uscourts.mad.293151.70.2.pdf and attached hereto as Exhibit 7.

12.     A true and correct copy of the following article, Abby Vesoulis & Ari Berman, *Your Private Data Is Building Trump's Voter Purge Machine*, Mother Jones (Dec. 5, 2025), https://www.motherjones.com/politics/2025/12/your-private-data-is-building-trumps-voter-purge-machine/ is attached hereto as Exhibit 8.

13.     On March 17, 2026, Assistant Attorney General for Civil Rights at DOJ Harmeet Dhillon appeared on Newsmax. A true and correct video of that appearance is available here: https://www.youtube.com/watch?v=132KPr2_FBk.

14.     A true and correct copy of a February 11, 2026, Letter from Office of Kris Warner, Sec'y of State of West Virginia, to Eric Neff, Acting Chief of the Civil Rights Division Voting Section at DOJ, is available here https://files.constantcontact.com/e949222d701/ed164568-7c31-48e6-a03f-89f082080313.pdf and attached as Exhibit 9.

15.     A true and correct copy of DOJ's System of Records Notice for Central Civil Rights Division Index File and Associated Records, JUSTICE/CRT–001, 68 Fed. Reg. 47610 (August 11, 2003), is available here

https://www.govinfo.gov/content/pkg/FR-2003-08-11/pdf/03-20342.pdf and attached hereto as

Exhibit 10.

16.     A true and correct copy of DOJ's System of Records Notice for Central Civil

Rights Division Index File and Associated Records, JUSTICE/CRT–001, 70 Fed. Reg. 43904

(July 29, 2005), is available here

https://www.govinfo.gov/content/pkg/FR-2005-07-29/pdf/05-14944.pdf and attached hereto as

Exhibit 11.

17.     A true and correct copy of DOJ's System of Records Notice for Central Civil

Rights Division Index File and Associated Records, JUSTICE/CRT–001, 82 Fed. Reg. 24147

(May 25, 2017), is available here

https://www.govinfo.gov/content/pkg/FR-2017-05-25/pdf/2017-10780.pdf and attached hereto as

Exhibit 12.

18.     I serve as counsel for Plaintiffs in *League of Women Voters v. DHS*, No.

25-cv-3501-SLS (D.D.C.). In that case, Defendants Department of Homeland Security and

Social Security Administration produced the following documents as a part of the Administrative

Record, a true and correct copy of which are attached hereto:

- DHS-AR-221-243 - DHS, Privacy Impact Assessment for the Systematic Alien Verification for Entitlements "SAVE" Program, DHS Reference No. DHS/USCIS/PIA-006(d) (Oct. 31, 2025) - attached as Exhibit 13;

- DHS-AR-244-85 - DHS-USCIS-PTA, SAVE Program Optimization Privacy Threshold Analysis (PTA) Final Adjudication (July 17, 2025) - attached as Exhibit 14;

- DHS-AR-286-327 - DHS-USCIS-PTA, SAVE Program Optimization Privacy Threshold Analysis (PTA) Final Adjudication (Sept. 11, 2025) - attached as Exhibit 15;

- DHS-AR-483-90 - USCIS, DHS, Narrative Statement for SORN Update, Submitted to DCPO (Feb. 2025) - attached as Exhibit 16;

- SSA-AR-30-49 - Department of the Treasury, Agreement Between Federal Program Agencies for Intragovernmental Reimbursable, Buy/Sell Activity, SSA-DHS-USCIS

4

(May 15, 2025) - attached as Exhibit 17; and

- SSA-AR-89-108 - Department of the Treasury, Agreement Between Federal Program Agencies for Intragovernmental Reimbursable, Buy/Sell Activity. SSA-DHS-USCIS (Aug. 2025) - attached as Exhibit 18.

19.    A true and correct copy of a July 13, 2023, letter from the Social Security Administration Office of General Counsel to Fair Elections Center is available here, https://fairelectionscenter.org/wp-content/uploads/2025/07/SSA-Touhy-Decision-letter.July-13-2023-signed.pdf and attached hereto as Exhibit 19.

20.    A true and correct copy of the December 18, 2006, *Congressional Response Report: Accuracy of the Social Security Administration's Numident File*, No. A-08-06-26100, from the Social Security Administration's Office of the Inspector General, is available here, https://oig-files.ssa.gov/audits/full/A-08-06-26100_0.pdf and attached hereto as Exhibit 20.

21.    On November 4, 2025, CREW submitted a Freedom of Information Act ("FOIA") request to the U.S. Department of Justice's Civil Rights Division (the "FOIA Request"). CREW requested the following categories of records beginning on January 20, 2025:

- All formal or information data sharing agreements between DOJ and any state or election official providing access to personally identifiable information ("PII);

- All records relating to DOJ's use of the Department of Homeland Security's Systematic Alien Verification for Entitlements ("SAVE") system for purposes of verifying the citizenship of voters or voter registrants in any state; and

- Agency records sufficient to show:

  - All formal or informal policies, determinations or conclusions (including underlying memoranda) concerning the scope of DOJ's use of the PII it seeks from election officials. This includes records reflecting any plans for how the agency will compile, aggregate, synthesize, match, link, or otherwise combine data obtained from an election official with any other data; and

  - Privacy or data security safeguards in place for protecting PII shared by election officials.

22.    After the District Court for the District of Columbia entered a preliminary

injunction against DOJ ordering DOJ to expedite processing of the FOIA Request, DOJ

produced, among other records, the following record at Bates number CREW v. DOJ - CRT -

1305, a true and correct copy of which is attached hereto as Exhibit 21.

I declare under penalty of perjury as prescribed in 28 U.S.C. § 1746 that the foregoing is

true and correct.

Executed on May __18__ , 2026, in Pennsylvania.

John B. Hill

6

# Exhibit 1

Case 1:26-cv-01352-SLS Document 29-2 Filed 05/19/26 Page 9 of 287

# *Trump Repeats Call to 'Nationalize' Elections, as White House Walks It Back*

President Trump's extraordinary comments were the latest iteration of his unsubstantiated claims that U.S. elections are rigged as Republicans face potentially big losses this fall.

 ▶ Listen · 7:31 min

  

**By Erica L. Green, Michael Gold and Robert Jimison**
Reporting from Washington

Feb. 3, 2026

President Trump doubled down on his extraordinary call for the Republican Party to "nationalize" voting in the United States, even as the White House tried to walk it back and members of his own party criticized the idea.

Mr. Trump said on Tuesday that he believed the federal government should "get involved" in elections that are riddled with "corruption," reiterating his position that the federal government should usurp state laws by exerting control over local elections.

If states "can't count the votes legally and honestly, then somebody else should take over," he said in the Oval Office, accusing several Democratic-run cities of corruption. "Look at some of the places — that horrible corruption on elections — and the federal government should not allow that," he added. "The federal government should get involved."

Mr. Trump's remarks came hours after the White House tried to walk back his comments from a day earlier that his party should nationalize elections. And they were the latest iteration of his unsubstantiated claims that U.S. elections are rigged, as Republicans face potentially big losses this fall.

During a podcast interview with Dan Bongino, his former deputy F.B.I. director, on Monday, Mr. Trump called for Republican officials to "take over" voting procedures in 15 states, though he did not name them. "The Republicans should say, 'We want to take over,'" he said. "We should take over the voting, the voting in at least many — 15 places. The Republicans ought to nationalize the voting."

Mr. Trump's statement amounted to a remarkable escalation of the president's attempt to exert power over the outcome of future elections. Under the Constitution, American elections are governed primarily by state law, leading to a decentralized process in which voting is administered by county and municipal officials in thousands of precincts across the country.

But Karoline Leavitt, the White House press secretary, said on Tuesday that Mr. Trump had actually been referring to legislation that would require people to prove that they are U.S. citizens when they register to vote.

"What the president was referring to is the SAVE Act, which is a huge, common-sense piece of legislation that Republicans have supported, that President Trump is committed to signing into law during his term," Ms. Leavitt said.

"I don't think any rational person who is being honest with themselves would disagree with the idea of requiring citizens of this country to present an ID before casting a ballot in a federal election, or, frankly, in any election, and that's something the president wants to see happen."

But Mr. Trump never referenced the SAVE Act during the podcast or in his appearance in the Oval Office on Tuesday. And in any case, the SAVE Act does not federalize elections.

Ms. Leavitt said that "the president believes in the United States Constitution," but that he also believed there had been "a lot of fraud and irregularities that have taken place in American elections."

Ms. Leavitt did not identify the 15 states Mr. Trump was referring to on the podcast. She cited only California and New York — two Democratic-led states the president often targets — as examples of places where noncitizens are allowed to vote in their elections, creating a situation she said was "ripe with fraud."

Not long after Ms. Leavitt made her statement, Mr. Trump again spoke about federal control over elections.

"I want to see elections be honest, and if a state can't run an election, I think the people behind me should do something about it," Mr. Trump said in the Oval Office, where Republican lawmakers from both chambers of Congress joined him at the signing of legislation to end the partial government shutdown.

Mr. Trump's comments and an intensifying Republican push in Congress to tighten voting laws — along with an F.B.I. move last week to seize ballots and other voting records from the 2020 election from an election center in Fulton County, Ga., — suggests a broader drive by the president and his allies to sow distrust of American elections ahead of midterm balloting in November.

Mr. Trump himself has repeatedly forecast in recent months that Republicans would lose midterms, after the party was rattled by losing several local races last November, and a Democrat won a special election in Texas last week in a district that Mr. Trump had won by double digits.

Voting by noncitizens happens rarely, and it is already illegal in federal elections. But Mr. Trump and many of his allies repeatedly and baselessly insisted during the 2024 election that noncitizens were flooding to the polls — a campaign of misinformation that has ramped up in recent weeks as the election nears.

The Justice Department, which has been newly politicized under Mr. Trump, is demanding that numerous states, including Minnesota, turn over their full voter rolls as the Trump administration tries to build a national voter file.

So far, members of Congress have rebuffed Mr. Trump's calls to nationalize elections.

"I'm not in favor of federalizing elections," Senator John Thune of South Dakota, the majority leader, told reporters on Tuesday. He said he did support stronger voter ID laws and requiring proof of citizenship at polling places, but when it comes to states having the power to run elections, that was "a constitutional issue."

The SAVE Act would require states to obtain proof of citizenship, such as a passport or a birth certificate, in person from those seeking to register to vote. It would penalize election officials for failing to seek such proof, and it would require states to proactively remove noncitizens from their voter rolls.

The House passed the bill last year, but it stalled in the Senate, where it would need the backing of at least seven Democrats to reach the 60-vote threshold to proceed to a vote.

Conservative Republicans have made a renewed push in the last few weeks to pressure the Senate to take up the bill, with far-right influencers taking to social media to criticize G.O.P. senators for not doing enough to enact the bill.

Elon Musk, a billionaire political donor, has been pushing for the bill on X, the social media platform he owns. And even as the SAVE Act has stalled, lawmakers introduced a renewed bill that would also require voters to present photo identification before voting, another long-sought goal of Republicans.

As the clamor around the bill has grown, it briefly threatened to imperil a deal to fund most of the government. Many right-wing conservatives pushed to attach a version of the SAVE Act to an unrelated spending package, and House Republican leadership needed backing from the White House to sway the holdouts to back down.

Democrats have argued that the bill is unnecessary, and that it would move to penalize officials for a problem that scarcely exists. They have also argued that its requirements were so onerous that they could discourage large swaths of

5/13/26, 3:12 PM
Case 1:26-cv-01352-SLS   Document 29-2   Filed 05/19/26   Page 13 of 287
Trump Repeats Call to 'Nationalize' Elections, as White House Walks It Back - The New York Times

Americans from registering or voting, including women who change their name upon marriage.

"In his first term, Donald Trump pressured and threatened and coerced and incited — all in attempt to rig an election and overturn its result to cling to power," Senator Adam B. Schiff, Democrat of California, said in a statement. "We cannot miss the signs that he is going to try again. Don't take my word for it. Take his."

Reid J. Epstein and Nick Corasaniti contributed reporting.

**Erica L. Green** is a White House correspondent for The Times, covering President Trump and his administration.

**Michael Gold** covers Congress for The Times, with a focus on immigration policy and congressional oversight.

**Robert Jimison** covers Congress for The Times, with a focus on defense issues and foreign policy.

---

A version of this article appears in print on , Section A, Page 14 of the New York edition with the headline: Trump Repeats Call to 'Nationalize' Voting as White House Walks It Back

# Exhibit 2



← Truth Details

9182 replies

**Donald J. Trump** ✓ ⊞
@realDonaldTrump

I am going to lead a movement to get rid of MAIL-IN BALLOTS, and also, while we're at it, Highly "Inaccurate," Very Expensive, and Seriously Controversial VOTING MACHINES, which cost Ten Times more than accurate and sophisticated Watermark Paper, which is faster, and leaves NO DOUBT, at the end of the evening, as to who WON, and who LOST, the Election. We are now the only Country in the World that uses Mail-In Voting. All others gave it up because of the MASSIVE VOTER FRAUD ENCOUNTERED. WE WILL BEGIN THIS EFFORT, WHICH WILL BE STRONGLY OPPOSED BY THE DEMOCRATS BECAUSE THEY CHEAT AT LEVELS NEVER SEEN BEFORE, by signing an EXECUTIVE ORDER to help bring HONESTY to the 2026 Midterm Elections. Remember, the States are merely an "agent" for the Federal Government in counting and tabulating the votes. They must do what the Federal Government, as represented by the President of the United States, tells them, FOR THE GOOD OF OUR COUNTRY, to do. With their HORRIBLE Radical Left policies, like Open Borders, Men Playing in Women's Sports, Transgender and "WOKE" for everyone, and so much more, Democrats are virtually Unelectable without using this completely disproven Mail-In SCAM. ELECTIONS CAN NEVER BE HONEST WITH MAIL IN BALLOTS/VOTING, and everybody, IN PARTICULAR THE DEMOCRATS, KNOWS THIS. I, AND THE REPUBLICAN PARTY, WILL FIGHT LIKE HELL TO BRING HONESTY AND INTEGRITY BACK TO OUR ELECTIONS. THE MAIL-IN BALLOT HOAX, USING VOTING MACHINES THAT ARE A COMPLETE AND TOTAL DISASTER, MUST END, NOW!!! REMEMBER, WITHOUT FAIR AND HONEST ELECTIONS, AND STRONG AND POWERFUL BORDERS, YOU DON'T HAVE EVEN A SEMBLANCE OF A COUNTRY. THANK YOU FOR YOUR ATTENTION TO THIS MATTER!!! DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES OF AMERICA

**19.2k** ReTruths  **68.4k** Likes                    Aug 18, 2025, 7:17 AM

# Exhibit 3

17125

Federal Register

Vol. 91, No. 64

Friday, April 3, 2026

# Presidential Documents

Title 3—

## The President

**Executive Order 14399 of March 31, 2026**

### Ensuring Citizenship Verification and Integrity in Federal Elections

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the Help America Vote Act of 2002 (52 U.S.C. 20901 *et seq.*), the National Voter Registration Act of 1993 (52 U.S.C. 20501 *et seq.*), and the Federal Government's constitutional obligation to guarantee a republican form of Government to every State in the Union, U.S. Const. Art. IV, Sec. 4, it is hereby ordered:

**Section 1.** *Purpose and Policy.* The right to vote in Federal elections is reserved exclusively for citizens of the United States under the Constitution and Federal law. Federal statutes explicitly prohibit non-citizens from registering to vote or voting in Federal elections and impose criminal penalties for violations. (18 U.S.C. 241; 18 U.S.C. 611; 18 U.S.C. 1015; and 52 U.S.C. 20511). The Social Security Administration (SSA) maintains records that, in conjunction with the Department of Homeland Security's (DHS) Systematic Alien Verification for Entitlements (SAVE) program under 42 U.S.C. 1320b–7, can assist in verifying identity and Federal election voter eligibility.

The Federal Government has an unavoidable duty under Article II of the Constitution of the United States to enforce Federal law, which includes preventing violations of Federal criminal law and maintaining public confidence in election outcomes. To enhance election integrity via the United States Mail, additional measures are necessary. Secure ballot envelope identifiers provide a reliable, auditable mechanism to enforce Federal law without unduly burdening or infringing on the rights of eligible voters. Unique ballot envelope identifiers, such as bar codes, enable confirmation that only citizens receive and cast ballots, reducing the risk of fraud and protecting the integrity of Federal elections.

**Sec. 2.** *Establishment and Transmission of State Citizenship Lists and Prioritization of Investigations and Prosecutions Related to Election Fraud.* (a) To the extent feasible and consistent with applicable law, including but not limited to the Privacy Act of 1974 (5 U.S.C. 552a), the Secretary of Homeland Security, through the Director of United States Citizenship and Immigration Services and in coordination with the Commissioner of SSA, shall take appropriate action to compile and transmit to the chief election official of each State a list of individuals confirmed to be United States citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State (State Citizenship List). The State Citizenship List shall be derived from Federal citizenship and naturalization records, SSA records, SAVE data, and other relevant Federal databases. The State Citizenship List shall be updated and transmitted to State election officials no fewer than 60 days before each regularly scheduled Federal election, or promptly upon request by a State in connection with any special Federal election. The Secretary of Homeland Security shall establish procedures to (i) allow individuals to access their individual records as well as to update or correct them in advance of elections; and (ii) enable States to routinely supplement and provide suggested modifications or amendments to the State Citizenship List transmitted thereto. An individual's identification on the State Citizenship List does not indicate that the individual has been properly registered to vote in the State. State and Federal laws and State procedures must still be followed

for an individual to be registered to vote. There may be State laws, not reflected in the State Citizenship List, that preclude voter registration, or the individual may choose not to be registered.

(b) For purposes of this order, an individual is ''eligible to vote in a Federal election'' if the individual is a citizen of the United States, 18 years of age or older by the date of the upcoming election, and otherwise qualified under the laws of his or her State. The Attorney General shall prioritize the investigation and, as appropriate, the prosecution of State and local officials or any others involved in the administration of Federal elections who issue Federal ballots to individuals not eligible to vote in a Federal election, including under 18 U.S.C. 2(a), 18 U.S.C. 241, 18 U.S.C. 371, 18 U.S.C. 611(a), 18 U.S.C. 1001, 18 U.S.C. 1015, 52 U.S.C. 10307, and 52 U.S.C. 20511. Similarly, the Attorney General shall prioritize the investigation and, as appropriate, the prosecution of individuals and public or private entities engaged in, or aiding and abetting, the printing, production, shipment, or distribution of ballots to individuals who are not eligible to vote in a Federal election.

**Sec. 3**. *United States Postal Service Rulemaking on Mail-In and Absentee Ballots.* (a) The unlawful use of the mail in connection with elections is prohibited by various Federal statutes, including 18 U.S.C. 1341, 18 U.S.C. 1708, 52 U.S.C. 10307, and 52 U.S.C. 20511.

(b) To ensure the faithful execution of Federal law, protect the integrity of the mail as a medium for transmitting Federal election ballots and establish uniform standards for mail-in or absentee ballot services implemented through the United States Postal Service (USPS), the Postmaster General is hereby directed to initiate a proposed rulemaking pursuant to 39 U.S.C. 401 and other applicable authority within 60 days of the date of this order. The notice of proposed rulemaking shall include, at minimum, the following:

(i) Proposed provisions specifying that all outbound ballot mail must be mailed in an envelope that:

(A) is marked as Official Election Mail, including through designated markings provided by USPS for this purpose, such as the Official Election Mail logo, as necessary and appropriate;

(B) is automation-compatible and bears a unique Intelligent Mail barcode, or successor USPS technology, that facilitates tracking and is consistent with the other requirements of this section; and

(C) has undergone a mail envelope design review by the USPS to ensure compliance with USPS mailing standards, including barcode placement.

(ii) Proposed provisions specifying that, no fewer than 90 days prior to a Federal election, any State may choose to notify the USPS if it intends to allow for mail-in or absentee ballots to be transmitted by the USPS. As part of that notification, any notifying State should further indicate whether it intends to submit to the USPS, no fewer than 60 days before the election, a list of voters eligible to vote in a Federal election in such State to whom the State intends to provide a mail-in or absentee ballot to be transmitted via the USPS.

(iii) Proposed provisions specifying that the USPS shall not transmit mail-in or absentee ballots from any individual unless those individuals have been enrolled on a State-specific list described in subsection (b)(iv) of this section with the USPS pursuant to this subsection.

(iv) Proposed provisions specifying that the USPS shall provide each State with a list of individuals (Mail-In and Absentee Participation List) who are enrolled with the USPS, pursuant to a process specified in the rulemaking directed by this subsection, for mail-in or absentee ballots provided by such State, along with unique ballot envelope identifiers, such as bar codes, for mail-in or absentee ballots provided to such individuals. The preparation and transmission of each State-specific Mail-In and Absentee Participation List shall comply with the Privacy Act and all applicable use agreements.

**Federal Register** / Vol. 91, No. 64 / Friday, April 3, 2026 / Presidential Documents    **17127**

(v) Proposed procedures enabling each State to routinely supplement and provide suggested modifications or amendments to the State's Mail-In and Absentee Participation List in advance of any Federal election, consistent with applicable State law.

(c) The USPS shall coordinate with the USPS Office of Inspector General and the Department of Justice for investigation of suspected unlawful use of the mail involving Federal election materials.

(d) Any final rule pursuant to this section shall be issued no later than 120 days from the date of this order.

**Sec. 4**. *Implementation.* (a) The Secretary of Homeland Security, the Commissioner of SSA, and the Postmaster General shall coordinate with the Secretary of Commerce in effectuating all relevant aspects of the implementation of this order.

(b) The Attorney General shall enforce compliance with the applicable Federal statutes referenced herein and provide guidance to election officials, including any instrumentalities thereof; contractors; individuals involved in the administration of Federal elections; or public or private entities engaged in the printing, production, shipment, or distribution of ballots.

(c) The Secretary of Homeland Security shall, within 90 days of the date of this order, establish the infrastructure necessary to compile, maintain, and transmit the State Citizenship List described in section 2(a) of this order, and shall designate a point of contact within DHS to receive and process requests from individuals and State election officials regarding the relevant State Citizenship List. The Commissioner of SSA shall provide all necessary citizenship and identity data to the Secretary of Homeland Security in support of this requirement, consistent with applicable law, the Privacy Act, and all applicable use agreements.

**Sec. 5**. *Enforcement.* The Attorney General and the heads of executive departments and agencies (agencies) with relevant authority shall take all lawful steps to deter and address noncompliance with Federal law, including withholding Federal funds from noncompliant States and localities where such withholding is authorized by law. Evidence of violations of existing Federal laws by State or local election officials; States or localities, including any instrumentalities thereof; contractors; individuals involved in the administration of Federal elections; or public or private entities engaged in the printing, production, shipment, or distribution of ballots may be referred to the Department of Justice for consideration of investigation or charges under 18 U.S.C. 2(a), 18 U.S.C. 241, 18 U.S.C. 371, 18 U.S.C. 611(a), 18 U.S.C. 1001, 18 U.S.C. 1015, 52 U.S.C. 10307, and 52 U.S.C. 20511. States and localities should preserve, for a 5-year period, all records and materials—excluding ballots cast—evidencing voter participation in any Federal election (*e.g.,* ballot envelopes, regardless of carrier).

**Sec. 6**. *Severability.* If any provision of this order, or the application of any provision to any agency, person, or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other agencies, persons, or circumstances shall not be affected thereby.

**Sec. 7**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

**17128**    **Federal Register** / Vol. 91, No. 64 / Friday, April 3, 2026 / Presidential Documents

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*March 31, 2026.*

[FR Doc. 2026–06601
Filed 4–2–26; 11:15 am]
Billing code 3395–F4–P

# Exhibit 4

# Presidential Documents

Executive Order 14248 of March 25, 2025

## Preserving and Protecting the Integrity of American Elections

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

**Section 1.** *Purpose and Policy.* Despite pioneering self-government, the United States now fails to enforce basic and necessary election protections employed by modern, developed nations, as well as those still developing. India and Brazil, for example, are tying voter identification to a biometric database, while the United States largely relies on self-attestation for citizenship. In tabulating votes, Germany and Canada require use of paper ballots, counted in public by local officials, which substantially reduces the number of disputes as compared to the American patchwork of voting methods that can lead to basic chain-of-custody problems. Further, while countries like Denmark and Sweden sensibly limit mail-in voting to those unable to vote in person and do not count late-arriving votes regardless of the date of postmark, many American elections now feature mass voting by mail, with many officials accepting ballots without postmarks or those received well after Election Day.

Free, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic. The right of American citizens to have their votes properly counted and tabulated, without illegal dilution, is vital to determining the rightful winner of an election.

Under the Constitution, State governments must safeguard American elections in compliance with Federal laws that protect Americans' voting rights and guard against dilution by illegal voting, discrimination, fraud, and other forms of malfeasance and error. Yet the United States has not adequately enforced Federal election requirements that, for example, prohibit States from counting ballots received after Election Day or prohibit non-citizens from registering to vote.

Federal law establishes a uniform Election Day across the Nation for Federal elections, 2 U.S.C. 7 and 3 U.S.C. 1. It is the policy of my Administration to enforce those statutes and require that votes be cast and received by the election date established in law. As the United States Court of Appeals for the Fifth Circuit recently held in *Republican National Committee* v. *Wetzel* (2024), those statutes set "the day by which ballots must be both cast by voters and received by state officials." Yet numerous States fail to comply with those laws by counting ballots received after Election Day. This is like allowing persons who arrive 3 days after Election Day, perhaps after a winner has been declared, to vote in person at a former voting precinct, which would be absurd. Several Federal laws, including 18 U.S.C. 1015 and 611, prohibit foreign nationals from registering to vote or voting in Federal elections. Yet States fail adequately to vet voters' citizenship, and, in recent years, the Department of Justice has failed to prioritize and devote sufficient resources for enforcement of these provisions. Even worse, the prior administration actively prevented States from removing aliens from their voter lists.

Additionally, Federal laws, such as the National Voter Registration Act (Pub. L. 103–31) and the Help America Vote Act (Pub. L. 107–252), require States to maintain an accurate and current Statewide list of every legally registered voter in the State. And the Department of Homeland Security is required to share database information with States upon request so they

**14006**    **Federal Register** / Vol. 90, No. 59 / Friday, March 28, 2025 / Presidential Documents

can fulfill this duty. See 8 U.S.C. 1373(c). Maintaining accurate voter registration lists is a fundamental requirement in protecting voters from having their ballots voided or diluted by fraudulent votes.

Federal law, 52 U.S.C. 30121, prohibits foreign nationals from participating in Federal, State, or local elections by making any contributions or expenditures. But foreign nationals and non-governmental organizations have taken advantage of loopholes in the law's interpretation, spending millions of dollars through conduit contributions and ballot-initiative-related expenditures. This type of foreign interference in our election process undermines the franchise and the right of American citizens to govern their Republic.

Above all, elections must be honest and worthy of the public trust. That requires voting methods that produce a voter-verifiable paper record allowing voters to efficiently check their votes to protect against fraud or mistake. Election-integrity standards must be modified accordingly.

It is the policy of my Administration to enforce Federal law and to protect the integrity of our election process.

**Sec. 2**. *Enforcing the Citizenship Requirement for Federal Elections.* To enforce the Federal prohibition on foreign nationals voting in Federal elections:

(a)(i) Within 30 days of the date of this order, the Election Assistance Commission shall take appropriate action to require, in its national mail voter registration form issued under 52 U.S.C. 20508:

(A) documentary proof of United States citizenship, consistent with 52 U.S.C. 20508(b)(3); and

(B) a State or local official to record on the form the type of document that the applicant presented as documentary proof of United States citizenship, including the date of the document's issuance, the date of the document's expiration (if any), the office that issued the document, and any unique identification number associated with the document as required by the criteria in 52 U.S.C. 21083(a)(5)(A), while taking appropriate measures to ensure information security.

(ii) For purposes of subsection (a) of this section, ''documentary proof of United States citizenship'' shall include a copy of:

(A) a United States passport;

(B) an identification document compliant with the requirements of the REAL ID Act of 2005 (Pub. L. 109–13, Div. B) that indicates the applicant is a citizen of the United States;

(C) an official military identification card that indicates the applicant is a citizen of the United States; or

(D) a valid Federal or State government-issued photo identification if such identification indicates that the applicant is a United States citizen or if such identification is otherwise accompanied by proof of United States citizenship.

(b) To identify unqualified voters registered in the States:

(i) the Secretary of Homeland Security shall, consistent with applicable law, ensure that State and local officials have, without the requirement of the payment of a fee, access to appropriate systems for verifying the citizenship or immigration status of individuals registering to vote or who are already registered;

(ii) the Secretary of State shall take all lawful and appropriate action to make available information from relevant databases to State and local election officials engaged in verifying the citizenship of individuals registering to vote or who are already registered; and

(iii) the Department of Homeland Security, in coordination with the DOGE Administrator, shall review each State's publicly available voter registration list and available records concerning voter list maintenance activities as

required by 52 U.S.C. 20507, alongside Federal immigration databases and State records requested, including through subpoena where necessary and authorized by law, for consistency with Federal requirements.

(c) Within 90 days of the date of this order, the Secretary of Homeland Security shall, consistent with applicable law, provide to the Attorney General complete information on all foreign nationals who have indicated on any immigration form that they have registered or voted in a Federal, State, or local election, and shall also take all appropriate action to submit to relevant State or local election officials such information.

(d) The head of each Federal voter registration executive department or agency (agency) under the National Voter Registration Act, 52 U.S.C. 20506(a), shall assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs.

(e) The Attorney General shall prioritize enforcement of 18 U.S.C. 611 and 1015(f) and similar laws that restrict non-citizens from registering to vote or voting, including through use of:

(i) databases or information maintained by the Department of Homeland Security;

(ii) State-issued identification records and driver license databases; and

(iii) similar records relating to citizenship.

(f) The Attorney General shall, consistent with applicable laws, coordinate with State attorneys general to assist with State-level review and prosecution of aliens unlawfully registered to vote or casting votes.

**Sec. 3**. *Providing Other Assistance to States Verifying Eligibility.* To assist States in determining whether individuals are eligible to register and vote:

(a) The Commissioner of Social Security shall take all appropriate action to make available the Social Security Number Verification Service, the Death Master File, and any other Federal databases containing relevant information to all State and local election officials engaged in verifying the eligibility of individuals registering to vote or who are already registered. In determining and taking such action, the Commissioner of Social Security shall ensure compliance with applicable privacy and data security laws and regulations.

(b) The Attorney General shall ensure compliance with the requirements of 52 U.S.C. 20507(g).

(c) The Attorney General shall take appropriate action with respect to States that fail to comply with the list maintenance requirements of the National Voter Registration Act and the Help America Vote Act contained in 52 U.S.C. 20507 and 52 U.S.C. 21083.

(d) The Secretary of Defense shall update the Federal Post Card Application, pursuant to the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. 20301, to require:

(i) documentary proof of United States citizenship, as defined by section 2(a)(ii) of this order; and

(ii) proof of eligibility to vote in elections in the State in which the voter is attempting to vote.

**Sec. 4**. *Improving the Election Assistance Commission.* (a) The Election Assistance Commission shall, pursuant to 52 U.S.C. 21003(b)(3) and 21142(c) and consistent with applicable law, take all appropriate action to cease providing Federal funds to States that do not comply with the Federal laws set forth in 52 U.S.C. 21145, including the requirement in 52 U.S.C. 20505(a)(1) that States accept and use the national mail voter registration form issued pursuant to 52 U.S.C. 20508(a)(1), including any requirement for documentary proof of United States citizenship adopted pursuant to section 2(a)(ii) of this order.

(b)(i) The Election Assistance Commission shall initiate appropriate action to amend the Voluntary Voting System Guidelines 2.0 and issue other appropriate guidance establishing standards for voting systems to protect election

**14008**    **Federal Register** / Vol. 90, No. 59 / Friday, March 28, 2025 / Presidential Documents

integrity. The amended guidelines and other guidance shall provide that voting systems should not use a ballot in which a vote is contained within a barcode or quick-response code in the vote counting process except where necessary to accommodate individuals with disabilities, and should provide a voter-verifiable paper record to prevent fraud or mistake.

(ii) Within 180 days of the date of this order, the Election Assistance Commission shall take appropriate action to review and, if appropriate, re-certify voting systems under the new standards established under subsection (b)(i) of this section, and to rescind all previous certifications of voting equipment based on prior standards.

(c) Following an audit of Help America Vote Act fund expenditures conducted pursuant to 52 U.S.C. 21142, the Election Assistance Commission shall report any discrepancies or issues with an audited State's certifications of compliance with Federal law to the Department of Justice for appropriate enforcement action.

(d) The Secretary of Homeland Security and the Administrator of the Federal Emergency Management Agency, consistent with applicable law, shall in considering the provision of funding for State or local election offices or administrators through the Homeland Security Grant Programs, 6 U.S.C. 603 *et seq.,* heavily prioritize compliance with the Voluntary Voting System Guidelines 2.0 developed by the Election Assistance Commission and completion of testing through the Voting System Test Labs accreditation process.

**Sec. 5**. *Prosecuting Election Crimes.* To protect the franchise of American citizens and their right to participate in fair and honest elections:

(a) The Attorney General shall take all appropriate action to enter into information-sharing agreements, to the maximum extent possible, with the chief State election official or multi-member agency of each State. These agreements shall aim to provide the Department of Justice with detailed information on all suspected violations of State and Federal election laws discovered by State officials, including information on individuals who:

(i) registered or voted despite being ineligible or who registered multiple times;

(ii) committed election fraud;

(iii) provided false information on voter registration or other election forms;

(iv) intimidated or threatened voters or election officials; or

(v) otherwise engaged in unlawful conduct to interfere in the election process.

(b) To the extent that any States are unwilling to enter into such an information sharing agreement or refuse to cooperate in investigations and prosecutions of election crimes, the Attorney General shall:

(i) prioritize enforcement of Federal election integrity laws in such States to ensure election integrity given the State's demonstrated unwillingness to enter into an information-sharing agreement or to cooperate in investigations and prosecutions; and

(ii) review for potential withholding of grants and other funds that the Department awards and distributes, in the Department's discretion, to State and local governments for law enforcement and other purposes, as consistent with applicable law.

(c) The Attorney General shall take all appropriate action to align the Department of Justice's litigation positions with the purpose and policy of this order.

**Sec. 6**. *Improving Security of Voting Systems.* To improve the security of all voting equipment and systems used to cast ballots, tabulate votes, and report results:

(a) The Attorney General and the Secretary of Homeland Security shall take all appropriate actions to the extent permitted by 42 U.S.C. 5195c

and all other applicable law, so long as the Department of Homeland Security maintains the designation of election infrastructure as critical infrastructure, as defined by 42 U.S.C. 5195c(e), to prevent all non-citizens from being involved in the administration of any Federal election, including by accessing election equipment, ballots, or any other relevant materials used in the conduct of any Federal election.

(b) The Secretary of Homeland Security shall, in coordination with the Election Assistance Commission and to the maximum extent possible, review and report on the security of all electronic systems used in the voter registration and voting process. The Secretary of Homeland Security, as the head of the designated Sector Risk Management Agency under 6 U.S.C. 652a, in coordination with the Election Assistance Commission, shall assess the security of all such systems to the extent they are connected to, or integrated into, the Internet and report on the risk of such systems being compromised through malicious software and unauthorized intrusions into the system.

**Sec. 7**. *Compliance with Federal Law Setting the National Election Day.* To achieve full compliance with the Federal laws that set the uniform day for appointing Presidential electors and electing members of Congress:

(a) The Attorney General shall take all necessary action to enforce 2 U.S.C. 7 and 3 U.S.C. 1 against States that violate these provisions by including absentee or mail-in ballots received after Election Day in the final tabulation of votes for the appointment of Presidential electors and the election of members of the United States Senate and House of Representatives.

(b) Consistent with 52 U.S.C. 21001(b) and other applicable law, the Election Assistance Commission shall condition any available funding to a State on that State's compliance with the requirement in 52 U.S.C. 21081(a)(6) that each State adopt uniform and nondiscriminatory standards within that State that define what constitutes a vote and what will be counted as a vote, including that, as prescribed in 2 U.S.C. 7 and 3 U.S.C. 1, there be a uniform and nondiscriminatory ballot receipt deadline of Election Day for all methods of voting, excluding ballots cast in accordance with 52 U.S.C. 20301 *et seq.,* after which no additional votes may be cast.

**Sec. 8**. *Preventing Foreign Interference and Unlawful Use of Federal Funds.* The Attorney General, in consultation with the Secretary of the Treasury, shall prioritize enforcement of 52 U.S.C. 30121 and other appropriate laws to prevent foreign nationals from contributing or donating in United States elections. The Attorney General shall likewise prioritize enforcement of 31 U.S.C. 1352, which prohibits lobbying by organizations or entities that have received any Federal funds.

**Sec. 9**. *Federal Actions to Address Executive Order 14019.* The heads of all agencies, and the Election Assistance Commission, shall cease all agency actions implementing Executive Order 14019 of March 7, 2021 (Promoting Access to Voting), which was revoked by Executive Order 14148 of on January 20, 2025 (Initial Rescissions of Harmful Executive Orders and Actions), and, within 90 days of the date of this order, submit to the President, through the Assistant to the President for Domestic Policy, a report describing compliance with this order.

**Sec. 10**. *Severability.* If any provision of this order, or the application of any provision to any agency, person, or circumstance, is held to be invalid, the remainder of this order and the application of its provisions to any other agencies, persons, or circumstances shall not be affected thereby.

**Sec. 11**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

**14010**    **Federal Register** / Vol. 90, No. 59 / Friday, March 28, 2025 / Presidential Documents

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*March 25, 2025.*

[FR Doc. 2025–05523
Filed 3–27–25; 8:45 am]
Billing code 3395–F4–P

# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


* * * * * * * * * * * * * * * *   *25-CV-639-MSM
                                  *
UNITED STATES OF AMERICA,         *
                                  *
          Plaintiff,              *
                                  *
     vs.                          *MARCH 26, 2026
                                  *
GREGG M. AMORE, in his official   *
capacity as Secretary of State    *
for the State of Rhode Island,    *
                                  *
          Defendant.              *Courtroom 2
                                  *PROVIDENCE, RI
* * * * * * * * * * * * * * * *   *


BEFORE THE HONORABLE MARY S. McELROY

DISTRICT JUDGE


(Motion to Compel)
(Motions to Dismiss)


**APPEARANCES**:

FOR THE PLAINTIFF:          ERIC NEFF
                            DOJ-Crt
                            Civil Rights Division
                            150 M St. NE, Ste 8-1807
                            Washington, DC  20002

FOR THE DEFENDANT:          JAMES J. ARGUIN
Gregg Amore                 RI Department of Attorney
                            General
                            150 South Main Street
                            Providence, RI  02903

FOR INTERVENOR DEFENDANTS:

Common Cause                 ARI J. SAVITZKY
Catherine Saunders           American Civil Liberties Union
Stuart Waldman               Foundation
Julia Sanches                125 Broad Street
                             New York, NY 10004

FOR INTERVENOR DEFENDANTS:

SEIU District 1199NE         ROBERT GOLAN-VILELLA, ESQ.
Rhode Island Alliance for    Elias Law Group LLP
Retired Americans            250 Massachusetts Ave NW
Carolyn Betensky             Ste 400
Michael Zack Mezera          Washington, DC  20001


Court Reporter:              Denise P. Veitch, RPR
                             One Exchange Terrace
                             Providence, RI  02903

non-public lists; correct?

THE COURT:  Right.

MR. NEFF:  Okay.  The United States is taking extra concern to make sure that we're complying with the Privacy Act in every conceivable way, and there are still a couple steps we have to go through before the United States is comfortable proceeding and comfortable representing to this Court that we're in full compliance with the Privacy Act.

THE COURT:  What steps have you taken and what steps need to be taken with those states that have complied?  Because to me, the states that have complied are traditionally more conservative states.  Texas just gave you their list, let's say.  Why not go through Texas's list to make sure that only eligible voters are on their list?

MR. NEFF:  I can only go into the United States delivery of process so much, you Honor, but what I can say is that the United States is evaluating, for one, an opinion out of the D.C. Circuit that analyzed DHS's SORN, and also the United States is -- we are certainly going to be proceeding with running this, our intention is to run this against DHS's SAVE database.

THE COURT:  Which database?

MR. NEFF:  The SAVE database that runs, that

essentially is a, it's called like a fetching system that seeks information from other databases to cross-check whether the data set on a roll is either a deceased person or a noncitizen.

THE COURT:  And what's the accuracy rate of data that you've run against that system?

MR. NEFF:  The accuracy rate we've been told --

THE COURT:  By whom?

MR. NEFF:  -- by DHS, and it's particularly the SAVE personnel that run the system is that it is in effect 100 percent accurate.

THE COURT:  That's not the reporting; right?  I mean isn't the reporting that people have been run through that SAVE Act and not for voting but for other things have been kicked out as noncitizens when they were, in fact, citizens?

MR. NEFF:  There's an important note that the SAVE database has been around, the SAVE Act, essentially states have been able to submit their information to SAVE for about 30 years.  But SAVE has also changed drastically in the last few months.  It's been I would call upgraded and the process they go through, we can go into that if your Honor wants to, but essentially when any flagged voter comes back, it's then run through a very comprehensive confirmation

process to make sure that the, quote, like problematic registration is, in fact, not just --

THE COURT:  What's the process?

MR. NEFF:  DHS has about 200-odd employees who are trained for a minimum of six months each and know various databases that are accessible to the federal government through use and shared agreements to be able to essentially access important naturalization files and other data that can establish whether the person is a citizen, because there are holes in the process.

THE COURT:  What are the holes?

MR. NEFF:  The holes, the most common hole would be when someone is -- someone who came to the United States is a parent and has children who are U.S. citizens and then naturalized; like the most common hole of that is that it's actually rather expensive to go through the full, quote, documentation process.  A common, cheaper shortcut that people will just do is just go get a passport.

THE COURT:  By "people," do you mean the children or the parent?

MR. NEFF:  The parents, your Honor.

THE COURT:  Because the children are derivative citizens under that scenario, so even if the children are born outside of the United States; correct?

MR. NEFF: Correct. And I'm talking about the parent in this scenario as the most common problematic scenario; that the child is not a problem. That would not come up as any issue. It's the parent that potentially would and --

THE COURT: If they're naturalized they can't vote?

MR. NEFF: Explaining to your Honor when an immigrant is naturalized, sometimes that's not immediately available in naturalization documentation databases. So what these 200 people are doing is they're going to other ways to verify that that person a citizen. One common way is going to the Department of State and confirming that they have a passport.

THE COURT: Gotcha. So what you're saying, what you're asserting here is the federal government's role in that process. That's not what the Framers envisioned, is it? The Framers gave in the Elections Clause the responsibility for maintaining elections to the individual states, with some congressional oversight or some congressional barriers or, what do you call them, check points.

But it's not a federal government role to maintain -- to run elections. It never has been. I mean we're supposed to look at what the original intent

the snapshot right in time that is used for an actual election.

THE COURT:  But isn't your role more effectively -- and I'm not going to pretend to tell the Department of Justice how to do their job.  But why would you not be looking at the processes that states are using, as opposed to the list?  The list gives you nothing except a snapshot in time.  The process tells you whether or not they're complying with HAVA and the National Voting Rights Act.

MR. NEFF:  We look at both, your Honor, and --

THE COURT:  Why does the list help?

MR. NEFF:  Because the United States has the capability to run these lists against other databases to be able to tell if there are bad registrations on their rolls.

THE COURT:  So if I -- I'm registered to vote in Rhode Island.  If I move to Oregon and register, and you get the list where I'm still in Rhode Island, then that somehow says Rhode Island's list is inaccurate, even if I never voted here after I moved.

MR. NEFF:  No, your Honor.  It just leads to a scenario where we can check with Rhode Island, do our constitutional and statutory duty to verify with Rhode Island they have removed you from the rolls.

don't have to tell you why, essentially.

MR. NEFF:  Far from acknowledging the new era we're in, we're embracing it.  This is just a first step to sifting down to where there are problematic registrations.  I think it would fair for someone to state that in today's day and age it's extremely hard to comply with all the provisions at the HAVA at the scale the Secretaries of the State are being asked to do right now.  We can work as a partner with them.  This is only a first step to seeing where some of the problems may be; and so because of such a large number as Rhode Island themselves has said, we need to be able to do our initial check so that we can start whittling down where maybe some of the problems are.  We're not saying there are problems.  That's not what we're talking about at this phase.  We're just talking about doing the initial screening that is necessary, given the scale of a voter registration list.

THE COURT:  But the Department of Justice kind of came in hot and asked for all the information.  They didn't say, hey, let's partner, how can we help you, what are you doing?  They came in and said give us all your information because we need to verify that you're doing what you're supposed to be doing, so offering a partnership now seems a little hollow.

# Exhibit 6

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
UNITED STATES OF AMERICA,       )
            Plaintiff,          ) No: 3:26-cv-00021-KAD
                                )
      v.                        ) March 19, 2026
STEPHANIE THOMAS, *in her Official* )
*Capacity as Secretary of State for)*
*the State of Connecticut*, ET AL., )
            Defendants.         ) 10:08 a.m.
_____)
                            Brien McMahon Federal Building
                            915 Lafayette Boulevard
                            Bridgeport, CT 06604


                        HEARING
                Re: Order to Show Cause



B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.













Courtroom Deputy:                    Official Court Reporter:
Abby Bociek                          Tracy L. Gow, RPR
                    Chambers: 203.579.5522

MR. TUCKER:  If the United States becomes aware that there are non-citizens on the list, and in some cases States have told us they have non-citizens on the list, at that point --

THE COURT:  Has Connecticut told you it has non-citizens on the list?

MR. TUCKER:  No, not to my knowledge, Your Honor.

THE COURT:  Okay.

MR. TUCKER:  But, again, also consistent with the fact that we are the Civil Rights Division, those are issues that, typically, when we become aware of them, we reach out to the State and indicate, or if they've told us that we have non-citizens, you know, we engage in a dialogue with the State to determine what actions, if any, they're going to take.

In the event that they're not going to take any actions, those are typically matters that are taken up, if it's appropriate, that the Criminal Division would look at it or the local U.S. Attorney's Office would do it.  But, again, it's not something that the Civil Rights Division would do.

THE COURT:  So when -- if you get these voter rolls, you're going to analyze them to see if there are duplicates; yes?

MR. TUCKER:  Yes, Your Honor.

THE COURT:  And you're going to run them through the

Social Security's list of deceased people to see if there are any deceased people on it?

MR. TUCKER:  Yes, Your Honor.

THE COURT:  But you're not going to take any affirmative steps to try to determine whether there are non-citizens on it?

MR. TUCKER:  With non-citizens, the United States -- in the event the decision is made to do that, the United States would have to enter into a memorandum of understanding with DHS.  And the way it's been explained to me, DHS never comes into possession of it.  What it is, is it's run directly against the SAVE database.

You have a user-specific password that you enter so that the data is never retained.  DHS can't do anything with it, because it's being run through their database, but they never have -- they never have any specific access to it because, again, they never actually see anything that's being run through the SAVE database.

And, again, that would require a memorandum of understanding with the Department of Homeland Security.  And, of course, it would be subject to whatever limitations, if any, that the Court puts in an appropriate tailored order, getting to your third question that we won't get to.

THE COURT:  Okay.  Thank you.

MR. TUCKER:  Thank you, Your Honor.

provided voter rolls, has that data been provided to any other agencies?

MR. TUCKER: For those states, I don't believe so, no. Again, part of it is that we're also in the process of getting memorandum of understanding with -- for example, Social Security Administration. I don't know what the status of that is. I don't believe it's happened yet.

As counsel has certainly suggested, we're dealing with a very large number of records. So just even the processing of the records coming in and making sure that they're securely stored has been the -- first and foremost, the task that we've been undertaking.

THE COURT: And do you know if they've been run through the SAVE database with DHS?

MR. TUCKER: No, none of the private -- private information that's been produced to us has been run through a SAVE database.

My understanding is that there has been public information that -- again, this is public information you can download from many states -- I don't know if Connecticut makes its database readily available, but my understanding is that publicly available information that anyone can do, I could get on my phone right now and start downloading it, that that information has been run through the SAVE database. But, again, it doesn't include any personally identifiable

# Exhibit 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM FRANCIS GALVIN, in his Official Capacity as Secretary of State for the Commonwealth of Massachusetts,<br><br>Defendant(s). | Case Number: 1:25-cv-13816-LTS |

**DECLARATION OF ERIC NEFF IN SUPPORT OF THE UNITED STATES' MOTION TO COMPEL (DOC. 6) AND IN OPPOSITION TO MOTIONS TO DISMISS BY DEF. GALVIN (DOC. 56), INTERVENOR-DEF. COMMON CAUSE, JANE DOE INC., JUAN PABLO JARAMILLO (DOC. 49), AND MASS ALLIANCE  FOR RETIRED AMERICAMNS, NEW ENGLAND STATE ARE CONFERENCE OF THE NAACP (DOC. 52)**

## DECLARATION

I, Eric Neff, declare, pursuant to 28 U.S.C. § 1746, that:

1. I am currently Acting Chief to the Voting Section within the Civil Rights Division of the United States Department of Justice. I am fully and personally familiar with the facts stated herein. I make this declaration in support of the United States' Motion to Compel the production of election records pursuant to the Civil Rights Act codified at 52 U.S.C. §§ 20701, *et seq.* (Doc. 6) and in opposition to Defendants' Motions to Dismiss (Docs. 56, 49, and 52), and to supplement the Declaration of Eric Neff dated December 12, 2025 (Doc. 6-1).

2. As stated in the correspondence dated August 14, 2025 attached as Exhibit 3 to the Mem. in Supp. Motion to Compel (Doc. 7-3) the United States has requested the federal

election records that are the subject of this litigation for the limited purpose of evaluating Massachusetts' compliance with the list maintenance provisions of the Help America Vote Act ("HAVA") and the National Voter Registration Act ("NVRA"), and, if appropriate, to bring an enforcement action.

3. HAVA requires that "an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes" the applicant's driver's license number or if that is unavailable, the last four digits of the Social Security number. 52 U.S.C. § 21083(a)(5)(A)(i). That information is necessary to identify duplicate registration records, registrants who have moved, registrants who have died, and those who are not eligible to vote in federal elections.

4. To ascertain whether a jurisdiction engages in practices that violate federal law (whether HAVA, the NVRA, the Voting Rights Act or any other one), the Attorney General needs to examine both applications to register to vote *and* the final voting rolls, including the electronic statewide voter registration list ("SVRL"), so as to assure herself that the applications are being properly processed and that reasonable and nondiscriminatory list maintenance efforts have been practiced.

5. Contrary to what Defendant-Intervenors contend through third-party hearsay, the records the United States is seeking to compel under the CRA are not intended "to create a nationwide voter list, an unprecedented scheme not authorized by any source of law." Mem. in Supp. of New England State Area Conference of the NAACP and the Massachusetts Alliance for Retired Americans' Mot. to Dismiss, Doc. 54 at 4. Rather, the records sought from Massachusetts are necessary to perform an individualized assessment of the State's efforts to comply with HAVA and the NVRA.

6. When the Civil Rights Division performs this individualized assessment, the State's SVRL is compartmentalized and maintained by the Civil Rights Division separately from the SVRL of any other State. The maintenance, use, and destruction of those records is in full compliance with the requirements in the CRA, Privacy Act, and all other federal laws governing the records.

7. The United States previously has pursued successful matters, including in litigation, to obtain statewide voter registration lists under Title III of the Civil Rights Act ("CRA").

8. For example, in two of those CRA matters against Georgia and Texas, the United States obtained the SVRLs, including drivers' license numbers and last four digits of the registrant's social security number, to evaluate compliance with the NVRA, including that Act's list maintenance requirements.

9. A true and accurate copy of the Complaint filed in *United States v. Georgia*, Case No. 1:06-cv-02442-CC (N.D. Ga. filed Oct. 12, 2006), is attached as Exhibit 1.

10. On October 27, 2006, the Court entered a Consent Decree in *Georgia* requiring the state to produce its SVRL to the United States. A true and accurate copy of the *Georgia* Consent Decree is attached as Exhibit 2.

11. The Texas matter was resolved by a Memorandum of Understanding ("MOU") dated May 13, 2008, which required Texas to produce its SVRL to the United States. A true and accurate copy of the Texas MOU is attached as Exhibit 3.

12. Recent enforcement efforts by the Attorney General demonstrate the need for federal scrutiny, as Congress contemplated in authorizing the Attorney General to bring enforcement actions under HAVA and the NVRA.

13. In 2025, North Carolina election officials admitted that the state "maintained and used a HAVA List that includes records that do not comply with the requirements for Federal elections under Section 303(a)(5)." *United States v. N. Carolina Bd. of Elections*, Case No. 5:25-cv-00283-M-RJ Consent J. & Order at 4 (E.D.N.C. Sept. 8, 2025). Specifically, the State's HAVA List included over one hundred thousand active voter records that were missing one of the identification numbers required by HAVA: the registrant's driver's license number, the last four numbers of the registrant's social security number, or a unique identifying number if the registrant had neither a driver's license nor a social security number. A true and accurate copy of the *North Carolina* Consent Judgment and Order is attached as Exhibit 4.

14. As a result of the Attorney General's enforcement action, North Carolina has reduced the number of voter records missing an identification number under HAVA from 103,329 to 70,709. *See N. Carolina Bd. of Elections*, Defs.' 2d Status R. at 2 (E.D.N.C. Jan. 30, 2026). A true and accurate copy of the Second Status Report from the *North Carolina* litigation is attached as Exhibit 5.

15. As stated in my first Declaration, the United States reached out to Massachusetts to address any reasonable privacy concerns without impeding the Attorney General's authority to enforce federal law.

16. To that end, the United States has offered various states an MOU memorializing these requirements. As of February 27, 2026, eighteen states either have provided their SVRL or indicated they will be doing so including: thirteen states that have provided their SVRLs without any MOU; two states that have agreed to provide their SVRL under the terms of the MOU; and three states that are likely to provide the SVRLs soon.

17. An Initial Privacy Assessment (IPA) Determination was issued on October 12, 2012, showing that no Privacy Impact Assessment is required for the Justice Consolidated Office Network (JCON) system where personal identifying information associated with the United States' CRA demand is stored.

18. A true and accurate copy of cited excerpts from the report by the National Commission on Federal Election Reform (the Ford-Carter Commission), entitled "To Assure Pride and Confidence in the Electoral Process (Aug. 2001)," is attached as Exhibit 6.

19. A true and accurate copy of the Notice of Appeal filed in *United States v. Benson*, Case No. 1:25-cv-01148-HYJ-PJG, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), is attached as Exhibit 7.

20. A true and accurate copy of the Notice of Appeal filed in *United States v. Oregon*, Case No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026), is attached as Exhibit 8.

21. A true and accurate copy of the Notice of Appeal filed in *United States v. Weber*, Case No. 2:25-cv-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026), is attached as Exhibit 9.

I declare under the penalty of perjury that the above statements are true and correct. Executed on February 27, 2026.

Dated: February 27, 2026, at Washington, D.C.


/s/*Eric Neff*

Eric Neff

# Exhibit 8



David Plunkert

## THE BIG FEATURE

# Your Private Data Is Building Trump's Voter Purge Machine

*The Justice Department ordinarily would prevent attacks on voting rights. Now it's carrying them out.*

**ABBY VESOULIS AND ARI BERMAN    DECEMBER 5, 2025**

*Get your news from a source that's not owned and controlled by oligarchs. Sign up for the free* Mother Jones Daily*.*

**It was** National Voter Registration Day, and Maine Secretary of State Shenna Bellows was on her way to a small liberal arts college for a voter registration event. That's when she learned the US Department of Justice was suing her over how she manages Maine's voter registrant list.

While the DOJ appearing as the official plaintiff was new, what the federal government sought through the lawsuit—access to Maine's complete, unredacted voter roll file—was not.

Bellows, a spunky, no-nonsense 50-year-old who grew up in a log cabin without running water, already had received a litany of demand letters, public records requests, and lawsuits throughout her five years serving as the top election integrity official in Maine. Citing the National Voter Registration Act, most of the requests for the state's voter data had the ostensible aim of ensuring Maine was adequately removing the names of individuals who should not be on the voter roll. But this lawsuit was the first of its kind from the government itself.

The September legal complaint was an escalation of a yearslong coordinated effort by conservatives to obtain voter roll data from numerous states, compare it to incomplete datasets they'd found on the commercial market, then attest that mismatches between the two are clear evidence of people illegally voting. The apparent goal: buttressing decadeslong, though still unproven, claims of rampant voter fraud and removing allegedly ineligible voters from the rolls, with potentially dire consequences for future elections.

In the past, these sorts of legal gambits came from right-wing groups like the America First Policy Institute, a Trump-aligned think tank co-founded by Brooke Rollins, now the secretary of agriculture; the Dhillon Law Group, whose founder, Harmeet Dhillon, is now the assistant attorney general for civil rights at the DOJ; and the Public Interest

Legal Foundation (PILF), a conservative legal group whose former counsel, Maureen Riordan, now leads the DOJ's voting section. Riordan and Dhillon remain in the same line of business, citing familiar statutes in their barrage of new lawsuits against state election officials like Bellows; the key difference now is that they are promoting their routinely debunked theories from *within* the US government. Specifically, from the highest law enforcement agency in the country.

<hr>

**"The election deniers are now ascendant in the federal government."**

"The election deniers are now ascendant in the federal government," says Bellows, who spent eight years as the executive director of the Maine ACLU before assuming her current post. "These requests are not unlike the requests that the organizations they used to be affiliated with have asked for years." But unlike conservative legal organizations, she adds, "the Department of Justice has the power to investigate, prosecute, and place people in jail."

Riordan and Dhillon have been pursuing Maine's voter information since July, when the voting section of the DOJ's Civil Rights Division sent Bellows a letter requesting the state's unredacted registration list. Bellows wrote a careful response referencing federal court opinions and state statutes that preclude her from sharing the voter roll without appropriate redactions. In return, the DOJ sent her another threatening letter, followed by the ironically timed lawsuit on National Voter Registration Day.

Maine isn't the only state the DOJ contacted. Over the last six months, it has demanded full, unredacted voter rolls from dozens of states in an effort to create the federal government's first-ever national database of registered voters, accompanied by their private information: party affiliation, voting history, Social Security numbers, driver's license information, even physical characteristics. The DOJ has formally sued 14 states for the data so far, 12 of which are led by Democrats. (The sole exceptions are Vermont, which has a Republican governor but is otherwise deeply blue, and New Hampshire, where Republican Gov. Kelly Ayotte has publicly disagreed with President Donald Trump's plan to redraw congressional maps in advance of the midterms to give Republicans more seats.) Bellows believes Maine was among the first two states to be sued "because of animus"—also known as old-fashioned retribution.

The Justice Department already has tried to retaliate against Trump's political enemies, such as former FBI Director James Comey, who investigated ties between Russia and Trump's 2016 presidential campaign, and New York Attorney General Letitia James, who sued Trump over allegations that he inflated the value of his real estate holdings. (A federal judge recently dismissed both indictments, ruling that the prosecutor who brought the charges had been unlawfully appointed. The DOJ is reportedly weighing whether to re-indict them.) Bellows, though lesser known, is likely on the administration's radar for other reasons, too. Citing the 14th Amendment's clause barring officials who "engage in" insurrection from holding future office, she attempted to remove Trump from Maine's 2024 presidential ballot based on his connection to the January 6, 2021, attack on the US Capitol.

But Bellows, who is now running for governor, may not be the only one harmed by the DOJ data grab and the spurious claims supporting it. In 2024, crude analyses of voter roll data by right wingers led election officials in Waterford Township, Michigan, and Virginia to remove duly registered voters from the rolls.

So far, challenges like these have taken place on a much smaller scale: state by state or even county by county. The DOJ's current effort to assemble *every* state's voter data poses an exponentially larger threat to voting rights. More than a dozen state election officials, former DOJ staff, and election experts told *Mother Jones* that a national database of voter registration information could lead to massive data breaches of Americans' private information and reinforce false narratives about the frequency of voter fraud—narratives Trump and his allies could weaponize to challenge election outcomes. Worse yet, the bad data could give Republican-led states cover to illegally cull eligible voters from their rolls, stopping certain people from voting at all.

"These unprecedented demands for vast amounts of voter data are part of a larger pattern of actions indicating a reckless grab for power over American elections," Bellows says.

It could also lead to a vast expansion of the number of citizens who appear on Trump's hit list—one that, depending on your personal data, may soon include you.

**The right-wing campaign** to weaponize the DOJ's Civil Rights Division, which former Attorney General Eric Holder once called the "crown jewel" of the department, dates back more than two decades.

After the election of President George W. Bush in 2000, *National Review* called for a radical restructuring of the division. "There may be no part of the federal government where liberalism is more deeply entrenched," wrote national correspondent John J. Miller. "Republicans should work to gain more control over the civil rights division and its renegade lawyers."

*"My tentative plans are to gerrymander all of those crazy libs right out of the section."*

And a year later, that's precisely what they did. Attorney General John Ashcroft tapped Brad Schlozman, a Kansas-based lawyer with no prior civil rights litigation experience, as deputy assistant attorney general for civil rights. His responsibilities included overseeing hiring and supervision for the division's voting section, which enforces the Voting Rights Act and other federal voting laws. Schlozman did little to hide his disdain for the section he now led. "My tentative plans are to gerrymander all of those crazy libs right out of the section," he wrote to a former colleague in July 2003.

Schlozman embarked on a hiring spree of what he called "RTAs," short for "right-thinking Americans," recruiting lawyers from the Federalist Society, the National Republican Lawyers Association, and the Bush-Cheney campaign. A joint investigation by the department's inspector general and its Office of Professional Responsibility found that "virtually all of the attorneys (97 percent) hired by Schlozman whose political and ideological affiliations were evident in the hiring process were Republican or conservative."

Veteran civil rights lawyers with decades of experience began leaving in droves, including the well-respected chief of the voting section, Joe Rich. Schlozman made Hans von Spakovsky, who had been among the first major figures in the GOP to push the myth of widespread voter fraud, de facto head of the section.

Soon, the department's political appointees overruled career lawyers to approve GOP-backed laws that were regarded as racially discriminatory, including a mid-decade congressional redistricting plan in Texas that eliminated two majority-minority districts and a Georgia voter ID law that disproportionately harmed Black voters.

Case 1:26-cv-01352-SLS    Document 29-2    Filed 05/19/26    Page 53 of 287



David Plunkert

"You take an oath to uphold the laws of the United States," Robert Kengle, the deputy chief of the voting section from 1999 to 2005, told *Mother Jones*' Ari Berman in his 2015 book, *Give Us the Ballot*. "These guys didn't believe in the laws of the United States. They came in to work for an institution for which they had the utmost contempt."

One of the attorneys hired by Schlozman was J. Christian Adams, a solo practitioner in Virginia who had served as a Bush-Cheney poll watcher in Florida. Rich described him as "Exhibit A of the type of people hired by Schlozman."

Adams helped bring the DOJ's first-ever Voting Rights Act case on behalf of white voters, who claimed they were discriminated against by the Black head of the local Democratic Party in Noxubee County, Mississippi. Career lawyers viewed it as a perversion of the law, which was intended to protect Black voters who were disenfranchised by segregationist whites in states like Mississippi.

By the end of the Bush administration in 2008, the DOJ's inspector general found that Schlozman had violated federal law and committed misconduct by "improperly [considering] political and ideological affiliations in the recruitment and hiring of career attorneys in the Civil Rights Division." But the anti-voting positions of the likes of von Spakovsky and Adams had already become institutionalized and were spreading within the GOP.

A couple of years later, in 2010, Adams loudly accused the Obama administration of anti-white bias when the DOJ dropped a case he spearheaded alleging that white voters were intimidated at the polls in Philadelphia by the New Black Panther Party. An internal review found no evidence of improper political interference, but by this point, Adams had resigned in protest. He would go on to become head of the right-wing legal group PILF in 2015. In addition to

filing lawsuits against local jurisdictions to force them to remove voters from their rolls, PILF published two reports in 2016 and 2017, "Alien Invasion in Virginia" and "Alien Invasion II," that sought to validate Trump and his allies' claims of widespread voter fraud by noncitizens.

The reports, which included names, addresses, and private information like Social Security numbers, claimed that more than 5,500 noncitizens had registered to vote in Virginia and 1,852 people had cast nearly 7,500 illegal ballots since the late 1980s. "This is the real foreign influence on American elections," Adams told Fox News. "Foreigners are getting on American voter rolls and, as we documented, casting ballots by the thousands."

PILF called on the Justice Department to bring felony charges against the voters it identified. Republican political activists drew up plans to post signs at polling places warning of voter fraud, which Adams said should be "in Spanish" to be "effective."

It soon became clear, however, that PILF had relied on faulty methodology. As *Mother Jones* previously reported, "Alien Invasion II" spotlighted the "astonishing" example of one voter, Maureen Erickson, who listed a Guatemalan address on her registration form. "Ms. Erickson voted in 14 different elections—most recently in 2008—before her registration was canceled," the report stated.

But it turned out that Erickson was a US citizen living in Guatemala as a missionary. "I think it is odd that they chose 'Maureen Erickson' as their poster child for voter fraud," her husband, Todd Erickson, wrote in a letter to the *Washington Times* after it picked up the story. "There was obviously not much additional research done on the person that they held up as an example of this illegal activity."

When Virginia election officials warned PILF that it was using unreliable data—such as targeting individuals who did not check a citizenship box at the DMV—to identify "suspected aliens," PILF staffer Logan Churchwell agreed in an email to Adams that their concerns could "be true." But this was an opportunity, Churchwell said, to "convert pushback into official confusion to justify our call for a top-down overhaul."

"The fog of war favors the aggressor here," added Churchwell, who remains research director at PILF.

In 2018, four Virginia voters whom PILF falsely accused of voting illegally filed a lawsuit against Adams and PILF, accusing them of violating the Voting Rights Act and the 1871 Ku Klux Klan Act—which empowers individuals to sue when vigilante groups threaten their 14th Amendment rights—through "a modern, covert, and particularly insidious method of voter intimidation." PILF settled the case before it went to trial, with Adams agreeing to apologize to the plaintiffs and PILF pledging to redact sensitive personal information.

The reports should have been a cautionary tale about the dangers of overhyped fraud claims and the misuse of sensitive voter information, but Trump and his allies were undeterred and determined to spread such misinformation to a much bigger audience.

After claiming with no proof that he lost the popular vote in 2016 because 3 million people voted illegally, Trump brought back veterans of the Bush Justice Department, including Adams and von Spakovsky, as members of his Presidential Advisory Commission on Election Integrity. Von Spakovsky advised the commission to reprise the Schlozman-era playbook and exclude Democrats and "mainstream Republican officials and/or academics" from serving on it. He and Adams secretly advised Vice Chair Kris Kobach, then–Kansas secretary of state, on the commission's first major action: a sweeping request for sensitive voter data from all 50 states, including party affiliation, voter history, and Social Security numbers. Kobach wrote that it would be "very helpful in the Commission's work identifying fraudulent registrations and other forms of voter fraud."

But the request, made in June 2017, infamously backfired. The Republican secretary of state of Mississippi, Delbert Hosemann, told the commission to "go jump in the Gulf of Mexico." His GOP counterpart in Louisiana said the

5/13/26, 3:22 PM
Case 1:26-cv-01352-SLS    Document 29-2    Filed 05/19/26    Page 55 of 287
Your Private Data is Building Trump's Voter Purge Machine – Mother Jones

"President's Commission has quickly politicized its work by asking states for an incredible amount of voter data that I have, time and time again, refused to release." Even Kobach, in his position as the top election official in Kansas, was unable to hand over voters' Social Security numbers because they couldn't be divulged by state law, nor could secretaries of state from Indiana, Maine, and New Hampshire, who also served on the commission. In the end, 21 states refused to provide any data, while the rest only partially complied.

The commission had tried to validate Trump's fraud claims, but it disbanded after less than a year while facing at least eight lawsuits. A draft staff report of its findings included a section on "Evidence of Election Integrity and Voter Fraud Issues" that was, tellingly, left blank.

The commission's failure should have put to bed the myth of widespread voter fraud once and for all—and prevented the federal government from ever again asking for such extensive information on voters. But Trump's attempt to overturn the 2020 election convinced more of his supporters that elections were rigged, emboldening groups like PILF to turbocharge their efforts to restrict access to the ballot. In the runup to the 2024 election, Trump and his allies filed scores of lawsuits designed to make it harder to vote and easier to question election outcomes. PILF, along with the RNC and Harmeet Dhillon's law firm, were at the forefront of this legal onslaught.

When Trump returned to the White House, an emboldened MAGA movement once again set its sights on transforming the DOJ's Civil Rights Division and its voting section from a place that is entrusted with protecting people's right to vote to one that jeopardizes it.

"This administration is abandoning the congressional mandate that the division has to stamp out discrimination and protect vulnerable populations," says Chiraag Bains, who served as a high-ranking official in the Civil Rights Division from 2014 to 2017. "They're not just abandoning it. They're actually weaponizing the power of the federal government to try to cut off access to the ballot."

**A week after** the 2024 election, Cleta Mitchell, a recent chair of PILF's board (von Spakovsky is the current chair) and an attorney involved in Trump's attempt to overturn the 2020 election, called on the administration to fire "every lawyer in the Voting Section and likely in the Civil Rights Division. They are not supportive of Pres Trump or MAGA. There has to be a reckoning."

The now-reinvigorated wolves were back in the henhouse. Two days after the inauguration, the department's political appointees ordered the Civil Rights Division to freeze work on all new cases. Shortly thereafter, former Florida Attorney General Pam Bondi, who had traveled to Pennsylvania in 2020 to amplify Trump's false claims of voter fraud, was confirmed as US attorney general. The department put Mac Warner, a former West Virginia secretary of state who claimed that the CIA stole the 2020 election, in charge of the Civil Rights Division on an interim basis.

Over the winter and spring, the Trump DOJ began systematically withdrawing from voting rights cases filed under the Biden administration, refusing in nearly every instance to meet with the career attorneys who worked on them. "There was an utter lack of interest in what the day-to-day work of the voting section entailed," says one former lawyer in the Civil Rights Division.

On March 31, when the department dropped a case challenging voting restrictions passed in Georgia in 2021, Bondi alleged that the Biden administration had "fabricated claims of false voter suppression."

"The press release from the Georgia case was insulting to all the career lawyers who worked on it," says another former DOJ lawyer. "To call something fraudulent from the institution you now lead was deeply troubling."

Days later, the Senate confirmed Harmeet Dhillon, a Trump ally whose law firm had filed several lawsuits attacking voting rights, as head of the Civil Rights Division. Dhillon had amplified Trump's false claims of fraud as a legal adviser to his 2020 campaign, calling on the Supreme Court to overturn the election results.

Dhillon removed the division's longtime mandate of stopping racial discrimination in voting from the section's mission statement and instead pledged to address Trump-inspired priorities that included "preventing illegal voting, fraud, and other forms of malfeasance and error."

By the end of April, Trump's appointees had dismissed every active case in the voting section and reassigned the section's chief and five top managers to the obscure complaint adjudication office, the DOJ's version of Siberia. Career attorneys who'd stayed during Trump's first administration and thought they could survive Trump 2.0 decided to leave en masse. Just a few months in, more than 250 attorneys had departed the Civil Rights Division, 70 percent of the total staff, and the number of career attorneys in the voting section had shrunk from 30 to just three.

At the end of May, Maureen Riordan, who had been litigation counsel at PILF during the Biden years, took over as acting head of the voting section. A 20-year veteran of the DOJ who spent much of her career in the voting section, Riordan had resigned when Biden took office. At PILF, she had focused on filing lawsuits against various states, aimed at obtaining their voter roll information for the purpose of analyzing it for purported fraud.

When she returned to the DOJ under Trump, the department's work had effectively become inseparable from the mission of the right-wing "election integrity" organizations whose leaders now staffed the new administration. With the MAGA takeover complete, the voting section launched its most audacious scheme yet, reprising the Trump administration's demand for sensitive voter data from all 50 states. And this time, it would retaliate against those who refused to comply.

**A couple of** weeks before the DOJ began demanding Maine's voter rolls, PILF, Riordan's old employer, sent its own letter to Bellows, alleging that its assessment of commercially available data and newspaper obituaries suggested there were more than 18,000 "apparently deceased" people on Maine's voter rolls.

Responding to that previously unreported accusation, Bellows called its claim a "damned lie from an organization that cares more about conspiracy theories than election integrity." Churchwell, from PILF, says their data collection methods have evolved since 2017 to prioritize credit data over other "cheap" commercial options: "We've raised the standard. Your experts are in the wailing and gnashing of teeth in outer darkness stage of their activism, and my heart goes out to them."

For starters, every month, Maine's 487 municipal election clerks review death records from the state's vital records bureau and cancel the registrations of individuals who have died. As a fail-safe, Maine also compares its voter roll to the Social Security Administration's Limited Access Death Master File at least once annually. Moreover, even if a deceased person's name did appear on the voter roll for a short time, that does not mean a vote was illegally cast in their name.

This wasn't the first time PILF made such a claim. The group sued Michigan in 2021, alleging that its assessment of publicly attainable data showed there were 25,000 dead voters on Michigan's rolls. A federal judge dismissed the claim in March 2024. In May, the 6th US Circuit Court of Appeals rejected PILF's argument a second time, concluding that

Michigan makes an "inherently rational, sensible attempt at maintaining accurate voter registration lists." (In November, PILF asked the Supreme Court to reconsider the lower court's decision.)

But PILF succeeded in advancing the voting fraud narrative—even if its lawsuit has so far failed. As is often the case, the rulings on the Michigan lawsuit didn't get nearly as much attention as the claims that precipitated it. "Usually, sensational allegations of crimes go viral," Bellows says, "and the less sensational finding that people are innocent often doesn't have the same reach."

Most of the lawsuits—whether from groups like PILF or the mightier Justice Department—allege violations of the National Voter Registration Act. Congress passed the 1993 bipartisan law with the intention of making it easier to register to vote. Dubbed the "Motor Voter Act," the law simplified voter registration by making the process accessible at DMVs and other public agencies across the country. The law also included a provision to ensure that state voter rolls, which were anticipated to add new voters, were properly maintained. The US Constitution assigns the responsibility of managing elections to the states, and consequently, the act doesn't tell states how exactly they should maintain their rolls; it merely says they should "conduct a general program that makes a reasonable effort to remove the names of ineligible voters."

Bellows attests that Maine is doing just that. In February 2025, the state's election division canceled 180,584 inactive voter registrations—the largest bulk removal in nearly 20 years. But the act's open-ended language has provided an opening for election denialism crusaders, including the ones who now run the DOJ.

> **"Many election officials, including me, worry that the Trump administration wants this information so that it could be used to target, harass, and intimidate individual citizens."**

"These groups are trying to weaponize the law in a way that's contrary to the purposes of the statute," says Bains, the former DOJ Civil Rights Division official, now a senior fellow at the Brookings Institution. "Most of these lawsuits that we're talking about are aimed at pursuing mass purges of exactly the nature that the statute was written to prevent."

At least 40 states have received written requests from the Justice Department for their voter files, according to the Brennan Center for Justice. DOJ officials have said they eventually want the data from every state. So far, only two—Indiana and Wyoming—have complied, though the administration has adopted a harder stance in recent weeks. As of early December, the department has filed lawsuits against 14 states, beginning with Maine and Oregon.

"On the surface, it may seem like regular oversight, but it's not," Nevada Secretary of State Cisco Aguilar argued during a September press briefing with the States United Democracy Center, a group devoted to fair and secure elections. "The DOJ has the backing of the federal government. They're trying to use the immense power to intimidate states into complying."

At the same briefing, Michigan Secretary of State Jocelyn Benson outlined multiple ways the data demanded by the department could be used vindictively.

"Many election officials, including me, worry that the Trump administration wants this information so that it could be used to target, harass, and intimidate individual citizens, political adversaries, and potentially deter entire communities from voting," Benson said. "It could also be used to pressure states to remove otherwise eligible citizens from the rolls based on pernicious or suspect information."

Administration officials have yet to explain their reasons for trying to create a national voter roll, but the DOJ confirmed to *States Newsroom* that the data was "being screened for ineligible voter entries."

The agency is working with the Department of Homeland Security to run voter information through Systematic Alien Verification for Entitlements, or SAVE, an online platform that provides access to various government databases in one place. Since its inception in 1987, the tool has been used to verify the citizenship of people applying for government benefits by checking alien identification numbers assigned to them by DHS. The Trump administration has dramatically expanded the tool in recent months, adding Social Security numbers and passport information to the system. As *Mother Jones* reported last month, DHS is also trying to connect every state's driver's license database to SAVE, so states can run their entire voter rolls through the database at one time. (A spokesperson for US Citizenship and Immigration Services, which administers SAVE, says states will need to ensure they are using the platform lawfully.)

The allegation that noncitizens are flooding state voter rolls is not supported by any data. One 2016 survey of 42 voting jurisdictions by the Brennan Center found just 30 cases of possible noncitizen voting out of nearly 24 million votes. Statistically, that's one ten-thousandth of 1 percent. Further, voter registration forms require Americans to affirm they are citizens, under penalty of perjury. The same form warns that those who lie could be fined, imprisoned, or deported. They'd also risk their future eligibility for citizenship. "To jeopardize that opportunity by voting just doesn't make sense," Nevada's Aguilar says.

While using SAVE to root out voter fraud is unlikely to turn up many—if any—noncitizen voters, the massive expansion of the program is likely to wrongly flag some American citizens as noncitizens, particularly naturalized citizens, newly married people who changed their last names, and people whose names don't match on their documents (for example, a man whose license says Nick but whose passport says Nicholas). A lawsuit filed by the League of Women Voters and the Electronic Privacy Information Center in September warned that DHS and the DOJ are "encouraging and enabling" states to search their voter rolls against SAVE, which the lawsuit alleges may culminate in some states "purging voter rolls."

In November, a federal judge agreed that the new use of SAVE was concerning: "The Court is troubled by the recent changes to SAVE and doubts the lawfulness of the Government's actions," wrote Judge Sparkle Sooknanan. However, she declined to block the administration from using it because the plaintiffs hadn't yet identified someone who had been directly harmed.

Even if the DOJ doesn't find any legitimate evidence of noncitizen voting, false matches would produce sensational headlines across the MAGA-verse, giving the administration more ammunition to undermine trust in elections.

"My guess is they want the voter files to be able to say we have the voter files, and we know there are X or Y fraudulent people on it," says Justin Levitt, who served as deputy assistant attorney general in the DOJ's Civil Rights Division under President Barack Obama. "It will be fiction, but now they'll say it because they have them. Even if they find an infinitesimal number of wrong people on the rolls, they will lie about the numbers."

The DOJ declined to comment for this story.

Beyond the possibility of voters being disenfranchised, the League of Women Voters and EPIC argue that every person's federal right to privacy would be encroached by the DOJ and DHS sharing data among themselves and state governments. Congress passed the Privacy Act of 1974 specifically to prevent the federal government from creating "formal or de facto national data banks" or "centralized Federal information systems" that would integrate the personal data of Americans stored at separate agencies, the lawsuit points out.

Add to all this the fact that a national voter file could also be a gold mine for hackers, especially as the Trump administration dismantles efforts to combat foreign and domestic election interference.

"The danger is once you compile all this information, then hackers only have to go to one place instead of going to all 50-plus jurisdictions that run elections," says Eileen O'Connor, who worked in the DOJ's voting section for nearly a

decade, including during Trump's first term. "It's just a hacker's dream to have all of this private, sensitive information collected somewhere."

In its efforts to inspect state voter rolls, the DOJ is also, evidently, considering sharing Americans' personal data with outside election denial groups. Rick Richards, a retired physician from Georgia with no experience as an election official, has met with Riordan and marketed his mass voter registration challenge system called EagleAI, which he helped develop with Cleta Mitchell's support, to the DOJ.

"We demonstrated the software to the DOJ. They like it. They would like to use it. Apparently, we can get data they can't," he said during a meeting hosted by Mitchell's group, the Election Integrity Network, according to a transcript obtained by *Mother Jones*. "I am in conversation with them about letting us have a task, a federal task, to bring their data into what we're doing and then be able to use the federal data, SAVE data, Social Security data, other data in here as well."

Despite its name, EagleAI uses no artificial intelligence. Like PILF, EagleAI relies on incomplete information, such as self-reported address changes registered with the US Postal Service and datasets purchased from private entities like utilities, credit card companies, or magazine publishers. Richards boasted on the same call that EagleAI flagged more than 50 percent of Fulton County, Georgia, voter registrations as "potential problems"—an indication of the system's dubious accuracy.

Had the right-wing election integrity skeptics behind EagleAI actually believed the county's voter roll was teeming with fraudulently registered voters, they likely would have presented these concerns to local officials. But according to Nadine Williams, Fulton County's director of registration and elections, that hasn't happened; her voter roll is audited monthly using verified data sources, and she's never heard from EagleAI, which she called an "unverified third-party group."

In response to questions from *Mother Jones*, Richards claimed that "the EagleAI Network program no longer exists," even though his email signature still includes that affiliation and the group's data was used to challenge more than 900 voters in New Jersey as recently as a month ago.

If the DOJ takes up Richards on his offer to use EagleAI on state voter rolls the department is suing to collect, it wouldn't be the first time Riordan has worked at a place that relies on faulty data to spread questionable conclusions about voter fraud.

Normally, the DOJ's voting section would work to prevent these kinds of efforts from affecting Americans' ability to vote. Now, the voting section itself is in on the effort. "The main activity the section seems to be engaged in at this point," says Levitt, the former deputy assistant attorney general, "is something illegal."

## KEEP US RELENTLESS, INDEPENDENT, AND FREE TO READ.

For 50 years, *Mother Jones* has offered **honest**, **investigative reporting** you can rely on:

- **Relentless in the pursuit of truth**, unafraid to hold the powerful to account

- **Independent from influence or agenda** from oligarchs and corporations

- **Freely accessible to every reader**, never behind a paywall

**But we can't do any of this without you**. Reader support powers our newsroom to stay nimble and fearless, ready for whatever story comes next. If you can, **make a donation today**.

5/13/26, 3:22 PM
Case 1:26-cv-01352-SLS   Document 29-2   Filed 05/19/26   Page 60 of 287
Your Private Data is Building Trump's Voter Purge Machine – Mother Jones



**One-Time** | **Monthly**

$ | $ | $

**Other Amount**

**Continue**

# KEEP US RELENTLESS, INDEPENDENT, AND FREE TO READ.

For 50 years, *Mother Jones* has offered **honest**, **investigative reporting** you can rely on:

• **Relentless in the pursuit of truth**, unafraid to hold the powerful to account

• **Independent from influence or agenda** from oligarchs and corporations

• **Freely accessible to every reader**, never behind a paywall

**But we can't do any of this without you**. Reader support powers our newsroom to stay nimble and fearless, ready for whatever story comes next. If you can, **make a donation today**.

**One-Time** | **Monthly**

**$12** | **$15** | **$25**

**Other Amount**

**Continue**

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

Copyright © 2026 Mother Jones and the Center for Investigative Reporting. All Rights Reserved.

# Exhibit 9



**Kris Warner**
Secretary of State
State of West Virginia

1900 Kanawha Blvd. E;
Building 1, Suite 157K
Charleston, West Virginia 25305

Telephone: (304) 558-6000
Toll Free: 1-866-SOS-VOTE
Fax: (304) 558-0900
www.wvsos.gov

February 11, 2026

**Via U.S. Mail & E-mail**

Eric Neff
Acting Chief
Civil Rights Division, Voting Section
Department of Justice
150 M St. NE, Ste. 8-1807
Washington, DC 20002
Eric.Neff@usdoj.gov

Dear Mr. Neff:

The Office of the West Virginia Secretary of State ("WVSOS") acknowledges receipt of your February 4, 2026, correspondence, wherein the U.S. Department of Justice ("DOJ") requests confirmation that the position expressed in our September 22, 2025, letter remains our position on this matter.

For context, on September 8, 2025, the DOJ demanded that the WVSOS provide an electronic, unredacted copy of West Virginia's statewide voter registration list. The DOJ's request states that the list must include, among other data fields, the voter registrant's full name, date of birth, residential address, and either the individual's state driver's license number or the last four digits of the registrant's Social Security number, as required under the Help America Vote Act ("HAVA") for individuals registering to vote in federal elections. *See* 52 U.S.C. § 20901, *et seq.*

The DOJ cited various legal authorities supporting this request, including provisions of HAVA; the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §20501, *et seq.*; Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701, *et seq.*; and The Privacy Act of 1974, 5 U.S.C. § 552a.

Prior to responding to the DOJ's original request, our Office performed a thorough review of the cited statutes, none of which require compliance with such a broad request.

As set forth in the DOJ's September 8, 2025, letter, the stated purpose of the request is to "assess your state's compliance with the statewide [voter registration list maintenance] provisions of the NVRA." However, the demand included only a vague explanation of the basis and specific purpose of the request.

1

Based on recent verbal communications with your office, the alleged purpose of the DOJ's request is to run West Virginia's entire voter list through the Systematic Alien Verification for Entitlements ("SAVE") database, which is administered by the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, Verification Division.

However, as we discussed, the WVSOS is a registered and recently approved user of the SAVE database. Despite this fact, and despite our offer to work collaboratively with the DOJ to utilize the SAVE database within the confines of federal and state law, the DOJ has restated its position that, under the CRA, it is entitled to the unredacted voter information of West Virginia citizens.

As set forth in our September 22, 2025, correspondence, West Virginia law protects the sensitive personally identifiable information of its voters, and the Secretary of State takes seriously his responsibility to safeguard such information from unauthorized disclosure. Nothing in the interim has altered our position.

The CRA, NVRA, and HAVA were enacted by Congress to protect voting rights. Congress places responsibility on the states to administer voter registration and elections in accordance with these statutes. To that end, West Virginia has enacted a series of statutes governing voter list maintenance. *See* W. Va. Code § 3-2-1, *et seq.* A summary of West Virginia's voter registration list maintenance procedures and data sources was included in our original letter.

At present, West Virginia has 1,195,305 registered voters. Since 2017, 408,397 voter registration records have been lawfully cancelled, 62,756 of which were cancelled under Secretary of State Kris Warner's administration. Nevertheless, to further assist your inquiry, we remain willing to provide a detailed narrative of our voter list maintenance procedures upon request.

W. Va. Code § 3-2-30(a) provides that any person may examine the voter registration records of West Virginia residents. However, the statute expressly prohibits the disclosure of a registrant's Social Security number or driver's license number. Further, the Privacy Act of 1974 provides that executive agencies may not collect personal or sensitive information from a West Virginia citizen exercising his or her constitutionally protected right to vote absent applicable statutory authority. No such exception exists under the CRA, NVRA, HAVA, or the Privacy Act of 1974.

The Secretary of State respects your position in this matter and remains willing to work with the DOJ to reach an amicable resolution within the limits of state and federal law. As set forth in our prior correspondence, the WVSOS makes voter registration lists available subject to the statutory limitations set forth above.

Please do not hesitate to contact me with any questions or concerns.

Sincerely,

David P. Cook
General Counsel
Office of the West Virginia Secretary of State
Main:  (304) 558-6000
Email: DCook@wvsos.gov

# Exhibit 10

**SUPPLEMENTARY INFORMATION:** The Commission instituted this investigation on January 24, 2003, based on a complaint filed by Charles D. Walkden ("Walkden") of Homer, Alaska. 68 FR 3550 (2003). The complaint, as amended, alleged violations of section 337 in the importation, sale for importation, and sale within the United States after importation of certain truck bed ramps and components thereof that infringe claim 1 of U.S. Patent No. 5,795,125 ("the '125 patent"). The Commission named as respondents ETEC of Saskatoon, SK, Canada; Textron Inc. ("Textron") of Providence, Rhode Island; VIP Distributing of Anchorage, Alaska; Southwest Distributing Co. of Clinton, Oklahoma; and Hamilton Equipment Inc. of Ephrata, Pennsylvania. *Id.* Textron was subsequently terminated from the investigation on the basis of a consent order.

On June 2, 2003, the Commission investigative attorney ("IA") moved pursuant to Commission rule 210.15(a) for summary determination of non-infringement. On July 10, 2003, the ALJ issued an ID granting the IA's motion. No petitions for review of the ID were filed.

This action is taken under the authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. 1337), and 210.42 of the Commission's Rules of Practice and Procedure (19 CFR 210.42).

Issued: August 6, 2003.

By order of the Commission.

**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. 03–20384 Filed 8–8–03; 8:45 am]
BILLING CODE 7020–02–P

## DEPARTMENT OF JUSTICE

[AAG/A Order No. 015–2003]

### Privacy Act of 1974; Systems of Records

Pursuant to the Privacy Act of 1974 (5 U.S.C. 552a), the Department proposes to modify the following Privacy Act systems of records:

Central Civil Rights Division Index File and Associated Records, JUSTICE/CRT–001 (previously published on February 20, 1998, at 63 FR 8659);

Civil Rights Case Load Evaluation System—Time Reporting System, JUSTICE/CRT–003 (previously published on October 17, 1988, at 53 FR 40510);

Registry of Names of Interested Persons Desiring Notifications of Submissions Under Section 5 of the Voting Rights Act, JUSTICE/CRT–004

(previously published on October 17, 1988, at 53 FR 40511);

Files on Employment Civil Rights Matters from Persons Outside of the Department of Justice, JUSTICE/CRT–007 (previously published on October 17, 1988, at 53 FR 40512); and Civil Rights Division Travel Reports, JUSTICE/CRT–009 (previously published on October 17, 1988, at 53 FR 40514).

The Department is publishing modifications to the above systems of records. This notice includes some major changes such as adding new routine uses. Also, the Department made other non-substantive changes in all the above systems to provide clarification, such as to correct typographical errors, to provide updated addresses, to update information on particular statutes, to clarify existing routine uses, to add data elements omitted from previous notices, and to reflect nomenclature changes. The proposed rule for the Privacy Act exemptions is also being updated and is published in today's **Federal Register**.

First, in the Central Civil Rights Division Index File and Associated Records system, CRT–001, the Department proposes to allow records which may disclose a violation or potential violations of law to be referred to the appropriate authority charged with the responsibility for investigation, enforcing or prosecuting such violation. Two other routine use disclosures permit the disclosure of information regarding the progress and results of investigations to contractors, experts, students, consultants, mediators, negotiators, and other persons performing work or on assignment to the Federal Government. Another routine use will permit the disclosure of information to former employees of the Department for matters in which they were involved. In addition, a revised routine use will permit disclosure of health care-related information obtained during health care-related investigations.

Second, the Department proposes to add five routine use disclosures to Civil Rights Interactive Case Management System, CRT–003. The first routine use allows records which may disclose a violation or potential violations of law to be referred to the appropriate authority charged with the responsibility for investigation, enforcing or prosecuting such violation. Two routine uses are similar to those above: To permit the disclosure of information regarding the progress and results of investigations to contractors, experts, students, consultants, and other persons performing work or on

assignment to the Federal Government; and to permit the disclosure of information to former employees of the Department for matters in which they were involved. One routine use will permit disclosure to complainants and victims to provide information about the progress and/or results of an investigation or case. Further, information may be disclosed to the media under certain circumstances unless it would constitute an unwarranted invasion of personal privacy.

Third, the Department proposes to add three routine use disclosures to Registry of Names of Interested Persons Desiring Notifications of Submissions Under Section 5 of the Voting Rights Act, CRT–004. Two routine uses are similar to that above: To permit the disclosure of information regarding the progress and results of investigations to contractors, experts, students, consultants, and other persons performing work or on assignment to the Federal Government; and to permit the disclosure of information to former employees of the Department for matters in which they were involved. Another routine use will allow records which may disclose a violation or potential violations of law to be referred to the appropriate authority charged with the responsibility for investigation, enforcing or prosecuting such violation.

Fourth, the Department proposes to add three routine use disclosures to Files on Employment Civil Rights Matters from Persons Outside of the Department of Justice, CRT–007. This routine use will permit the disclosure to complainants and victims to provide information about the progress or results of an investigation or case. Two routine uses are identical to that above: To permit the disclosure of information regarding the progress and results of investigations to contractors, experts, students, consultants, and other persons performing work or on assignment to the Federal Government; and to permit the disclosure of information to former employees of the Department for matters in which they were involved. One routine use will permit disclosure to complainants and victims to provide information about the progress or results of an investigation or case.

Fifth, the Department proposes to add two identical routine uses as those above, for disclosure to contractors and former employees, in Civil Rights Division Travel Reports, CRT–009. The other routine use will allow records which may disclose a violation or potential violations of law to be referred to the appropriate authority charged with the responsibility for investigation,

**Federal Register** / Vol. 68, No. 154 / Monday, August 11, 2003 / Notices **47611**

enforcing or prosecuting such violation or law.

In addition, the Civil Rights Division has one system of records, CRT–002, Files of Application for the Position of Attorney with the Civil Rights Division, which is now covered by two government wide systems of records of the Office of Personnel Management (OPM): OPM/GOVT–1, General Personnel Records; and OPM/GOVT–5, Recruiting, Examining and Placement Records (both published on April 27, 2000, at 65 FR 24732–24753). Accordingly, these government wide system notices replace, and the Department hereby removes, on the effective date of this notice, the following notice previously published by an individual Department of Justice component:

Files of Application for the Position of Attorney with the Civil Rights Division, JUSTICE/CRT–002 (previously published on December 17, 1985, at 50 FR 51482).

Finally, the Office of Special Counsel for Immigration Related Unfair Employment Practices was merged into the Civil Rights Division, and its two remaining systems of records are being incorporated into the Civil Rights Division's systems of records. Accordingly, this system notice replaces, and the Department hereby removes, on the effective date of this notice, the following notices previously published by individual Department of Justice components:

Office of Special Counsel, ''Central Index File and Associated Records,'' OSC–001 (previously published on October 17, 1988, at 53 FR 40531); and

Office of Special Counsel, ''Special Counsel for Immigration Related Unfair Employment Practices Travel Reports,'' OSC–003 (previously published on September 15, 1988 at 53 FR 35926).

The Office of Special Counsel's systems of records, OSC–001 and OSC–003, were incorporated into the Civil Rights Division's systems of records, CRT–001 and CRT–009, respectively.

The modified systems of records are printed below.

In accordance with 5 U.S.C. 552a(e)(4) and (11), the public is given a 30-day period in which to comment; and the Office of Management and Budget (OMB), which has oversight responsibility of the Act, requires a 40-day period in which to conclude its review of the system. Therefore, please submit any comments by September 10, 2003. The public, OMB and the Congress are invited to submit comments to: Mary Cahill, Management and Planning Staff, Justice Management Division, Department of Justice, 1331 Pennsylvania Ave., NW., Washington, DC 20530 (1400 National Place Building).

In accordance with 5 U.S.C. 552a(r), the Department has provided a report to OMB and Congress.

Dated: July 24, 2003.

**Paul R. Corts,**
*Assistant Attorney General for Administration.*

## JUSTICE/CRT–001

### SYSTEM NAME:

Central Civil Rights Division Index File and Associated Records, CRT–001.

### SYSTEM LOCATION:

United States Department of Justice, Civil Rights Division (CRT), 950 Pennsylvania Avenue, NW., Washington, DC 20530–0001.

### CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

These persons may include: Subjects of investigations, victims, potential witnesses, individuals of Japanese ancestry who were eligible, or potentially eligible, for restitution benefits as a result of their evacuation, relocation, or internment during World War II, and representatives on behalf of individuals and other correspondents on subjects directed or referred to CRT or other persons or organizations referred to CRT in potential or actual cases and matters of concern to CRT, and CRT employees who handle complaints, cases or matters of concern to CRT.

### CATEGORIES OF RECORDS IN THE SYSTEM:

Records in this system consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division. The delegated legal duties and responsibilities of each section are described in detail at the Civil Rights Division Web page: *http://www.usdoj.gov/crt/crt-home.html*. In addition to the sections, the Civil Rights Division maintains records related to the duties of the former Office of Redress Administration pertaining to the identification, location and authorization for restitution payments to eligible individuals of Japanese ancestry who were evacuated, relocated or interned during World War II. These restitution payments were authorized by section 105 of the Civil Liberties Act of 1988 (50 U.S.C. App. 1989b). Finally, the names of some individuals, *e.g.*, witnesses, may not yet be on the central indices and may be obtained by direct access to the file jackets. Such file jackets are located within the respective sections of CRT according to the legal subject matter assigned to each CRT section.

### AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

The records in the system of records are kept under the authority of 44 U.S.C. 3101 and in the ordinary course of fulfilling the responsibility assigned to CRT under the provisions of 28 CFR 0.50, 0.51.

### PURPOSES:

The purposes of this system are to assist all the sections within the Division in maintaining names of Division employees and their case investigation assignments, names of defendants or investigation targets, victims, witnesses or potential witnesses, or other persons or organizations as they relate to potential or actual cases, investigations, and matters of concern to CRT. Other purposes are to assist employees and officials within the Division to review and make decisions in the course of investigations and legal proceedings, to assist the Division in preparing budget requests, to respond to inquiries from outside the Department, and to carry out other authorized Department functions.

### ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

A record maintained in this system of records may be disseminated as a routine use of such records as follows:

(1) In the event that a record in this system, either alone or in conjunction with other information, indicates a violation or potential violation of law—criminal, civil, or regulatory in nature—the relevant records may be referred to the appropriate Federal, State, local, foreign, or Tribal law enforcement authority or other appropriate agency charged with the responsibility for investigating or prosecuting such violation or charged with enforcing or implementing such law;

(2) In the course of the administration by CRT of a federally mandated program, or the investigation or litigation of a case or matter, a record may be disseminated to a Federal, State or local agency, or to an individual or organization, if there is reason to believe that such agency, individual or organization possesses information or has the expertise in an official or technical capacity to assist in the administration of such program or to analyze information relating to the investigation, trial or hearing and the dissemination is reasonably necessary to elicit such assistance, information or expert analysis, or to obtain the

cooperation of a prospective witness or informant;

(3) A record relating to a case or matter, or any facts derived therefrom, may be disseminated in a proceeding before a court, grand jury, administrative or regulatory proceeding or any other adjudicative body before which CRT is authorized to appear, when the United States, or any agency or subdivision thereof, is a party to litigation or has an interest in litigation and such records are determined by CRT to be arguably relevant to the litigation;

(4) A record relating to a case or matter may be disseminated to an actual or potential party to litigation or the party's attorney (a) for the purpose of negotiation or discussion on such matters as settlement of the case or matter, plea bargaining or (b) in informal discovery proceedings;

(5) A record relating to a case or matter that has been referred for investigation may be disseminated to the referring agency to notify such agency of the status of the case or matter or of any determination that has been made;

(6) A record relating to a person held in custody or probation during a criminal proceeding or after conviction may be disseminated to any agency or individual having responsibility for the maintenance, supervision or release of such person;

(7) A record may be disseminated to the United States Commission on Civil Rights in response to its request and pursuant to 42 U.S.C. 1975d;

(8) To contractors, grantees, experts, consultants, students, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for the Federal Government, when necessary to accomplish an agency function related to this system of records;

(9) A record may be disseminated to mediators, negotiators or other persons engaged in efforts to resolve or settle cases or matters pending in the Division as is necessary to enable them to perform their assigned duties;

(10) A record may be disseminated to complainants and victims to the extent necessary to provide such persons with information and explanations concerning the progress or results of the investigation or case arising from the matters of which the complainants or victims complained or of which they were a victim;

(11) Information relating to health care fraud may be disclosed to private health plans, or associations of private health plans, health insurers, or associations of health insurers, to promote the coordination of efforts to prevent, detect, investigate, and prosecute health care fraud; to assist efforts by victims of health care fraud to obtain restitution; to enable private health plans to participate in local, regional, and national health care fraud task force activities; and to assist tribunals, which have jurisdiction over claims against private health plans for allegedly improper disclosures to the Department of Justice of information concerning suspected health care fraud, in determining whether the private health plan qualifies for statutory immunity from civil liability as provided by Section 201 of the Health Insurance Portability and Accountability Act of 1998, codified at 42 U.S.C. 1320a–7c(a)(3)(B)(iii);

(12) Information permitted to be released to the news media and the public pursuant to 28 CFR 50.2 may be made available unless it is determined that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy;

(13) Information may be disclosed as is necessary to respond to inquiries by Members of Congress on behalf of individual constituents who are subjects of CRT records;

(14) A record may be disclosed as a routine use to the National Archives and Records Administration (NARA) and to the General Services Administration (GSA) in records management inspections conducted under the authority of 44 U.S.C. 2904 and 2906;

(15) To a former employee of the Department for purposes of: Responding to an official inquiry by a Federal, State, or local government entity or professional licensing authority, in accordance with applicable Department regulations; or facilitating communications with a former employee that may be necessary for personnel-related or other official purposes where the Department requires information and/or consultation assistance from the former employee regarding a matter within that person's former area of responsibility.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Information in this system is stored on index cards, in file jackets, and on computer disks or tapes.

**RETRIEVABILITY:**

Records are retrieved by the names of individuals or by case numbers assigned to certain cases being investigated by the Department.

**SAFEGUARDS:**

Information in manual and computer form is safeguarded and protected in accordance with applicable Department security regulations for systems of records. Only a limited number of staff members who are assigned a specific identification code will be able to use the computer to access the stored information. However, a section may decide to allow its employees access to the system in order to perform their official duties.

**RETENTION AND DISPOSAL:**

Records are maintained on the system while current and required for official Government use. When no longer needed on an active basis, the paper files are transferred to the Federal Records Center, Suitland, Maryland and some records are transferred to computer tape and stored in accordance with Department security regulations for systems of records. Final disposition is in accordance with records retention schedules approved by NARA.

**SYSTEM MANAGER(S) AND ADDRESS:**

Executive Officer, Administrative Management Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, NW., Washington, DC 20530–0001.

**NOTIFICATION PROCEDURE:**

Part of this system is exempted from this requirement under 5 U.S.C. 552a(j)(2) and (k)(2). Address inquiries to the System Manager listed above.

**RECORD ACCESS PROCEDURES:**

Part of this system is exempted from this requirement under 5 U.S.C. 552a(j)(2) and (k)(2). To the extent that this system of records is not subject to exemption, it is subject to access and contest. A determination as to exemption shall be made at the time a request for access is received. A request for access to a record retrievable in this system shall be made in writing, with the envelope and letter clearly marked ''Privacy Access Request.'' Include in the request the full name of the individual, his or her current address, date and place of birth, notarized signature or dated signature submitted under penalty of perjury (28 CFR 16.41(d)), the subject of the case or matter as described under ''Categories of records in the system,'' and any other information which is known and may be of assistance in locating the record, such as the name of the civil rights related case or matter involved, where and when it occurred and the name of the judicial district involved. The requester will also provide a return address for

transmitting the information. Access requests should be directed to the System Manager listed above.

**CONTESTING RECORD PROCEDURES:**

Individuals desiring to contest or amend non-exempt information retrievable in the system should direct their request to the System Manager listed above, stating clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought.

**RECORD SOURCE CATEGORIES:**

Sources of information contained in this system may be an agency or person who has or offers information related to the law enforcement responsibilities and/or other statutorily-mandated duties of CRT.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

The Attorney General has exempted parts of this system from subsections (c)(3) and (4); (d)(1), (2), (3), and (4); (e)(1), (2), (3), (5), and (8); and (g) of the Privacy Act pursuant to 5 U.S.C. 552a (j)(2), (k)(1) and (k)(2). Rules have been promulgated in accordance with the requirements of 5 U.S.C. 553 (b), (c) and (e) and have been published in the **Federal Register**. These exemptions apply only to the extent that information in a record pertaining to a particular individual relates to an official federal investigation and/or law enforcement matter. Those files indexed under an individual's name which concern only the administrative management of restitution payments under section 105 of the Civil Liberties Act of 1988 are not being exempted pursuant to 5 U.S.C. 552a(j)(2) and (k)(2).

## JUSTICE/CRT–003

**SYSTEM NAME:**

Civil Rights Interactive Case Management System (ICM).

**SYSTEM LOCATION:**

United States Department of Justice, Civil Rights Division (CRT), 950 Constitution Ave., NW., Washington, DC 20530–0001.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

These persons may include: Complainants, victims, defendants, parties, experts, mediators, Assistant U.S. Attorneys, judges, and individuals or representatives on behalf of individuals in potential or actual cases and matters of concern under jurisdiction of the Civil Rights Division; and CRT employees, including attorneys, paralegals, and professional staff, who handle complaints, cases or matters of concern to CRT.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

(1) Records in this system pertain to a broad variety of cases and matters under the jurisdiction of the CRT relating to disability rights, education, employment, housing, special litigation, voting, criminal, enforcement, and other civil rights laws or matters;

(2) Summary information of these cases or matters is maintained in the system including such information as names of principal parties or subjects, proper case name, case numbers, judicial district, assignments, alleged violation, section of CRT responsible for the matter, and case status, ranging from the preliminary development stage, through investigation, litigation, compliance, appeal, conviction or closure; and

(3) The ICM also has a time reporting system that allows the CRT to capture, analyze and report the professional time attorneys, paralegals and other employees of the Division spend on investigation and case related tasks.

**PURPOSE(S):**

The ICM is designed to track, count and measure all investigations and cases throughout their life cycle. The CRT uses reports generated from this system to provide a profile for each section's activities and to furnish management with a global perspective to the CRT workload. The ICM also has a time reporting system that allows the CRT to capture, analyze and report the level of effort attorneys, paralegals, and professional staff spend on investigation and case related tasks. One purpose of this system is to assist employees and officials of the Department to keep track of resources and professional time devoted to individual assignments to matters and broad categories of cases. Another purpose is to assist the CRT in preparing budget requests and other reports which may be submitted to the Attorney General or to Congress.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

The records in this system are kept under the authority of 44 U.S.C. 3101 and in the ordinary course of fulfilling the responsibilities assigned to CRT under 28 CFR 0.50, 0.51.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

A record maintained in this system of records may be disseminated as a routine use of such records as follows:

(1) A record relating to this system, or any facts derived therefrom, may be disseminated in a proceeding before a court, grand jury, administrative or regulatory proceeding or any other adjudicative body before which CRT is authorized to appear, when the United States, or any agency or subdivision thereof, is a party to litigation or has an interest in litigation and such records are determined by CRT to be arguably relevant to the litigation;

(2) In the event that a record in this system, either alone or in conjunction with other information, indicates a violation or potential violation of law— criminal, civil, or regulatory in nature— the relevant records may be referred to the appropriate Federal, State, local, foreign, or Tribal law enforcement authority or other appropriate agency charged with the responsibility for investigating or prosecuting such violation or charged with enforcing or implementing such law;

(3) A record relating to this system may be disseminated to an actual or potential party to litigation or the party's attorney or authorized representative for the purpose of negotiation or discussion on such matters as settlement of the case or matter, plea bargaining, or in informal discovery proceedings;

(4) A record may be disseminated to contractors, grantees, experts, consultants, students, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for the Federal Government, when necessary to accomplish an agency function related to this system of records;

(5) A record may be disseminated to complainants and victims to the extent necessary to provide such persons with information and explanations concerning the progress or results of the investigation or case arising from the matters of which the complainants or victims complained or of which they were a victim;

(6) A record may be disseminated to a former employee of the Department for purposes of: Responding to an official inquiry by a Federal, State, or local government entity or professional licensing authority, in accordance with applicable Department regulations; or facilitating communications with a former employee that may be necessary for personnel-related or other official purposes where the Department requires information and/or consultation assistance from the former employee regarding a matter within that person's former area of responsibility.

(7) Information permitted to be released to the news media and the public pursuant to 28 CFR 50.2 may be made available unless it is determined

**47614**   **Federal Register**/Vol. 68, No. 154/Monday, August 11, 2003/Notices

that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy;

(8) Information in the system may be disclosed as is necessary to respond to inquiries by Members of Congress on behalf of individual constituents who are subjects of CRT records; and

(9) A record from the system or records may be disclosed to National Archives and Records Administration (NARA) and General Services Administration (GSA) for records management inspections conducted under the authority of 44 U.S.C. 2904 and 2906.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Records are maintained electronically in the ICM computerized information system.

**RETRIEVABILITY:**

Information is retrieved by name or other identifier assigned to an individual.

**SAFEGUARDS:**

Information contained in the system is unclassified. It is safeguarded and protected in accordance with Departmental security regulations for systems or records. Access to the records is limited to those employees whose official duties require such access in order to perform their duties.

**RETENTION AND DISPOSAL:**

Records are maintained in the system while current and required for official Government use. When no longer needed on an active basis, the records are stored in accordance with Departmental security regulations for systems of records. The disposition schedule is pending approval at NARA.

**SYSTEM MANAGER(S) AND ADDRESS:**

Executive Officer, Administrative Management Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Ave., NW., Washington, DC 20530–0001.

**NOTIFICATION PROCEDURE:**

Address inquiries to the system manager listed above.

**RECORD ACCESS PROCEDURE:**

A request for access to a record retrievable in this system shall be made in writing, with the envelope and letter clearly marked ''Privacy Access Request.'' Include in the request the full name of the individual involved, his or her current address, date and place of birth, and notarized signature or dated signature submitted under penalty of perjury (28 CFR 16.41(d)), and any other information which is known and may be of assistance in locating the record. The requester should provide a return address for transmitting the information. Access requests should be directed to the System Manager listed above.

**CONTESTING RECORD PROCEDURES:**

Individuals desiring to contest or amend their records should direct their request to the System Manager listed above, stating clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought.

**RECORD SOURCE CATEGORIES:**

Information on time-allocation is provided by CRT attorneys, paralegals and professional staff who handle complaints, cases or matters of concern to the CRT. Sources of information contained in this system are those records reflecting all cases or matters under consideration by CRT.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**JUSTICE/CRT–004**

**SYSTEM NAME:**

Registry of Names of Interested Persons Desiring Notification of Submissions under Section 5 of the Voting Rights Act.

**SYSTEM LOCATION:**

U.S. Department of Justice, Civil Rights Division (CRT), 950 Pennsylvania Avenue, NW., Washington, DC 20530–0001.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Persons who have requested that the Attorney General send them notice of submissions under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

The Registry contains the name, address and telephone numbers of interested parties, and, where appropriate, the voting area or areas with respect to which notification was requested by such persons.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

46 FR 877 (1981) codified in 28 CFR part 51, 42 U.S.C. 1973c, 5 U.S.C. 301 and 28 U.S.C. 509, 510.

**PURPOSE(S):**

The purpose is to maintain records in a Registry to identify persons interested in receiving notification of submissions under Section 5 of the Voting Rights Act and to comply with their requests. Section 5, which applies to several states and some counties, requires that any change with respect to voting that a specially covered jurisdiction makes is legally unenforceable unless and until the jurisdiction obtains from the Federal court in the District of Columbia or from the Attorney General a determination that the change is not discriminatory on account of race, color, or membership in a language minority group. If the jurisdiction is unable to prove the absence of discrimination, the Attorney General objects to the change, and it remains legally unenforceable. Further, the Registry may be used to notify the persons listed therein of any proposed changes in the ''Procedures for the Administration of Section 5 of the Voting Rights Act of 1965,'' 46 FR 870 (1981), codified in 28 CFR part 51, and to solicit their comments with respect to any such proposed changes.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

A record maintained in this system of records may be disseminated as a routine use of such records as follows:

(1) A record relating to this system, or any facts derived therefrom, may be disseminated in a proceeding before a court, grand jury, administrative or regulatory proceeding or any other adjudicative body before which CRT is authorized to appear, when the United States, or any agency or subdivision thereof, is a party to litigation or has an interest in litigation and such records are determined by CRT to be arguably relevant to the litigation;

(2) A record relating to this system may be disseminated to an actual or potential party to litigation or the party's attorney or authorized representative for the purpose of negotiation or discussion on such matters as settlement of the case or matter, plea bargaining or in informal discovery proceedings.

(3) A record may be disseminated to contractors, grantees, experts, consultants, students, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for the Federal Government, when necessary to accomplish an agency function related to this system of records;

(4) A record may be disseminated to complainants and victims to the extent necessary to provide such persons with information and explanations concerning the progress and/or results of the investigation or case arising from

the matters of which the complainants or victims complained or of which they were a victim;

(5) Information permitted to be released to the news media and the public pursuant to 28 CFR 50.2 may be made available from systems of records maintained by the Department of Justice unless it is determined that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy;

(6) Information in the system may be disclosed as is necessary to respond to inquiries by Members of Congress on behalf of individual constituents who are subjects of CRT records;

(7) A record from a system of records may be disclosed as a routine use to National Archives and Records Administration (NARA) and General Services Administration (GSA) in records management inspections conducted under the authority of 44 U.S.C. 2904 and 2906;

(8) A record may be disclosed to a former employee of the Department for purposes of: Responding to an official inquiry by a Federal, State, or local government entity or professional licensing authority, in accordance with applicable Department regulations; or facilitating communications with a former employee that may be necessary for personnel-related or other official purposes where the Department requires information and/or consultation assistance from the former employee regarding a matter within that person's former area of responsibility; and

(9) In the event that a record in this system, either alone or in conjunction with other information, indicates a violation or potential violation of law— criminal, civil, or regulatory in nature— the relevant records may be referred to the appropriate federal, state, local, foreign, or tribal law enforcement authority or other appropriate agency charged with the responsibility for investigating or prosecuting such violation or charged with enforcing or implementing such law.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Names are stored in a card file system, and an automated addresser.

**RETRIEVABILITY:**

Records in this system are retrievable by the names of interested persons or organizations.

**SAFEGUARDS:**

Information in the system is safeguarded in accordance with

Departmental rules and procedures governing access, production and disclosure of any materials contained in its official files.

**RETENTION AND DISPOSAL:**

An individual or organizational name is retained in the Registry until such time as that person or organization requests that the name be deleted.

**SYSTEM MANAGER(S) AND ADDRESS:**

Chief, Voting Section, Civil Rights Division, U.S. Department of Justice, 950 Pennsylvania Ave., NW., Washington, DC 20530–0001.

**NOTIFICATION PROCEDURE:**

Address inquiries to: Assistant Attorney General, Civil Rights Division, U.S. Department of Justice, 950 Pennsylvania Ave., NW., Washington, DC 20530–0001.

**RECORD ACCESS PROCEDURES:**

This system contains no information about any individual other than as described in Categories of Records above. Persons whose names appear on the Registry may have access thereto or have their names and other information pertaining to them deleted or modified upon a request of the same nature as indicated in 46 FR 877 (1981), codified in 28 CFR part 51.

**CONTESTING RECORD PROCEDURES:**

Same as the above.

**RECORD SOURCE CATEGORIES:**

Sources of information in the Registry are those persons or organizations whose names appear therein by virtue of their having requested inclusion in the Registry pursuant to 46 FR 877 (1981), codified in 28 CFR 51.32.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**JUSTICE/CRT–007**

**SYSTEM NAME:**

Files on Employment Civil Rights Matters Referred by the Equal Employment Opportunity Commission.

**SYSTEM LOCATION:**

U.S. Department of Justice, Civil Rights Division (CRT), 950 Pennsylvania Avenue NW., Washington, DC 20530– 0001.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Persons seeking employment or employed by a state or a political subdivision of a state who have filed charges alleging discrimination in employment with the Equal Employment Opportunity Commission

(hereinafter EEOC) which have resulted in a determination by EEOC that there is probable cause to believe that such discrimination has occurred, and attempts by EEOC at conciliation have failed.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

The system may contain copies of charges filed with EEOC, copies of EEOC's ''determination'' letters, letters of transmittal from and to EEOC, analyses or evaluations summarizing the charge and other materials in the EEOC file, internal memoranda, attorney notes, and copies of ''right to sue'' letters issued by CRT. The system may also contain charges related to allegations of employment discrimination by public employers filed by individual complainants which have been referred to the Department of Justice by EEOC pursuant to 42 U.S.C. 2000e–5(f) (1) or 5(f) (2), or to allegations of a pattern or practice of violations of the Equal Employment Opportunity Act by a public employer which have been referred to the Department of Justice by EEOC pursuant to 42 U.S.C. 2000e–6. If the Department has determined to initiate an investigation or litigate a matter referred by EEOC the records pertaining to that matter are not contained in the system. Such records and their routine uses are described under the notice for the system named: Central CRT Index File and Associated Records/CRT–001.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

The records in this system of records are kept under authority of 44 U.S.C. 3101 and in the ordinary course of fulfilling the responsibilities assigned to CRT under 28 CFR 0.50, 0.51.

**PURPOSE(S):**

One purpose of this system is to assist employees and officials of the Department to make decisions regarding the issuance of right to sue letters or make decisions regarding prosecutions of alleged instances of employment discrimination. Another purpose is to assist the Division in preparing budget requests, statistical reports, and other internal functions of the Department.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

A record maintained in this system of records may be disseminated as a routine use of such records as follows:

(1) A record relating to this system, or any facts derived therefrom may be disseminated in a proceeding before a court, grand jury, administrative or regulatory proceeding or any other adjudicative body before which CRT is

authorized to appear, when the United States, or any agency or subdivision thereof, is a party to litigation or has an interest in litigation and such records are determined by CRT to be arguably relevant to the litigation;

(2) A record relating to this system may be disseminated to an actual or potential party to litigation or the party's attorney or authorized representative for the purpose of negotiation or discussion on such matters as settlement of the case or matter, plea bargaining or in informal discovery proceedings;

(3) A record may be disseminated to contractors, grantees, experts, consultants, students, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for the Federal Government, when necessary to accomplish an agency function related to this system of records;

(4) A record may be disseminated to complainants and victims to the extent necessary to provide such persons with information and explanations concerning the progress and/or results of the investigation or case arising from the matters of which the complainants or victims complained or of which they were a victim;

(5) Information permitted to be released to the news media and the public pursuant to 28 CFR 50.2 may be made available from systems of records maintained by the Department of Justice unless it is determined that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy;

(6) Information in the system may be disclosed as is necessary to respond to inquiries by Members of Congress on behalf of individual constituents who are subjects of CRT records;

(7) A record from a system of records may be disclosed as a routine use to National Archives and Records Administration (NARA) and General Services Administration (GSA) in records management inspections conducted under the authority of 44 U.S.C. 2904 and 2906; and

(8) A record may be disclosed to a former employee of the Department for purposes of: Responding to an official inquiry by a Federal, State, or local government entity or professional licensing authority, in accordance with applicable Department regulations; or facilitating communications with a former employee that may be necessary for personnel-related or other official purposes where the Department requires information and/or consultation assistance from the former employee

regarding a matter within that person's former area of responsibility.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Information in the systems is stored on index cards, in file jackets, and in computer disks which are maintained by the Employment Litigation Section, Civil Rights Division.

**RETRIEVABILITY:**

Information is retrieved primarily by using the appropriate Department of Justice file number, or the name of the charging party, or the state in which the alleged discrimination occurred or through other logical queries to the computer based system.

**SAFEGUARDS:**

Information in manual and computer form is safeguarded and protected in accordance with applicable Departmental security regulations for systems of records. Staff members who are assigned a specific identification code will be able to use the computer or to access the stored information in order to perform their official duties.

**RETENTION AND DISPOSAL:**

If the Department determines not to prosecute a matter referred by the EEOC, the records transmitted with the referral are returned to the EEOC. Other records in the system are kept for routine use by the Department and when no longer needed are sent to the Federal Records Center or are destroyed. Records are retained and disposed of in accordance with item 25 of the General Records Schedule 1 as approved by the Archivist of the United States.

**SYSTEM MANAGER(S) AND ADDRESS:**

Assistant Attorney General, Civil Rights Division, U.S. Department of Justice, 950 Pennsylvania Ave., NW., Washington, DC 20530–0001.

**NOTIFICATION PROCEDURE:**

Same as the above.

**RECORD ACCESS PROCEDURE:**

A request for access to a record from this system shall be made in writing with the envelope and letter clearly marked ''Privacy Access Request.'' The request should indicate the state where the alleged employment discrimination took place and the employer to which the charge was related. The requester should also provide the full name of the individual involved, his or her current address, date and place of birth, notarized signature or dated signature submitted under penalty of perjury (28

CFR 16.41(d)), any other known information which may be of assistance in locating the record, and a return address for transmitting the information. Access requests will be directed to the System Manager listed above.

**CONTESTING RECORD PROCEDURES:**

Individuals desiring to contest or amend information maintained in the system should direct their request to the System Manager listed above, stating clearly and concisely what information is being contested, the reasons for contesting it, and the proposed amendment to the information sought. Disclosure of part of the material in this system may be prohibited by 42 U.S.C. 2000e-5(b), 42 U.S.C. 2000e-8(e) and 44 U.S.C. 3510(b). Part of this system is exempted from access and contest under 5 U.S.C. 552a(k) (2).

**RECORD SOURCE CATEGORIES:**

Sources of information in this system are charging parties, information compiled and maintained by EEOC, and employees and officials of the Department of Justice responsible for the disposition of the referral request.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

The Attorney General has exempted the system from 5 U.S.C. 552a (d)(1), (2), (3), and (4) of the Privacy Act pursuant to 5 U.S.C. 552a (k)(2). Rules have been promulgated in accordance with the requirements of 5 U.S.C. 553 (b), (c) and (e), and have been published in the **Federal Register**.

**JUSTICE/CRT–009**

**SYSTEM NAME:**

Civil Rights Division Travel Reports, CRT–009.

**SYSTEM LOCATION:**

United States Department of Justice, Civil Rights Division (CRT), 950 Pennsylvania Avenue, NW., Washington, DC 20530–0001.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

All persons who have filed travel authorization forms or travel voucher forms for official travel on behalf of CRT.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

The Division's filing system contains information concerning travel expenditures which were recorded on travel authorization forms and travel voucher forms by CRT employees or other persons authorized to travel for CRT and submitted to the Budget and Finance Branch of CRT.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

The records in this system of records are kept under the authority of 44 U.S.C. 3101 and in the ordinary course of fulfilling the responsibilities assigned to CRT under 28 CFR 0.50, 0.51.

**PURPOSE(S):**

One purpose of this system is to assist employees and officials of the Division to measure and track expenditures within the Division. Other purposes are to assist the Division in preparing reports within various sections to control and review expenditures.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

A record maintained in this system of records may be disseminated as a routine use of such records as follows:

(1) A record relating to this system, or any facts derived therefrom, may be disseminated in a proceeding before a court, grand jury, administrative or regulatory proceeding or any other adjudicative body before which CRT is authorized to appear, when the United States, or any agency or subdivision thereof, is a party to litigation or has an interest in litigation and such records are determined by CRT to be arguably relevant to the litigation;

(2) A record relating to this system may be disseminated to an actual or potential party to litigation or the party's attorney or authorized representative for the purpose of negotiation or discussion on such matters as settlement of the case or matter, plea bargaining or in informal discovery proceedings;

(3) A record may be disseminated to contractors, grantees, experts, consultants, students, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for the Federal Government, when necessary to accomplish an agency function related to this system of records;

(4) Information permitted to be released to the news media and the public pursuant to 28 CFR 50.2 may be made available from systems of records maintained by the Department of Justice unless it is determined that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy;

(5) Information in the system may be disclosed as is necessary to respond to inquiries by Members of Congress on behalf of individual constituents who are subjects of CRT records;

(6) A record from a system of records may be disclosed as a routine use to National Archives and Records Administration (NARA) and General Services Administration (GSA) in records management inspections conducted under the authority of 44 U.S.C. 2904 and 2906;

(7) A record may be disclosed to a former employee of the Department for purposes of: Responding to an official inquiry by a Federal, State, or local government entity or professional licensing authority, in accordance with applicable Department regulations; or facilitating communications with a former employee that may be necessary for personnel-related or other official purposes where the Department requires information and/or consultation assistance from the former employee regarding a matter within that person's former area of responsibility; and

(8) In the event that a record in this system, either alone or in conjunction with other information, indicates a violation or potential violation of law-criminal, civil or regulatory in nature-the relevant records may be referred to the appropriate Federal, State, local, foreign, or Tribal law enforcement authority or other appropriate agency charged with the responsibility for investigating or prosecuting such violation or charged with enforcing or implementing such law.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Records are stored in hard copy and electronic form.

**RETRIEVABILITY:**

Records in this system are retrieved by the names of those individuals identified under the caption "Categories of individuals covered by the system."

**SAFEGUARDS:**

Information in the system is unclassified. However, the records are protected in accordance with applicable Department security regulations for systems of records. Records are stored in locked cabinets and access to the computer is limited to those personnel who have a need for access to perform their official duties.

**RETENTION AND DISPOSAL:**

Records are maintained on the system while current and required for official Government use. When no longer needed on an active basis, the records are transferred to computer tape and stored in accordance with Departmental security regulations for systems of records. Final disposition will be in accordance with records retirement or destruction as scheduled by NARA in General Records Schedule 9.

**SYSTEM MANAGER(S) AND ADDRESS:**

Executive Officer, Administrative Management Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Ave., NW., Washington, DC 20530–0001.

**NOTIFICATION PROCEDURE:**

Same as the above.

**RECORD ACCESS PROCEDURES:**

Requests by former employees for access to records in this system may be made in writing with the envelope and letter clearly marked "Privacy Act Request." The request should clearly state the dates on which official travel was taken. The requestor should also provide the full name of the individual involved, his or her current address, date and place of birth, notarized signature or dated signature submitted under penalty of perjury (28 CFR 16.41(d)), any other known information which may be of assistance in locating the record, and a return address for transmitting the information. Access requests will be directed to the System Manager. Present employees may request access by contacting the System Manager directly.

**CONTESTING RECORD PROCEDURES:**

Individuals desiring to contest or amend information maintained in the system should direct their request to the System Manager listed above, stating clearly and concisely what information is being contested, the reason for contesting it, and the proposed amendment to the information sought.

**RECORD SOURCE CATEGORIES:**

Sources of information are CRT employees and other authorized persons who file travel authorization and travel voucher forms.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

[FR Doc. 03–20342 Filed 8–8–03; 8:45 am]

**BILLING CODE 4410–13–P**

---

**DEPARTMENT OF LABOR**

**Mine Safety and Health Administration**

**Proposed Information Collection Request Submitted for Public Comment and Recommendations; Explosive Materials and Blasting Units**

**ACTION:** Notice.

**SUMMARY:** The Department of Labor, as part of its continuing effort to reduce

# Exhibit 11

determination is negative, upon notice of an affirmative final determination in those investigations under section 735(a) of the Act. Parties that filed entries of appearance in the preliminary phase of the investigations need not enter a separate appearance for the final phase of the investigations. Industrial users, and, if the merchandise under investigation is sold at the retail level, representative consumer organizations have the right to appear as parties in Commission antidumping and countervailing duty investigations. The Secretary will prepare a public service list containing the names and addresses of all persons, or their representatives, who are parties to the investigations.

**Background**

On May 3, 2005, a petition was filed with the Commission and Commerce by the Diamond Sawblade Manufacturers' Coalition and its individual members: Blackhawk Diamond, Inc., Fullerton, CA; Diamond B, Inc., Santa Fe Springs, CA; Diamond Products, Elyria, OH; Dixie Diamond, Lilburn, GA; Hoffman Diamond, Punxsutawney, PA; Hyde Manufacturing, Southbridge, MA; Sanders Saws, Honey Brook, PA; Terra Diamond, Salt Lake City, UT; and Western Saw, Inc., Oxnard, CA, alleging that an industry in the United States is materially injured and threatened with material injury by reason of LTFV imports of diamond sawblades and parts thereof from China and Korea. Accordingly, effective May 3, 2005, the Commission instituted antidumping duty investigation Nos. 731–TA–1092–1093 (Preliminary).

Notice of the institution of the Commission's investigations and of a public conference to be held in connection therewith was given by posting copies of the notice in the Office of the Secretary, U.S. International Trade Commission, Washington, DC, and by publishing the notice in the **Federal Register** of May 10, 2005 (70 FR 24612) and May 26, 2005 (70 FR 30480). The conference was held in Washington, DC, on June 15, 2005, and all persons who requested the opportunity were permitted to appear in person or by counsel.

The Commission transmitted its determination in these investigations to the Secretary of Commerce on July 18, 2005. The views of the Commission are contained in USITC Publication 3791 (August 2005), entitled *Diamond Sawblades and Parts Thereof from China and Korea: Investigation Nos. 731–TA–1092 and 1093 (Preliminary).*

Issued: July 25, 2005.

By order of the Commission.
**Marilyn R. Abbott,**
*Secretary to the Commission.*
[FR Doc. 05–15023 Filed 7–28–05; 8:45 am]
**BILLING CODE 7020–02–P**

---

**DEPARTMENT OF JUSTICE**

[AAG/A Order No. 004–2005]

**Privacy Act of 1974; System of Records**

Pursuant to the Privacy Act of 1974 (5 U.S.C. 552a), the Department of Justice, Civil Rights Division (CRT), proposes to modify the following system of records previously modified and published in full text in the **Federal Register** on August 11, 2003 (68 Fed. Reg. 47611): Central Civil Rights Division Index File and Associated Records, JUSTICE/CRT–001.

CRT is adding one new routine use to this system of records. The records in this system of records are maintained by the Civil Rights Division in order to carry out its responsibilities to investigate and enforce federal statutes affecting civil rights. This routine use allows the disclosure of information explaining the Department's decision to close a criminal matter to the local community or public when the incident investigated has become a matter of public knowledge, the investigation is closed, and the Assistant Attorney General, Civil Rights Division, personally determines that, because there is a reasonable potential for civil unrest or a severe loss of confidence by the public in the investigative process, the disclosure of such information is appropriate. The release of information in the new routine use is compatible with the purpose of this system as use of the information is necessary and proper to carry out legitimate government purposes.

In accordance with 5 U.S.C. 552a(e)(4) and (11), the public is given a 30-day period in which to comment on the proposed new routine use disclosure. The Office of Management and Budget (OMB), which has oversight responsibility of the Act, requires a 40-day period in which to conclude its review of the system. Therefore, please submit any comments by August 29, 2005. The public, OMB and the Congress are invited to submit comments to: Mary Cahill, Management and Planning Staff, Justice Management Division, Department of Justice, Room 1400 National Place Building, NW., Washington, DC 20530. If no comments are received, the proposal will be

implemented without further notice in the **Federal Register.**

In accordance with 5 U.S.C. 552a(r), the Department has provided a report to OMB and Congress on the proposed new routine use.

Dated: July 20, 2005.
**Paul R. Corts,**
*Assistant Attorney General for Administration.*

**JUSTICE/CRT–001**

**SYSTEM NAME:**

Central Civil Rights Division Index File and Associated Records, CRT–001.

\*    \*    \*    \*    \*

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

\*    \*    \*    \*    \*

\* \* \* [Add the new routine use (16) to read as follows.]

(16) To the local community or public when the incident investigated has become a matter of public knowledge, the investigation is closed, and the Assistant Attorney General, Civil Rights Division, personally determines that, because there is a reasonable potential for civil unrest or a severe loss of confidence by the public in the investigative process, the disclosure of information explaining the Department's decision to close a criminal matter is appropriate.

\*    \*    \*    \*    \*

[FR Doc. 05–14944 Filed 7–28–05; 8:45 am]
**BILLING CODE 4410–13–P**

---

**DEPARTMENT OF LABOR**

**Employment Standards Administration; Wage and Hour Division**

**Minimum Wages for Federal and Federally Assisted Construction; General Wage Determination Decisions**

General wage determination decisions of the Secretary of Labor are issued in accordance with applicable law and are based on the information obtained by the Department of Labor from its study of local wage conditions and data made available from other sources. They specify the basic hourly wage rates and fringe benefits which are determined to be prevailing for the described classes of laborers and mechanics employed on construction projects of a similar character and in the localities specified therein.

The determinations in these decisions of prevailing rates and fringe benefits have been made in accordance with 29

# Exhibit 12

 
statement of position. *See* generally GX 4. So too, the Government's Request for Final Agency Action does not address whether Dr. Pasic submitted a written statement.[1] *See generally* Gov. Request for Final Agency Action.

In her declaration, the DI stated that she had obtained a copy of Dr. Pasic's Registration and Registration History. GX 4, at 3. According to the DI, "Dr. Pasic allowed his . . . registration to lapse on March 31, 2017" and has not "made any request—timely or untimely—to renew his registration." *Id.*

On May 2, 2017, the Government submitted its Request for Final Agency Action. Therein, the Government noted that the case is moot because Dr. Pasic has allowed his registration to expire and has not submitted an application. Request for Final Agency Action, at 3 (citing *Victor B. Williams,* 80 FR 50029 (2015)). However, while the Government recognizes that the matter is moot, it requests that I issue "a final order . . . setting forth the following facts and conclusions of law" related to the suspension of his state authority to "memorialize the outcome of this proceeding for the record and for purpose of evaluating future applications." *Id.*

I grant the Government's request but only with respect to its request that I dismiss this case as moot. Were I to make the factual findings and legal conclusions requested by the Government, I would be issuing an advisory opinion. Though an administrative agency is not subject to the case or controversy requirements of Article III, relevant authority suggests that in the event Respondent sought judicial review of the decision, the federal courts would lack jurisdiction to review that part of the decision. It is settled, however, that where the federal courts lack the power to review an agency decision because of intervening mootness, the court vacates the agency's order. *See A.L. Mechling Barge Lines, Inc.* v. *United States,* 368 U.S. 324, 329 (1961) (vacating administrative orders which had become unreviewable in federal court); *see also American Family Life Assurance Co.* v. *FCC,* 129 F.3d 625, 630 (D.C. Cir. 1997) ("Since *Mechling,* we have, as a matter of course, vacated agency orders in cases that have become moot by the time of judicial review."). *See also Samuel H. Albert,* 74 FR 54851, 54852 (2009). As the requested factual findings and legal conclusions would be

subject to vacation on judicial review, there is no point to making them.

Because Respondent's registration has expired and he has not filed an application, whether timely or not, this case is now moot. *See Williams,* 80 FR at 50029; *see also William W. Nucklos,* 73 FR 34330 (2008); *Ronald J. Riegel,* 63 FR 67132, 67133 (1988). Accordingly, I will dismiss the Order to Show Cause.

### Order

Pursuant to the authority vested in me by 21 U.S.C. 824(a), as well as 28 CFR 0.100(b), I order that the Order to Show Cause issued to Josip Pasic, M.D., be, and it hereby is, dismissed. This Order is effective immediately.

Dated: May 16, 2017.

**Chuck Rosenberg,**

*Acting Administrator.*

[FR Doc. 2017–10742 Filed 5–24–17; 8:45 am]

**BILLING CODE 4410–09–P**

---

## DEPARTMENT OF JUSTICE

[CPCLO Order No. 004–2017]

### Privacy Act of 1974; System of Records

**AGENCY:** United States Department of Justice.

**ACTION:** Notice of modified Systems of Records; blanket routine use.

**SUMMARY:** Pursuant to the Privacy Act of 1974, 5 and Office of Management and Budget (OMB) Circular No. A–108, notice is hereby given that the United States Department of Justice (Department or DOJ) proposes to modify the DOJ System of Records Notices for the DOJ systems of records listed below.

**DATES:** In accordance with 5 U.S.C. 552a(e)(4) and (11), this notice is subject to a 30-day notice and comment period. Please submit any comments by June 26, 2017.

**ADDRESSES:** The public, OMB, and Congress are invited to submit any comments to the U.S. Department of Justice, ATTN: Privacy Analyst, Office of Privacy and Civil Liberties, National Place Building, 1331 Pennsylvania Avenue NW., Suite 1000, Washington, DC 20530–0001, by facsimile at 202–307–0693, or email at *privacy.compliance@usdoj.gov.* To ensure proper handling, please reference the above CPCLO Order No. on your correspondence.

**FOR FURTHER INFORMATION CONTACT:** Andrew A. Proia, Attorney Advisor, Office of Privacy and Civil Liberties, National Place Building, 1331 Pennsylvania Avenue NW., Suite 1000, Washington, DC 20530–0001, by

facsimile at 202–307–0693, or email at *privacy.compliance@usdoj.gov.* To ensure proper handling, please reference the above CPCLO Order No. on your correspondence.

**SUPPLEMENTARY INFORMATION:** On May 22, 2007, OMB issued Memorandum M–07–16, Safeguarding Against and Responding to the Breach of Personally Identifiable Information, to the heads of all executive departments and agencies. In its memorandum, OMB required agencies to publish a routine use for their systems of records specifically applying to the disclosure of information in connection with response and remedial efforts in the event of a breach of personally identifiable information. DOJ published a notice in the **Federal Register**, 72 FR 3410 (January 25, 2007), modifying all DOJ System of Records Notices by adding a routine use to address the limited disclosure of records related to a suspected or confirmed breach within the Department, consistent with OMB requirements. Since that time, all new DOJ System of Records Notices published by the Department, as well as significantly modified System of Records Notices that were republished in full, included a breach response routine use consistent with the requirements in OMB Memorandum M–07–16.

On January 3, 2017, OMB issued Memorandum M–17–12, Preparing for and Responding to a Breach of Personally Identifiable Information, to the heads of all executive departments and agencies. OMB Memorandum M–17–12 rescinds and replaces OMB Memorandum M–07–16 and updates agency routine use requirements for responding to a breach. Specifically, OMB Memorandum M–17–12 requires all Senior Agency Officials for Privacy to ensure that their agency's System of Records Notices include a routine use for the disclosure of information necessary to respond to a breach of the agency's personally identifiable information. Additionally, OMB Memorandum M–17–12 requires agencies to add a routine use to ensure that agencies are able to disclose records in their systems of records that may reasonably be needed by another agency in responding to a breach.

To satisfy the routine use requirements in OMB Memorandum M–17–12, DOJ is issuing two notices in the **Federal Register** to modify all of the Department's System of Records Notices. The records maintained in many DOJ systems of records are still subject to the Department's blanket breach response routine use published

---

[1] Because I conclude that this matter is now moot, I deem it unnecessary to remand the matter for clarification as to whether Dr. Pasic submitted a written statement.

at 72 FR 3410 (January 25, 2007). For these DOJ systems of records, this notice rescinds 72 FR 3410 (January 25, 2007) and adds the two routine uses required by OMB Memorandum M–17–12.

Other DOJ systems of records have been created or significantly modified since 72 FR 3410 (January 25, 2007) added the previous, OMB-required breach response routine use. The DOJ System of Records Notices for these DOJ systems of records incorporated the OMB Memorandum M–07–16 breach response routine use in their ''ROUTINE USES'' section, rather than relying on the routine use published at 72 FR 3410 (January 25, 2007). These System of Records Notices are not affected by this notice publication. Elsewhere in the **Federal Register**, the Department is

modifying the DOJ System of Records Notices for the DOJ systems of records that do not rely on the breach response routine use published at 72 FR 3410 (January 25, 2007). The DOJ System of Records Notices for these DOJ systems of records are being modified separately to ensure continuity with their previous notice publications. Pursuant to OMB Memorandum M–17–12, Preparing for and Responding to a Breach of Personally Identifiable Information (January 3, 2017), this notice: (1) Rescinds the breach response routine use published at 72 FR 3410 (January 25, 2007); (2) revises the breach response routine use for the DOJ systems of records, listed below; and (3) adds a new routine use to the DOJ systems of records, listed below, to

ensure that the Department can assist another agency in responding to a confirmed or suspected breach, as appropriate.

In accordance with 5 U.S.C. 552a(r), the Department has provided a report to OMB and to Congress on this notice of modified systems of records.

Dated: May 19, 2017.

**Peter A. Winn,**

*Acting Chief Privacy and Civil Liberties Officer, United States Department of Justice.*

United States Department of Justice System of Records Notices and citations follow. An asterisk (*) designates the last full **Federal Register** notice that includes all of the elements that are required to be in a System of Records Notice.

| System No. and name | **Federal Register**, citation(s) |
|---|---|
| JUSTICE/DOJ–001, Accounting Systems for the Department of Justice | 69 FR 31406*, 71 FR 142, 72 FR 3410, 75 FR 13575. |
| JUSTICE/DOJ–002, DOJ Computer Systems Activity & Access Records | 64 FR 73585*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DOJ–003, Correspondence Management Systems (CMS) for the Department of Justice | 66 FR 29992*, 66 FR 34743, 67 FR 65598, 72 FR 3410. |
| JUSTICE/DOJ–005, Nationwide Joint Automated Booking System (JABS) | 71 FR 52821*, 72 FR 3410. |
| JUSTICE/DOJ–006, Personnel Investigation and Security Clearance Records for the Department of Justice. | 67 FR 59864*, 69 FR 65224, 72 FR 3410. |
| JUSTICE/DOJ–007, Reasonable Accommodations for the Department of Justice | 67 FR 34955*, 72 FR 3410. |
| JUSTICE/DOJ–008, Department of Justice Grievance Records | 68 FR 61696*, 69 FR 47179, 72 FR 3410. |
| JUSTICE/DOJ–009, Emergency Contact Systems for the Department of Justice | 69 FR 1762*, 72 FR 3410. |
| JUSTICE/DOJ–010, Leave Sharing Systems | 69 FR 22557*, 69 FR 47179, 72 FR 3410. |
| JUSTICE/DOJ–011, Access Control System (ACS) | 69 FR 70279*, 72 FR 3410. |
| JUSTICE/DOJ–012, Department of Justice Regional Data Exchange System (RDEX) | 70 FR 39790*, 70 FR 72315, 72 FR 3410, 72 FR 4532. |
| JUSTICE/ASG–001, General Files System of the Office of the Associate Attorney General | 69 FR 22872*, 72 FR 3410. |
| JUSTICE/ATF–001, Administrative Record System | 68 FR 3551, 552*, 72 FR 3410. |
| JUSTICE/ATF–003, Criminal Investigation Report System | 68 FR 3551, 553*, 72 FR 3410. |
| JUSTICE/ATF–006, Internal Security Record System | 68 FR 3551, 555*, 72 FR 3410. |
| JUSTICE/ATF–007, Personnel Record System | 68 FR 3551, 556*, 72 FR 3410. |
| JUSTICE/ATF–008, Regulatory Enforcement Record System | 68 FR 3551, 558*, 72 FR 3410. |
| JUSTICE/ATF–009, Technical and Scientific Services Record System | 68 FR 3551, 560*, 72 FR 3410. |
| JUSTICE/ATF–010, Training and Professional Development Record System | 68 FR 3551, 562*, 72 FR 3410. |
| JUSTICE/ATR–001, Antitrust Division Expert Witness File | 54 FR 42060, 061*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/ATR–003, Index of Defendants in Pending and Terminated Antitrust Cases | 60 FR 52690*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/ATR–004, Statements by Antitrust Division Officials (ATD Speech File) | 60 FR 52690, 691*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/ATR–005, Antitrust Management Information System (AMIS)—Time Reporter | 53 FR 40502*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/ATR–006, Antitrust Management Information System (AMIS)—Monthly Report | 63 FR 8659*, 66 FR 8425, 66 FR 17200, 72 FR 3410. |
| JUSTICE/ATR–007, Antitrust Division Case Cards | 60 FR 52690, 692*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/ATR–009, Public Complaints and Inquiries File. | 45 FR 75898, 902*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/ATR–014, Civil Investigative Demand (CID) Tracking System | 60 FR 52690, 694*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/BOP–001, Prison Security and Intelligence Record System | 67 FR 41449*, 72 FR 3410. |
| JUSTICE/BOP–004, Inmate Administrative Remedy Record System | 67 FR 57244*, 72 FR 3410. |
| JUSTICE/BOP–005, Inmate Central Records System | 67 FR 31371*, 72 FR 3410, 77 FR 24982, 81 FR 22639. |
| JUSTICE/BOP–006, Inmate Trust Fund Accounts and Commissary Record System | 67 FR 11711*, 72 FR 3410. |
| JUSTICE/BOP–007, Inmate Physical and Mental Health Record System | 67 FR 11712*, 72 FR 3410. |
| JUSTICE/BOP–008, Inmate Safety and Accident Compensation Record System | 67 FR 41452*, 72 FR 3410. |
| JUSTICE/BOP–009, Administrative Claims Record System | 67 FR 41453*, 72 FR 3410. |
| JUSTICE/BOP–010, Access Control Entry-Exit System | 67 FR 16760*, 72 FR 3410. |
| JUSTICE/BOP–011, Telephone Activity Record System | 67 FR 16762*, 71 FR 9606, 72 FR 3410, 76 FR 79216. |
| JUSTICE/BOP–012, Office of Internal Affairs Investigative Records | 67 FR 9321*, 72 FR 3410. |
| JUSTICE/BOP–013, Inmate Electronic Message Record System | 70 FR 69594*, 72 FR 3410, 76 FR 79216. |
| JUSTICE/BOP–015, Outside Employment Requests Record System | 67 FR 16763*, 72 FR 3410. |

| System No. and name | **Federal Register**, citation(s) |
|---|---|
| JUSTICE/BOP–101, The National Institute of Corrections Technical Resource Provider Record System. | 65 FR 11342*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/BOP–103, National Institute of Corrections Academy Record System | 64 FR 70286*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/BOP–104, National Institute of Corrections Mailing List & Information Center Contacts Records System. | 64 FR 70287*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CIV–001, Civil Division Case File System | 63 FR 8659*, 66 FR 8425, 66 FR 17200, 66 FR 36593, 72 FR 3410. |
| JUSTICE/CIV–002, Civil Division Case File System: Customs Litigation | 45 FR 2215, 217*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CIV–003, Office of Alien Property File System | 42 FR 53288, 324*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CIV–004, Swine Flu Administrative Claim File System | 43 FR 44708*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CIV–005, Annuity Brokers List System | 68 FR 17401*, 72 FR 3410. |
| JUSTICE/CIV–006, Consumer-Inquiry Investigatory System | 53 FR 40506*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CIV–008, September 11th Victim Compensation Fund of 2001 File System | 66 FR 65991*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/COPS–001, Police Corps System | 62 FR 1130, 131*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–002, Criminal Division Witness Security File | 52 FR 47188*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–003, File of Names Checked to Determine if those Individuals Have Been the Subject of an Electronic Surveillance. | 52 FR 47189*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–006, Information File on Individuals and Commercial Entities Known or Suspected of Being Involved in Fraudulent Activities. | 42 FR 53288, 336*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–008, Name Card File on Department of Justice Personnel Authorized to have Access to the Classified Files of the Department of Justice. | 52 FR 47193*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–012, Organized Crime and Racketeering Section, General Index File and Associated Records. | 55 FR 49146, 147*, 66 FR 8425, 66 FR 17200, 72 FR 3410. |
| JUSTICE/CRM–014, Organized Crime and Racketeering Section, Intelligence and Special Services Unit, Information Request System. | 42 FR 53288, 343*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–019, Requests to the Attorney General for Approval of Applications to Federal Judges for Electronic Interceptions. | 52 FR 47198*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–021, The Stocks and Bonds Intelligence Control Card File System | 52 FR 47199*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–022, Witness Immunity Records | 52 FR 47200*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–025, Tax Disclosure Index File and Associated Records | 52 FR 47202*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRM–026, International Prisoner Transfer Case Files-International Prisoner Transfer Tracking System. | 68 FR 22739*, 72 FR 3410. |
| JUSTICE/CRM–027, Office of Special Investigation (OSI) Displaced Persons Listings | 52 FR 47204*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRS–001, Operational Data Information System | 45 FR 2215, 220*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/CRT–001, Central Civil Rights Division Index File and Associated Records | 68 FR 47610, 611*, 70 FR 43904, 72 FR 3410. |
| JUSTICE/CRT–003, Civil Rights Interactive Case Management System | 68 FR 47610, 613*, 72 FR 3410. |
| JUSTICE/CRT–004, Registry of Names of Interested Persons Desiring Notification of Submissions Under Section 5 of the Voting Rights Act. | 68 FR 47610, 614*, 72 FR 3410. |
| JUSTICE/CRT–007, Files on Employment Civil Rights Matters Referred by the Equal Employment Opportunity Commission. | 68 FR 47610, 615*, 72 FR 3410. |
| JUSTICE/CRT–009, Civil Rights Division Travel Reports | 68 FR 47610, 616*, 72 FR 3410. |
| JUSTICE/DAG–006, Presidential Appointee Candidate Records System | 50 FR 42607*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DAG–007, Presidential Appointee Records System | 50 FR 42608*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DAG–008, Special Candidates for Presidential Appointments and Noncareer SES Positions Records System. | 59 FR 45005*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DAG–010, United States Judge and Department of Justice Presidential Appointee Records. | 50 FR 42612*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DAG–013, General Files System | 57 FR 8474*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–001, Air Intelligence Program | 52 FR 472182, 06*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–INS–111, Automated Intelligence Records System (Pathfinder) | 55 FR 49146, 182*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–002, Clandestine Laboratory Seizure System (CLSS) | 68 FR 3894*, 72 FR 3410. |
| JUSTICE/DEA–003, Automated Records and Consolidated Orders System—Diversion Analysis and Detection System (ARCOS–DADS). | 69 FR 51104*, 72 FR 3410. |
| JUSTICE/DEA–005, Controlled Substances Act Registration Records (CSA) | 52 FR 47182, 208*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–010, Planning and Inspection Division Records | 52 FR 47182, 213*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–011, Operations Files | 52 FR 47182, 214*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–012, Registration Status-Investigation Records | 52 FR 47182, 215*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–013, Security Files | 52 FR 47182, 215*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–015, Training Files | 52 FR 47182, 217*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–017, Grants of Confidentiality Files (GCF) | 52 FR 47182, 218*, 66 FR 8425, 72 FR 3410. |

| System No. and name | **Federal Register**, citation(s) |
|---|---|
| JUSTICE/DEA–020, Essential Chemical Reporting System | 52 FR 47219*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–021, DEA Aviation Unit Reporting System | 65 FR 24986, 987*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/DEA–022, El Paso Intelligence Center (EPIC) Seizure System (ESS) | 71 FR 36362*, 72 FR 3410. |
| JUSTICE/ENRD–003, Environment & Natural Resources Division Case & Related Files System | 65 FR 8990*, 66 FR 8425, 70 FR 61159, 72 FR 3410. |
| JUSTICE/EOIR–001, Records and Management Information System | 69 FR 26179*, 72 FR 3410 |
| JUSTICE/EOIR–003, Practitioner Complaint—Disciplinary Files | 64 FR 49237*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/BIA–001, Decisions of the Board of Immigration Appeals | 48 FR 5331*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/BIA–002, Roster of Organizations and their Accredited Representatives Recognized by the Board of Immigration Appeals. | 45 FR 75908*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/FBI–001, National Crime Information Center (NCIC) | 64 FR 52343*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/FBI–002, The FBI Central Records System | 63 FR 8659, 671*, 66 FR 8425, 66 FR 17200, 72 FR 3410. |
| JUSTICE/FBI–003, Bureau Mailing Lists | 70 FR 7513*, 72 FR 3410. |
| JUSTICE/FBI–006, Electronic Surveillance (ELSUR) Indices | 70 FR 7513, 514*, 72 FR 3410. |
| JUSTICE/FBI–008, Bureau Personnel Management System | 58 FR 51875*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/FBI–010, Employee Travel Vouchers and Individual Earning Records | 52 FR 47248*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/FBI–011, Employee Health Records | 58 FR 51875*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/FBI–013, Security Access Control System (SACS) | 70 FR 7513, 516*, 72 FR 3410. |
| JUSTICE/FBI–015, National Center for the Analysis of Violent Crime (NCAVC) | 58 FR 51877*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/FBI–016, FBI Counterdrug Information Indices System (CIIS) | 59 FR 29824*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/FBI–017, National DNA Index System (NDIS) | 61 FR 37495*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/FBI–018, National Instant Criminal Background Check System (NICS) | 63 FR 65223*, 65 FR 78190, 66 FR 6676, 66 FR 8425, 66 FR 12959, 72 FR 3410. |
| JUSTICE/FBI–BRU, Blanket Routine Uses (BRU) Applicable to More Than One FBI Privacy Act System of Records. | 66 FR 33558*, 70 FR 7513, 517, 72 FR 3410. |
| JUSTICE/FTTTF–001, Flight Training Candidates File System | 67 FR 39839*, 67 FR 47570, 72 FR 3410. |
| JUSTICE/JMD–002, Controlled Substances Act Nonpublic Records | 66 FR 38000*, 72 FR 3410 |
| JUSTICE/JMD–017, Department of Justice Employee Transportation Facilitation System | 66 FR 20683*, 72 FR 3410, 72 FR 54460. |
| JUSTICE/JMD–022, Department of Justice Consolidated Asset Tracking System (CATS) | 71 FR 29170*, 72 FR 3410. |
| JUSTICE/JMD–023, Federal Bureau of Investigation Whistleblower Case Files | 70 FR 53253*, 72 FR 3410, 72 FR 15906, 72 FR 30631. |
| JUSTICE/JMD–024, Attorney Student Loan Repayment Program Applicant Files | 71 FR 64740*, 72 FR 3410. |
| JUSTICE/NDIC–001, National Drug Intelligence Center Data Base | 58 FR 21995*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OAG–001, General Files System | 50 FR 37294*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OIG–004, OIG Employee Training Records | 64 FR 68375*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OIG–005, OIG Firearms Qualifications System | 64 FR 68376*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–001, Equipment Inventory | 58 FR 51879*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–004, Grants Management Information System | 53 FR 40526*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–006, Congressional and Public Affairs System | 52 FR 47276*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–007, Public Information System | 45 FR 75936*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–008, Civil Rights Investigative System | 53 FR 40528*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–009, Federal Advisory Committee Membership Files | 53 FR 40529*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–010, Technical Assistance Resource Files | 53 FR 40530*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–011, Registered Users File—National Criminal Justice Reference Service (NCJRS) | 58 FR 51879*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–012, Public Safety Officers Benefits System | 64 FR 25070*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–013, Denial of Federal Benefits Clearinghouse System (DEBAR) | 64 FR 25071*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OJP–014, Victims of International Terrorism Expense Reimbursement Program | 71 FR 44709*, 72 FR 3410. |
| JUSTICE/OLP–002, United States Judges Records System. | 50 FR 30309*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OLP–003, General Files System of the Office of Legal Policy | 50 FR 37299*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/OSCW–001, Caselink Document Database for Office of Special Counsel—Waco | 65 FR 53749*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/PAO–001, News Release, Document and Index System | 42 FR 53288, 364*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/PRC–001, Docket, Scheduling and Control | 52 FR 47182, 281*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/PRC–003, Inmate and Supervision Files | 53 FR 7813*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/PRC–004, Labor and Pension Case, Legal File and General Correspondence System | 53 FR 40533*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/PRC–005, Office Operation and Personnel System | 53 FR 40535*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/PRC–006, Statistical, Educational and Developmental System | 52 FR 47182, 287*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/PRC–007, Workload Record, Decision Result, and Annual Report System | 53 FR 40535*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/TAX–001, Criminal Tax Case Files, Special Project Files, Docket Cards, and Associated Records. | 71 FR 11446, 447*, 72 FR 3410. |
| JUSTICE/TAX–002, Tax Division Civil Tax Case Files, Docket Cards, and Associated Records | 71 FR 11446, 449*, 72 FR 3410. |
| JUSTICE/TAX–003, Files of Applications for Attorney and Non-Attorney Positions with the Tax Division. | 71 FR 11446, 451*, 72 FR 3410. |
| JUSTICE/USA–001, Administrative File | 48 FR 56662*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–002, A.U.S.A. Applicant Files | 48 FR 38329*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–003, Citizen Complaint Files | 54 FR 42088*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–005, Civil Case Files | 53 FR 1864*, 63 FR 8659, 66 FR 8425, 66 FR 17200, 72 FR 3410. |
| JUSTICE/USA–006, Consumer Complaints | 54 FR 42090*, 66 FR 8425, 72 FR 3410. |

| System No. and name | **Federal Register**, citation(s) |
|---|---|
| JUSTICE/USA–007, Criminal Case Files | 53 FR 1864*, 63 FR 8659, 64 FR 71499, 66 FR 8425, 66 FR 17200, 72 FR 3410. |
| JUSTICE/USA–009, Kline District of Columbia and Maryland Stock and Land Fraud Interrelationship Filing System. | 54 FR 42092*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–010, Major Crimes Division Investigative Files | 54 FR 42094*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–011, Prosecutor's Management Information System (PROMIS) | 54 FR 42095*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–012, Security Clearance Forms for Grand Jury Reporters | 48 FR 5386*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–013, U.S. Attorney, District of Columbia Superior Court Division, Criminal Files | 54 FR 42097*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–014, Pre-Trial Diversion Program Files | 48 FR 38344*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–016, Assistant United States Attorney Applicant Records System | 57 FR 8487*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USA–017, Appointed Assistant United States Attorneys Personnel System | 57 FR 8488*, 66 FR 8425, 72 FR 3410. |
| JUSTICE/USM–019, Merit Promotion Open Season Records System (MPOS) | 71 FR 29668*, 72 FR 3410. |
| JUSTICE/UST–001, Bankruptcy Case Files and Associated Records | 71 FR 59818, 819*, 72 FR 3410. |
| JUSTICE/UST–002, Bankruptcy Trustee Oversight Records | 71 FR 59818, 822*, 72 FR 3410. |
| JUSTICE/UST–003, U.S. Trustee Program Timekeeping Records | 71 FR 59818, 824*, 72 FR 3410. |
| JUSTICE/UST–004, U.S. Trustee Program Case Referral System | 71 FR 59818, 825*, 72 FR 3410. |
| JUSTICE/UST–005, Credit Counseling and Debtor Education Files and Associated Records | 71 FR 59818, 827*, 72 FR 3410. |

The routine use published at 72 FR 3410 (January 25, 2007) is hereby rescinded for the DOJ System of Records Notices, listed above, and replaced as follows:

\*     \*     \*     \*     \*

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

To appropriate agencies, entities, and persons when (1) the Department suspects or has confirmed that there has been a breach of the system of records; (2) the Department has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, DOJ (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the Department's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

To another Federal agency or Federal entity, when the Department determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

\*     \*     \*     \*     \*

[FR Doc. 2017–10780 Filed 5–24–17; 8:45 am]

**BILLING CODE 4410–NW–P**

## DEPARTMENT OF JUSTICE

[CPCLO Order No. 005–2017]

### Privacy Act of 1974; System of Records

**AGENCY:** United States Department of Justice.

**ACTION:** Notice of modified Systems of Records.

**SUMMARY:** Pursuant to the Privacy Act of 1974, and Office of Management and Budget (OMB) Circular No. A–108, notice is hereby given that the United States Department of Justice (Department or DOJ) proposes to modify the DOJ System of Records Notices for the DOJ systems of records listed below.

**DATES:** In accordance with 5 U.S.C. 552a(e)(4) and (11), this notice is subject to a 30-day notice and comment period. Please submit any comments by June 26, 2017.

**ADDRESSES:** The public, OMB, and Congress are invited to submit any comments to the U.S. Department of Justice, ATTN: Privacy Analyst, Office of Privacy and Civil Liberties, National Place Building, 1331 Pennsylvania Avenue NW., Suite 1000, Washington, DC 20530–0001, by facsimile at 202–307–0693, or email at *privacy.compliance@usdoj.gov.* To ensure proper handling, please reference the above CPCLO Order No. on your correspondence.

**FOR FURTHER INFORMATION CONTACT:** Andrew A. Proia, Attorney Advisor, Office of Privacy and Civil Liberties, National Place Building, 1331 Pennsylvania Avenue NW., Suite 1000, Washington, DC 20530–0001, by facsimile at 202–307–0693, or email at *privacy.compliance@usdoj.gov.* To ensure proper handling, please reference the above CPCLO Order No. on your correspondence.

**SUPPLEMENTARY INFORMATION:** On May 22, 2007, OMB issued Memorandum M–07–16, Safeguarding Against and Responding to the Breach of Personally Identifiable Information, to the heads of all executive departments and agencies. In its memorandum, OMB required agencies to publish a routine use for their systems of records specifically addressing the disclosure of records in connection with the response to, and remedial efforts in the event of, a breach of personally identifiable information. DOJ published a notice in the **Federal Register**, 72 FR 3410 (January 25, 2007), modifying all DOJ System of Records Notices by adding a routine use to address the limited disclosure of records related to a suspected or confirmed breach within the Department, consistent with OMB requirements. Since that time, all new DOJ System of Records Notices published by the Department, as well as significantly modified System of Records Notices that were republished in full, included a breach response routine use consistent with the requirements in OMB Memorandum M–07–16.

On January 3, 2017, OMB issued Memorandum M–17–12, Preparing for and Responding to a Breach of Personally Identifiable Information, to the heads of all executive departments and agencies. OMB Memorandum M–17–12 rescinds and replaces OMB Memorandum M–07–16 and updates agency routine use requirements for responding to a breach. Specifically, OMB Memorandum M–17–12 requires all Senior Agency Officials for Privacy to ensure that their agency's System of Records Notices include a routine use for the disclosure of information necessary to respond to a breach of the agency's personally identifiable information. Additionally, OMB Memorandum M–17–12 requires agencies to add a routine use to ensure

# Exhibit 13



# Privacy Impact Assessment

### for the

# Systematic Alien Verification for Entitlements "SAVE" Program

### DHS Reference No. DHS/USCIS/PIA-006(d)

### October 31, 2025

Homeland
Security

DHS-AR-000221

**Homeland Security**

## Abstract

| 1. The abstract is the single paragraph that will be used to describe the program and the Privacy Impact Assessment.[1] |
| --- |
| The U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, Verification Division administers the Systematic Alien Verification for Entitlements (SAVE) Program. The SAVE Program is an online inter-governmental service designed to help federal, state, territorial, tribal, local government agencies, benefit-granting agencies, other authorized entities and licensing bureaus, as authorized by law, determine citizenship and immigration status of individuals within their jurisdiction for the purpose of granting benefits, licenses, as well as for other lawful purposes. U.S. Citizenship and Immigration Services is publishing an update to this Privacy Impact Assessment to describe the collection, use, maintenance, and disclosure of personally identifiable information, as well as the risks associated with these updates. The purpose of this update is to discuss the changes to the tool, including: (1) documenting use of the tool for voter registration and voter maintenance list verification, (2) collection of Social Security numbers which may include those of U.S. born citizens for all benefit or license related uses of the program, (3) sharing of information between U.S. Citizenship and Immigration Services, the Social Security Administration, and the Department of State, (4) a new bulk upload feature for the program, and (5) reducing the fee for non-Federal government agencies. |

## Overview

| 2. The overview provides the context and background necessary to understand the project's purpose and mission and the justification for operating a privacy sensitive project. |
| --- |
| The U.S. Citizenship and Immigration Services administers the SAVE Program. The SAVE Program is an online fee-based intergovernmental initiative designed to help federal, state, tribal, and local government agencies and licensing bureaus confirm immigration status information.[2] |

---

[1] Pursuant to Section 208 of the E-Government Act of 2002, agencies are required to conduct a Privacy Impact Assessment before developing or procuring Information Technology systems or projects that collect, maintain or disseminate information in identifiable form from or about members of the public. The Office of Management and Budget issued Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, which defines "information in identifiable form" as information in an Information Technology system or online collection: (i) that directly identifies an individual (e.g., name, address, social security number or other identifying number or code, telephone number, email address, etc.) or (ii) by which an agency intends to identify specific individuals in conjunction with other data elements. Furthermore, an individual is defined as "a citizen of the United States or an alien lawfully admitted for permanent residence."

[2] It is the intent of the current Administration to provide more of a supporting role to state, local, tribal, and territory governments. The U.S. Department of Homeland Security has determined to better serve and support non-Federal

DHS-AR-000222

# Homeland Security

The SAVE Program provides status verifications to requesting federal, state, territorial, tribal, and local government agencies; benefit granting agencies; and other authorized entities and licensing bureaus. The U.S. Citizenship and Immigration Services (or a contractor acting on its behalf) will confirm immigration and/or United States citizenship status as authorized by law, to the extent that such disclosure is necessary to enable these agencies to make decisions. These decisions may relate to: (1) determining eligibility for a federal, state, or local public benefit; (2) issuing a license or grant; (3) issuing a government credential; (4) conducting a background investigation; (5) registering voters or developing/ managing voter maintenance lists; or (6) any other lawful purpose.

A federal, state, territorial, tribal, or local government agency that provides a public benefit or license, or that is otherwise authorized by law to engage in an activity related to the verification of immigration status, may enroll in the SAVE Program as a registered agency. By using the SAVE Program, federal, state, territorial, tribal, and local registered agencies can request immigration status information to determine the applicant's eligibility for a benefit or a license. It is important to note that the program does not make the determinations on an applicant's eligibility for a specific benefit or license or eligibility to vote (at the local, state, or national level). Instead, it provides immigration status information to agencies to allow them to make an informed decision prior to issuing benefits or licenses or denying voting benefits. The registered agency analyzes the SAVE Program's response against the agency's own eligibility criteria to make an award determination. The SAVE Program may not always know the outcome of the benefit adjudication.

The SAVE Program has access to multiple immigration record systems from government agencies to confirm immigration status. All SAVE Program-registered agencies must adhere to a Memorandum of Agreement or Computer Matching Agreement, which include binding responsibilities regarding proper information usage and handling. The Memorandum of Agreement also stipulates the terms for billing and payment, if applicable. As part of its billing and registration process, the SAVE Program collects personally identifiable information, such as the registered agency's point of contact name and professional contact information, as well as registered agency and demographic information. The SAVE Program staff may also collect sensitive information such as registered agency credit card information and other data relevant to the billing process from the federal, state, territorial, tribal, or local government agencies using the SAVE Program. The U.S Citizenship and Immigration Service collects, maintains, and safeguards this information in accordance with U.S. Department of Homeland Security privacy and information technology policies.

The U.S. Citizenship and Immigration Services is currently implementing a comprehensive

government agencies, by eliminating the fees for their use of the SAVE Program.

DHS-AR-000223

# Homeland Security

optimization of the SAVE Program. The U.S. Citizenship and Immigration Services has developed a phased approach to further the U.S. Department of Homeland Security mission. This Privacy Impact Assessment supports use of the SAVE Program for (1) voter registration and voter maintenance list verification; (2) collection of Social Security numbers, which may include those of U.S. born citizens for all benefit- or license-related uses of the program; (3) sharing of information between U.S. Citizenship and Immigration Services, the Social Security Administration, and the Department of State; (4) a new bulk upload feature for the program; and (5) removing the fee for non-Federal government agencies.

## Social Security Administration Data Sharing

On January 20, 2025, and March 25, 2025, the President issued Executive Orders 14159, *Protecting the American People Against Invasion* and 14248, *Preserving and Protecting the Integrity of American Elections* respectively.[3] Executive Order 14159 includes a requirement for the Secretary to "…promptly issue guidance to ensure maximum compliance by [Department of Homeland Security] personnel with the provisions of 8 U.S.C. 1373 and 8 U.S.C. 1644 and ensure that State and local governments are provided with the information necessary to fulfill law enforcement, citizenship, or immigration status verification requirements authorized by law…."[4] Executive Order 14248 outlines that, "…Federal laws, such as the National Voter Registration Act (Pub. L. 103-31) and the Help America Vote Act (Pub. L. 107-252), require States to maintain an accurate and current Statewide list of every legally registered voter in the State. And [Department of Homeland Security] is required to share database information with States upon request so they can fulfill this duty."[5] Executive Order 14248 directs the Secretary to "…ensure that State and local officials have, without the requirement of the payment of a fee, access to appropriate systems for verifying the citizenship or immigration status of individuals registering to vote or who are already registered…" The Department of Homeland Security is also required under Executive Order 14248, in coordination with the Department of Government Efficiency Administrator, to "review each State's publicly available voter registration list and available records concerning voter list maintenance activities as required by 52 U.S.C. § 20507, alongside Federal immigration databases and State records requested, including through subpoena where necessary and authorized by law, for consistency with Federal requirements."

The Commissioner of Social Security also must assist states in determining whether individuals are eligible to register and vote by taking all appropriate action to make available the Social

---

[3] *See* Protecting the American People Against Invasion (January 2025) *available at* https://www.federalregister.gov/documents/2025/03/28/2025-05523/preserving-and-protecting-the-integrity-of-american-elections; and Preserving and Protecting the Integrity of American Elections (March 2025) *available at* https://www.federalregister.gov/documents/2025/01/29/2025-02006/protecting-the-american-people-against-invasion.

[4] 8 U.S.C.§ 1373; 8 U.S.C. §1644.

[5] 8 U.S.C. 1373(c).

Security Number Verification Service, the Death Master File, and any other Federal databases containing relevant information to all State and local election officials engaged in verifying the eligibility of individuals registering to vote or who are already registered.[6]

Most registered agencies may not have access in their voter, benefits, or licenses records to a U.S. Department of Homeland Security-issued identifier, (such as Alien Registration Number (Alien Number or A-number), Naturalization Certificate number, or Citizenship Certificate number) to initiate the initial SAVE Program query. To address this concern, the U.S. Citizenship and Immigration Services is incorporating a feature to allow SAVE Program-registered agencies to query records by Social Security numbers. Registered agencies will provide the U.S. Citizenship and Immigration Services with the individual's first and last name(s), date of birth and a full 9-digit or partial Social Security number. Registered agencies may additionally provide a U.S. Department of Homeland Security enumerator. The U.S. Citizenship and Immigration Services will provide the Social Security Administration with this information and in turn they will provide the U. S. Citizenship and Immigration Service with the following responses:

- Social Security number match (True/False);

- Name match (True/False);

- Date of birth match (True/False);

- Citizenship Indicator;

    o "A" - U.S. citizen;

    o "B" - Legal alien, eligible to work;

    o "C" - Legal alien, not eligible to work;

    o "D" – Other;

    o "E" - Alien student - restricted work authorized; and

    o "F" - Conditionally legalized alien.

- Foreign Born indicator (Citizenship code is not present, but individual was foreign born);

- State/Country code;

- American Samoa indicator (True/False);

- Alien Registration number (where applicable);

---

[6] Executive Order 14248 § 3(a).

- Death indicator (Yes / No); and

- Error code descriptions (transaction and record levels).

Of note, if a registered agency provides the names, dates of birth, and Social Security numbers of U.S. citizens by birth, the SAVE Program will maintain and process this information. For instance, a state may provide the U.S. Citizenship and Immigration Services information for all residents that are registered to vote within their jurisdiction. This would include U.S. citizens by birth. The U. S. Citizenship and Immigration Services will process this information as stated above and provide the appropriate response.

The SAVE Program now has a list processor feature to allow registered agencies to upload a list of individuals' case data instead of creating individual cases. A requesting agency, once signed into the program, will have an option to "upload" a list of individuals for the U.S. Citizenship and Immigration Services to verify citizenship and immigration status. Once uploaded, the SAVE Program creates individual cases for everyone identified on the uploaded list. The U. S. Citizenship and Immigration Services then sends from the list to the Social Security Administration the name, Social Security number, and date of birth of the individuals identified by the registered agency. The Social Security Administration then sends the status information (citizenship indicator noted above) back to the SAVE Program. The SAVE Program, if required, also queries other various systems (see below *List of Federal Systems Used to Respond to Registered Agency Queries*), and provides a consolidated result in each case file. The registered agency has the option of logging back into the program after twenty-four hours and searching for each case or generating a Web Agency Audit Report within the SAVE Program that can provide status information for multiple cases.

Additionally, program users will be able to download a list of individuals from the original list that the registered agency submitted, that the U.S. Citizenship and Immigration Services was not able to process. For example, a registered agency's list may not have a unique identifier for several individuals. To capture these incomplete cases, the program creates a spreadsheet that includes everyone who is not processed and requests additional information such as a Social Security number (corrected Social Security number), or Alien Registration Number. The registered agency can then update the spreadsheet provided with the additional information and upload it again into the program. The U.S. Citizenship and Immigration Services then provides the registered agency's account with the following information:

- Verification number (SAVE Program generated);

- Initial request date;

- Identification type;

- Identification number;

- Last name;

- Benefit code;

- Benefit description;

- Initial request response (Lawful status, No lawful status, Deceased);

- Additional request date;

- Additional request response (Lawful status, No lawful status, Deceased);

- Third step request date;

- Third step resolution (Lawful status, No lawful status, Deceased); and

- Closed date.

### *Department of State Data Sharing*

Registered agencies may provide either a U.S. passport number or a photocopy of a U.S. passport as documentation of citizenship or immigration status. If a U.S. passport number is submitted, the SAVE Program will verify it against information from U.S. Department of State-issued passport. Additionally, the SAVE Program will receive or access information in the U.S. Department of State's Consular Consolidated Database / American Citizen Record Query system, which is a consular search engine used by the U.S. Department of State to manage and access records related to United States citizens, particularly for consular protection and services, including managing passport requests and applications.

### *State Driver's Licensing Agencies and Other Organizations Maintaining Driver's License Information Data Sharing*

Within the U.S., driver's licenses are the most widely used form of identification. The SAVE Program can use driver's license and state identification card numbers to check and confirm identity information by working with state driver's licensing agencies and national agencies that store driver's license information for legal purposes (such as the National Law Enforcement Telecommunications System). When the registered agency provides a driver's license or state identification card number as the enumerator to verify the identity of the applicant, the SAVE Program will use state driver's licensing agencies or another source (such as the National Law Enforcement Telecommunications System) to validate the information and gain access to other government enumerators. This will allow the SAVE Program to match against other sources to verify immigration status and U.S. citizenship, which will improve accuracy and efficiency for SAVE registered agencies.

# Homeland Security

---

*Auditing of Federal and State Oversight Programs Data Sharing*

The SAVE Program will support organizations that have entered into required agreements with the U.S. Citizenship and Immigration Services and have a legal oversight authority over a program or benefit type supported by the SAVE Program through reporting capabilities for auditing purposes. User agencies with a legal authority to monitor and audit benefits granted may view case data such as biographic data, enumerators, case submission date/time, and the SAVE Program response information. Reporting options exist for individual agencies and their case data. Additionally, user agencies with legal authority may now be granted SAVE Program access to view other user agencies' case data through a linking mechanism based on either benefit type granted (e.g. Medicare) or by state. This new account type will have reporting options to view case data. Other account types enable user agencies to create cases within the SAVE Program to verify applicant current eligibility for benefits previously granted. This will allow federal and state oversight agencies to ensure user agencies are properly verifying immigration status or citizenship before making an eligibility determination. Oversight agencies can also ensure previously approved applicants remain eligible for the benefits they are receiving.

*List of Federal Systems Used to Respond to Registered Agency Queries*

The following is a list of federal information systems that the SAVE Program queries for responses to registered agencies:

**United States Citizenship and Immigration Services Systems:**

- Central Index System;[7]

- Electronic Immigration System;[8]

- Computer Linked Application Information Management System 3;[9]

- Enterprise Citizenship and Immigration Services Centralized Operational Repository;[10]

- GLOBAL (not an acronym);

---

[7] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, PRIVACY IMPACT ASSESSMENT FOR THE CENTRAL INDEX SYSTEM, DHS/USCIS/PIA-009, *available at* Privacy Documents for USCIS | Homeland Security.

[8] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, PRIVACY IMPACT ASSESSMENT FOR THE USCIS ELECTRONIC IMMIGRATION SYSTEM, DHS/USCIS/PIA-056, *available at* Privacy Documents for USCIS | Homeland Security.

[9] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, PRIVACY IMPACT ASSESSMENT FOR THE COMPUTER LINKED APPLICATION INFORMATION MANAGEMENT SYSTEM AND ASSOCIATED SYSTEMS, DHS/USCIS/PIA-016, *available at* Privacy Documents for USCIS | Homeland Security.

[10] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, PRIVACY IMPACT ASSESSMENT FOR THE ENTERPRISE CITIZENSHIP AND IMMIGRATIONS SERVICES CENTRALIZED OPERATIONAL REPOSITORY, DHS/USCIS/PIA-023, *available at* Privacy Documents for USCIS | Homeland Security.


- RAILS (not an acronym);[11]
- Customer Profile Management System;[12] and
- Salesforce Customer Relationship Management Customer Relationship Management.

**Other U.S. Department of Homeland Security Systems:**

- U.S. Department of Homeland Security OneNet;
- U.S. Immigration and Customs Enforcement Student and Exchange Visitor Program;[13]
- U.S. Immigration and Customs Enforcement, Enforcement Integrated Database;[14]
- U.S. Customs and Border Protection Arrival and Departure Information System;[15] and
- Transportation Security Administration Office of Intelligence and Analysis Technology Infrastructure Modernization Program.[16]

**Other Federal Agency Systems:**

- U.S. Military Entrance Processing Command Integrated Resource System;
- U.S. Department of Education Federal Student Aid Central Processing System;
- U.S. Department of Health and Human Services Centers for Medicare & Medicaid Services;
- U.S. Social Security Administration Numident system;
- U.S. Department of Justice Executive Office for Immigration's Immigration Review Information Exchange System;

---

[11] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, PRIVACY IMPACT ASSESSMENT FOR RAILS, DHS/USCIS/PIA-075, *available at* Privacy Documents for USCIS | Homeland Security.

[12] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, PRIVACY IMPACT ASSESSMENT FOR THE CUSTOMER PROFILE MANAGEMENT SERVICE, DHS/USCIS/PIA-060, *available at* Privacy Documents for USCIS | Homeland Security.

[13] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, PRIVACY IMPACT ASSESSMENT FOR THE STUDENT AND EXCHANGE VISITOR PROGRAM, DHS/ICE/PIA-001, *available at* Privacy Documents for ICE | Homeland Security.

[14] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, PRIVACY IMPACT ASSESSMENT FOR THE ENFORCEMENT INTEGRATED DATABASE, DHS/ICE/PIA-015, *available at* Privacy Documents for ICE | Homeland Security.

[15] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, PRIVACY IMPACT ASSESSMENT FOR THE ARRIVAL AND DEPARTURE INFORMATION SYSTEM, DHS/CBP/PIA-024, *available at* Privacy Documents for CBP | Homeland Security.

[16] *See* U.S. DEPARTMENT OF HOMELAND SECURITY, TRANSPORTATION SECURITY ADMINISTRATION, PRIVACY IMPACT ASSESSMENT FOR THE TRANSPORTATION SECURITY ADMINISTRATION OFFICE OF INTELLIGENCE AND ANALYSIS TECHNOLOGY INFRASTRUCTURE MODERNIZATION PROGRAM, DHS/TSA/PIA-042, *available at* Privacy Documents for TSA | Homeland Security.

DHS-AR-000229

**Homeland Security**

> - U.S. Department of State Consular Consolidated Database; and
> - U.S. Department of State American Citizen Record Query System.

# Fair Information Practice Principles

The U.S. Department of Homeland Security conducts Privacy Impact Assessments on developed or procured information technology systems involving the collection, maintenance, or dissemination of information in identifiable form or that make substantial changes to existing information technology that manages information in identifiable form, as required by Public Law 107-347, Section 208, "The E-Government Act of 2002," and any applicable and implementing Office of Management and Budget guidance; or proposed rulemakings affecting personal information as required by Section 222(a)(4) of the Homeland Security Act of 2002; or technologies that sustain, and do not erode, privacy protections relating to the use, collection, and disclosure of personal information pursuant to 6 U.S.C § 142(a)(1).

In response to these obligations, the U.S. Department of Homeland Security Privacy Office developed a set of Fair Information Practice Principles [17] from the underlying concepts of the Privacy Act of 1974[18] to encompass the full scope of the information and interactions of the U.S. Department of Homeland Security. The Fair Information Practice Principles account for the nature and purpose of the information being collected in relation to the U.S. Department of Homeland Security's mission to preserve, protect, and secure. The Fair Information Practice Principles are a set of eight principles that are rooted in the tenets of the Privacy Act.

| 3. What specific legal authorities and/or agreements permit the collection of information by the project in question? |
|---|
| In accordance with a 1986 Congress mandate, the U.S. Citizenship and Immigration Services, previously the Immigraton and Naturalization Service, established the SAVE Program to verify the citizenship and immigration status of individuals seeking government benefits for use by benefit granting agencies when making benefit determinations. The following provides authority for the program to collect, maintain, and share personally identifiable information: <br><br> • Immigration and Nationality Act, Public Law 82-414, 66 Statutory 163 (June 27, 1952); <br><br> • Homeland Security Act of 2002, Public Law Number 107-296, 116 Statutory 2135 |

---

[17] U.S. Department of Homeland Security, Privacy Policy Guidance Memorandum 2008-01, The Fair Information Practice Principles: Framework for Privacy Policy at the Department of Homeland Security (2008), *available at* https://www.dhs.gov/privacy-policy-guidance.

[18] Privacy Act of 1974, 5 U.S.C. § 552a, as amended.

DHS-AR-000230



(November 25, 2002);

- Immigration Reform and Control Act of 1986, Public Law 99-603, 11 Statutory 3359 (November 6, 1986);

- Personal Responsibility and Work Opportunity Reconciliation Act of 1996 , Public Law 104-193, 110 Statutory 2105 (August 22, 1996);

- Title IV, Subtitle A, of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Public Law 104-208, 110 Statutoty 3009 (September 30, 1996);

- Real ID Act of 2005, Public Law 109-13, 119 Statutory 231 (May 11, 2005);

- Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148, 124 Statutory 119 (Mar. 23, 2010), as amended by the Health Care and Education Reconciliation Act of 2010, Public Law 111-152, 124 Stat. 1029 (March 30, 2010);

- Federal Aviation Administration Extension, Safety and Security Act of 2016, Public Law 114-190, 130 Statutory 615 (July 15, 2016); and

- Social Security Act of 1935, Public Law 74–271, 49 Statutory 620 (Aug. 14, 1935) as amended, 42 U.S.C. § 1306.

In addition, the Systematic Alien Verification for Entitlements Program has an obligation under 8 U.S.C. 1373(c) to "respond to an inquiry by a federal, state or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

The Social Security Administration is aiding by sending to, and receiving, U.S. Department of Homeland Security and U.S. Citizenship and Immigration Services information regarding the citizenship or immigration status, lawful or unlawful, of individuals within its records. The Social Security Administration is authorized to participate in this information sharing under the authority of the Social Security Act, 42 U.S.C. § 1306, and pursuant to 8 U.S.C. § 1373(a).

4. **Will this information be maintained as part of system of records,[19] as defined in the Privacy Act, 5 U.S.C. §552a?**

---

[19] The term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

**Homeland Security**

Yes, information retrieved by the Social Security Administration, U.S. Department of State, and registered agencies will be maintained in the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program System of Records.[20]

| 5. From which population does the project collect, maintain, use, and/or disseminate personally identifiable information?[21] |
| --- |

☒ a. Members of the public

☐ b. U.S. Department of Homeland Security employees and/or contractors

☐ c. Other federal employees

| 6. What personally identifiable information is collected, maintained, used, or disseminated? |
| --- |

The U.S. Citizenship and Immigration Services may collect the following information about aliens; legal permanent residents; and U.S. born, naturalized, and derived citizens from registered agencies:

- Name (last, first, middle);
- Unique identifiers;
  - Alien Regstriaton Number (Alien number or A-Number)/U. S. Citizenship and Immigration Services Number;
  - I-94 Arrival/Departure Record number;
  - Student and Exchange Visitor Information System Identification number;
  - Receipt number/card number;
  - Naturalized Certificate number; and
  - Citizenship Certificate number.

---

[20] *See* DHS/USCIS-004 Systematic Alien Verification for Entitlements, 90 Fed. Reg. 48948 (October 31, 2025), *available at* System of Records Notices | Homeland Security.

[21] Personally identifiable information means any information about an individual maintained by an agency, including, but not limited to, education, financial transactions, medical history, and criminal or employment history and information which can be used to distinguish or trace an individual's identity, such as their name, social security number, date and place of birth, mother's maiden name, biometric records, etc., including any other personal information which is linked or linkable to an individual. *See* OMB M-06-19, Reporting Incidents Involving Personally Identifiable Information.

DHS-AR-000232

- Visa or Passport (Foreign and/or United Sates) numbers;

- Social Security number or Individual Tax Identification Number;

- Driver's license or state identification number;

- Date of birth;

- Country of birth;

- Citizenship or nationality;

- Class of Admission code and Date of entry;

- File Control Office;

- Benefit sought; and

- Immigration documentation.

The United States Citizenship and Immigration Services shares the following information to the Social Security Administration about U.S. born, naturalized, and/or derived citizens:

- Name (last, first, middle);

- Date of birth;

- Social Security number (full and partial); and

- U.S. Department of Homeland Security-issued identifier (such as Alien Registration Number).

The U. S. Citizenship and Immigration Services maintains the following information from the Social Security Administration:

- Social Security number match (True/False);

- Name match (True/False);

- Date of birth match (True/False);

- Citizenship indicator;

  - "A" - U.S. citizen;

  - "B" - Legal alien, eligible to work;

  - "C" - Legal alien, not eligible to work;

  - "D" – Other;

  - "E" - Alien student - restricted work authorized; and

        ○   "F" - Conditionally legalized alien.

- Foreign Born indicator (Citizenship code is not present, but individual was foreign born);

- State/country code;

- American Samoa indicator (True/False);

- Alien Registration Number (Alien Number or A-Number) (where applicable);

- Death indicator (Yes / No); and

- Error code descriptions (transaction and record levels).

The United States Citizenship and Immigration Services provides the following information to requesting agencies:

- Verification number (system generated);

- Initial request date;

- Identification type;

- Identification number;

- Last name;

- Benefit code;

- Benefit description;

- Initial request response (lawful status, no lawful status, deceased);

- Additional request date;

- Additional request response (lawful status, no lawful status, deceased);

- Third step request date;

- Third step resolution (lawful status, no lawful status, deceased); and

- Closed date.

The U.S. Citizenship and Immigration Services shares the following information to the U.S. Department of State:

- Full name;

- Date of birth;

DHS-AR-000234

- Social Security number; and/or

- U.S. passport number.

The U.S. Citizenship and Immigration Services may maintain the following information from the U.S. Department of State:

- Full name;

- Date of birth;

- Certificate of Citizenship;

- Certificate of Naturalization;

- Alien RegistrationNumber (Alien Number or A-Number);

- U.S. passport book or passport card number;

- U.S. passport book or passport card issuance date;

- U.S. passport endorsement code(s) where applicable; and

- Images of U.S. passport book or passport card.

| 7.  **What is the intended use of personally identifiable information?** |
|---|

The SAVE Program uses personally identifiable information about individuals to help federal, state, territorial, tribal, and local government benefit-granting agencies, other authorized entities and licensing bureaus, as authorized by law, verify the citizenship and/or immigration status of individuals within their jurisdiction as they determine eligibility for benefits, credentials, and licenses; and verify voter registration. The U.S. Citizenship and Immigration Services also uses the personally identifiable information for federal security background investigations and other lawful purposes.

The U.S. Citizenship and Immigration Services uses a variety of data for cross-referencing. In this way, the U. S. Citizenship and Immigration Services ensures that data is accurate and current, identifies inconsistencies between or among databases, and minimizes fraud. Additionally, the U.S. Citizenship and Immigration Services collects personally identifiable information from individual users of the system to provide accountability of system usage in the event of misuse and abuse of the system. Further, the U. S. Citizenship and Immigration Services use personally identifiable information to register SAVE user agencies and other administration functions.

The U. S. Citizenship and Immigration Services will use the Social Security number from

requesting agencies to query the Social Security Administration Enumeration System to assist in providing U.S. citizenship or immigration status of individuals. Federal, state, local, tribal, and territory governments generally use the SAVE Program to assist in awards of benefits, voter registration verification, as well as identifying fraud.

The U.S. Citizenship and Immigration Services will compare U.S. passport information against information available in U.S. Department of State accessed systems to verify a match or no match. Using a passport number, the SAVE Program will be able to verify acquired or derived citizenship for individuals with a U.S. passport directly from the source records. Images of the U.S. Passport document may also be submitted by agencies when applicable to be used by status verifiers as part of the verification process. This ensures that personally identifiable information contained on the document can be used to verify the document and subsequently the citizenship status of the individual. Additionally, the U.S. Citizenship and Immigration Services will use U.S. passport application information, specifically, the Certificate or Citizenship or Certificate of Naturalization, to quickly verify citizenship status in certain cases and reduce its response time to registered users.

| 8. How long and under which retention schedule is the information retained? |
| --- |
| Pursuant to the National Archives and Records Administration Authority N1-566-08-07, the U.S. Citizenship and Immigration Services maintains records within the SAVE Program for ten years from the date of the completion of the verification, unless the records are part of an ongoing law enforcement investigation in which case the U.S. Citizenship and Immigration Services may retain them until completion of the investigation. |

| 9. With whom will personally identifiable information be shared? |
| --- |

| | |
| --- | --- |
| ☐ Within the Component/Office | Specify: |
| | Specify: When potential fraud or misuse is indicated by the SAVE Program information, this information may be shared, on a case-by-case basis, with U.S. Department of Homeland Security internal law enforcement organizations to include: |
| ☒ Other-U.S. Department of Homeland Security Component(s)/Office(s) | |
| | • U.S. Immigration and Customs Enforcement; and |
| | • U.S. Customs and Border Protection. |

**Homeland Security**

| | |
|---|---|
| ☒ State, local, tribal, or territorial entities | Specify: A list of all requesting agencies and their purpose for accessing the SAVE Program is accessible at https://www.uscis.gov/save/save-agency-search-tool. Additionally SAVE may retrieve information from state driver's license and identification issuing agencies (such as Department of Motor Vehicles). |
| ☐ Public | Specify: |
| ☐ Private sector | Specify: |
| ☐ Foreign governments | Specify: |
| ☐ Foreign entities | Specify: |
| ☒ Other: | Specify: Social Security Administration, U.S. Department of State, and National organizations maintaining driver's license and state identification information (such as the National Law Enforcement Telecommunications System). |

**10.  How are individuals provided notice prior to the collection of information? If notice is not provided, explain why not.**

Each registered agency completes a Memorandum of Agreement with the U.S. Citizenship and Immigration Services and agrees to provide notice to individuals within their jurisdiction of their use of information and sharing with the U.S. Citizenship and Immigration Services. Additionally, the U.S. Citizenship and Immigration Services provides notice through this Privacy Impact Assessment as well as system of records notices mentioned in Section 4. Each state holds the responsibility to provide notice of their use of information at the time of their collection or additional use of the information.

**11. What opportunities are available for individuals to consent to uses, decline to provide information, or opt out?**

The U.S. Citizenship and Immigration Services does not provide opportunities to individuals within the jurisdiction of the registered agency to consent to the U.S. Citizenship and Immigration Services use of their information. Pursuant to the above-mentioned legal authorities

listed in Section 3, the U. S. Citizenship and Immigration Services must provide individual information to the Social Security Administration and the U.S. Department of State to allow the Requesting Agency to determine the immigration status of applicants and registrants of benefits, licenses, or for voter registration verification. Each registered agency holds the responsibility to provide opportunities for consent of their use of individuals' information. Additionally, each registered agency holds the responsibility to determine whether an individual has a legal right to decline providing information to them based on applicable law.

---

**12. What procedures are in place to allow individuals to correct inaccurate or erroneous information?**

Individuals may request access to their information maintained by the U.S. Citizenship and Immigration Services by submitting a request at https://www.uscis.gov/records/request-records-through-the-freedom-of-information-act-or-privacy-act.

Requesters are required to provide their Alien Registration Number and/or full name, date, and place of birth, and return address.

Individuals should provide all written requests to contest or amend their information reviewed by the SAVE Program, with appropriate proof of identity, class of admission, and other relevant identifying information, as well as a statement about the incorrect. Depending on the originating source of information, the request may be satisfied within the U.S. Citizenship and Immigration Services, or the individual may be referred to the appropriate record holding agency. If the source of data is from a U.S. Citizenship and Immigration Services download and the SAVE Program confirms the data is incorrect, often by comparing the documents with the information in the program and cross-referencing other U.S. Citizenship and Immigration Services Verification Information System databases, the SAVE Program will contact the appropriate system owner recommending that the data be corrected.[22] Alternatively, the individual may make an appointment by calling the U.S. Citizenship and Immigration Services Contact Center at 800-375-5283 (TTY 800-767-1833). When appearing for the appointment, the person should provide accompanying supporting documentation, including proof of identity, class of admission, and other relevant identifying information. The SAVE Program customer agencies may change their profile information directly within the U.S. Citizenship and Immigration

---

[22] The Verification Information System is a composite information system incorporating data from various U.S. Department of Homeland Security and Social Security Administration databases and functions as the underlying information technology that supports the SAVE Program. The Verification Information System supports the U.S. Citizenship and Immigration Service's ability to verify whether a newly hired employee is authorized to work in the United States and the citizenship or immigration status verification of individuals seeking certain government benefits. The Verification Information System, including the services it houses, is in the Amazon Web Service cloud environment.

DHS-AR-000238

Services Verification Information System application. To correct typographic errors in your U.S. Citizenship and Immigration Services record or document, visit egov.uscis.gov/e-request.

---

### 13. What administrative, technical, and physical controls are used to protect the information?

The SAVE Program requires potential enrollees and customer agencies to register for participation in the program and sign an appropriate data sharing agreement. Once the enrollees submit the required documentation, all users must complete a web-based training course that explains functionality and security requirements.

The Systematic Alien Verification for Entitlements Program's internal users take the mandatory annual U.S. Department of Homeland Security Computer Security Training and the U.S. Citizenship and Immigration Services Privacy Awareness Training. Additionally, staff who administer the SAVE Program are required take special, role-based training. External SAVE Program users complete online tutorials. The tutorials also cover the procedures and policies associated with the use of the SAVE Program and includes privacy-related topics.

The Verification Information System, as the underlying technology supporting the SAVE Program has been Certified and Accredited and received a full authority to operate in April 2014. The system has been approved to participate in the Ongoing Authorization process and is continually monitored for compliance with the National Institute of Science and Technology policies to ensure compliance with the Federal Information System Management Act. The SAVE Program implements access controls for both internal and external customers, such as account names and passwords to access the program. The program has an automated mechanism to ensure that users change their passwords at specified intervals. Additionally, the program implements the following technical controls:

- Password data is encrypted within the system;

- The system is located within a multi-layered firewall architecture;

- The system follows a robust set of security controls that meet the U.S. Department of Homeland Security System Security Policy requirements. The certification and accreditation process ensures that the U.S. Citizenship and Immigration Services documents and verifies these security controls through the certification and accreditation process;

- The system uses secure hypertext transfer protocol protected communications during all data transmissions between the client workstation and the system;

**Homeland Security**

- Passwords are encrypted when making database connections; and

- Procedures are in place to ensure that any potential breaches of information are reported within one hour of being found.

| 14. How does the Component ensure that personally identifiable information is used appropriately? |
|---|
| The SAVE Program has a comprehensive audit trail tracking and maintenance function that stores information about users who submit queries, when the query was processed, the query response, who received the query response, and when the user received the query response. The audit logs have restricted access based on user roles. These logs are external to system administration access methods and protected from modification. U.S. Citizen and Immigration Services personnel periodically review these audit logs to monitor user activity. Registered agencies must abide by all security requirements that they agreed to when they enrolled in the program. Attempts to evade the security controls can result in loss of access to the SAVE Program. <br><br> Some registered agencies use a single sign-on for all their individual users. In these cases, the SAVE Program will not collect information from individual users because individual users will appear as one agency user. In the case of single sign-on access to users, the U.S. Citizenship and Immigration Services requires the agency to sign an addendum to their Memorandum of Agreement which states that every user of the system must be assigned a unique identifier. If requested, the agency provides this information to the U.S. Citizenship and Immigration Services to allow for a clear audit trail for all transactions. |

## Associated Privacy Risks and Mitigations

| Privacy Risk: | There is a risk that the U.S. Citizenship and Immigration Services may share inaccurate information with registered agencies, which could in turn impact a registered user agency's eligibility determination for an individual. |
|---|---|
| Mitigation: | The U.S. Citizenship and Immigration Services **partially mitigates** this risk. Generally, the SAVE Program has a 3-step process. The first step is a general query of the system. However, due to misspelling of names, transposed numbers, or incomplete information, the SAVE Program may produce inaccurate results. To mitigate this, the SAVE Program has a manual step process where a U.S. Citizenship and Immigration Services staff member will try to reconcile the request manually. The third step is for |

# Homeland Security

|  | the U.S. Citizenship and Immigration Services to get additional documentation from the registered agency. However, this only partially mitigates the risk since the new request using Social Security numbers does not allow for a second and third step review. The U.S. Citizenship and Immigration Services does not have direct access to the Social Security Administration system to support these additional steps. Additionally, registered agencies may not go through all steps to ensure accuracy of information. |
|---|---|
| **Privacy Risk:** | There is a risk that all United States citizens, including natural born U.S. citizens, have not been provided notice that the SAVE Program collects or maintains their information for citizenship and immigration status. |
| **Mitigation:** | The United States Citizenship and Immigration Services **partially mitigates** this risk. It is the responsibility of each registered agency to provide notice to individuals within their jurisdiction of their use of information and sharing with the U.S. Department of Homeland Security/U.S. Citizenship and Immigration Services. The U.S. Citizenship and Immigration Services is publishing this privacy impact assessment and related System of Records Notice to provide transparency regarding the new categories of information collected and shared to assist registered agencies in verifying citizenship and immigration status of individuals applying for a benefit or license and voter registration verification. The SAVE Program's "Register an Agency for SAVE" explains how an eligible agency can create a Memorandum of Agreement with the U.S. Citizenship and Immigration Services. These agreements require registered user agencies to comply with the Privacy Act of 1974, 5 U.S.C. § 552a, as amended, and other applicable laws, regulations, and policies. These policies include transparency and notice to individuals regarding agencies collection and use of personally identifiable information. |
| **Privacy Risk:** | There is a risk that the U.S. Citizenship and Immigration Services may use the information it obtains from registered agencies, the Social Security Administration, and the U.S. Department of State, for purposes not authorized by statute or for which it was originally collected. |
| **Mitigation:** | The United States Citizenship and Immigration Services **mitigates this risk** by only collecting information as authorized by the Immigration and Naturalization Act and other authorities mentioned within this Privacy |

DHS-AR-000241

| | Impact Assessment. The purpose for sharing Social Security numbers with the Social Security Administration and receiving information is to allow user agencies to verify the citizenship or immigration status of individuals applying for a benefit, license, or voter registration verification. The purpose for sharing and receiving U.S. passport information with the U.S. Department of State is to verify the citizenship or immigration status of individuals applying for a benefit, license or for voter registration verification. Also, each registered agency must execute a Memorandum of Agreement or Computer Matching Agreement with the U.S. Citizenship and Immigration Services that includes terms that the SAVE Program will be used in accordance with the law. |
|---|---|
| **Privacy Risk:** | There is a risk that the new category individuals covered by this assessment/notice, specifically, United States born citizens do not have the opportunity to individually participate or consent in how the U.S. Citizenship and Immigration Services uses their information. |
| **Mitigation:** | The U.S. Citizenship and Immigration Services **cannot mitigate** this risk. Each user agency is responsible for complying with federal and local authorities. The U.S. Citizenship and Immigration Services assumes that each user agency factors in the principles of notice, individual participation, and consent prior to providing information to the U.S. Citizenship and Immigration Services. The U.S. Citizenship and Immigration Services only uses the information for the authorized purpose(s) identified within this Privacy Impact Assessment. Individuals should consult their local government agencies to determine the appropriate opt-in or opt-out statute, regulations and policies. |
| **Privacy Risk:** | There is a risk that individuals may access the SAVE Program that do not have a need to know of the information. |
| **Mitigation:** | The U.S. Citizenship and Immigration Services mitigates this risk by requiring the SAVE Program's potential enrollees and customer agencies to register for participation in the program and sign a Memorandum of Agreement or Computer Matching Agreement. After all required documentation is submitted, all users must complete a web-based training course that explains functionality and security requirements.<br><br>The SAVE Program's internal users complete the mandatory annual privacy |

DHS-AR-000242

# Homeland Security

| | and information technology training. External program complete take on-line tutorials explaining the program. The tutorials also cover the procedures and policies associated with the use of the program. |
|---|---|

## Contact Official

Brian Broderick
Division Chief (Acting)
Verification Division
U.S. Citizenship and Immigration Services

## Responsible Official

Angela Y. Washington
Component Privacy Officer
Office of Privacy
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
USCIS.PrivacyCompliance@uscis.dhs.gov

## Approval Notice:

By signing below, the U.S. Department of Homeland Security Chief Privacy Officer approves this Privacy Impact Assessment for the SAVE Program. If, however, during the operational course of this program or U.S. Citizenship and Immigration Services' use of this technology changes from what has been documented or the U.S. Department of Homeland Security Privacy Office becomes aware of evidentiary changes to the intended use of the personally identifiable information or the scope of the personally identifiable information collected, of the program or technology is determined to be ineffective, the Chief Privacy Officer reserves the right to revoke approval of this Privacy Impact Assessment.

## Approval Signature

Original, signed copy on file with the U.S. Department of Homeland Security Privacy Office.

_____

Roman Jankowski
Chief Privacy Officer
U.S. Department of Homeland Security
Privacy@hq.dhs.gov

DHS-AR-000243

# Exhibit 14



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 1 of 42*

## PRIVACY THRESHOLD ANALYSIS (PTA)

**This form serves as the official determination to identify the privacy compliance requirements for all Departmental uses of personally identifiable information (PII).**

A Privacy Threshold Analysis (PTA) serves as the document used to identify information technology (IT) systems, information collections/forms, technologies, rulemakings, programs, information sharing arrangements, or pilot projects that involve PII and other activities that otherwise impact the privacy of individuals, and to assess whether there is a need for additional privacy compliance documentation or requirements. A PTA includes a general description of the IT system, information collection, form, technology, rulemaking, program, pilot project, information sharing arrangement, or other Department activity and describes what PII is collected (and from whom) and how that information is used. In accordance with the Fair Information Practice Principles (FIPPs),[1] Component Privacy Officers should consider best practices for privacy safeguards and principles when reviewing and adjudicating PTAs.

Please complete the attached PTA and submit it to your Component Privacy Office. If you do not have a Component Privacy Office, please send the PTA to the DHS Privacy Office:

Senior Director, Privacy Compliance
The Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

The Component or DHS Privacy Office will review this form and assess whether any privacy compliance documentation is required. If privacy compliance documentation is required – such as Privacy Impact Assessment (PIA), System of Records Notice (SORN), Privacy Act Statement/Privacy Notice, or Computer Matching Agreement (CMA) – the Component Privacy Office will send you a copy of the relevant compliance template to complete and return.

---

[1] *See* The Fair Information Practice Principles | Homeland Security.

DHS-AR-000244

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 2 of 42*

## PRIVACY THRESHOLD ANALYSIS (PTA)

### SUMMARY INFORMATION

| | | | |
|---|---|---|---|
| **Project, Program, or System Name:** | Systematic Alien Verification for Entitlements Program | | |
| **Component or Office:** | U.S. Citizenship and Immigration Services (USCIS) | **Office or Program:** | Verification Division |
| **FISMA Name (if applicable):** | Verification Information System | **FISMA Number (if applicable):** | CIS-06285-MAJ-06285 |
| **Type of Project or Program:** | System | **Project or program status:** | Operational |
| **Date first developed:** | July 7, 2007 | **Pilot launch date:** | N/A |
| **Date of last PTA update** | February 7, 2023 | **Pilot end date:** | N/A |
| **ATO Status (if applicable):**[2] | Complete | **Expected ATO/ATP/OA date (if applicable):** | **Ongoing Authorization** |

### PROJECT, PROGRAM, OR SYSTEM MANAGER

| | |
|---|---|
| **Name:** | Irina Sidelnikov |
| **Office:** | Office of Information Technology | **Title:** | OIT Project Manager |
| **Phone:** | ▇▇▇▇▇▇ | **Email:** | ▇▇▇▇▇▇▇▇▇▇▇▇ |

### INFORMATION SYSTEM SECURITY OFFICER (ISSO) (IF APPLICABLE)

| | |
|---|---|
| **Name:** | Minh Vo |
| **Phone:** | N/A | **Email:** | ▇▇▇▇▇▇▇▇ |

---

[2] The DHS OCIO has implemented a streamlined approach to authorizing an Authority to Operate (ATO), allowing for rapid deployment of new IT systems and initiate using the latest technologies as quickly as possible. This approach is used for selected information systems that meet the required eligibility criteria in order to be operational and connect to the network. For more information, see https://dhsconnect.dhs.gov/org/comp/mgmt/ocio/ciso/Documents/DHS%20ATP%20Guide%20v2.0.pdf#search=atp.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 3 of 42*

## SPECIFIC PTA QUESTIONS

### 1. Reason for submitting the PTA: Updated PTA

The United States Citizenship and Immigration Services submits this updated Privacy Threshold Analysis to document the United States Citizenship and Immigration Services Verification Division and Office of Technology changes to the Systematic Alien Verification for Entitlements Program. The United States Citizenship and Immigration Services administers the Systematic Alien Verification for Entitlements Program, an inter-governmental initiative that provides a web-based service to help federal, state, territorial, tribal and local agencies and other governmental entities verify United States citizenship or immigration status/category information of applicants for benefits, licenses, or other authorized purposes.

This Privacy Threshold Analysis documents that the Systematic Alien Verification for Entitlements Program has

1. Expanded its search capabilities to allow approved Systematic Alien Verification for Entitlements Program user agencies to verify United States citizenship information using Social Security Numbers and other non-Department of Homeland Security enumerators.

2. A new Social Security Administration system connection to support verification of citizenship/immigration status.

3. A new bulk uploader/list processor function that allows user agencies to upload lists of benefit applicants.

4. Use of the Voter Registration and Voter List Maintenance Verification functionality.

5. The collection of information from the Department of State's Consular Consolidated Database/ American Citizen Record Query system. Additionally, the Systematic Alien Verification for Entitlements Program will integrate with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data system.

### 2025 Updates

On April 22, 2025, Homeland Security Secretary Kristi Noem, alongside the United States Citizenship and Immigration Services and the Department of Government Efficiency, announced a comprehensive optimization of the Systematic Alien Verification for Entitlements Program to ensure a single, reliable source for verifying immigration status and United States citizenship nationwide. Congressional, federal, and state stakeholders have periodically expressed interest in using the Systematic Alien Verification for Entitlements to verify naturalized and derived citizenship information during voter registration and/or for voter list maintenance. Verification for voter list maintenance purposes often occurs when a state Department of Motor Vehicles compares its records to state voter agency records to determine if individuals on the voter rolls represented that they were other than U.S. citizens when the Department of Motor Vehicles issued their driver's license. The state voter agency then follows up with those individuals as to their citizenship status through state law voter registration challenge procedures. The United States Citizenship and Immigration Services Verification Division is leading this effort and has identified multiple phases to optimize the program. A high-level summary is provided below, while a more detailed description of each phase follows.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 4 of 42*

- Phase 1: Free Service for State, Local, Tribal, Territory agencies and Bulk Uploader. (Estimated completion: Implemented)

- Phase 2: Integration with the Social Security Administration to allow for full Social Security Number to be used as a non-Department of Homeland Security enumerator. (Estimated completion: Implemented)

- Phase 3: Modify the Security Administration integration to allow for truncated Social Security Numbers (last 4-digits) to be used as a non-Department of Homeland Security enumerator. (Estimated completion: July/August 2025)

- Phase 4: Integration with Customs and Border Protection to enable United States passport data, received from the Department of State, to be used within the Systematic Alien Verification for Entitlements Program. (Estimated completion: To be determined)

- Phase 5: Integration with the Department of Justice to enable an incarceration/felony related flag (the flag will be used internally and will not be sent to the agencies or the applicants). (Estimated completion: To be determined)

- Phase 6: Integration with State Driver's Licensing Agencies to enable a Driver License number to be used as a non-Department of Homeland Security enumerator. (Estimated completion: To be determined

The summary below focuses on phases one (1) through four (4). More detailed information can be found later in this document. Phases five (5) and six (6) are longer term goals of the optimization effort and are still in the exploratory/planning stage. The United States Citizenship and Immigration Services will update this Privacy Threshold Analysis to support the remaining phases during their development.

Phases One (1) through Three (3)

Systematic Alien Verification for Entitlements Program eliminated fees for non-federal users creating Systematic Alien Verification for Entitlements Program cases. User agencies can now create multiple individual cases from a list of data provided by the user. Further, the Systematic Alien Verification for Entitlements Program plans to integrate additional immigration information into search functionality and case results, such as timelines and addresses. Improved automatic status updates and a new user-friendly interface will empower federal, state, local, territorial, and tribal agencies to help prevent individuals who are not qualified for government benefits and licenses from receiving those benefits and licenses. The Department of Homeland Security intends to provide ongoing updates to stakeholders as the Systematic Alien Verification for Entitlements Program Optimization Plan progresses. Systematic Alien Verification for Entitlements Program users must attest to completing the Systematic Alien Verification for Entitlements Program tutorial prior to gaining access to Systematic Alien Verification for Entitlements Program. Users' access is based on their permissions.

The United States Citizenship and Immigration Services has developed and implemented a new bulk uploader/list processor feature to the Systematic Alien Verification for Entitlements Program. This feature will allow program users to upload a list (such as an excel spreadsheet) of benefit applicants to the Systematic Alien Verification for Entitlements Program for processing. Once the list is uploaded, the Systematic Alien Verification for Entitlements Program will accept or not accept the data then, through an automated process, create front-end single-record cases for each entry. Initially the creation of cases using this feature is limited to cases created using an A-number, Citizenship or Naturalization Certificate

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

████████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 5 of 42*

number, or Social Security number. Agencies will not be prompted to institute additional verification when using this process but are instructed to resubmit additional information when the process is unable to return a response. Expansion of this feature in the future may include the ability to create cases with additional enumerators and the ability to request configured information not automatically selected for the benefit type.

User agencies will be able to access each case created using the list processor feature in the Systematic Alien Verification for Entitlements system as normal, by viewing the individual case status and response. The Systematic Alien Verification for Entitlements Program also has a feature available to all the user agencies to generate a report that will list all the cases created, the status of the case and the Systematic Alien Verification for Entitlements Program response. Access to generate the report, including what cases are included, will vary depending upon the individual user's permission. United States Citizenship and Immigration Services is providing this verification service for all benefit requests. There are approximately 1,200 user agencies with access to the Systematic Alien Verification for Entitlements Program to verify immigration status for benefits or entitlements, and in fiscal year 2024, the Systematic Alien Verification for Entitlements Program completed over 24.5 million first step verifications.

The Systematic Alien Verification for Entitlements Program was originally designed only to use a Department of Homeland Security-issued enumerator (such as an alien number or A-Number) to query immigration records, specifically, to provide immigration status to Systematic Alien Verification for Entitlements Program user agencies. The Systematic Alien Verification for Entitlements Program is now expanding to allow Systematic Alien Verification for Entitlements Program user agencies to provide a Social Security Number or a United States Passport number to query the Systematic Alien Verification for Entitlements Program.

The Systematic Alien Verification for Entitlements Program will also add the ability for user agencies to verify truncated Social Security Numbers (last 4 digits) against Social Security Administration records. This will allow the Systematic Alien Verification for Entitlements Program to verify all United States citizens including those by birth, which was previously not available. A benefit applicant's Social Security number can only be used for automated initial verification and cannot be used for additional verification, which will continue to require a Department of Homeland Security immigration enumerator since the Systematic Alien Verification for Entitlements Program does not normally collect Social Security Numbers or passport numbers. The addition of the Voter Registration and Voter List Maintenance Verification, and the Social Security Administration connection is now live. The Systematic Alien Verification for Entitlements Program can now verify United States-born citizens for voter verification agencies.

The Department of Homeland Security/United States Citizenship and Immigration Services seeks access to Social Security Administration information accessed through the Department of Homeland Security/United States Citizenship and Immigration Services Verification Information System[3]. The United States Citizenship and Immigration Services and the Social Security Administration agreed to the following limitations on the access to, and disclosure and use of information that identifies a verification request as being generated by United States Citizenship and Immigration Services or associated with a United States Citizenship and Immigration Services program:

---

[3] Verification Information System provides services to customers through Systematic Alien Verification for Entitlements and E-Verify (the latter of which will not be used for this initiative).

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 6 of 42*

- Data or information that identifies a verification request as being generated by United States Citizenship and Immigration Services or associated with a United States Citizenship and Immigration Services program will remain information owned by United States Citizenship and Immigration Services.

- The United States Citizenship and Immigration Services will use the verification responses generated by the Social Security Administration only for the purposes described in the Information Sharing Agreement between the Department of Homeland Security, United States Citizenship and Immigration Services and the Social Security Administration.

- Data or information that identifies a verification request as being generated by the United States Citizenship and Immigration Services or associated with a United States Citizenship and Immigration Services program will be used only as provided in the Information Sharing Agreement by the Social Security Administration.

- Data or information that identifies a verification request as being generated by United States Citizenship and Immigration Services or associated with the United States Citizenship and Immigration Services program provided by Social Security Administration will not be duplicated or disseminated outside Social Security Administration without prior written approval from United States Citizenship and Immigration Services. The United States Citizenship and Immigration Services will not give such approval unless the redisclosure is required by law or is essential to the conduct of the exchange. In such cases, the Social Security Administration, the agency redisclosing the records, must specify in writing what records will be redisclosed, to whom they will be redisclosed, and the reasons that justify redisclosure.

- The United States Citizenship and Immigration Services will not duplicate or disseminate the verification responses for a purpose not covered by the Information Sharing Agreement, within or outside of its agency, without the written permission of the Social Security Agreement excepted as required by Federal law. The Social Security Administration will not give such permission, unless Federal law requires disclosure, or disclosure is essential to the purpose of this Agreement. For such permission, The United States Citizenship and Immigration Services must specify in writing what data it is requesting to duplicate or disseminate and to whom, and the reasons that justify such duplication or dissemination.

### *Administrative Safeguards*

The Social Security Administration and the United States Citizenship and Immigration Services will restrict access to the data matched and to any data created by the match to only those users, for example, employees and contractors, who need it to perform their official duties in connection with the uses of the data authorized in the Information Sharing agreement. Further, the Social Security Administration and the United States Citizenship and Immigration Services will advise all personnel with access about the confidential nature of the data, the safeguards required to protect the data, and the civil and criminal sanctions for noncompliance contained in the applicable Federal laws.

Parties, including all personnel with access to information, will be appropriately educated and trained regarding the proper handling of personally identifiable information and proper care of the information systems to ensure the overall safeguarding and security of the information. The Social Security Administration and the United States Citizenship and Immigration Services will ensure that its



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 7 of 42*

employees, including contractors with the access to any of the information, have completed privacy training on the handling of personally identifiable information.

Phase Four (4)

The United States Citizenship and Immigration Services will need to query other non-United States Citizenship and Immigration Services systems, besides the Social Security Administration's Numident system, with the information provided by the Systematic Alien Verification for Entitlements Program user agency to find the appropriate Department of Homeland Security-issued enumerator to continue with the Systematic Alien Verification for Entitlements Program case processing. For instance, USCIS is researching the possibility of using a United States Passport Number to be able to identify a Department of Homeland Security-issued enumerator. In a case when a User Agency uploads or enters a United States Passport Number instead of a DHS-issued enumerator, the Systematic Alien Verification for Entitlements Program will query another non-United States Citizenship and Immigration Services System using the United States Passport Number along with a unique identifier to find any records and will identify if a Department of Homeland Security-issued enumerator was used by the applicant when applying for a Department of Homeland Security-issued benefit or if a Passport Number was used at a United States Port of Entry and is associated with a Department of Homeland Security-issued enumerator. In this instance, to enable this change, the Systematic Alien Verification for Entitlements Program would integrate with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data to match a Passport Number against Customs and Border Protection and Department of State records to attempt to locate a Department of Homeland Security issued enumerator.

The TECS (not an acronym) - Travel Documents and Encounter Data stores travel document information (scanned images of documents, biographic information, document details, and photographs) from the United States Citizenship and Immigration Services Lawful Permanent Resident Cards along with Department of State-issued United States passports, visas, foreign passports, enhanced driver's licenses, and enhanced tribal cards. The TECS (not an acronym) - Travel Documents and Encounter Data USPassportRESTService allows interconnected systems to query TECS (not an acronym) - Travel Documents and Encounter Data for United States passport information. For this use case, the Systematic Alien Verification for Entitlements Program user agency will input a passport number into the Systematic Alien Verification for Entitlements Program. The query will trigger the USPassportRESTService to locate the matching United States passport number and return the results to the user. This will allow the Systematic Alien Verification for Entitlements Program to verify all types of United States citizens, including those by birth, which was previously not available. Currently, the Systematic Alien Verification for Entitlements Program only collects passport numbers for foreign issued passports if it is provided with an additional Department of Homeland Security enumerator. The United States Citizenship and Immigration Services E-Verify has an existing connection to the USPassportRESTService, which also resides within the Verification Information System, like Systematic Alien Verification for Entitlements Program.

The following are updates that were planned prior to Secretary Noem's vision for optimizing the Systematic Alien Verification for Entitlements Program and are still in progress.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 8 of 42*

- Systematic Alien Verification for Entitlements Program will update the responses provided to users as part of the Interface Control Agreement Version 38, which enhances the Systematic Alien Verification for Entitlements Program query logic to provide more accurate information based on the need to know. The Systematic Alien Verification for Entitlements Program will add the collection of an uploaded document such as a Naturalization/Citizenship Certificate Number, when the user submits a second step additional verification, as well as the collection of a reason code, which allows the Systematic Alien Verification for Entitlements Program users to provide additional details regarding the applicant's request, particularly during the additional verification process. The Systematic Alien Verification Entitlements responds to users by providing an immigration status/category or United States citizenship. These additional collections will help Systematic Alien Verification for Entitlements Program identify and remedy data issues, reduce overall manual response times, and allow the Systematic Alien Verification for Entitlements Program to improve the quality of first step automated responses.

- A live site environment will be implemented where Systematic Alien Verification for Entitlements web service users can access new and current interface control agreements. This will streamline the process to update the interface control agreements and ensure that the Systematic Alien Verification for Entitlements Program users have access to the most current information for the Interface Control Agreement Version 38.

- The Systematic Alien Verification for Entitlements Program case response screen will be redesigned so that it is easier to read and allow for the additional information to be submitted. The screen will be packaged in a new way to provide the user clear information during the initial verification.

Additionally, Systematic Alien Verification for Entitlements Program will be collecting information from the Department of State's Consular Consolidated Database / American Citizen Record Query system which is a consular search engine used by the Department of State to manage and access records related to United States citizens, particularly for consular protection and services, including managing passport requests and applications.

## 2024 Update

As part of the Systematic Alien Verification for Entitlements Program's normal review process, the United States Citizenship and Immigration Services intends to access the Department of State's Consular Consolidated Database / American Citizen Record Query system to verify immigration status of applicants for benefits, licenses, and other authorized purposes. The purpose of collecting this information is to confirm the identity of the applicant to determine their status. This process is part of an ongoing effort that began in 2024.

### *Background*

The Systematic Alien Verification for Entitlements Program is an online service for registered federal, state, territorial, tribal, and local government agencies to verify immigration status and United States citizenship of applicants seeking benefits or licenses. Systematic Alien Verification for Entitlements



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 9 of 42*

Program is not a database but queries Department of Homeland Security-accessed federal records to provide registered user agencies with a verification response.

In 1986, Congress mandated that the Immigration and Naturalization Service, now United States Citizenship and Immigration Services, establish a system to verify the citizenship and immigration status of individuals seeking government benefits and licenses.

The United States Citizenship and Immigration Services Verification Division administers the Systematic Alien Verification for Entitlements Program, which is an intergovernmental initiative using a web-based service to help federal, state, territorial, tribal and local benefit-issuing and licensing agencies and other governmental entities determine the immigration status or United States citizenship of applicants for public benefits, licenses, grants, credentials, background investigations, and other lawful purposes, so only entitled applicants receive them. Systematic Alien Verification for Entitlements Program verifies immigration status/category and United States citizenship against Department of Homeland Security-accessed records. Historically, the Systematic Alien Verification for Entitlements Program has not verified information for United States born citizens as a Department of Homeland Security immigration enumerator was previously required, but now the Systematic Alien Verification for Entitlements Program can verify United States-born United States citizens against Social Security Administration data. The Systematic Alien Verification for Entitlements Program does not determine an applicant's eligibility for a specific benefit or license, as this is the responsibility of the benefit/license granting agency.

As of April 1, 2025, the Systematic Alien Verification for Entitlements Program has revised its transaction charges for all state, local, tribal, and territorial government agencies using the Systematic Alien Verification for Entitlements Program to eliminate those charges. Federal agencies are still charged a fee to use the Systematic Alien Verification for Entitlements Program. The authority for the Systematic Alien Verification for Entitlements Program, and for particular Systematic Alien Verification for Entitlements Program authorized uses can be found in the Immigration Reform and Control Act[4]; the Personal Responsibility and Work Opportunity Reconciliation Act[5] Title IV, Subtitle A, of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996[6], and the REAL ID Act of 2005[7], the Patient Protection and Affordable Care Act of 2010,[8] and the Federal Aviation Administration Extension, Safety and Security Act of 2016.[9] In addition, the Systematic Alien Verification for Entitlements Program has an obligation under 8 U.S.C. 1373(c) to "respond to an inquiry by a Federal, State or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

---

[4] Immigration Reform and Control Act of 1986, Public. Law. No. 99-603

[5] Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law No. 104-193, 110 Statute 2168

[6] Title IV, Subtitle A, of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 Public Law 104-208, 110 Statute 3009

[7] REAL ID Act of 2005, Public. Law No.109-13, 119 Statute 231

[8] Patient Protection and Affordable Care Act of 2010, Public Law No. 111-148

[9] Federal Aviation Administration Extension, Safety and Security Act of 2016 (Federal Aviation Administration Act), Public. Law. No. 114-190 § 3405(d) (July 15, 2016).

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

The United States Citizenship and Immigration Services Verification Division operates the Verification Data Information System as the search engine for Systematic Alien Verification for Entitlements Program and the E-Verify Program. The Verification Data Information System accesses nationally accessible databases of selected immigration records to support both the Systematic Alien Verification for Entitlements Program and the E-Verify Program. The Systematic Alien Verification for Entitlements Program queries an individual's immigration status to help the administering agency determine eligibility for any public benefit, license, or credential based on their United States citizenship or immigration status. The United States Citizenship and Immigration Services is obligated by law to respond to an inquiry by a Federal, state or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

### *Systematic Alien Verification for Entitlements Program*

The United States Citizenship and Immigration Services administers the Systematic Alien Verification for Entitlements Program, an inter-governmental initiative that provides a web-based service to help federal, state, territorial, tribal, and local benefits-issuing and licensing agencies and other governmental entities along with Airport Operators verify the United States citizenship and immigration status/category information of applicants for public benefits or licenses (hereinafter "benefits"). Examples of these benefits include Supplemental Security Income Supplemental Nutrition Assistance Program (formerly food stamps), Temporary Assistance for Needy Families cash assistance, Medicaid, Children's Health Insurance Program, REAL ID compliance, and other statutorily authorized purposes, including voter verification.

The Systematic Alien Verification for Entitlements Program also eliminates fees for database searches, breaks down silos for more accurate results, streamlines List Processor submission, and integrates additional immigration information, such as timelines and addresses. Automatic status updates and a new user-friendly interface will empower Federal, state, local, territorial, and tribal agencies to help prevent individuals who are not qualified for government benefits from receiving those benefits. The Department of Homeland Security intends to provide ongoing updates to stakeholders as the Systematic Alien Verification for Entitlements Program Optimization Plan progresses.

Agency use of the Systematic Alien Verification for Entitlements Program is administered by the Verification Division. All user agencies are required to register with the Systematic Alien Verification for Entitlements Program to access the system prior to using the Systematic Alien Verification for Entitlements Program. The Systematic Alien Verification for Entitlements Program is not a source system and connects with federal immigration systems, and now the Social Security Administration's Numident[10] system, to access applicable information. The Systematic Alien Verification for Entitlements Program also has a Case Status Check capability that allows benefit applicants to view the status of their Systematic Alien Verification for Entitlements Program case. The system provides benefit eligibility checks based on the grant dates. The Verification Division has a three (3) tier process when verifying an individual's immigration status or United States citizenship.

---

[10] NUMIDENT or "Numerical Identification" refers to the master file of Social Security Administration records containing information about individuals who have applied for or been assigned a Social Security Number. This file includes records for applications, claims, and death records related to individuals with a Social Security Number.

DHS-AR-000253

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 11 of 42*

Users must perform all additional verification procedures the Systematic Alien Verification for Entitlements Program requires and/or the applicant requests prior to denying a benefit based upon a Systematic Alien Verification for Entitlements Program response. Users must provide all applicants who are denied benefits based solely or in part upon the Systematic Alien Verification for Entitlements Program response adequate written notice and the information necessary to contact the Department of Homeland Security so that applicants may correct their immigration records in a timely manner, if necessary.

### *Initial verification*

A Systematic Alien Verification for Entitlements Program user agency accesses their account in the system and either submits requests individually or via a bulk request using the system's new bulk uploader feature. When a Systematic Alien Verification for Entitlements Program user agency submits an online verification request for a benefit applicant, it provides several required identifiers for the benefit applicant from documents presented by the benefit applicant, including first and last name, date of birth, and at least one of the following: an enumerator from the Department of Homeland Security (e.g. Alien number/United States Citizenship and Immigration Services number, Form I-94 Number, Card Number/I-797 Receipt number, Citizenship/Naturalization Certificate Numbers), a Social Security number from Social Security Administration, or a United States passport number from the Department of State. Social Security Numbers and United States passport numbers are new enumerators. Previously, enumerators were solely limited to Department of Homeland Security-issued immigration enumerators.

In the case of a bulk upload the Systematic Alien Verification for Entitlements Program will use an automated process to create individual cases for each benefit applicant on the list.

Using these data fields, the Systematic Alien Verification for Entitlements Program performs an automated query of various Systematic Alien Verification for Entitlements Program-accessed federal databases for relevant records. If a Social Security Number is submitted under this new collection, the Systematic Alien Verification for Entitlements Program will verify this enumerator against the Social Security Administration records, including the Social Security Administration death records and citizenship records. If the individual's Social Security account has a record of an A-number or certificate number, the Social Security Administration will provide that information to the Systematic Alien Verification for Entitlements Program, which will be used to validate that information against the Department of Homeland Security records. If a United States passport number is submitted, the Systematic Alien Verification for Entitlements Program will verify it against the Department of State related records available in the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data system. When the Systematic Alien Verification for Entitlements Program locates a record pertaining to the benefit applicant in any of these federal databases, the Systematic Alien Verification for Entitlements Program displays a verification response to the user agency within seconds.

### *Second step, additional verification (Tier 2)*

Homeland
Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
██████
www.dhs.gov/privacy

Privacy Threshold Analysis
Version number: 02-2025
Page 12 of 42

If the Systematic Alien Verification for Entitlements Program is unable to find a record pertaining to the benefit applicant through the automated first level search of the Department of Homeland Security records, including United States passport records and the Social Security Administration records, it displays a response to the user indicating additional action is required from the user agency, including requesting additional verification when an immigration enumerator is available. If only a Social Security Number is submitted for verification, the user agency will be informed to close the case and submit a new request using either corrected data or an immigration enumerator, since additional verification cannot be conducted with only a Social Security Number.

The Systematic Alien Verification for Entitlements Program user agency may start the additional verification procedure, which may include is an in-depth manual review by Systematic Alien Verification for Entitlements Program staff (Status Verification Analyst) to determine the applicant's immigration status or United States citizenship. At the point at which the "Institute Additional Verification" message is displayed, user agencies must submit the case for additional verification if they are relying on a Systematic Alien Verification for Entitlements Program response to deny a benefit. Additionally, if the user agency receives a response and they have questions about the validity of the response, the user agency may submit a case that already received a Systematic Alien Verification for Entitlements Program response for additional verification. Users must also submit a case for additional verification when requested by the applicant.

User agencies may not rely on a Systematic Alien Verification for Entitlements Program response to approve or deny an application for benefits unless they have followed all required Systematic Alien Verification for Entitlements Program verification procedures. The Systematic Alien Verification for Entitlements Program users are not required to institute additional verification if a user agency has alternate grounds upon which to base its decision to decide a benefit that do not require verification of the applicant's immigration status/category, even where the agency is prompted to do so. Examples of when a user agency has alternate grounds to base a decision that does not require the completion of additional verification include:

- The applicant does not meet eligibility requirements for the benefit unrelated to immigration status/United States citizenship.
- The applicant withdraws their application.
- The applicant cannot be contacted/fails to respond to an agency's request for follow-up.
- The applicant presents documentation the Systematic Alien Verification for Entitlements Program cannot verify (such as a military identification).

This revision adds the collection of an uploaded document which includes immigration enumerators (such as a Form I-94, Arrival/Departure Records, Naturalization/Citizenship Certificate, or passport records) when a case is submitted for second step additional verification as well as a reason code. Reason codes can provide information on why the initial verification was not successful, if the case has been escalated for additional verification, or suggest that additional verification steps may be needed to determine the applicant's status or eligibility for a benefit. Reason codes can also identify if it was a user-initiated additional verification request when the user received an initial Systematic Alien Verification for Entitlements Program response providing an immigration status/category or United States citizenship. These additional collections will help the Systematic Alien Verification for Entitlements Program identify

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 13 of 42*

and remedy data issues, reduce overall manual response times, and allow the Systematic Alien Verification for Entitlements Program to improve the quality of first step automated responses.

If the second step manual search produces relevant information enabling the verification of immigration status, the Systematic Alien Verification for Entitlements Program provides an electronic response to the inquiring user agency.

If the user agency declines second step additional verification, the verification process ceases. Additional screens notify the user agency that closing the case without performing additional verification means the agency does not have a complete Systematic Alien Verification for Entitlements Program response. The Systematic Alien Verification for Entitlements Program user agencies cannot rely upon an incomplete Systematic Alien Verification for Entitlements Program response to deny a benefit.

### *Third step Additional Verification with Documents (Tier 3)*

If a benefit applicant's immigration status/category cannot be verified on initial or additional verification step when submitting a Department of Homeland Security enumerator, the system will prompt the user agency to resubmit the case with documents. When the prompt is received, the agency must upload a copy of the front and back of the immigration document the applicant presented to the user agency for the Systematic Alien Verification for Entitlements Program to perform detailed manual research at third step. A Department of Homeland Security immigration enumerator is required for the third step additional verification. The Systematic Alien Verification for Entitlements Program cannot complete third step additional verification using non-immigration documentation. The Systematic Alien Verification for Entitlements Program user agencies are legally authorized to make electronic copies of immigration documents for purposes of verifying immigration status. Cases created with just the Social Security Number or a Passport Number as the enumerator are not subject to this step.

If the third step manual review produces relevant information enabling the verification of immigration status/category or United States citizenship, the Systematic Alien Verification for Entitlements Program provides an electronic response to the user agency.

If a benefit applicant's immigration status/category is not verified after completing third step verification, the Systematic Alien Verification for Entitlements Program will provide additional information or guidance on how to proceed.

If the applicant believes their information in the Department of Homeland Security records is incorrect, the applicant can seek a records correction. User agencies should provide the Systematic Alien Verification for Entitlements Program Fact Sheet and Systematic Alien Verification for Entitlements Program Records: Fast Facts for Benefit Applicants[11] to benefit applicants that may require records correction.

---

[11] The Systematic Alien Verification for Entitlements Fact Sheet and Systematic Alien Verification for Entitlements Records: Fast Fact for Benefits Applicants is accessible at https://www.uscis.gov/save/benefit-and-license-applicants/resources-for-benefit-and-license-applicants

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
██████████
www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 14 of 42*

The Systematic Alien Verification for Entitlements Program user agency continues to have the option of running a web report within the system that will create a file in Adobe format of all cases processed for their organization. The United States Citizenship and Immigration Services provides access to relevant reports of approved or pending cases for Systematic Alien Verification for Entitlements Program user agencies to assist them in managing their Systematic Alien Verification for Entitlements Program cases and monitoring their own compliance with the Systematic Alien Verification for Entitlements Program rules and the federal deeming and reimbursement rules. User agencies can run case-specific reports for quality assurance that will include information, such as name, date of birth, type of benefit, immigration identifier (e.g., A-Number, unexpired foreign passport number, I-94 Arrival/Departure Record), and immigration status, only if the benefit was administered.

### *Voter Registration and Voter List Maintenance Verification*

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 expanded the Systematic Alien Verification for Entitlements Program by requiring the program to respond to inquiries by federal, state and local government agencies seeking to verify or determine the citizenship or immigration status of any individual within the jurisdiction of the agency for any lawful purpose. See 8 U.S.C. § 1373(c). This authority allows agencies to use the Systematic Alien Verification for Entitlements Program for verification of citizenship and immigration status outside of the traditional benefit-granting programs covered by the Immigration Reform and Control Act of 1986. This includes voter registration and voter list maintenance purposes, so long as the agency meets the legal requirements for using the Systematic Alien Verification for Entitlements Program and provides the required applicant information, when submitting verification requests.

On January 20, 2025, and March 25, 2025, the President issued Executive Orders 14159, *Protecting the American People Against Invasion*[12] and 14248, *Preserving and Protecting the Integrity of American Elections*[13] respectively. Executive Order 14159 requires the Secretary to "promptly issue guidance to ensure maximum compliance by [Department of Homeland Security] personnel with the provisions of 8 U.S.C. 1373[14] and 8 U.S.C. 1644[15] and ensure that State and local governments are provided with the information necessary to fulfill law enforcement, citizenship, or immigration status verification requirements authorized by law." Executive Order 14248[16] provides, "Federal laws, such as the National Voter Registration Act (Pub. L. 103-31) and the Help America Vote Act (Pub. L. 107-252), require States to maintain an accurate and current Statewide list of every legally registered voter in the State. Pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Department of Homeland Security/United States Citizenship and Immigration Services is required to share database information with States upon request so they can fulfill this duty. 8 U.S.C. 1373(c)[17]." Executive Order 14159[18] directs the Secretary to "ensure that State and local officials have, without the requirement of the payment

---

[12] https://www.federalregister.gov/documents/2025/01/29/2025-02006/protecting-the-american-people-against-invasion
[13] https://www.federalregister.gov/documents/2025/03/28/2025-05523/preserving-and-protecting-the-integrity-of-american-elections
[14] 8 USC 1373 Communication between government agencies and the Immigration and Naturalization Service
[15] 8 USC 1644 Communication between State and local government agencies and Immigration and Naturalization Service
[16] Executive Order 14248 Preserving and Protecting the Integrity of American Elections
[17] 8 USC. 1373(c) Obligation to respond to inquiries
[18] Executive Order 14159 Protecting the American People Against Invasion

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 15 of 42*

of a fee, access to appropriate systems for verifying the citizenship or immigration status of individuals registering to vote or who are already registered." The Secretary is also required under Executive Order 14159, in coordination with the Department of Government Efficiency Administrator, to review each State's publicly available voter registration list and available records concerning voter list maintenance activities as required by 52 U.S.C. 20507[19], alongside Federal immigration databases and State records requested, including through subpoena where necessary and authorized by law, for consistency with Federal requirements. To support this activity the Attorney General is required to prioritize enforcement of 18 U.S.C. 611[20] and 1015(f)[21] and similar laws that restrict aliens from registering to vote or voting, including through use of: (i) databases or information maintained by the Department of Homeland Security; (ii) State-issued identification records and driver license databases; and (iii) similar records relating to citizenship.

In accordance with federal statutes and policies, the Department of Homeland Security personnel must, in a timely manner, provide verification or immigration status information in response to inquiries from State and local government agencies to verify or ascertain the citizenship or immigration status of individuals. As required by 8 U.S.C. 1373(c), such inquiries must relate to individuals within the jurisdiction of the State or local government agency and must be for a purpose authorized by law. Department of Homeland Security personnel have been directed to comply, to the maximum extent possible and permissible under law, with Section 1373, considering federal statutory requirements, including the Privacy Act of 1974, 5 U.S.C. 552a[22], and 8 U.S.C. 1367[23] (special protected class information); as well as other laws, rules, regulations, policies, and requirements regarding verification, information sharing, and confidentiality.

The Systematic Alien Verification for Entitlements Program user agency registration process determines whether a state voter registration agency meets the legal requirements for using the Systematic Alien Verification for Entitlements Program. As part of registering to use Systematic Alien Verification for Entitlements Program, the agency must provide the Systematic Alien Verification for Entitlements Program all applicable legal authorities and voter registration procedures that authorize the agency to engage in voter registration and/or voter list maintenance activities and verify citizenship status before making individual determinations regarding eligibility for voter registration. The United States Citizenship and Immigration Services provides information on its public facing website to assist user agencies understand the above referenced requirements.[24]

***Current Process - Voter Registration and Voter List Maintenance Verification***

---

[19] 52 USC 20507 Requirements with respect to administration of voter registration

[20] 18 USC 611 Voting by aliens

[21] 18 USC 1015 (f) Naturalization, citizenship or alien registry, whoever knowingly makes any false statement or claims that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election (including an initiative, recall, or referendum)-Shall be fined under this title or imprisoned not more than five years, or both

[22] 5 USC 552a Records maintained on individuals

[23] 8 USC 1367 Penalties for disclosure of information

[24] The Systematic Alien Verification for Entitlements Voter Registration and Voter List Maintenance Fact Sheet is accessible at https://www.uscis.gov/save/resources/voter-registration-and-voter-list-maintenance-fact-sheet.

DHS-AR-000258

**Homeland
Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
▆▆▆▆▆▆▆
www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 16 of 42*

In understanding the use of the Systematic Alien Verification for Entitlements Program for voter verification-related purposes (voter registration and voter list maintenance), one should also bear in mind the following limitations and considerations:

- The information needed to verify an individual through the Systematic Alien Verification for Entitlements Program is typically not collected on a voter registration application, although it may be available from other sources, especially driver's license applications.

- The Systematic Alien Verification for Entitlements Program previously was only able verify United States citizenship for naturalized and certain acquired citizens[25] for whom the United States Citizenship and Immigration Services has a record of their citizenship.

- The Systematic Alien Verification for Entitlements Program previously was often unable to verify acquired United States citizens because eligible individuals frequently do not apply for and thus do not receive a determination and certificate of United States citizenship from the United States Citizenship and Immigration Services.

- Department of State adjudicates acquired citizens that may not have a record with the United States Citizenship and Immigration Services via the issuance of U.S. passports. Therefore, obtaining passport information from the Department of State is in progress.

- The Department of State maintains records for individuals who have renounced their citizenship. Once a Certificate of Loss of Nationality is approved by the Department of State indicating the official determination of loss of United States nationality, this information is shared with the United States Citizenship and Immigration Services per 8 USC 1373.[26]

- With the newly established connection to the Social Security Administration's Numident system, the Systematic Alien Verification for Entitlements Program is now able to verify more United States citizens, including United States citizens by birth, when a Social Security Number is provided.

Verification for voter list maintenance purposes often occurs when a state Department of Motor Vehicles compares its records to the state voter agency records to determine if any individuals on the voter rolls identified that they were non-United States citizens when the Department of Motor Vehicles issued their driver's license. The state voter agency would then follow up with those individuals their citizenship status through established state law voter registration challenge procedures. As part of the established voter registration challenge procedures, the State Voter Agency will seek to establish the immigration/citizenship status of the individuals and use Systematic Alien Verification for Entitlements Program as one method to verify the information.

There are likely some situations in which the Systematic Alien Verification for Entitlements Program provides an initial response indicating a non-United States citizen immigration status (e.g., Lawful Permanent Resident) when the registrant is in fact a United States citizen. However, as also noted above, rules for using the Systematic Alien Verification for Entitlements Program prohibit voter registration agencies from relying upon this initial verification response to deny or revoke registration since as by

---

[25] "Acquired citizenship" refers to U.S. citizenship conveyed to children through the naturalization of parents or, under certain circumstances, at birth to foreign-born children of U.S. citizens, provided certain conditions are met.
[26] 8 USC 1873 outlines the communication between government agencies and the Immigration and Naturalization Service.

**Homeland
Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
<span style="background:black"> </span>
www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 17 of 42*

asserting United States citizenship as part of registering to vote, registrants inherently disagree with any initial response indicating they are not a United States citizen.

### *Shortfalls in data accuracy in the system could cause incomplete or false results.*

According to Systematic Alien Verification for Entitlements Program subject matter experts, the situations in which the Systematic Alien Verification for Entitlements Program provides an initial non-United States citizen immigration status for a United States citizen who has a certificate of naturalization or citizenship from the United States Citizenship and Immigration Services, or legacy Immigration and Naturalization Service can happen for a variety of reasons. In some instances, the initial non-United States citizen response is due to the lack of an electronic record with the Social Security Administration showing United States citizenship (which was not reliably recorded pre-1981), or the lack of an electronic record of a United States Citizenship and Immigration Services naturalization or acquired citizenship certificate, which is more likely for older certificates issued before recording them in electronic systems became a consistent practice. In addition, although the electronic record-matching algorithms in the United States Citizenship and Immigration Services Person Centric Service that the Systematic Alien Verification for Entitlements Program uses are very good, the United States Citizenship and Immigration Services previously identified and subsequently fixed two algorithm issues that caused Systematic Alien Verification for Entitlements Program to provide an initial verification response of Lawful Permanent Resident for some naturalized citizens and a small number of acquired United States citizens. But again, many of the safeguards noted above are designed to address any imperfections in records and algorithms used to match them.

The delay between the issuance a Certificate of Naturalization during a naturalization ceremony and when the certificate is reflected in source systems and made available to the Systematic Alien Verification for Entitlements Program rarely, if ever, causes the Systematic Alien Verification for Entitlements Program to provide an initial response of non-United States citizen immigration status. It typically takes about one business day plus a few hours for an electronic record of the certificate to be available to the Systematic Alien Verification for Entitlements Program once it is input by the responsible United States Citizenship and Immigration Services office. The Systematic Alien Verification for Entitlements Program rarely, if ever, receives requests to verify United States citizenship during this time.

Additionally, the United States Citizenship and Immigration Services is not the source agency for Social Security Administration related information. While the United States Citizenship and Immigration Services assumes the accuracy of the Social Security Administration data, it cannot verify accuracy of the information and relies on the Social Security Administration to ensure the data accuracy, timeliness, and integrity of their own data.

### *Customs and Border Protection Integration*

The Systematic Alien Verification for Entitlements Program will integrate with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data. Customs and Border Protection is now permitting the Systematic Alien Verification for Entitlements Program to query TECS (not an acronym) Travel Documents and Encounter Data system to find a match to US passport information in Customs and Border Protection holdings. The TECS (not an acronym) - Travel Documents and Encounter Data system stores travel document information (i.e. scanned images of documents, biographic information, document details, and photographs) from the United States Citizenship and Immigration Services Lawful Permanent Resident Cards, Department of State-issued United States

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 18 of 42*

passports and visas, foreign passports, enhanced driver's licenses, and enhanced tribal cards. The TECS (not an acronym) - Travel Documents and Encounter Data USPassportRESTService allows interconnected systems to query TECS (not an acronym) - Travel Documents and Encounter Data for United States passport information. For this use case, the Systematic Alien Verification for Entitlements Program user agencies will input a United States passport number into the Systematic Alien Verification for Entitlements Program system.

The query will trigger the USPassportRESTService to locate the matching United States passport number and return the results to the user. This will allow the Systematic Alien Verification for Entitlements Program to verify all types of United States citizens, including those by birth, which was previously not available. Currently, the United States Citizenship and Immigration Services E-Verify Program has an existing connection to the USPassportRESTService, which also resides within the Verification Information System, like the Systematic Alien Verification for Entitlements Program.

Customs and Border Protection has the authority to collect passport photos pursuant to 5 USC 552a (4).[27] Customs and Border Protection receives a routine feed from the Department of State with US passports as they are issued and/or updated. Customs and Border Protection also collects passport information primarily on all travelers seeking to enter the United States at ports of entry. Customs and Border Protection uses this information as part of Agency operations.

### *Social Security Administration Data Sharing*

The Information Sharing Agreement between the Department of Homeland Security-United States Citizenship and Immigration Services and the Social Security Administration documents the Social Security Administration's support by matching data submitted through the Systematic Alien Verification for Entitlements Program to Social Security Administration records in the Social Security Administration's master files of Social Security Number holders and Social Security Number Applications. The United States Citizenship and Immigration Services will only submit verification requests to the Social Security Administration for authorized purposes.

The United States Citizenship and Immigration Services Verification Division and Social Security Administration connection is now live and now connects the Systematic Alien Verification for Entitlements Program with the Social Security Administration's Numident system. Prior to the connection, the United States Citizenship and Immigration Services and Social Security Administration executed a Letter of Agreement that identifies the authorities for both organizations as well as purposes and the data exchange. The United States Citizenship and Immigration Services will document this sharing in a separate Privacy Threshold Analysis.

The Systematic Alien Verification for Entitlements Program performs an automated query of various Systematic Alien Verification for Entitlements Program-accessed federal databases for relevant records. Now, if a Social Security Number is submitted by a user agency, the Systematic Alien Verification for Entitlements Program will verify this enumerator against the Social Security Administration Numident system including the death and citizenship records. If the individual's Social Security account has a record of an A-number or certificate number, the Social Security Administration will provide that information to the Systematic Alien Verification for Entitlements Program, which will in turn be used to

---

[27] 5 USC 552a (4) Records maintained on individuals - collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 19 of 42*

validate the information against the Department of Homeland Security records. Verifying citizenship status using Social Security Administration data will be made available to all Systematic Alien Verification for Entitlements Program user agencies.

### *Department of State Data Sharing*

If a United States passport number is submitted, the Systematic Alien Verification for Entitlements Program will verify it against information from Department of State-issued passports maintained by the Custom Boarder Protection. Additionally, Systematic Alien Verification for Entitlements Program will collect information from the Department of State's Consular Consolidated Database / American Citizen Record Query system, which is a consular search engine used by the Department of State to manage and access records related to United States citizens, particularly for consular protection and services, including managing passport requests and applications.

Department of Homeland Security-Department of State Memorandum of Agreement Appendix A allows this query of passport information to be used in Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data to support its missions, including but not limited to verification of United States passports, whenever the document is presented as proof of identity to obtain a benefit, privilege, status, or credential from the Department of Homeland Security, for vetting and screening purposes, and/or for transportation security, national security, law enforcement, border security (including biometric entry and exit initiatives), immigration (including verification purposes such as E-Verify) and counterterrorism purposes.

### *User Agencies Memoranda of Agreement*

All user agency memorandums of agreements contain similar provisions to protect the due process and other rights of individuals for whom states or other user agencies submit verification requests to the Systematic Alien Verification for Entitlements Program[28]. The United States Citizenship and Immigration Services has an online tool that allows the public to search if a federal, state, local, tribal, or territorial agency is registered with the Systematic Alien Verification for Entitlement Program.[29]

| | |
|---|---|
| 2. **From whom does the Project, Program, or System collect, maintain, use, or disseminate information?** *Please check all that apply.* | ☐ This project does not collect, collect, maintain, use, or disseminate any personally identifiable information[30] <br><br> ☒ Members of the public |

---

[28] The Systematic Alien Verification for Entitlements Program memorandum of agreement is assessable at https://www.uscis.gov/save/prospective-user-agencies/register-an-agency-for-save and under the "How to Register for SAVE" section.

[29] The Systematic Alien Verification for Entitlement Program search tool is accessible at https://www.uscis.gov/save/save-agency-search-tool.

[30] DHS defines personal information as "Personally Identifiable Information" or PII, which is any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual, regardless of whether the individual is a U.S. citizen, lawful permanent resident, visitor to the U.S., or employee or contractor to the Department. "Sensitive PII" is PII, which if lost, compromised, or disclosed without authorization, could result in substantial harm, embarrassment, inconvenience, or unfairness to an individual. For the purposes of this PTA, SPII and PII are treated the same.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 20 of 42*

| | |
|---|---|
| | ☒ U.S. Persons (U.S citizens or lawful permanent residents)<br><br>☒ non-U.S. Persons<br><br>☒ DHS Employees/Contractors (list Components): United States Citizenship and Immigration Services<br><br>☐ Other federal employees or contractors (list agencies): *Click here to enter text.* |
| **2(a) Is information meant to be collected from or about sensitive/protected populations?** | ☐ No<br><br>☒ 8 USC § 1367 protected individuals (e.g., T, U, VAWA)[31]<br><br>☒ Refugees/Asylees<br><br>☐ Other. Please list: |

**3.  What specific information about individuals is collected, maintained, used, or disseminated?**

*Information Collected from Requesting Agencies about applicants for benefits, licenses, or other authorized purposes:*

- Full Name
- Date of birth
- Benefit sought
- Driver license
- State Identification
- Citizenship or nationality
- Country of birth
- A-Number
- Social Security Number
- Alias
- Customer Agency-issued Case Number

**Unique Immigration Identifiers Used:**

---

[31] This involves the following types of individuals: T nonimmigrant status (Victims of Human Trafficking), U nonimmigrant status (Victims of Criminal Activity), or Violence Against Women Act (VAWA). For more information about 1367 populations, please see: DHS Management Directive 002-02, Implementation of Section 1367 Information Provisions, *available at* http://dhsconnect.dhs.gov/org/comp/mgmt/policies/Directives/002-02.pdf.

DHS-AR-000263



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 21 of 42*

- Alien number
- United States Citizenship and Immigration Services Number
- I-94 Admission Record Number (a 11-digit admission record assigned to foreign visitors entering the United States by the United States Customs and Border Protection)
- Student and Exchange Visitor Information System Identification Number
- Naturalization or Citizenship Certificate Number
- Card Number / I-797 Receipt Number (unique identifier assigned by the United States Citizenship and Immigration Services to track an immigration application or petition).
- Visa Number
- Foreign passport number (if submitted with another immigration enumerator and issuing country)

## Other Identifiers:

- Social Security Number including a truncated version of the Social Security Number where only the last four digits are displayed, with the initial five digits are masked using asterisks (*) or XXXXX
- United States Passport Number
- Agency Data Universal Numbering System

## Other Information:

**Additional information requested by the agency:**

- Employment Authorization Document History
- Grant Date
- Affidavit of Support Sponsor Data[32]
  - Full name
  - Current mailing address - In care of name (if any)
  - Current physical address
  - Country of domicile
  - Date of birth
  - Country of birth
  - Social Security Number
  - Immigration Status
  - Sponsors A-number (if any)
  - United States Citizenship and Immigration Services Online Account Number (if any)
  - Military service
  - Employment and income
  - Federal tax return information

---

[32] A United States Citizenship and Immigration Services Affidavit of Support sponsor is an individual who signs a legal contract, Form I-864, agreeing to financially support an intending immigrant, ensuring they won't become a public charge. This sponsor is typically the U.S. citizen, lawful permanent resident, or U.S. national who filed the immigrant petition.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 22 of 42*

- Sponsor Deeming and Agency Reimbursement Information Collection
  - Whether the benefit-granting agency approved or denied the application for the means-tested public benefit.
  - If the benefit-granting agency denied the application, if the denial was based upon the information that the Systematic Alien Verification for Entitlements Program provided in its response to the citizenship and immigration status verification request from the benefit-granting agency.
  - Whether the benefit-granting agency deemed sponsor/household member income and, if not, the exception or reason for not doing so.
  - Whether the benefit-granting agency sent the sponsor a reimbursement request letter (yes/no).
  - Whether the sponsor complied with his or her reimbursement obligation.
  - Whether the benefit-granting agency conducted a collection action or other proceedings if the sponsor did not comply with his or her reimbursement obligation (yes/no and if yes, the status, court or forum, and docket or matter number).

- Data collected on Form I-864, Affidavit of Support Under Section 213A of the Immigration and Nationality Act
  - Principal Immigrant:
    - Full name
    - Current mailing address - In care of name (if any)
    - Current physical address
    - Country of Citizenship or Nationality
    - Date of birth
    - Alien Registration number
    - United States Citizenship and Immigration Services Online Account Number (if any)
    - Daytime telephone number
  - Principal Immigrant Family Members:
    - Full name
    - Relationship to Principal Immigrant
    - Alien Registration number
    - United States Citizenship and Immigration Services Online Account Number (if any)
    - Daytime telephone number
  - Interpreter's Contact Information, Certification and Signature:
    - Full name
    - Telephone number
    - Email address (if any)
    - Interpreter's certification and signature
  - Preparer's Contact Information:
    - Daytime number
    - Mobile number (if any)
    - Email address (if any)
    - Signature

- Cuban/Haitian, Immigration Status

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

████████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 23 of 42*

- Violence Against Women's Act
- Request Document Review
- Citizenship Status
- Immigration Documentation (uploaded by the user agency to perform additional verification)

## Agency User Information

- Agency point of contact name
- Agency point of contact phone number
- Initiated on
- Initiated by

## Information Shared with Social Security Administration:

- Full Name
- Date of Birth
- Social Security Number

## DATA Received and Maintained from Social Security Administration:

- Social Security Number Match: True/False
- Name Match: True/False
- Date of Birth Match: True/False
- Citizenship Indicator:
- "A" - United States citizen
- "B" - Legal alien, eligible to work
- "C" - Legal alien, not eligible to work
- "D" - Other
- "E" - Alien Student - restricted work authorized
- "F" - Conditionally legalized alien
- Foreign Born Indicator: Citizenship code is not present, but individual was foreign born
- Alien Registration Number: Where applicable
- Certificate Number: Where applicable
- Death Indicator: Yes Deceased / Not Deceased
- Error Code Descriptions: Transaction and record levels

## Information Shared with TECS (not an acronym) – TECS (not an acronym)-Travel Documents and Encounter Data for Passport query:

- Full Name
- Date of Birth
- United States passport number

DHS-AR-000266

Homeland Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 24 of 42*

## *Information Provided to Requesting User Agencies:*

- Case Verification Number: a Systematic Alien Verification for Entitlements Program generated number
- Initial Request Date
- Identification Type
- Identification Number
- Last Name
- Benefit Code
- Benefit Description
- Initial Request Response: Lawful Status, No Lawful Status, Deceased
- Additional Request Date
- Additional Request Response: Lawful Status, No Lawful Status, Deceased
- Third Step Request Date
- Third Step Resolution: Lawful Status, No Lawful Status, Deceased

## *Additional information for immigrants requested from agencies for which they established the authority/need to receive*

- Employment authorization document history
- Grant date
- Affidavit of Support Sponsor Data
- Cuban/Haitian Entrant Information
- Violence Against Women's Act information
- Immigration Status
- Request document review
- Citizenship status
- Photo
- Closed Date
- Receipt number

**3(a) Does this Project, Program, or System collect, maintain, use, or disseminate Social Security numbers (SSN) or other types of stand-alone sensitive information?[33] If applicable, check all that apply.**

---

[33] Sensitive PII (or sensitive information) is PII that if lost, compromised, or disclosed without authorization, could result in substantial harm, embarrassment, inconvenience, or unfairness to an individual. More information can be found in the DHS Handbook for Safeguarding Sensitive Personally Identifiable Information, *available at* https://www.dhs.gov/publication/handbook-safeguarding-sensitive-personally-identifiable-information.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 25 of 42*

| | |
|---|---|
| ☒ Social Security number <br> ☒ Alien Number (A-Number) <br> ☐ Tax Identification Number <br> ☒ Visa Number <br> ☒ Passport Number <br> ☐ Bank Account, Credit Card, or other financial account numbers | ☐ Social Media Handle/ID <br> ☒ Driver's License/State ID Number <br> ☐ Biometric identifiers *(e.g., FIN, EID)* <br> ☒ Biometrics.[34] *Please list modalities (e.g., fingerprints, DNA, iris scans): Click here to enter text.* <br> ☒ Other. *Please list:* Form I-94 number, Student and Exchange Visitor Information System Identification number, Naturalization / Citizenship Certificate number, Permanent Resident Card number / Receipt number, and Visa number. |
| **3(b) Please provide the specific legal basis for the collection of SSN:** | The Social Security Number is collected from applicants and is used to verify their immigration status/United States citizenship. div. C, title VI, Section 642 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-707, codified at 8 U.S.C. 1373 (a) and (c). Authority for having a system for verification of citizenship and immigration status of individuals seeking government benefits is governed by the Immigration Reform and Control Act of 1986 Pub. L. No. 99-603, 100 Stat. 3359. <br><br> Sections 415 and 642 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, authorizes the collection and use of Social Security Numbers to verify entitlement to public benefits, licenses, and credentials. |

| |
|---|
| **3(c) If the SSN is needed to carry out the functions and/or fulfill requirements of the Project, System, or Program, please explain why it is necessary and how it will be used.** |
| The Social Security Number is used to assist in identity verification for user agencies and in determining benefits eligibility. If possible, the United States Citizenship and Immigration Services will use a truncated Social Security Number if provided by the user agency. |

---

[34] If related to IDENT/HART and applicable, please complete all Data Access Request Analysis (DARA) requirements. This form provides privacy analysis for DHS' IDENT, soon to be HART. The form replaces a PTA where IDENT is a service provider for component records. PRIV uses this form to better understand how data is currently shared, will be shared and how data protection within IDENT will be accomplished. IDENT is a biometrics service provider and any component or agency submitting data to IDENT is a data provider.



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 26 of 42*

**3(d) If the Project, Program, or System requires the use of SSN, what actions are being taken to abide by Privacy Policy Instruction 047-01-010, *SSN Collection and Use Reduction*,[35] which requires the use of privacy-enhancing SSN alternatives when there are technological, legal, or regulatory limitations to eliminating the SSN? Note:** *even if you are properly authorized to collect SSNs, you are required to use an alternate unique identifier. If there are technological, legal, or regulatory limitations to eliminating the SSN, privacy-enhancing alternatives should be taken, such as masking, truncating, or encrypting the SSN, or blocking the display of SSNs in hard copy or digital formats.*

The United States Citizenship and Immigration Services has traditionally used an alternative number to the Social Security Number to access records to determine the citizenship/immigration status of user agencies benefit applicants in compliance with the Department of Homeland Security privacy-related policies. However, United States Citizenship and Immigration Services now needs to collect Social Security numbers to facilitate user agencies' ability to submit a request for citizenship/immigrations status of benefit applicants. The United States Citizenship and Immigration Services is working to implement use of the truncated form of a Social Security number (i.e. the last four numbers of a Social Security number rather than the full identifier) to retrieve information from the Social Security Administration. The Systematic Alien Verification for Entitlements Program's user interface will mask the full Social Security Number during data inputs, except for when information is submitted via the bulk uploader. In compliance with the security policy for Social Security numbers, server-side encryption is used for Amazon Simple Storage Service[36] and Amazon Relational Database Services[37] databases. This uses key management provided by Amazon Web Services for the storage buckets and Relational Database Services databases where Social Security Numbers are housed. Social Security Numbers and Personally Identifiable Information are not exposed in any hard copy documents available for extract from the information system. Additionally, in accordance with the National Institute of Science and Technology and Department of Homeland Security information security and privacy policies, the Systematic Alien Verification for Entitlements Program maintains moderate level controls for the confidentiality of information within the tool.

| | |
|---|---|
| **4. How does the Project, Program, or System retrieve information?** | ☒ By a unique identifier.[38] Please list all unique identifiers used:<br><br> • Full name<br> • Alias |

---

[35] *See* https://www.dhs.gov/publication/privacy-policy-instruction-047-01-010-ssn-collection-and-use-reduction.

[36] Amazon Simple Storage Service (Amazon S3) is an object storage service offering industry-leading scalability, data availability, security, and performance. Organizations can use this service to store, manage, analyze, and protect any amount of data for virtually any use case, such as data lakes, cloud-native applications, and mobile apps.

[37] Amazon Relational Database Service (Amazon RDS) is an easy-to-manage relational database service optimized for total cost of ownership. It is simple to set up, operate, and scale with demand. Amazon RDS automates undifferentiated database management tasks, such as provisioning, configuring, backing up, and patching. Amazon RDS allows customers to create a new database in minutes and offers flexibility to customize databases to meet their needs.

[38] Generally, a unique identifier is considered any type of "personally identifiable information," meaning any information that permits the identity of an individual to be directly or indirectly inferred, including any other information which is linked or linkable to that individual regardless of whether the individual is a U.S. citizen, lawful permanent resident, visitor to the U.S., or employee or contractor to the Department.

DHS-AR-000269

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 27 of 42*

|  |  |
|---|---|
|  | <ul><li>Date of birth</li><li>Immigration enumerator:<ul><li>Alien number/United States Citizenship and Immigration Services Number,</li><li>Form I-94, Arrival/Departure Record number,</li><li>Student and Exchange Visitor Information System Identification number,</li><li>Citizenship or Naturalization Certificate number</li><li>Card Number / I-797 Receipt Number,</li><li>Visa Number, or</li><li>Foreign passport number (if submitted with another immigration enumerator) and issuing country</li></ul></li><li>Social Security Number</li><li>United States passport number</li><li>Customer Agency-issued Case Number</li><li>Case Verification Number</li></ul><br>☐ By a non-unique identifier or other means. Please describe:<br>*Click here to enter text.* |
| **5. What is the records retention schedule(s) for the information collected for each category type** (include the records schedule number)? *If no schedule has been approved, please provide proposed schedule or plans to determine it.*<br><br>*Note: If no records schedule is in place or are unsure of the applicable records schedule, please reach out to the appropriate Records Management Office.[39]* | Data within Systematic Alien Verification for Entitlements Program is retained for 10 years after the final match determination of the employee or applicant in accordance with NARA approved records retention schedule N1-566-08-07.<br><br>All United States Citizenship and Immigration Services verification requests will be documented in a transactional database. The retention period is 10 years. The database is not accessible to the public, except as permitted. |

---

[39] *See* https://dhsconnect.dhs.gov/org/comp/mgmt/ocio/cdod/rm/Pages/DHS-Records-Officers.aspx

Homeland
Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

███████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 28 of 42*

| | |
|---|---|
| **5(a) How does the Project, Program, or System ensure that records are disposed of or deleted in accordance with the retention schedule** (e.g., technical/automatic purge, manual audit)? | Data is automatically purged annually based on NARA disposal schedule N1-566-08-07. |
| **6. Does this Project, Program, or System connect, receive, or share PII with any other DHS/Component projects, programs, or systems?**[40] | ☐ No.<br><br>☒ Yes. If yes, please list:<br><br>**United States Citizenship and Immigration Services Systems:**<br><br>• Central Index System<br><br>• Electronic Immigration System<br><br>• Computer Linked Application Information Management System 3<br><br>• Enterprise Citizenship and Immigration Services Centralized Operational Repository<br><br>• GLOBAL (not an acronym)<br><br>• RAILS (not an acronym)<br><br>• Customer Profile Management System<br><br>• Reengineered Naturalization Application Casework System<br><br>• Marriage Fraud Amendment System<br><br>• Salesforce Customer Relationship Management Customer Relationship Management[41]<br><br>**Department of Homeland Security Systems:**<br><br>• Department of Homeland Security OneNet<br>• Immigration and Custom Enforcement Student and Exchange Visitor Information System<br>• Immigration and Custom ENFORCE Integrated Database |

---

[40] PII may be shared, received, or connected to other DHS systems directly, automatically, or by manual processes.

[41] Provides a unified platform where data from different departments can be accessed and used to improve customer interactions.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 29 of 42*

| | |
|---|---|
| | • Customs and Border Protection Arrival and Departure Information System<br>• Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data - USPassportRESTService<br>• Transportation Security Administration Technology Infrastructure Modernization and Vetting and Credentialing System |
| **7. Does this Project, Program, or System connect, receive, or share PII with any external (non-DHS) government or non-government partners or systems?** | ☐ No.<br><br>☒ Yes. If yes, please list:<br><br>The following are systems/organizations that the Systematic Alien Verification for Entitlements Program collects/shares information to support user agencies' requests:<br><br>• United States Military Entrance Processing Command Integrated Resource System<br><br>• Department of Education Federal Student Aid Central Processing System<br><br>• Department of Health and Human Services Centers for Medicare & Medicaid Services<br><br>• Social Security Administration Numident system<br><br>• Department of Justice Executive Office for Immigration's Immigration Review Information Exchange System<br><br>• Department of State Consular Consolidated Database Passport<br><br>The following are systems/organizations that the Systematic Alien Verification for Entitlements provides information that determine benefit eligibility:<br>• Various federal agencies in their role as a user agency |

DHS-AR-000272

# Homeland Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 30 of 42*

| | |
|---|---|
| | • Various state, local, tribal, and territory agencies in their role as a Systematic Alien Verification for Entitlements Program user agency |
| **8. Is this sharing pursuant to new or existing information sharing agreement (MOU, MOA, LOI, RTA, etc.)?** *If applicable, please provide agreement as an attachment.* | Existing<br><br>Please describe applicable information sharing governance in place:<br><br>• Letter of Agreement between United States Citizenship and Immigration Services and Social Security Administration<br><br>• Information Sharing Agreement between the Department of Homeland Security, United States Citizenship and Immigration Services and the Social Security Administration regarding citizenship<br><br>• Computer Matching Agreement with Department of Education<br><br>• Memorandum of Agreements between United States Citizenship and Immigration Services and each individual user agency |
| **9. Does the Project, Program, or System or have a mechanism to track external disclosures of an individual's PII?** | ☐ No. What steps will be taken to develop and maintain the accounting: *Click here to enter text.*<br><br>☒ Yes. In what format is the accounting maintained if appropriate (e.g., disclosures to the Department of Justice Office of Special Counsel, Immigration and Customs Enforcement). Verification Information System also has a transactional log that enables the recreation of accounting of disclosures. |
| **10. Does this Project, Program, or System use or collect data involving or from any of the following technologies:** | ☐ Social Media<br><br>☐ Advanced analytics[42]<br><br>☐ Live PII data for testing |

---

[42] The autonomous or semi-autonomous examination of Personally Identifiable Information using sophisticated techniques and tools to draw conclusions. Advanced Analytics could include human-developed or machine-developed algorithms and encompasses, but is not limited to, the following: data mining, pattern and trend analysis, complex event processing, machine learning or deep learning, artificial intelligence, predictive analytics, big data analytics.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 31 of 42*

| | | ☒ No |
|---|---|---|
| **11.** | **Does this Project, Program, or System use data to conduct electronic searches, queries, or analyses in an electronic database to discover or locate a predictive pattern or an anomaly indicative of terrorist or criminal activity on the part of any individual(s) (i.e., data mining)?**[43] **This does not include subject-based searches.** | ☒ No.<br><br>☐ Yes. If yes, please elaborate: *Click here to enter text.* |
| | **11(a) Is information used for research, statistical, or other similar purposes? If so, how will the information be de-identified, aggregated, or otherwise privacy-protected?** | ☒ No.<br><br>☐ Yes. If yes, please elaborate: *Click here to enter text.* |
| **12.** | **Does the planned effort include any interaction or intervention with human subjects**[44] **via pilot studies, exercises, focus groups, surveys, equipment or technology, observation of public behavior, review of data sets, etc. for research purposes** | ☒ No.<br><br>☐ Yes. If yes, please reach out to the DHS Compliance Assurance Program Office (CAPO) for <u>independent</u> review and approval of this effort.[45] |
| **13.** | **Does the Project, Program, or System provide role-based or additional privacy training for personnel who have access, <u>in addition</u> to annual privacy training required of all DHS personnel?** | ☒ No.<br><br>☐ Yes. If yes, please list: *Click here to enter text.* |

---

[43] Is this a program involving pattern-based queries, searches, or other analyses of one or more electronic databases, where—

    (A) a department or agency of the Federal Government, or a non-Federal entity acting on behalf of the Federal Government, is conducting the queries, searches, or other analyses to discover or locate a predictive pattern or anomaly indicative of terrorist or criminal activity on the part of any individual or individuals.

    (B) the queries, searches, or other analyses are not subject-based and do not use personal identifiers of a specific individual, or inputs associated with a specific individual or group of individuals, to retrieve information from the database or databases; and

    (C) the purpose of the queries, searches, or other analyses is not solely—

        (i) the detection of fraud, waste, or abuse in a government agency or program; or

        (ii) the security of a government computer system.

[44] Human subject means a living individual about whom an investigator conducting research: (1) obtains information or biospecimens through intervention or interaction with the individual, and uses, studies, or analyzes the information or biospecimens; or (2) obtains, uses, studies, analyzes, or generates identifiable private information or identifiable biospecimens.

[45] For more information about CAPO and their points of contact, please see: https://www.dhs.gov/publication/capo or https://collaborate.st.dhs.gov/orgs/STCSSites/SitePages/Home.aspx?orgid=36. For more information about the protection of human subjects, please see DHS Directive 026-04: https://www.dhs.gov/sites/default/files/publications/mgmt/general-science-and-innovation/mgmt-dir_026-04-protection-of-human-subjects_revision-01.pdf.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 32 of 42*

| 14. Is there a FIPS 199 determination?[46] | ☐ No.<br><br>☒ Yes. Please indicate the determinations for each of the following:<br><br>Confidentiality:<br>☐ Low ☒ Moderate ☐ High ☐ Undefined<br><br>Integrity:<br>☐ Low ☒ Moderate ☐ High ☐ Undefined<br><br>Availability:<br>☐ Low ☒ Moderate ☐ High ☐ Undefined |
| --- | --- |

## PTA REVIEW

### (TO BE COMPLETED BY COMPONENT PRIVACY OFFICE REVIEWER)

| | |
| --- | --- |
| **Component Privacy Office Reviewer:** | Chiquita Jones/LeVar Sykes |
| **Component Privacy Office Senior Reviewer:** | Shannon DiMartino |
| **PRIVCATS ID Number:** | 0019946 |
| **Date submitted to Component Privacy Office:** | May 5, 2025 |
| **Concurrence from other Component Reviewers involved (if applicable):** | Catherine Shorten, Customs and Border Protection, concurrence provided 6/5/2025 |
| **Component Privacy Office Recommendation:**<br>*Please include recommendation below, including what new privacy compliance documentation is needed, as well as any specific privacy risks/mitigations, as necessary.* | |
| The United States Citizenship and Immigration Services submits this updated Privacy Threshold Analysis to document the United States Citizenship and Immigration Services Verification Division and Office of Technology (OIT) changes to the Systematic Alien Verification for Entitlements Program. The United States Citizenship and Immigration Services administers the Systematic Alien Verification for Entitlements Program which is an inter-governmental initiative that provides a web-based service to help | |

---

[46] FIPS 199 is the Federal Information Processing Standard Publication 199, Standards for Security Categorization of Federal Information and Information Systems and is used to establish security categories of information systems. For more information, see https://www.nist.gov/itl/fips-general-information.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 33 of 42*

federal, state, territorial, tribal and local agencies and other governmental entities verify United States citizenship or immigration status/category information of applicants for benefits, licenses, or other authorized purposes.

This Privacy Threshold Analysis documents the following changes to the Systematic Alien Verification for Entitlements Program:

1. Expanded search capabilities to allow approved Systematic Alien Verification for Entitlements Program user agencies to verify United States citizenship information using Social Security Numbers and other non-Department of Homeland Security enumerators.

2. A new Social Security Administration system connection to support verification of citizenship/immigration status.

3. A new bulk uploader/list processor function that allows user agencies to upload lists of benefit applicants.

4. Use of the Voter Registration and Voter List Maintenance Verification functionality.

5. The collection of information from the Department of State's Consular Consolidated Database/ American Citizen Record Query system.

6. An integration with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data system.

The United States Citizenship and Immigration Services Privacy Office recommends Privacy Impact Assessment coverage for the Systematic Alien Verification for Entitlements Program to comply with the eGovernment Act of 2002 as it "collects, maintains, or disseminates information that is in an identifiable form." The information collected, used, stored, and/or disseminated by the Systematic Alien Verification for Entitlements Program meets the definition of Personally Identifiable Information ("PII")/Sensitive Personally Identifiable Information ("SPII")[47] as it "permits the identity of an individual to be directly or indirectly inferred, including any other information that is linked or linkable to that individual, regardless of whether that individual is a United States citizen, legal permanent resident, or a visitor to the United States, or employee or contractor to the Department." Specifically, the Systematic Alien Verification for Entitlements Program involves information from members of the public applying for benefits, licenses, or other authorized purposes which may include (1) United States citizens and legal permanent residents, (2) individuals who are now current United States citizens and legal permanent residents after previously naturalizing or adjusting their status, or (3) individuals who may ultimately naturalize to become United States citizens or adjust their status to receive legal permanent residency in the future. Depending on the eligibility category certain individuals may be eligible to apply for adjustment of status as soon as one (1) year after their initial immigration benefit is granted,[48] therefore the United States Citizenship and Immigration Services Privacy Office recommends requiring Privacy Impact Assessment coverage for the Systematic Alien Verification for Entitlements Program to ensure all current and future United States

---

[47] Personally Identifiable Information (PII) has numerous official definitions, but in general, it is defined as any information that can be used to identify an individual directly or indirectly, such as a name, email address, Social Security Number or IP address. Sensitive PII (SPII) is generally defined as any PII that if lost, stolen, or disclosed without authorization could result in significant harm to an individual.

[48] For more information on eligibility categories please refer to: https://www.uscis.gov/green-card/green-card-eligibility-categories.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 34 of 42*

citizens and legal permanent residents have transparency into how the United States Citizenship and Immigration Services may collect, store, use, and share the information they previously provided to the United States Citizenship and Immigration Services.

The Privacy Office's Technology Oversight Branch recommends that the Systematic Alien Verification for Entitlements Program continues to be designated as a privacy sensitive program that requires privacy compliance coverage. The Technology Oversight Branch recommends that with the new updates to the program documented in this Privacy Threshold Analysis the Systematic Alien Verification for Entitlements Program be identified as not in compliance with the Privacy Act of 1974, as amended, or the E-Government Act of 2002. A Privacy Impact Assessment update and a System of Records Notice update should be published prior to the program's changed collection and use of Personally Identifiable Information, including information on natural born United States citizens. Further, the sharing of Personally Identifiable Information with the Social Security Administration should occur after the System of Records Notice has gone through the required 30-day comment period. The following are the Technology Oversight Branch's recommendations for privacy compliance coverage and additional requirements:

**Privacy Impact Assessment**

- A new Privacy Impact Assessment Update for DHS/USCIS/PIA-006 Systematic Alien Verification for Entitlements Program must be completed before collection and use of additional information. Specifically, these Privacy Impact Assessment updates would include, but are not limited to:
  - The collection of Social Security Numbers and other information from the Social Security Administration regarding United States citizens, including natural born citizens.
  - The change in legal rationale for now collecting and maintaining Social Security Numbers of United States natural born citizens.
  - The collection and use of Passport Numbers from the Department of State via new system connections.
  - The addition of the Voter Registration and Voter List Maintenance Verification process, including how this process may verify the citizenship status of natural born United States citizens.
  - The implementation of the bulk case upload functionality for User Agencies.
  - Additional privacy risks and mitigation strategies regarding notice, consent, and data accuracy.

**System of Records Notice**

- An update to DHS/USCIS-004 Systematic Alien Verification for Entitlements Program must be completed before the collection and sharing of additional information. Specifically, these System of Records Notice updates would include, but are not limited to changes to the following sections:
  - Purpose: The System of Records Notice does not currently include the verification of voter registration and voter maintenance lists.

DHS-AR-000277

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

- o Categories of Individuals: Currently, USCIS specifically informs the public it only collects information on naturalized or acquired United States citizens. This section must be updated to discuss that information on natural born United States citizens will also be collected.
- o Categories of Records: The System of Records Notice currently informs the public that the Systematic Alien Verification for Entitlements Program only collects Social Security Number of immigrants on the United States Citizenship and Immigration Services Form G-845. This section must be updated to cover the expanded collection and use of Social Security Numbers.
- o Sources of Records: The System of Records Notice currently doesn't include the Social Security Administration system of records. This section must be updated to reflect all new source systems including the Social Security Administration Numident system.

- DHS/CBP-011 Customs and Border Protection Primary and Secondary Processing (TECS (not an acronym)) National SAR Initiative December 19, 2008 (73 Federal Register 77778)
- STATE-26 Passport Records, March 24, 2015 (80 Federal Register 15653)
- STATE-39 Visa Records, November 8, 2021 (86 Federal Register 61822)
- SSA-60-0058 Master Files of Social Security Number Holders and Social Security Number Applications, February 20, 2025 (90 Federal Register 10025)

The following is a Plan of Action to ensure that the Systematic Alien Verification for Entitlements Program is brought into compliance with all federal statutes, regulations, and Department of Homeland Security policies.

**USCIS Privacy's Action Plan for the Systematic Alien Verification for Entitlements Program**

The Systematic Alien Verification for Entitlements Program is an inter-governmental initiative that provides a web-based service to help federal, state, territorial, tribal and local agencies and other governmental entities verify United States citizenship or immigration status/category information of applicants for benefits, licenses, or other authorized purposes.

**Action Plan**

This plan outlines priority actions necessary to advance the goal and objective of ensuring the Systematic Alien Verification for Entitlements Program is compliant with all applicable privacy laws, regulations, and polices. These actions will ensure that the use of technology by United States Citizenship and Immigration Services and the Systematic Alien Verification for Entitlements Program sustains and does not erode privacy protections relating to the collection, use, dissemination, maintenance, and disposal of personal information. These actions include actively working with the Verification Division, Office of Chief Counsel and the Customs and Border Protection Office of Privacy on this Privacy Threshold Analysis and the draft System of Records Notice along with continued collaboration with these stakeholders and others such as the Department of Homeland Security Privacy Office to ensure Systematic Alien Verification for Entitlements Program is in compliance.

**Actions to Be Taken**

DHS-AR-000278

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 36 of 42*

To meet these objectives the United States Citizenship and Immigration Services Office of Privacy will complete the following activities:

- Receive United States Citizenship and Immigration Services Chief Privacy Officer adjudication of the initial Systematic Alien Verification for Entitlements Program Privacy Threshold Analysis:

  o Adjudication - Estimated Date of Completion: July 2025

- Draft an updated Systematic Alien Verification for Entitlement Program Privacy Impact Assessment meeting all requirements identified above and submit the draft to the Department of Homeland Security Office of Privacy.

  o Initial Draft - Estimated Date of Completion: July 2025

  o Office of Chief Counsel Review – Estimated Date of Completion: July 2025

  o Submission to Department of Homeland Security – Estimated Date of Completion: August 2025

  o Publication – Estimated August 2025

- Draft an updated Systematic Alien Verification for Entitlement Program System of Records Notice meeting all requirements identified above and submit the draft to the Department of Homeland Security Office of Privacy.

  o Initial Draft - Estimated Date of Completion: June 2025

  o Office of Chief Counsel Review – Estimated Date of Completion: June 2025

  o Submission to Department of Homeland Security – Estimated Date of Completion: July 2025

  o Submission to the Office of Management and Budget and Congress – Estimated July 2025

  o Publication – Estimated July 2025

  o End of 30-day commenting period (and sharing of new routine uses) Estimated August/September 2025

- Draft a Privacy Threshold Analysis documenting the new Systematic Alien Verification for Entitlement Program information sharing agreement between the United States Citizenship and Immigration Services and the Social Security Administration and receive the Chief Privacy Officer's adjudication of the Privacy Threshold Analysis.

  o Estimated Date of Completion: July 2025

- Determine the applicability of the Computer Matching and Privacy Protection Act of 1988 to new or changed aspects of the Systematic Alien Verification for Entitlements Program including the new bulk upload functionality for User Agencies.

  o Hold a discussion regarding the Computer Matching Agreement impacts with representatives from the Department of Homeland Security Privacy Office, United States

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 37 of 42*

Citizenship and Immigration Services Office of Chief Counsel and Office of Privacy, and Department of Homeland Security Office of General Council.

- Date of Completion: June 2025

o Decide on the need for Computer Matching Agreements with user agencies versus the current Memorandum of Agreements in place with each Systematic Alien Verification for Entitlement Program user agency:

- Estimated Date of Completion: July 2025

This Privacy Threshold Analysis and Action Plan focuses predominantly on Phases One through Four of the Systematic Alien Verification for Entitlements Program Optimization effort as Phase Five and Phase Six are longer term goals of the optimization effort and are still in the exploratory/planning stage. The United States Citizenship and Immigration Services will update this Privacy Threshold Analysis and Action Plan as needed to support the remaining phases during their development and ensure the Systematic Alien Verification for Entitlements Program is compliant with all applicable laws, regulations, and Department of Homeland Security policies.

The updated Privacy Threshold Analyst should also provide, at a minimum, the following updates:

- New status types that Systematic Alien Verification for Entitlements Program may provide to the user agencies and how any additional verification is completed.

- A discussion about the update to the user memorandum of agreements and the creation of the voter verification specific memorandum of agreements.

- Confirm all responses from the Customs and Border Protection via the use of their USPassportRESTService when matching United States Passport numbers.

- Discuss Customs and Border Protection authority/purpose for collecting United States Passport related photographs and collection of those photographs by the United States Citizenship and Immigration Services.

- A description of how the information received via the integration with the Department of Justice to enable an incarceration/felony related flag will be used internally and if any related information will be sent to the user agencies or the applicants.

- If the Systematic Alien Verification for Entitlements Program will use the existing connection by the E-Verify Program to the USPassportRESTService or will it be a new connection.

- Additional use case information for the Systematic Alien Verification for Entitlements Program use of Department of State information from the USPassportRESTService and the Department of State's Consular Consolidated Database / American Citizen Record Query system.

- Clarification regarding user agency benefit applicants accessing the Systematic Alien Verification for Entitlements Program.

- Additional information regarding notification provided to United States citizens regarding user agencies use of their information.

- What information may be provided to the user agency about the VAWA status of an individual.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

<span style="color:black">█████</span>

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 38 of 42*

- Discussion of if there could be instances when a natural born United States citizen is unable to be verified based on the data available. Also, if all United States citizens would be able to be verified via the SSA information.

- Confirmation if there are additional responses (besides Lawful Status, No Lawful Status, or Deceased) provided to user agencies now that United States citizens can also be verified.

- A discussion of any updates regarding any new agreements between Department of State and Customs and Border Protection for the sharing and use of United States Passport number information.

- Confirmation of if there is still a connection with the Reengineered Naturalization Application Casework System (which was previously decommissioned) or how information from the previously decommissioned system is still accessed.

## PTA ADJUDICATION

### (TO BE COMPLETED BY THE COMPONENT PRIVACY OFFICE APPROVER)

| Component Privacy Office Approver: | Angela Y. Washington |
|---|---|
| PTA Approval Date: | July 17, 2025 |
| PTA Expiration Date: | October 17, 2025 |

## DESIGNATION

| Privacy Sensitive System: | Yes |
|---|---|
| Category of System: | System<br>If "other" is selected, please describe: *Click here to enter text.* |
| Determination: | ☐ Project, Program, System in compliance with full coverage.<br>☐ Project, Program, System in compliance with interim coverage.<br>☐ Project, Program, System in compliance until changes implemented.<br>☒ Project, Program, System not in compliance. |
| PIA: | **PIA Update is required.**<br>• DHS/USCIS/PIA-006 Systematic Alien Verification for Entitlement Program<br>   ○ This PIA must be updated to document all identified system/programmatic changes. |

Homeland
Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

███████████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 39 of 42*

| | |
|---|---|
| **SORN:** | **SORN update is required.**<br><br>• DHS/USCIS-004 Systematic Alien Verification for Entitlements Program, May 27, 2020 (85 FR 31798)<br>    ○ This SORN must be updated to document all identified changes.<br>• DHS/CBP-011 Customs and Border Protection Primary and Secondary Processing (TECS (not an acronym)) National SAR Initiative December 19, 2008 (73 Federal Register 77778)<br>• STATE-26 Passport Records, March 24, 2015 (80 Federal Register 15653)<br>• STATE-39 Visa Records, November 8, 2021 (86 Federal Register 61822)<br>• SSA-60-0058 Master Files of Social Security Number Holders and Social Security Number Applications, February 20, 2025 (90 Federal Register 10025) |

**Component Privacy Office Adjudication:**
*Please describe rationale for privacy compliance determination above, and any further action(s) that must be taken by Component.*

The USCIS Office of Privacy is submitting this Privacy Threshold Analysis (PTA) to document the Systematic Alien Verification for Entitlements (SAVE) Program. The Systematic Alien Verification for Entitlements Program is an intergovernmental initiative using a web-based service to help federal, state, territorial, tribal and local benefit-issuing and licensing agencies and other governmental entities determine the immigration status or United States citizenship of applicants for public benefits, licenses, grants, credentials, background investigations, and other lawful purposes, so only entitled applicants receive them. The Systematic Alien Verification for Entitlements Program verifies immigration status/category and United States citizenship against Department of Homeland Security-accessed records. The Systematic Alien Verification for Entitlements Program is not a database but queries Department of Homeland Security-accessed federal records to provide registered user agencies with a verification response. The Systematic Alien Verification for Entitlements Program does not determine an applicant's eligibility for a specific benefit or license, as this is the responsibility of the benefit/license granting agency.

This Privacy Threshold Analysis is being submitted to document multiple updates and planned updates to the Systematic Alien Verification for Entitlements Program as part of the comprehensive optimization of the Systematic Alien Verification for Entitlements Program to ensure a single, reliable source for verifying immigration status and United States citizenship nationwide. This Privacy Threshold Analysis documents the following key changes: (1) an expanded search capabilities to allow approved Systematic Alien Verification for Entitlements Program user agencies to verify United States citizenship information using Social Security Numbers and other non-Department of Homeland Security enumerators, (2) a new Social Security Administration system connection to support verification of citizenship/immigration status, (3) a new bulk uploader/list processor function that allows user agencies to upload lists of benefit applicants, (4) the use of the Voter Registration and Voter List Maintenance Verification functionality, (5) the collection of information from the Department of State's Consular Consolidated Database/ American



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
███████████
www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 40 of 42*

Citizen Record Query system, and (6) an integration with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data system.

After a thorough review of the PTA, the USCIS Office of Privacy continues to designate the Systematic Alien Verification for Entitlements Program as a privacy sensitive system/program requiring both Privacy Impact Assessment (PIA) and System of Records Notice (SORN) coverage as it collects/uses Personally Identifiable Information (PII) as well as Sensitive Personally Identifiable Information (SPII) from members of the public, including legal permanent residents and United States Citizens.

The United States Citizenship and Immigration Services Office of Privacy recommends Privacy Impact Assessment coverage for the Systematic Alien Verification for Entitlements Program to comply with the eGovernment Act of 2002 as it "collects, maintains, or disseminates information that is in an identifiable form." The information collected, used, stored, and/or disseminated by the Systematic Alien Verification for Entitlements Program meets the definition of Personally Identifiable Information ("PII")/Sensitive Personally Identifiable Information ("SPII")[49] as it "permits the identity of an individual to be directly or indirectly inferred, including any other information that is linked or linkable to that individual, regardless of whether that individual is a United States citizen, legal permanent resident, or a visitor to the United States, or employee or contractor to the Department." Specifically, the Systematic Alien Verification for Entitlements Program involves information from members of the public applying for benefits, licenses, or other authorized purposes which may include (1) United States citizens and legal permanent residents, (2) individuals who are now current United States citizens and legal permanent residents after previously naturalizing or adjusting their status, or (3) individuals who may ultimately naturalize to become United States citizens or adjust their status to receive legal permanent residency in the future. Depending on the eligibility category certain individuals may be eligible to apply for adjustment of status as soon as one (1) year after their initial immigration benefit is granted,[50] therefore the United States Citizenship and Immigration Services Office of Privacy recommends requiring Privacy Impact Assessment coverage for the Systematic Alien Verification for Entitlements Program to ensure all current and future United States citizens and legal permanent residents have transparency into how the United States Citizenship and Immigration Services may collect, store, use, and share the information they previously provided to the United States Citizenship and Immigration Services.

Privacy Impact Assessment (PIA) coverage is provided by the following:

- DHS/USCIS/PIA-006 Systematic Alien Verification for Entitlement Program

  o **For the Systematic Alien Verification for Entitlement Program to be in compliance with the eGovernment Act of 2002, this Privacy Impact Assessment must be**

---

[49] Personally Identifiable Information (PII) has numerous official definitions, but in general, it is defined as any information that can be used to identify an individual directly or indirectly, such as a name, email address, Social Security Number or IP address. Sensitive PII (SPII) is generally defined as any PII that if lost, stolen, or disclosed without authorization could result in significant harm to an individual.

[50] For more information on eligibility categories please refer to: https://www.uscis.gov/green-card/green-card-eligibility-categories.

DHS-AR-000283

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 41 of 42*

**updated to reflect the identified system and programmatic changes along with a privacy risk assessment of these changes including but not limited to new collections of data, new populations impacted including natural born US citizens, new system connections, new data sharing, and a new bulk upload/reporting functionality.**

System of Records Notice (SORN) coverage is required as the information in the Systematic Alien Verification for Entitlement Program is retrieved by a personal identifier. System of Records Notice coverage is provided by the following:

- DHS/USCIS-004 Systematic Alien Verification for Entitlements Program, May 27, 2020 (85 FR 31798)

    - **For the Systematic Alien Verification for Entitlement Program to be in compliance with the Privacy Act of 1974, this System of Records Notice must be updated to reflect the identified system and programmatic changes including that the System of Records will now include information on natural born United States citizens in addition to naturalized or acquired United States citizens. Updates to the System of Records Notice should include but are not limited to updates in the Purpose, Categories of Individuals, Categories of Records, and the Sources of Records sections.**

- DHS/CBP-011 Customs and Border Protection Primary and Secondary Processing (TECS (not an acronym)) National SAR Initiative December 19, 2008 (73 Federal Register 77778)

- STATE-26 Passport Records, March 24, 2015 (80 Federal Register 15653)

- STATE-39 Visa Records, November 8, 2021 (86 Federal Register 61822)

- SSA-60-0058 Master Files of Social Security Number Holders and Social Security Number Applications, February 20, 2025 (90 Federal Register 10025)

While there are currently published SORNs and PIAs associated with the Systematic Alien Verification for Entitlement Program, these documents to not sufficiently provide coverage for the recently implemented and planned system and programmatic changes documented in this Privacy Threshold Analysis. Therefore, the Systematic Alien Verification for Entitlement Program is not in compliance. An updated Privacy Impact Assessment and an updated System of Records Notice must be published for the Systematic Alien Verification for Entitlement Program to be brought into compliance.

An action plan has been developed to enable the Systematic Alien Verification for Entitlement Program to be brought into compliance with all federal laws, statutes, regulations, and Department of Homeland Security policies. A high-level summary of the action plan is as follows:

- Complete the initial Systematic Alien Verification for Entitlements Program Privacy Threshold Analysis.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 42 of 42*

- Publish an updated Systematic Alien Verification for Entitlement Program Privacy Impact Assessment to the Department of Homeland Security Office of Privacy website.
- Publish an updated Systematic Alien Verification for Entitlement Program System of Records Notice in the Federal Register and address any comments received during the 30-day public comment period.
- Complete a Privacy Threshold Analysis documenting the new Systematic Alien Verification for Entitlement Program information sharing agreement between the United States Citizenship and Immigration Services and the Social Security Administration.
- Determine the applicability of the Computer Matching and Privacy Protection Act of 1988 and complete any identified requirements.
- Update the Systematic Alien Verification for Entitlements Program Privacy Threshold Analysis and Action Plan as needed to support the ongoing optimization effort.

The Office of Privacy approves this Privacy Threshold Analysis for 3 months to formally document the current privacy posture of the Systematic Alien Verification for Entitlement Program.

DHS-AR-000285

# Exhibit 15

# Homeland Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
████████
www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 1 of 42*

## PRIVACY THRESHOLD ANALYSIS (PTA)

**This form serves as the official determination to identify the privacy compliance requirements for all Departmental uses of personally identifiable information (PII).**

A Privacy Threshold Analysis (PTA) serves as the document used to identify information technology (IT) systems, information collections/forms, technologies, rulemakings, programs, information sharing arrangements, or pilot projects that involve PII and other activities that otherwise impact the privacy of individuals, and to assess whether there is a need for additional privacy compliance documentation or requirements. A PTA includes a general description of the IT system, information collection, form, technology, rulemaking, program, pilot project, information sharing arrangement, or other Department activity and describes what PII is collected (and from whom) and how that information is used. In accordance with the Fair Information Practice Principles (FIPPs),[1] Component Privacy Officers should consider best practices for privacy safeguards and principles when reviewing and adjudicating PTAs.

Please complete the attached PTA and submit it to your Component Privacy Office. If you do not have a Component Privacy Office, please send the PTA to the DHS Privacy Office:

Senior Director, Privacy Compliance
The Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
████████

The Component or DHS Privacy Office will review this form and assess whether any privacy compliance documentation is required. If privacy compliance documentation is required – such as Privacy Impact Assessment (PIA), System of Records Notice (SORN), Privacy Act Statement/Privacy Notice, or Computer Matching Agreement (CMA) – the Component Privacy Office will send you a copy of the relevant compliance template to complete and return.

---

[1] *See* The Fair Information Practice Principles | Homeland Security.

DHS-AR-000286

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 2 of 42*

## PRIVACY THRESHOLD ANALYSIS (PTA)

### SUMMARY INFORMATION

| Project, Program, or System Name: | Systematic Alien Verification for Entitlements Program | | |
|---|---|---|---|
| Component or Office: | U.S. Citizenship and Immigration Services (USCIS) | Office or Program: | Verification Division |
| FISMA Name (if applicable): | Verification Information System | FISMA Number (if applicable): | CIS-06285-MAJ-06285 |
| Type of Project or Program: | System | Project or program status: | Operational |
| Date first developed: | July 7, 2007 | Pilot launch date: | N/A |
| Date of last PTA update | February 7, 2023 | Pilot end date: | N/A |
| ATO Status (if applicable):[2] | Complete | Expected ATO/ATP/OA date (if applicable): | Ongoing Authorization |

### PROJECT, PROGRAM, OR SYSTEM MANAGER

| Name: | Irina Sidelnikov | | |
|---|---|---|---|
| Office: | Office of Information Technology | Title: | OIT Project Manager |
| Phone: | ███████ | Email: | ████████████ |

### INFORMATION SYSTEM SECURITY OFFICER (ISSO) (IF APPLICABLE)

| Name: | Minh Vo | | |
|---|---|---|---|
| Phone: | N/A | Email: | ████████████ |

---

[2] The DHS OCIO has implemented a streamlined approach to authorizing an Authority to Operate (ATO), allowing for rapid deployment of new IT systems and initiate using the latest technologies as quickly as possible. This approach is used for selected information systems that meet the required eligibility criteria in order to be operational and connect to the network. For more information, see https://dhsconnect.dhs.gov/org/comp/mgmt/ocio/ciso/Documents/DHS%20ATP%20Guide%20v2.0.pdf#search=atp.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
██████████
www.dhs.gov/privacy

**Homeland Security**

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 3 of 42*

## SPECIFIC PTA QUESTIONS

| 1. Reason for submitting the PTA: Updated PTA |
|---|

The United States Citizenship and Immigration Services submits this updated Privacy Threshold Analysis to document the United States Citizenship and Immigration Services Verification Division and Office of Technology changes to the Systematic Alien Verification for Entitlements Program. The United States Citizenship and Immigration Services administers the Systematic Alien Verification for Entitlements Program, an inter-governmental initiative that provides a web-based service to help federal, state, territorial, tribal and local agencies and other governmental entities verify United States citizenship or immigration status/category information of applicants for benefits, licenses, or other authorized purposes.

This Privacy Threshold Analysis documents that the Systematic Alien Verification for Entitlements Program has

1. Expanded its search capabilities to allow approved Systematic Alien Verification for Entitlements Program user agencies to verify United States citizenship information using Social Security Numbers and other non-Department of Homeland Security enumerators.

2. A new Social Security Administration system connection to support verification of citizenship/immigration status.

3. A new bulk uploader/list processor function that allows user agencies to upload lists of benefit applicants.

4. Use of the Voter Registration and Voter List Maintenance Verification functionality.

5. The collection of information from the Department of State's Consular Consolidated Database/ American Citizen Record Query system. Additionally, the Systematic Alien Verification for Entitlements Program will integrate with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data system.

**2025 Updates**

On April 22, 2025, Homeland Security Secretary Kristi Noem, alongside the United States Citizenship and Immigration Services and the Department of Government Efficiency, announced a comprehensive optimization of the Systematic Alien Verification for Entitlements Program to ensure a single, reliable source for verifying immigration status and United States citizenship nationwide. Congressional, federal, and state stakeholders have periodically expressed interest in using the Systematic Alien Verification for Entitlements to verify naturalized and derived citizenship information during voter registration and/or for voter list maintenance. Verification for voter list maintenance purposes often occurs when a state Department of Motor Vehicles compares its records to state voter agency records to determine if individuals on the voter rolls represented that they were other than U.S. citizens when the Department of Motor Vehicles issued their driver's license. The state voter agency then follows up with those individuals as to their citizenship status through state law voter registration challenge procedures. The United States Citizenship and Immigration Services Verification Division is leading this effort and has identified multiple phases to optimize the program. A high-level summary is provided below, while a more detailed description of each phase follows.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

▇▇▇▇▇▇

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 4 of 42*

- Phase 1: Free Service for State, Local, Tribal, Territory agencies and Bulk Uploader. (Estimated completion: Implemented)

- Phase 2: Integration with the Social Security Administration to allow for full Social Security Number to be used as a non-Department of Homeland Security enumerator. (Estimated completion: Implemented)

- Phase 3: Modify the Security Administration integration to allow for truncated Social Security Numbers (last 4-digits) to be used as a non-Department of Homeland Security enumerator. (Estimated completion: July/August 2025)

- Phase 4: Integration with Customs and Border Protection to enable United States passport data, received from the Department of State, to be used within the Systematic Alien Verification for Entitlements Program. (Estimated completion: To be determined)

- Phase 5: Integration with the Department of Justice to enable an incarceration/felony related flag (the flag will be used internally and will not be sent to the agencies or the applicants). (Estimated completion: To be determined)

- Phase 6: Integration with State Driver's Licensing Agencies to enable a Driver License number to be used as a non-Department of Homeland Security enumerator. (Estimated completion: To be determined

The summary below focuses on phases one (1) through four (4). More detailed information can be found later in this document. Phases five (5) and six (6) are longer term goals of the optimization effort and are still in the exploratory/planning stage. The United States Citizenship and Immigration Services will update this Privacy Threshold Analysis to support the remaining phases during their development.

Phases One (1) through Three (3)

Systematic Alien Verification for Entitlements Program eliminated fees for non-federal users creating Systematic Alien Verification for Entitlements Program cases. User agencies can now create multiple individual cases from a list of data provided by the user. Further, the Systematic Alien Verification for Entitlements Program plans to integrate additional immigration information into search functionality and case results, such as timelines and addresses. Improved automatic status updates and a new user-friendly interface will empower federal, state, local, territorial, and tribal agencies to help prevent individuals who are not qualified for government benefits and licenses from receiving those benefits and licenses. The Department of Homeland Security intends to provide ongoing updates to stakeholders as the Systematic Alien Verification for Entitlements Program Optimization Plan progresses. Systematic Alien Verification for Entitlements Program users must attest to completing the Systematic Alien Verification for Entitlements Program tutorial prior to gaining access to Systematic Alien Verification for Entitlements Program. Users' access is based on their permissions.

The United States Citizenship and Immigration Services has developed and implemented a new bulk uploader/list processor feature to the Systematic Alien Verification for Entitlements Program. This feature will allow program users to upload a list (such as an excel spreadsheet) of benefit applicants to the Systematic Alien Verification for Entitlements Program for processing. Once the list is uploaded, the Systematic Alien Verification for Entitlements Program will accept or not accept the data then, through an automated process, create front-end single-record cases for each entry. Initially the creation of cases using this feature is limited to cases created using an A-number, Citizenship or Naturalization Certificate

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 5 of 42*

number, or Social Security number. Agencies will not be prompted to institute additional verification when using this process but are instructed to resubmit additional information when the process is unable to return a response. Expansion of this feature in the future may include the ability to create cases with additional enumerators and the ability to request configured information not automatically selected for the benefit type.

User agencies will be able to access each case created using the list processor feature in the Systematic Alien Verification for Entitlements system as normal, by viewing the individual case status and response. The Systematic Alien Verification for Entitlements Program also has a feature available to all the user agencies to generate a report that will list all the cases created, the status of the case and the Systematic Alien Verification for Entitlements Program response. Access to generate the report, including what cases are included, will vary depending upon the individual user's permission. United States Citizenship and Immigration Services is providing this verification service for all benefit requests. There are approximately 1,200 user agencies with access to the Systematic Alien Verification for Entitlements Program to verify immigration status for benefits or entitlements, and in fiscal year 2024, the Systematic Alien Verification for Entitlements Program completed over 24.5 million first step verifications.

The Systematic Alien Verification for Entitlements Program was originally designed only to use a Department of Homeland Security-issued enumerator (such as an alien number or A-Number) to query immigration records, specifically, to provide immigration status to Systematic Alien Verification for Entitlements Program user agencies. The Systematic Alien Verification for Entitlements Program is now expanding to allow Systematic Alien Verification for Entitlements Program user agencies to provide a Social Security Number or a United States Passport number to query the Systematic Alien Verification for Entitlements Program.

The Systematic Alien Verification for Entitlements Program will also add the ability for user agencies to verify truncated Social Security Numbers (last 4 digits) against Social Security Administration records. This will allow the Systematic Alien Verification for Entitlements Program to verify all United States citizens including those by birth, which was previously not available. A benefit applicant's Social Security number can only be used for automated initial verification and cannot be used for additional verification, which will continue to require a Department of Homeland Security immigration enumerator since the Systematic Alien Verification for Entitlements Program does not normally collect Social Security Numbers or passport numbers. The addition of the Voter Registration and Voter List Maintenance Verification, and the Social Security Administration connection is now live. The Systematic Alien Verification for Entitlements Program can now verify United States-born citizens for voter verification agencies.

The Department of Homeland Security/United States Citizenship and Immigration Services seeks access to Social Security Administration information accessed through the Department of Homeland Security/United States Citizenship and Immigration Services Verification Information System[3]. The United States Citizenship and Immigration Services and the Social Security Administration agreed to the following limitations on the access to, and disclosure and use of information that identifies a verification request as being generated by United States Citizenship and Immigration Services or associated with a United States Citizenship and Immigration Services program:

---

[3] Verification Information System provides services to customers through Systematic Alien Verification for Entitlements and E-Verify (the latter of which will not be used for this initiative).

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 6 of 42*

- Data or information that identifies a verification request as being generated by United States Citizenship and Immigration Services or associated with a United States Citizenship and Immigration Services program will remain information owned by United States Citizenship and Immigration Services.

- The United States Citizenship and Immigration Services will use the verification responses generated by the Social Security Administration only for the purposes described in the Information Sharing Agreement between the Department of Homeland Security, United States Citizenship and Immigration Services and the Social Security Administration.

- Data or information that identifies a verification request as being generated by the United States Citizenship and Immigration Services or associated with a United States Citizenship and Immigration Services program will be used only as provided in the Information Sharing Agreement by the Social Security Administration.

- Data or information that identifies a verification request as being generated by United States Citizenship and Immigration Services or associated with the United States Citizenship and Immigration Services program provided by Social Security Administration will not be duplicated or disseminated outside Social Security Administration without prior written approval from United States Citizenship and Immigration Services. The United States Citizenship and Immigration Services will not give such approval unless the redisclosure is required by law or is essential to the conduct of the exchange. In such cases, the Social Security Administration, the agency redisclosing the records, must specify in writing what records will be redisclosed, to whom they will be redisclosed, and the reasons that justify redisclosure.

- The United States Citizenship and Immigration Services will not duplicate or disseminate the verification responses for a purpose not covered by the Information Sharing Agreement, within or outside of its agency, without the written permission of the Social Security Agreement excepted as required by Federal law. The Social Security Administration will not give such permission, unless Federal law requires disclosure, or disclosure is essential to the purpose of this Agreement. For such permission, The United States Citizenship and Immigration Services must specify in writing what data it is requesting to duplicate or disseminate and to whom, and the reasons that justify such duplication or dissemination.

### *Administrative Safeguards*

The Social Security Administration and the United States Citizenship and Immigration Services will restrict access to the data matched and to any data created by the match to only those users, for example, employees and contractors, who need it to perform their official duties in connection with the uses of the data authorized in the Information Sharing agreement. Further, the Social Security Administration and the United States Citizenship and Immigration Services will advise all personnel with access about the confidential nature of the data, the safeguards required to protect the data, and the civil and criminal sanctions for noncompliance contained in the applicable Federal laws.

Parties, including all personnel with access to information, will be appropriately educated and trained regarding the proper handling of personally identifiable information and proper care of the information systems to ensure the overall safeguarding and security of the information. The Social Security Administration and the United States Citizenship and Immigration Services will ensure that its

# Homeland Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 7 of 42*

employees, including contractors with the access to any of the information, have completed privacy training on the handling of personally identifiable information.

Phase Four (4)

The United States Citizenship and Immigration Services will need to query other non-United States Citizenship and Immigration Services systems, besides the Social Security Administration's Numident system, with the information provided by the Systematic Alien Verification for Entitlements Program user agency to find the appropriate Department of Homeland Security-issued enumerator to continue with the Systematic Alien Verification for Entitlements Program case processing. For instance, USCIS is researching the possibility of using a United States Passport Number to be able to identify a Department of Homeland Security-issued enumerator. In a case when a User Agency uploads or enters a United States Passport Number instead of a DHS-issued enumerator, the Systematic Alien Verification for Entitlements Program will query another non-United States Citizenship and Immigration Services System using the United States Passport Number along with a unique identifier to find any records and will identify if a Department of Homeland Security-issued enumerator was used by the applicant when applying for a Department of Homeland Security-issued benefit or if a Passport Number was used at a United States Port of Entry and is associated with a Department of Homeland Security-issued enumerator. In this instance, to enable this change, the Systematic Alien Verification for Entitlements Program would integrate with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data to match a Passport Number against Customs and Border Protection and Department of State records to attempt to locate a Department of Homeland Security issued enumerator.

The TECS (not an acronym) - Travel Documents and Encounter Data stores travel document information (scanned images of documents, biographic information, document details, and photographs) from the United States Citizenship and Immigration Services Lawful Permanent Resident Cards along with Department of State-issued United States passports, visas, foreign passports, enhanced driver's licenses, and enhanced tribal cards. The TECS (not an acronym) - Travel Documents and Encounter Data USPassportRESTService allows interconnected systems to query TECS (not an acronym) - Travel Documents and Encounter Data for United States passport information. For this use case, the Systematic Alien Verification for Entitlements Program user agency will input a passport number into the Systematic Alien Verification for Entitlements Program. The query will trigger the USPassportRESTService to locate the matching United States passport number and return the results to the user. This will allow the Systematic Alien Verification for Entitlements Program to verify all types of United States citizens, including those by birth, which was previously not available. Currently, the Systematic Alien Verification for Entitlements Program only collects passport numbers for foreign issued passports if it is provided with an additional Department of Homeland Security enumerator. The United States Citizenship and Immigration Services E-Verify has an existing connection to the USPassportRESTService, which also resides within the Verification Information System, like Systematic Alien Verification for Entitlements Program.

The following are updates that were planned prior to Secretary Noem's vision for optimizing the Systematic Alien Verification for Entitlements Program and are still in progress.



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 8 of 42*

- Systematic Alien Verification for Entitlements Program will update the responses provided to users as part of the Interface Control Agreement Version 38, which enhances the Systematic Alien Verification for Entitlements Program query logic to provide more accurate information based on the need to know. The Systematic Alien Verification for Entitlements Program will add the collection of an uploaded document such as a Naturalization/Citizenship Certificate Number, when the user submits a second step additional verification, as well as the collection of a reason code, which allows the Systematic Alien Verification for Entitlements Program users to provide additional details regarding the applicant's request, particularly during the additional verification process. The Systematic Alien Verification Entitlements responds to users by providing an immigration status/category or United States citizenship. These additional collections will help Systematic Alien Verification for Entitlements Program identify and remedy data issues, reduce overall manual response times, and allow the Systematic Alien Verification for Entitlements Program to improve the quality of first step automated responses.

- A live site environment will be implemented where Systematic Alien Verification for Entitlements web service users can access new and current interface control agreements. This will streamline the process to update the interface control agreements and ensure that the Systematic Alien Verification for Entitlements Program users have access to the most current information for the Interface Control Agreement Version 38.

- The Systematic Alien Verification for Entitlements Program case response screen will be redesigned so that it is easier to read and allow for the additional information to be submitted. The screen will be packaged in a new way to provide the user clear information during the initial verification.

Additionally, Systematic Alien Verification for Entitlements Program will be collecting information from the Department of State's Consular Consolidated Database / American Citizen Record Query system which is a consular search engine used by the Department of State to manage and access records related to United States citizens, particularly for consular protection and services, including managing passport requests and applications.

## 2024 Update

As part of the Systematic Alien Verification for Entitlements Program's normal review process, the United States Citizenship and Immigration Services intends to access the Department of State's Consular Consolidated Database / American Citizen Record Query system to verify immigration status of applicants for benefits, licenses, and other authorized purposes. The purpose of collecting this information is to confirm the identity of the applicant to determine their status. This process is part of an ongoing effort that began in 2024.

### *Background*

The Systematic Alien Verification for Entitlements Program is an online service for registered federal, state, territorial, tribal, and local government agencies to verify immigration status and United States citizenship of applicants seeking benefits or licenses. Systematic Alien Verification for Entitlements



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 9 of 42*

Program is not a database but queries Department of Homeland Security-accessed federal records to provide registered user agencies with a verification response.

In 1986, Congress mandated that the Immigration and Naturalization Service, now United States Citizenship and Immigration Services, establish a system to verify the citizenship and immigration status of individuals seeking government benefits and licenses.

The United States Citizenship and Immigration Services Verification Division administers the Systematic Alien Verification for Entitlements Program, which is an intergovernmental initiative using a web-based service to help federal, state, territorial, tribal and local benefit-issuing and licensing agencies and other governmental entities determine the immigration status or United States citizenship of applicants for public benefits, licenses, grants, credentials, background investigations, and other lawful purposes, so only entitled applicants receive them. Systematic Alien Verification for Entitlements Program verifies immigration status/category and United States citizenship against Department of Homeland Security-accessed records. Historically, the Systematic Alien Verification for Entitlements Program has not verified information for United States born citizens as a Department of Homeland Security immigration enumerator was previously required, but now the Systematic Alien Verification for Entitlements Program can verify United States-born United States citizens against Social Security Administration data. The Systematic Alien Verification for Entitlements Program does not determine an applicant's eligibility for a specific benefit or license, as this is the responsibility of the benefit/license granting agency.

As of April 1, 2025, the Systematic Alien Verification for Entitlements Program has revised its transaction charges for all state, local, tribal, and territorial government agencies using the Systematic Alien Verification for Entitlements Program to eliminate those charges. Federal agencies are still charged a fee to use the Systematic Alien Verification for Entitlements Program. The authority for the Systematic Alien Verification for Entitlements Program, and for particular Systematic Alien Verification for Entitlements Program authorized uses can be found in the Immigration Reform and Control Act[4]; the Personal Responsibility and Work Opportunity Reconciliation Act[5] Title IV, Subtitle A, of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996[6], and the REAL ID Act of 2005[7], the Patient Protection and Affordable Care Act of 2010,[8] and the Federal Aviation Administration Extension, Safety and Security Act of 2016.[9] In addition, the Systematic Alien Verification for Entitlements Program has an obligation under 8 U.S.C. 1373(c) to "respond to an inquiry by a Federal, State or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

---

[4] Immigration Reform and Control Act of 1986, Public. Law. No. 99-603

[5] Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Public Law No. 104-193, 110 Statute 2168

[6] Title IV, Subtitle A, of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 Public Law 104-208, 110 Statute 3009

[7] REAL ID Act of 2005, Public. Law No.109-13, 119 Statute 231

[8] Patient Protection and Affordable Care Act of 2010, Public Law No. 111-148

[9] Federal Aviation Administration Extension, Safety and Security Act of 2016 (Federal Aviation Administration Act), Public. Law. No. 114-190 § 3405(d) (July 15, 2016).

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 10 of 42*

The United States Citizenship and Immigration Services Verification Division operates the Verification Data Information System as the search engine for Systematic Alien Verification for Entitlements Program and the E-Verify Program. The Verification Data Information System accesses nationally accessible databases of selected immigration records to support both the Systematic Alien Verification for Entitlements Program and the E-Verify Program. The Systematic Alien Verification for Entitlements Program queries an individual's immigration status to help the administering agency determine eligibility for any public benefit, license, or credential based on their United States citizenship or immigration status. The United States Citizenship and Immigration Services is obligated by law to respond to an inquiry by a Federal, state or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

### *Systematic Alien Verification for Entitlements Program*

The United States Citizenship and Immigration Services administers the Systematic Alien Verification for Entitlements Program, an inter-governmental initiative that provides a web-based service to help federal, state, territorial, tribal, and local benefits-issuing and licensing agencies and other governmental entities along with Airport Operators verify the United States citizenship and immigration status/category information of applicants for public benefits or licenses (hereinafter "benefits"). Examples of these benefits include Supplemental Security Income Supplemental Nutrition Assistance Program (formerly food stamps), Temporary Assistance for Needy Families cash assistance, Medicaid, Children's Health Insurance Program, REAL ID compliance, and other statutorily authorized purposes, including voter verification.

The Systematic Alien Verification for Entitlements Program also eliminates fees for database searches, breaks down silos for more accurate results, streamlines List Processor submission, and integrates additional immigration information, such as timelines and addresses. Automatic status updates and a new user-friendly interface will empower Federal, state, local, territorial, and tribal agencies to help prevent individuals who are not qualified for government benefits from receiving those benefits. The Department of Homeland Security intends to provide ongoing updates to stakeholders as the Systematic Alien Verification for Entitlements Program Optimization Plan progresses.

Agency use of the Systematic Alien Verification for Entitlements Program is administered by the Verification Division. All user agencies are required to register with the Systematic Alien Verification for Entitlements Program to access the system prior to using the Systematic Alien Verification for Entitlements Program. The Systematic Alien Verification for Entitlements Program is not a source system and connects with federal immigration systems, and now the Social Security Administration's Numident[10] system, to access applicable information. The Systematic Alien Verification for Entitlements Program also has a Case Status Check capability that allows benefit applicants to view the status of their Systematic Alien Verification for Entitlements Program case. The system provides benefit eligibility checks based on the grant dates. The Verification Division has a three (3) tier process when verifying an individual's immigration status or United States citizenship.

---

[10] NUMIDENT or "Numerical Identification" refers to the master file of Social Security Administration records containing information about individuals who have applied for or been assigned a Social Security Number. This file includes records for applications, claims, and death records related to individuals with a Social Security Number.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 11 of 42*

Users must perform all additional verification procedures the Systematic Alien Verification for Entitlements Program requires and/or the applicant requests prior to denying a benefit based upon a Systematic Alien Verification for Entitlements Program response. Users must provide all applicants who are denied benefits based solely or in part upon the Systematic Alien Verification for Entitlements Program response adequate written notice and the information necessary to contact the Department of Homeland Security so that applicants may correct their immigration records in a timely manner, if necessary.

### *Initial verification*

A Systematic Alien Verification for Entitlements Program user agency accesses their account in the system and either submits requests individually or via a bulk request using the system's new bulk uploader feature. When a Systematic Alien Verification for Entitlements Program user agency submits an online verification request for a benefit applicant, it provides several required identifiers for the benefit applicant from documents presented by the benefit applicant, including first and last name, date of birth, and at least one of the following: an enumerator from the Department of Homeland Security (e.g. Alien number/United States Citizenship and Immigration Services number, Form I-94 Number, Card Number/I-797 Receipt number, Citizenship/Naturalization Certificate Numbers), a Social Security number from Social Security Administration, or a United States passport number from the Department of State. Social Security Numbers and United States passport numbers are new enumerators. Previously, enumerators were solely limited to Department of Homeland Security-issued immigration enumerators.

In the case of a bulk upload the Systematic Alien Verification for Entitlements Program will use an automated process to create individual cases for each benefit applicant on the list.

Using these data fields, the Systematic Alien Verification for Entitlements Program performs an automated query of various Systematic Alien Verification for Entitlements Program-accessed federal databases for relevant records. If a Social Security Number is submitted under this new collection, the Systematic Alien Verification for Entitlements Program will verify this enumerator against the Social Security Administration records, including the Social Security Administration death records and citizenship records. If the individual's Social Security account has a record of an A-number or certificate number, the Social Security Administration will provide that information to the Systematic Alien Verification for Entitlements Program, which will be used to validate that information against the Department of Homeland Security records. If a United States passport number is submitted, the Systematic Alien Verification for Entitlements Program will verify it against the Department of State related records available in the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data system. When the Systematic Alien Verification for Entitlements Program locates a record pertaining to the benefit applicant in any of these federal databases, the Systematic Alien Verification for Entitlements Program displays a verification response to the user agency within seconds.

### *Second step, additional verification (Tier 2)*

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 12 of 42*

If the Systematic Alien Verification for Entitlements Program is unable to find a record pertaining to the benefit applicant through the automated first level search of the Department of Homeland Security records, including United States passport records and the Social Security Administration records, it displays a response to the user indicating additional action is required from the user agency, including requesting additional verification when an immigration enumerator is available. If only a Social Security Number is submitted for verification, the user agency will be informed to close the case and submit a new request using either corrected data or an immigration enumerator, since additional verification cannot be conducted with only a Social Security Number.

The Systematic Alien Verification for Entitlements Program user agency may start the additional verification procedure, which may include is an in-depth manual review by Systematic Alien Verification for Entitlements Program staff (Status Verification Analyst) to determine the applicant's immigration status or United States citizenship. At the point at which the "Institute Additional Verification" message is displayed, user agencies must submit the case for additional verification if they are relying on a Systematic Alien Verification for Entitlements Program response to deny a benefit. Additionally, if the user agency receives a response and they have questions about the validity of the response, the user agency may submit a case that already received a Systematic Alien Verification for Entitlements Program response for additional verification. Users must also submit a case for additional verification when requested by the applicant.

User agencies may not rely on a Systematic Alien Verification for Entitlements Program response to approve or deny an application for benefits unless they have followed all required Systematic Alien Verification for Entitlements Program verification procedures. The Systematic Alien Verification for Entitlements Program users are not required to institute additional verification if a user agency has alternate grounds upon which to base its decision to decide a benefit that do not require verification of the applicant's immigration status/category, even where the agency is prompted to do so. Examples of when a user agency has alternate grounds to base a decision that does not require the completion of additional verification include:

- The applicant does not meet eligibility requirements for the benefit unrelated to immigration status/United States citizenship.
- The applicant withdraws their application.
- The applicant cannot be contacted/fails to respond to an agency's request for follow-up.
- The applicant presents documentation the Systematic Alien Verification for Entitlements Program cannot verify (such as a military identification).

This revision adds the collection of an uploaded document which includes immigration enumerators (such as a Form I-94, Arrival/Departure Records, Naturalization/Citizenship Certificate, or passport records) when a case is submitted for second step additional verification as well as a reason code. Reason codes can provide information on why the initial verification was not successful, if the case has been escalated for additional verification, or suggest that additional verification steps may be needed to determine the applicant's status or eligibility for a benefit. Reason codes can also identify if it was a user-initiated additional verification request when the user received an initial Systematic Alien Verification for Entitlements Program response providing an immigration status/category or United States citizenship. These additional collections will help the Systematic Alien Verification for Entitlements Program identify

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 13 of 42*

and remedy data issues, reduce overall manual response times, and allow the Systematic Alien Verification for Entitlements Program to improve the quality of first step automated responses.

If the second step manual search produces relevant information enabling the verification of immigration status, the Systematic Alien Verification for Entitlements Program provides an electronic response to the inquiring user agency.

If the user agency declines second step additional verification, the verification process ceases. Additional screens notify the user agency that closing the case without performing additional verification means the agency does not have a complete Systematic Alien Verification for Entitlements Program response. The Systematic Alien Verification for Entitlements Program user agencies cannot rely upon an incomplete Systematic Alien Verification for Entitlements Program response to deny a benefit.

### *Third step Additional Verification with Documents (Tier 3)*

If a benefit applicant's immigration status/category cannot be verified on initial or additional verification step when submitting a Department of Homeland Security enumerator, the system will prompt the user agency to resubmit the case with documents. When the prompt is received, the agency must upload a copy of the front and back of the immigration document the applicant presented to the user agency for the Systematic Alien Verification for Entitlements Program to perform detailed manual research at third step. A Department of Homeland Security immigration enumerator is required for the third step additional verification. The Systematic Alien Verification for Entitlements Program cannot complete third step additional verification using non-immigration documentation. The Systematic Alien Verification for Entitlements Program user agencies are legally authorized to make electronic copies of immigration documents for purposes of verifying immigration status. Cases created with just the Social Security Number or a Passport Number as the enumerator are not subject to this step.

If the third step manual review produces relevant information enabling the verification of immigration status/category or United States citizenship, the Systematic Alien Verification for Entitlements Program provides an electronic response to the user agency.

If a benefit applicant's immigration status/category is not verified after completing third step verification, the Systematic Alien Verification for Entitlements Program will provide additional information or guidance on how to proceed.

If the applicant believes their information in the Department of Homeland Security records is incorrect, the applicant can seek a records correction. User agencies should provide the Systematic Alien Verification for Entitlements Program Fact Sheet and Systematic Alien Verification for Entitlements Program Records: Fast Facts for Benefit Applicants[11] to benefit applicants that may require records correction.

---

[11] The Systematic Alien Verification for Entitlements Fact Sheet and Systematic Alien Verification for Entitlements Records: Fast Fact for Benefits Applicants is accessible at https://www.uscis.gov/save/benefit-and-license-applicants/resources-for-benefit-and-license-applicants

# Homeland Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 14 of 42*

The Systematic Alien Verification for Entitlements Program user agency continues to have the option of running a web report within the system that will create a file in Adobe format of all cases processed for their organization. The United States Citizenship and Immigration Services provides access to relevant reports of approved or pending cases for Systematic Alien Verification for Entitlements Program user agencies to assist them in managing their Systematic Alien Verification for Entitlements Program cases and monitoring their own compliance with the Systematic Alien Verification for Entitlements Program rules and the federal deeming and reimbursement rules. User agencies can run case-specific reports for quality assurance that will include information, such as name, date of birth, type of benefit, immigration identifier (e.g., A-Number, unexpired foreign passport number, I-94 Arrival/Departure Record), and immigration status, only if the benefit was administered.

## *Voter Registration and Voter List Maintenance Verification*

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 expanded the Systematic Alien Verification for Entitlements Program by requiring the program to respond to inquiries by federal, state and local government agencies seeking to verify or determine the citizenship or immigration status of any individual within the jurisdiction of the agency for any lawful purpose. See 8 U.S.C. § 1373(c). This authority allows agencies to use the Systematic Alien Verification for Entitlements Program for verification of citizenship and immigration status outside of the traditional benefit-granting programs covered by the Immigration Reform and Control Act of 1986. This includes voter registration and voter list maintenance purposes, so long as the agency meets the legal requirements for using the Systematic Alien Verification for Entitlements Program and provides the required applicant information, when submitting verification requests.

On January 20, 2025, and March 25, 2025, the President issued Executive Orders 14159, *Protecting the American People Against Invasion*[12] and 14248, *Preserving and Protecting the Integrity of American Elections*[13] respectively. Executive Order 14159 requires the Secretary to "promptly issue guidance to ensure maximum compliance by [Department of Homeland Security] personnel with the provisions of 8 U.S.C. 1373[14] and 8 U.S.C. 1644[15] and ensure that State and local governments are provided with the information necessary to fulfill law enforcement, citizenship, or immigration status verification requirements authorized by law." Executive Order 14248[16] provides, "Federal laws, such as the National Voter Registration Act (Pub. L. 103-31) and the Help America Vote Act (Pub. L. 107-252), require States to maintain an accurate and current Statewide list of every legally registered voter in the State. Pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Department of Homeland Security/United States Citizenship and Immigration Services is required to share database information with States upon request so they can fulfill this duty. 8 U.S.C. 1373(c)[17]." Executive Order 14159[18] directs the Secretary to "ensure that State and local officials have, without the requirement of the payment

---

[12] https://www.federalregister.gov/documents/2025/01/29/2025-02006/protecting-the-american-people-against-invasion

[13] https://www.federalregister.gov/documents/2025/03/28/2025-05523/preserving-and-protecting-the-integrity-of-american-elections

[14] 8 USC 1373 Communication between government agencies and the Immigration and Naturalization Service

[15] 8 USC 1644 Communication between State and local government agencies and Immigration and Naturalization Service

[16] Executive Order 14248 Preserving and Protecting the Integrity of American Elections

[17] 8 USC. 1373(c) Obligation to respond to inquiries

[18] Executive Order 14159 Protecting the American People Against Invasion



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 15 of 42*

of a fee, access to appropriate systems for verifying the citizenship or immigration status of individuals registering to vote or who are already registered." The Secretary is also required under Executive Order 14159, in coordination with the Department of Government Efficiency Administrator, to review each State's publicly available voter registration list and available records concerning voter list maintenance activities as required by 52 U.S.C. 20507[19], alongside Federal immigration databases and State records requested, including through subpoena where necessary and authorized by law, for consistency with Federal requirements. To support this activity the Attorney General is required to prioritize enforcement of 18 U.S.C. 611[20] and 1015(f)[21] and similar laws that restrict aliens from registering to vote or voting, including through use of: (i) databases or information maintained by the Department of Homeland Security; (ii) State-issued identification records and driver license databases; and (iii) similar records relating to citizenship.

In accordance with federal statutes and policies, the Department of Homeland Security personnel must, in a timely manner, provide verification or immigration status information in response to inquiries from State and local government agencies to verify or ascertain the citizenship or immigration status of individuals. As required by 8 U.S.C. 1373(c), such inquiries must relate to individuals within the jurisdiction of the State or local government agency and must be for a purpose authorized by law. Department of Homeland Security personnel have been directed to comply, to the maximum extent possible and permissible under law, with Section 1373, considering federal statutory requirements, including the Privacy Act of 1974, 5 U.S.C. 552a[22], and 8 U.S.C. 1367[23] (special protected class information); as well as other laws, rules, regulations, policies, and requirements regarding verification, information sharing, and confidentiality.

The Systematic Alien Verification for Entitlements Program user agency registration process determines whether a state voter registration agency meets the legal requirements for using the Systematic Alien Verification for Entitlements Program. As part of registering to use Systematic Alien Verification for Entitlements Program, the agency must provide the Systematic Alien Verification for Entitlements Program all applicable legal authorities and voter registration procedures that authorize the agency to engage in voter registration and/or voter list maintenance activities and verify citizenship status before making individual determinations regarding eligibility for voter registration. The United States Citizenship and Immigration Services provides information on its public facing website to assist user agencies understand the above referenced requirements.[24]

**_Current Process - Voter Registration and Voter List Maintenance Verification_**

---

[19] 52 USC 20507 Requirements with respect to administration of voter registration

[20] 18 USC 611 Voting by aliens

[21] 18 USC 1015 (f) Naturalization, citizenship or alien registry, whoever knowingly makes any false statement or claims that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election (including an initiative, recall, or referendum)-Shall be fined under this title or imprisoned not more than five years, or both

[22] 5 USC 552a Records maintained on individuals

[23] 8 USC 1367 Penalties for disclosure of information

[24] The Systematic Alien Verification for Entitlements Voter Registration and Voter List Maintenance Fact Sheet is accessible at https://www.uscis.gov/save/resources/voter-registration-and-voter-list-maintenance-fact-sheet.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 16 of 42*

In understanding the use of the Systematic Alien Verification for Entitlements Program for voter verification-related purposes (voter registration and voter list maintenance), one should also bear in mind the following limitations and considerations:

- The information needed to verify an individual through the Systematic Alien Verification for Entitlements Program is typically not collected on a voter registration application, although it may be available from other sources, especially driver's license applications.

- The Systematic Alien Verification for Entitlements Program previously was only able verify United States citizenship for naturalized and certain acquired citizens[25] for whom the United States Citizenship and Immigration Services has a record of their citizenship.

- The Systematic Alien Verification for Entitlements Program previously was often unable to verify acquired United States citizens because eligible individuals frequently do not apply for and thus do not receive a determination and certificate of United States citizenship from the United States Citizenship and Immigration Services.

- Department of State adjudicates acquired citizens that may not have a record with the United States Citizenship and Immigration Services via the issuance of U.S. passports. Therefore, obtaining passport information from the Department of State is in progress.

- The Department of State maintains records for individuals who have renounced their citizenship. Once a Certificate of Loss of Nationality is approved by the Department of State indicating the official determination of loss of United States nationality, this information is shared with the United States Citizenship and Immigration Services per 8 USC 1373.[26]

- With the newly established connection to the Social Security Administration's Numident system, the Systematic Alien Verification for Entitlements Program is now able to verify more United States citizens, including United States citizens by birth, when a Social Security Number is provided.

Verification for voter list maintenance purposes often occurs when a state Department of Motor Vehicles compares its records to the state voter agency records to determine if any individuals on the voter rolls identified that they were non-United States citizens when the Department of Motor Vehicles issued their driver's license. The state voter agency would then follow up with those individuals their citizenship status through established state law voter registration challenge procedures. As part of the established voter registration challenge procedures, the State Voter Agency will seek to establish the immigration/citizenship status of the individuals and use Systematic Alien Verification for Entitlements Program as one method to verify the information.

There are likely some situations in which the Systematic Alien Verification for Entitlements Program provides an initial response indicating a non-United States citizen immigration status (e.g., Lawful Permanent Resident) when the registrant is in fact a United States citizen. However, as also noted above, rules for using the Systematic Alien Verification for Entitlements Program prohibit voter registration agencies from relying upon this initial verification response to deny or revoke registration since as by

---

[25] "Acquired citizenship" refers to U.S. citizenship conveyed to children through the naturalization of parents or, under certain circumstances, at birth to foreign-born children of U.S. citizens, provided certain conditions are met.

[26] 8 USC 1873 outlines the communication between government agencies and the Immigration and Naturalization Service.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 17 of 42*

asserting United States citizenship as part of registering to vote, registrants inherently disagree with any initial response indicating they are not a United States citizen.

### *Shortfalls in data accuracy in the system could cause incomplete or false results.*

According to Systematic Alien Verification for Entitlements Program subject matter experts, the situations in which the Systematic Alien Verification for Entitlements Program provides an initial non-United States citizen immigration status for a United States citizen who has a certificate of naturalization or citizenship from the United States Citizenship and Immigration Services, or legacy Immigration and Naturalization Service can happen for a variety of reasons. In some instances, the initial non-United States citizen response is due to the lack of an electronic record with the Social Security Administration showing United States citizenship (which was not reliably recorded pre-1981), or the lack of an electronic record of a United States Citizenship and Immigration Services naturalization or acquired citizenship certificate, which is more likely for older certificates issued before recording them in electronic systems became a consistent practice. In addition, although the electronic record-matching algorithms in the United States Citizenship and Immigration Services Person Centric Service that the Systematic Alien Verification for Entitlements Program uses are very good, the United States Citizenship and Immigration Services previously identified and subsequently fixed two algorithm issues that caused Systematic Alien Verification for Entitlements Program to provide an initial verification response of Lawful Permanent Resident for some naturalized citizens and a small number of acquired United States citizens. But again, many of the safeguards noted above are designed to address any imperfections in records and algorithms used to match them.

The delay between the issuance a Certificate of Naturalization during a naturalization ceremony and when the certificate is reflected in source systems and made available to the Systematic Alien Verification for Entitlements Program rarely, if ever, causes the Systematic Alien Verification for Entitlements Program to provide an initial response of non-United States citizen immigration status. It typically takes about one business day plus a few hours for an electronic record of the certificate to be available to the Systematic Alien Verification for Entitlements Program once it is input by the responsible United States Citizenship and Immigration Services office. The Systematic Alien Verification for Entitlements Program rarely, if ever, receives requests to verify United States citizenship during this time.

Additionally, the United States Citizenship and Immigration Services is not the source agency for Social Security Administration related information. While the United States Citizenship and Immigration Services assumes the accuracy of the Social Security Administration data, it cannot verify accuracy of the information and relies on the Social Security Administration to ensure the data accuracy, timeliness, and integrity of their own data.

### *Customs and Border Protection Integration*

The Systematic Alien Verification for Entitlements Program will integrate with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data. Customs and Border Protection is now permitting the Systematic Alien Verification for Entitlements Program to query TECS (not an acronym) Travel Documents and Encounter Data system to find a match to US passport information in Customs and Border Protection holdings. The TECS (not an acronym) - Travel Documents and Encounter Data system stores travel document information (i.e. scanned images of documents, biographic information, document details, and photographs) from the United States Citizenship and Immigration Services Lawful Permanent Resident Cards, Department of State-issued United States

DHS-AR-000302

# Homeland
# Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

██████████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 18 of 42*

passports and visas, foreign passports, enhanced driver's licenses, and enhanced tribal cards. The TECS (not an acronym) - Travel Documents and Encounter Data USPassportRESTService allows interconnected systems to query TECS (not an acronym) - Travel Documents and Encounter Data for United States passport information. For this use case, the Systematic Alien Verification for Entitlements Program user agencies will input a United States passport number into the Systematic Alien Verification for Entitlements Program system.

The query will trigger the USPassportRESTService to locate the matching United States passport number and return the results to the user. This will allow the Systematic Alien Verification for Entitlements Program to verify all types of United States citizens, including those by birth, which was previously not available. Currently, the United States Citizenship and Immigration Services E-Verify Program has an existing connection to the USPassportRESTService, which also resides within the Verification Information System, like the Systematic Alien Verification for Entitlements Program.

Customs and Border Protection has the authority to collect passport photos pursuant to 5 USC 552a (4).[27] Customs and Border Protection receives a routine feed from the Department of State with US passports as they are issued and/or updated. Customs and Border Protection also collects passport information primarily on all travelers seeking to enter the United States at ports of entry. Customs and Border Protection uses this information as part of Agency operations.

### *Social Security Administration Data Sharing*

The Information Sharing Agreement between the Department of Homeland Security-United States Citizenship and Immigration Services and the Social Security Administration documents the Social Security Administration's support by matching data submitted through the Systematic Alien Verification for Entitlements Program to Social Security Administration records in the Social Security Administration's master files of Social Security Number holders and Social Security Number Applications. The United States Citizenship and Immigration Services will only submit verification requests to the Social Security Administration for authorized purposes.

The United States Citizenship and Immigration Services Verification Division and Social Security Administration connection is now live and now connects the Systematic Alien Verification for Entitlements Program with the Social Security Administration's Numident system. Prior to the connection, the United States Citizenship and Immigration Services and Social Security Administration executed a Letter of Agreement that identifies the authorities for both organizations as well as purposes and the data exchange. The United States Citizenship and Immigration Services will document this sharing in a separate Privacy Threshold Analysis.

The Systematic Alien Verification for Entitlements Program performs an automated query of various Systematic Alien Verification for Entitlements Program-accessed federal databases for relevant records. Now, if a Social Security Number is submitted by a user agency, the Systematic Alien Verification for Entitlements Program will verify this enumerator against the Social Security Administration Numident system including the death and citizenship records. If the individual's Social Security account has a record of an A-number or certificate number, the Social Security Administration will provide that information to the Systematic Alien Verification for Entitlements Program, which will in turn be used to

---

[27] 5 USC 552a (4) Records maintained on individuals - collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

# Homeland Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 19 of 42*

validate the information against the Department of Homeland Security records. Verifying citizenship status using Social Security Administration data will be made available to all Systematic Alien Verification for Entitlements Program user agencies.

### *Department of State Data Sharing*

If a United States passport number is submitted, the Systematic Alien Verification for Entitlements Program will verify it against information from Department of State-issued passports maintained by the Custom Boarder Protection. Additionally, Systematic Alien Verification for Entitlements Program will collect information from the Department of State's Consular Consolidated Database / American Citizen Record Query system, which is a consular search engine used by the Department of State to manage and access records related to United States citizens, particularly for consular protection and services, including managing passport requests and applications.

Department of Homeland Security-Department of State Memorandum of Agreement Appendix A allows this query of passport information to be used in Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data to support its missions, including but not limited to verification of United States passports, whenever the document is presented as proof of identity to obtain a benefit, privilege, status, or credential from the Department of Homeland Security, for vetting and screening purposes, and/or for transportation security, national security, law enforcement, border security (including biometric entry and exit initiatives), immigration (including verification purposes such as E-Verify) and counterterrorism purposes.

### *User Agencies Memoranda of Agreement*

All user agency memorandums of agreements contain similar provisions to protect the due process and other rights of individuals for whom states or other user agencies submit verification requests to the Systematic Alien Verification for Entitlements Program[28]. The United States Citizenship and Immigration Services has an online tool that allows the public to search if a federal, state, local, tribal, or territorial agency is registered with the Systematic Alien Verification for Entitlement Program.[29]

| 2. **From whom does the Project, Program, or System collect, maintain, use, or disseminate information?** *Please check all that apply.* | ☐ This project does not collect, collect, maintain, use, or disseminate any personally identifiable information[30] <br><br> ☒ Members of the public |
| --- | --- |

---

[28] The Systematic Alien Verification for Entitlements Program memorandum of agreement is assessable at https://www.uscis.gov/save/prospective-user-agencies/register-an-agency-for-save and under the "How to Register for SAVE" section.

[29] The Systematic Alien Verification for Entitlement Program search tool is accessible at https://www.uscis.gov/save/save-agency-search-tool.

[30] DHS defines personal information as "Personally Identifiable Information" or PII, which is any information that permits the identity of an individual to be directly or indirectly inferred, including any information that is linked or linkable to that individual, regardless of whether the individual is a U.S. citizen, lawful permanent resident, visitor to the U.S., or employee or contractor to the Department. "Sensitive PII" is PII, which if lost, compromised, or disclosed without authorization, could result in substantial harm, embarrassment, inconvenience, or unfairness to an individual. For the purposes of this PTA, SPII and PII are treated the same.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

████████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 20 of 42*

| | |
|---|---|
| | ☒ U.S. Persons (U.S citizens or lawful permanent residents)<br><br>☒ non-U.S. Persons<br><br>☒ DHS Employees/Contractors (list Components): United States Citizenship and Immigration Services<br><br>☐ Other federal employees or contractors (list agencies): *Click here to enter text.* |
| **2(a) Is information meant to be collected from or about sensitive/protected populations?** | ☐ No<br><br>☒ 8 USC § 1367 protected individuals (e.g., T, U, VAWA)[31]<br><br>☒ Refugees/Asylees<br><br>☐ Other. Please list: |

3. **What specific information about individuals is collected, maintained, used, or disseminated?**

*Information Collected from Requesting Agencies about applicants for benefits, licenses, or other authorized purposes:*

- Full Name
- Date of birth
- Benefit sought
- Driver license
- State Identification
- Citizenship or nationality
- Country of birth
- A-Number
- Social Security Number
- Alias
- Customer Agency-issued Case Number

*Unique Immigration Identifiers Used:*

---

[31] This involves the following types of individuals: T nonimmigrant status (Victims of Human Trafficking), U nonimmigrant status (Victims of Criminal Activity), or Violence Against Women Act (VAWA). For more information about 1367 populations, please see: DHS Management Directive 002-02, Implementation of Section 1367 Information Provisions, *available at* http://dhsconnect.dhs.gov/org/comp/mgmt/policies/Directives/002-02.pdf.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 21 of 42*

- Alien number
- United States Citizenship and Immigration Services Number
- I-94 Admission Record Number (a 11-digit admission record assigned to foreign visitors entering the United States by the United States Customs and Border Protection)
- Student and Exchange Visitor Information System Identification Number
- Naturalization or Citizenship Certificate Number
- Card Number / I-797 Receipt Number (unique identifier assigned by the United States Citizenship and Immigration Services to track an immigration application or petition).
- Visa Number
- Foreign passport number (if submitted with another immigration enumerator and issuing country)

### Other Identifiers:

- Social Security Number including a truncated version of the Social Security Number where only the last four digits are displayed, with the initial five digits are masked using asterisks (*) or XXXXX
- United States Passport Number
- Agency Data Universal Numbering System

### Other Information:

**Additional information requested by the agency:**

- Employment Authorization Document History
- Grant Date
- Affidavit of Support Sponsor Data[32]
    - Full name
    - Current mailing address - In care of name (if any)
    - Current physical address
    - Country of domicile
    - Date of birth
    - Country of birth
    - Social Security Number
    - Immigration Status
    - Sponsors A-number (if any)
    - United States Citizenship and Immigration Services Online Account Number (if any)
    - Military service
    - Employment and income
    - Federal tax return information

---

[32] A United States Citizenship and Immigration Services Affidavit of Support sponsor is an individual who signs a legal contract, Form I-864, agreeing to financially support an intending immigrant, ensuring they won't become a public charge. This sponsor is typically the U.S. citizen, lawful permanent resident, or U.S. national who filed the immigrant petition.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 22 of 42*

- Sponsor Deeming and Agency Reimbursement Information Collection
    - Whether the benefit-granting agency approved or denied the application for the means-tested public benefit.
    - If the benefit-granting agency denied the application, if the denial was based upon the information that the Systematic Alien Verification for Entitlements Program provided in its response to the citizenship and immigration status verification request from the benefit-granting agency.
    - Whether the benefit-granting agency deemed sponsor/household member income and, if not, the exception or reason for not doing so.
    - Whether the benefit-granting agency sent the sponsor a reimbursement request letter (yes/no).
    - Whether the sponsor complied with his or her reimbursement obligation.
    - Whether the benefit-granting agency conducted a collection action or other proceedings if the sponsor did not comply with his or her reimbursement obligation (yes/no and if yes, the status, court or forum, and docket or matter number).

- Data collected on Form I-864, Affidavit of Support Under Section 213A of the Immigration and Nationality Act
    - Principal Immigrant:
        - Full name
        - Current mailing address - In care of name (if any)
        - Current physical address
        - Country of Citizenship or Nationality
        - Date of birth
        - Alien Registration number
        - United States Citizenship and Immigration Services Online Account Number (if any)
        - Daytime telephone number
    - Principal Immigrant Family Members:
        - Full name
        - Relationship to Principal Immigrant
        - Alien Registration number
        - United States Citizenship and Immigration Services Online Account Number (if any)
        - Daytime telephone number
    - Interpreter's Contact Information, Certification and Signature:
        - Full name
        - Telephone number
        - Email address (if any)
        - Interpreter's certification and signature
    - Preparer's Contact Information:
        - Daytime number
        - Mobile number (if any)
        - Email address (if any)
        - Signature

- Cuban/Haitian, Immigration Status

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 23 of 42*

- Violence Against Women's Act
- Request Document Review
- Citizenship Status
- Immigration Documentation (uploaded by the user agency to perform additional verification)

## *Agency User Information*

- Agency point of contact name
- Agency point of contact phone number
- Initiated on
- Initiated by

## *Information Shared with Social Security Administration:*

- Full Name
- Date of Birth
- Social Security Number

## *DATA Received and Maintained from Social Security Administration:*

- Social Security Number Match: True/False
- Name Match: True/False
- Date of Birth Match: True/False
- Citizenship Indicator:
- "A" - United States citizen
- "B" - Legal alien, eligible to work
- "C" - Legal alien, not eligible to work
- "D" - Other
- "E" - Alien Student - restricted work authorized
- "F" - Conditionally legalized alien
- Foreign Born Indicator: Citizenship code is not present, but individual was foreign born
- Alien Registration Number: Where applicable
- Certificate Number: Where applicable
- Death Indicator: Yes Deceased / Not Deceased
- Error Code Descriptions: Transaction and record levels

## *Information Shared with TECS (not an acronym) – TECS (not an acronym)-Travel Documents and Encounter Data for Passport query:*

- Full Name
- Date of Birth
- United States passport number

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 24 of 42*

**_Information Provided to Requesting User Agencies:_**

- Case Verification Number: a Systematic Alien Verification for Entitlements Program generated number
- Initial Request Date
- Identification Type
- Identification Number
- Last Name
- Benefit Code
- Benefit Description
- Initial Request Response: Lawful Status, No Lawful Status, Deceased
- Additional Request Date
- Additional Request Response: Lawful Status, No Lawful Status, Deceased
- Third Step Request Date
- Third Step Resolution: Lawful Status, No Lawful Status, Deceased

**_Additional information for immigrants requested from agencies for which they established the authority/need to receive_**

- Employment authorization document history
- Grant date
- Affidavit of Support Sponsor Data
- Cuban/Haitian Entrant Information
- Violence Against Women's Act information
- Immigration Status
- Request document review
- Citizenship status
- Photo
- Closed Date
- Receipt number

**3(a) Does this Project, Program, or System collect, maintain, use, or disseminate Social Security numbers (SSN) or other types of stand-alone sensitive information?[33] If applicable, check all that apply.**

---

[33] Sensitive PII (or sensitive information) is PII that if lost, compromised, or disclosed without authorization, could result in substantial harm, embarrassment, inconvenience, or unfairness to an individual. More information can be found in the DHS Handbook for Safeguarding Sensitive Personally Identifiable Information, *available at* https://www.dhs.gov/publication/handbook-safeguarding-sensitive-personally-identifiable-information.

DHS-AR-000309

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 25 of 42*

| | |
|---|---|
| ☒ Social Security number<br><br>☒ Alien Number (A-Number)<br><br>☐ Tax Identification Number<br><br>☒ Visa Number<br><br>☒ Passport Number<br><br>☐ Bank Account, Credit Card, or other financial account numbers | ☐ Social Media Handle/ID<br>☒ Driver's License/State ID Number<br>☐ Biometric identifiers *(e.g., FIN, EID)*<br>☒ Biometrics.[34] *Please list modalities (e.g., fingerprints, DNA, iris scans): Click here to enter text.*<br>☒ Other. *Please list:* Form I-94 number, Student and Exchange Visitor Information System Identification number, Naturalization / Citizenship Certificate number, Permanent Resident Card number / Receipt number, and Visa number. |
| **3(b) Please provide the specific legal basis for the collection of SSN:** | The Social Security Number is collected from applicants and is used to verify their immigration status/United States citizenship. div. C, title VI, Section 642 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-707, codified at 8 U.S.C. 1373 (a) and (c). Authority for having a system for verification of citizenship and immigration status of individuals seeking government benefits is governed by the Immigration Reform and Control Act of 1986 Pub. L. No. 99-603, 100 Stat. 3359.<br><br>Sections 415 and 642 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, authorizes the collection and use of Social Security Numbers to verify entitlement to public benefits, licenses, and credentials. |

| |
|---|
| **3(c) If the SSN is needed to carry out the functions and/or fulfill requirements of the Project, System, or Program, please explain why it is necessary and how it will be used.** |
| The Social Security Number is used to assist in identity verification for user agencies and in determining benefits eligibility. If possible, the United States Citizenship and Immigration Services will use a truncated Social Security Number if provided by the user agency. |

---

[34] If related to IDENT/HART and applicable, please complete all Data Access Request Analysis (DARA) requirements. This form provides privacy analysis for DHS' IDENT, soon to be HART. The form replaces a PTA where IDENT is a service provider for component records. PRIV uses this form to better understand how data is currently shared, will be shared and how data protection within IDENT will be accomplished. IDENT is a biometrics service provider and any component or agency submitting data to IDENT is a data provider.

# Homeland Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

████████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 26 of 42*

**3(d) If the Project, Program, or System requires the use of SSN, what actions are being taken to abide by Privacy Policy Instruction 047-01-010, *SSN Collection and Use Reduction*,[35] which requires the use of privacy-enhancing SSN alternatives when there are technological, legal, or regulatory limitations to eliminating the SSN? Note:** *even if you are properly authorized to collect SSNs, you are required to use an alternate unique identifier. If there are technological, legal, or regulatory limitations to eliminating the SSN, privacy-enhancing alternatives should be taken, such as masking, truncating, or encrypting the SSN, or blocking the display of SSNs in hard copy or digital formats.*

The United States Citizenship and Immigration Services has traditionally used an alternative number to the Social Security Number to access records to determine the citizenship/immigration status of user agencies benefit applicants in compliance with the Department of Homeland Security privacy-related policies. However, United States Citizenship and Immigration Services now needs to collect Social Security numbers to facilitate user agencies' ability to submit a request for citizenship/immigrations status of benefit applicants. The United States Citizenship and Immigration Services is working to implement use of the truncated form of a Social Security number (i.e. the last four numbers of a Social Security number rather than the full identifier) to retrieve information from the Social Security Administration. The Systematic Alien Verification for Entitlements Program's user interface will mask the full Social Security Number during data inputs, except for when information is submitted via the bulk uploader. In compliance with the security policy for Social Security numbers, server-side encryption is used for Amazon Simple Storage Service[36] and Amazon Relational Database Services[37] databases. This uses key management provided by Amazon Web Services for the storage buckets and Relational Database Services databases where Social Security Numbers are housed. Social Security Numbers and Personally Identifiable Information are not exposed in any hard copy documents available for extract from the information system. Additionally, in accordance with the National Institute of Science and Technology and Department of Homeland Security information security and privacy policies, the Systematic Alien Verification for Entitlements Program maintains moderate level controls for the confidentiality of information within the tool.

| 4. How does the Project, Program, or System retrieve information? | ☒ By a unique identifier.[38] Please list all unique identifiers used:<br><br>• Full name<br>• Alias |
| --- | --- |

---

[35] *See* https://www.dhs.gov/publication/privacy-policy-instruction-047-01-010-ssn-collection-and-use-reduction.

[36] Amazon Simple Storage Service (Amazon S3) is an object storage service offering industry-leading scalability, data availability, security, and performance. Organizations can use this service to store, manage, analyze, and protect any amount of data for virtually any use case, such as data lakes, cloud-native applications, and mobile apps.

[37] Amazon Relational Database Service (Amazon RDS) is an easy-to-manage relational database service optimized for total cost of ownership. It is simple to set up, operate, and scale with demand. Amazon RDS automates undifferentiated database management tasks, such as provisioning, configuring, backing up, and patching. Amazon RDS allows customers to create a new database in minutes and offers flexibility to customize databases to meet their needs.

[38] Generally, a unique identifier is considered any type of "personally identifiable information," meaning any information that permits the identity of an individual to be directly or indirectly inferred, including any other information which is linked or linkable to that individual regardless of whether the individual is a U.S. citizen, lawful permanent resident, visitor to the U.S., or employee or contractor to the Department.



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 27 of 42*

|  | <ul><li>Date of birth</li><li>Immigration enumerator:<ul><li>○ Alien number/United States Citizenship and Immigration Services Number,</li><li>○ Form I-94, Arrival/Departure Record number,</li><li>○ Student and Exchange Visitor Information System Identification number,</li><li>○ Citizenship or Naturalization Certificate number</li><li>○ Card Number / I-797 Receipt Number,</li><li>○ Visa Number, or</li><li>○ Foreign passport number (if submitted with another immigration enumerator) and issuing country</li></ul></li><li>Social Security Number</li><li>United States passport number</li><li>Customer Agency-issued Case Number</li><li>Case Verification Number</li></ul><br>☐ By a non-unique identifier or other means. Please describe:<br>*Click here to enter text.* |
|---|---|
| **5. What is the records retention schedule(s) for the information collected for each category type** (include the records schedule number)? *If no schedule has been approved, please provide proposed schedule or plans to determine it.*<br><br>*Note: If no records schedule is in place or are unsure of the applicable records schedule, please reach out to the appropriate Records Management Office.*[39] | Data within Systematic Alien Verification for Entitlements Program is retained for 10 years after the final match determination of the employee or applicant in accordance with NARA approved records retention schedule N1-566-08-07.<br><br>All United States Citizenship and Immigration Services verification requests will be documented in a transactional database. The retention period is 10 years. The database is not accessible to the public, except as permitted. |

---

[39] *See* https://dhsconnect.dhs.gov/org/comp/mgmt/ocio/cdod/rm/Pages/DHS-Records-Officers.aspx

DHS-AR-000312

Homeland
Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 28 of 42*

| | |
|---|---|
| **5(a) How does the Project, Program, or System ensure that records are disposed of or deleted in accordance with the retention schedule** (e.g., technical/automatic purge, manual audit)? | Data is automatically purged annually based on NARA disposal schedule N1-566-08-07. |
| **6. Does this Project, Program, or System connect, receive, or share PII with any other DHS/Component projects, programs, or systems?**[40] | ☐ No.<br><br>☒ Yes. If yes, please list:<br><br>**United States Citizenship and Immigration Services Systems:**<br><br>• Central Index System<br>• Electronic Immigration System<br>• Computer Linked Application Information Management System 3<br>• Enterprise Citizenship and Immigration Services Centralized Operational Repository<br>• GLOBAL (not an acronym)<br>• RAILS (not an acronym)<br>• Customer Profile Management System<br>• Reengineered Naturalization Application Casework System<br>• Marriage Fraud Amendment System<br>• Salesforce Customer Relationship Management Customer Relationship Management[41]<br><br>**Department of Homeland Security Systems:**<br><br>• Department of Homeland Security OneNet<br>• Immigration and Custom Enforcement Student and Exchange Visitor Information System<br>• Immigration and Custom ENFORCE Integrated Database |

---

[40] PII may be shared, received, or connected to other DHS systems directly, automatically, or by manual processes.

[41] Provides a unified platform where data from different departments can be accessed and used to improve customer interactions.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 29 of 42*

| | |
|---|---|
| | • Customs and Border Protection Arrival and Departure Information System<br>• Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data - USPassportRESTService<br>• Transportation Security Administration Technology Infrastructure Modernization and Vetting and Credentialing System |
| **7. Does this Project, Program, or System connect, receive, or share PII with any external (non-DHS) government or non-government partners or systems?** | ☐ No.<br><br>☒ Yes. If yes, please list:<br><br>The following are systems/organizations that the Systematic Alien Verification for Entitlements Program collects/shares information to support user agencies' requests:<br><br>• United States Military Entrance Processing Command Integrated Resource System<br><br>• Department of Education Federal Student Aid Central Processing System<br><br>• Department of Health and Human Services Centers for Medicare & Medicaid Services<br><br>• Social Security Administration Numident system<br><br>• Department of Justice Executive Office for Immigration's Immigration Review Information Exchange System<br><br>• Department of State Consular Consolidated Database Passport<br><br>The following are systems/organizations that the Systematic Alien Verification for Entitlements provides information that determine benefit eligibility:<br>• Various federal agencies in their role as a user agency |

DHS-AR-000314



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
███████
www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 30 of 42*

|  |  |
|---|---|
|  | • Various state, local, tribal, and territory agencies in their role as a Systematic Alien Verification for Entitlements Program user agency |
| 8. **Is this sharing pursuant to new or existing information sharing agreement (MOU, MOA, LOI, RTA, etc.)?** *If applicable, please provide agreement as an attachment.* | Existing<br><br>Please describe applicable information sharing governance in place:<br><br>• Letter of Agreement between United States Citizenship and Immigration Services and Social Security Administration<br><br>• Information Sharing Agreement between the Department of Homeland Security, United States Citizenship and Immigration Services and the Social Security Administration regarding citizenship<br><br>• Computer Matching Agreement with Department of Education<br><br>• Memorandum of Agreements between United States Citizenship and Immigration Services and each individual user agency |
| 9. **Does the Project, Program, or System or have a mechanism to track external disclosures of an individual's PII?** | ☐ No. What steps will be taken to develop and maintain the accounting: *Click here to enter text.*<br><br>☒ Yes. In what format is the accounting maintained if appropriate (e.g., disclosures to the Department of Justice Office of Special Counsel, Immigration and Customs Enforcement). Verification Information System also has a transactional log that enables the recreation of accounting of disclosures. |
| 10. **Does this Project, Program, or System use or collect data involving or from any of the following technologies:** | ☐ Social Media<br><br>☐ Advanced analytics[42]<br><br>☐ Live PII data for testing |

---

[42] The autonomous or semi-autonomous examination of Personally Identifiable Information using sophisticated techniques and tools to draw conclusions. Advanced Analytics could include human-developed or machine-developed algorithms and encompasses, but is not limited to, the following: data mining, pattern and trend analysis, complex event processing, machine learning or deep learning, artificial intelligence, predictive analytics, big data analytics.

DHS-AR-000315



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 31 of 42*

|  |  | ☒ No |
| --- | --- | --- |
| **11.** | **Does this Project, Program, or System use data to conduct electronic searches, queries, or analyses in an electronic database to discover or locate a predictive pattern or an anomaly indicative of terrorist or criminal activity on the part of any individual(s) (i.e., data mining)?[43] This does not include subject-based searches.** | ☒ No.<br><br>☐ Yes. If yes, please elaborate: *Click here to enter text.* |
| | **11(a) Is information used for research, statistical, or other similar purposes? If so, how will the information be de-identified, aggregated, or otherwise privacy-protected?** | ☒ No.<br><br>☐ Yes. If yes, please elaborate: *Click here to enter text.* |
| **12.** | **Does the planned effort include any interaction or intervention with human subjects[44] via pilot studies, exercises, focus groups, surveys, equipment or technology, observation of public behavior, review of data sets, etc. for research purposes** | ☒ No.<br><br>☐ Yes. If yes, please reach out to the DHS Compliance Assurance Program Office (CAPO) for independent review and approval of this effort.[45] |
| **13.** | **Does the Project, Program, or System provide role-based or additional privacy training for personnel who have access, in addition to annual privacy training required of all DHS personnel?** | ☒ No.<br><br>☐ Yes. If yes, please list: *Click here to enter text.* |

---

[43] Is this a program involving pattern-based queries, searches, or other analyses of one or more electronic databases, where—

   (A) a department or agency of the Federal Government, or a non-Federal entity acting on behalf of the Federal Government, is conducting the queries, searches, or other analyses to discover or locate a predictive pattern or anomaly indicative of terrorist or criminal activity on the part of any individual or individuals.

   (B) the queries, searches, or other analyses are not subject-based and do not use personal identifiers of a specific individual, or inputs associated with a specific individual or group of individuals, to retrieve information from the database or databases; and

   (C) the purpose of the queries, searches, or other analyses is not solely—

      (i) the detection of fraud, waste, or abuse in a government agency or program; or

      (ii) the security of a government computer system.

[44] Human subject means a living individual about whom an investigator conducting research: (1) obtains information or biospecimens through intervention or interaction with the individual, and uses, studies, or analyzes the information or biospecimens; or (2) obtains, uses, studies, analyzes, or generates identifiable private information or identifiable biospecimens.

[45] For more information about CAPO and their points of contact, please see: https://www.dhs.gov/publication/capo or https://collaborate.st.dhs.gov/orgs/STCSSites/SitePages/Home.aspx?orgid=36. For more information about the protection of human subjects, please see DHS Directive 026-04: https://www.dhs.gov/sites/default/files/publications/mgmt/general-science-and-innovation/mgmt-dir_026-04-protection-of-human-subjects_revision-01.pdf.

**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

████████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 32 of 42*

| 14. Is there a FIPS 199 determination?[46] | ☐ No. <br><br> ☒ Yes. Please indicate the determinations for each of the following: <br><br> Confidentiality: <br> ☐ Low ☒ Moderate ☐ High ☐ Undefined <br><br> Integrity: <br> ☐ Low ☒ Moderate ☐ High ☐ Undefined <br><br> Availability: <br> ☐ Low ☒ Moderate ☐ High ☐ Undefined |
|---|---|

## PTA REVIEW

### (TO BE COMPLETED BY COMPONENT PRIVACY OFFICE REVIEWER)

| | |
|---|---|
| **Component Privacy Office Reviewer:** | Chiquita Jones/LeVar Sykes |
| **Component Privacy Office Senior Reviewer:** | Shannon DiMartino |
| **PRIVCATS ID Number:** | 0019946 |
| **Date submitted to Component Privacy Office:** | May 5, 2025 |
| **Concurrence from other Component Reviewers involved (if applicable):** | Catherine Shorten, Customs and Border Protection, concurrence provided 6/5/2025 |
| **Component Privacy Office Recommendation:** <br> *Please include recommendation below, including what new privacy compliance documentation is needed, as well as any specific privacy risks/mitigations, as necessary.* | |
| The United States Citizenship and Immigration Services submits this updated Privacy Threshold Analysis to document the United States Citizenship and Immigration Services Verification Division and Office of Technology (OIT) changes to the Systematic Alien Verification for Entitlements Program. The United States Citizenship and Immigration Services administers the Systematic Alien Verification for Entitlements Program which is an inter-governmental initiative that provides a web-based service to help | |

---

[46] FIPS 199 is the Federal Information Processing Standard Publication 199, Standards for Security Categorization of Federal Information and Information Systems and is used to establish security categories of information systems. For more information, see https://www.nist.gov/itl/fips-general-information.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 33 of 42*

# Homeland Security

federal, state, territorial, tribal and local agencies and other governmental entities verify United States citizenship or immigration status/category information of applicants for benefits, licenses, or other authorized purposes.

This Privacy Threshold Analysis documents the following changes to the Systematic Alien Verification for Entitlements Program:

1. Expanded search capabilities to allow approved Systematic Alien Verification for Entitlements Program user agencies to verify United States citizenship information using Social Security Numbers and other non-Department of Homeland Security enumerators.

2. A new Social Security Administration system connection to support verification of citizenship/immigration status.

3. A new bulk uploader/list processor function that allows user agencies to upload lists of benefit applicants.

4. Use of the Voter Registration and Voter List Maintenance Verification functionality.

5. The collection of information from the Department of State's Consular Consolidated Database/ American Citizen Record Query system.

6. An integration with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data system.

The United States Citizenship and Immigration Services Privacy Office recommends Privacy Impact Assessment coverage for the Systematic Alien Verification for Entitlements Program to comply with the eGovernment Act of 2002 as it "collects, maintains, or disseminates information that is in an identifiable form." The information collected, used, stored, and/or disseminated by the Systematic Alien Verification for Entitlements Program meets the definition of Personally Identifiable Information ("PII")/Sensitive Personally Identifiable Information ("SPII")[47] as it "permits the identity of an individual to be directly or indirectly inferred, including any other information that is linked or linkable to that individual, regardless of whether that individual is a United States citizen, legal permanent resident, or a visitor to the United States, or employee or contractor to the Department." Specifically, the Systematic Alien Verification for Entitlements Program involves information from members of the public applying for benefits, licenses, or other authorized purposes which may include (1) United States citizens and legal permanent residents, (2) individuals who are now current United States citizens and legal permanent residents after previously naturalizing or adjusting their status, or (3) individuals who may ultimately naturalize to become United States citizens or adjust their status to receive legal permanent residency in the future. Depending on the eligibility category certain individuals may be eligible to apply for adjustment of status as soon as one (1) year after their initial immigration benefit is granted,[48] therefore the United States Citizenship and Immigration Services Privacy Office recommends requiring Privacy Impact Assessment coverage for the Systematic Alien Verification for Entitlements Program to ensure all current and future United States

---

[47] Personally Identifiable Information (PII) has numerous official definitions, but in general, it is defined as any information that can be used to identify an individual directly or indirectly, such as a name, email address, Social Security Number or IP address. Sensitive PII (SPII) is generally defined as any PII that if lost, stolen, or disclosed without authorization could result in significant harm to an individual.

[48] For more information on eligibility categories please refer to: https://www.uscis.gov/green-card/green-card-eligibility-categories.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 34 of 42*

citizens and legal permanent residents have transparency into how the United States Citizenship and Immigration Services may collect, store, use, and share the information they previously provided to the United States Citizenship and Immigration Services.

The Privacy Office's Technology Oversight Branch recommends that the Systematic Alien Verification for Entitlements Program continues to be designated as a privacy sensitive program that requires privacy compliance coverage. The Technology Oversight Branch recommends that with the new updates to the program documented in this Privacy Threshold Analysis the Systematic Alien Verification for Entitlements Program be identified as not in compliance with the Privacy Act of 1974, as amended, or the E-Government Act of 2002. A Privacy Impact Assessment update and a System of Records Notice update should be published prior to the program's changed collection and use of Personally Identifiable Information, including information on natural born United States citizens. Further, the sharing of Personally Identifiable Information with the Social Security Administration should occur after the System of Records Notice has gone through the required 30-day comment period. The following are the Technology Oversight Branch's recommendations for privacy compliance coverage and additional requirements:

**Privacy Impact Assessment**

- A new Privacy Impact Assessment Update for DHS/USCIS/PIA-006 Systematic Alien Verification for Entitlements Program must be completed before collection and use of additional information. Specifically, these Privacy Impact Assessment updates would include, but are not limited to:
    - The collection of Social Security Numbers and other information from the Social Security Administration regarding United States citizens, including natural born citizens.
    - The change in legal rationale for now collecting and maintaining Social Security Numbers of United States natural born citizens.
    - The collection and use of Passport Numbers from the Department of State via new system connections.
    - The addition of the Voter Registration and Voter List Maintenance Verification process, including how this process may verify the citizenship status of natural born United States citizens.
    - The implementation of the bulk case upload functionality for User Agencies.
    - Additional privacy risks and mitigation strategies regarding notice, consent, and data accuracy.

**System of Records Notice**

- An update to DHS/USCIS-004 Systematic Alien Verification for Entitlements Program must be completed before the collection and sharing of additional information. Specifically, these System of Records Notice updates would include, but are not limited to changes to the following sections:
    - Purpose: The System of Records Notice does not currently include the verification of voter registration and voter maintenance lists.

**Homeland
Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

██████

www.dhs.gov/privacy

**Privacy Threshold Analysis
Version number: 02-2025**
*Page 35 of 42*

- o Categories of Individuals: Currently, USCIS specifically informs the public it only collects information on naturalized or acquired United States citizens. This section must be updated to discuss that information on natural born United States citizens will also be collected.

- o Categories of Records: The System of Records Notice currently informs the public that the Systematic Alien Verification for Entitlements Program only collects Social Security Number of immigrants on the United States Citizenship and Immigration Services Form G-845. This section must be updated to cover the expanded collection and use of Social Security Numbers.

- o Sources of Records: The System of Records Notice currently doesn't include the Social Security Administration system of records. This section must be updated to reflect all new source systems including the Social Security Administration Numident system.

- DHS/CBP-011 Customs and Border Protection Primary and Secondary Processing (TECS (not an acronym)) National SAR Initiative December 19, 2008 (73 Federal Register 77778)

- STATE-26 Passport Records, March 24, 2015 (80 Federal Register 15653)

- STATE-39 Visa Records, November 8, 2021 (86 Federal Register 61822)

- SSA-60-0058 Master Files of Social Security Number Holders and Social Security Number Applications, February 20, 2025 (90 Federal Register 10025)

The following is a Plan of Action to ensure that the Systematic Alien Verification for Entitlements Program is brought into compliance with all federal statutes, regulations, and Department of Homeland Security policies.

**USCIS Privacy's Action Plan for the Systematic Alien Verification for Entitlements Program**

The Systematic Alien Verification for Entitlements Program is an inter-governmental initiative that provides a web-based service to help federal, state, territorial, tribal and local agencies and other governmental entities verify United States citizenship or immigration status/category information of applicants for benefits, licenses, or other authorized purposes.

**Action Plan**

This plan outlines priority actions necessary to advance the goal and objective of ensuring the Systematic Alien Verification for Entitlements Program is compliant with all applicable privacy laws, regulations, and polices. These actions will ensure that the use of technology by United States Citizenship and Immigration Services and the Systematic Alien Verification for Entitlements Program sustains and does not erode privacy protections relating to the collection, use, dissemination, maintenance, and disposal of personal information. These actions include actively working with the Verification Division, Office of Chief Counsel and the Customs and Border Protection Office of Privacy on this Privacy Threshold Analysis and the draft System of Records Notice along with continued collaboration with these stakeholders and others such as the Department of Homeland Security Privacy Office to ensure Systematic Alien Verification for Entitlements Program is in compliance.

**Actions to Be Taken**



**Homeland Security**

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 36 of 42*

To meet these objectives the United States Citizenship and Immigration Services Office of Privacy will complete the following activities:

- Receive United States Citizenship and Immigration Services Chief Privacy Officer adjudication of the initial Systematic Alien Verification for Entitlements Program Privacy Threshold Analysis:

  o Adjudication - Date of Completion: July 2025

- Draft an updated Systematic Alien Verification for Entitlement Program Privacy Impact Assessment meeting all requirements identified above and submit the draft to the Department of Homeland Security Office of Privacy.

  o Initial Draft - Complete

  o Office of Chief Counsel Review – Complete

  o Submission to Department of Homeland Security – Date of Completion: September 2025

  o Publication – Estimated September 2025

- Draft an updated Systematic Alien Verification for Entitlement Program System of Records Notice meeting all requirements identified above and submit the draft to the Department of Homeland Security Office of Privacy.

  o Initial Draft - Complete

  o Office of Chief Counsel Review – Complete

  o Submission to Department of Homeland Security – Date of Completion: September 2025

  o Submission to the Office of Management and Budget and Congress – Estimated September 2025

  o Publication – Estimated September 2025

  o End of 30-day commenting period (and sharing of new routine uses) Estimated October/November 2025

- Draft a Privacy Threshold Analysis documenting the new Systematic Alien Verification for Entitlement Program information sharing agreement between the United States Citizenship and Immigration Services and the Social Security Administration and receive the Chief Privacy Officer's adjudication of the Privacy Threshold Analysis.

  o Estimated Date of Completion: September 2025

- Determine the applicability of the Computer Matching and Privacy Protection Act of 1988 to new or changed aspects of the Systematic Alien Verification for Entitlements Program including the new bulk upload functionality for User Agencies.

  o Hold a discussion regarding the Computer Matching Agreement impacts with representatives from the Department of Homeland Security Privacy Office, United States Citizenship and Immigration Services Office of Chief Counsel and Office of Privacy, and Department of Homeland Security Office of General Council.

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 37 of 42*

- Date of Completion: June 2025
  - Decide on the need for Computer Matching Agreements with user agencies versus the current Memorandum of Agreements in place with each Systematic Alien Verification for Entitlement Program user agency:
    - Date of Completion: July/August 2025

This Privacy Threshold Analysis and Action Plan focuses predominantly on Phases One through Four of the Systematic Alien Verification for Entitlements Program Optimization effort as Phase Five and Phase Six are longer term goals of the optimization effort and are still in the exploratory/planning stage. The United States Citizenship and Immigration Services will update this Privacy Threshold Analysis and Action Plan as needed to support the remaining phases during their development and ensure the Systematic Alien Verification for Entitlements Program is compliant with all applicable laws, regulations, and Department of Homeland Security policies.

The updated Privacy Threshold Analyst should also provide, at a minimum, the following updates:

- New status types that Systematic Alien Verification for Entitlements Program may provide to the user agencies and how any additional verification is completed.

- A discussion about the update to the user memorandum of agreements and the creation of the voter verification specific memorandum of agreements.

- Confirm all responses from the Customs and Border Protection via the use of their USPassportRESTService when matching United States Passport numbers.

- Discuss Customs and Border Protection authority/purpose for collecting United States Passport related photographs and collection of those photographs by the United States Citizenship and Immigration Services.

- A description of how the information received via the integration with the Department of Justice to enable an incarceration/felony related flag will be used internally and if any related information will be sent to the user agencies or the applicants.

- If the Systematic Alien Verification for Entitlements Program will use the existing connection by the E-Verify Program to the USPassportRESTService or will it be a new connection.

- Additional use case information for the Systematic Alien Verification for Entitlements Program use of Department of State information from the USPassportRESTService and the Department of State's Consular Consolidated Database / American Citizen Record Query system.

- Clarification regarding user agency benefit applicants accessing the Systematic Alien Verification for Entitlements Program.

- Additional information regarding notification provided to United States citizens regarding user agencies use of their information.

- What information may be provided to the user agency about the VAWA status of an individual.

DHS-AR-000322

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528
███████
www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 38 of 42*

- Discussion of if there could be instances when a natural born United States citizen is unable to be verified based on the data available. Also, if all United States citizens would be able to be verified via the SSA information.

- Confirmation if there are additional responses (besides Lawful Status, No Lawful Status, or Deceased) provided to user agencies now that United States citizens can also be verified.

- A discussion of any updates regarding any new agreements between Department of State and Customs and Border Protection for the sharing and use of United States Passport number information.

- Confirmation of if there is still a connection with the Reengineered Naturalization Application Casework System (which was previously decommissioned) or how information from the previously decommissioned system is still accessed.

## PTA ADJUDICATION

### (TO BE COMPLETED BY THE COMPONENT PRIVACY OFFICE APPROVER)

| Component Privacy Office Approver: | Angela Y. Washington |
|---|---|
| PTA Approval Date: | September 11, 2025 |
| PTA Expiration Date: | December 11, 2025 |

## DESIGNATION

| Privacy Sensitive System: | Yes |
|---|---|
| Category of System: | System<br>If "other" is selected, please describe: *Click here to enter text.* |
| Determination: | ☐ Project, Program, System in compliance with full coverage.<br>☒ Project, Program, System in compliance with interim coverage.<br>☐ Project, Program, System in compliance until changes implemented.<br>☐ Project, Program, System not in compliance. |
| PIA: | **PIA Update is required.**<br>• DHS/USCIS/PIA-006 Systematic Alien Verification for Entitlement Program<br>   o This PIA must be updated to document all identified system/programmatic changes. |

DHS-AR-000323



Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 39 of 42*

| SORN: | **SORN update is required.**<br><br>• DHS/USCIS-004 Systematic Alien Verification for Entitlements Program, May 27, 2020 (85 FR 31798)<br>   o This SORN must be updated to document all identified changes.<br>• DHS/CBP-011 Customs and Border Protection Primary and Secondary Processing (TECS (not an acronym)) National SAR Initiative December 19, 2008 (73 Federal Register 77778)<br>• STATE-26 Passport Records, March 24, 2015 (80 Federal Register 15653)<br>• STATE-39 Visa Records, November 8, 2021 (86 Federal Register 61822)<br>• SSA-60-0058 Master Files of Social Security Number Holders and Social Security Number Applications, February 20, 2025 (90 Federal Register 10025) |
|---|---|

**Component Privacy Office Adjudication:**
*Please describe rationale for privacy compliance determination above, and any further action(s) that must be taken by Component.*

The USCIS Office of Privacy is submitting this Privacy Threshold Analysis (PTA) to document the Systematic Alien Verification for Entitlements (SAVE) Program. The Systematic Alien Verification for Entitlements Program is an intergovernmental initiative using a web-based service to help federal, state, territorial, tribal and local benefit-issuing and licensing agencies and other governmental entities determine the immigration status or United States citizenship of applicants for public benefits, licenses, grants, credentials, background investigations, and other lawful purposes, so only entitled applicants receive them. The Systematic Alien Verification for Entitlements Program verifies immigration status/category and United States citizenship against Department of Homeland Security-accessed records. The Systematic Alien Verification for Entitlements Program is not a database but queries Department of Homeland Security-accessed federal records to provide registered user agencies with a verification response. The Systematic Alien Verification for Entitlements Program does not determine an applicant's eligibility for a specific benefit or license, as this is the responsibility of the benefit/license granting agency.

This Privacy Threshold Analysis is being submitted to document multiple updates and planned updates to the Systematic Alien Verification for Entitlements Program as part of the comprehensive optimization of the Systematic Alien Verification for Entitlements Program to ensure a single, reliable source for verifying immigration status and United States citizenship nationwide. This Privacy Threshold Analysis documents the following key changes: (1) an expanded search capabilities to allow approved Systematic Alien Verification for Entitlements Program user agencies to verify United States citizenship information using Social Security Numbers and other non-Department of Homeland Security enumerators, (2) a new Social Security Administration system connection to support verification of citizenship/immigration status, (3) a new bulk uploader/list processor function that allows user agencies to upload lists of benefit applicants, (4) the use of the Voter Registration and Voter List Maintenance Verification functionality, (5) the collection of information from the Department of State's Consular Consolidated Database/ American

Homeland
Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

█████████

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 40 of 42*

Citizen Record Query system, and (6) an integration with the Customs and Border Protection TECS (not an acronym) - Travel Documents and Encounter Data system.

After a thorough review of the PTA, the USCIS Office of Privacy continues to designate the Systematic Alien Verification for Entitlements Program as a privacy sensitive system/program requiring both Privacy Impact Assessment (PIA) and System of Records Notice (SORN) coverage as it collects/uses Personally Identifiable Information (PII) as well as Sensitive Personally Identifiable Information (SPII) from members of the public, including legal permanent residents and United States Citizens.

The United States Citizenship and Immigration Services Office of Privacy recommends Privacy Impact Assessment coverage for the Systematic Alien Verification for Entitlements Program to comply with the eGovernment Act of 2002 as it "collects, maintains, or disseminates information that is in an identifiable form." The information collected, used, stored, and/or disseminated by the Systematic Alien Verification for Entitlements Program meets the definition of Personally Identifiable Information ("PII")/Sensitive Personally Identifiable Information ("SPII")[49] as it "permits the identity of an individual to be directly or indirectly inferred, including any other information that is linked or linkable to that individual, regardless of whether that individual is a United States citizen, legal permanent resident, or a visitor to the United States, or employee or contractor to the Department." Specifically, the Systematic Alien Verification for Entitlements Program involves information from members of the public applying for benefits, licenses, or other authorized purposes which may include (1) United States citizens and legal permanent residents, (2) individuals who are now current United States citizens and legal permanent residents after previously naturalizing or adjusting their status, or (3) individuals who may ultimately naturalize to become United States citizens or adjust their status to receive legal permanent residency in the future. Depending on the eligibility category certain individuals may be eligible to apply for adjustment of status as soon as one (1) year after their initial immigration benefit is granted,[50] therefore the United States Citizenship and Immigration Services Office of Privacy recommends requiring Privacy Impact Assessment coverage for the Systematic Alien Verification for Entitlements Program to ensure all current and future United States citizens and legal permanent residents have transparency into how the United States Citizenship and Immigration Services may collect, store, use, and share the information they previously provided to the United States Citizenship and Immigration Services.

Privacy Impact Assessment (PIA) coverage is provided by the following:

- DHS/USCIS/PIA-006 Systematic Alien Verification for Entitlement Program

  - **For the Systematic Alien Verification for Entitlement Program to be in compliance with the eGovernment Act of 2002, this Privacy Impact Assessment must be**

---

[49] Personally Identifiable Information (PII) has numerous official definitions, but in general, it is defined as any information that can be used to identify an individual directly or indirectly, such as a name, email address, Social Security Number or IP address. Sensitive PII (SPII) is generally defined as any PII that if lost, stolen, or disclosed without authorization could result in significant harm to an individual.

[50] For more information on eligibility categories please refer to: https://www.uscis.gov/green-card/green-card-eligibility-categories.

DHS-AR-000325

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 41 of 42*

**updated to reflect the identified system and programmatic changes along with a privacy risk assessment of these changes including but not limited to new collections of data, new populations impacted including natural born US citizens, new system connections, new data sharing, and a new bulk upload/reporting functionality.**

System of Records Notice (SORN) coverage is required as the information in the Systematic Alien Verification for Entitlement Program is retrieved by a personal identifier. System of Records Notice coverage is provided by the following:

- DHS/USCIS-004 Systematic Alien Verification for Entitlements Program, May 27, 2020 (85 FR 31798)

  - **For the Systematic Alien Verification for Entitlement Program to be in compliance with the Privacy Act of 1974, this System of Records Notice must be updated to reflect the identified system and programmatic changes including that the System of Records will now include information on natural born United States citizens in addition to naturalized or acquired United States citizens. Updates to the System of Records Notice should include but are not limited to updates in the Purpose, Categories of Individuals, Categories of Records, and the Sources of Records sections.**

- DHS/CBP-011 Customs and Border Protection Primary and Secondary Processing (TECS (not an acronym)) National SAR Initiative December 19, 2008 (73 Federal Register 77778)

- STATE-26 Passport Records, March 24, 2015 (80 Federal Register 15653)

- STATE-39 Visa Records, November 8, 2021 (86 Federal Register 61822)

- SSA-60-0058 Master Files of Social Security Number Holders and Social Security Number Applications, February 20, 2025 (90 Federal Register 10025)

While there are currently published SORNs and PIAs associated with the Systematic Alien Verification for Entitlement Program, these documents to not sufficiently provide coverage for the recently implemented and planned system and programmatic changes documented in this Privacy Threshold Analysis. Therefore, the Systematic Alien Verification for Entitlement Program is not in compliance. An updated Privacy Impact Assessment and an updated System of Records Notice must be published for the Systematic Alien Verification for Entitlement Program to be brought into compliance.

An action plan has been developed to enable the Systematic Alien Verification for Entitlement Program to be brought into compliance with all federal laws, statutes, regulations, and Department of Homeland Security policies. A high-level summary of the action plan is as follows:

- Complete the initial Systematic Alien Verification for Entitlements Program Privacy Threshold Analysis.

Homeland
Security

Privacy Office
U.S. Department of Homeland Security
Washington, DC 20528

www.dhs.gov/privacy

**Privacy Threshold Analysis**
**Version number: 02-2025**
*Page 42 of 42*

- Publish an updated Systematic Alien Verification for Entitlement Program Privacy Impact Assessment to the Department of Homeland Security Office of Privacy website.
- Publish an updated Systematic Alien Verification for Entitlement Program System of Records Notice in the Federal Register and address any comments received during the 30-day public comment period.
- Complete a Privacy Threshold Analysis documenting the new Systematic Alien Verification for Entitlement Program information sharing agreement between the United States Citizenship and Immigration Services and the Social Security Administration.
- Determine the applicability of the Computer Matching and Privacy Protection Act of 1988 and complete any identified requirements.
- Update the Systematic Alien Verification for Entitlements Program Privacy Threshold Analysis and Action Plan as needed to support the ongoing optimization effort.

The Office of Privacy approves this Privacy Threshold Analysis for 3 months to formally document the current privacy posture of the Systematic Alien Verification for Entitlement Program.

On September 10, 2025, USCIS provided the draft Privacy Impact Assessment and System of Records Notice for the Systematic Alien Verification for Entitlements Program to DHS Privacy. These documents reference the collection, use, maintenance, and sharing of the following:

- Information on natural born United States citizens in addition to naturalized or acquired United States citizens

- Voter registration verification

- Social security numbers, including its truncated format

- Sharing of information with the Social Security Administration.

Interim coverage is provided for three (3) months while the Privacy Impact Assessment and System of Records Notice are being reviewed for approval, signature, and publication by DHS Privacy. This interim coverage is only granted for the programmatic changes documented in the Privacy Impact Assessment and System of Records Notice which are currently pending DHS Privacy review.

Any programmatic changes not included in the scope of this Privacy Threshold Analysis will require an update to the Privacy Threshold Analysis to ensure sufficient privacy risk analysis can be completed and any further compliance documentation update requirements can be identified. Further, any programmatic changes to the Systematic Alien Verification for Entitlements Program not documented in these two privacy compliance documents, will require additional updates to the Privacy Impact Assessment and System of Records Notice to be completed and submitted to DHS Privacy prior to receiving interim coverage.

# Exhibit 16

**DEPARTMENT OF HOMELAND SECURITY (DHS) PRIVACY OFFICE**

**NARRATIVE STATEMENT**

**PROPOSAL TO PUBLISH AN UPDATE TO A SYSTEM OF RECORDS**

**DHS/USCIS-004 SYSTEMATIC ALIEN VERIFICATION FOR ENTITLEMENTS (SAVE)
PROGRAM SYSTEM OF RECORDS**

Purpose:  The purpose of this system is to provide a service (fee-based for federal agencies) that assists federal, state, territorial, tribal, and local benefit-granting agencies, licensing bureaus, and other authorized entities for any legally mandated purpose in accordance with an authorizing statute to verify the U.S. citizenship and immigration status of individuals, to include naturalized, derived, and U.S. citizens by birth, within their jurisdiction applying for benefits, and to otherwise efficiently administer their programs, to the extent that such disclosure is necessary to enable these agencies and entities to make decisions related to (1) determining eligibility for a federal, state, territorial, tribal, or local public benefit; (2) issuing a license or grant; (3) issuing a government credential; (4) conducting a background investigation; (5) voter verification or (6) any other lawful purpose. This system is also used for the Department of Homeland Security (DHS)/U.S. Citizenship and Immigration Services (USCIS) bond management purposes under section 213 of the Immigration and Nationality Act.

Authority: Authority for having a system for verification of citizenship and immigration status is found in Immigration and Nationality Act, Pub. L. 82-414, 66 Stat. 163 (June 27, 1952), as amended, Immigration Reform and Control Act, Pub. L. 99-603, 100 Stat. 3359 (Nov. 6, 1986); Personal Responsibility and Work Opportunity Reconciliation Act, Pub. L. 104-193, 110 Stat. 2105 (Aug. 22, 1996); Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996); (8 U.S.C 1373(c)); the REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231 (May 11, 2005); Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119 (Mar. 23, 2010), as amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. 111-152, 124 Stat. 1029 (Mar. 30, 2010); and the Federal Aviation Administration (FAA)-Extension, Safety, and Security Act of 2016, Pub. L. 114-190, 130 Stat. 615 (July 15, 2016), 8 CFR Part 213a (Affidavits of Support on Behalf of Immigrants).

Effect on Individual Privacy: DHS/USCIS evaluated the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system and determined that it has a **major** impact on individual privacy that is outweighed by DHS's interest in assisting federal, state, territorial, tribal, and local benefit-granting agencies, licensing bureaus, and other authorized entities to verify the U.S. citizenship and immigration status of individuals, to include naturalized, derived, and U.S. citizens by birth, within their jurisdiction applying for benefits, and to otherwise efficiently administer their programs. DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program assists DHS/USCIS in meeting its statutory obligation to administer SAVE. DHS/USCIS must collect personally identifiable information to meet this statutory requirement because the data collected from the user agency must be verified against data collected by DHS, USCIS, and other federal agencies to verify citizenship and/or immigration status.

Additionally, DHS/USCIS evaluated several privacy risks related to transparency/notice and

individual participation. The following are examples of the privacy risks and mitigations documented in the related updated SAVE Program Privacy Impact Assessment:

There is a **privacy risk** that all United States citizens, including natural born U.S. citizens, have not been provided notice that the SAVE collects or maintains their information for citizenship and immigration status.

DHS/USCIS **partially mitigates** this risk. It is the responsibility of each registered agency to provide notice to individuals within their jurisdiction of their use of information and sharing with DHS/USCIS. DHS/USCIS is publishing this privacy impact assessment and related System of Records Notice to provide transparency regarding the new categories of information collected and shared to assist registered agencies in verifying citizenship and immigration status of individuals applying for a benefit or license and voter registration verification. The SAVE Program's "Register an Agency for SAVE" explains how an eligible agency can create a memorandum of agreement with the DHS/USCIS. These agreements require registered user agencies to comply with the Privacy Act of 1974, 5 U.S.C. § 552a, as amended, and other applicable laws, regulations, and policies. These policies include transparency and notice to individuals regarding agencies collection and use of personally identifiable information.

There is a **privacy risk** that the new category individuals covered by this assessment/notice, specifically natural born United States citizens, do not have the opportunity to individually participate or consent in how DHS/USCIS uses their information.

DHS/USCIS **cannot mitigate** this risk. Each user agency is responsible for complying with federal and local authorities. DHS/USCIS assumes that each user agency factors in the principles of notice, individual participation, and consent prior to providing information to DHS/USCIS. DHS/USCIS only uses the information for the authorized purpose(s). Individuals should consult their local government agencies to determine the appropriate opt-in or opt-out statute, regulations and policies.

There is a **privacy risk** that the DHS/USCIS may share inaccurate information with registered agencies, which could in turn impact a registered user agency's eligibility determination for an individual.

DHS/USCIS **partially mitigates** this risk. Generally, SAVE has a 3-step process. The first step is a general query of the system. However, due to misspellings of names, transposed numbers, or incomplete information, SAVE may produce inaccurate results. To mitigate this, SAVE has a manual step process where a DHS/USCIS staff member will try to reconcile the request manually. The third step is for DHS/USCIS to get additional documentation from the registered agency. However, this only partially mitigates the risk since the new request using Social Security numbers does not allow for a second and third step review. DHS/USCIS does not have direct access to the Social Security Administration system to support these additional steps. Additionally, registered agencies may not go through all steps to ensure accuracy of information.

There is a **privacy risk** that the DHS/USCIS may use the information it obtains from registered agencies, the Social Security Administration, and the Department of State, for purposes not

DHS-AR-000484

authorized by statute or for which it was originally collected.

DHS/USCIS **mitigates this risk** by only collecting information as authorized by the Immigration and Naturalization Act and other authorities mentioned in the Privacy Impact Assessment. The purpose for sharing Social Security numbers with the Social Security Administration and receiving information is to allow user agencies to verify the citizenship or immigration status of individuals applying for a benefit, license, or voter registration verification. The purpose for sharing and receiving U.S. passport information with the Department of State is to verify the citizenship or immigration status of individuals applying for a benefit, license or for voter registration verification. DHS/USCIS will not use the information for any other purposes than to facilitate verification of status to user agencies or to report potential fraud. The Immigration Reform and Control Act (ICRA) of 1986 Section 121 (c)(1) specifically mentions that the program is not to be used for administrative (non-criminal) enforcement. Also, each registered agency must execute a memorandum of agreement or computer matching agreement with DHS/USCIS that includes terms that the SAVE will be used in accordance with the law.

Risk of Unauthorized Access: Records in this system are safeguarded in accordance with applicable rules and policies, including all applicable DHS automated systems security and access policies.  Strict controls have been imposed to minimize the risk of compromising the information that is being stored.  Access to the computer system containing the records in this system is limited to those individuals who have a need-to-know the information for the performance of their official duties and who have appropriate clearances or permissions.

Compatibility of Routine Uses: The Department of Homeland Security Privacy Office has reviewed the routine uses in this proposed system of records notice and found all of them to be compatible with the purpose of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program.  In addition to those disclosures generally permitted under 5 U.S.C. § 552a(b) of the Privacy Act, all or a portion of the records or information contained in this system may be disclosed outside DHS as a routine use pursuant to 5 U.S.C. § 552a(b)(3) as follows:

Routine Use:
A. To the Department of Justice (DOJ), including Offices of the U.S. Attorneys, or other federal agency conducting litigation or in proceedings before any court, adjudicative, or administrative body, when it is relevant or necessary to the litigation and one of the following is a party to the litigation or has an interest in such litigation:

1.   DHS or any component thereof

2.   Any employee or former employee of DHS in his/her official capacity,

3.   Any employee or former employee of DHS in his/her individual capacity when DOJ or DHS has agreed to represent the employee, or

4.   The United States or any agency thereof.

Compatibility Analysis:

This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to the Department of Justice (DOJ) and other federal agencies when DHS determines that the use of those records is relevant and necessary for the conduct of litigation or other legal proceedings for which DHS or DOJ is a party to the litigation or has a vested interest in the litigation .

Routine Use:
B. To a congressional office from the record of an individual in response to an inquiry from that congressional office made at the request of the individual to whom the record pertains.

Compatibility Analysis:
This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records in response to congressional requests made on behalf of the individual on which the record is maintained.

Routine Use:
C. To the National Archives and Records Administration (NARA) or General Services Administration (GSA) pursuant to records management inspections being conducted under the authority of 44 U.S.C. 2904 and 2906.

Compatibility Analysis:
This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to the National Archives and Records Administration (NARA) or General Services Administration (GSA) to facilitate the inspection of records. This ensures that records are being maintained in a manner consistent with established retention schedules.

Routine Use:
D. To an agency or organization for the purpose of performing audit or oversight operations as authorized by law, but only such information as is necessary and relevant to such audit or oversight function.

Compatibility Analysis:
This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to facilitate legally authorized audits and oversight operations, and ensure that records are being maintained in accordance with established retention policies and procedures.

Routine Use:
E. To appropriate agencies, entities, and persons when (1) DHS suspects or has confirmed that there has been a breach of the system of records; (2) DHS has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, DHS (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with DHS's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

Compatibility Analysis:
This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to agencies, entities, and persons to assist in the response to a suspected or confirmed breach. The sharing of information allows DHS to mitigate, remedy, and respond to the impacts of the suspected or confirmed breach.

Routine Use:
F. To another Federal agency or Federal entity, when DHS determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

Compatibility Analysis:
This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to assist the recipient agency or entity in responding to a suspected or confirmed breach or preventing, minimizing, or remedying the risk of harm to individuals.

Routine Use:
G. To an appropriate federal, state, tribal, local, international, or foreign law enforcement agency or other appropriate authority charged with investigating or prosecuting a violation or enforcing or implementing a law, rule, regulation, or order, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure.

Compatibility Analysis:
This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to federal, state, local, and other government agencies, as well as international and foreign law enforcement agencies to investigate and prosecute violations or potential violations of law.

Routine Use:
H. To contractors and their agents, grantees, experts, consultants, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for DHS, when necessary to accomplish an agency function related to this system of records. Individuals provided information under this routine use are subject to the same Privacy Act requirements and limitations on disclosure as are applicable to DHS officers and employees.

Compatibility Analysis:
This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to contractors and others performing work on behalf of the department to facilitate the completion of department-related functions.

DHS-AR-000487

Routine Use:

I. To approved federal, state, tribal, and local government agencies for any legally mandated purpose in accordance with their authorizing statute or law and when an approved Memorandum of Agreement or Computer Matching Agreement is in place between DHS and the entity.

Compatibility Analysis:

This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to approved federal, state, tribal, and local government agencies for any legally mandated purpose in accordance with their authorizing statute or law and when an approved Memorandum of Agreement or Computer Matching Agreement is in place between DHS and the entity. This routine use is compatible because it assists in the administration of an approved Memorandum of Agreement or Computer Matching Agreement that is in place between DHS and the entity.

Routine Use:

J. To a federal, state, tribal, or local government agency that oversees or administers federal means-tested public benefits for purposes of seeking reimbursement from sponsors for the value of benefits provided to sponsored applicants, as well as reporting on overall sponsor deeming and reimbursement efforts to appropriate administrative and oversight agencies.

Compatibility Analysis:

This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to a federal, state, tribal, or local government agency that oversees or administers federal means-tested public benefits for purposes of seeking reimbursement from sponsors for the value of benefits provided to sponsored applicants, as well as reporting on overall sponsor deeming and reimbursement efforts to appropriate administrative and oversight agencies. This routine use is compatible because it assists in the administration and enforcement of immigration laws.

Routine Use:

K. To airport operators to determine the eligibility of individuals seeking unescorted access to any Security Identification Display Area of an airport, as required by the FAA Extension, Safety, and Security Act of 2016.

Compatibility Analysis:

This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to airport operators to determine the eligibility of individuals seeking unescorted access to any Security Identification Display Area of an airport. This routine use is compatible because it assists in the administration and enforcement of immigration laws and ensuring public and national safety.

Routine Use:

L. To the Social Security Administration and other federal, state, tribal, territorial, local, governments and other authorized entities to support U.S. citizenship and immigration status verification when a DHS approved agreement is in place between DHS and the entity.

Compatibility Analysis:

This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to federal, state, tribal, territorial, local governments and other authorized entities to help verify U.S. citizenship and immigration status of benefit applicants and voter registrations. The routine use is compatible because it is necessary to enable user agencies to make decisions related to (1) determining eligibility for a federal, state, territorial, tribal, or local public benefit; (2) issuing a license or grant; (3) issuing a government credential; (4) conducting a background investigation; (5) voter verification or (6) any other lawful purpose.

Routine Use:
M. To federal, state, territorial, tribal, local, and other entities that have a legal authority to provide oversight of programs and benefits supported by SAVE for auditing of program requirements and when a DHS-approved agreement (e.g. Memorandum of Agreement (MOA) or Computer Matching Agreement (CMA)) is in place between DHS and the entity. The routine use is compatible because it enables USCIS to assist user agencies to efficiently administer their programs.

Compatibility Analysis:
This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to entities with a legal authority to audit or oversee the SAVE case verification records created by other user agencies to ensure compliance with program or benefits U.S. citizenship and immigration status eligibility requirements.

Routine Use:
N. To the news media and the public, with the approval of the Chief Privacy Officer in consultation with counsel, when there exists a legitimate public interest in the disclosure of the information, when disclosure is necessary to preserve confidence in the integrity of DHS, or when disclosure is necessary to demonstrate the accountability of DHS's officers, employees, or individuals covered by the system, except to the extent the Chief Privacy Officer determines that release of the specific information in the context of a particular case would constitute a clearly unwarranted invasion of personal privacy.

Compatibility Analysis:
This routine use allows DHS to disclose records maintained as part of the DHS/USCIS-004 Systematic Alien Verification for Entitlements (SAVE) Program system of records to the news media and the public in order to preserve the confidence of the public in the DHS, and to demonstrate the accountability of the department, its officers and employees, especially when the records pertaining to individual's U.S. citizenship and immigration status are outweighed by the public interest's in shedding light on DHS/USCIS ability to ensure and enhance SAVE.

DHS-AR-000489

Applicable OMB Control Numbers:

| Form | Form Name | OMB Control # | Expiration Date |
|------|-----------|---------------|-----------------|
| G-845 | Verification Request | 1615-0101 | 8/31/2028 |

List of Changes:

1. Clarifies and informs the public that SAVE has removed transaction charges for all state, local, tribal, and territorial government agencies that use the system. Federal agencies are still charged a fee to use SAVE.
2. Adds individuals that are U.S. citizens by birth to the categories of individuals covered by the system.
3. Updates the categories of records in the system to include collecting both full and truncated (last four digits) Social Security number (other than those collected on Form G-845, *Verification Request*), U.S. passport number, driver's license number, and information from the Social Security Administration.
4. Revises the record source categories to add SSA-60-0058 Master Files of Social Security Number Holders and Social Security Number Applications, February 20, 2025 (90 Fed. Reg. 10025), and state or other national agencies that issue or maintain driver's license information.
5. Amends the routine uses section of the System of Records Notice (SORN) to include adding Routine Use L, sharing with Social Security Administration and other federal organizations; and Routine Use M, to support sharing with federal agencies (e.g. the Department of Health and Human Services) to support auditing of federal programs administered by state, local, and tribal governments (e.g. Medicaid).
6. Includes non-substantive changes, including reorganizing of categories of records, change in the use of terms such as from "derived" citizen/citizenship to "acquired" citizen/citizenship, and spelling out of form names from the previously published notice.

DHS-AR-000490

# Exhibit 17

# UNITED STATES GOVERNMENT
# GENERAL TERMS & CONDITIONS (GT&C)
# FS Form 7600A



BUREAU OF THE
**Fiscal Service**
U.S. DEPARTMENT OF THE TREASURY

Agreement Between Federal Program Agencies for Intragovernmental Reimbursable, Buy/Sell Activity. In accordance with TFM Volume 1, Part 2, Chapter 4700, Appendix 8.

https://www.fiscal.treasury.gov/fsservices/gov/acctg/g_invoice/g_invoice_home.htm

| NEW OR MODIFIED GT&C | | |
|---|---|---|
| General Terms and Conditions (GT&C) Number | GT&C Number: A2505-070-028-078576 | |
| | Requesting Agency (Buyer) | Servicing Agency (Seller) |
| | Agency Agreement Tracking Number: CISIRWA25065 | Agency Agreement Tracking Number: RAFDHS250004 |
| | Modification Number: 0 | |
| | Status: Open | |
| **AGENCY INFORMATION** | | |
| 1. | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
| | Agency Name | Department of Homeland Security (DHS) United States Citizenship & Immigration Services (USCIS) | Social Security Administration |
| | Group Name | SAVE Program | DCRDP ODEPPIN RA |
| | Group Description | 5900 Capital Gateway Drive, Camp Springs, MD 20588 | Office of Data Exchange, Policy Publications, & International Negotiation Reimbursable Agreements |
| | Document Inheritance Indicator | Yes | Yes |
| | Agency Location Code (ALC) | 70011512 | 28040001 |
| | ALC Description | 70011512 - 070 - Department of Homeland Security - CITIZENSHIP & IMMIGRATION SVCS | 28040001 - 028 - SOCIAL SECURITY ADMINISTRATION - HQ - DIV. OF CENTRAL ACCTING OPERATIONS |
| | Subordinate Group | | DCRDP OISP RA - Office of Income Security Programs Reimbursable Agreements |
| | Cost Center | 07-20-0600-00-00-00-00 | |
| | Business Unit | Headquarters | |
| | Department ID | VER | |
| **GT&C INFORMATION** | | |

General Terms and Conditions (GT&C) Number: A2505-070-028-078576                                  Page 2

| 2. | GT&C Title | Citizenship and Immigration Status Verification Services |
|---|---|---|
| 3. | Business Application | Standard Order Processing |
| 4. | Order Originating Partner Indicator | Requesting Agency |
| 5. | Agreement Period | Start Date: 05/15/2025 | End Date: 09/30/2025 |
| 6. | Termination Days | 30 |
| 7. | Agreement Type | Multiple |
| 8. | Advance Payment Indicator | Are Advance Payments allowed for GT&C? No<br><br>*If "Yes", the Servicing Agency Advance Payment Authority Title and Citation are required upon creation of an Order against this GT&C. |
| 9. | Assisted Acquisition Indicator | Will this GT&C accommodate Assisted Acquisitions? No<br><br>*If "Yes", the Servicing Agency provides acquisition support in awarding and managing contracts on behalf of the Requesting Agency's requirements for products or services. Lines 17 & 18 below for additional detail. |

### ESTIMATED AGREEMENT AMOUNT

| 10. | Total Direct Cost Amount | $196,397.17 |
|---|---|---|
| | Total Overhead Fees and Charges Amount | $0.00 |
| | Total Estimated Amount | $196,397.17 |
| | Enforce Total Remaining Amount | Should G-Invoicing enforce the total value of orders to remain below the Total Amount on the GT&C? Yes<br><br>*If "Yes", G-Invoicing will not allow Order total to exceed the GT&C total. |

### ADDITIONAL AGREEMENT INFORMATION

| 11. | Explanation of Overhead Fees and Charges | |
|---|---|---|
| 12. | Requesting Scope | |
| 13. | Requesting Roles | |
| 14. | Servicing Roles | Refer to Information Sharing Letter Agreement. |
| 15. | Restrictions | |
| 16. | Assisted Acquisitions Small Business Credit Clause | The Servicing Agency will allocate the socio-economic credit to the Requesting Agency for any contract actions it has executed on behalf of the Requesting Agency. |
| 17. | Disputes | Disputes related to this IAA shall be resolved in accordance with instructions provided in the Treasury Financial Manual (TFM) Volume I, Part 2, Chapter 4700, Appendix 5; Intragovernmental Transaction (IGT) Guide, at http://tfm.fiscal.treasury.gov/content/tfm/v1/p2/c470.html. |
| 18. | Requesting Assisted Acquisitions | |
| 19. | Servicing Assisted Acquisitions | |
| 20. | Requesting Clauses | |

FS Form 7600A          Department of the Treasury | Bureau of the Fiscal Service          Revised March 2022

SSA-AR-0031

General Terms and Conditions (GT&C) Number: A2505-070-028-078576                                              Page 3

| 21. | Servicing Clauses | The estimated cost set forth in this agreement is based upon SSA s rough order of magnitude cost estimate to perform systems development work for this effort and is based on an estimated 40 million transactions.<br><br>Within G-Invoicing, SSA may use G-Invoicing Representative Approvers to ministerially approve agreements (GT&C and Orders). Please refer to the Approved PDF Agreement in the attachment section of this GT&C and any underlying Orders for SSA s official approval. |
|-----|-------------------|------|
| 22. | Intentionally left blank | |
| 23. | Intentionally left blank | |

### CLOSE GT&C

| 24. | | |
|-----|---|---|

### REJECT GT&C

| 25. | | |
|-----|---|---|

### PREPARER INFORMATION

| 26. | Preparer Name | Anastasia Collins |
|-----|---------------|-------------------|
| | Preparer Phone | 4109655413 |
| | Preparer Email | anastasia.collins@ssa.gov |

### AGREEMENT APPROVALS

By signing this agreement, you authorize the General Terms and Conditions as stated, and that the scope of the work can be fulfilled. By signing, you agree to periodically review the terms and conditions of the agreement and make any necessary modifications to the GT&C and any affected Order(s)

| | | Requesting Initial Approval (required) | Servicing Initial Approval (required) |
|-----|---|---|---|
| 27. | Name | KAREN TYLER | Jamillah Jackson |
| | Signature | Electronic Approval On File | Electronic Approval On File |
| | Title | MPA          (b)(6) | Representative Approver on behalf of Jessica Burns MacBride |
| | Email | | jamillah.n.jackson@ssa.gov |
| | Phone | | 4109653747 |
| | Fax | | |
| | Date Signed | 07/29/2025 | 07/30/2025 |
| | | Requesting Final Approval (required) | Servicing Final Approval (required) |
| 28. | Name | NICOLE WALKER | Jamillah Jackson |
| | Signature | Electronic Approval On File | Electronic Approval On File |
| | Title | Acting Budget Officer    (b)(6) | Representative Approver on behalf of Jessica Burns MacBride |
| | Email | | jamillah.n.jackson@ssa.gov |
| | Phone | | 4109653747 |
| | Fax | | |
| | Date Signed | 07/29/2025 | 07/30/2025 |

FS Form 7600A                Department of the Treasury | Bureau of the Fiscal Service                Revised March 2022

SSA-AR-0032

General Terms and Conditions (GT&C) Number: A2505-070-028-078576                                    Page 4

| ATTACHMENTS | | | |
|---|---|---|---|
| Name | File Alias | Updated By | Date/Time |
| SSA Signed RAFDHS_250004_7600A orc3a.pdf | | Collins, Anastasia (S) | 08/28/2025 07:55 AM |
| Legal Agreement USCIS SSA 5-15-25 fe.pdf | | Collins, Anastasia (S) | 06/24/2025 01:19 PM |
| SOW - SSA_D. AkpanO CC0708 2025 SSA cmts 7.31.25 final tracked.docx | | RAY, KALISHA (R) | 08/11/2025 01:30 PM |
| VER250028.pdf | | RAY, KALISHA (R) | 08/04/2025 10:21 AM |

FS Form 7600A                     Department of the Treasury | Bureau of the Fiscal Service                     Revised March 2022

SSA-AR-0033

Order Number: O2508-070-028-115617                                    Page 1

# UNITED STATES GOVERNMENT
# ORDER FORM
# FS FORM 7600B


BUREAU OF THE
Fiscal Service
U.S. DEPARTMENT OF THE TREASURY

Agreement Between Federal Program Agencies for Intragovernmental Reimbursable, Buy/Sell Activity.

In accordance with TFM Volume 1, Part 2, Chapter 4700, Appendix 8.

https://www.fiscal.treasury.gov/g-invoice

G-Invoicing Required Fields have an (*)

| | NEW OR MODIFIED ORDER | | |
|---|---|---|---|
| 1. | * Order Number | Order Number: O2508-070-028-115617 | |
| | | Order Modification Number: 0 | |
| 2. | Order Status | Open | |
| 3. | * General Terms & Conditions (GT&C) Number | A2505-070-028-078576 | |
| 4. | * Order Create Date | 08/08/2025 | |
| | **PARTNER INFORMATION** | | |
| 5. | * Assisted Acquisition Indicator | No | |
| 6. | * Period of Performance | Start Date: 05/15/2025 | End Date: 09/30/2025 |
| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
| 7. | * Agency Location Code (ALC) | 70011512 | 28040001 |
| 8. | * Agency Name | Department of Homeland Security - CITIZENSHIP & IMMIGRATION SVCS | SOCIAL SECURITY ADMINISTRATION - HQ - DIV. OF CENTRAL ACCTING OPERATIONS |
| 9. | Group Name | SAVE Program | DCRDP ODEPPIN RA |
| 10. | Cost Center | 07-20-0600-00-00-00-00 | |
| 11. | Business Unit | Headquarters | |
| 12. | Department ID | VER | |
| 13. | Order Tracking Number | CISIRWA25065 | RAFDHS250004 |
| 14. | Unique Entity ID | R76CSFHNTQK5 | |
| 15. | Funding Office Code (Buyer Only) | | |
| 16. | Funding Agency Code (Buyer Only) | | |

SSA-AR-0034

Order Number: O2508-070-028-115617                                                                Page 2

| 17. | Comments | | The estimated cost set forth in this agreement is based upon SSA s rough order of magnitude cost estimate to perform systems development work for this effort and is based on an estimated 40 million transactions.<br><br>Within G-Invoicing, SSA may use Representative Approvers to ministerially approve agreements. Please refer to the Approved PDF Agreement in the attachment section of this Order for SSA's official approval. |
|---|---|---|---|

## AUTHORITY INFORMATION

| 18. | *Statutory Authority Fund Type Code | Economy Act | |
|---|---|---|---|
| 19. | Statutory Authority Fund Type Title | | |
| 20. | Statutory Authority Fund Type Citation | | |
| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
| 21. | Program Authority Title | | Section 1106(b) of the Social Security Act |
| 22. | Program Authority Citation | | Social Security Act, 42 U.S.C. § 1306 |

## ADVANCE INFORMATION
### (Required by Servicing Agency if there is an advance.)

| 23. | Advance Revenue Recognition Methodology | |
|---|---|---|
| 24. | Advance Revenue Recognition Description (required if "Other") | |
| 25. | Advance Payment Authority Title | |
| 26. | Advance Payment Authority Citation | |
| 27. | Total Advance Amount | |

## DELIVERY INFORMATION
### (Requesting Agency completes this section.)

| 28. | *FOB Point | Source/Origin |
|---|---|---|
| 29. | Constructive Receipt Days | |
| 30. | Acceptance Point | Source/Origin |
| 31. | Place of Acceptance | |
| 32. | Inspection Point | |

FS Form 7600B                    Department of the Treasury | Bureau of the Fiscal Service                    Revised April 2021

SSA-AR-0035

Order Number: O2508-070-028-115617                                              Page 3

| | 33. | Place of Inspection | |
|---|---|---|---|

## ORDER BILLING

(Servicing Agency completes this section.)

| | 34. | *Billing Frequency | Quarterly |
|---|---|---|---|
| | 35. | Billing Frequency Explanation | |

## ORDER BILLING

(Requesting Agency completes this section.)

| | 36. | Priority Order Indicator | No |
|---|---|---|---|
| | 37. | Capital Planning and Investment control (CPIC) | No |

## LINE ITEM

| L1 | | *Line Number | 1 |
|---|---|---|---|
| L1 | | Order Line Status | Active |
| L1 | | *Item Code | 9999 |
| L1 | | *Item Description | verification of citizenship information. |
| L1 | | *Line Costs Unit of Measure (UOM) | DO |
| L1 | | *Unit of Measure Description | Dollars, U.S. |
| L1 | | Total Line Costs | $196,397.17 |
| L1 | | Order Line Advance Amount | |
| L1 | | Product/Service Identifier | |
| L1 | | *Capitalized Asset Indicator | False |
| L1 | | Item UID Required Indicator | No |
| L1 | | *Type of Service Requirements | Severable |

## SCHEDULE SUMMARY

| L1 | S1 | *Schedule Number | 1 |
|---|---|---|---|
| L1 | S1 | Advance Pay Indicator | No |
| L1 | S1 | *Cancel Status (schedule) | Active |
| L1 | S1 | *Schedule Unit Cost/Price | $1.00 |
| L1 | S1 | *Order Schedule Quantity | 196,397.17 |
| L1 | S1 | Order Schedule Amount | $196,397.17 |

FS Form 7600B                Department of the Treasury | Bureau of the Fiscal Service        Revised April 2021

SSA-AR-0036

Order Number: O2508-070-028-115617

Page 4

## SCHEDULE FUNDING INFORMATION

| L1 | S1 | *Agency TAS | Requesting Agency (Buyer) | | | | | | | | Servicing Agency (Seller) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | SP | ATA | AID | BPOA | EPOA | A | MAIN | SUB | SP | ATA | AID | BPOA | EPOA | A | MAIN | SUB |
| L1 | S1 | *Agency TAS | | | 070 | | | X | 5088 | 000 | | | 028 | 2025 | 2025 | | 8704 | 000 |

| L1 | S1 | *Agency Business Event Type Code | DISNGF | COLL |
|---|---|---|---|---|
| L1 | S1 | Object Class Code | 25.3 | 11.1 |
| L1 | S1 | Additional Accounting Classification | CISIRWA25065 | |
| L1 | S1 | *Description of Products and/or Services including Bona Fide Need for this order (Buyer Only) | verification of citizenship information. | |

## SLOA INFORMATION

*To capture Agency Internal Accounting

| L1 | S1 | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
|---|---|---|---|---|
| L1 | S1 | Accounting Classification Reference Number | | |
| L1 | S1 | Reimbursable Flag | | Reimbursable |
| L1 | S1 | Federal Award Identifier Number (FAIN) | | |
| L1 | S1 | Unique Record Identifier (URI) | | |
| L1 | S1 | Activity Address | | |
| L1 | S1 | Budget Line Item | | |
| L1 | S1 | Budget Fiscal Year | | 2025 |
| L1 | S1 | Security Cooperation (FMS) | | |
| L1 | S1 | Security Cooperation Implementing Agency Code | | |
| L1 | S1 | Security Cooperation Case Line Item Identifier | | |
| L1 | S1 | Sub-Allocation | | |
| L1 | S1 | Agency Accounting Identifier | | |
| L1 | S1 | Funding Center Identifier | | 4008048 |
| L1 | S1 | Cost Center Identifier | | |
| L1 | S1 | Project Identifier | | |
| L1 | S1 | Activity Identifier | | 6163 |

FS Form 7600B    Department of the Treasury | Bureau of the Fiscal Service    Revised April 2021

SSA-AR-0037

Order Number: O2508-070-028-115617                                                          Page 5

| L1 | S1 | Disbursing Identifier | | |
|----|----|----|----|----|
| L1 | S1 | Cost Element Code | | |
| L1 | S1 | Work Order Number | | |
| L1 | S1 | Functional Area | | |
| L1 | S1 | Agency Security Cooperation Case Designator | | |
| L1 | S1 | Parent Award Identifier (PAID) | | |
| L1 | S1 | Procurement Instrument Identifier (PIID) | | |
| | | SCHEDULE SHIPPING INFORMATION | | |
| | | (Requesting Agency completes this section.) | | |
| L1 | S1 | Ship To Address Identifier | | |
| L1 | S1 | Ship To Agency Title | | |
| L1 | S1 | Address 1 | | |
| L1 | S1 | Address 2 | | |
| L1 | S1 | Address 3 | | |
| L1 | S1 | Ship To City | | |
| L1 | S1 | Ship To Postal Code | | |
| L1 | S1 | Ship To State | | |
| L1 | S1 | Ship To Country | | |
| L1 | S1 | Ship To Location Description | | |
| L1 | S1 | Delivery/Shipping Information for Product Special Shipping Information | | |
| L1 | S1 | Delivery/Shipping POC Name | | |
| L1 | S1 | Delivery/Shipping Information for Product POC Title | | |
| L1 | S1 | Delivery/Shipping Information for Product POC E-mail Address | | |
| L1 | S1 | Delivery/Shipping Information for Product POC Telephone Number | | |
| | | | Requesting Agency (Buyer) | Servicing Agency (Seller) |

FS Form 7600B          Department of the Treasury | Bureau of the Fiscal Service          Revised April 2021

SSA-AR-0038

Order Number: O2508-070-028-115617                                                                    Page 6

| L1 | S1 | Agency Additional Information | | The estimated cost set forth in this agreement is based upon SSA s rough order of magnitude cost estimate to perform systems development work for this effort and is based on an estimated 40 million transactions. |
|---|---|---|---|---|

## CLOSE ORDER

| 38. | Closing Date | |
|---|---|---|
| | Closing Comments | |

## REJECT ORDER

| 39. | Reject Date | 08/29/2025 |
|---|---|---|
| | Reject Comments | Updates to line description, type of service requirements, and bona fide need fields. |

## AGENCY POINTS OF CONTACTS (POC)

| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
|---|---|---|---|
| 40. | *Agency POC Name | Kalisha Ray          (b)(6) | Anastasia Collins |
| | *Agency POC E-mail | | Anastasia.Collins@ssa.gov |
| | *Agency POC Phone No | | 410-965-5413 |
| | Agency POC Fax No | | |

## AGREEMENT APPROVALS

### Funding Official

The Funds Approving Officials, as identified by the Requesting Agency and Servicing Agency, certify that the funds are accurately cited and can be properly accounted for per the purposes set forth in the Order. The Requesting Agency Funding Official signs to obligate funds. The Servicing Agency Funding Official signs to start the work, and to bill, collect, and properly account for funds from the Requesting Agency, in accordance with the agreement.

| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
|---|---|---|---|
| 41. | *Funding Official Name | Chauncey Burrell | Jamillah Jackson |
| | *Signature | Electronic Approval On File | Electronic Approval On File |
| | Funding Official Title | Management and Program Analyst (b)(6) | Representative Approver on behalf of Susan Wilschke |
| | *Funding Official E-mail | | jamillah.n.jackson@ssa.gov |
| | *Funding Official Phone No | | 4109653747 |
| | Funding Official Fax No | | |
| | Funding Official Date Signed | 08/06/2025 | 09/04/2025 |

### Program Official

The Program Officials, as identified by the Requesting Agency and Servicing Agency, must ensure that the scope of work is properly defined and can be fulfilled for this order. The Program Official may or may not be the Contracting Officer depending on each agency's IAA business process.

| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
|---|---|---|---|
| 42. | *Program Official Name | Chirag Bhavsar | Jamillah Jackson |

FS Form 7600B                 Department of the Treasury | Bureau of the Fiscal Service                 Revised April 2021

SSA-AR-0039

Order Number: O2508-070-028-115617                                              Page 7

|  | *Signature | Electronic Approval On File | Electronic Approval On File |
|---|---|---|---|
|  | Program Official Title | Associate Chief of Operations (b)(6) | Representative Approver on behalf of Susan Wilschke |
|  | *Program Official E-mail |  | jamillah.n.jackson@ssa.gov |
|  | *Program Official Phone No |  | 4109653747 |
|  | Program Official Fax No |  |  |
|  | Program Official Date Signed | 08/07/2025 | 09/04/2025 |

### AGENCY PREPARER INFORMATION

|  |  | Requesting Agency (Buyer) | Servicing Agency (Seller) |
|---|---|---|---|
| 43. | *Name | KALISHA RAY | Anastasia Collins |
|  | *Phone No |  | 4109655413 |
|  | *E-mail Address |  | anastasia.collins@ssa.gov |

### ATTACHMENTS

| Name | File Alias | Uploaded By | Date/Time |
|---|---|---|---|
| SSA Signed RAFDHS_250004_7600B orc3a.pdf |  | (b)(6) | 08/28/2025 08:20 AM |

FS Form 7600B                     Department of the Treasury | Bureau of the Fiscal Service                     Revised April 2021

SSA-AR-0040



**U.S. Citizenship and Immigration Services**

## Statement of Work

1.  **Title of Project**
    Citizenship and Immigration Status Verification Services

2.  **Period of Performance**
    05/15/25-09/30/25

3.  **Authority**
    Reimbursement for activities related to this Statement of Work (SOW) shall be in accordance with the Economy Act, 31 U.S.C. 1535.

    DHS-USCIS is authorized to participate in this information sharing under the authority of the Immigration and Nationality Act, Section 103, 8 U.S.C. § 1103, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Section 642, codified at 8 U.S.C. § 1373(c).

    SSA will provide DHS-USCIS information in accordance with 8 U.S.C. § 1373(a) and 42 U.S.C. § 1306.

    This information sharing is also subject to requirements of:
    - The Privacy Act of 1974, 5 U.S.C. § 552a;
    - The Federal Information Security Management Act of 2014 (FISMA; Pub. L. 113-283);
    - 20 C.F.R. § 401.120; and

    other laws, rules, regulations and applicable agency policies

4.  **Parties**
    The parties to this Statement of Work are the U.S. Citizenship and Immigration Services (USCIS) also known as the "Requesting Agency," and the Social Security Administration (SSA), also known as the "Servicing Agency."

    **The Agency Point of Contacts:**

5.  **USCIS Technical Representative**
    Chirag Bhavsar,                                          (b)(6)

6.  **USCIS Program Manager**
    Brian Broderick,

7.  **SSA Point of Contact:**
    Anastasia Collins, Anastasia.collins@ssa.gov, 410-965-5413

8.  **Project Background**
    SAVE's citizenship information verification initiative seeks to provide timely

Page 1

SSA-AR-0041



U.S. Citizenship
and Immigration
Services

verification of citizenship or immigration status information in response to voter verification and other authorized inquiries from Federal, State, territorial, tribal and local government agencies seeking to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction by using a social security number, or part thereof, as a search term or method to locate additional information in DHS-USCIS accessed records regarding the individual.

DHS-USCIS seeks access to SSA information accessed through the DHS-USCIS Verification Information System (VIS) for the purpose of verifying the citizenship and immigration status for benefits and licenses, as authorized by section 103 of the Immigration and Nationality Act, Pub. L No. 82-414, as amended, 8 U.S.C. § 1103, Section 121(c)(1), Part C, of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 42 U.S.C. § 1320b-7 and note, and section 642 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, as amended, 8 U.S.C. § 1373(c).

SSA is providing assistance by sending to, and receiving from, DHS-USCIS information regarding the citizenship or immigration status, lawful or unlawful, of individuals within its records.

9. Scope
This Statement of Work, the Information Sharing Letter Agreement (dated May 15, 2025), and the applicable financial forms (i.e., FS Forms 7600A and 7600B) constitute the entire Agreement of the Parties with respect to the purposes set forth in this Agreement. SSA and DHS-USCIS have made no representations, warranties, or promises outside of this Agreement for use of data as described in this Agreement. This Agreement takes precedence over any other documents that may be in conflict with it, including any conflicting terms in any Interconnection Security Agreement ("ISA") entered into in accordance with NIST SP 800-47 governing the interconnection between information technology systems that will be utilized for the transfer of information under this Agreement.

10. SSA's Responsibilities
Under DHS-USCIS' SAVE process SSA will provide electronic response codes to USCIS' SAVE queries. These codes report which data elements sent to SSA by SAVE (name, SSN, and date of birth) match data elements in the Master Files of Social Security Number (SSN) Holders and SSN Applications ("Enumeration System"), 60-0058, system of records. The codes also report if there is a death or fraud indicator in the Enumeration System and the person's citizenship status, as recorded in the Enumeration System.

SSA will provide responses to the SAVE queries within one second or less.

SSA will inform USCIS when its systems have a scheduled outage or planned maintenance that may negatively affect service.

SSA-AR-0042



U.S. Citizenship
and Immigration
Services

SSA will safeguard any personally identifiable information (PII) obtained from SAVE agencies through the SAVE process in accordance with FISMA. SSA will limit access to this information to SSA employees involved in resolving SAVE cases, USCIS employees who administer SAVE, and individuals or entities authorized by the U.S. Government to evaluate SAVE.

**USCIS' Responsibilities**:
USCIS will only submit verification requests to SSA for authorized purposes.

USCIS will notify SSA of any pending or final changes in the statutory or regulatory requirements concerning SAVE.

USCIS will inform SSA if the SAVE system or other related connectivity system has a scheduled outage or planned maintenance that may negatively affect service.

After discovering a connectivity issue that may negatively affect SAVE service, USCIS will inform SSA.

USCIS will safeguard any PII obtained from SSA in accordance with the Privacy Act (5 U.S.C. § 552a) and FISMA. USCIS will limit access to this information to USCIS employees involved in resolving SAVE cases, USCIS employees who administer SAVE, and individuals or entities authorized by the U.S. Government to evaluate SAVE.

11. **Security Components**
SSA and USCIS will comply with FISMA, 44 U.S.C. § 3551 et seq., as amended by the Federal Information Security Modernization Act of 2014 (Pub. L. 113-283); FIPS, Mandatory Security Processing Standards 199 & 200; related OMB circulars and memoranda, including revised Circular A- 130, Management of Federal Information Resources (July 28, 2016); National Institute of Standards and Technology (NIST) directives; and the Federal Acquisition Regulations (FAR). These laws, regulations, and directives provide requirements for safeguarding Federal information systems and PII used in Federal agency business processes, as well as related reporting requirements.

FISMA requirements apply to all Federal contractors, organizations, or sources that possess or use Federal information, or that operate, use, or have access to Federal information systems on behalf of an agency. Each agency receiving information under this DSA is responsible for oversight and compliance of its contractors and agents with FISMA requirements.

12. **Deliverables**
SSA will disclose to USCIS data from the Enumeration System, 60-0058, last published in full at 90 Fed. Reg. 10025 (February 20, 2025).

USCIS will maintain information provided by SSA in its system of records entitled,

SSA-AR-0043


**U.S. Citizenship and Immigration Services**

"DHS/U.S. Citizenship and Immigration Services (USCIS)-004 Systematic Alien Verification for Entitlements (SAVE) Program System of Records."

Specified Data Elements

1. USCIS will provide SSA with the individual's name, including other names used as applicable, date of birth, and either the full or partial SSN.

2. SSA will provide USCIS a "verified" or "not verified" response and in the case of a "not verified" response, the reason for the "not verified" will be provided. In rare circumstances, SSA is unable to disclose the reason why an SSN did not verify. In these cases, SSA will provide a reason of "other".

3. SSA's responses will contain the following:

- SSN Match (True/False)
- Full SSN for all matches (when a partial SSN is provided)
- Name Match (True/False)
- Date of Birth Match (True/False)
- Citizenship/Foreign Indicator
  - Blank – Citizenship code is blank and foreign-born indicator is blank
  - Citizenship code is blank and foreign-born indicator is *
  - "A" - U.S. Citizen
  - "B" - Legal alien, eligible to work
  - "C" - Legal alien, not eligible to work
  - "D" - Other
  - "E" - Alien Student - restricted work authorized
  - "F" - Conditionally legalized alien
- Alien Registration Number (where applicable)
- Death Indicator (Yes Deceased / Not Deceased)
- Error code descriptions (transaction and record levels)

An applicant for an original SSN provides identifying information, including citizenship, upon application for that number. However, there is no obligation for the SSN holder to report a subsequent change in immigration status to SSA unless that SSN holder files a claim for benefits. Thus, some previously established citizenship information in SSA's records might not be current. There is no obligation for an individual to report to SSA a change in their citizenship or immigration status until they request a replacement card or file a claim for a Social Security benefit. While the citizenship information is accurate for SSA's program purposes, if used later for other purposes, it may not be current. SSA is not the custodian of U.S. citizenship records

For individuals whom USCIS provides only a partial SSN, SSA will search our Numident database using USCIS' supplied names and DOBs, and will only return a response record and full SSN in situations where the alpha search identifies a single individual.



U.S. Citizenship
and Immigration
Services

13.    **Place of Performance**

The performance or delivery by USCIS of the goods and/or services described herein and the timeliness of said delivery are authorized only to the extent that they are consistent with proper performance of the official duties and obligations of USCIS. If for any reason USCIS delays or fails to provide services, or discontinues the services or any part thereof, USCIS is not liable for any damages or loss resulting from such delay or for any such failure or discontinuance.

The performance or delivery by SSA of the goods and/or services described herein and the timeliness of said delivery are authorized only to the extent that they are consistent with the duties described in the Information Sharing Letter Agreement. If for any reason SSA delays or fails to provide services, or discontinues the services or any part thereof, SSA is not liable for any damages or loss resulting from such delay or for any such failure or discontinuance.

Under DHS-USCIS' SAVE process SSA will provide electronic response codes to USCIS' SAVE queries. These codes report which data elements sent to SSA by SAVE (name, SSN, and date of birth) match data elements in the Enumeration System. The codes also report if there is a death or fraud indicator in the Enumeration System and the person's citizenship status, as recorded in the Enumeration System.

This SOW shall be effective upon the signature of the last signatory hereto and shall continue until the end of the Period of Performance described in Section 2.

14.    **Billings and Accompanying Documentation**
SSA will bill USCIS for services rendered on a quarterly basis using the Treasury G-Invoicing System and collect said charges via Intra-governmental Payment and Collection (IPAC).
Accompanying documentation includes the LETTER AGREEMENT PROVIDING FOR INFORMATION SHARING BETWEEN THE DEPARTMENT OF HOMELAND SECURITY (DHS), U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS) AND THE SOCIAL SECURITY ADMINISTRATION (SSA) REGARDING CITIZENSHIP, and the FS Forms 7600A and 7600B.

15.    **Modification**
Modifications to this Agreement must be in writing and agreed to by the parties.
This Agreement may be terminated by either party upon 30 days advance written notice.
If legislation is enacted that affects SAVE functions or provides for new functionality, the parties agree to modify this Agreement as appropriate to cover any new provisions.

16.    **Dispute Resolution**
Disagreements on the interpretation of the provisions of this SOW that cannot be resolved between USCIS and the SSA point of contact should be provided in writing to the authorized officials at both agencies for resolution. If settlement cannot be reached at

SSA-AR-0045



**U.S. Citizenship
and Immigration
Services**

this level, the disagreement will be elevated to the next level in accordance with DHS-USCIS procedures for final resolution.

17.    **Termination**

This Agreement may be terminated by either party upon 30 days advance written notice **or terminated in accordance with the provisions of** this Agreement.

SSA-AR-0046

REQUISITION — MATERIALS-SUPPLIES-EQUIPMENT

SEE INSTRUCTIONS ON REVERSE

| 1. NUMBER |
|---|
| VER250028 |
| 2. DATE |
| 21-MAY-2025 |
| 3. ACTIVITY SYMBOL |
| See Attachment A |

**4. TO: NAME AND ADDRESS -- PROCUREMENT SECTION (OR STOREROOM)**
USCIS
BURLINGTON CONTRACTING OFFICE
70 KIMBALL AVE
SOUTH BURLINGTON, VT 05403

**5. FROM: NAME AND ADDRESS -- REQUISITIONER**
DHS-USCIS-VERIFICATION DIVISION

(b)(6)

5900 CAPITAL GATEWAY DRIVE, MAIL STOP 2600
CAMP SPRINGS, MD 20529-0009
US

| STOCK NUMBER | DESCRIPTION OF ARTICLE (MAKE, MODEL, TYPE, SIZE, COLOR, MFGR., ETC) | QUANTITY | UNIT | COST | | ACTION CODE |
|---|---|---|---|---|---|---|
| | | | | UNIT PRICE | AMOUNT | |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| CLIN 0001 | INITIAL DEVELOPMENT COSTS AND TRANSACTIONS | 1 | EA | 196,397 17 | 196,397 17 | |

**Justification:**

TO FUND THE SOCIAL SECURITY ADMINISTRATION (SSA) SAVE OPTIMIZATION INITIAL DEVELOPMENT COSTS AND QUERIES. PROPOSED POP: 5/23/58-5/22/26

**Recommended Vendor:**

No Recommended Vendor

| 13. SIGNATURE OF APPROVING OFFICIAL | Date | 14. TITLE OF APPROVING OFFICIAL | | |
|---|---|---|---|---|
| F L OWENS | 21-MAY-2025 | SUPVY MGMT & PROG ANAL | | |
| 24. SIGNATURE OF FUNDING OFFICIAL | Date | 25. TITLE OF FUNDING OFFICIAL | 15. | |
| R A COX | 21-MAY-2025 | MGMT & PROG ANAL | TOTAL | 196,397 17 |

| 16. KEY TO ACTION CODE | | | | PROCUREMENT SECTION (OR STOREROOM) | | |
|---|---|---|---|---|---|---|
| S | SUBSTITUTE ITEM | 2 | CANCELLED--NOT STOCKED | 17. DATE RECEIVED | 19. | PURCHASE ORDER |
| B | BACK ORDERED | 3 | CANCELLED--NOT ABLE TO IDENTIFY | | DATE | NUMBER |
| D | PURCHASED FOR DIRECT SHIPMENT | 0 | OTHER -- AS INDICATED | 18. APPROVED | | |
| 1 | CANCELLED--STOCK EXHAUSTED | | | | | |

I CERTIFY THAT THE ABOVE ARTICLES -- COLUMNS 3, 9 AND 12 - HAVE BEEN RECEIVED.

| 20. LOCATION | 21. DATE | 22. SIGNATURE | 23. TITLE |
|---|---|---|---|
| | | | |

United States Department Of Homeland Security
Us Citizenship & Immigration Svcs
FORM G-514 (REV. 8-1-5

Page 1 of 3

SSA-AR-0047

## INSTRUCTIONS

### Use

Use Form G-514 - continued on Form G-514.1 -- To requisition materials, supplies, and equipment through the Procurement section of the Regional (or Central) Office; or from a Service-operated Storeroom.

### Copies - Distribution

Prepared by requistioner in an original and two copies, sending original (white) and Copy 1 (pink) to: Procurement Section (or Storeroom), and retaining Copy 2 (green). Procurement Section (or Storeroom) shall, as a rule, pack Copy 1 with shipment, or return it to requisitioner with appropriate advice.

### Entries

#### By requisitioner:

1. Number consecutively, beginning with number one each fiscal year, and prefix with alphabetic location symbol and last two digits of fiscal year (e.g., MIA-58-1, MIA-58-2, MIA-58-3, etc., MIA-59-1, MIA-59-2, MIA-59-3, etc.). Number continuation sheets with numerical suffix(e.g., MIA-58-1.1, MIA-58-1.2, MIA-58-1.3, etc).
2. Enter date of preparation.
3. Enter numerical symbol of activity which will benefit from use of articles.
4. Enter name and address of Procurement section (or Storeroom)(e.g., Procurement Section, Immigration and Naturalization Service, Richmond, VA).
5. Enter full name, title, and address so that shipping label may be prepared without reference to address directory. If consignee is other than requisitioner, enter shipping instructions under Entry 7.
6. Enter form numbers; stock number shown in "Stores Stock Catalog" and "Federal Supply Schedules."
7. Enter full description of article; attach sketches, plans, samples, etc. If consignee is other than requisitioner, enter shipping instructions.
8. Enter issue - unit quantity.
9. Enter unit of issue (e.g., each, doz., C, gross, ream, M; lb., cwt, ton: bag, ball, bbl., bot., box, can, pkg., roll, tube; pt., qt., gal., etc.)
13. Signature of approving official.
14. Enter title of approving official.
24. Signature of funding official.
25. Enter title of funding official.

#### By Procurement Section ( or Storeroom):

10. Enter unit price.
11. Enter product of Entries 8 and 10.
12. Enter symbol of action taken. See Entry 16.
15. Enter total of amounts under Entry 11.
17. Enter date requisition received.
18. Signature of approving officer.
19. Enter, if issued, date and number of purchase order.

#### By consignee:

20. Enter address - city and state.
21. Enter date shipment received.
22. Signature of employee authorized to accept delivery.
23. Enter title of receiving employee.

United States Department Of Homeland Security
Us Citizenship & Immigration Svcs
    FORM G-514 (REV. 8-1-5                                    Page    2    of    3

SSA-AR-0048

# Form G-514

## REQUISITION - MATERIALS-SUPPLIES-EQUIPMENT
### Activity Symbols
### ATTACHMENT A

REQUISITION NUMBER:    **VER250028**

| Item No. | Contract No. | Task Ord No. | Project | Task | Fund | Program | Organization | Object | UDF | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | SSASV01 | 000 | EX | 11-04-00-000 | 07-20-0000-00-00-00-00 | GE-25-11-00 | 000000 | $196,397.17 |

APPROPRIATION SYMBOL CROSSWALK:

| FUND | FY | TAS | TITLE | AMOUNT |
|---|---|---|---|---|
| EX | 2025 | 70X5088 | Immigration Examination Fees, Immigration Services, Department of Homeland Security | 196,397.17 |

United States Department Of Homeland Security

Us Citizenship & Immigration Svcs

FORM G-514 (REV. 8-1-5)                                Page   3   of   3

# Exhibit 18

# UNITED STATES GOVERNMENT
# GENERAL TERMS & CONDITIONS (GT&C)
# FS Form 7600A



**BUREAU OF THE Fiscal Service**
U.S. DEPARTMENT OF THE TREASURY

Agreement Between Federal Program Agencies for Intragovernmental Reimbursable, Buy/Sell Activity. In accordance with TFM Volume 1, Part 2, Chapter 4700, Appendix 8.

https://www.fiscal.treasury.gov/fsservices/gov/acctg/g_invoice/g_invoice_home.htm

| NEW OR MODIFIED GT&C | | |
|---|---|---|
| General Terms and Conditions (GT&C) Number | GT&C Number: A2505-070-028-078576 | |
| | Requesting Agency (Buyer) | Servicing Agency (Seller) |
| | Agency Agreement Tracking Number: CISIRWA25065 | Agency Agreement Tracking Number: RAFDHS250004 |
| | Modification Number: 0 | |
| | Status: Open | |

| AGENCY INFORMATION | | | |
|---|---|---|---|
| 1. | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
| | Agency Name | Department of Homeland Security (DHS) United States Citizenship & Immigration Services (USCIS) | Social Security Administration |
| | Group Name | SAVE Program | DCRDP ODEPPIN RA |
| | Group Description | 5900 Capital Gateway Drive, Camp Springs, MD 20588 | Office of Data Exchange, Policy Publications, & International Negotiation Reimbursable Agreements |
| | Document Inheritance Indicator | Yes | Yes |
| | Agency Location Code (ALC) | 70011512 | 28040001 |
| | ALC Description | 70011512 - 070 - Department of Homeland Security - CITIZENSHIP & IMMIGRATION SVCS | 28040001 - 028 - SOCIAL SECURITY ADMINISTRATION - HQ - DIV. OF CENTRAL ACCTING OPERATIONS |
| | Subordinate Group | | DCRDP OISP RA - Office of Income Security Programs Reimbursable Agreements |
| | Cost Center | 07-20-0600-00-00-00-00 | |
| | Business Unit | Headquarters | |
| | Department ID | VER | |

| GT&C INFORMATION | | |
|---|---|---|

SSA-AR-0089

General Terms and Conditions (GT&C) Number: A2505-070-028-078576                                    Page 2

| 2. | GT&C Title | Citizenship and Immigration Status Verification Services |
|---|---|---|
| 3. | Business Application | Standard Order Processing |
| 4. | Order Originating Partner Indicator | Requesting Agency |
| 5. | Agreement Period | Start Date: 05/15/2025 | End Date: 09/30/2025 |
| 6. | Termination Days | 30 |
| 7. | Agreement Type | Multiple |
| 8. | Advance Payment Indicator | Are Advance Payments allowed for GT&C? No<br><br>*If "Yes", the Servicing Agency Advance Payment Authority Title and Citation are required upon creation of an Order against this GT&C. |
| 9. | Assisted Acquisition Indicator | Will this GT&C accommodate Assisted Acquisitions? No<br><br>*If "Yes", the Servicing Agency provides acquisition support in awarding and managing contracts on behalf of the Requesting Agency's requirements for products or services. Lines 17 & 18 below for additional detail. |

## ESTIMATED AGREEMENT AMOUNT

| 10. | Total Direct Cost Amount | $196,397.17 |
|---|---|---|
| | Total Overhead Fees and Charges Amount | $0.00 |
| | Total Estimated Amount | $196,397.17 |
| | Enforce Total Remaining Amount | Should G-Invoicing enforce the total value of orders to remain below the Total Amount on the GT&C? Yes<br><br>*If "Yes", G-Invoicing will not allow Order total to exceed the GT&C total. |

## ADDITIONAL AGREEMENT INFORMATION

| 11. | Explanation of Overhead Fees and Charges | |
|---|---|---|
| 12. | Requesting Scope | |
| 13. | Requesting Roles | |
| 14. | Servicing Roles | Refer to Information Sharing Letter Agreement. |
| 15. | Restrictions | |
| 16. | Assisted Acquisitions Small Business Credit Clause | The Servicing Agency will allocate the socio-economic credit to the Requesting Agency for any contract actions it has executed on behalf of the Requesting Agency. |
| 17. | Disputes | Disputes related to this IAA shall be resolved in accordance with instructions provided in the Treasury Financial Manual (TFM) Volume I, Part 2, Chapter 4700, Appendix 5; Intragovernmental Transaction (IGT) Guide, at http://tfm.fiscal.treasury.gov/content/tfm/v1/p2/c470.html. |
| 18. | Requesting Assisted Acquisitions | |
| 19. | Servicing Assisted Acquisitions | |
| 20. | Requesting Clauses | |

FS Form 7600A          Department of the Treasury | Bureau of the Fiscal Service          Revised March 2022

SSA-AR-0090

General Terms and Conditions (GT&C) Number: A2505-070-028-078576                                      Page 3

| 21. | Servicing Clauses | The estimated cost set forth in this agreement is based upon SSA s rough order of magnitude cost estimate to perform systems development work for this effort and is based on an estimated 40 million transactions.<br><br>Within G-Invoicing, SSA may use G-Invoicing Representative Approvers to ministerially approve agreements (GT&C and Orders). Please refer to the Approved PDF Agreement in the attachment section of this GT&C and any underlying Orders for SSA s official approval. |
|-----|-------------------|---|
| 22. | Intentionally left blank | |
| 23. | Intentionally left blank | |

## CLOSE GT&C

| 24. | | |
|-----|-|-|

## REJECT GT&C

| 25. | | |
|-----|-|-|

## PREPARER INFORMATION

| 26. | Preparer Name | Anastasia Collins |
|-----|---------------|-------------------|
| | Preparer Phone | 4109655413 |
| | Preparer Email | anastasia.collins@ssa.gov |

## AGREEMENT APPROVALS

By signing this agreement, you authorize the General Terms and Conditions as stated, and that the scope of the work can be fulfilled. By signing, you agree to periodically review the terms and conditions of the agreement and make any necessary modifications to the GT&C and any affected Order(s)

| | | Requesting Initial Approval (required) | Servicing Initial Approval (required) |
|-----|-------------|-----------------------------------------|----------------------------------------|
| 27. | Name | KAREN TYLER | Jamillah Jackson |
| | Signature | Electronic Approval On File | Electronic Approval On File |
| | Title | MPA            (b)(6) | Representative Approver on behalf of Jessica Burns MacBride |
| | Email | | jamillah.n.jackson@ssa.gov |
| | Phone | | 4109653747 |
| | Fax | | |
| | Date Signed | 07/29/2025 | 07/30/2025 |
| | | Requesting Final Approval (required) | Servicing Final Approval (required) |
| 28. | Name | NICOLE WALKER | Jamillah Jackson |
| | Signature | Electronic Approval On File | Electronic Approval On File |
| | Title | Acting Budget Officer     (b)(6) | Representative Approver on behalf of Jessica Burns MacBride |
| | Email | | jamillah.n.jackson@ssa.gov |
| | Phone | | 4109653747 |
| | Fax | | |
| | Date Signed | 07/29/2025 | 07/30/2025 |

FS Form 7600A          Department of the Treasury | Bureau of the Fiscal Service          Revised March 2022

SSA-AR-0091

General Terms and Conditions (GT&C) Number: A2505-070-028-078576                                    Page 4

| ATTACHMENTS | | | |
|---|---|---|---|
| Name | File Alias | Updated By | Date/Time |
| SSA Signed RAFDHS_250004_7600A orc3a.pdf | | Collins, Anastasia (S) | 08/28/2025 07:55 AM |
| Legal Agreement USCIS SSA 5-15-25 fe.pdf | | Collins, Anastasia (S) | 06/24/2025 01:19 PM |
| SOW - SSA_D. AkpanO CC0708 2025 SSA cmts 7.31.25 final tracked.docx | | RAY, KALISHA (R) | 08/11/2025 01:30 PM |
| VER250028.pdf | | RAY, KALISHA (R) | 08/04/2025 10:21 AM |

FS Form 7600A                Department of the Treasury | Bureau of the Fiscal Service                Revised March 2022

SSA-AR-0092

Order Number: O2508-070-028-115617                                                                    Page 1

# UNITED STATES GOVERNMENT
# ORDER FORM
# FS FORM 7600B



BUREAU OF THE
**Fiscal Service**
U.S. DEPARTMENT OF THE TREASURY

Agreement Between Federal Program Agencies for Intragovernmental Reimbursable, Buy/Sell Activity.

In accordance with TFM Volume 1, Part 2, Chapter 4700, Appendix 8.

https://www.fiscal.treasury.gov/g-invoice

G-Invoicing Required Fields have an (*)

| | | NEW OR MODIFIED ORDER | |
|---|---|---|---|
| 1. | * Order Number | Order Number: O2508-070-028-115617 | |
| | | Order Modification Number: 0 | |
| 2. | Order Status | Open | |
| 3. | * General Terms & Conditions (GT&C) Number | A2505-070-028-078576 | |
| 4. | * Order Create Date | 08/08/2025 | |
| | | **PARTNER INFORMATION** | |
| 5. | * Assisted Acquisition Indicator | No | |
| 6. | * Period of Performance | Start Date: 05/15/2025 | End Date: 09/30/2025 |
| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
| 7. | * Agency Location Code (ALC) | 70011512 | 28040001 |
| 8. | * Agency Name | Department of Homeland Security - CITIZENSHIP & IMMIGRATION SVCS | SOCIAL SECURITY ADMINISTRATION - HQ - DIV. OF CENTRAL ACCTING OPERATIONS |
| 9. | Group Name | SAVE Program | DCRDP ODEPPIN RA |
| 10. | Cost Center | 07-20-0600-00-00-00-00 | |
| 11. | Business Unit | Headquarters | |
| 12. | Department ID | VER | |
| 13. | Order Tracking Number | CISIRWA25065 | RAFDHS250004 |
| 14. | Unique Entity ID | R76CSFHNTQK5 | |
| 15. | Funding Office Code (Buyer Only) | | |
| 16. | Funding Agency Code (Buyer Only) | | |

FS Form 7600B                    Department of the Treasury | Bureau of the Fiscal Service                    Revised April 2021

SSA-AR-0093

| 17. | Comments | | The estimated cost set forth in this agreement is based upon SSA s rough order of magnitude cost estimate to perform systems development work for this effort and is based on an estimated 40 million transactions.<br><br>Within G-Invoicing, SSA may use Representative Approvers to ministerially approve agreements. Please refer to the Approved PDF Agreement in the attachment section of this Order for SSA's official approval. |
|---|---|---|---|

## AUTHORITY INFORMATION

| 18. | *Statutory Authority Fund Type Code | Economy Act | |
|---|---|---|---|
| 19. | Statutory Authority Fund Type Title | | |
| 20. | Statutory Authority Fund Type Citation | | |
| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
| 21. | Program Authority Title | | Section 1106(b) of the Social Security Act |
| 22. | Program Authority Citation | | Social Security Act, 42 U.S.C. § 1306 |

## ADVANCE INFORMATION

(Required by Servicing Agency if there is an advance.)

| 23. | Advance Revenue Recognition Methodology | |
|---|---|---|
| 24. | Advance Revenue Recognition Description (required if "Other") | |
| 25. | Advance Payment Authority Title | |
| 26. | Advance Payment Authority Citation | |
| 27. | Total Advance Amount | |

## DELIVERY INFORMATION

(Requesting Agency completes this section.)

| 28. | *FOB Point | Source/Origin |
|---|---|---|
| 29. | Constructive Receipt Days | |
| 30. | Acceptance Point | Source/Origin |
| 31. | Place of Acceptance | |
| 32. | Inspection Point | |

SSA-AR-0094

Order Number: O2508-070-028-115617

Page 3

| | | | |
|---|---|---|---|
| 33. | | Place of Inspection | |

### ORDER BILLING
(Servicing Agency completes this section.)

| | | | |
|---|---|---|---|
| 34. | | *Billing Frequency | Quarterly |
| 35. | | Billing Frequency Explanation | |

### ORDER BILLING
(Requesting Agency completes this section.)

| | | | |
|---|---|---|---|
| 36. | | Priority Order Indicator | No |
| 37. | | Capital Planning and Investment control (CPIC) | No |

### LINE ITEM

| | | | |
|---|---|---|---|
| L1 | | *Line Number | 1 |
| L1 | | Order Line Status | Active |
| L1 | | *Item Code | 9999 |
| L1 | | *Item Description | verification of citizenship information. |
| L1 | | *Line Costs Unit of Measure (UOM) | DO |
| L1 | | *Unit of Measure Description | Dollars, U.S. |
| L1 | | Total Line Costs | $196,397.17 |
| L1 | | Order Line Advance Amount | |
| L1 | | Product/Service Identifier | |
| L1 | | *Capitalized Asset Indicator | False |
| L1 | | Item UID Required Indicator | No |
| L1 | | *Type of Service Requirements | Severable |

### SCHEDULE SUMMARY

| | | | |
|---|---|---|---|
| L1 | S1 | *Schedule Number | 1 |
| L1 | S1 | Advance Pay Indicator | No |
| L1 | S1 | *Cancel Status (schedule) | Active |
| L1 | S1 | *Schedule Unit Cost/Price | $1.00 |
| L1 | S1 | *Order Schedule Quantity | 196,397.17 |
| L1 | S1 | Order Schedule Amount | $196,397.17 |

FS Form 7600B    Department of the Treasury | Bureau of the Fiscal Service    Revised April 2021

SSA-AR-0095

Order Number: O2508-070-028-115617

Page 4

## SCHEDULE FUNDING INFORMATION

| | | | Requesting Agency (Buyer) | | | | | | | | Servicing Agency (Seller) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | SP | ATA | AID | BPOA | EPOA | A | MAIN | SUB | SP | ATA | AID | BPOA | EPOA | A | MAIN | SUB |
| L1 | S1 | *Agency TAS | | | 070 | | | X | 5088 | 000 | | | 028 | 2025 | 2025 | | 8704 | 000 |

| L1 | S1 | *Agency Business Event Type Code | DISNGF | COLL |
|---|---|---|---|---|
| L1 | S1 | Object Class Code | 25.3 | 11.1 |
| L1 | S1 | Additional Accounting Classification | CISIRWA25065 | |
| L1 | S1 | *Description of Products and/or Services including Bona Fide Need for this order (Buyer Only) | verification of citizenship information. | |

## SLOA INFORMATION

*To capture Agency Internal Accounting

| | | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
|---|---|---|---|---|
| L1 | S1 | Accounting Classification Reference Number | | |
| L1 | S1 | Reimbursable Flag | | Reimbursable |
| L1 | S1 | Federal Award Identifier Number (FAIN) | | |
| L1 | S1 | Unique Record Identifier (URI) | | |
| L1 | S1 | Activity Address | | |
| L1 | S1 | Budget Line Item | | |
| L1 | S1 | Budget Fiscal Year | | 2025 |
| L1 | S1 | Security Cooperation (FMS) | | |
| L1 | S1 | Security Cooperation Implementing Agency Code | | |
| L1 | S1 | Security Cooperation Case Line Item Identifier | | |
| L1 | S1 | Sub-Allocation | | |
| L1 | S1 | Agency Accounting Identifier | | |
| L1 | S1 | Funding Center Identifier | | 4008048 |
| L1 | S1 | Cost Center Identifier | | |
| L1 | S1 | Project Identifier | | |
| L1 | S1 | Activity Identifier | | 6163 |

FS Form 7600B

Department of the Treasury | Bureau of the Fiscal Service

Revised April 2021

SSA-AR-0096

Order Number: O2508-070-028-115617                                                                  Page 5

| L1 | S1 | Disbursing Identifier | | |
|----|----|---|---|---|
| L1 | S1 | Cost Element Code | | |
| L1 | S1 | Work Order Number | | |
| L1 | S1 | Functional Area | | |
| L1 | S1 | Agency Security Cooperation Case Designator | | |
| L1 | S1 | Parent Award Identifier (PAID) | | |
| L1 | S1 | Procurement Instrument Identifier (PIID) | | |
| | | **SCHEDULE SHIPPING INFORMATION** | | |
| | | *(Requesting Agency completes this section.)* | | |
| L1 | S1 | Ship To Address Identifier | | |
| L1 | S1 | Ship To Agency Title | | |
| L1 | S1 | Address 1 | | |
| L1 | S1 | Address 2 | | |
| L1 | S1 | Address 3 | | |
| L1 | S1 | Ship To City | | |
| L1 | S1 | Ship To Postal Code | | |
| L1 | S1 | Ship To State | | |
| L1 | S1 | Ship To Country | | |
| L1 | S1 | Ship To Location Description | | |
| L1 | S1 | Delivery/Shipping Information for Product Special Shipping Information | | |
| L1 | S1 | Delivery/Shipping POC Name | | |
| L1 | S1 | Delivery/Shipping Information for Product POC Title | | |
| L1 | S1 | Delivery/Shipping Information for Product POC E-mail Address | | |
| L1 | S1 | Delivery/Shipping Information for Product POC Telephone Number | | |
| | | | Requesting Agency (Buyer) | Servicing Agency (Seller) |

FS Form 7600B                    Department of the Treasury | Bureau of the Fiscal Service                    Revised April 2021

SSA-AR-0097

Order Number: O2508-070-028-115617

Page 6

| L1 | S1 | Agency Additional Information | | The estimated cost set forth in this agreement is based upon SSA s rough order of magnitude cost estimate to perform systems development work for this effort and is based on an estimated 40 million transactions. |

### CLOSE ORDER

| 38. | Closing Date | |
| | Closing Comments | |

### REJECT ORDER

| 39. | Reject Date | 08/29/2025 |
| | Reject Comments | Updates to line description, type of service requirements, and bona fide need fields. |

### AGENCY POINTS OF CONTACTS (POC)

| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
|---|---|---|---|
| 40. | *Agency POC Name | Kalisha Ray        (b)(6) | Anastasia Collins |
| | *Agency POC E-mail | | Anastasia.Collins@ssa.gov |
| | *Agency POC Phone No | | 410-965-5413 |
| | Agency POC Fax No | | |

### AGREEMENT APPROVALS

#### Funding Official

The Funds Approving Officials, as identified by the Requesting Agency and Servicing Agency, certify that the funds are accurately cited and can be properly accounted for per the purposes set forth in the Order. The Requesting Agency Funding Official signs to obligate funds. The Servicing Agency Funding Official signs to start the work, and to bill, collect, and properly account for funds from the Requesting Agency, in accordance with the agreement.

| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
|---|---|---|---|
| 41. | *Funding Official Name | Chauncey Burrell | Jamillah Jackson |
| | *Signature | Electronic Approval On File | Electronic Approval On File |
| | Funding Official Title | Management and Program Analyst (b)(6) | Representative Approver on behalf of Susan Wilschke |
| | *Funding Official E-mail | | jamillah.n.jackson@ssa.gov |
| | *Funding Official Phone No | | 4109653747 |
| | Funding Official Fax No | | |
| | Funding Official Date Signed | 08/06/2025 | 09/04/2025 |

#### Program Official

The Program Officials, as identified by the Requesting Agency and Servicing Agency, must ensure that the scope of work is properly defined and can be fulfilled for this order. The Program Official may or may not be the Contracting Officer depending on each agency's IAA business process.

| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
|---|---|---|---|
| 42. | *Program Official Name | Chirag Bhavsar | Jamillah Jackson |

FS Form 7600B          Department of the Treasury | Bureau of the Fiscal Service          Revised April 2021

SSA-AR-0098

Order Number: O2508-070-028-115617

Page 7

| | | | |
|---|---|---|---|
| | *Signature | Electronic Approval On File | Electronic Approval On File |
| | Program Official Title | Associate Chief of Operations  (b)(6) | Representative Approver on behalf of Susan Wilschke |
| | *Program Official E-mail | | jamillah.n.jackson@ssa.gov |
| | *Program Official Phone No | | 4109653747 |
| | Program Official Fax No | | |
| | Program Official Date Signed | 08/07/2025 | 09/04/2025 |

| AGENCY PREPARER INFORMATION | | | |
|---|---|---|---|
| | | Requesting Agency (Buyer) | Servicing Agency (Seller) |
| 43. | *Name | KALISHA RAY | Anastasia Collins |
| | *Phone No | | 4109655413 |
| | *E-mail Address | | anastasia.collins@ssa.gov |

| ATTACHMENTS | | | |
|---|---|---|---|
| Name | File Alias | Uploaded By | Date/Time |
| SSA Signed RAFDHS_250004_7600B orc3a.pdf | | (b)(6) | 08/28/2025 08:20 AM |

FS Form 7600B                    Department of the Treasury | Bureau of the Fiscal Service                    Revised April 2021

SSA-AR-0099



**U.S. Citizenship and Immigration Services**

## Statement of Work

1. **Title of Project**
   Citizenship and Immigration Status Verification Services

2. **Period of Performance**
   05/15/25-09/30/25

3. **Authority**
   Reimbursement for activities related to this Statement of Work (SOW) shall be in accordance with the Economy Act, 31 U.S.C. 1535.

   DHS-USCIS is authorized to participate in this information sharing under the authority of the Immigration and Nationality Act, Section 103, 8 U.S.C. § 1103, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Section 642, codified at 8 U.S.C. § 1373(c).

   SSA will provide DHS-USCIS information in accordance with 8 U.S.C. § 1373(a) and 42 U.S.C. § 1306.

   This information sharing is also subject to requirements of:
   - The Privacy Act of 1974, 5 U.S.C. § 552a;
   - The Federal Information Security Management Act of 2014 (FISMA; Pub. L. 113-283);
   - 20 C.F.R. § 401.120; and
   other laws, rules, regulations and applicable agency policies

4. **Parties**
   The parties to this Statement of Work are the U.S. Citizenship and Immigration Services (USCIS) also known as the "Requesting Agency," and the Social Security Administration (SSA), also known as the "Servicing Agency."

   **The Agency Point of Contacts:**

5. **USCIS Technical Representative**
   Chirag Bhavsar,                                    (b)(6)

6. **USCIS Program Manager**
   Brian Broderick,

7. **SSA Point of Contact:**
   Anastasia Collins, Anastasia.collins@ssa.gov, 410-965-5413

8. **Project Background**
   SAVE's citizenship information verification initiative seeks to provide timely

Page 1

SSA-AR-0100



**U.S. Citizenship and Immigration Services**

verification of citizenship or immigration status information in response to voter verification and other authorized inquiries from Federal, State, territorial, tribal and local government agencies seeking to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction by using a social security number, or part thereof, as a search term or method to locate additional information in DHS-USCIS accessed records regarding the individual.

DHS-USCIS seeks access to SSA information accessed through the DHS-USCIS Verification Information System (VIS) for the purpose of verifying the citizenship and immigration status for benefits and licenses, as authorized by section 103 of the Immigration and Nationality Act, Pub. L No. 82-414, as amended, 8 U.S.C. § 1103, Section 121(c)(1), Part C, of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 42 U.S.C. § 1320b-7 and note, and section 642 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, as amended, 8 U.S.C. § 1373(c).

SSA is providing assistance by sending to, and receiving from, DHS-USCIS information regarding the citizenship or immigration status, lawful or unlawful, of individuals within its records.

9. **Scope**

This Statement of Work, the Information Sharing Letter Agreement (dated May 15, 2025), and the applicable financial forms (i.e., FS Forms 7600A and 7600B) constitute the entire Agreement of the Parties with respect to the purposes set forth in this Agreement. SSA and DHS-USCIS have made no representations, warranties, or promises outside of this Agreement for use of data as described in this Agreement. This Agreement takes precedence over any other documents that may be in conflict with it, including any conflicting terms in any Interconnection Security Agreement ("ISA") entered into in accordance with NIST SP 800-47 governing the interconnection between information technology systems that will be utilized for the transfer of information under this Agreement.

10. **SSA's Responsibilities**

Under DHS-USCIS' SAVE process SSA will provide electronic response codes to USCIS' SAVE queries. These codes report which data elements sent to SSA by SAVE (name, SSN, and date of birth) match data elements in the Master Files of Social Security Number (SSN) Holders and SSN Applications ("Enumeration System"), 60-0058, system of records. The codes also report if there is a death or fraud indicator in the Enumeration System and the person's citizenship status, as recorded in the Enumeration System.

SSA will provide responses to the SAVE queries within one second or less.

SSA will inform USCIS when its systems have a scheduled outage or planned maintenance that may negatively affect service.

SSA-AR-0101



**U.S. Citizenship and Immigration Services**

SSA will safeguard any personally identifiable information (PII) obtained from SAVE agencies through the SAVE process in accordance with FISMA. SSA will limit access to this information to SSA employees involved in resolving SAVE cases, USCIS employees who administer SAVE, and individuals or entities authorized by the U.S. Government to evaluate SAVE.

**USCIS' Responsibilities:**
USCIS will only submit verification requests to SSA for authorized purposes.

USCIS will notify SSA of any pending or final changes in the statutory or regulatory requirements concerning SAVE.

USCIS will inform SSA if the SAVE system or other related connectivity system has a scheduled outage or planned maintenance that may negatively affect service.

After discovering a connectivity issue that may negatively affect SAVE service, USCIS will inform SSA.

USCIS will safeguard any PII obtained from SSA in accordance with the Privacy Act (5 U.S.C. § 552a) and FISMA. USCIS will limit access to this information to USCIS employees involved in resolving SAVE cases, USCIS employees who administer SAVE, and individuals or entities authorized by the U.S. Government to evaluate SAVE.

11. **Security Components**
SSA and USCIS will comply with FISMA, 44 U.S.C. § 3551 et seq., as amended by the Federal Information Security Modernization Act of 2014 (Pub. L. 113-283); FIPS, Mandatory Security Processing Standards 199 & 200; related OMB circulars and memoranda, including revised Circular A-130, Management of Federal Information Resources (July 28, 2016); National Institute of Standards and Technology (NIST) directives; and the Federal Acquisition Regulations (FAR). These laws, regulations, and directives provide requirements for safeguarding Federal information systems and PII used in Federal agency business processes, as well as related reporting requirements.

FISMA requirements apply to all Federal contractors, organizations, or sources that possess or use Federal information, or that operate, use, or have access to Federal information systems on behalf of an agency. Each agency receiving information under this DSA is responsible for oversight and compliance of its contractors and agents with FISMA requirements.

12. **Deliverables**
SSA will disclose to USCIS data from the Enumeration System, 60-0058, last published in full at 90 Fed. Reg. 10025 (February 20, 2025).

USCIS will maintain information provided by SSA in its system of records entitled,

SSA-AR-0102



**U.S. Citizenship
and Immigration
Services**

"DHS/U.S. Citizenship and Immigration Services (USCIS)-004 Systematic Alien Verification for Entitlements (SAVE) Program System of Records."

Specified Data Elements

1. USCIS will provide SSA with the individual's name, including other names used as applicable, date of birth, and either the full or partial SSN.

2. SSA will provide USCIS a "verified" or "not verified" response and in the case of a "not verified" response, the reason for the "not verified" will be provided. In rare circumstances, SSA is unable to disclose the reason why an SSN did not verify. In these cases, SSA will provide a reason of "other".

3. SSA's responses will contain the following:

- SSN Match (True/False)
- Full SSN for all matches (when a partial SSN is provided)
- Name Match (True/False)
- Date of Birth Match (True/False)
- Citizenship/Foreign Indicator
  - Blank – Citizenship code is blank and foreign-born indicator is blank
  - Citizenship code is blank and foreign-born indicator is *
  - "A" - U.S. Citizen
  - "B" - Legal alien, eligible to work
  - "C" - Legal alien, not eligible to work
  - "D" - Other
  - "E" - Alien Student - restricted work authorized
  - "F" - Conditionally legalized alien
- Alien Registration Number (where applicable)
- Death Indicator (Yes Deceased / Not Deceased)
- Error code descriptions (transaction and record levels)

An applicant for an original SSN provides identifying information, including citizenship, upon application for that number. However, there is no obligation for the SSN holder to report a subsequent change in immigration status to SSA unless that SSN holder files a claim for benefits. Thus, some previously established citizenship information in SSA's records might not be current. There is no obligation for an individual to report to SSA a change in their citizenship or immigration status until they request a replacement card or file a claim for a Social Security benefit. While the citizenship information is accurate for SSA's program purposes, if used later for other purposes, it may not be current. SSA is not the custodian of U.S. citizenship records

For individuals whom USCIS provides only a partial SSN, SSA will search our Numident database using USCIS' supplied names and DOBs, and will only return a response record and full SSN in situations where the alpha search identifies a single individual.

Page 4

SSA-AR-0103



U.S. Citizenship
and Immigration
Services

13.    **Place of Performance**

The performance or delivery by USCIS of the goods and/or services described herein and the timeliness of said delivery are authorized only to the extent that they are consistent with proper performance of the official duties and obligations of USCIS. If for any reason USCIS delays or fails to provide services, or discontinues the services or any part thereof, USCIS is not liable for any damages or loss resulting from such delay or for any such failure or discontinuance.

The performance or delivery by SSA of the goods and/or services described herein and the timeliness of said delivery are authorized only to the extent that they are consistent with the duties described in the Information Sharing Letter Agreement. If for any reason SSA delays or fails to provide services, or discontinues the services or any part thereof, SSA is not liable for any damages or loss resulting from such delay or for any such failure or discontinuance.

Under DHS-USCIS' SAVE process SSA will provide electronic response codes to USCIS' SAVE queries. These codes report which data elements sent to SSA by SAVE (name, SSN, and date of birth) match data elements in the Enumeration System. The codes also report if there is a death or fraud indicator in the Enumeration System and the person's citizenship status, as recorded in the Enumeration System.

This SOW shall be effective upon the signature of the last signatory hereto and shall continue until the end of the Period of Performance described in Section 2.

14.    **Billings and Accompanying Documentation**
SSA will bill USCIS for services rendered on a quarterly basis using the Treasury G-Invoicing System and collect said charges via Intra-governmental Payment and Collection (IPAC).
Accompanying documentation includes the LETTER AGREEMENT PROVIDING FOR INFORMATION SHARING BETWEEN THE DEPARTMENT OF HOMELAND SECURITY (DHS), U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS) AND THE SOCIAL SECURITY ADMINISTRATION (SSA) REGARDING CITIZENSHIP, and the FS Forms 7600A and 7600B.

15.    **Modification**
Modifications to this Agreement must be in writing and agreed to by the parties.
This Agreement may be terminated by either party upon 30 days advance written notice.
If legislation is enacted that affects SAVE functions or provides for new functionality, the parties agree to modify this Agreement as appropriate to cover any new provisions.

16.    **Dispute Resolution**
Disagreements on the interpretation of the provisions of this SOW that cannot be resolved between USCIS and the SSA point of contact should be provided in writing to the authorized officials at both agencies for resolution. If settlement cannot be reached at

Page 5

SSA-AR-0104



**U.S. Citizenship
and Immigration
Services**

this level, the disagreement will be elevated to the next level in accordance with DHS-USCIS procedures for final resolution.

17.    <u>Termination</u>
This Agreement may be terminated by either party upon 30 days advance written notice <u>or terminated in accordance with the provisions of</u> this Agreement.

SSA-AR-0105

## REQUISITION — MATERIALS-SUPPLIES-EQUIPMENT

SEE INSTRUCTIONS ON REVERSE

**1. NUMBER**
VER250028

**2. DATE**
21-MAY-2025

**3. ACTIVITY SYMBOL**
See Attachment A

**4. TO: NAME AND ADDRESS — PROCUREMENT SECTION (OR STOREROOM)**
USCIS
BURLINGTON CONTRACTING OFFICE
70 KIMBALL AVE
SOUTH BURLINGTON, VT 05403

**5. FROM: NAME AND ADDRESS — REQUISITIONER**
DHS-USCIS-VERIFICATION DIVISION

(b)(6)

5900 CAPITAL GATEWAY DRIVE, MAIL STOP 2600
CAMP SPRINGS, MD 20529-0009
US

| STOCK NUMBER | DESCRIPTION OF ARTICLE (MAKE, MODEL, TYPE, SIZE, COLOR, MFGR., ETC) | QUANTITY | UNIT | COST UNIT PRICE | AMOUNT | ACTION CODE |
|---|---|---|---|---|---|---|
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| CLIN 0001 | INITIAL DEVELOPMENT COSTS AND TRANSACTIONS | 1 | EA | 196,397 17 | 196,397 17 | |

Justification:

TO FUND THE SOCIAL SECURITY ADMINISTRATION (SSA) SAVE OPTIMIZATION INITIAL DEVELOPMENT
COSTS AND QUERIES. PROPOSED POP: 5/23/58-5/22/26

Recommended Vendor:
No Recommended Vendor

| 13. SIGNATURE OF APPROVING OFFICIAL | Date | 14. TITLE OF APPROVING OFFICIAL | |
|---|---|---|---|
| F L OWENS | 21-MAY-2025 | SUPVY MGMT & PROG ANAL | |

| 24. SIGNATURE OF FUNDING OFFICIAL | Date | 25. TITLE OF FUNDING OFFICIAL | 15. | |
|---|---|---|---|---|
| R A COX | 21-MAY-2025 | MGMT & PROG ANAL | TOTAL | 196,397 17 |

| 16. KEY TO ACTION CODE | | | | PROCUREMENT SECTION (OR STOREROOM) | | |
|---|---|---|---|---|---|---|
| S | SUBSTITUTE ITEM | 2 | CANCELLED--NOT STOCKED | 17. DATE RECEIVED | 19. PURCHASE ORDER | |
| B | BACK ORDERED | 3 | CANCELLED--NOT ABLE TO IDENTIFY | | DATE | NUMBER |
| D | PURCHASED FOR DIRECT SHIPMENT | 0 | OTHER -- AS INDICATED | 18. APPROVED | | |
| 1 | CANCELLED--STOCK EXHAUSTED | | | | | |

I CERTIFY THAT THE ABOVE ARTICLES -- COLUMNS 3, 9 AND 12 - HAVE BEEN RECEIVED.

| 20. LOCATION | 21. DATE | 22. SIGNATURE | 23. TITLE |
|---|---|---|---|
| | | | |

United States Department Of Homeland Security
Us Citizenship & Immigration Svcs
FORM G-514 (REV. 8-1-5

Page   1   of   3

SSA-AR-0106

## INSTRUCTIONS
### Use

Use Form G-514 - continued on Form G-514.1 -- To requisition materials, supplies, and equipment through the Procurement section of the Regional (or Central) Office; or from a Service-operated Storeroom.

### Copies - Distribution

Prepared by requistioner in an original and two copies, sending original (white) and Copy 1 (pink) to: Procurement Section (or Storeroom), and retaining Copy 2 (green).  Procurement Section (or Storeroom) shall, as a rule, pack Copy 1 with shipment, or return it to requisitioner with appropriate advice.

### Entries

**By requisitioner:**

1. Number consecutively, beginning with number one each fiscal year, and prefix with alphabetic location symbol and last two digits of fiscal year (e.g., MIA-58-1, MIA-58-2, MIA-58-3, etc., MIA-59-1, MIA-59-2, MIA-59-3, etc.).  Number continuation sheets with numerical suffix(e.g,, MIA-58-1.1, MIA-58-1.2, MIA-58-1.3, etc).
2. Enter date of preparation.
3. Enter numerical symbol of activity which will benefit from use of articles.
4. Enter name and address of Procurement section (or Storeroom)(e.g., Procurement Section, Immigration and Naturalization Service, Richmond, VA).
5. Enter full name, title, and address so that shipping label may be prepared without reference to address directory.  If consignee is other than requisitioner, enter shipping instructions under Entry 7.
6. Enter form numbers; stock number shown in "Stores Stock Catalog" and "Federal Supply Schedules."
7. Enter full description of article; attach sketches, plans, samples, etc.  If consignee is other than requisitioner, enter shipping instructions.
8. Enter issue - unit quantity.
9. Enter unit of issue (e.g., each, doz., C, gross, ream, M; lb., cwt, ton: bag, ball, bbl., bot., box, can, pkg., roll, tube; pt., qt., gal., etc.)
13. Signature of approving official.
14. Enter title of approving official.
24. Signature of funding official.
25. Enter title of funding official.

**By Procurement Section ( or Storeroom):**

10. Enter unit price.
11. Enter product of Entries 8 and 10.
12. Enter symbol of action taken. See Entry 16.
15. Enter total of amounts under Entry 11.
17. Enter date requisition received.
18. Signature of approving officer.
19. Enter, if issued, date and number of purchase order.

**By consignee:**

20. Enter address - city and state.
21. Enter date shipment received.
22. Signature of employee authorized to accept delivery.
23. Enter title of receiving employee.

United States Department Of Homeland Security
Us Citizenship & Immigration Svcs
    FORM G-514 (REV. 8-1-5                                    Page    2    of    3

SSA-AR-0107

# Form G-514

## REQUISITION - MATERIALS-SUPPLIES-EQUIPMENT
### Activity Symbols
### ATTACHMENT A

**REQUISITION NUMBER:**    VER250028

| Item No. | Contract No. | Task Ord No. | Project | Task | Fund | Program | Organization | Object | UDF | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | SSASV01 | 000 | EX | 11-04-00-000 | 07-20-0000-00-00-00-00 | GE-25-11-00 | 000000 | $196,397.17 |

**APPROPRIATION SYMBOL CROSSWALK:**

| FUND | FY | TAS | TITLE | AMOUNT |
|---|---|---|---|---|
| EX | 2025 | 70X5088 | Immigration Examination Fees, Immigration Services, Department of Homeland Security | 196,397.17 |

United States Department Of Homeland Security

Us Citizenship & Immigration Svcs

FORM G-514 (REV. 8-1-5)

Page   3   of   3

# Exhibit 19



# SOCIAL SECURITY
Office of the General Counsel
Office of General Law

July 13, 2023

Sent via email and U.S. Mail

Jon Sherman
Litigation Director & Senior Counsel
Fair Elections Center
1825 K Street NW, Suite 450
Washington D.C. 20006
(Tel.) 202-331-0114
jsherman@fairelectionscenter.org

Re: Application for Records and Testimony of a Social Security Administration (SSA) Employee in a Federal Civil Case, *Mi Familia Vota, et al. v. Adrian Fontes, in his official capacity  as Arizona Secretary of State, et al.*, 22-cv-509 et al. (consolidated) (D. AZ)

Dear Mr. Sherman:

You filed an application requesting deposition testimony and supporting documents in this matter from an SSA employee regarding the accuracy and reliability of using SSA databases to verify current U.S. citizenship status.  Your case involves two consolidated actions challenging Arizona statutes that implement new citizenship investigation procedures for voter registration applicants and existing registered voters.  The procedures require local election officials to compare county voter registration information with data contained in SSA's databases to verify citizenship status and voter eligibility.  You allege that doing so will cause naturalized voter registration applicants and registered voters to be erroneously flagged as non-citizens based on old or inaccurate data in SSA databases.

You requested information concerning the frequency SSA databases are updated regarding U.S. citizenship status and the procedures SSA uses to update those databases.  You also requested any recent Office of the Inspector General (OIG) report, study, or investigation that includes a review of the accuracy and reliability of U.S. citizenship data or information contained in SSA databases. You stated that you do not seek any internal SSA communications or the underlying data stored in SSA databases.  You assert that the information sought from SSA is directly relevant to the claims at issue in your case.  This letter constitutes the final decision on your application pursuant to the agency's regulations governing a request for testimony by employees and the production of records and information in legal proceedings.  As discussed in further detail below, I am denying your application for testimony but providing information and references to publicly available information about the accuracy of SSA's citizenship status.

Page 2 – Jon Sherman

Further, to the extent you seek nonpublic records or testimony from the Office of the Inspector General, you should direct a request in compliance with 20 C.F.R. Part 403 to:  Office of the Inspector General, Social Security Administration, 300 Altmeyer Building, 6401 Security Boulevard, Baltimore, MD 21235-6401. *See* 20 C.F.R. § 403.125.

Citizenship Information in SSA Records

While SSA records provide an indication of citizenship, they do not provide definitive information on U.S. citizenship.  The Department of Homeland Security (DHS) is responsible for maintaining current immigration and work authorization status for all noncitizens.  Individuals achieve citizenship in various ways.  The agency responsible for recording and confirming citizenship status depends on how citizenship was achieved.  The responsible agency may be DHS, Department of State, or the States.  See SSA - POMS: GN 00303.100 - United States (U.S.) Citizenship - 06/05/2018.  SSA is not the agency responsible for making citizenship determinations.  Individuals report their citizenship status to SSA when they apply for a Social Security number (SSN).  See SSA - POMS: RM 10210.500 - General Information on Evidence of U.S. Citizenship for a Social Security Number (SSN) Card - 07/31/2019.  SSA did not begin to consistently maintain citizenship information until 1981.  See Social Security History (ssa.gov) (explaining that SSA requirements regarding citizenship arose in the 1970s).  Accordingly, SSA does not have citizenship information for all individuals who have been issued an SSN.  Moreover, there is no obligation for an individual to report to SSA a change in their immigration status unless the individual is receiving Social Security payments.  See SSA - POMS: GN 00303.001 - Requirement of United States (U.S.) Citizenship or Appropriate Alien Status - 06/27/2012 and SSA - POMS: RS 00204.010 - Lawful Presence Payment Provisions - 01/04/2017.  As such, the citizenship SSA maintains merely represents a snapshot of the individual's citizenship status at the time of their interaction with SSA.  SSA's records do not provide definitive information about an individual's citizenship status.

Moreover, we have publicly posted on our website information about the accuracy and reliability of the citizenship data that we maintain in the limited data exchanges in which we provide this information, such as:

- Section VI of Model State Computer Matching and Privacy Protection Act Agreement: Individuals applying for SSNs report their citizenship status at the time they apply for their SSNs. There is no obligation for an individual to report to SSA a change in his or her immigration status until he or she files for a Social Security benefit. State Agencies must independently verify citizenship data through applicable State verification procedures and follow the notice and opportunity to contest procedures specified in Section V of this Agreement before taking any adverse action against any individual.

- Section VII of Match 1051: The SSA Enumeration System database used for SSN matching is 100 percent accurate based on SSA's Office of Quality Review 'FY 2018 Enumeration Accuracy Review Report (April 2019).' This review includes the citizenship information provided at the time the individual applied for their SSNs. However, there is no obligation for an individual to report to SSA a change in his or her citizenship or immigration status until he or she requests a replacement card or files a claim for a Social Security benefit. While the citizenship information is accurate for SSA's program purposes, if used later for other purposes, it may not be current. SSA is not the custodian of U.S. citizenship records.

Page 3 – Jon Sherman

- Section X of Match 1097:
  SSA's assessment of its citizenship data indicates that approximately ¼ of those records do not have an indication of citizenship present. However, SSA notes that while the indication of citizenship present in its records has increased over the years, it still only represents a snapshot in time. Accordingly, while SSA may have more records with an indication of citizenship, this information may not be available at the time of SSA's data exchange with CMS.

*See* Computer Matching Programs (ssa.gov) (providing a copy of all SSA matching agreements).

Testimony Denial

An agency employee may appear in a legal proceeding to which the agency is not a party and testify about any SSA function or any information or record SSA created or acquired as a result of the discharge of official duties. However, under SSA regulations, such appearance and testimony require the prior authorization of the Commissioner or her designee. 20 C.F.R. § 403.100. Similar regulations governing Federal employee testimony have consistently been upheld as legitimate. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998); *Swett v. Schenk*, 792 F.2d 1447 (9th Cir. 1986).

We may consider several factors in determining whether to authorize testimony in cases in which SSA is not a party. Those factors include but are not limited to: the risk of violation of law or compromise of Government privilege; the burden on SSA; and the interest served by allowing the testimony. 20 C.F.R. § 403.130. Your application does not establish the criteria necessary to allow an SSA employee to testify.

While your request may not risk violation of law, granting your request for testimony would burden the agency and unduly expend the resources of the agency for a lawsuit that does not involve SSA. *See* 20 C.F.R. § 403.130(b). To provide the requested testimony, SSA would be required to divert at least one SSA employee from his or her assigned duties, thereby reducing SSA's ability to timely perform its own work, with no counterbalancing benefit to SSA. *See* 20 C.F.R. § 403.130(b)(1). Moreover, as explained above, the information sought is available through public information. *See* 20 C.F.R. § 403.130(b)(2). In addition, this request presumes SSA would be authorized to share such information with the State of Arizona and we have not identified any request from the State of Arizona to share such information for this purpose, or agency approval to such data sharing.

Further, we have considered the interests that would be served by providing testimony in this case and find that the testimony would not serve SSA's interests. 20 C.F.R. § 403.130. While a state government official is involved in this case, permitting testimony would provide no benefit to SSA as SSA has no interest in the outcome of this case. 20 C.F.R. § 403.130(c)(2)-(3). Moreover, the testimony is not needed to prevent fraud or misconduct, prevent a miscarriage of justice, or preserve the rights of an accused individual to due process in a criminal proceeding. *See* 20 C.F.R. § 403.130(c)(4)-(5).

Page 4 – Jon Sherman

Thank you for your cooperation in this matter. If you have any questions, please contact Marty Budetti at (913) 219-0672.

Sincerely,

*/s/ Jessica Vollmer* for

Nancy Morales Gonzalez
Associate General Counsel
 for General Law, Division 1

# Exhibit 20



# SOCIAL SECURITY

December 18, 2006

The Honorable Jim McCrery
Chairman, Subcommittee on Social Security
Committee on Ways and Means
House of Representatives
Washington, D.C.  20515

Dear Mr. McCrery:

I am pleased to provide you with the enclosed report addressing your April 7, 2006 letter, requesting an assessment of the accuracy of Social Security Administration's (SSA) Numident fields that are relied on by the Basic Pilot—a Department of Homeland Security (DHS) employment eligibility verification service.

Thank you for bringing your concerns to my attention.  My office is committed to combating fraud, waste, and abuse in SSA's operations and programs.  The report highlights various facts pertaining to the issues raised in your letter.  To ensure SSA, DHS and the Department of State are aware of the information provided to your office, we are forwarding a copy of this report to the Inspectors General for each of these agencies.

If you have any questions concerning this matter, please call me or have your staff contact H. Douglas Cunningham, Assistant Inspector General for Congressional and Intra-Governmental Liaison, at (202) 358-6319.

Sincerely,

Patrick P. O'Carroll, Jr.
Inspector General

Enclosure

cc:
Jo Anne B. Barnhart

# *CONGRESSIONAL RESPONSE REPORT*

## *Accuracy of the Social Security Administration's Numident File*

A-08-06-26100



December 2006

# Mission

By conducting independent and objective audits, evaluations and investigations, we inspire public confidence in the integrity and security of SSA's programs and operations and protect them against fraud, waste and abuse.  We provide timely, useful and reliable information and advice to Administration officials, Congress and the public.

# Authority

The Inspector General Act created independent audit and investigative units, called the Office of Inspector General (OIG).  The mission of the OIG, as spelled out in the Act, is to:

○ Conduct and supervise independent and objective audits and investigations relating to agency programs and operations.
○ Promote economy, effectiveness, and efficiency within the agency.
○ Prevent and detect fraud, waste, and abuse in agency programs and operations.
○ Review and make recommendations regarding existing and proposed legislation and regulations relating to agency programs and operations.
○ Keep the agency head and the Congress fully and currently informed of problems in agency programs and operations.

To ensure objectivity, the IG Act empowers the IG with:

○ Independence to determine what reviews to perform.
○ Access to all information necessary for the reviews.
○ Authority to publish findings and recommendations based on the reviews.

# Vision

We strive for continual improvement in SSA's programs, operations and management by proactively seeking new ways to prevent and deter fraud, waste and abuse.  We commit to integrity and excellence by supporting an environment that provides a valuable public service while encouraging employee development and retention and fostering diversity and innovation.

# *Executive Summary*

## OBJECTIVE

To assess the accuracy of the Social Security Administration's (SSA) Numident fields that are relied on by the Basic Pilot.

## BACKGROUND

As of November 2005, SSA had assigned about 435 million Social Security numbers (SSN)—for the primary purpose of accurately reporting and recording the earnings of people who work in jobs covered by Social Security.  When SSA assigns an SSN to an individual, the Agency creates a master record in its "Numident" file containing relevant information about the numberholder.

SSA provides employers with a number of verification programs and services that allow them to match employees' names and SSNs with SSA's records.  Additionally, the Basic Pilot, a Department of Homeland Security (DHS) program supported by SSA, provides employers a tool for determining whether newly-hired employees reported the correct name, SSN, date of birth <u>and</u> are authorized to work in the United States.  Recently, the House and Senate each passed immigration reform bills that would mandate employers' use of an employment eligibility verification system similar to the Basic Pilot.  Given the extent and significance of this proposed legislation, it is essential that the Numident file contain correct information.

On April 7, 2006, we received a request from the Honorable Jim McCrery of the House Committee on Ways and Means, Chairman of the Subcommittee on Social Security, to assist the Subcommittee in obtaining information on the reliability of SSA data used in the Basic Pilot program to verify employment eligibility.  In particular, the Chairman asked that we assess the accuracy of SSA Numident fields that are relied on by the Basic Pilot.  The Chairman specified that we determine Numident accuracy rates for each of the following populations:  (1) native-born U.S. citizens, (2) foreign-born U.S. citizens, and (3) non-U.S. citizens.  To address his request, we reviewed 810 randomly-selected Numident records in each of these populations (a total of 2,430 records) to determine their accuracy and whether data discrepancies might result in inaccurate feedback from the Basic Pilot.  Because SSA does not delete, destroy, rescind, inactivate or cancel SSNs once they are assigned,[1] we selected our sample of all SSNs the Agency had assigned as of November 30, 2005.

## RESULTS OF REVIEW

We cannot predict the types of documentation each of the tested numberholders might present to an employer when attempting to prove their identities and authorization to

---

[1] Programs Operations Manual System, RM 00201.040.

work in the United States—as the current process allows a number of varying sources of this information.[2]  Accordingly, our audit conclusions only pertain to the accuracy of SSA's Numident file when compared to (1) information SSN numberholders provided to SSA when applying for their original and/or replacement Social Security cards and, if applicable, (2) certain data elements DHS had for the Numident records tested.  Despite these limitations, we found SSA's Numident file information to be generally accurate.

We identified some discrepancies that could result in the Basic Pilot providing incorrect feedback to employers attempting to determine the employment eligibility of their workers.  Specifically, of the 2,430 Numident records reviewed, 136 contained discrepancies in the name, date of birth or citizenship status of the numberholder or we determined that the numberholder may be deceased.[3]  In all of these cases, the Basic Pilot provided incorrect results.  As a result, we estimate that discrepancies in approximately 17.8 million[4] (4.1 percent) of the 435 million Numident records could result in incorrect feedback when submitted through the Basic Pilot.  While the accuracy of SSA's Numident records is noteworthy, if use of an employment verification service such as the Basic Pilot becomes mandatory, the workload of SSA and DHS may significantly increase—even if only a portion of these 17.8 million numberholders need to correct their records with one of these agencies.

We are particularly concerned with the extent of incorrect citizenship information in SSA's Numident file for the foreign-born U.S. citizens[5] and non-U.S. citizens we tested.  Based on DHS information, we determined that 62 (7.7 percent) of the 810 foreign-born U.S. citizen Numident records we reviewed were misclassified—and the numberholders were not actually U.S. citizens.  Given this exception rate, we estimate that about 616,420 of the approximate 8 million numberholders in the foreign-born U.S. citizen

---

[2] Presently, up to 29 documents issued by various Federal, State and local awarding agencies are valid for completing the *Employment Eligibility Verification* (Form I-9), which is legally required for every newly-hired employee.  Acceptable records include (1) DHS identity and work authorization documents; (2) U.S. passports; (3) SSN cards; (4) State and local Government records; and (5) records from schools, medical facilities and the military.  See 8 C.F.R. § 274a.2;  DHS Form I-9.

[3] Of the 136 discrepancies, 42 (30.9 percent) were on Numident record entries dated before May 15, 1978, the date on which SSA began requiring all SSN applicants to provide proof of age, identity and U.S. citizenship.  The remaining 94 (69.1 percent) Numident records were dated between May 15, 1978 and November 30, 2005.

[4] This estimate was developed using a stratified sampling approach.  We randomly selected 810 Numident records from each of the three populations.  The three populations varied in size based on the citizenship status and place of birth annotated on the Numident records.  See Appendix C for our sample results.

[5] Foreign-born U.S. citizens are those individuals who (1) were born abroad to U.S. citizen parents or (2) became "naturalized" citizens after immigrating to the United States. 8 U.S.C. §§ 1401(c); 1421 *et seq.*

category are not actually U.S. citizens.[6]  Additionally, we noted that 57 (7.0 percent) of the 810 non-U.S. citizen Numident records we reviewed were currently misclassified—because the individuals had become U.S. citizens after obtaining their SSN but had not updated their records with SSA.  Although SSA is not at fault for these latter misclassifications, we estimate that of the 46.5 million non-U.S. citizen records in SSA's Numident file, about 3.3 million contain out-of-date citizenship status codes.[7]  As such, these individuals may need to visit an SSA office to correct their Numident record before they would be confirmed eligible for employment by the Basic Pilot.

## CONCLUSION

Given the scope and breadth of information held in SSA's Numident file, we applaud the Agency on the accuracy of the data we tested.  However, we estimate that approximately 17.8 million Numident records contain discrepancies that may result in incorrect Basic Pilot feedback to employers.  As Congress considers legislation requiring mandatory verification of all U.S. workers' employment eligibility through a system such as the Basic Pilot, we believe it should examine the significant workload that may result from the millions of numberholders whose Numident records may need to be corrected.  Our review showed that the Numident records for these individuals have discrepancies in the numberholders' names, dates of birth, citizenship status and/or death indications that would result in inaccurate feedback from the Basic Pilot.

Because our tests included SSNs that were assigned decades ago, we recognize that some numberholders would no longer be working and would not attempt to correct their SSA and/or immigration records.  However, if even a portion of the estimated numberholders whose Numident records contained discrepancies were required to visit an SSA office to correct their information, the Agency's workload may significantly increase until such time as the affected records were corrected.

---

[6] As explained on pages 10 and 11 of this report, only 19 of these cases were included in the total 136 discrepancies that impacted Basic Pilot results.  Although the remaining 43 foreign-born U.S. citizens discussed were misclassified, DHS confirmed that they were Legal Permanent Residents and authorized to work.  As such, the Basic Pilot feedback was correct – they were eligible for employment.

[7] We believe this is a conservative estimate because DHS was only able to provide citizenship data for 506 of the 810 non-U.S. citizens in our sample.

---

# *Table of Contents*

**Page**

**INTRODUCTION**................................................................................1

**RESULTS OF REVIEW** .......................................................5

Native-Born U.S. Citizens.................................................................6

Foreign-Born U.S. Citizens...............................................................9

Non-U.S. Citizens..........................................................................11

**CONCLUSION** ...............................................................14

**OTHER MATTER**.............................................................15

**APPENDICES**

**APPENDIX A** – Acronyms

**APPENDIX B** – Scope and Methodology

**APPENDIX C** – Sample Results

**APPENDIX D** – Basic Pilot

**APPENDIX E** – Additional Discrepancies that Did Not Impact Basic Pilot
                              Results

# *Introduction*

## OBJECTIVE

To assess the accuracy of the Social Security Administration's (SSA) Numident fields that are relied on by the Basic Pilot.

## BACKGROUND

As of November 2005, SSA had assigned about 435 million Social Security numbers (SSN)—for the primary purpose of accurately reporting and recording the earnings of people who work in jobs covered by Social Security. When SSA assigns an SSN to an individual, the Agency creates a master record in its "Numident" file containing relevant information about the numberholder. This information includes the numberholder's name, date of birth, place of birth, parents' names, citizenship status, date of death (if applicable) and the office where the SSN application was processed and approved. Additionally, the Numident record for each numberholder identifies (1) any changes to the original information provided by the numberholder (for example, name changes, revisions to citizenship status) and (2) an account of all replacement SSN cards obtained.

The first explicit statutory authority to issue SSNs was enacted in 1972.[1] Before that time, SSNs were issued pursuant to administrative procedures that the Agency had established. At the inception of the program, all SSNs were assigned and cards issued based solely on information provided by the applicant. Evidence of identity was not required. However, beginning in November 1971, persons age 55 and over applying for an SSN for the first time were required to submit evidence of identity. As of April 1974, noncitizens were required to submit documentary evidence of age, identity and immigration status. In May 1978, SSA began requiring all SSN applicants to provide evidence of age, identity and U.S. citizenship or noncitizen status.[2] In addition, as of September 2002, SSA began verifying all immigration documents with DHS before assigning SSNs to noncitizens.

---

[1] Social Security Amendments of 1972, Pub. L. 92-603, 86 Stat. 1329 (1972).

[2] Subject Counterfeiting and Misuse of the Social Security Card and State and Local Identity Documents: Hearing Before the House Committee on the Judiciary, Subcommittee on Immigration and Claims, 106th Cong., 1st Sess. 64 (1999) (statement of Glenna Donnelly, Assistant Deputy Commissioner, Office of Disability and Income Security Programs, SSA).

SSA posts an employee's wages to its Master Earnings File (MEF)[3] based on a *Wage and Tax Statement* (Form W-2) submitted by his or her employer.[4]  However, these earnings can only be posted successfully to a numberholder's MEF record if the name and SSN reported on the Form W-2 match the information on SSA's Numident file for that individual.  For example, if the Numident record for a numberholder contains a last name that significantly differs from what the employer provided on the Form W-2, the earnings will not be posted to the individual's earnings record—and, if not corrected, will not be counted towards the numberholder's future Social Security benefits.  Additionally, if an employee falsely uses a name and/or SSN to work in the United States, which does not match the associated Numident record, these wages will not be posted to the correct numberholder's account.

To prevent these name and SSN discrepancies, SSA provides employers and third parties[5] with a number of verification programs and services that allow them to verify employees' names and SSNs against SSA's records before submitting the Form W-2s.[6] To ensure correct responses to employers through these verification services, it is essential that SSA's Numident records are as accurate and complete as possible.

On April 7, 2006, we received a request from the Honorable Jim McCrery of the House Committee on Ways and Means, Chairman of the Subcommittee on Social Security, to assist the Subcommittee in obtaining information on the reliability of SSA data the Department of Homeland Security (DHS) uses to verify employment eligibility.  In particular, the Chairman asked that we assess the accuracy of SSA Numident fields that are relied on by the Basic Pilot.  The Chairman specified that we determine Numident accuracy rates for each of the following populations:  (1) native-born U.S. citizens, (2) foreign-born U.S. citizens, and (3) non-U.S. citizens.

## BASIC PILOT

The Basic Pilot is a DHS initiative supported by SSA through a Memorandum of Understanding between the two agencies.  The purpose of the Basic Pilot is to assist employers in verifying the employment eligibility of newly-hired employees.

---

[3] The MEF, formally known as the Earnings Recording and Self-Employment Income System, Social Security Administration, Office of Systems, SSA/OS 60-0059, contains all earnings data reported by employers and self-employed individuals.  SSA uses the data to determine eligibility for and the amount of Social Security benefits.  71 Federal Register (FR) 1796, 1819-1820 (January 11, 2006).

[4] The *Social Security Act* § 205(c)(2)(A), 42 U.S.C. § 405(c)(2)(A) requires SSA to maintain records of wage amounts employers pay to individuals.

[5] A third party would be a company or individual that submits or requests information on behalf of someone else.

[6] While our review focuses on the Basic Pilot, SSA offers other types of employee verification services. These tools include SSA's Employee Verification Service for Registered Users, which allows employers to submit employees' names/SSNs via paper or magnetic media, and the Social Security Number Verification Service, an on-line verification system.  Unlike the Basic Pilot, these tools do not allow employers to verify the work authorization status of employees.

Participating employers register on-line with DHS to use the automated system. Information the employer submits to DHS is first sent to SSA to verify that the SSN, name, and date of birth match SSA data contained on the employee's Numident record. If SSA verifies this information and no date of death is recorded on the Numident record, SSA provides DHS with U.S. citizenship information for the individual—as annotated on the numberholder's most recent Numident record. If the employee alleges U.S. citizenship and the Numident record also indicates the individual is a U.S. citizen, the Basic Pilot then notifies the employer that work authorization is confirmed. If a discrepancy is noted, the Basic Pilot sends the employer an "SSA tentative nonconfirmation" response.

After SSA verifies the SSN, name and date of birth of noncitizens, the Basic Pilot confirms current authorization to work in the United States with DHS.[7] If a discrepancy occurs with an employee's work authorization, the Basic Pilot sends the employer a "DHS tentative nonconfirmation" response. In the case of either an SSA or DHS tentative nonconfirmation, the employee is provided an opportunity to correct the information contained in SSA and/or DHS records. See Appendix D for more information on the Basic Pilot.

## SCOPE AND METHODOLOGY

To achieve our objective, we reviewed a total of 2,430 SSNs that SSA assigned from 1936 through November 2005. We recognize that our tests included SSNs that were assigned decades ago and some of these numberholders would no longer be working and/or attempting to correct their SSA and/or immigration records. However, we included all SSNs the Agency had assigned up to November 30, 2005, in our universe because SSA does not delete, destroy, rescind, inactivate or cancel SSNs once they are assigned. Accordingly, older SSNs could still be used—appropriately or inappropriately—for employment purposes.

We selected our samples from a segment of SSA's Numident file as of November 30, 2005.[8] Specifically, as shown in Table 1, we reviewed 810 Numident records for SSNs within each of the following 3 populations: (1) native-born U.S. citizens, (2) foreign-born U.S. citizens, and (3) non-U.S. citizens.

---

[7] The determination as to whether a noncitizen is currently authorized to work rests with DHS—the Basic Pilot places no reliance on work authorization information SSA has in its records in making this determination.

[8] SSA stores Numident records in equal segments by arranging records in numerical order according to the last two digits of the SSN (for example, 80-84, 85-89, 90-94, etc). Each segment represents 5 percent of all Numident records and there are 20 segments in total. It is common practice for SSA to use a segment to estimate results to the entire file.

**Table 1:  Details of Sample Selected for Review**

| Column A | Column B | Column C | Column D |
|---|---|---|---|
| Category | Sample Size | Number of SSNs in Segment 3 of Numident File (as of 11/30/05) | Estimate of Total SSNs In Numident File for Each Category (Column C x 20) |
| Native-Born U.S. Citizens | 810 | 19,010,361 | 380,207,220 |
| Foreign-Born U.S. Citizens | 810 | 402,667 | 8,053,340 |
| Non-U.S. Citizens | 810 | 2,326,218 | 46,524,360 |
| Total | 2,430 | 21,739,246 | 434,784,920 |

Our tests compared the Numident data (name, SSN, date of birth and citizenship status) to copies of the original *Application for a Social Security Card* (Form SS-5) and, when applicable and available, copies of applications for replacement Social Security cards to ensure that SSA personnel accurately entered the information provided by the applicant.  Additionally, we attempted to determine the legitimacy of any dates of death present on Numident records.  Further, we attempted to verify noncitizens' and foreign-born U.S. citizens' "citizenship" status with DHS or the Department of State (State).  We also submitted the 1,620 U.S. citizen SSNs through the Basic Pilot, using information provided by the numberholder on his or her Form SS-5.  Finally, we submitted all noncitizen SSN records through the Basic Pilot when we could obtain DHS alien registration or admission numbers[9] or when we identified any discrepancies between SSA and DHS information for the numberholder.

### *Underlying Assumptions*

In performing our tests, we could not predict what proof of identity and work authorization a numberholder would present to an employer.  Therefore, we made the following assumptions.

- The information provided by the numberholder on his or her Form SS-5(s) was correct and would be the same data provided to an employer.

- The information provided by DHS and/or State was correct.

See Appendix B for more information regarding our scope and methodology and Appendix C for our sample results.

---

[9] The alien registration (or "A") number is the 9-digit number following "A" that is shown on the "green card" or *Permanent Resident Card* (Form I-551, formerly Form I-151 *Alien Registration Receipt Card*), the *Employment Authorization Document* (I-766 and I-688B), and on certain other immigration documents and notices.  For newly admitted immigrants, the "A" number is shown on the machine-readable immigrant visa affixed to the foreign passport.  The admission number is the 11-digit number located on the *Arrival-Departure Record* (Form I-94).  Form I-94 shows the date the individual arrived in the United States, the "Admitted Until" date, and the date when his or her authorized period of stay expires.  Form I-94 also usually shows the noncitizen's class of admission (for example, "F-1," which includes noncitizen academic students in colleges, universities, seminaries, conservatories, academic high schools, other academic institutions, or in language training).

# *Results of Review*

SSA's Numident file represents an extensive repository of personal information provided by hundreds of millions of SSN applicants throughout the Agency's history.  The primary purpose in maintaining this information is to ensure that U.S. workers receive appropriate credit for the wages they earned and, ultimately, to provide full and accurate benefits to entitled individuals.  Recently, the House and Senate each passed immigration reform bills that would mandate employers' use of an employment eligibility verification system similar to the Basic Pilot.[10]  Given the extent and significance of the proposed legislation, it is essential that the Numident file contain correct information.

We cannot predict what documentation every numberholder tested might present to an employer when attempting to prove their identities and authorization to work in the United States—as the current process allows a number of varying sources of this information.  Accordingly, our audit conclusions only pertain to the accuracy of SSA's Numident file when compared to (1) information SSN numberholders provided to SSA when applying for their original and/or replacement Social Security cards and, if applicable, (2) certain data elements DHS had for the Numident records tested.  Despite these limitations, we found SSA's Numident file information to be generally accurate.

We identified some discrepancies that could result in incorrect feedback to employers attempting to verify employees' eligibility to work in the United States through the Basic Pilot.  Specifically, of the 2,430 Numident records reviewed, 136 contained discrepancies that could result in inaccurate employment eligibility results—and, in most cases, additional work for SSA and DHS as employees attempt to correct their Numident and immigration records.[11]  As a result, we estimate that data discrepancies in approximately 17.8 million (4.1 percent)[12] of the 435 million Numident records could result in incorrect feedback when submitted through the Basic Pilot.[13]  These discrepancies are outlined in Table 2.

---

[10] S. 2611, 109th Cong., 2d Sess. § 301 (2006);  H.R. 4437, 109th Cong., 2d Sess. Title VII (2006).

[11] Of the 136 discrepancies impacting Basic Pilot results, 7 resulted from differences between the Numident and applicants' Form SS-5s; 33 resulted from death indications on the Numident or other SSA records, which did not preclude confirmation of employment eligibility; and 96 resulted from differences in information contained on the Numident file and data provided to us by DHS (that is, numberholder's name, date of birth, or citizenship status.)

[12] This estimate was developed using a stratified sampling approach.  We randomly selected 810 Numident records from each of the three populations.  The three populations varied in size based on the citizenship status and place of birth annotated on the Numident records.  See Appendix C for our sample results.

[13] Additional minor discrepancies were identified between the names and dates of birth shown on the original Form SS-5s and the Numident records.  However, Basic Pilot tolerances permitted employment eligibility confirmation of these records.  Further information regarding these discrepancies is provided in Appendix E.

---

**Table 2:  Data Discrepancies in SSA's Numident File**

| Population | Data Fields | | | | |
|---|---|---|---|---|---|
| | Name | Date of Birth | Death Indication | Citizenship Status | Total |
| Native-Born U.S. Citizens | 2 | 2 | 23 | 0 | **27** |
| Foreign-Born U.S. Citizens | 4 | 2 | 0 | 19 | **25** |
| Non-U.S. Citizens | 14 | 3 | 10 | 57 | **84** |
| **Total** | **20** | **7** | **33** | **76** | **136** |

## NATIVE-BORN U.S. CITIZENS

Generally, SSA Numident records for native-born U.S. citizens were accurate.  Of the 810 Numident records reviewed in this population, we identified 27 (3.3 percent) discrepancies that may result in inaccurate employment eligibility feedback from the Basic Pilot.  Given this accuracy rate, we estimate that of the approximately 380 million native-born U.S. citizen records in the Numident file, about 12.7 million contain discrepant information that may result in incorrect Basic Pilot feedback.  As shown in Table 3, these discrepancies involved name, date of birth, and death information that did not match or had not been annotated on SSA's Numident file.  Additionally, we noted that 19 (2.3 percent) of the 810 U.S. born citizen records we tested were age 90 and over, had no indication of death on any SSA record and were not currently receiving SSA benefits.  While these individuals may still be alive and, in some rare cases working, the Basic Pilot has no edit that would require additional contact with these individuals before confirming employment eligibility.  We encourage SSA and DHS to incorporate a step in the Basic Pilot requiring further verification of potential employees who have reached a pre-determined age and/or have some indication of death on an SSA system of record.

**Table 3:  Native-Born U.S. Citizen Record Discrepancies
that May Affect Basic Pilot Results**

| Data Field | Number of Discrepancies |
|---|---|
| Name | 2 |
| Date of Birth | 2 |
| Death Indication | 23 |
| **Total** | **27** |

*Name and Date of Birth Discrepancies that Affected Basic Pilot Results*

Two (0.24 percent) of the 810 native-born U.S. citizen Numident records tested contained inaccurate spellings of the numberholders' names—when compared to the associated Form SS-5s.  When the proper names were tested in the Basic Pilot, it returned an "SSA tentative nonconfirmation" for each.  Additionally, 2 (0.24 percent) other Numident records lacked a date of birth for the numberholders.  When we tested the dates of birth provided on the numberholders' Form SS-5s, the Basic Pilot returned an "SSA tentative nonconfirmation" response.  As such, these individuals' employment eligibility may not be initially verified through the Basic Pilot and the numberholders may need to correct their information with SSA.

## *Death Indication Discrepancies that May Affect Basic Pilot Results*

SSA provides a death indicator in its responses to the Basic Pilot. However, we determined that 23 (2.8 percent) of the 810 native-born U.S. citizens within our sample may be deceased according to SSA records, yet the Basic Pilot confirmed employment eligibility for these numberholders. In seven of these cases, the Numident records had no indication that the numberholder was deceased, but other SSA records (that is, the Master Beneficiary Record or Supplemental Security Income Record[14]) provided a date of death for the individuals. In the other 16 cases, the Numident records were annotated with a transaction code of "D," which indicates that a report of death was received by SSA, but the death was not confirmed.[15]

Although SSA may not have verified the deaths of these numberholders, we do not believe the Basic Pilot should confirm employment eligibility without some additional contact with these individuals. If someone presented themselves as one of these 23 individuals to an employer and provided the correct name, SSN and date of birth, the employer could incorrectly verify the individual's employment eligibility through the Basic Pilot. Accordingly, we encourage SSA to reconcile the Numident with other SSA records and annotate Numident records when an indication of death is present. Additionally, we believe the Basic Pilot should issue a tentative nonconfirmation notice to employers that more investigation is necessary for individuals with a transaction code of "D" on the Numident record (and any other code SSA chooses to use for death indicators annotated from the aforementioned reconciliation). These suggestions are not intended to preclude verification entirely, but to require further inquiry and resolution before DHS confirms employment eligibility.

In response to a draft of this report, SSA requested that we note the following.

> SSA is working with State governments to improve the current paper-based process which we believe will resolve some of the issues with the Numident record not being updated. However, the most efficient manner to improve timeliness and accuracy of State data is by using Electronic Death Reporting (EDR); a web-based automation of the death registration process. Our goal is to receive verified death data within 24 hours of receipt in the State repository and within 5 days of death. To achieve that goal we have currently awarded 31 State EDR development contracts. Fourteen States plus the District of Columbia and the jurisdiction of New York City have already implemented EDR. We expect that an additional 7 States in FY 2007 and 8 more States in FY 2008 should

---

[14] SSA establishes a Master Beneficiary Record for each Old-Age, Survivors and Disability Insurance claimant and a Supplemental Security Income Record for every Supplemental Security Income applicant. These reports maintain pertinent information necessary to accurately pay benefits to the individuals. The information maintained includes identification data (name, SSN, date of birth, address), type and date of any disability, monthly benefit amounts, and the reason for terminating or suspending benefit payments. The SSA published Privacy Act notices for the Master Beneficiary Record, SSA/ORSIS, 60-0090, and for the Supplemental Security Income Record Display and Special Veteran's Benefits, SSA/ODSSIS, 60-0103, in January 2006. 71 Federal Register (FR) 1796, 1826-1834 (January 11, 2006).

[15] According to an SSA representative, the Agency last used the "D" transaction code in 1983.

implement EDR.    Additionally, for the longer term, the provisions of the Intelligence Reform and Terrorism Prevention Act (IRTPA) of 2004 give grants to the States to cross match birth and death records within and among the States, and give the lead for the funding of EDR to the Department of Health and Human Services (HHS).  We continue to work with HHS for the transition of funding for EDR beginning this fiscal year.

### *Numberholders Age 90 and Over Receive No Further Screening by Basic Pilot*

Of the 810 native-born U.S. citizens reviewed, we identified 19 (2.3 percent) individuals age 90 and over who had no indication of death on his or her Numident record or any other SSA system of record and were not currently receiving SSA benefits.  The oldest of these numberholders would be 134 in 2006.  While these are clearly old Numident records established before SSA implemented improved procedures for reporting and verifying deaths, we are concerned that the Basic Pilot has no control requiring additional investigation or contact with these numberholders before confirming employment eligibility.  In fact, we tested these 19 individuals through the Basic Pilot and all were confirmed eligible for employment.

We acknowledge that an employer should raise their own concerns when an employee claims to have been born in 1872.  However, to ensure that (1) no employee attempts to misuse the identity of a deceased or aged person and (2) the employer does not inadvertently or intentionally overlook the misuse of the aged person's name, SSN and date of birth, we believe the Basic Pilot should be revised to issue a notice to employers that more investigation is necessary when an employee is older than a pre-established age.[16]

---

[16] In an October 2006 audit report *Effectiveness of the Young Children's Earnings Records Reinstatement Process* (A-03-05-25009), we made a similar recommendation regarding SSA's SSN verification service. Specifically, we recommended that, consistent with the Agency's disclosure policies, SSA modify the Employer Verification Service for Registered Users and SSN Verification Service to detect SSNs for children under age 7 to provide appropriate notice to employers and potentially reduce the number of future notices.  SSA agreed with our recommendation.

Informal comments SSA provided in response to a draft of this report pointed out that it is illegal for employers to discriminate on the basis of age and that use of an indicator for individuals over a specified age would require a new or amended routine under the *Privacy Act of 1974* to permit disclosure.  Further, the Agency stated that its Memorandum of Understanding with DHS would need to be modified to provide such an indicator.  Finally, SSA pointed out that DHS Form I-9 already requires employers to certify that the documents submitted by an employee appear to be genuine and relate to that employee.

While we are sensitive to the possibility of age discrimination and understand the legal and contractual modifications that would be required, we continue to believe that the Basic Pilot should not routinely confirm employment eligibility for a 134-year old person—without, at the very minimum, some further conversation with that individual.  The determination whether such a control should be implemented rests with SSA, DHS and Congress.  However, we would be remiss if we did not point out this vulnerability in the current process.

## FOREIGN-BORN U.S. CITIZENS

Of the 810 foreign-born U.S. citizen Numident records reviewed, 25 (3.1 percent) contained discrepant information that could result in incorrect employment eligibility feedback from the Basic Pilot.  As a result, we estimate that about 248,560 of the approximately 8 million foreign-born U.S. citizen records contain discrepancies that may result in incorrect employment eligibility results from the Basic Pilot.  As shown in Table 4, differences were noted between the name, date of birth or citizenship status SSA annotated on the 25 Numident records and data provided by (1) the numberholder on his or her Form SS-5 or (2) DHS.  Further, we also noted that SSA documented an incorrect citizenship code for 43 (5.3 percent) other foreign-born U.S. citizens within our sample (which are not listed in Table 4.)  However, these noncitizens were authorized to work in the United States, so the incorrect citizenship code did not impact the Basic Pilot results at the time of our review.

**Table 4:  Foreign-Born U.S. Citizen Record Discrepancies
that May Affect Basic Pilot Results**

| Data Field | Number of Discrepancies |
|---|---|
| Name | 4 |
| Date of Birth | 2 |
| Citizenship Status | 19 |
| **Total** | **25** |

### *Name and Date of Birth Discrepancies that Affected Basic Pilot Results*

Of the 810 foreign-born U.S. citizen Numident records tested, we identified 4 (0.5 percent) discrepancies in the "name" field and 2 (0.2 percent) differences in the "date of birth" field that caused the Basic Pilot to issue "SSA tentative nonconfirmation" responses.  In one case, when applying for an SSN, the numberholder documented on the Form SS-5 that her first name was "Sabrina."  However, SSA recorded the numberholder's name as "Brina" in the Numident record.  The Basic Pilot provides tolerances for some differences in the spelling of names.  However, the Basic Pilot did not recognize these two names as the same individual.  In five other cases, the name or date of birth SSA documented on the Numident record disagreed with information provided by DHS.[17]  These discrepancies also impacted Basic Pilot results and caused "SSA tentative nonconfirmation" responses.

### *Citizenship Status Discrepancies*

Based on DHS information, we determined that 62 (7.7 percent) of the 810 foreign-born U.S. citizen records reviewed were not actually U.S. citizens.  Because SSA does not maintain copies of documents SSN applicants present to the Agency, we were unable to determine whether these individuals presented false evidence of U.S. citizenship to SSA or Agency personnel simply miscoded the information.[18]  Despite the citizenship indications on SSA's Numident records, these numberholders are not citizens and their work authorization status should be determined by DHS.  We estimate that about 616,420 other numberholders in the foreign-born U.S. citizen population (which totals approximately 8 million) may have been improperly classified as U.S. citizens in SSA records.

Of the 62 misclassified numberholders, 43 are Legal Permanent Residents (LPR)[19] and, as such, authorized to work in the United States.  These 43 discrepancies did not result in incorrect Basic Pilot feedback because employers would have been accurately notified that these individuals were eligible for employment.  However, if something changes with their LPR status (for example, emigration, deportation, or failure to renew their status), their permission to work in the United States may be taken away.  In fact, one DHS study estimated that, between 1900 and 1990, one-quarter to one-third of all

---

[17] In response to a draft of this report, SSA stated that in December 2005, the Agency began requiring noncitizens to show their legal name on the SSN card—as reflected on the immigration document. Before that date, noncitizens could use a name reflected on an identity document; however, the name on the immigration document should have been annotated on the Numident.

[18] Only 4 of these 62 citizenship discrepancies occurred after September 2002, the month in which SSA began verifying all immigration documents with DHS.

[19] LPRs are foreign nationals who have been granted the right to reside permanently in the United States. LPRs are often referred to simply as "immigrants," but they are also known as "permanent resident aliens" and "green card holders."  LPRs are permitted to live and work anywhere in the United States, to own property, to attend public schools, to join certain branches of the Armed Forces, and they may also become U.S. citizens if they meet certain eligibility requirements.

LPRs emigrated from the United States.[20]  Yet, the SSNs assigned to these individuals remain active.  Therefore, the numberholders—or anyone posing as the numberholders—could continue to use the SSNs to work in the United States long after they are authorized to do so.  Accordingly, we caution SSA and DHS that improper employment eligibility confirmations may eventually result from the incorrect citizenship status currently shown on these SSA records.

According to DHS, the remaining 19 misclassified numberholders needed further investigation before their work authorization status could be verified.  Specifically, if SSA's citizenship codes had been correct for these numberholders, the Basic Pilot would have referred these records to DHS for review and possible contact with the numberholder before work authorization was established.  Given the uncertainty of the numberholders' employment eligibility, we considered the discrepancies in SSA's citizenship codes to have caused improper Basic Pilot feedback and included these cases in Table 4.

## NON-U.S. CITIZENS

Non-U.S. citizen (noncitizen) records within SSA's Numident file contained a much higher degree of error than the U.S. citizen populations.  Specifically, of the 810 noncitizen records tested, 84 (10.4 percent) contained discrepancies that may result in inaccurate employment eligibility results from the Basic Pilot.  As shown in Table 5, these discrepancies resulted from differences in names, dates of birth, citizenship status and death indications.  Many of these differences were caused because the numberholder did not update his or her information with SSA (for example, the noncitizen did not notify SSA when he or she became a U.S. citizen).  As a result, we estimate that of the approximately 46.5 million noncitizen records contained in SSA's Numident file, 4.8 million contain discrepancies that could require the numberholder to visit an SSA office to correct his or her Numident record before employment eligibility would be confirmed.

Additionally, as in the native-born U.S. citizen population, we identified 50 numberholders who were age 90 or over and had no indication of death present on their SSA records and were not currently receiving SSA benefits.  As currently structured, the Basic Pilot would confirm employment eligibility for these individuals without any further contact or investigation.

---

[20] DHS, Office of Immigration Statistics Policy Directorate, publication Estimates of the Legal Permanent Resident Population and Population Eligible to Naturalize in 2004, issued February 2006.

**Table 5:  Non-U.S. Citizen Record Discrepancies
that May Affect Basic Pilot Results**

| Data Field | Number of Discrepancies |
|---|---|
| Name | 14 |
| Date of Birth | 3 |
| Citizenship Status | 57 |
| Death Indication | 10 |
| **Total** | **84** |

### *Name and Date of Birth Discrepancies that Affected Basic Pilot Results*

Fourteen (1.7 percent) of the 810 Numident records tested contained numberholders' names that differed from either the individuals' Form SS-5 or DHS-provided data.[21] When the alternate spellings were tested in the Basic Pilot, it returned an "SSA tentative nonconfirmation" for each.  Additionally, 3 (0.4 percent) other Numident records contained a date of birth that differed from the Form SS-5 or DHS data.  As such, these individuals' employment eligibility may not be initially verified through the Basic Pilot and the numberholders may have to correct their information with SSA.

### *Citizenship Status Discrepancies that Affected Basic Pilot Results*

Based on DHS information, we determined that 57 (7.0 percent) of the 810 noncitizens tested were actually U.S. citizens—but had not updated their immigration/citizenship status with SSA.  As a result, if these individuals alleged citizenship to an employer, the Basic Pilot would not initially confirm employment eligibility.  Although SSA is not at fault for these misclassifications, we estimate that of the 46.5 million non-U.S. citizen records in SSA's Numident file, about 3.3 million contain incorrect citizenship status codes.[22]  As such, these individuals may need to visit an SSA office to correct their Numident records before they would be confirmed eligible for employment by the Basic Pilot.

---

[21] In response to a draft of this report, SSA stated that in December 2005, the Agency began requiring noncitizens to show their legal name on the SSN card—as reflected on the immigration document. Before that date, noncitizens could use a name reflected on an identity document; however, the name on the immigration document should have been annotated on the Numident.

[22] We believe this is a conservative estimate because DHS was only able to provide citizenship data for 506 of the 810 non-U.S. citizens in our sample.

### *Death Indication Discrepancies that May Affect Basic Pilot Results*

Additionally, we determined that 10 (1.2 percent) of the 810 noncitizens within our sample may be deceased according to SSA records. However, the Basic Pilot confirmed employment eligibility for these numberholders. In seven of these cases, the Numident records had no indication the numberholder was deceased. Yet, other SSA records (that is, the Master Beneficiary Record) provided a date of death for the individuals. In the other three cases, the Numident records were annotated with a transaction code of "D," which indicates that a report of death was received by SSA, but the death was not confirmed.

As previously mentioned in this report, we do not believe the Basic Pilot should confirm employment eligibility without some additional contact with these individuals. Rather, we believe SSA should first reconcile its records and annotate any indications of death on the Numident—if an indicator is not already present. Secondly, we believe the Basic Pilot should issue a tentative nonconfirmation notice to employers that more investigation is necessary for individuals with a transaction code of "D" on the Numident record (and any other code SSA chooses to use for death indicators annotated from the aforementioned reconciliation).

### *Numberholders Age 90 and Over Receive No Further Screening by Basic Pilot*

Within the sample of 810 noncitizens reviewed, we identified 50 (6.2 percent) individuals age 90 and over who had no indication of death on his or her Numident record or any other SSA system of record and were not currently receiving SSA benefits. The oldest of these numberholders would be 139 in 2006. As mentioned previously in this report, we are concerned that the Basic Pilot has no control requiring additional investigation or contact with these numberholders before confirming employment eligibility. In fact, we tested these 50 individuals through the Basic Pilot and all were confirmed eligible for employment. As such, we believe the Basic Pilot should be revised to issue a notice to employers that more investigation is necessary when an employee is older than a pre-established age.

# *Conclusion*

Given the scope and breadth of information held in SSA's Numident file, we applaud the Agency on the accuracy of the data we tested.  However, we estimate that about 17.8 million Numident records contain discrepancies that may result in incorrect Basic Pilot feedback to employers.  As Congress considers legislation requiring mandatory verification of all U.S. workers' employment eligibility through a system such as the Basic Pilot, we believe it should also consider the significant workload that may result from the millions of numberholders whose Numident records may need to be corrected. Our review showed that the Numident records for these individuals have discrepancies in the numberholders' names, dates of birth, citizenship status and/or death indications that would result in inaccurate feedback from the Basic Pilot.

Because our tests included SSNs that were assigned decades ago, we recognize that some numberholders would no longer be working and would not attempt to correct their SSA and/or immigration records.  However, if even a portion of the estimated numberholders whose Numident records contained discrepancies were required to visit an SSA office to correct their information, the Agency's workload may significantly increase until such time as the affected records were corrected.

## *Other Matter*

### DHS' U.S. CITIZENSHIP AND IMMIGRATION SERVICES UNABLE TO LOCATE IMMIGRATION RECORDS FOR NONCITIZEN RECORDS

DHS' U.S. Citizenship and Immigration Services (USCIS) was unable to locate immigration records for 304 (37.5 percent) of the 810 noncitizen numberholders in our sample—through its computer data match. As such, for these numberholders, we could not determine whether SSA's Numident data matched DHS information (such as, name, date of birth and citizenship status). USCIS stated it could not match/locate these records through computer searches because of data compatibility problems. Specifically, USCIS' Central Index System records are organized by alien number (A-Number). Visitors or other noncitizens can be admitted under an I-94 Admission number. The records of these admissions are tracked in various DHS databases, primarily the Treasury Enforcement Communications System/Interagency Border Inspection System. We could only provide DHS with data SSA recorded on the noncitizen's Form SS-5 or in the Numident—which generally included the numberholder's name, date of birth, place of birth, parents' names, approximate date of entry to the United States (date of the SSN application) and, if SSA recorded it, the noncitizen's alien (A-number) or admission number.

We first requested immigration information from DHS for noncitizens in our sample on May 8, 2006. USCIS retained the services of a contractor, which used computer searches based on the numberholder's name and date of birth, in attempting to locate the records in USCIS' Central Index System. On occasion, USCIS also attempted to manually search its records for the individuals. On December 6, 2006, USCIS provided the following statement regarding its inability to match/locate some of these records.

> Thank you for the opportunity to comment on those records USCIS was unable to match. The attached file you provided contains the names and information of data either not found or not matched in entirety in the Central Index System (CIS) or in manual records located here. SSA provided names and dates of birth in order for USCIS to match data and locate an A-number within USCIS' Central Index System to determine the Class of Admission. Past attempts to match SSA and USCIS data have shown that it is difficult to match records without a common numerical identifier between the two systems (Numident and CIS). Since SSA uses SSN and CIS is A-number driven it can be difficult to match records based solely on name and date of birth because slightly different names may be used with each agency, and names may change. Moreover, birth dates may be incorrect or miskeyed in one system or the other. Additionally, there may be more than one person with the same name and date of birth, making it impossible to know which record is the correct match.
>
> It should be noted that the lack of a match does not mean the CIS system is deficient. It may well be the case that non-citizens who are not known to USCIS because they are illegal entrants have obtained SSNs, and thus have a

Numident record.  Without knowing the specifics of each of the 304 cases, we cannot draw conclusions about whether the mismatch was due to inadequate information provided, or due to the fact that no USCIS record exists on the subject of the Numident record.  The possibility that some are not known to USCIS because they are not lawful entrants should not be excluded.[1]  USCIS Records Division has checked CIS to the best extent possible based on the names and information provided.

---

[1] **Footnote to USCIS Statement.**  We would also note that a significant percentage of the records worked with overall in this study were older ones, which are the ones most likely to lack a corresponding USCIS record because they related to SSN's issued pre-1974, when SSA did not require proof of identity or citizenship, and thus are more likely to pertain to an unlawful alien than newer Numident records.

We believe certain aspects of USCIS' statement need further clarification.  First, we provided USCIS more data than just the numberholders' names and dates of birth.  Additionally, with respect to the footnote included in USCIS' statement, we would point out that 605 (74.7 percent) of the 810 noncitizen SSNs reviewed were assigned after April 15, 1974, the date on which SSA began requiring proof of alien status for noncitizens as part of the SSN application process.  In fact, 347 (42.8 percent) were assigned after January 1, 1990.  Further, of the 304 records USCIS could not match/locate, 184 (60.5 percent) of the SSNs were assigned after April 15, 1974.  In fact, 127 (41.8 percent) of the 304 records were assigned after January 1, 1990.

We acknowledge that most noncitizen numberholders seeking employment would be able to provide employers their alien or admission number so that DHS could confirm their employment eligibility through the Basic Pilot.  In many cases the newly hired employee shows his or her USCIS-issued documentation as proof of identity and work authorization, and this documentation includes an A-number or an I-94 Admission number.  Noncitizens are required to carry their immigration documentation with them at all times, so these numbers should be readily available.  USCIS advised us that in their operation of the Basic Pilot program and the evaluations they have been conducting for the last 7 years, they have not encountered lack of A-numbers or admission numbers on Form I-9 as a major concern raised by employers or employees participating in the Basic Pilot program.  One of these DHS-issued numbers must be listed on the Form I-9 by all noncitizen new hires, whether or not their employer is participating in the Basic Pilot.  Nevertheless, we are somewhat concerned with USCIS' inability to locate these records.  If only a small portion of the 46.5 million noncitizen numberholders have forgotten or misplaced their alien or admission numbers, the workload for DHS may increase as these individuals attempt to confirm their employment eligibility and/or correct their immigration records.

# *Appendices*

*Appendix A*

# Acronyms

| | |
|---|---|
| DHS | Department of Homeland Security |
| EDR | Electronic Death Reporting |
| HHS | Department of Health and Human Services |
| IRTPA | *Intelligence Reform and Terrorism Prevention Act of 2004* |
| MEF | Master Earnings File |
| OIG | Office of the Inspector General |
| SSA | Social Security Administration |
| SSN | Social Security Number |
| State | Department of State |
| U.S. | United States |
| U.S.C. | United States Code |

Forms

| | |
|---|---|
| I-9 | *Employment Eligibility Verification* |
| I-94 | *Arrival-Departure Record* |
| I-151 | *Alien Registration Receipt Card* |
| I-551 | *Permanent Resident Card* |
| I-766 and I-688B | *Employment Authorization Document* |
| SS-5 | *Application for a Social Security Card* |
| W-2 | *Wage and Tax Statement* |

*Appendix B*

# Scope and Methodology

To accomplish our objective, we performed the following steps.

- Reviewed pertinent sections of the Social Security Administration's (SSA) policies and procedures as well as other relevant Federal laws and regulations.

- Reviewed Office of the Inspector General, Government Accountability Office and Department of Homeland Security (DHS) reports and other relevant documents.

- Randomly selected a segment of SSA's Numident file as of November 30, 2005.[1] From the segment, we stratified the Social Security numbers (SSN) into three populations and randomly selected 810 Numident records for review from each: (1) native-born U.S. citizens, (2) foreign-born U.S. citizens and (3) non-U.S. citizens. Table 1 provides the actual number of SSNs in Segment 3, categorized by the aforementioned populations.

**Table 1:  Details of Sample Selected for Review**

| Column A | Column B | Column C | Column D |
|---|---|---|---|
| Category | Sample Size | Number of SSNs in Segment 3 of Numident File | Estimate of Total SSNs In Numident File for Each Category (Column C x 20) |
| Native-Born U.S. Citizens | 810 | 19,010,361 | 380,207,220 |
| Foreign-Born U.S. Citizens | 810 | 402,667 | 8,053,340 |
| Non-U.S. Citizens | 810 | 2,326,218 | 46,524,360 |
| **Total** | 2,430 | 21,739,246 | 434,784,920 |

- For each sample item, we obtained copies of the original *Application for a Social Security Card* (Form SS-5) and any subsequent SS-5s that resulted in an update to the numberholder's Numident record (for example, a name change or change in citizenship status.)

- We then compared the Numident data (name, SSN, date of birth, and citizenship status) to the SS-5s to ensure SSA personnel correctly recorded the information provided by the applicant.

---

[1] SSA stores Numident records in equal segments by arranging records in numerical order according to the last two digits of the SSN (for example, 80-84, 85-89, 90-94, etc).  Each segment represents 5 percent of all Numident records and there are 20 segments in total.  It is common practice for SSA to use a segment to estimate results to the entire file.

- We attempted to determine the legitimacy of any dates of death present on the Numident records, if applicable, by (1) researching SSA and other records to determine what State and/or jurisdiction the death occurred and (2) if located, requesting a copy of the death certificate from that location.

- For numberholders age 90 and over, who did not have a date of death annotated on their Numident records, we reviewed SSA's Master Beneficiary Record and Supplemental Security Income Record Display to determine whether a death indication was noted on these records for the individual and whether they were currently receiving SSA benefits.

- We verified foreign-born noncitizens' and foreign-born U.S. citizens' "citizenship" status with DHS and/or the Department of State (State).

- We obtained birth and, if applicable, marriage and/or death certificates for the first 50 sample items in each of the 3 populations.

- We submitted the 1,620 U.S. citizen SSNs through the Basic Pilot, using information provided by the numberholder on his or her Form SS-5.  Further, we submitted all noncitizen SSN records through the Basic Pilot when we could obtain DHS alien or admission numbers or when we identified any discrepancies between SSA and DHS information for the numberholder.

- We summarized and projected our results to the entire Numident universe (all 20 segments) as of November 30, 2005.  See Appendix C for our sample results.

### *Underlying Assumptions*

In performing our tests, we could not predict what proof of identity and employment eligibility a numberholder would present to an employer.  Therefore, we made the following assumptions.

- The information provided by the numberholder on his or her Form SS-5 was correct and would be the same data provided to an employer.

- The information provided by DHS and/or State was correct.

Our review of internal controls was limited to obtaining an understanding of SSA's SSN assignment process, the Numident file and the SSA/DHS Basic Pilot—and conducting the tests outlined above.  The objective of our review was to determine the reliability of the Numident file.  Accordingly, we determined that the Numident file information was generally reliable.  However, we did not test the information provided by DHS and State. Accordingly, we cannot opine to its reliability.  Any conclusions discussed in this report, which were predicated on information provided by DHS or State, have been annotated with the appropriate qualification.

The SSA entities audited were the Offices of Operations, Systems, and Income and Security Programs.  We conducted the audit between April and November 2006 in Birmingham, Alabama.  We conducted our audit in accordance with generally accepted government auditing standards.

*Appendix C*

# Sample Results

## Table 1:  Sample Results and Projections for All Citizenship Categories

| U.S. Citizens (Native- and Foreign-born) and Non-U.S. Citizens | |
| --- | --- |
| Population of SSNs assigned since 1936 from one segment of the Numident file[1] | 21,739,246 |
| Sample Size | 2,430 |
| **Attribute Projections** | |
| Number of discrepancies in sample | 136 |
| **Estimate of discrepancies in segment** | **887,344** |
| Projection—Lower Limit | 647,130 |
| Projection—Upper Limit | 1,127,558 |
| **Numident Estimate** | |
| **Estimate of discrepancies for the entire Numident file (887,344 x 20 segments)** | **17,746,880** |
| *Projections made at the 95-percent confidence level.* | |

---

[1] We estimate SSA assigned approximately 435 million SSNs between 1936 and November 2005 (21,739,246 in Numident segment 3 X 20 segments = 434,784,920).

**Table 2: Sample Results and Projections For Individual Citizenship Strata**

| Native-Born U.S. Citizens | |
|---|---|
| Population of SSNs assigned 1936-November 2005 from one segment of the Numident | 19,010,361 |
| Sample size | 810 |
| **Attribute Projection** | |
| Number of discrepancies in sample | 27 |
| **Estimate of discrepancies in segment** | **633,679** |
| **Numident Estimate** | |
| **Estimate of discrepancies for entire Numident file (633,679 x 20 segments)** | **12,673,580** |
| **Foreign-Born U.S. Citizens** | |
| Population of SSNs assigned 1936-November 2005 from one segment of the Numident | 402,667 |
| Sample size | 810 |
| **Attribute Projection** | |
| Number of  discrepancies in sample | 25 |
| **Estimate of discrepancies in segment** | **12,428** |
| **Numident Estimate** | |
| **Estimate of discrepancies for entire Numident file (12,428 x 20 segments)** | **248,560** |
| **Non-U.S. Citizens** | |
| Population of SSNs assigned 1936-November 2005 from one segment of the Numident | 2,326,218 |
| Sample size | 810 |
| **Attribute Projection** | |
| Number of discrepancies in sample | 84 |
| **Estimate of discrepancies in segment** | **241,237** |
| **Numident Estimate** | |
| **Estimate of discrepancies for entire Numident file (241,237 x 20 segments)** | **4,824,740** |

## Table 3: Other Projections for Foreign-Born U.S. Citizens

| Foreign-Born U.S. Citizens—Misclassified in the Numident File | |
|---|---|
| Population of SSNs assigned 1936-November 2005 from one segment of the Numident | 402,667 |
| Sample size | 810 |
| **Attribute Projection** | |
| Number of individuals who were not citizens in sample | 62 |
| **Estimate of number of individuals who are not citizens in segment** | **30,821** |
| **Numident Estimate** | |
| **Estimate of number of individuals who are not citizens in entire Numident file (30,821 x 20 segments)** | **616,420** |

## Table 4: Other Projections for Non-U.S. Citizens

| Non-U.S. Citizens—Misclassified in the Numident File | |
|---|---|
| Population of SSNs assigned 1936-November 2005 from one segment of the Numident | 2,326,218 |
| Sample size | 810 |
| **Attribute Projection** | |
| Number of instances in sample where citizenship was misclassified in sample | 57 |
| **Estimate of discrepancies in segment** | **163,697** |
| **Numident Estimate** | |
| **Estimate of number of instances where citizenship was misclassified in entire Numident file (163,697 x 20 segments)** | **3,273,940** |

*Appendix D*

# Basic Pilot

The Basic Pilot is a Department of Homeland Security (DHS) initiative, supported by the Social Security Administration (SSA) through a Memorandum of Understanding between the two agencies.[1]  The purpose of the Basic Pilot is to assist employers in verifying the employment eligibility of newly-hired employees.  The President signed *The Basic Pilot Program Extension and Expansion Act of 2003* (Public Law Number 108-156) into law on December 3, 2003.  This law extended the operation of the Basic Pilot for an additional 5 years (to a total of 11 years) and expanded the operation to all 50 States not later than December 1, 2004.

As discussed with SSA and DHS staff, the Basic Pilot involves using the information in Government databases (SSA databases and, if needed, DHS databases) to determine the employment eligibility of new hires.  The Social Security number (SSN) and Alien Registration Number ("A" Number) or I-94 Number (Admission Number) are used for these checks.  The employer must complete the DHS-issued *Employment Eligibility Verification Form* (Form I-9) for each employee and then enter elements of this data into the Basic Pilot within 3 days of hiring, including the employee's SSN, name, date of birth, and whether the new hire indicated he or she was a U.S. citizen and, if not, the "A" Number or I-94 Number.

The system first checks the information entered against SSA's database to verify the name, SSN, and date of birth of newly-hired employees, regardless of citizenship.  When the Numident indicates United States citizenship for the newly-hired employee and the new-hire indicated that he/she is a U.S. citizen, the Basic Pilot automated system confirms employment eligibility.  If the Basic Pilot system cannot confirm employment eligibility based on the information in SSA's database or an "A" Number or I-94 Number was entered, the Basic Pilot system checks the data against DHS' database.

The employer will receive notification of "SSA tentative nonconfirmation" of employment eligibility when the SSN, name, or date of birth does not match the information in SSA's database or if a death indicator is present.  Also, employers will receive an "SSA tentative nonconfirmation" if the new hire indicated he or she was a U.S. citizen and SSA's records did not show that the person was a U.S. citizen.  The employer will receive notification of "DHS tentative nonconfirmation" of employment eligibility when DHS' database does not show the newly-hired noncitizen as authorized for employment. In these cases, the employer asks the employee whether he or she wishes to contest the tentative nonconfirmation.  If contested, the employee must contact SSA or DHS within 8 Government working days of the notification.  After the employee contacts SSA or DHS to correct the record, the employer resubmits the query through the Basic Pilot system.  If the system does not confirm employment eligibility after the employer resubmits the query, the employer may terminate the new hire.

---

[1] Section 401 et seq. of the *Illegal Immigration Reform and Immigrant Responsibility Act of 1996* (8 U.S.C. §1324a), Pub. Law No. 104-208.

*Accuracy of the Social Security Administration's Numident File (A-08-06-26100)*

*Appendix E*

# Additional Discrepancies that Did Not Impact Basic Pilot Results

| Discrepancies that Did Not Impact Basic Pilot | Native-born U.S. Citizens | Foreign-born U.S. Citizens | Non-U.S. Citizens |
|---|---|---|---|
| Name | 13 | 167 | 160 |
| Date of Birth | 9 | 9 | 16 |
| Citizenship | 0 | 43 | 43 |
| **Totals:** | **22** | **219** | **219** |

# DISTRIBUTION SCHEDULE

Commissioner of Social Security

Office of Management and Budget, Income Maintenance Branch

Chairman and Ranking Member, Committee on Ways and Means

Chief of Staff, Committee on Ways and Means

Chairman and Ranking Minority Member, Subcommittee on Social Security

Majority and Minority Staff Director, Subcommittee on Social Security

Chairman and Ranking Minority Member, Subcommittee on Human Resources

Chairman and Ranking Minority Member, Committee on Budget, House of Representatives

Chairman and Ranking Minority Member, Committee on Government Reform and Oversight

Chairman and Ranking Minority Member, Committee on Governmental Affairs

Chairman and Ranking Minority Member, Committee on Appropriations, House of Representatives

Chairman and Ranking Minority, Subcommittee on Labor, Health and Human Services, Education and Related Agencies, Committee on Appropriations,
  House of Representatives

Chairman and Ranking Minority Member, Committee on Appropriations, U.S. Senate

Chairman and Ranking Minority Member, Subcommittee on Labor, Health and Human Services, Education and Related Agencies, Committee on Appropriations, U.S. Senate

Chairman and Ranking Minority Member, Committee on Finance

Chairman and Ranking Minority Member, Subcommittee on Social Security and Family Policy

Chairman and Ranking Minority Member, Senate Special Committee on Aging

Social Security Advisory Board

# Overview of the Office of the Inspector General

The Office of the Inspector General (OIG) is comprised of our Office of Investigations (OI), Office of Audit (OA), Office of the Chief Counsel to the Inspector General (OCCIG), and Office of Resource Management (ORM). To ensure compliance with policies and procedures, internal controls, and professional standards, we also have a comprehensive Professional Responsibility and Quality Assurance program.

## Office of Audit

OA conducts and/or supervises financial and performance audits of the Social Security Administration's (SSA) programs and operations and makes recommendations to ensure program objectives are achieved effectively and efficiently. Financial audits assess whether SSA's financial statements fairly present SSA's financial position, results of operations, and cash flow. Performance audits review the economy, efficiency, and effectiveness of SSA's programs and operations. OA also conducts short-term management and program evaluations and projects on issues of concern to SSA, Congress, and the general public.

## Office of Investigations

OI conducts and coordinates investigative activity related to fraud, waste, abuse, and mismanagement in SSA programs and operations. This includes wrongdoing by applicants, beneficiaries, contractors, third parties, or SSA employees performing their official duties. This office serves as OIG liaison to the Department of Justice on all matters relating to the investigations of SSA programs and personnel. OI also conducts joint investigations with other Federal, State, and local law enforcement agencies.

## Office of the Chief Counsel to the Inspector General

OCCIG provides independent legal advice and counsel to the IG on various matters, including statutes, regulations, legislation, and policy directives. OCCIG also advises the IG on investigative procedures and techniques, as well as on legal implications and conclusions to be drawn from audit and investigative material. Finally, OCCIG administers the Civil Monetary Penalty program.

## Office of Resource Management

ORM supports OIG by providing information resource management and systems security. ORM also coordinates OIG's budget, procurement, telecommunications, facilities, and human resources. In addition, ORM is the focal point for OIG's strategic planning function and the development and implementation of performance measures required by the Government Performance and Results Act of 1993.

# Exhibit 21



**U.S. Department of Justice**

Civil Rights Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Chuck Gray
Secretary of State
Herschler Building East
122 West 25th Street, Suite 100
Cheyenne, WY 82002-0020
**(b)(6)** ; secofstate@wyo.gov

Re:    **Complete Wyoming's Voter Registration List with All Fields**

Secretary Gray:

We have received Wyoming's statewide voter registration list ("VRL"). However, as the Attorney General requested, the electronic copy of the statewide VRL must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Wyoming's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6

---

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

CREW v. DOJ – CRT – 001305

(2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Wyoming's complete and current VRL. The purpose of the request is to ascertain Wyoming's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Wyoming must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing.

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at (b)(6)

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc:    Charles Young, Director, Elections Division
       Herschler Building East
       122 West 25th Street, Suite 99
       Cheyenne, WY 82002-0019
       Elections@wyo.gov

---

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

CREW v. DOJ – CRT – 001307