# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMON CAUSE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, *et al.*, <br><br> Defendants. | Case No. 1:26-cv-01352-SLS |

**DECLARATION OF ELENA NUNEZ ON BEHALF OF COMMON CAUSE**

I, Elena Nunez, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a U.S. citizen, over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2.      I am a member of Common Cause. As a full-time member of Common Cause's staff, I currently serve as Senior Vice President, States. I have served in this role and a substantially similar role since 2018 and have been a member of Common Cause's staff since 2007.

3.      In my role as Senior Vice President, States, I directly oversee all Common Cause state operations and support Common Cause work across the country, including our work to protect voting rights, promote ethical government, and hold power accountable. I also engage with Common Cause's policy, organizing, and external affairs staff to advance pro-voter, pro-democracy policy. I supervise my team's work with multiple coalitions to advance pro-voter reforms and increase civic engagement, including the national Election Protection Coalition.

4.      Common Cause is a nonprofit, nonpartisan membership organization incorporated under the laws of the District of Columbia. Pursuant to its bylaws, Common Cause is organized

and operated as a membership organization and acts in this action on behalf of itself and in a representative capacity on behalf of its members.

5.      Pursuant to its bylaws, Common Cause has defined who qualifies as a member. Under its definition, a "member" of Common Cause is any individual who, within the past two years, (a) made a financial contribution to the organization; or (b) has taken meaningful action in support of Common Cause's advocacy work. Such meaningful action includes, but is not limited to, signing petitions directed to government officials; participating in letter-writing or phone-banking campaigns; attending town halls, workshops, or rallies organized by Common Cause; or otherwise engaging in activities designed to advance the organization's mission. As of this writing, there are nearly one million members of Common Cause nationwide.

6.      Common Cause Education Fund (CCEF), an affiliated charitable nonprofit, provides education, engagement, and research to Common Cause members, constituents, partner organizations, and the public about voter registration and the electoral process. CCEF works to create public engagement on democracy issues and promote effective citizen participation, which is critical for a healthy and robust democratic society. For purposes of this declaration, references to "Common Cause" include the activities and operations of both Common Cause and CCEF.

7.      Common Cause has staff in 21 states (Arizona, California, Colorado, Florida, Georgia, Hawaii, Indiana, Maryland, Massachusetts, Michigan, Minnesota, Nebraska, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, Texas, and Wisconsin). Although we lack on-the-ground staff in some states, Common Cause has members in every state in the country, including other states that have shared their voter rolls with the federal government, such as Alaska, Arkansas, Kansas, Louisiana, Mississippi, Oklahoma, South Carolina, South Dakota, Tennessee, and Wyoming. Through our work with the Election

Protection Coalition, we support partners' work on election protection in states where we do not have staff. I also engage with Common Cause's policy, organizing, and external affairs staff to advance policies designed to protect the rights of all eligible Americans to vote, including in states where we do not physically have staff.

8. Common Cause's mission is to uphold the core values of American democracy by creating an open, honest, and accountable government that serves the public interest, promotes equal rights, opportunity, and representation for all, and empowers people to make their voices heard in the political process.

9. Common Cause believes the right to vote is the cornerstone of a functioning democracy. We are committed to ensuring that every eligible voter can register and cast their ballot, with a focus on communities who experience additional barriers to participation including Black people, Indigenous Peoples, Latina/o people, Asian/Pacific Islanders, other people of color, naturalized citizens, justice impacted individuals, young people, seniors, and people with disabilities. Through our legislative advocacy, Common Cause has ensured that voting around the country has remained as accessible as possible for eligible voters. Part of that work is to counter unlawful government conduct that could chill or prevent participation in the election process, such as unreliable ways of verifying voter eligibility and purging of voter registrations.

10. As part of its core mission, Common Cause works on a nonpartisan basis to expand and protect equal access to voting for all citizens on multiple fronts, including: (a) lobbying for nonpartisan election reforms, including, but not limited to, allowing no-excuse absentee voting, extending the deadlines for submitting mail-in ballots, increasing the number of voting locations, and ensuring a fair, nonpartisan redistricting process; (b) providing education and training to on-the-ground voting rights activists throughout the country; (c) working with

3

other community organizations to track problems at voting sites on Election Day, field calls from voters who experience burdens in their efforts to exercise their fundamental right to vote, and provide assistance to such voters by lobbying local election officials and/or facilitating their access to counsel; and (d) advocating for nonpartisan election reforms, such as an expansion of early voting, designed to promote racial equity by removing barriers to the franchise disproportionately borne by communities of color.

11.     Common Cause assists voters across the country in registering to vote, verifying, and/or updating their voter registration through outreach to our members in each state. For example, on National Voter Registration Day, Common Cause members and supporters across the country receive notices from us urging them to register to vote and/or to verify their registration status via tools embedded on our website. In 2024, nearly 6,000 voters registered to vote using the Common Cause web tools, and nearly 40,000 more verified their registration using these tools. Common Cause also engages in policy advocacy around voter registration and list maintenance issues and either directly registers voters or assists coalition partners who conduct voter registration.

12.     Common Cause also works to ensure that once registered, all voters can cast a ballot during early voting, on Election Day, or through absentee or mail-in voting. As Election Protection is one of our core organizational programs, Common Cause co-leads the national Election Protection Coalition to help Americans across the country navigate the voting process and cast their ballot without obstruction, confusion, or intimidation. Election Protection is the largest body of work for our state staff, particularly during an election year. Common Cause advances this work in a number of ways, including by managing and facilitating poll observation programs, which train volunteers to be present at polling locations to help identify issues and

obstacles to voting that prospective voters may experience. Volunteers are trained to help voters when they are unable to vote, such as when the voter is present at the wrong polling location. Our Election Protection program not only works to directly assist voters with access to the ballot, it helps us identify systemic problems so we can develop strategies to address them in the future.

13.    Common Cause has been committed to ensuring that registered voters are not erroneously removed from the voter list, because deleting a voter registration creates a risk of disenfranchisement. In various states that have attempted to adopt flawed data-matching processes designed to purge voter registrations, Common Cause has responded by engaging in advocacy to oppose such practices, bringing litigation to challenge those policies, and, where such processes are being implementing, conducting public education campaigns to remind voters to verify their registration status in advance of an election. In particular, Common Cause has opposed the use of the so-called SAVE system to determine voter eligibility, because the SAVE system contains systemic flaws that cause it to misidentify voters as non-citizens. We know from the federal government's own admission that citizenship data from the Social Security Administration and the Department of Homeland Security is filled with errors. Removing voter registrations based on flawed or error-prone processes directly undermines Common Cause's mission of ensuring that every eligible voter can register and cast their ballot.

14.    In Common Cause's experience, data-related errors are especially likely to occur for those who have naturalized or derived citizenship, those who have had name changes or variations in the spelling of their name, those born prior to 1981, those who have recently moved, and those with former felony convictions whose rights have been restored. Common Cause does not collect such data for all of our members, but we know through outreach efforts and other communications that our membership includes many individuals in these categories.

For example, in South Carolina, which Common Cause understands recently entered into an agreement to provide voter data to the Department of Justice ("DOJ"), Common Cause was able to identify several dozen members who fall into at least one of the above categories in only two days' time.

15.     If DOJ is allowed to use state voter data to direct the purging of voters' registrations using the SAVE system, that will directly impair Common Cause's organizational mission of promoting democracy and enabling and empowering citizens to engage in the political process. It will force us to redirect our resources from our core programming and activities, in the same way that past attempts to use the SAVE system and conduct voter purges have forced Common Cause to expend resources in order to protect the right to vote. For example, we have previously had to dedicate staff time to conduct direct outreach to members in Texas to help identify voters who may have been wrongly flagged for removal from the voter rolls based on faulty data from the SAVE system. In North Carolina, the State Board of Elections' plans to use the SAVE system have required our staff to work with partners to analyze the impact of the proposed rules, submit public comment with proposed revisions, and educate members about the rulemaking and how to submit public comment.

16.     If DOJ is allowed to continue collecting state voter data—and subsequently disclose it to the Department of Homeland Security or other entities, including contractors—that will also directly impair Common Cause's organizational mission of promoting political participation. Because of questions and concerns about the privacy of voter data and the possible misuses of such data, particularly due to the sharing of voter data with an agency responsible for immigration enforcement, Common Cause will have to devote staff time and other resources to create educational materials, update trainings, and expend greater resources in order to assist and

6

engage voters. For example, Common Cause anticipates that citizens living with undocumented family members will be among those who are more hesitant to register to vote as a result of DOJ sharing voter data with Department of Homeland Security. DOJ's actions therefore make Common Cause's work to register and engage voters more difficult and less effective.

17.    Common Cause members will also be harmed by DOJ's collection and disclosure of voter data.    Common Cause has more than 140,000 members residing in Alaska, Arkansas, Indiana, Kansas, Louisiana, Mississippi, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, and Wyoming alone (states that may have provided voter data to DOJ). DOJ's failure to adhere to legal requirements protecting private data while collecting and disclosing data puts many of these members' personal information at risk. Our members have a privacy interest in their own data, and Common Cause, as the organization that assisted many of them in registering or updating their registration, has an interest in protecting the integrity and privacy of that data. Any threat to the security of voter data, especially one that could result in the misuse of personal information, directly undermines our work, damages public trust, and risks chilling voter participation.

18.    To advance our mission, Common Cause also engages in the policymaking process by submitting comments in response to federal notices of rulemaking and policies. For example, when the Department of Homeland Security published a System of Records Notice in 2025 detailing its plans to repurpose the SAVE database for voting purposes, Common Cause and over 24,000 Common Cause members submitted comments opposing the change. Over 30,000 members joined Common Cause in submitting comments on a similar notice from the Social Security Administration. In the past five years, Common Cause has commented on rulemaking notices from various federal agencies including DOJ, the Election Assistance

Commission, the Federal Trade Commission, the National Telecommunications and Information Administration, the Census Bureau, and more.

19.     Had DOJ provided notice and opportunity for the public to offer comments on its policy to gather and maintain state voter data, conduct list maintenance on it, and share it with the Department of Homeland Security and other third parties, Common Cause would have participated in that process. Common Cause would have submitted its views, among others, that the DOJ lacks the legal authority to gather and maintain state voter data, that voters have concerns about potential misuse of their data, that the sharing of voter data with the Department of Homeland Security and other entities is likely to deter voter registration and participation, that collecting and sharing such data places Common Cause's members and other voters' information at risk, and that the federal SAVE system is not a reliable process for determining voter eligibility.

20.     Common Cause has limited resources. When new obstacles to voting appear, we need to increase our education and advocacy efforts to respond. We are already creating materials and responding to questions from our coalition partners and members who are concerned about the potential impact of DOJ's policy. For example, in Nebraska, our state staff faced a massive increase in questions from the public following the DOJ's request for the state's voter rolls. We expect that we will need to adapt our election protection trainings and voter education materials to address voter questions and confusion.

21.     If voters are purged from voter rolls, as contemplated in the agreements that DOJ has made with some states, we will need to increase our voter outreach and education to make sure voters know how to respond. We have had to respond to voter needs like this in the past. For example, after Florida eliminated the permanent vote by mail list, our Florida staff and partners

needed to do voter education and outreach to voters (phonebanks) to inform them of the changes in the law and what voters needed to do to continue to vote by mail. After a purge of nearly 95,000 voters from the voter rolls in Texas, our Texas staff did outreach to alert voters of the changes and provide information on registration. This additional assistance is essential to our current and core mission and function of helping people register and vote. When anyone, in this case the federal government, throws more obstacles in the way of eligible voters, we need to educate and assist voters in addressing those obstacles. As a result, our state staff are already planning to dedicate even more time to Election Protection than they may have in an ordinary election year, causing them to have less time for other organizational priorities. Anything less would depart from and diminish a central and longstanding mission of the organization.

22.     Common Cause is planning Election Protection programs for various primary and general elections occurring between now and November. Uncertainty about the DOJ's actions is interfering with our ability to prepare and execute our election plans. An important part of our work is to be a trusted resource for coalition partners, voters, and the public about voting laws, policies, and practices. The information the DOJ refuses to disclose is necessary for us to provide accurate information. If we provide information that is incorrect or incomplete, there is a risk of voters being disenfranchised. Not providing accurate guidance would also damage our hard-earned reputation and goodwill.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this Declaration was signed in New York City, NY, on May 15, 2026.

ELENA NUNEZ

9