# JOINT APPENDIX

# VOLUME V

a written explanation or declaration, signed under penalty of perjury, as to why neither their driver license/non-driver ID number or the last four (4) digits of their social security number can be provided. This project eliminated 260,076 of the problematic voter registration records from the state's voter file. The Secretary is directing a second project phase to address the 82,000 remaining insufficient records, which will involve registrars inactivating voters who do not provide a valid driver license number/non-driver identification number, the last four digits of a valid social security number, or complete a declaration. These individuals may become active registered voters and vote by simply updating their registration information to include a valid driver license/social security number (even on election day at the polls). Otherwise, they will remain inactive.

Experian Pilot

To help accomplish the address confirmation program required by Section 8 of the NVRA and Alabama Code Section 17-4-30, Secretary Allen utilized Experian's TrueTrace product in Alabama for the first time to compare credit bureau data with the statewide voter file. Hundreds of thousands of voters were located who were tied to a different address. This effort was modeled after the U.S. Election Assistance Commission's Experian Pilot Project. Also, 4,006 of deceased voters removed through AVID are attributable to TrueTrace data.

Over 100-Year-Old Registrant Review

In order to ensure voter rolls are as accurate, up-to-date, and reliable as possible, Secretary Allen led an effort to have the boards of registrars review, verify for accuracy, and/or correct, as appropriate, registrants whose voter records indicated that they are more than 100 years old. Some of these registrants' records required updates as they were determined to be deceased. Registrars were directed to verify voter system information for these over 100-year-old registrants by letter, by phone, and/or by reviewing obituaries. Registrars also used the voter registration system's Social Security verification feature to determine whether Social Security Administration data reflected the voter as deceased. Data indicates this project has substantially reduced the number of over 100-year-old registrants from 4,205 in February 2023 to 1,346 in May 2025.

Moving to your inquiries about Alabama's reported Election Assistance Commission's Election Administration and Voting Survey ("EAVS") and other statistical data:

1. *In the EAVS data for Question A1b, Alabama listed 3,466,606 Total Active Voters for 2024. According to the Secretary of State's website, the statistics show 3,492,761 active voters in November 2024: Voter Registration Statistics - 2024. Please explain the discrepancy.*

   This discrepancy is due to data reflecting different dates. "November 2024: Voter Registration Statistics – 2024" is voter registration data pulled at the end of the month or November 30, 2024. Thus, the November 2024: Voter Registration Statistics 2024 information reflects data from weeks after the November 2024 general election while the reported number is from the day of the election.

2. *In the EAVS data for Question A1c, Alabama listed 401,434 inactive voters for 2024. According to the Secretary of State's website, the statistics show 387,354 inactive voters in November 2024: Voter Registration Statistics - 2024. Please explain the discrepancy.*

   This discrepancy is due to data reflecting different dates. "November 2024: Voter Registration Statistics – 2024" is voter registration data pulled at the end of the month or November 30, 2024. Thus, the November 2024: Voter Registration Statistics – 2024 information reflects data from weeks after the November 2024 general election while the reported number is from the day of the election.

3. *In the EAVS data for Question A3d, Alabama had 571 voters (.02 percent) with duplicate registrations, significantly below the nationwide average of 12.7 percent. Please explain why duplicate registrations are such a low percentage of total registration transactions. Please explain what actions Alabama is taking to identify duplicate registrations and to remove those duplicates from the registration transactions.*

   Your letter notes that Alabama's duplicate voter registrations are reportedly significantly below the national average. While Alabama incorporates processes into Alabama's statewide voter system to successfully identify, address, and prevent duplicates during the voter registration/update process, and Secretary Allen has directed efforts to have registrars actively and periodically work to eliminate duplicate records using available processes in the system, after further inquiry, the reported number should be 5,873 duplicate removals. Alabama's EAVs report will be updated to reflect this correction as soon as possible.

   There are three basic ways duplicate checking occurs in Alabama's system:

   (1) Voter additions/updates (from a paper application) and voter additions/updates (from a scanned batch of voter applications) all require registrars to perform a statewide duplicate search before adding or updating a voter.

   (2) Voters who add or update their information through Alabama's online registration portal have a statewide duplicate check performed automatically by registrars immediately upon opening the incoming online record.

   (3) Registrars run batch reports to check for any additional voters that match across their county and across the state and resolve them as duplicates. focusing on voters registered at a single address, and then reviewing their names and associated demographics. Those registrants who are clearly identifiable as the same individuals (i.e., they share the same DOB, DLN, SSN) are processed by accepting the most recent record and marking all others as duplicate in the system. The same process is used to clean up incomplete or address errors in the system.

   Please note that duplicates identified during the voter registration/update process may not be captured in the total number of reported transactions as they were never fully added to the system as duplicates.

4. *Alabama failed to respond to EAVS Questions A4 -- A9. Please provide data responsive to these questions or explain, in detail, why it is not possible for the State to respond to each request.*

Alabama's boards of registrars' offices generally do not reliably record or distinguish the types of voter registration transactions specifically reflected in the A4 – A9 question categories. For example, question A8 asks about invalid registrations. While registrars should maintain those records, there is not an accurate way to collect and report data from the system concerning who submitted an invalid registration, i.e., no established mechanism to report that specific metric. While the sources of voter registration are generally tracked and recorded in the system by registrars, there is no reliable distinction made between the other categories that this question seeks. Therefore, any statistic provided in response to these questions would be inaccurate.

Data reflecting the general sources of registration the system tracks as entered by local registrars is provided below. This information should be most responsive to A4; however, the accuracy and completeness of the data is subject to the input methodology employed by each local registrar/registrars' office:

| **Registration Source** | **Transactions** |
|---|---|
| (a) Mail, Email, Fax | 20,832 |
| (b) In person | 62,719 |
| (c) Online | 223,943 |
| (d) Automatic | N/A |
| (e) Driver License Issuance | 762,121 |
| (f) NVRA Public Assistance | 33,657 |
| (g) Disability Assistance Programs | N/A* |
| (h) Armed Forces Recruitment | 77 |
| (i) State Designated Agencies | 3,075 |
| (j) Registration Drives | 16,309 |
| (k) Polling Places/Voting Sites | 24,771 |
| (l) Other: Schools/Universities | 4,941 |
| (m)Other: Unknown | 4,356 |
| ***Total Registration Transactions*** | ***1,156,801*** |

*included in NVRA Public Assistance (f).

Alabama's EAVs report will be updated to reflect this additional information as soon as possible.

5. *In the EAVS data, Question A12a shows that Alabama removed only 114,647 registrants, which is 2.96 percent of registered voters. Your removals are over three times below the national average. Please explain why the number of removals is low in Alabama relative*

*to the national average, and what actions the State is taking to ensure that voters who should not be on the voter roll are being removed.*

This discrepancy may be the result of the way system data is collected and was pulled when reporting. Alabama's voter system does not directly capture "removal" metrics that match the question. The limited reporting functionality of the system was used to report the previously reported 114,647. However, upon closer review of available data with the system vendor, the Secretary presents the following categories, including disqualification, suspense, and not eligible system records, which may be interpreted as removals for the timeframe in question (November 8, 2022 through October 21, 2024), with, again, the understanding that accuracy of the data is generally subject to how it was coded by the local registrars:

| | |
|---|---|
| Confirmation Mailing | 718 |
| Criminal Conviction (Moral Turpitude)* | 5,952 |
| Death Notice | 90,807 |
| Duplicate | 5,873 |
| Mental Incompetence | 77 |
| Moved | 12,016 |
| Noncitizen (U.S.) | 60 |
| NVRA Compliant Purge | 259 |
| Purged | 108 |
| Voter Request** | 980 |
| Transfer Notice | 754 |
| Other, including Suspense/Not Eligible Removals | 2,866 |
| ***Total*** | ***117,470*** |

*Including 63 removals classified in "pending felony review" status.

**Includes self-removal requests resulting from noncitizen letter process.

Alabama's EAVs report will be updated to reflect this correction as soon as possible.

6. *Alabama did not respond to EAVS Question A12e concerning failure to respond to a sent confirmation notice and not voting in the two most recent federal elections. Please provide responsive data or explain why Alabama is unable to respond to this request.*

Alabama's system does not provide a way to track voters who do not respond to notices. When NVRA notices are sent, the voter is flagged in the system as having received it and the "NVRA" designation is assigned to that voter. If the voter makes any kind of update over the next four years, the flag is removed. The system cannot generate a report to accurately reflect the number of individuals who did or who did not respond to a mailer.

If the question is asking about voters that are removed every four years as a result of the NVRA purge, then Alabama can provide that data; however, again, the system does not strictly track or generate reports of who did not respond to a mailer and did not vote in an election. The question specifically asks about voters removed in the timeframe of November 2022 and close of voter registration for November 2024 election. But, as you know, the NVRA purge should take place after each presidential election. Data from the 2021 and 2025 NVRA cycles in Alabama is provided below:

| **2021 NVRA Cycle** |
| --- |
| 136,251 removed (January 2021) |
| 394,762 confirmation mailers (April 2021) |

| **2025 NVRA Cycle** |
| --- |
| 116,286 removed (February 2025) |
| 432,964 mailers to moves out of county/state |
| 43,303 mailers to moves within county |
| 244,483 voters made NVRA-Inactive (June 2025) |

Your letter additionally requests information regarding removals for a different time period, October 21, 2022 through the present, for the following specific reasons: noncitizen, adjudicated incompetent, and felony conviction. Alabama's voter system, again, does not directly capture "removal" metrics that match the question, and all data is subject to how it was coded by the local registrars. The system most closely reflects the following categories, which may be interpreted as removals, and are coded for reasons that match as closely as possible the reason categories requested:

| | |
| --- | --- |
| Criminal Conviction (Moral Turpitude)* | 9,322 |
| Mental Incompetence | 121 |
| Noncitizen (U.S.) | 73 |
| Voter Request** | 1,739 |

*Including 120 removals classified in "pending felony review" status.

**Includes self-removal requests resulting from noncitizen letter process.

As to your request for a "current electronic copy of the State of Alabama's computerized statewide voter registration list[,]" the Secretary of State is prepared to provide the current electronic statewide voter list, including voter history information, pursuant to 52 U.S.C. § 20507(i). A Memorandum of Agreement between the USDOJ and the Alabama Secretary of State is requested to outline specific data sharing terms and to ensure compliance with applicable federal and state laws. Secretary Allen looks forward to beginning negotiations so that this information can be provided to your Department as soon as possible.

Finally, Alabama has a proven track record of being one of, if not the most conservative states in the Republic on voter registration and voter file maintenance. When comparing state percentages of voter removals, one may ask why there are so many ineligible voters on their rolls to be removed to begin with? Alabama does not allow automatic voter registration or day-of-election voter registration, which some conservative states, and most liberal states, do offer. You will notice in those states that enacted such policies, the number of new registrations skyrocketed. Secretary Allen takes voter registration requirements seriously and is ensuring that individuals meet those requirements prior to becoming registered to vote in Alabama.

Please do not hesitate to contact me at (334) 353-7857 or Mike.Jones1@sos.alabama.gov should you have any questions or require further assistance from this Office.

Sincerely,

Michael L. Jones, Jr.
General Counsel

Enclosures

**U.S. Department of Justice**

Civil Rights Division

## CONFIDENTIAL MEMORANDUM OF UNDERSTANDING

### I. PARTIES & POINTS OF CONTACT.

Requester
Federal Agency Name: Civil Rights Division, U.S. Department of Justice
VRL/Data User:
Title:
Address:
Phone:

VRL/Data Provider
State Agency Name:
Custodian:
Title:
Address:
Phone:

The parties to this Memorandum of Understanding ("MOU" or "Agreement") are the Department of Justice, Civil Rights Division ("Justice Department" or "Department"), and the **[Insert Entity/Agency Name]** ("You" or "your state").

### II. AUTHORITY.

By this Agreement, **[Insert Entity/Agency Name]** ("You" or "your state") has agreed to, and will, provide an electronic copy of your state's complete statewide Voter Registration List ("VRL" or "VRL/Data") to the Civil Rights Division of the U.S. Department of Justice (at times referred to as the "Department"). The VRL/Data must include, among other fields of data, the voter registrant's full name, date of birth, residential address, his or her state driver's license

number or the last four digits of the registrant's social security number as required under the HAVA to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A).

The authorities by which this information is requested by the Department of Justice are:

- National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq*.
- Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. See 52 U.S.C. § 20501(a).
- Help America Vote Act of 2002, 52 U.S.C. § 20901, *et seq.*
- Attorney General's authority to enforce the Help America Vote Act under 53 U.S.C. § 21111.
- Attorney General authority to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*.
- The Privacy Act of 1974, 5 U.S.C. § 552a, as amended.

## III. PURPOSE.

A VRL is a Voter Registration List pursuant to the NVRA and HAVA, commonly referred to as "voter roll," compiled by a state – often from information submitted by counties – containing a list of all the state's *eligible* voters. Regardless of the basis for ineligibility, ineligible voters do not appear on a state's VRL when proper list maintenance is performed by states. The Justice Department is requesting your state's VRL to test, analyze, and assess states' VRLs for proper list maintenance and compliance with federal law. In the event the Justice Department's analysis of a VRL results in list maintenance issues, insufficiency, inadequacy, anomalies, or concerns, the Justice Department will notify your state's point of contact of the issues to assist your state with curing.

The purpose of this MOU is to establish the parties' understanding as to the security protections for data transfer and data access by the Department of Justice of the electronic copy of the statewide voter registration list, including all fields requested by the Department of Justice.

## IV. TIMING OF AGREEMENT – TIME IS OF ESSENCE.

Although the Justice Department is under no such obligation as a matter of law, because this Agreement is proposed, made, and to be entered into at your state's request as part of your state's transmission of its VRL to the Justice Department, this Agreement is to be fully executed within seven (7) days of the Justice Department presenting this Agreement to you. Both parties agree that no part of this Agreement or execution is intended to, or will, cause delay of the transmission of your state's VRL to the Justice Department for analysis.

## V. TIMING OF VRL/DATA TRANSFER.

You agree to transfer an electronic copy of your state's complete statewide VRL/Data to the Civil Rights Division of the U.S. Department of Justice as described in Section III of this Agreement no later than five (5) business days from the execution of this Agreement, which is counted from the last day of the last signatory.

## VI. METHOD OF VRL/DATA ACCESS OR TRANSFER.

The VRL will be submitted by your state via the Department of Justice's secure file-sharing system, i.e., Justice Enterprise File Sharing (JEFS"). A separate application to use JEFS must be completed and submitted by your state through the Civil Rights Help Desk. JEFS implements strict access controls to ensure that each user can only access their own files. All files and folders are tied to a specific user, and each user has defined permissions that govern how they may interact with those files (e.g., read, write, or read-only).

Whenever a user attempts to access a file or folder, JEFS validates the request against the assigned permissions to confirm that the user is explicitly authorized. This process guarantees that users can only access files and folders only where they have permission. Users are also limited to the authorized type of interaction with each file or folder. Within the Department of Justice, access to JEFS is restricted to specific roles: Litigation Support, IT staff, and Civil Rights Division staff.

## VII. LOCATION OF DATA AND CUSTODIAL RESPONSIBILITY.

The parties mutually agree that the Civil Rights Division (also "Department") will be designated as "Custodian" of the file(s) and will be responsible for the observance of all conditions for use and for establishment and maintenance of security agreements as specified in this agreement to prevent unauthorized use. The information that the Department is collecting will be maintained consistent with the Privacy Act of 1974, 5 U.S.C. § 552a. The full list of routine uses for this collection of information can be found in the Systems of Record Notice ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (August 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include NVRA, HAVA, and the Civil Rights Act of 1960, and the Justice Department is making our request pursuant to those statutes. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

VRL/Data storage is similar to the restricted access provided on JEFS and complies with the SORN: Information in computer form is safeguarded and protected in accordance with applicable Department security regulations for systems of records. Only a limited number of staff members who are assigned a specific identification code will be able to use the computer to access

the stored information. However, a section may decide to allow its employees access to the system in order to perform their official duties.

All systems storing the VRL data will comply with all security requirements applicable to Justice Department systems, including but not limited to all Executive Branch system security requirements (e.g., requirements imposed by the Office of Management and Budget [OMB] and National Institute of Standards and Technology [NIST]), Department of Justice IT Security Standards, and Department of Justice Order 2640.2F.

## VIII. NVRA/HAVA COMPLIANT VOTER REGISTRATION LIST.

After analysis and assessment of your state's VRL, the Justice Department will securely notify you or your state of any voter list maintenance issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, the Justice Department found when testing, assessing, and analyzing your state's VRL for NVRA and HAVA compliance, i.e., that your state's VRL only includes eligible voters.

You agree therefore that within forty-five (45) days of receiving that notice from the Justice Department of any issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, your state will clean its VRL/Data by removing ineligible voters and resubmit the updated VRL/Data to the Civil Rights Division of the Justice Department to verify proper list maintenance has occurred by your state pursuant to the NVRA and HAVA.

## IX. CONFIDENTIALITY & DEPARTMENT SAFEGUARDS.

Any member of the Justice Department in possession of a VRL/Data will employ reasonable administrative, technical, and physical safeguards designed to protect the security and confidentiality of such data. Compliance with these safeguards will include secure user authentication protocols deploying either: (i) Two-Factor Authentication ("2FA"), which requires users to go through two layers of security before access is granted to the system; or (ii) the

assignment of unique user identifications to each person with computer access plus unique complex passwords, which are not vendor supplied default passwords.

The Department will activate audit logging for the records, files, and data containing the state's VRL/Data in order to identify abnormal use, as well as to track access control, on computers, servers and/or Devices containing the VRL/Data.

For all devices storing records, files, and data containing the VRL/Data: there is (i) up-to-date versions of system security agent software that includes endpoint protection and malware protection and reasonably up-to-date patches and virus definitions, or a version of such software that can still be supported with up-to-date patches and virus definitions, and is set to receive the most current security updates on a regular basis; and (ii) up-to-date operating system security patches designed to maintain the integrity of the personal information.

For all devices storing records, files, and data containing the VRL/Data: there is (i) controlled and locked physical access for the Device; and (ii) the prohibition of the connection of the Device to public or insecure home networks.

There will be no copying of records, files, or data containing the VRL/Data to unencrypted USB drives, CDs, or external storage. In addition, the use of devices outside of moving the records, files, or data to the final stored device location shall be limited.

Any notes, lists, memoranda, indices, compilations prepared or based on an examination of VRL/Data or any other form of information (including electronic forms), that quote from, paraphrase, copy, or disclose the VRL/Data with such specificity that the VRL/Data can be identified, or by reasonable logical extension can be identified will not be shared by the Department. Any summary results, however, may be shared by the Department.

In addition to the Department's enforcement efforts, the Justice Department may use the information you provide for certain routine, or pre-litigation or litigation purposes including:

present VRL/Data to a court, magistrate, or administrative tribunal; a contractor with the Department of Justice who needs access to the VRL/Data information in order to perform duties related to the Department's list maintenance verification procedures. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. § 552a(m).

**X. LOSS OR BREACH OF DATA.**

If a receiving party discovers any loss of VRL/Data, or a breach of security, including any actual or suspected unauthorized access, relating to VRL/Data, the receiving party shall, at its own expense immediately provide written notice to the producing party of such breach; investigate and make reasonable and timely efforts to remediate the effects of the breach, and provide the producing party with assurances reasonably satisfactory to the producing party that such breach shall not recur; and provide sufficient information about the breach that the producing party can reasonably ascertain the size and scope of the breach. The receiving party agrees to cooperate with the producing party or law enforcement in investigating any such security incident. In any event, the receiving party shall promptly take all necessary and appropriate corrective action to terminate unauthorized access.

**XI. DESTRUCTION OF DATA.**

The Department will destroy all VRL/Data associated with actual records as soon as the purposes of the list maintenance project have been accomplished and the time required for records retention pursuant to applicable law has passed. When the project is complete and such retention requirements by law expires, the Justice Department will:

1. Destroy all hard copies containing confidential data (e.g., shredding);
2. Archive and store electronic data containing confidential information offline in a secure location; and

3. All other data will be erased or maintained in a secured area.

## XII. OTHER PROVISIONS.

A. Conflicts. This MOU constitutes the full MOU on this subject between the Department and your state. Any inconsistency or conflict between or among the provisions of this MOU, will be resolved in the following order of precedence: (1) this MOU and (2) other documents incorporated by reference in this MOU (e.g., transaction charges).

B. Severability. Nothing in this MOU is intended to conflict with current law or regulation or the directives of Department, or the your state. If a term of this MOU is inconsistent with such authority, then that term shall be invalid but, to the extent allowable, the remaining terms and conditions of this MOU shall remain in full force and effect.

C. Assignment. Your state may not assign this MOU, nor may it assign any of its rights or obligations under this MOU. To the extent allowable by law, this MOU shall inure to the benefit of, and be binding upon, any successors to the Justice Department and your state without restriction.

D. Waiver. No waiver by either party of any breach of any provision of this MOU shall constitute a waiver of any other breach. Failure of either party to enforce at any time, or from time to time, any provision of this MOU shall not be construed to be a waiver thereof.

E. Compliance with Other Laws. Nothing in this MOU is intended or should be construed to limit or affect the duties, responsibilities, and rights of the User Agency under the National Voter Registration Act, 52 U.S.C. § 20501 *et seq*., as amended; the Help America Vote Act, 52 U.S.C. § 20901 *et seq*., as amended; the Voting Rights Act, 52 U.S.C. § *10301 et seq*., as amended; and the Civil Rights Act, 52 U.S.C. § 10101 et seq., as amended.

F. Confidentiality of MOU. To the extent allowed by applicable law, this MOU, its contents, and the drafts and communications leading up to the execution of this MOU are deemed

by the parties as "confidential." Any disclosures therefore could be made, if at all, pursuant to applicable laws or court orders requiring such disclosures.

**SIGNATURES**

VRL/Data Provider
State Agency Name:
Signature: ______________________________________ Date of Execution:________________

Authorized Signatory Name Printed:______________________________

Title: ______________________________

Requester
Federal Agency Name: Civil Rights Division, U.S. Department of Justice

Signature: ______________________________________ Date of Execution:________________

Authorized Signatory Name Printed:______________________________

Title: ______________________________

COLE JESTER

ARKANSAS SECRETARY OF STATE

August 21, 2025

Via Email

Michael E. Gates, Deputy Assistant Attorney General
Harmeet K. Dhillon, Assistant Attorney General
Civil Rights Division
Office of the Assistant Attorney General
950 Pennsylvania Ave.,
NW Washington, D.C. 20530
Voting.section@usdoj.gov

Dear Mr. Gates and Ms. Dhillon:

Please see below the Arkansas Secretary of State Office's responses to the questions posed in your letter dated July 25, 2025. By way of preface, I would like to explain the process for how EAVS survey results are reported from Arkansas. After the survey is received from the EAC, the survey is sent to each county for them to individually respond to all inquiries listed in the survey. One of the priorities of this administration is to provide enhanced training to county clerks to further ensure accurate results in all future EAVS surveys. We are always happy to partner with your administration to ensure that our voter rolls are as secure and accurate as possible. I have also included a list of our county clerks for all 75 counties in Arkansas. This would be the list of election offials responsible for list maintenance. The current voter file will be in the Dropbox link sent along with this document, as well as an excel detailing all voters who have been removed from Arkansas voter rolls, as well as the reason for the removal.

Election integrity is one of the top priorities of our office. We are always seeking ways to further secure our elections, and are proud to report that less than 2% of Arkansans vote by mail in Arkansas. We are thankful for the partnership we have with President Trump and the Department of Justice in securing our elections and building public trust in government.

The Arkansas Secretary of State Office's responses to your questions are as follows:

State Capitol • Suite 256 • 500 Woodlane Street • Little Rock, Arkansas 72201-1094
501-682-1010 • Fax 501-682-3510
e-mail: arsos@sos.arkansas.gov • www.sos.arkansas.gov

1. **<u>In the EAVS data for Questions A1c, total inactive voters, and A1a, total registered voters, Arkansas reported that it has 476,064 inactive voters out of 1,835,723 total registered voters. Arkansas' percentage of inactive voters out of all registered voters, 25.93 percent, is the highest of all reporting states. Please explain Arkansas' process for determining if a voter should be listed as inactive. Please explain the process of removing inactive voters from the voter rolls.</u>**

Arkansas takes the NVRA very seriously, so much so that we have incorporated its provisions into Arkansas law. The NVRA and corresponding Arkansas law are executed by the "permanent registrars" of each county using the "two consecutive elections" rule. Under that rule a voter is determined to be inactive if he or she has failed to vote in two consecutive federal general elections and fails to respond to the confirmation sent by the permanent registrar.

The county clerks are the permanent registrars who utilize the Arkansas Secretary of State's voter registration program, which includes the voter history information necessary to identify potentially active voters. Arkansas registrars identify potentially inactive voters based off voter history by identifying voters who have not voted in two federal general election cycles. A confirmation notice in the form of a postcard is mailed to the potentially inactive voter's residence which gives the voter the opportunity to confirm his or her voter registration status. If a potentially inactive voter does not respond within 10 days of receipt of the confirmation notice, the voter is categorized as inactive. If an inactive voter does not vote for one additional federal election cycle a second postcard is sent to the voter informing him or her that if no response is received the voter will be removed from the voter rolls.

County registrars use the NVRA module which is included in Arkansas's voter registration system in removing nonresponsive inactive voters. To remove an inactive voter from the voter roll, the registrar first runs a report to identify inactive voters who have failed to vote in a federal general election cycle after being classified as inactive. This report constitutes the "correspondence list" of all inactive voters who will be sent a confirmation notice prior to being removed from the voter rolls. After this list is compiled, the county registrar sends confirmation notices to all of the qualified inactive voters and awaits responses from the voters. If a voter responds to the confirmation notice within 10 days of receipt, he or she is reclassified as an active voter. All voters who do not respond are added to the cancellation list, and all nonresponsive voters are removed from the county voter roll.

Unfortunately, Arkansas's voter turnout rate is historically low. Arkansas's voter turnout rate for the 2022 federal general election was 50.8%. The voter turnout rate for the 2024 federal general election was 64.94%. Though Arkansas has increased the early voting window to encourage voter turnout, and voter turnout is on the rise,

State Capitol • Suite 256 • 500 Woodlane Street • Little Rock, Arkansas 72201-1094
501-682-1010 • Fax 501-682-3510
e-mail: arsos@sos.arkansas.gov • www.sos.arkansas.gov

many Arkansans did not participate in two federal election cycles and thus were categorized as inactive voters in accordance with Arkansas and federal law. Arkansas continues to work to encourage all voters to exercise their right to vote in all elections.

2. **In the EAVS data for Question A3d, duplicate registrations, Arkansas reported "Does not apply" for 45 out of 75 counties, reported "Data not available" for four out of 75 counties, reported zero duplicate registrations for 25 counties, and reported 58 duplicate registrations for one county. In the EAVS data for Question A12h, the number of voters removed for duplicate records, Arkansas reported 2,958 records removed (1.7 percent of all voters removed). Please provide the number of duplicate registrations for each county for Question A3d. Please explain whether Arkansas checks the voter lists for duplicate registrations, and, if so, please describe the process and how often the check is performed.**

Arkansas's voter registration system has built-in processes to guard against duplicate registrations. Every time a new voter registration is submitted or a voter registration change is submitted to a county Arkansas's voter registration system runs a check of that voter and flags for the registrar any duplicate registrations related to that voter. This check is not just county-specific, but instead the voter's information is cross-checked with the voter rolls of every county in Arkansas. If a duplicate is found the new data is merged into the preexisting data to prevent double registration of a voter. Thus, voter lists are checked for duplicate registration every time a voter submits new information to the county registrar.

We have compiled into spreadsheet format all data for duplicate registrations which our office could pull from our voter registration system. This information will be provided to your office via a separate Dropbox link.

3. **In the EAVS data for Question A13a, records merged or linked, Arkansas reported "Does not apply" for seven out of 75 counties, reported "Data not available" for 67 out of 75 counties, and reported 25 records merged or linked for one county. Please explain if Arkansas has a process for merging voter records and, if so, how many records it merged for each county.**

Arkansas's process for merging voter records is closely intertwined with Arkansas's process for identifying duplicate voter registrations.

Every time a voter submits new voter information to Arkansas, whether that be through a new registration, an address change, change of party, etc., this information is processed into Arkansas's voter registration system. The system then runs a search for any previous information tied to that voter. This check is performed across voter rolls from every Arkansas county, not just the county where the voter is attempting

State Capitol • Suite 256 • 500 Woodlane Street • Little Rock, Arkansas 72201-1094
501-682-1010 • Fax 501-682-3510
e-mail: arsos@sos.arkansas.gov • www.sos.arkansas.gov

to register. If a duplicate entry is found, the updated information is then merged into the previously existing voter information.

For example, if a voter who had previously registered in Pulaski County submitted updated information to the county registrar to change his or her address to a new location in Garland County, once this information was uploaded into the voter registration system, the system would flag the previous Pulaski County registration, and the county registrar would then merge the updated address information into the previously existing Pulaski County information. The result of this would be that all voter information would remain the same except the new address information, which would replace any previously existing information, and the voter would only be allowed to vote in Garland County.

When new voter information is merged into previously existing voter information, the information is retained into one registration identification number, and is no longer a separate entity. We have compiled into spreadsheet format all data for merged registrations which our office could pull from our voter registration system. This information will be provided to your office via a separate Dropbox link in the file entitled "Duplicates 2023-2024."

4. **In the EAVS data for Question A12c, Arkansas reported that it removed 39,510 records because the voters were deceased. The CDC data shows 73,613 deaths in Arkansas for 2022-23. Arkansas' ratio of the number of deaths in the state to the number of deceased voters removed is higher than that of most states who reported the relevant EAVS data. Please explain Arkansas' process for checking whether a voter on the voter lists is deceased and for removing the records of deceased voters from the voter lists.**

Just over half of all Arkansans are registered voters, which we believe is in large part responsible for the discrepancy in CDC reported deaths and voters removed for reason of being deceased.

The Arkansas Secretary of State is continually encouraging Arkansas citizens to register to vote. This office has utilized programs, educational videos, and other forms of outreach to educate and encourage Arkansans to exercise their fundamental right to vote and make their voice heard. Our education department also works with young voters to help them register to vote for the first time.

Arkansas has simplified the process for registering to vote, working with other federal and state partners, such as the Department of Motor Vehicles, to encourage people to simply and quickly register to vote while getting a federal or state identification card.

Regarding deceased voters, Arkansas employs several methods for identifying deceased voters. The primary method is through use of the vital records agency lists which are built into Arkansas's voter registration system. These lists are compiled monthly at the state level by the Secretary of State based on data supplied by the Arkansas Department of Human Services. The list is broken down by county, and is then sent to each individual county registrar through the voter registration system. The county registrars use these lists to search for all of the listed deceased voters and remove all voters who are listed as deceased.

In addition to the vital records agency lists provided by the Secretary of State, some counties also utilize local obituaries to identify deceased voters in their counties. Family members also report to the county clerk that a family member is deceased so that they can be removed by the voter roll. This is just one example of how important voter roll accuracy and election security is to Arkansans.

Arkansas continues to improve in identifying and removing deceased voters from our voter rolls. Recently, Arkansas has applied for and been granted access to the Master Death File which is managed by the Social Security Administration. The Master Death File is important because it is a national register of deceased individuals, and thus can provide information on individuals who have died outside of Arkansas's borders. Our office uses the Master Death File in the same way that we use the Arkansas Department of Human Services death list to identify deceased voters in each individual county in Arkansas. This has allowed Arkansas to further secure our voter rolls by granting us the ability to identify deceased voters who have been living outside of Arkansas's borders, but may still be registered to vote in Arkansas.

To further assist your Department, our office has compiled a "death file" list identifying all voters who were removed from Arkansas voter rolls in 2023 and 2024 because the voter is deceased. To facilitate ease of use this document has been provided in Excel spreadsheet form and will be provided via a Dropbox link to your office.

Arkansas is always looking for additional ways to identify deceased voters and secure our voter rolls and is happy to implement any additional suggestions your Department may have in furtherance of this shared goal.

5. **In the EAVS data for Questions A10a and A1b, Arkansas reported that it sent 491,272 confirmation notices out of 1,359,659 total active registered voters. Arkansas sent confirmation notices to 36.13 percent of total active registered voters in the state, which is much higher than the national average of 19.5 percent. Please explain Arkansas' process for determining when to send a confirmation notice to an active registered voter.**

State Capitol • Suite 256 • 500 Woodlane Street • Little Rock, Arkansas 72201-1094
501-682-1010 • Fax 501-682-3510
e-mail: arsos@sos.arkansas.gov • www.sos.arkansas.gov

Under Arkansas and federal law, a confirmation notice should be sent to any active voter who has not voted in the two most recent federal general elections. If a voter responds to the confirmation notice his or her classification will not be changed, but if no response is received the voter will be classified as inactive.

An inactive voter can still vote in any election, and if the voter does so he or she will be reclassified as active. However, if an inactive voter misses one more general federal election, a second confirmation notice is sent out. If the inactive voter responds to this notice the voter will be reclassified as active. If the inactive voter does not respond, the voter will be removed from the voter rolls. The voter is then sent a notice of cancellation. If the removed voter contacts the county clerk after receiving the notice of cancellation, they can be re-added back to the voter rolls as an active voter. This is in compliance with Arkansas Code Annotated § 7-5-903.

Arkansas's voter turnout rate for the 2022 federal general election was 50.8%. The voter turnout rate for the 2024 federal general election was 64.94%. Though Arkansas has increased the early voting window to encourage voting turnout, and voter turnout is on the rise, many Arkansans did not participate in two federal election cycles and thus were categorized as inactive voters in accordance with Arkansas and federal law. Arkansas continues to work to encourage all voters to exercise their right to vote in all elections. However, it is our belief that low voter turnout is the reason for why 36.13% of active voters in Arkansas received a confirmation notice in compliance with Arkansas and federal law. Though many voters have missed two federal election cycles, Arkansas continues to encourage voter participation.

6. **Arkansas also reported "Does not apply" or "Data not available" for most counties for Questions A11a through A11k. Please provide the data for each county in Arkansas for A11, reasons for sending confirmation notices to voters, or explain why the data is not available.**

Per Arkansas and federal law, Arkansas sends confirmation notices when a voter fails to vote in the two most recent federal general elections (A11c).

Though not an official confirmation notice, Arkansas also sends written notifications to voters when a new registration is received, when a voter becomes inactive, and when a person is removed or purged from a voter registration list. *See* Ark. Code Ann. § 7-5-903. Thus, a voter receives written notification when the voter is removed for reason of: (1) having a disqualifying criminal conviction or is otherwise incarcerated and disqualified from voting (A11d); (2) a voter requests to be removed from the voter rolls (A11e); (3) a voter is declared incompetent pursuant to state law (A11f); the voter is deceased (A11g); the voter surrendered their state driver's license

and obtained a new license in a different state (A11h); and, if a voter is removed or determined to be inactive for failure to respond to a confirmation notice (A11i). These, however, are not classified as confirmation notices, but instead are written notifications pursuant to state law.

When a confirmation notice is returned to a county clerk as undeliverable by the post office, the county clerk either classifies the voter as inactive if he or she was previously classified as active, or will remove the voter from the voter roll if the voter is classified as inactive. A written notification of removal or reclassification is sent to the last known address of the voter in accordance with state law.

Additionally, when the Secretary of State learns that a voter may have moved outside of Arkansas's jurisdiction (A11b), whether that be through information gathered from National Change of Address reports, through our partnership with Experian, or through any other means, a letter is sent to the voter to inform him or her that information has been received that the voter has moved, and the voter needs to update his or her voter registration information accordingly. We have compiled an Excel spreadsheet of all information received regarding Arkansas voters who have changed their addresses in our voter registration system. To facilitate ease of use, this information will be provided via a Dropbox link to be sent your Department.

Regarding confirmation notices sent when a voter fails to vote in the two most recent federal general elections, the amount of confirmation mailings by county are as follows:

- Arkansas – as of August 1, 2023, 2,060 notices
- Ashley – as of February 23, 2023, 2,969 notices
- Baxter – as of July 7, 2023, 6,479 notices
- Benton – as of March 6, 2023, 53,653 notices
- Boone – as of March 2, 2023, 6,304 notices
- Bradley – as of May 19, 2023, 1,270 notices
- Calhoun – as of March 29, 2023, 720 notices
- Carroll – as of May 11, 2023, 3,559 notices
- Chicot – as of June 29, 2023, 1,263 notices
- Clark – as of May 30, 2023, 2,626 notices
- Clay – as of July 21, 2023, 2,785 notices
- Cleburne – as of April 11, 2023, 4,338 notices
- Cleveland – as of March 6, 2023, 1,020 notices
- Columbia – as of April 26, 2023, 3,298 notices
- Craighead – as of March 3, 2023, 17,059 notices
- Crawford – as of October 24, 2023, 9,033 notices

- Crittenden – as of July 26, 2023, 8,060 notices
- Cross – as of August 30, 2023, 2,089 notices
- Desha – as of May 26, 2023, 2,020 notices
- Drew – as of April 13, 2023, 2,572 notices
- Faulkner – as of March 6, 2023, 19,765 notices
- Franklin – as of March 30, 2023, 2,165 notices
- Fulton – as of March 28, 2023, 1,652 notices
- Garland – as of June 16, 2023, 16,843 notices
- Grant – as of June 14, 2023, 248 notices
- Greene – as of May 15, 2023, 5,887 notices
- Hempstead – as of May 9, 2023, 2,744 notices
- Hot Spring – as of March 14, 2023, 4,135 notices
- Howard – as of March 28, 2023, 1,834 notices
- Independence – as of April 19, 2023, 5,963 notices
- Izard – as of October 19, 2023, 2,372 notices
- Jackson – as of April 13, 2023, 1,714 notices
- Jefferson – as of June 27, 2023, 9,736 notices
- Johnson – as of April 10, 2023, 6,005 notices
- Lafayette – as of March 22, 2023, 966 notices
- Lawrence – as of March 24, 2023, 1,765 notices
- Lee – as of April 11, 2023, 947 notices
- Lincoln – as of June 30, 2023, 1,321 notices
- Little River – as of April 11, 2023, 1,785 notices
- Logan – as of September 6, 2023, 3,959 notices
- Lonoke – as of March 3, 2023, 12,283 notices
- Madison – as of December 13, 2023, 1,347 notices
- Marion – as of May 18, 2023, 2,702 notices
- Miller – as of July 12, 2023, 6,519 notices
- Mississippi – as of August 22, 2023, 4,911 notices
- Monroe – as of May 25, 2023, 791 notices
- Montgomery – as of October 31, 2023, 1,473 notices
- Nevada – as of October 20, 2023, 936 notices
- Newton – as of September 15, 2023, 2,949 notices
- Ouachita – as of December 8, 2023, 4,457 notices
- Perry – as of April 12, 2023, 198 notices
- Phillips – as of April 11, 2023, 3,340 notices
- Pike – as of March 31, 2023, notices
- Poinsett – as of July 13, 2023, 2,900 notices
- Polk – as of March 6, 2023, 2,755 notices
- Pope – as of March 31, 2023, 9,461 notices
- Prairie – as of March 28, 2023, 1,024 notices

- Pulaski – as of May 25, 2023, 63,029 notices
- Randolph – as of April 11, 2023, 2,096 notices
- Saline – as of March 29, 2023, 19,614 notices
- Scott – as of July 25, 2023, 959 notices
- Sebastian – as of May 16, 2023, 19,091 notices
- Sevier – as of June 5, 2023, 2,529 notices
- Sharp – as of April 4, 2023, 2,408 notices
- St. Francis – as of April 13, 2023, 2,997 notices
- Stone – as of May 17, 2023, 1,375 notices
- Union – as of November 3, 2023, 10,168 notices
- Van Buren – as of March 7, 2023, 2,308 notices
- Washington – as of June 30, 2023, 37,924 notices
- White – as of March 6, 2023, 11,780 notices
- Woodruff – as of August 14, 2023, 1,301 notices
- Yell – as of March 23, 2023, 2,264 notices

7. **In the EAVS data for Questions A12b and A12e, Arkansas reported that it removed 9,151 voters for moving outside of the jurisdiction and 115,820 voters for failure to respond to a sent confirmation notice and not voting in the two most recent federal elections. Please explain how Arkansas uses the confirmation notice process to remove voters from the voter lists.**

Arkansas remains vigilant in ensuring that our voter rolls are as accurate as they can possibly be. In pursuit of this mission we are always looking to implement procedures by which we can ensure that only qualified Arkansas citizens can vote.

One way that Arkansas ensures that its voter rolls remain accurate is by sending confirmation notices in compliance with Arkansas and federal law. County clerks track each voter's voting history in the voter registration system. Confirmation notices are sent to active voters who have not voted in the two most recent federal general elections. However, an active voter is not removed for failure to respond to this confirmation notice. If an active voter does respond, no change is made to the voter's registration status. However, if the active voter does not respond the voter is classified as inactive.

An inactive voter is still on Arkansas voter rolls and can vote in any election for which he or she is qualified to vote. However, if the inactive voter does not vote in one more federal election cycle, he or she is added to the "correspondence list" which is provided to county registrars.

All voters on this list are sent confirmation notices in compliance with Arkansas and federal law. If an inactive voter responds to the notice, he or she is reclassified as an

active voter. If the inactive voter does not respond he or she is added to the "cancellation list." The county clerks then remove all inactive voters on the cancellation list. The removed voters are given notice of removal and, in compliance with Arkansas Code Annotated § 7-5-903, have 30 days to challenge their removal. If a removed voter does so, he or she will be re-added back to the voter rolls as an active voter.

Confirmation notices are not sent to voters who move outside of the jurisdiction. However, if the state office finds out that a voter has possibly moved, this information is provided to the county clerk where the voter is registered. The voter is then sent a letter informing he or she that the state has received information that the voter has possibly moved. The letter informs the voter that he or she needs to contact the county registrar to update his or her voter registration information. A county does not remove a voter without receiving confirmation from the voter that the voter has moved outside of the jurisdiction.

Though it can be difficult to determine when a voter has moved outside of the jurisdiction, Arkansas employs several methods to obtain this information. Arkansas utilizes the National Change of Address Registry maintained by the United States Post Office to identify voters who change their address through the post office. Arkansas has also entered into a contract with Experian which provides us with address changes as identified on individuals' credit reports, thus flagging people that have moved without updating their voter registration information. Additionally, Arkansas works with the Department of Motor Vehicles to ascertain information on when people update their addresses on their federal or state identification cards. Individuals can also report to Arkansas directly that they have moved and need to have their voter registration updated.

Our office has compiled an Excel spreadsheet of all information received regarding all Arkansas voters who have changed their addresses in our voter registration system. To facilitate ease of use, this information will be provided via a Dropbox link to be sent your Department.

Arkansas has entered into Memorandums of Understanding with Alabama, Mississippi, Tennessee, and Louisiana. Memorandums of Understanding with other states are currently in the works. It is our goal to have Memorandums of Understanding with at least all states which are adjacent to Arkansas. These Memorandums enable us to share our voter registration with the other state and receive their voter registration information in return, allowing us to cross check the voter rolls for individuals which may be registered in both states. Through this check we can also determine if a voter has voted in both states during one election. These

State Capitol • Suite 256 • 500 Woodlane Street • Little Rock, Arkansas 72201-1094
501-682-1010 • Fax 501-682-3510
e-mail: arsos@sos.arkansas.gov • www.sos.arkansas.gov

Memorandums have helped us to further identify individuals which have moved to another state though they are still registered to vote in Arkansas.

8. **Please provide a description of the steps that Arkansas has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures it used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:**

**1. Non-citizen**
**2. Adjudicated incompetent**
**3. Felony conviction**

**For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.**

Arkansas is always working to ensure that our voter rolls are up to date and as secure as possible. Arkansas follows the national confirmation process, utilizes the agency central list included in the voter registration system for Department of Health Records and criminal adjudications, and county circuit clerks provide county clerks with judgments for individuals declared to be mentally incompetent or felons.

Through partnerships with other states, cooperation with the Department of Motor Vehicles, use of the National Change of Address registry, and through our contract with Experian, the Secretary of State works to identify voters who are not qualified to vote because they have moved outside of Arkansas's borders. Voters also personally report to the Secretary of State if their Arkansas voter registration needs to be cancelled because they have moved.

The Secretary of State works with state and federal courts to further identify individuals who are on Arkansas's voter rolls but are ineligible to vote. State courts inform the Secretary of State's office if a juror is found to be ineligible to serve because he or she is a non-citizen, has been adjudicated incompetent, or has been convicted of a felony. Recent legislation allows federal courts to share this same information with the Secretary of State. Though dates for many steps cannot be identified because they are ongoing throughout the year, the legislation facilitating work with the federal courts became effective August 5, 2025. When this information is reported to the Secretary of State, our office then informs each county of information received regarding ineligible voters currently registered in the county. The county then removes the voter and sends written confirmation to the voter of the reason for removal.

State Capitol • Suite 256 • 500 Woodlane Street • Little Rock, Arkansas 72201-1094
501-682-1010 • Fax 501-682-3510
e-mail: arsos@sos.arkansas.gov • www.sos.arkansas.gov

Arkansas is also a member with the Systematic Alien Verification for Entitlements ("SAVE") program since April 9, 2025. Arkansas is waiting for the SAVE program to release an enhancement which would allow us to identify aliens by using the last four digits of the social security number or alien identification number. Currently Arkansas voters only register with the last four digits of their social security number, which leaves Arkansas unable to search for noncitizens using their full social security number in the current program. Once Arkansas can utilize this program this we will be able to upload our voter registration list through bulk uploads to the SAVE program so that SAVE can identify any registered voters who are noncitizens. We are very excited to use this program which will provide us another tool in our tool belt to identify and remove voters who are found to not be citizens of the United States.

To further assist you in your endeavors, we have compiled lists in excel spreadsheet format for of all voters who have been removed from Arkansas voter rolls for any reason. Due to the length of this this list, we have provided access via a Dropbox link which will be sent to your office. Our office has also compiled a separate excel spreadsheet which identifies all voters who have been removed due to felony convictions.

This completes our response to the inquiries sent to the Arkansas Secretary of State's Office. It is our hope that this will assist the Department of Justice in your mission to further ensure that robust and secure elections take place throughout our country. As election integrity is of such high importance to our office, we are honored to work with our federal partners who share this same priority. Please feel free to reach out if any clarification or further information would be of assistance in your mission to ensure that every qualified voter's voice is heard on election day.

Sincerely,

**Leslie Bellamy**
Director of Elections
Arkansas Secretary of State's Office

SHIRLEY N. WEBER, Ph.D. | SECRETARY OF STATE | STATE OF CALIFORNIA
LEGAL AFFAIRS OFFICE
1500 11th Street | Sacramento, CA 95814 | 916.695-1242 | www.sos.ca.gov

August 8, 2025

Via Mail and Email

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave. NW-4CON
Washington, DC 20530

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave. NW-4CON
Washington, DC 20530
maureen.riordan2@usdoj.gov

Dear Mr. Gates and Ms. Riordan:

I write in response to the U.S. Department of Justice's ("DOJ") July 29, 2025, letter stating that 90 days is not an acceptable amount of time to respond to a series of information and record requests made by DOJ on July 10, 2025. Although we are not required by law to respond by a certain deadline, below is a response to your request for "an unredacted statewide voter registration list by August 8, 2025," as well as records responsive to questions two and five that you highlighted in your July 29 letter.

**California's Voter Registration Database**

We are unable to comply with your request for an electronic copy of an entirely "unredacted statewide voter registration list." First, California law prohibits making available for public inspection or disclosing electronically an entirely "unredacted" voter file. Second, the NVRA has never been interpreted to require total and unqualified access to all information contained in a voter registration record. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File." (collecting cases)). And finally, there is no need to collect sensitive personally identifiable information of California voters to evaluate whether California is "conduct[ing] a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death and change in residence. 52 U.S.C. § 20507(a)(4).

Nonetheless, and as required under section 8(i), my office has made available for DOJ's inspection a copy of California's voter registration database at my office located at 1500 11th Street, Sacramento, California 95814. 52 U.S.C. § 20507(i)(1) (requiring States to make the records "available for public inspection and, where available, photocopying at a reasonable cost"); *Greater Birmingham Ministries v. Sec'y of State for Alabama* 105 F.4th 1324, 1333 (11th Cir. 2024) ("'[P]ublic inspection' as used in the National Voter Registration Act does not include electronic disclosure."). DOJ may inspect a copy of our redacted voter registration database during regular business hours by making an appointment with my office. Public inspection satisfies our legal obligations under the NVRA and ensures that this office complies with legal protections for voter registration data under California law. These protections include prohibitions on transferring the data, along with detailed data security and storage requirements. Cal. Code Regs. tit. 2, §§ 19005, 19008(a)(8), 19012, 19013.

Please know that in accordance with California law, the following information has been redacted from all records made available for DOJ's public inspection: voters' driver's license numbers, California identification card numbers, social security numbers, other unique identifier numbers used by the State of California for purposes of voter identification, and voter signatures. Cal. Elec. Code § 2194(b)(1)–(2); *see also* Cal. Gov. Code § 7924.000(b).

Finally, to the extent that DOJ intends to make copies of any records made available for public inspection, we would require that DOJ enter into a Memorandum of Understanding with my office to ensure that the handling of our registered voters' sensitive information meets the data protection standards of California law. In addition, my office requests that you inform us whether DOJ believes data collected from California's voter registration database is subject to the Privacy Act of 1974, along with the legal explanation for your position. Please also provide a citation within the Federal Register to the system of records under which DOJ intends to collect and maintain the records it has requested from California. And please describe how DOJ plans to store, maintain, and use the requested voter registration information.

**California List Maintenance Processes – Response to Questions 2 and 5**

DOJ's July 10, 2025, letter asked the following two questions:

> 2. No data was listed in the EAVS survey for Question A12h for California regarding duplicate registrants who were removed from the statewide voter registration database. Please provide a list of all duplicate registrants who were removed from the statewide voter registration list including the date(s) of removal. If they were merged or linked with another record, please provide that information. Please explain California's process for determining duplicates and what happens to the duplicate registrations.
>
> 5. The 2022 EAVS report contained 4,984,314 inactive voters, while the 2024 report contained 2,883,995. Please explain the reason for the change in the number of inactive registrations for these years.

While both questions request a narrative response, we are aware of no legal obligation to provide one. Rather, because California strives to have some of the most transparent election processes in

the country, the answer to your questions can be found in the following publicly available documents, which are available online.

In response to question two, please see the following documents:

1. U.S. Election Administration Commission's (EAC) 2024 Election Administration Policy Survey, See page 154.

   https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf

2. Guidance: EMS Messages, See page 6, Section 2.2.

   https://elections.cdn.sos.ca.gov/votecal/guidance/ems-message.pdf

3. California 2022-2024 Election Administration and Voting Survey to EAC.

   https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Felections.cdn.sos.ca.gov%2Fnvra%2Freports%2Fbiennial%2Feavs-2024.xlsm&wdOrigin=BROWSELINK

In response to question five, please see the following documents:

1. California's NVRA Manual, Ch. 4 entitled "Voter Registration Applications and Voter List Maintenance", See Ch 4., page 20.

   https://elections.cdn.sos.ca.gov/nvra/nvra-manual/chap-4.pdf

2. Legislative History of AB-504 (Berman), California Statutes of 2019, Ch. 262 § 6.

   https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB504

3. Cal. Elec. Code, §§ 2222 through 2226.

   https://leginfo.legislature.ca.gov/faces/codes_displayText.xhtml?lawCode=ELEC&division=2.&title=&part=&chapter=3.&article=2

4. *Husted v. A. Philip Randolph Inst.* 584 U.S. 756 (2018).

   https://www.supremecourt.gov/opinions/17pdf/16-980_f2q3.pdf

The remaining four questions require compiling records from up to twelve different counties, which will require more time. As such, I cannot agree to your arbitrary deadline of August 29 to answer the remaining requests. Please accept my assurances that my office is looking into your questions and will inform you when the documents are available for inspection at my office.

Finally, I want to remind DOJ that the United States Constitution is clear about where the power to regulate elections is allocated in this country: as sovereigns closest to the people, the States have primary responsibility. Nowhere does the Constitution provide the President or the Executive Branch with *any* independent power to control or otherwise conscript States to carry out non-statutory policy priorities of the President. To the extent DOJ is utilizing the NVRA in a

manner not permitted to advance the President's policy objectives, my office is not obligated to follow along. To the contrary, my obligation is to support and defend the Constitution of the United States and the Constitution of the State of California, ensure election laws are being enforced, and protect California voters from unnecessary and illegitimate intrusions on their privacy.

Please do not hesitate to contact my office regarding when you plan to visit Sacramento to review the voter registration information.

Respectfully,

/s/ Shirley N. Weber

Dr. Shirley N. Weber
California Secretary of State

**From:** Andrew Kline [Andrew.Kline@ColoradoSOS.gov]
**Sent:** 12/3/2025 3:57:33 AM
**To:** Neff, Eric (CRT) [Eric.Neff@usdoj.gov]
**CC:** Judd Choate [Judd.Choate@coloradosos.gov]
**Subject:** [EXTERNAL] RE: Voter Registration List request follow up

We received your request. We will not be producing unredacted voter files or signing the MOU.

Thank you.

**Andrew Kline**
Deputy Secretary of State
Andrew.Kline@coloradosos.gov
Colorado
**Secretary of State**
***Our Core Values are To serve • To innovate • To act with integrity • To strive for excellence • To be inclusive***

---

**From:** Neff, Eric (CRT) <Eric.Neff@usdoj.gov>
**Sent:** Monday, December 1, 2025 9:34 AM
**To:** Andrew Kline <Andrew.Kline@ColoradoSOS.gov>
**Cc:** Judd Choate <Judd.Choate@coloradosos.gov>
**Subject:** [EXTERNAL] Voter Registration List request follow up

Mr. Kline,

I am the new contact for the Voting Section for our request for Colorado's voter registration list. This is a follow up from original correspondence that began in May (see attached letter).

The United States is prepared at this early stage to enter into an MOU with the State of Colorado regarding the sharing of the nonpublic, unredacted voter registration list. I have attached that MOU, which we believe cures all potential concerns a state might rightfully raise regarding its citizens' private data and identifying information.

However, given that Colorado has signed on to both the November 18 letter to the Attorney General and a potential amicus filing in the California litigation (both attached), I hope you find it fair that I suspect an MOU such as the one attached will not alleviate the State's various concerns such that your State will produce those records in short order (within 7 days).

As such, I would ask that by end of business tomorrow you respond with your State's intent to either refuse to enter into such an agreement and produce the requested records or to comply with our request in short order.

Thank you,
Eric

**Eric Neff**
Trial Attorney

Civil Rights Division
Department of Justice
150 M St. NE, Ste. 8-139
Washington, DC 20002
Eric.Neff@usdoj.gov
Cell: 202-532-3628

FLORIDA DEPARTMENT of STATE

**RON DESANTIS**
Governor

**CORD BYRD**
Secretary of State

December 19, 2025

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice
Washington, D.C. 20530

Re: Complete Voter Registration List

Dear Ms. Dhillon,

On August 14, 2025, pursuant to 52 U.S.C. § 20703, the Civil Rights Division of the U.S. Department of Justice requested that the Florida Department of State provide an unredacted statewide voter registration list for the State of Florida. The Division represented that, "[u]nless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose" Florida's list or any copy thereof, "except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury." 52 U.S.C. § 20704.

Florida is committed to election integrity, which begins with accurate voter rolls. To that end, Florida sued the Obama Administration in 2012, becoming the first state to gain access to the SAVE database for citizenship status information to use during voter list maintenance. Due to the Biden Administration's failure to provide adequate and timely information regarding citizenship status through the SAVE database, Florida sued again in 2024 seeking necessary information that only the federal government has in its possession. The 2024 lawsuit resulted in a settlement agreement between Florida and DHS granting Florida enhanced access to SAVE. That agreement was finalized on November 28, 2025, and we are now in the process of reviewing our more than 13.5 million registered voters using our enhanced access. We anticipate providing Florida's list by mid-January.

I expect that Florida's list and all data therein will be maintained according to the highest security requirements under state and federal law and then properly destroyed once your review is complete. If you find any alleged issues or deficiencies with Florida's list, please notify my office. We will take all necessary action permitted under law, including notice and removal pursuant to section 98.075, Florida Statutes, as appropriate.

Sincerely,

Cord Byrd

**Office of the Secretary**
**R.A. Gray Building • 500 South Bronough Street • Tallahassee, Florida 32399**
**850.245.6500 • 850.245.6127 (Fax) • dos.fl.gov**

SECRETARY OF STATE
STATE OF INDIANA
200 W. WASHINGTON STREET, INDIANAPOLIS, IN 46204

September 11, 2025

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division
voting.section@usdoj.gov

Dear Mr. Gates,

*You requested, "a list of the election officials who are responsible for implementing Indiana's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort."*

**Response:** Provided in the JEFS is a list of officials (Indiana Voter Registration Officials) who are responsible for voter list maintenance at the state and county level. The Indiana Secretary of State does not maintain historical list of local election officials who have been involved in voter list maintenance. You may request that information from the counties.

*You requested, "a description of the steps that you have taken, and when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA."*

**Response:** Indiana has a number of voter list maintenance programs enshrined in state law, much of which can be found in Indiana Code 3-7-38.2, which can be viewed online at iga.in.gov. More detailed information on list maintenance procedure can be found in the *2024 Indiana Voter Registration Guidebook* found on our website, in.gov/sos/election. The 2026 version of this publicly available guidebook with updated information and procedures will be published by the Indiana Election Division before the end of this year.

Voter list maintenance is performed regularly by county voter registration officials, whether it is acting upon information that a voter is deceased, imprisoned following conviction of a crime, requests cancellation in writing, or submits a new or updated voter registration application. State law was amended on July 1, 2025, to now require counties to act upon list maintenance information within 48-hours of receiving it. (IC 3-7-38.2-2; IC 3-7-26.3-11)

The Indiana Election Division is also required to mail voter list maintenance mailings to

all Indiana voters in "active" status in odd numbered years. The most recent statewide list maintenance mailing was sent in May of 2025 and will be completed by the end of the year.

*You requested, "Pursuant to Section 20507(i) of the NVRA, the Attorney General request that you produce for inspection the following records: The current electronic copy of Indiana's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act."*

**Answer:** Pursuant to Section 20507(i) of the NVRA, attached is a list of all persons to whom notices described in subsection (d)(2) were sent, between April 28, 2023 and March 21, 2025, and information concerning whether each person responded to the notice in reports in the JEFS (Address Confirmation Notice)(No Response from Voter)(Response Received from Voter). In addition, in the JEFS is Indiana's statewide voter registration list via text file (Voter File).

*You asked, "Confirmation Notice data was missing in the EAVS survey for Questions A10a through A10i in Indiana. Please provide the data for each county in Indiana for Questions A10a through A10i. In EAVS data, Question a12e, Indiana reported removing 168,838 for failure to return confirmation notices. Please explain Indiana's process for sending out and keeping track of the results of Confirmation Notices."*

**Response:** The A10a-A10i responses for 2024 EAVS submission are "Data Not Available" a comment was left in the "A11 Comments" field of the EAVS Survey stating, "INDIANA'S STATEWIDE VOTER REGISTRATION SYSTEM IS NOT ABLE TO TRACK THE INFORMATION REQUESTED. INDIANA IS WORKING TO UPDATE THE SYSTEM TO PROVIDE THIS INFORMATION FOR FUTURE REPORTING."

In Indiana, counties are permitted to send address mailing confirmation notices as contemplated by federal law using information received by the county voter registration official as limited by IC 3-7-38.2-2(e). We refer to these as statewide address mailing confirmation notices or SAMC. The SAMC is sent by forwardable first-class mail to the voter and includes a postage pre-paid return for the voter to confirm their Indiana residence, cancel their registration due to a move outside of the county, or update their Indiana registration for a move within the county.

The county voter registration official then makes the determination to maintain the voter's "active" registration status due to confirmation of residence address; cancel their registration due to a move outside of the county; or update their registration due to a move within the county. If the voter does not respond to the SAMC notice after being given at least 30 days to respond or the card is returned as undeliverable as defined by IC 3-5-2.1-102, then the voter's registration status is moved to "inactive" outside of the freeze period as defined by state law. (IC 3-7-38.2-2(a)(3); IC 3-7-38.2-2(b))

The SAMC process is solely managed at the county level by the county voter registration official. The county voter registration official makes a determination on updating or canceling the voter's registration record or moving it to "inactive" status. Therefore, the counties are the keepers of these records and the best place to access this information.

Additionally, state law requires the Indiana Election Division to manage a bi-annual statewide voter list maintenance (VLM) project in odd-numbered years. The VLM effort consists of two mailings. Mailing one is sent by non-forwardable USPS first class mail to all Indiana voters with a registration status of "active."

If mailing one is returned as USPS undeliverable as defined by IC 3-5-2.1-102 then mailing two is sent to the voter by forwardable USPS first class mail. Mailing two includes a postage paid voter response card (VRC), which allows the voter to either confirm the voter's registration address, cancel the voter's registration record if the person has moved out of county, or update the voter's registration address within the same county. Counties then review the response and make a final determination about the voter's registration record. If the voter fails to respond to the VRC notice after being given at least 30 days to respond or the second mailing is returned undeliverable as defined by IC 3-5-2.1-102, then the voter's registration may be moved to "inactive" status outside of the state defined freeze period.

The first and second postcard mailing are sent by the state of Indiana. However, all electronic and physical records are managed at the county level by the county voter registration official. The county voter registration official makes a determination on updating or canceling the voter's registration record or moving it to "inactive" status. Therefore, the counties are the keepers of these records and the best place to access this information related to the statewide voter list maintenance mailings.

Under Indiana law, an "inactive" voter is eligible to be moved to "cancelled" status if the voter fails to vote in any election between the date the record became inactive through the second federal general election, or the voter fails to update their registration record during the same period. (IC 3-7-38.2-14)

The report used to gather this information for the EAVS survey is in the JEFS (Address Confirmation Notice Sent).

*You asked, "In the EAVS data, Question A12a, Indiana reported that it removed 888,506 voters from the voter rolls, which was twice as high as the national average. Indiana does not categorize 714,021, 80.4 percent, of those removals. Please provide a list of all registrants removed from the statewide voter registration list including the date(s) of removal. If they were linked with another record, please provide that information. Please explain the process of how the State determines when to remove voters from the statewide voter registration database.*

**Answer:** The state never removes a voter from the statewide voter registration database or makes a determination regarding a voter registration. Voter registration records are managed at the county level by county voter registration officials.

The report used to gather this information for the EAVS survey is in the JEFS (Cancelled Voter Summary Listing).

*You asked, "no data was listed in the EAVS survey for Question A12c regarding the removal of voters due to death. Please explain Indiana's process for determining who is deceased and removing them from the voter roll and when that occurs."*

**Answer:** The state of Indiana is working to amend our EAVS reporting to the US Election Assistance Commission for the A12 series of questions. This was an unintentional oversight in our reporting.

The primary source of information for canceling the registration records of deceased voters is via death records provided by the Indiana Department of Health (DOH), Social Security Administration's Death Master File, the State and Territorial Exchange of Vital Events (STEVE), and the Electronic Verification of Vital Events (EVVE) through the "Death Records" hopper found in the statewide voter registration system. County voter registration officials review the records found in the Death Records hopper to see if an existing voter registration record matches a death record. To move a registration record to cancelled status, the death record and the voter registration record must have a match of at least 50 points based off the chart below.

| Field | Points Assigned for Match |
|---|---|
| SSN Last 4 | 10 |
| Full SSN | 40 |
| DLN/SID | 50 |
| DOB | 25 |
| Last Name | 15 |
| First Name | 15 |
| Middle Name | 5 |
| Suffix | 5 |
| ZXIP Code (first 5) | 5 |
| Street Address 1 | 10 |

A county may also cancel a voter's registration record if the county receives a copy of the voter's death certificate, obituary, notice of estate administration, or other notice of death that was published in a newspaper or on a licensed funeral home website.

Local health officers provide a copy of the death certificate for each individual included

in the death records filed quarterly to the county voter registration office. If a voter is identified as deceased in the death records, the county voter registration office shall cancel the voter registration record of that individual.

The statewide voter registration system coordinates with the bureau of motor vehicles to share information if a person is deceased based on their records. County voter registration officials may use this information to cancel a voter registration record.

At least once a year, the co-directors of the Indiana Election Division are required to review and identify voter registration records that either do not contain a date of birth or contain a date of birth that is at least 115 years or more before the date of the review. The election division must request from the bureau of motor vehicles any date of birth information the bureau of motor vehicles has for each voter identified not having a date of birth or have a date of birth that indicates the voter is 115 years or more in their voter registration record. The co-directors must then send to each county voter registration office the name and date of birth information for each voter the co-directors have identified to update the record accordingly.

Our state law also requires United States District Courts of Southern and Northern Indiana to provide information for returned jury summonses on a biannual basis. The next data set is expected in January 2026 as required by Indiana law. If a voter is identified as deceased on the information provided by the district courts, then the county voter registration official may confirm the voter's death by the means described above or send a Statewide Address Mailing Confirmation notice. (IC 3-7-38.2-16)

As required under 52 U.S.C. 21083, the county voter registration office shall perform list maintenance with respect to the statewide voter registration system within forty-eight (48) hours of receiving information that requires voter list maintenance activity, including the death of the individual (IC 3-7-38.2-2; IC 3-7-26.3-11(1)).

The report used to gather this information for the EAVS survey is in the JEFS (Deceased Voter Listing).

*You asked, "please provide a description of the steps that Indiana has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures the state used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:*

*A. Non-citizen*
*B. Adjudicated incompetent*
*C. Felony conviction*

*For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote*

*history."*

**Answer:** In Indiana, voter registration records are managed at the county level. State of Indiana employees never make a determination regarding a voter registration record.

In addition, the statewide voter registration system did not track additional citizenship documentation for the period of November 8, 2022, through November 5, 2024. The requirement to receive such documentation from a voter meeting specific criteria under state law was not implemented until July 1, 2025. Additionally, the Office of the Indiana Secretary of State, in coordination with the Indiana Attorney General, provided U.S. Citizenship and Immigration Servies (USCIS) with a list of registered Indiana voters whose citizenship status will not be able to be confirmed under Indiana's new citizenship requirement. The list was sent in October 2024 after the voter registration deadline passed for the 2024 general election. It included individuals whose registration included only the last four digits of their social security number or no personal identification number. As of this date, the office has not received information related to individuals on those various lists. Further, Indiana does not have an "adjudicated incompetent" law; therefore, there are no responsive records.

Indiana law related to disfranchisement due to criminal conviction does not hinge on "felony" conviction. County voter registration officials are to move a registration record to "cancelled" for any registered voter who is currently imprisoned following conviction of a crime. This information flows to the counties through the statewide voter registration system via the Department of Corrections Hopper or through paper reports from the county Sheriff and US District Attorney offices nationwide.

A notice of disposition is sent to those voters where the county voter registration official received information that the person is currently imprisoned following conviction of a crime. Once released, even if on probation, parole, home detention, or enrolled in a community corrections program, the person is eligible to re-register to vote in Indiana. For the period of November 8, 2022, through November 5, 2024, the individuals whose voter registration record was moved to "cancelled" status due to the disfranchisement procedures outlined above is found in the JEFS in a report entitled (Disenfranchised Voter Report Summary).

Kegan Prentice
Office of the Indiana Secretary of State
Deputy General Counsel
Legislative/Policy Director

**SCOTT SCHWAB**
Secretary of State

Memorial Hall, 1st Floor
120 S.W. 10th Avenue
Topeka, KS 66612-1594
(785) 296-4564
sos.kansas.gov

**STATE OF KANSAS**

August 21, 2025

Via mail and email

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division
US Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Re: Kansas Voter Registration List

Assistant Attorney General Dhillon,

We are in receipt of correspondence from the US Department of Justice (DOJ) dated August 6, 2025, and August 14, 2025, regarding the state's voter registration list and list maintenance. The agency appreciates the opportunity to respond to your requests.

We agree that routine voter maintenance is critical to ensuring accurate voter rolls and confidence in elections. To this end, Kansas county election officials undertake more than a dozen activities on a routine basis to clean voter rolls. This includes every activity authorized under the National Voter Registration Act (NVRA) which set certain standards for voter registration. We attached a narrative summary of Kansas's voter roll maintenance activities. Many maintenance activities occur daily such as obituary review, mailing notices of disposition, mailing confirmation notices, reviewing jury duty lists, and reviewing federal felony lists.

I am grateful to President Trump for elevating information sharing for voter roll maintenance to a national priority, and for the President's Executive Order 14248: Preserving and Protecting the Integrity of American Elections, that directs information sharing by the Department of Homeland Security (DHS), US Citizenship and Immigration Services (USCIS) and the Social Security Administration (SSA) with states for the purpose of state voter roll maintenance. This directive is a key step toward strengthening voter roll maintenance nationwide. Having reached out to these federal agencies in prior years, and having received no useful response, we are well-aware of how important it is for federal and state governments to work together to share information verifying voter registration information. No previous administration has taken the initiative to bring this tool to the states.

We welcome our federal partners' recognition of their important supporting role of information sharing to ensure clean voter rolls. I have already seen improvements in information sharing with USCIS since the issuance of the Executive Order. My office has requested and obtained the ability to access USCIS data to identify and remove non-citizens from the voter registration database as part of the state's maintenance efforts.

In addition, the agency has requested SSA's Death Master File to help maintain our voter rolls. We have been assured that the SSA data can be provided, although our request has not yet been granted. Accessing this information is the only way the state can identify voters who have died outside of the state and, in accordance with state law, remove them from the voter rolls. (52 U.S.C. § 20507(a)(4)(A)). We, therefore, anticipate removing these names from the voter rolls in the immediate future.

I also appreciated the opportunity to share the importance of information sharing, specifically Kansas's request for SSA data, during the Fly-in for Secretaries of State at the White House on July 28, 2025. It was a very beneficial discussion, and we appreciate the steps taken to assist with information sharing in other areas within the federal government.

We also have had productive conversations with DOJ personnel, including Senior Counsels from the Criminal Division and twice with the Acting Chief, Voting Section on June 26, 2025, July 3, 2025, and August 19, 2025, respectively. Conversations discussed various aspects of information sharing. Following the July 3, 2025, conversation, our agency provided, via email, a four-page summary of Kansas's voter roll maintenance procedures [a copy of which is attached], referenced the production of our voter rolls to an NVRA request by the Dhillon Law Firm on behalf of their client, and asked DOJ to advise if there was any additional information requested. We did not receive a response to this communication.

In response to DOJ's request and as another means to help ensure that Kansas voter rolls are as clean as possible, the agency is initially providing publicly available voter data. Kansas recently completed statewide voter list de-duplication and county election officials are in the process of removing verified duplicate voters from the registration list. To ensure DOJ receives a voter registration list that reflects this de-duplication and removal of out-of-state deceased, the agency will provide DOJ with an updated list once these efforts are complete.

We recognize that driver's license numbers and last four social security numbers were also requested. My office appreciates the clarification received by DOJ on August 19, 2025, that DOJ will not share any voter data with any other agency or entity. Pursuing a suggestion from DOJ, we are working with our Division of Vehicles (DoV) to assess whether additional information may be used to supplement the existing information found in the Kansas voter registration list. It is important to note that a driver's license number is not a constitutional requirement to be eligible to register to vote. When a person applies to register to vote in Kansas, one can register to vote online. This requires the use of a Kansas driver's license or non-driver's identification card number issued by the DoV. If a person applies to register to vote using the paper Kansas Voter Registration application, the wording of the application mirrors the Help America Vote Act (HAVA) requirement of asking for the driver's license number first.

Finally, in response to other DOJ requests we are enclosing a narrative summary of our voter roll maintenance procedures with the estimated date for non-routine procedures and a copy of our standard voter registration form to demonstrate compliance with HAVA 52 § 21083(a)(5)(A)(i-ii). Kansas also permits a person to apply to register to vote online through a co-operative agreement with the state's DoV. To apply to register to vote using this system, you must have a Kansas Driver's License. Also

requested was a list of election officials responsible for implementing Kansas's general program of voter registration list maintenance which can be found here:
https://sos.ks.gov/elections/county_election_officers.aspx

We appreciate the efforts of DOJ and other federal partners to assist in ensuring states have access to federal resources to conduct voter registration list maintenance. We look forward to your communication on any findings from your review of Kansas voter information. Should further clarification be required, please contact Clay Barker, General Counsel, at clay.barker2@ks.gov.

Sincerely,

Scott Schwab
Kansas Secretary of State

Enclosures

# SECRETARY OF STATE

NANCY LANDRY
SECRETARY OF STATE

P.O. BOX 94125
BATON ROUGE, LA 70804-9125

December 17, 2025

Eric Neff
Assistant Attorney General
Civil Rights Division
U.S. Department of Justice
eric.neff@usdoj.gov

**RE: United States Department of Justice Civil Rights Division request for Louisiana voter data for list maintenance purposes**

Dear Mr. Neff:

I am writing to follow up on the United States Department of Justice Civil Rights Division (hereinafter "U.S. DOJ") request for Louisiana's voter registration data. The Louisiana Department of State (hereinafter "Department"), pursuant to La. R.S. 18:18, may share its voter registration data with a federal governmental agency for the purposes of its voter list maintenance. By transmission of this letter evidencing its written agreement, the Department hereby agrees to share its data with the U.S. DOJ for this express purpose.

Please provide the U.S. DOJ's information technology contact for the Department's IT Administrator to coordinate with for the secure exchange of this confidential information pursuant to La. R.S. 18:154 and La. R.S. 18:18.

If you have any questions or concerns, please do not hesitate to contact me at (225) 922-0547, or tray.wood@sos.la.gov.

Sincerely,

Tray Wood

Tray Wood
General Counsel

**From:** Rameres, Jewel (CRT) [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3A57DBC1C2484CB6BE9522C6836C92B0-JRAMERES]
**Sent:** 8/5/2025 4:22:39 PM
**To:** Kristin Johnson -SBE- [kristin.johnson1@maryland.gov]; Erin Dennis -SBE- [erin.dennis@maryland.gov]
**Subject:** RE: [EXTERNAL] Voter Registration Application Request

Hi Kristin,

Appreciate the follow up. I will continue to look out for an invoice for the division. Thanks for your assistance over the phone.

Best,

***Jewel A. Rameres***
Paralegal Specialist
Civil Rights Division | Voting Section
U.S. Department of Justice
950 Pennsylvania Ave NW, 4 CON 8th Floor
Washington, D.C. 20530
Mobile Work: (202) 227-7221
Jewel.Rameres@usdoj.gov

---

**From:** Kristin Johnson -SBE- <kristin.johnson1@maryland.gov>
**Sent:** Tuesday, August 5, 2025 10:20 AM
**To:** Rameres, Jewel (CRT) <Jewel.Rameres@usdoj.gov>; Erin Dennis -SBE- <erin.dennis@maryland.gov>
**Subject:** [EXTERNAL] Voter Registration Application Request

Hello, Jewel.
Your Voter Registration Data Application is received and will be processed accordingly.

Hi Erin.
Can an invoice for $125 (Statewide, Registered Voter List w/ Voter History) be generated for Jewel Rameres of the entity "U.S. Department of Justice, Civil Rights Division"?

Thank you.

--
*Kristin E. Johnson*
Program Administration Specialist
Maryland State Board of Elections
151 West Street, Suite 200 | P.O. Box 6486

Annapolis, Maryland 21401
(P) 410.269.2914

U.S. Department of Justice

Civil Rights Division

*Office of the Assistant Attorney General*
*Washington, D.C. 20530*

March 3, 2026

***Via E-Mail***

The Honorable Denny Hoskins
Missouri Secretary of State
600 West Main Street
Jefferson City, MO 65101
E-Mail: sosmain@sos.mo.gov

Re: DOJ Demand for Missouri's Voter Registration List with All Fields

Dear Secretary Hoskins:

Per your counsel's request, I write to follow up on my September 8, 2025 demand for Missouri's unredacted statewide voter registration list (VRL). As the September 8 letter states, these records are requested "pursuant to Title III" of the Civil Rights Act of 1960 (CRA) and for the purpose of ascertaining "Missouri's compliance with the list maintenance requirements of the [National Voter Registration Act] and [Help America Vote Act]."

As you may know, federal courts have found that this type of "simple statement" of the basis and purpose for such a demand is "sufficient to comply with the CRA."[1] Indeed, for decades, it has been the practice and understanding of state election officials and federal courts that States have a legal duty to produce VRLs promptly in response to CRA demands.[2]

Accordingly, please provide Missouri's VRL with *all fields*—including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA—no later than Tuesday, March 10, 2026.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

---

[1] *United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG, 2026 WL 362789, at *8 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, Case No. 26-1225 (6th Cir. Feb. 25, 2026).

[2] *See United States v. Georgia*, No. 1:06-cv-02442 (N.D. Ga. Oct. 272006), Dkt. 4 (consent decree); *see also* U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), *available at* https://www.justice.gov/media/1173461/dl?inline; *United States v. A.B. Gordon*, Dkt. 1813 (D. Miss. July 13, 1963). Electronic scans of this docket and the filings are available upon request.

**From:** Riordan, Maureen (CRT) [Maureen.Riordan2@usdoj.gov]
**Sent:** 7/21/2025 6:38:07 PM
**To:** Klein, Josh [Joshua.Klein@mt.gov]; Neff, Katie (CRT) [Jeri.Neff@usdoj.gov]
**CC:** James, Austin [Austin.James@mt.gov]; Mellett, Timothy F (CRT) [Timothy.F.Mellett@usdoj.gov]; Tucker, James T. (CRT) [James.T.Tucker@usdoj.gov]; Hayes, Chris (CRT) [Chris.Hayes2@usdoj.gov]
**Subject:** Re: Follow up request to our discussion today

Hello Josh, thanks for contacting us. I am out of the office and I have cc'd 2 attorneys from the Section, Tim Mellet and Jim Tucker, as well as our litigation support guru Chris Hayes for transfer.
One of the attorneys will respond re the information and formatting etc. once you have that in order Chris Hayes will be able to accept the transfer of the data.
Thanks so much for your cooperation. Someone will be in touch soon.
Best
Maureen

Maureen S. Riordan
Senior Counsel
Acting Chief, Voting Section
Civil Rights Division
maureen.riordan2@usdoj.gov

---

**From:** Klein, Josh <Joshua.Klein@mt.gov>
**Sent:** Monday, July 21, 2025 2:26:09 PM
**To:** Riordan, Maureen (CRT) <Maureen.Riordan2@usdoj.gov>; Neff, Katie (CRT) <Jeri.Neff@usdoj.gov>
**Cc:** James, Austin <Austin.James@mt.gov>
**Subject:** [EXTERNAL] RE: Follow up request to our discussion today

Maureen,

I am following up on your request for Montana's Voter File. I have been asked by Austin James to ensure that you get what you need and I am happy to facilitate this.

While Montana does have a "Canned" voter file, I wanted to check with you and your team to determine if there are any file requirements that you may have or need to ensure that a file that I send you will be useable. I would also like to discuss secure file transmission options.

Your email below indicates that you have secure data sharing capabilities. I do as well by utilizing the State of Montana's File Transfer Service.

I look forward to assisting you, and please let me know if you have any questions.

**Josh Klein** | Elections and Voter Services Project Manager/Elections Specialist
Montana Secretary of State, Christi Jacobsen
State Capitol Building
Helena, MT 59601
PHONE 406.444.2896

website | email | map

**From:** James, Austin <Austin.James@mt.gov>
**Sent:** Tuesday, July 15, 2025 1:47 PM
**To:** Klein, Josh <Joshua.Klein@mt.gov>
**Subject:** Fw: Follow up request to our discussion today

**Austin Markus James** | Chief Legal Counsel | Director of Elections
Secretary of State Christi Jacobsen
State Capitol Building
Helena, MT 59601
PHONE 406.444.6197

website | email | map

***CONFIDENTIALITY NOTICE:***
*This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential or privileged material, including attorney-client communications and attorney work product. Any unauthorized review, use, disclosure, or distribution is prohibited. This electronic transmission does not constitute a waiver of privilege. If you are not the intended recipient, and have received this message in error,*

---

**From:** Riordan, Maureen (CRT) <Maureen.Riordan2@usdoj.gov>
**Sent:** Monday, July 14, 2025 1:28:32 PM
**To:** James, Austin <Austin.James@mt.gov>
**Cc:** Neff, Katie (CRT) <Jeri.Neff@usdoj.gov>
**Subject:** [EXTERNAL] Follow up request to our discussion today

Hello Austin, it was very nice to meet you today and thank you for being a willing partner in the Administration's quest for election integrity. As I stated today, we are requesting a copy of Montana's statewide voter registration list, so that we can facilitate a review for noncitizens and dead voters via DHS. Additionally, as I indicated we will also have the ability to determine if there are duplicate registrations . This information will be provided to you, so that you can make the adjustments as needed. As you are likely already aware, under both the National Voter Registration Act, ("NVRA") and the Help America Vote Act, ("HAVA"), the attorney General is authorized to request the information from you. Also, we are Privacy act compliant and have secure data sharing capabilities.
Thanks again for your time and cooperation,
Best,
Maureen

Maureen S. Riordan
Senior Counsel
Acting Chief, Voting Section
Civil Rights Division
Maureen.riordan2@usdoj.gov
(202)-702-6110

**CHRISTI JACOBSEN**
MONTANA SECRETARY OF STATE

December 29, 2025

Mr. Eric Neff
Civil Rights Division
Department of Justice
150 M St NE, Ste 8-139
Washington, DC 20002
Eric.Neff@usdoj.gov

Dear Mr. Neff,

Thank you, AAG Dhillon and President Trump, for your commitment to protecting the security and integrity of our elections, not only in Montana but throughout our entire country. As a second-term Secretary of State, it was a priority to start partnering immediately with the Trump Administration, which was a stark contrast to the lack of response I received from the Biden Administration.

Montana is a national leader in protecting election integrity, improving voters' confidence, and increasing efficiency for state and local election officials. Over the last five years under my leadership, we have moved the needle in a big way. It's long overdue for the Department of Justice to assess states' compliance with the statewide voter registration list maintenance provisions of the National Voter Registration Act. In response to the initial request earlier this year, Montana provided the public statewide voter registration list and is awaiting the results of the DOJ's efforts. Additionally, in recent months, we have referred instances of identified double voting to federal prosecutors and await enforcement actions in those cases.

Forthcoming is another copy of Montana's public statewide voter list, including additional information pertinent to 52 U.S.C. § 20703. The Montana Secretary of State's Office is aware of litigation in different states regarding access to statewide voter files. We will be monitoring these cases for clarification regarding scope of authority in the future.

Montana has an aggressive voter roll maintenance program under federal and state law, far exceeding the baseline for voter registration records required by 52 U.S.C. §

21083(a)(4). Montana is the gold standard when it comes to voter roll maintenance, and we will always utilize new sources of reliable and accurate information to further improve our list maintenance efforts. Hopefully, other states will follow our lead.

Should you find any individuals who are suspected of being ineligible, please send any and all information used to identify the individual. Please also include the reason and any source(s) of information used in determining potential ineligibility. This information is needed to ensure eligible voters are not removed in error in accordance with 52 U.S.C. § 21083(a)(4)(B). Should any individuals meet the threshold for removal from the voter roll based on both state and federal law, we will communicate those results to our Election Administrators.

In the spirit of the information contained in a proposed Memorandum of Understanding, which you are aware we cannot agree to as communicated to you by my colleagues, and pursuant to federal privacy laws, we have a mutual understanding that this information is protected under the law. *Ad exemplum*, 52 U.S.C. § 20704. In addition to the protections afforded under 52 U.S.C. § 20704, any records will be kept securely and treated consistently with the Privacy Act, unless 52 U.S.C. § 20704 provides for more restrictive disclosure requirements.

God Bless,

Christi Jacobsen

CHRIST JACOBSEN
Montana Secretary of State

Att.

**NEW HAMPSHIRE SECRETARY OF STATE**
**David M. Scanlan**

July 25, 2025

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Via email: Voting.Section@usdoj.gov

Dear Chief Riordan and Deputy Assistant Attorney General Gates,

This letter is arranged in two parts. It begins with several prefatory notes. After that, the letter turns to the Secretary's answers to your questions. Please let our office know if you need any follow-up.

## I. Prefatory Remarks

New Hampshire is somewhat unique when it comes to applicable federal election laws. Although your letter requests information related to the Help America Vote Act (HAVA), 52 U.S.C. § 20901 *et seq*, some of the questions overlap with requirements under the National Voter Registration Act (NVRA), 52 U.S.C. § 20501 *et seq*. New Hampshire is exempt from the NVRA. *See* 52 U.S.C § 20503(b)(2).

Some of the questions ask for information that pose cybersecurity risk if disclosed. As you know, the Department of Homeland Security regards election systems and assets as "critical infrastructure," defined by Congress as "systems and assets, whether physical or virtual, so vital to the United States that the incapacity or destruction of such systems and assets would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. § 5195c(e). Regardless of the fact that election systems and assets are critical infrastructure, divulging any cybersecurity information could harm the integrity of the systems. Therefore, our responses to questions regarding database infrastructure may be limited depending on the nature of the question.

As a final note, New Hampshire law requires the Secretary of State to prepare and distribute an election procedure manual prior to every state general election. RSA

652:22. The most recent version was issued in 2024 and can be found on the Secretary of State's website.

## II. Secretary of State Responses

1. **Describe how the State processes new applications to register to vote for elections for federal office, as required by HAVA Section 303.**

In New Hampshire, voter registration is processed at the municipal level through locally elected election officials called "supervisors of the checklist" or, in some cities, appointed "registrars." *See generally* RSA Chapter 654. A voter can only become registered by their approval during public sessions held at regular intervals and on election day. *Id.*

A person can apply to the supervisors several ways. They can submit applications in person either at the town clerk's office, directly to the supervisors at their public session, or to the supervisors on election day. RSA 654:8–11. Qualified uniformed and overseas voters (UOCAVA) can register via the federal postcard application. A qualified voter can also register absentee if they are absent or have a physical disability. *See* RSA 654:3; 654:16; 654:20. Once a voter has submitted their application and proof of qualification, the supervisors must determine if they are qualified. RSA 654:12. In New Hampshire, voters must prove that they are qualified by submitting supporting documentation for age, identity, citizenship, and domicile. *See id.* A list of acceptable documentation can be found here: www.sos.nh.gov/elections/register-vote.

If the supervisors vote to approve a voter's registration, they add the voter's information to the Statewide Voter Registration System (SVRS). RSA 654:13.

2. **Describe the process by which New Hampshire assigns a unique identifier to each legally registered voter in New Hampshire, as required by HAVA Section 303(a)(1)(A).**

Every voter has a unique nine-digit identification number. These numbers are assigned automatically through the SVRS as voters are added.

3. **Describe how the statewide voter registration list is coordinated with the databases of other state agencies, as required by HAVA Section 303(a)(1)(A). Provide the name of each state database used for coordination, and describe the procedures used for the coordination as well as how often the databases are coordinated with the statewide voter registration list.**

RSA 654:45, IV(b) provides that "Voter database record data shall be verified by matching the records with those of the department of safety and the federal social security administration as are required by law, and with the records of the state agency or division charged with maintaining vital records." The statute goes on to say that the database "may be linked to the state agency or division charged with maintaining vital

records and the department of safety, provided that no linked agency or division may save or retain voter information or use it for purposes other than verifying the accuracy of the information contained in the voter database." *Id.* The coordination of this data ensures the voter registration records are corrected when a voter dies, becomes an incarcerated felon, or willfully violates election law.

In sum, the SVRS data maintained by the Secretary of State is coordinated with databases managed by the Secretary of State – Division of Vital Records and Department of Safety – Division of Motor Vehicles. Information from these databases is received daily.

4. **Describe the process by which any duplicate voter registrations are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(B)(iii). Please include an explanation of how the State determines what constitutes a duplicate voter registration record.**

HAVA Section 303(a)(2) requires list maintenance be conducted pursuant to the NVRA. *See* 52 U.S.C. § 21083(a)(2)(A)(i)—(iii). As stated in the prefatory remarks, New Hampshire is exempt from the NVRA. *See* 52 U.S.C § 20503(b)(2).

New Hampshire law does, however, instruct the Secretary of State on how to ensure voters are unique. RSA 654:45(b) requires the Secretary to "provide for a verification process that voters sharing a place and date of birth, along with a substantially similar name to include nicknames or likely maiden/married name changes, are unique voters." If a voter "appear[s] to be a duplicate, that information shall be forwarded to the supervisors of the checklist of the cities or towns involved for review and confirmation. The supervisor of the checklist shall notify the secretary of state of the result of such review, and should the records show that a single individual may have voted more than once in any election such information shall be forwarded to the attorney general for further investigation or prosecution." *Id.*

Moreover, RSA 654:45, VIII(a) permits—though does not require—the Secretary of State to "enter into an agreement to share voter information or data from the statewide centralized voter registration database for the purpose of comparing duplicate voter information with other states or groups of states." If duplicate matches are found, the statute requires the Secretary to investigate. RSA 654:45, VIII(b). "If the investigation results in the inability to confirm the eligibility of a person or persons who voted, or there is reason to believe a person or persons voted who were not eligible, the secretary of state shall forward the results to the attorney general for further investigation or prosecution." *Id.* If this occurs, then upon completion of the investigation "the attorney general and the secretary of state shall forward a report summarizing the results of the investigation to the speaker of the house of representatives, the president of the senate, and the chairpersons of the appropriate house and senate standing committees with jurisdiction over election law." RSA 654:45, VIII(c). The Secretary of State is not currently comparing SVRS voter information with other states.

5. **Describe the process by which voters who have been convicted of a felony are identified and, if applicable under state law, removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(I).**

For purposes of removing names of ineligible voters from the official list, HAVA Section 303(a)(2)(A)(ii)(I) requires coordination with State agency records on felony status be conducted pursuant to the NVRA. *See* 52 U.S.C. § 21083(a)(2)(A)(ii)(I). As stated in the prefatory remarks, New Hampshire is exempt from the NVRA. *See* 52 U.S.C § 20503(b)(2).

In New Hampshire, persons convicted of a felony cannot vote while incarcerated. *See* RSA 607-A:2, I(a). The Secretary of State's Office receives records from the New Hampshire Department of Corrections, the New Hampshire Attorney General's Office, Attorney General Offices from other states, and the United States Attorney's Office/Department of Justice. This ensures that the database is accurate, supervisors are notified, and the incarcerated felons are removed from the checklist.

6. **Describe the process by which deceased registrants are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(II).**

For purposes of removing names of ineligible voters from the official list, HAVA Section 303(a)(2)(A)(ii)(II) requires coordination with State agency records on death be conducted pursuant to the NVRA. *See* 52 U.S.C. § 21083(a)(2)(A)(ii)(II). As stated in the prefatory remarks, New Hampshire is exempt from the NVRA. *See* 52 U.S.C § 20503(b)(2).

RSA 5-C:4 requires the Secretary to "compare information contained on each death record received by the division of vital records with information contained in the statewide centralized voter registration database and submit to the state registrar a list of every city or town that has a registered voter matching the decedent's information. Where there is not a full match of name, date of birth, and residence, the secretary of state shall provide information of partial matches for further review and confirmation by the town or city pursuant to paragraph V." Further, that statute requires the state registrar to then "transmit notice of the death to the clerk of the city or town of residence of the decedent and to each city or town listed by the secretary of state for the decedent pursuant to paragraph IV."

For out-of-state deaths, where the decedent's address is listed as New Hampshire, this information is uploaded in our vital records system which in turn is uploaded in SVRS.

When the municipal clerk receives an official notice of death or a notice of death record under RSA 5-C:4, the clerk "shall notify the supervisors of the checklist of said deaths by submitting a notice of same to the supervisors at their next regular meeting." RSA 654:37. The supervisors, upon such notice, "shall examine the checklist; and, if the name of said deceased person appears thereon, it shall be removed." *Id.*

When the supervisors "learn of the death of a voter but do not receive notice as outlined in RSA 654:37, they shall mail to the last known address of the voter a 30-day letter specifically for updating the checklist upon the death of a voter. Such letter shall include the contact information for the supervisors of the checklist to which a response may be sent. If there is no response within 30 days, the supervisors will remove that voter's name from the checklist. If there is a response confirming the death within 30 days, the supervisors may remove the voter's name upon receipt of the confirmation of death." RSA 654:37-a.

7. **Describe all technological security measures taken by the State to prevent unauthorized access to the statewide voter registration list, as required by HAVA Section 303(a)(3).**

RSA 654:45, VI provides that the SVRS "shall be private and confidential and shall not be subject to RSA 91-A and RSA 654:31, nor shall it or any of the information contained therein be disclosed pursuant to a subpoena or civil litigation discovery request. The secretary of state is authorized to provide voter database record data to the administrative office of the courts to assist in the preparation of master jury lists pursuant to RSA 500-A and to the clerk of the District Court of the United States for the District of New Hampshire to assist in the preparation of federal court jury lists. The voter checklist for a town or city shall be available pursuant to RSA 654:31. Any person who discloses information from the voter database in any manner not authorized by this section shall be guilty of a misdemeanor."

The Secretary of State has implemented robust security measures to prevent unauthorized access to the SVRS. Some of the measures include penetration testing, strict password requirements, dark web monitoring, and training of local election officials on cybersecurity. Any further details on the technological security measures of the SVRS pose a cybersecurity risk.

8. **Describe the process by which voters who have moved outside the State and subsequently register to vote in another state are identified and removed from the statewide voter registration list, under HAVA Section 303(a)(4)(A).**

HAVA Section 303(a)(4)(A) requires States to implement file maintenance systems consistent with the NVRA. *See* 52 U.S.C. § 21083(a)(4)(A). As stated in the prefatory remarks, New Hampshire is exempt from the NVRA. *See* 52 U.S.C § 20503(b)(2).

New Hampshire law provides several mechanisms for identifying voters who have moved outside the State. RSA 654:13, III requires the Secretary of State to "provide information on individuals who report being previously registered to vote out of state to the chief elections officer of that state." Further, it provides that the Secretary "shall pursue establishing routine secure electronic transfers of this information between states." *Id.* This electronic transfer is then linked to the SVRS, allowing supervisors to be notified when a registered voter in their municipality has registered in another state. *Id.*

If a supervisor receives such notification, RSA 654:36 provides that "they shall strike that name from the checklist at the next session for the correction of the checklist." In the same vein, RSA 654:36-b instructs that if "the supervisors of the checklist receive a report from the United States Postal Service or the department of safety directly or as communicated by the secretary of state through the centralized voter registration database that a voter has permanently changed his or her address to another town, city, or state, they shall strike that name from the checklist at the next session for the correction of the checklist. The supervisors of the checklist shall retain the report in accordance with RSA 33-A:3-a. As an alternative, the supervisors of the checklist may first send a 30-day notice letter and then shall remove the name from the checklist if the voter does not respond to that notice as set forth in RSA 654:44.

The Secretary of State receives National Change of Address notifications from the Postal Service and uploads them into the SVRS to notify the supervisors.

9. **Describe the process by which registrants who are ineligible to vote due to non-citizenship are identified and removed from the statewide voter registration list.**

RSA 654:12, I requires applicants to present proof of citizenship (among other things) to the supervisors or clerks. The statute lays out several types of acceptable documents to prove citizenship: "the applicant's birth certificate, passport, naturalization papers if the applicant is a naturalized citizen, or any other reasonable documentation which indicates the applicant is a United States citizen." RSA 654:12, I(a).

It is the job of the supervisors to ensure that the checklist contains the names of only qualified voters. *See* RSA 654:28 ("The supervisors of the checklist shall hear all applications for a correction of the checklist and the evidence submitted thereon and shall correct it according to their best knowledge so that it contains only the names of those persons qualified to vote at said election.").

The supervisors engage in the following procedure to remove names from the list based on lack of qualifications. Any person (including a supervisor or clerk) "may submit a request for correction of the checklist to the supervisors of the checklist or to the town or city clerk based upon evidence that a person listed on the checklist is not qualified as a voter in the town or ward." RSA 654:36-a, I. At their next session, the supervisors "examine the requests and determine whether or not it is more likely than not that the person's qualifications are in doubt." *Id.* "If the supervisors of the checklist determine that it is more likely than not that the person's qualifications are in doubt, they shall send a notice to the person and afford the person at least 30 days to provide proof of his or her qualifications. If the person fails to respond to the 30-day notice or responds but fails to provide proof that establishes that it is more likely than not that the person is qualified to vote in the town or ward, the person's name shall be removed from the checklist." RSA 654:36-a, II.

10. **HAVA requires states to verify voter registration information by mandating that applicants provide certain information under HAVA Section 303(a)(5). Please provide a copy of the voter registration application(s) utilized for in-person voter registration, a link to the State's online voter registration application, and, if applicable, the voter registration application used for same-day registration.**

New Hampshire does not have an online voter registration form. Please see the attached in-person voter registration form. There is not a different form used for same-day registration. New Hampshire also accepts the federal postcard application form from qualified UOCAVA voters.

11. **Please describe the verification process under HAVA Section 303(a)(5) that election officials perform to verify the required information supplied by the registrant. Please describe what happens to the registration application if the information cannot be verified.**

RSA 654:12 governs qualifications of applicants to register to vote. It requires applicants to present proof of citizenship, age, domicile, and identity to the supervisors or municipal clerks. A list of acceptable documentation can be found here: www.sos.nh.gov/elections/register-vote.

As for what happens if an applicant's information cannot be verified, RSA 654:12, V provides that "Any dispute as to whether a person has met the requirements to register to vote or to vote shall be decided by the election official of the town or ward in charge of voter registration or in charge of the polling place if the dispute arises at the polling place." RSA 654:12, V.

RSA 654:13, II instructs supervisors that if they "decide not to add the name of the applicant to the checklist, they shall send notification in writing to the applicant within 7 days stating the reason for the denial. They shall write the word 'REJECTED' and the date of rejection across the registration form." To help ensure a rejected registrant's rights are not violated, the Secretary of State trains local election officials to contact the New Hampshire Attorney General's Office if they reject an application on election day.

12. **Provide a copy of the current agreement, under HAVA Section 303(a)(5)(B)(i), between the chief State election official and the State's motor vehicle authority.**

Please see the attached memorandum of understanding between the New Hampshire Secretary of State and the New Hampshire Department of Safety – Division of Motor Vehicles.

13. **Provide a copy of the current agreement between the official responsible for the State's motor vehicle authority and the Commissioner of Social Security Administration under HAVA Section 303(a)(5)(B)(ii).**

The Secretary of State does not possess the current agreement between the New Hampshire Department of Safety – Division of Motor Vehicles and Commissioner of Social Security Administration. The Division of Motor Vehicles can be contacted at:

New Hampshire Department of Safety
Division of Motor Vehicles
23 Hazen Drive
Concord, NH 03305
(603) 227-4000

**14. Under HAVA Section 303(b), describe the State's requirements for an individual to vote if the individual registered to vote by mail and has not previously voted in an election for federal office in the State.**

HAVA Section 303(b) requires States to comply with the NVRA in establishing requirements for voters who register by mail. *See generally* 52 U.S.C. § 21083(b). As stated in the prefatory remarks, New Hampshire is exempt from the NVRA. *See* 52 U.S.C § 20503(b)(2).

As noted in Question 1, voters can register absentee if they are temporarily absent or have a physical disability. *See* N.H. CONST. pt. I, art. 11; RSA 654:3; 654:16.

**15. Please send us New Hampshire's current statewide voter registration list. Please include both active and inactive voters.**

New Hampshire law authorizes the Secretary of State to release the statewide voter registration list in limited circumstances not applicable here. RSA 654:31, IV permits the Secretary to, upon request, provide a political party, political committee, or candidate for county, state, or federal office, "a list of the name, domicile address, mailing address, town or city, voter history, and party affiliation, if any, of every registered voter in the state."

That said, each municipality's public checklist can be obtained from their respective supervisors or clerks. *See* RSA 654:31, II ("The supervisors of the checklist or city or town clerk shall furnish a physical copy or an electronic copy of the most recent public checklist of their town or city to any person requesting such copy."). Contact information for each of the city and town clerks can be found at app.sos.nh.gov/clerkinformation.

Sincerely,

David M. Scanlan
New Hampshire Secretary of State

**From:** Daniel Dryzga [Daniel.Dryzga@law.njoag.gov]
**Sent:** 1/9/2026 10:16:22 PM
**To:** Neff, Eric (CRT) [Eric.Neff@usdoj.gov]; Liza Fleming [Liza.Fleming@njoag.gov]
**Subject:** [EXTERNAL] RE: Follow Up email
**Attachments:** Letter in Response to Information from E. Neff.pdf

Eric,

I hope all is well. We appreciate you taking the time to speak with us about this issue. Attached is a more detailed response to your requests.

Thank you again.

Dan

Daniel F. Dryzga, Jr.,
Assistant Attorney General In Charge;
Administrative Practice Group
Division of Law
25 Market St.
P.O. Box 112
Trenton, NJ 08625-0081
(609) 376-3232
Daniel.Dryzga@law.njoag.gov

**From:** Neff, Eric (CRT) <Eric.Neff@usdoj.gov>
**Sent:** Tuesday, December 30, 2025 5:02 PM
**To:** Daniel Dryzga <Daniel.Dryzga@law.njoag.gov>; Liza Fleming <Liza.Fleming@njoag.gov>
**Subject:** [EXTERNAL] RE: Follow Up email

Yes no problem, thanks for the update.

**From:** Daniel Dryzga <Daniel.Dryzga@law.njoag.gov>
**Sent:** Tuesday, December 30, 2025 4:50 PM
**To:** Neff, Eric (CRT) <Eric.Neff@usdoj.gov>; Liza Fleming <Liza.Fleming@njoag.gov>
**Subject:** [EXTERNAL] RE: Follow Up email

Eric,

I am sorry for the delayed response. We are discussing this matter internally but the holidays has made it difficult for everyone on our end to connect. I anticipate having a fuller response to your e-mail next week. I hope you have a happy new year and I look forward to speaking with you soon,

Dan

**From:** Neff, Eric (CRT) <Eric.Neff@usdoj.gov>
**Sent:** Tuesday, December 30, 2025 10:38 AM

**To:** Daniel Dryzga <Daniel.Dryzga@law.njoag.gov>; Liza Fleming <Liza.Fleming@njoag.gov>
**Subject:** [EXTERNAL] RE: Follow Up email

Dan and Liza,

Just re-upping this. Happy to hop on a quick call if that would be easier.

Thanks,
Eric

---

**From:** Neff, Eric (CRT)
**Sent:** Friday, December 19, 2025 3:30 PM
**To:** Daniel.Dryzga@law.njoag.gov; Liza.Fleming@njoag.gov
**Subject:** Follow Up email

Dan and Liza,

Thank you for speaking with me today and listening to the DOJ's position in detail. While our call certainly had more detail than this email will, I think we all agree this will help you in your discussions internally if I memorialize some of the positions I expressed on our call in bullet point form here. This is loosely structured off of your Dec. 8 letter to our office:

- The last 4 of SSN and/or DL is necessary for accuracy purposes.
- Our global position regarding privacy concerns is that 1. We will always comply with federal law, including the Privacy Act. 2. We take enormous precautions in all things we do to protect privacy as part of routine procedure 3. To the extent a State agency believes a State law is in conflict with our election maintenance obligations under federal law, federal law preempts.
- The MOU was constructed as an offer to all states if that individual state feels it is in their state's interest to sign it. We take no position on it other than we agree with the multiple states that have taken the position it is not necessary to sign in order to facilitate the data transfer. For multiple reasons, it cannot be redlined in any fashion.
    - SORNS are internal policies that are based on federal law and regulations and best practices. While we will continue to comply with federal law regardless, we cannot make any promises or predictions as to what the SORNS will be at any point in time. They are publicly available as they currently stand on our website.
- We believe the basis and purpose as part of a CRA request is a nonreviewable matter that requires nothing more than a basic assertion, which can be applied to both the basis and the purpose. In this case, it is our voter list maintenance obligations under federal law.
- As for data sharing with other agencies, this folds back into our position before that we are going to at all times comply with all federal laws.

Let me know when I can expect a response from your office.

Best,
Eric

**Eric Neff**
Acting Chief
Civil Rights Division, Voting Section

Department of Justice
150 M St. NE, Ste. 8-139
Washington, DC 20002
Eric.Neff@usdoj.gov
Cell: 202-532-3628

CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.
CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

State of New Jersey
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO BOX 112
TRENTON, NJ 08625-0112

PHILIP D. MURPHY
*Governor*

TAHESHA L. WAY
*Lt. Governor*

MATTHEW J. PLATKIN
*Attorney General*

MICHAEL C. WALTERS
*Director*

January 9, 2026

Via Email (Eric.Neff@usdoj.com)
Eric Neff
Acting Chief
Civil Rights Division, Voting Section
U.S. Department of Justice
150 M Street NE, Suite 8-139
Washington, DC 20002

Re: DOJ's Request for Unredacted Voter Registration List Including All Fields

Dear Mr. Neff:

On behalf of the Division of Elections ("DOE") in the New Jersey Department of State, I write in further response to the request of the U.S. Department of Justice ("DOJ") for an electronic copy of New Jersey's statewide voter registration list, including fields containing individual registrants' state driver license numbers and the last four digits of the registrants' social security numbers. This response reflects DOE's consideration of the additional information you provided to Liza Fleming and me in your teleconference and follow-up email on December 19, 2025.

We appreciate you taking the time to provide an explanation of DOJ's position regarding its request for registrants' driver license and social security numbers in response to DOE's letter seeking clarification on several aspects of DOJ's request. We have discussed DOJ's request internally, assessing both applicable federal law and our obligations under state law. As you know, we previously provided DOJ with a copy of New Jersey's registration list identifying individual registrants by name and address and providing, for each such registrant, significant additional information that may be disclosed consistent with federal and state law. After careful consideration, we have concluded that DOE is unable to disclose—in addition to the extensive voter-registration information provided earlier—the confidential, personally identifiable information of each registrant.

As we have previously noted, the information sought implicates significant privacy concerns and is protected from disclosure by state law. *See, e.g.*, N.J. Stat. Ann. § 47:1A-1.1; N.J. Stat. Ann. § 47:1A-5.3(b). We respectfully disagree with DOJ's position that these protections are preempted by the federal statutes DOJ has invoked, namely, the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501–20511; the Help America Vote Act, 52

U.S.C. §§ 20901–21145; and Title III of the Civil Rights Act of 1960, 52 U.S.C. §§ 20701–20706. To the extent these statutes authorize DOJ to obtain voter-registration information from States in certain circumstances, none prohibits the redaction—or requires the disclosure—of discrete, especially sensitive personal data such as driver license and social security numbers. Although DOJ has stated that the purpose of requesting this highly sensitive information is "to assess [New Jersey's] compliance with the statewide VRL maintenance provisions of the [NVRA]," August 14, 2025 DOJ Letter at 1, the confidential driver license and social security numbers of individual registrants are not needed to determine whether New Jersey has a "general program" that makes a "reasonable effort" to remove the specified categories of ineligible voters. *See* 52 U.S.C. § 20507(a)(4). To the contrary, we believe that federal law—including the Privacy Act, the Driver's Privacy Protection Act, and the E-Government Act—imposes barriers to the disclosure sought. *See, e.g.*, 5 U.S.C. § 552a(e); 18 U.S.C. § 2721; Pub. L. No. 107-347, § 208, 116 Stat. 2899 (2002).

We also continue to have concerns about the uncertain fate and use of any confidential personally identifiable information transferred to DOJ. To help assess the implications of DOJ's request on the privacy rights of New Jersey residents, our August 21, 2025 letter sought clarification as to "whether [] DOJ anticipates disclosing any of the records sought to other federal agencies or other entities or individuals, and if so, under what circumstances and for what purpose or purposes." August 21, 2025 DOE Letter at 2-3. In your December 19, 2025 communications, you stated that DOJ will comply with all applicable federal laws, including the Privacy Act. Beyond that generalized assurance, however, we understand that DOJ is unwilling to place any limitations on the agencies and persons to whom the personally identifiable information could be disclosed, the circumstances under which it could be disclosed, or the purposes for which it could be disclosed or used. To be sure, your proposed Memorandum of Understanding between DOJ and New Jersey could in theory impose additional limitations. But the Memorandum of Understanding is inadequate to address New Jersey's confidentiality concerns, and you explained that this Memorandum of Understanding was not subject to any amendment or negotiation.

In sum, as we observed in our initial correspondence, DOJ's request for the confidential driver license and social security numbers of millions of registered New Jersey voters raises profound legal and privacy concerns under both federal and state law. We appreciate the time you have taken to explain DOJ's position. But the concerns set forth above and in our August 21, 2025 letter remain unallayed. Accordingly, we are unable at this time to provide an unredacted version of New Jersey's voter registration list including registrants' driver license numbers or the last four digits of their social security numbers.

Please do not hesitate to contact my office if you would like to discuss these issues further.

Very truly yours,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By: ______________________________
Daniel F. Dryzga, Jr.
Assistant Attorney General

Peter S. Kosinski
Co-Chair

Anthony J. Casale
Commissioner

Raymond J. Riley, III
Co-Executive Director

NEW YORK STATE | Board of Elections

40 NORTH PEARL STREET, SUITE 5
ALBANY, N.Y. 12207-2109
Phone: 518/474-8100 Fax: 518/486-4068
http://www.elections.ny.gov

Henry T. Berger
Co-Chair

Essma Bagnuola
Commissioner

Kristen Zebrowski Stavisky
Co-Executive Director

August 29, 2025

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW – 4CON
Washington, DC 20530

Dear Ms. Riordan:

In response to your letter dated June 30, 2025, and the requests therein related to New York State's compliance with the Help America Vote Act (HAVA), we provide the following response:

1. **New York State's compliance with HAVA Section 303.**

New York State is fully compliant with Section 303 of HAVA. N.Y. Election Law § 5-200 *et seq*. describe in detail the voter registration procedure in New York State, whether that registration application is received via a local board of elections or a New York State agency (including, but not limited to, the Department of Motor Vehicles). Similarly, New York State provides for a statewide voter registration list in N.Y. Election Law § 3-103, including computerized record keeping systems and the sharing of information contained within said databases. Specifically, Election Law § 5-614 provides for "one official record of the registration of each voter." New York Code of Rules and Regulations provides considerable detail as to the processing of applications and required list maintenance. *See* 9 NYCRR 6217.1 *et seq*.

2. **Process by which a voter is assigned a unique identifier.**

New York State's single official voter registration list, known as NYSVoter, assigns a unique identifier to each voter, as provided for by N.Y. Election Law § 5-614(3)(c). Local

boards of elections may also use county identification numbers, but each voter record has an official, unique state identification number. *See* 9 NYCRR 6217.1 *et seq*.

**3. Coordination with other state databases.**

The coordination with other state databases is described in N.Y. Election Law § 5-210 (Veterans' Affairs); § 5-614; § 5-708; and 9 NYCRR 6217.10 (Department of Health, Office of Court Administration). *See also* N.Y. Election Law §§ 5-708 and 5-900 *et seq*. (requiring coordination with various entities).

**4. Duplicate removals.**

New York State, through local boards of elections, removes duplicate registrations identified by the statewide voter registration system. The process is described in detail at 9 NYCRR 6217.8, with identification of potential duplicate voters described as follows: "NYSVoter shall identify possible duplicate voter registrations in near real time at or near the time of data entry for all registration application transactions based upon a match of an applicant's first three letters of the first name and the first five letters of the last name, date of birth, and, if available, the unique identification number, or the New York State Department of Motor Vehicles driver license or non-driver number or last four digits of the voter's social security number. An image of the potential duplicate voter's signature shall be made available to the county boards for comparison."

**5. Felony removals.**

New York State does not allow felons who are incarcerated to exercise the franchise. These voters are removed from the voter rolls as described in 9 NYCRR 6217.10(d) upon notification from the Office of Court Administration. *See also* N.Y. Election Law § 5-708.

**6. Removal of decedents.**

New York State likewise removes deceased voters from the rolls as described in 9 NYCRR 6217.10(d) upon notification from the New York State Department of Health and/or the New York City Department of Health and Mental Health. *See also* Election Law § 5-708.

**7. Technological security measures.**

New York State election law requires adequate technology security measures to secure its voter registration and other vital systems. *See, e.g.,* Election Law § 5-614 (13). In addition, 9 NYCRR 6220.1 *et seq*. Describes in great detail "Cyber Security Requirements for Boards of Elections," requiring robust requirements in order to protect elections cyber infrastructure, including of the statewide voter registration system.

**8. Out of state moves.**

New York State provides notice to other states of newly registered New York voters who have moved into New York, and New York State likewise acts on notices from other states that a previously registered New York voter has now registered in such other state. *See* N.Y. Election Law § 5-400(2)(d) (requiring removal of voters who have moved to another state). *See also* N.Y. Election Law § 5-704 (requiring notification to other states); 5-708 (referencing interaction with the National Change of Address system).

**9. Removal of voters from voter rolls due to ineligibility.**

New York law requires removal of voters from the voter rolls who are not eligible to vote for any statutory reason. *See* N.Y. Election Law §§ 5-102 through 5-106 (establishing qualifications of voters). See also N.Y. Election Law §5-700 *et seq.* ("Checks Against Fraudulent Practices").

**10. Voter registration applications.**

All of the application/registration documents requested can be found on the New York State Board of Elections' website here: https://elections.ny.gov/voter-registration-process. This page also includes the link to our Online Voter Registration Portal.

**11. Verification process.**

The registration verification process in New York State is described in detail in both N.Y. Election Law § 5-210 and 9 NYCRR 6217.6.

**12. Agreement with New York State's Department of Motor Vehicles (DMV).**

Please see the attached document.

**13. DMV's agreement with the Social Security Administration (SSA).**

The New York State Board of Elections is not in possession of this document. We respectfully suggest that you request it from the Social Security Administration.

**14. First time voters by mail.**

New York State is fully compliant with HAVA requirements related to first time registrants by mail. *See* N.Y. Election Law § 8-303 (initial voter identification for first-time federal voters by mail); § 8-302 (verification of voter registration generally); § 5-210 ("Registration and enrollment and change of enrollment upon application").

**15. Statewide voter registration list.**

The New York State Board of Elections is a bipartisan agency, typically requiring agreement between agency leadership of both parties to take action. Unlike the foregoing responses, we do not have a consensus view on responding to this request. Two responses, from Democratic and Republican Party counsel, respectively, are attached.

**16. Conclusion.**

If you have any further questions, please feel free to contact us in writing, as you have before. We will attempt to respond to any future requests with due promptness.

Very Truly Yours,

Brian L. Quail
Co-Counsel

Kevin G. Murphy
Co-Counsel

New York State Department of Motor Vehicles and
New York State Board of Elections

HAVV (Help America Vote Verification) Agreement

WHEREAS: In accordance with the requirements of the federal Help America Vote Act of 2002 (HAVA), the county boards of elections in New York State are collecting voter registration applications that include the last four digits of the applicant's social security number (SSN), when the applicant does not possess a New York State driver license, and are supplying this information to the New York State Board of Elections (SBOE) for inclusion in a statewide voter registration database;

AND

WHEREAS: HAVA requires that the chief State election official and the State motor vehicle authority enter into an agreement whereby the Department of Motor Vehicles (DMV) will forward information from voter registration applications received from SBOE to the Social Security Administration (SSA) through American Association of Motor Vehicle Administrators (AAMVA) for the purpose of verifying the accuracy of the information provided;

NOW, THEREFORE, it is agreed between the New York State Board of Elections (SBOE) and the Department of Motor Vehicles (DMV), as the parties in this Agreement, that:

DMV agrees to provide a service to SBOE by transmitting the last four digits of the social security number and other information submitted on a voter registration application to the SSA for purposes of verifying the information as described below:

**OVERVIEW**

SBOE will forward voter registration applicant information to DMV, which will include the last four digits of the SSN. DMV will then forward this information to AAMVA which will, forward it to the SSA. The SSA will verify the information against its Master Files of Social Security Number Holder and Applications database and will return a response code to AAMVA which will indicate the result of the attempt to match the applicant information with the database. AAMVA will return that response to DMV, and DMV will return the response to SBOE. In order to perform the above functions, it is necessary for DMV to enter into an agreement with SSA, by MOU, and a contract with AAMVA, in addition to this MOU between DMV and SBOE. DMV will follow the SSA and AAMVA standards and guidelines necessary to the working of this program.

**USER ACCOUNT AND AUTHENTICATION**

Every verification request will be authenticated by DMV. Therefore, each request must include a valid user-ID and password. SBOE will use an existing batch user-ID account that was

established by DMV for CID verification. DMV will add a new application ID for this transaction in VPASS, DMV's password maintenance system. SBOE is responsible for ensuring that the account is used only for HAVA permissible uses and that the account contains accurate and up to date user information and is otherwise maintained in accordance with DMV standards and requirements for such accounts. DMV will provide SBOE with an application for maintaining the account.

SBOE must require each county board of elections to assign an individual user-ID and the county board of elections must validate that individual user-ID before sending the verification request to SBOE for transmission to DMV. SBOE must include the county assigned user- ID with the verification request. DMV will store but will not validate the county assigned user- ID.

**FUNCTIONALITY TO BE PROVIDED**

SBOE will send a request to DMV including the applicant's name, date of birth, and the last 4 digits of the individual's SSN. SBOE will format the data according to SSA specifications and DMV will pass the data to SSA via AAMVA. When the response is returned from SSA through AAMVA the response will be passed back to SBOE.

DMV will develop a web service to forward the transaction over the existing AAMVA network. Each transaction will be handled as it is received both from SBOE and from AAMVA. However, DMV has no control over SSA or AAMVA systems and cannot guarantee a response time.

DMV will support the system during normal state business hours.

DMV will not build in any retransmission logic. If the system is not available between DMV and SSA, the transaction will time out and a message will be returned to SBOE that the transaction failed.

DMV will provide a ping function for purposes of checking system availability. If SBOE wishes to check the SSA availability, SBOE must submit a dummy transaction. If the system is not available, SBOE should cease transmissions until it ascertains whether the system is available.

SBOE will submit a transaction to the DMV web service in a structure, not in an XML document.

SBOE agrees to use this web service only for the purpose of verifying voter registration information provided to a county board of elections.

SBOE acknowledges that DMV has the right to audit SBOE and to perform all necessary audit steps to ensure that this web service is being used only as authorized by this agreement. SBOE agrees to make records supporting their usage available to DMV's audit staff.

This agreement does not establish or imply any warranties for the performance of the web service, such as its availability, capacity, response time or any other terms or conditions

generally included in a Service Level Agreement. Further, information related to the specific operational procedures, guidelines and technical requirements for use of the service will be addressed in a separate specifications document.

**AMENDMENT**

This Agreement may only be modified by written mutual consent.

Both parties agree to promptly modify this Agreement as necessary to comply with any and all pertinent federal and state statutes.

Term and Termination

This MOU will continue in effect until terminated or replaced by a successor MOU

**LIMITATION OF LIABILITY**

DMV shall not be liable to SBOE and SBOE shall not be liable to DMV for any damages including, but not limited to, direct, indirect, consequential, incidental or special damages, lost savings, loss of goodwill or otherwise, or for exemplary damages in connection with the information DMV provides to SBOE pursuant to this agreement.

IN WITNESS WHEREOF the undersigned representatives:

By: [signature]

For: NYS Board of Elections

Name: Stanley L. Zalen

Title: Executive Director
NYS Board of Elections

Date: June 22, 2006

By: [signature]

For: NYS Board of Elections

Name: Peter S. Kosinski

Title: Executive Director
NYS Board cf Elections

Date: June 22, 2006

By: ___

For: NYS Department of Motor Vehicles

Name:

Title:

Date:

Peter S. Kosinski
Co-Chair

Anthony J. Casale
Commissioner

Raymond J. Riley, III
Co-Executive Director

NEW YORK STATE | Board of Elections

40 NORTH PEARL STREET, SUITE 5
ALBANY, N.Y. 12207-2109
Phone: 518/474-8100 Fax: 518/486-4068
http://www.elections.ny.gov

Henry T. Berger
Co-Chair

Essma Bagnuola
Commissioner

Kristen Zebrowski Stavisky
Co-Executive Director

August 29, 2025

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division
US Department of Justice
950 Pennsylvania Avenue, NW-4CON
Washington, DC 20530

Dear Ms. Riordan:

The Democratic Commissioners of the New York State Board of Elections, like election officials in most other jurisdictions across the country, cannot approve the release of voter files containing social security numbers and Department of Motor Vehicle identification numbers. Under New York Law, no portion of the social security number or DMV number is available for public disclosure. *See* N.Y. Election Law § 3-220(1); N.Y. Public Officers' § Law 96a.

The United States Department of Justice may request the appropriately redacted, public statewide voter registration list pursuant to New York's Freedom of Information Law. The convenient online portal and required attestation of election-related purposes with respect to the requested voter files are located here: https://elections.ny.gov/freedom-information-requests-foil. The request may be submitted via the "Submit a FOIL Request" button.

Any request duly made will be processed in the normal course, and in full compliance with 52 USC 20507(i)(1). *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (noting federal law "does not require the disclosure of sensitive information that implicates privacy concerns..."). Moreover, federal courts have held states can redact social security numbers "in the voter registration application before public disclosure...[a]ccordingly, the proper redaction of certain personal information in the Voter File can further assuage the potential privacy risks implicated...." *Id.* And, of course, HAVA contains no disclosure or administrative document request provisions that would expand on the scope required under the NVRA. *See* 52 USC 21111.

It must be further noted that none of the authorities cited in your letters articulate a right to *unredacted* voter file information, and other federal laws prohibit its disclosure to the Department. *See, eg,* 18 USC § 2721 (b) (1) (Drivers Privacy Protection Act); 5 USC § 552 *et seq*. (requiring a System of Records Notice[1] which satisfies various procedural and substantive requirements and which would be required given the fact that, among other things, and upon information and belief, the Department of Justice has never before amalgamated unredacted voter files across multiple states, notwithstanding decades of enforcement history spanning administrations of both major political parties).

The Democratic Commissioners remain firmly committed to providing the Department of Justice any and all information necessary and proper to assess New York's compliance with federal laws. The New York State Board of Elections has a proud history of cooperation with the United States Department of Justice. To that end we are prepared upon proper request to provide the New York voter file with any portion of social security numbers and drivers' license numbers not included.

Very Truly Yours,

Brian L. Quail
Counsel

[1] A System of Records Notice is a public notification, required by the federal Privacy Act of 1974, that describes how a federal agency collects, stores, and maintains Personally Identifiable Information (PII) retrieved by a unique identifier. These notices are published in the Federal Register and outline the purpose of the data collection, the type of information gathered, how it's used and shared, and the process for individuals to access or amend their records.

NEW YORK STATE Board of Elections

Peter S. Kosinski
Co-Chair

Anthony J. Casale
Commissioner

Raymond J. Riley III
Co-Executive Director

40 NORTH PEARL STREET, SUITE 5
ALBANY, N.Y. 12207-2109
Phone: 518/474-8100 Fax: 518/486-4068
http://www.elections.ny.gov

Henry T. Berger
Co-Chair

Essma Bagnuola
Commissioner

Kristen Zebrowski Stavisky
Co-Executive Director

August 29, 2025

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW – 4CON
Washington, DC 20530

Dear Ms. Riordan:

As stated in our previous agency response, the New York State Board of Elections is a bipartisan agency, typically requiring agreement between agency leadership of both parties to take official action. We do not have a consensus view on an agency response to your request for a complete statewide voter registration list, including driver's license numbers and the last four digits of Social Security numbers. As such, this letter serves as the Republican staff position.

We maintain that the information requested relating to the statewide voter registration list can and should be provided in its entirety, with an understanding that all personal identifying information contained within any version of this list be protected from public disclosure under all relevant provisions of both New York State and federal law.

The U.S. Department of Justice, in our view, has inherent authority to review an individual state's voter registration list as the federal agency tasked with enforcement of both HAVA and the NVRA. Both programs touch upon numerous critical components of the voter registration process, with HAVA, in particular, creating mandatory minimum standards for individual states relating to statewide voter registration lists.

While N.Y. Election Law § 3-220(1) does explicitly state that "a voter's driver's license number, department of motor vehicle non-driver photo ID number, social security number and facsimile number shall not be released for public inspection," we suggest that relying on this provision (1) ignores the major distinction between a Social Security Number and the last four digits thereof; and (2) perhaps more importantly, equates the DOJ request with one made under the Freedom of Information Law by a member of the public.

As we do not have consensus as an agency to provide the information requested, we are unable to fulfill these requests at this time.

A statewide voter registration list that includes neither driver's license numbers nor any portion of Social Security numbers will be provided in response to a FOIL request filed with our agency through our GovQA online FOIL Request Portal, which can be found at https://electionsny.govqa.us/WEBAPP/_rs/. We believe that this is in line with the Democratic staff position.

Please do not hesitate to contact our office if you have any further questions or require additional information.

Very truly yours,

Kevin G. Murphy
Co-Counsel

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF STATE

August 21, 2025

*Via Electronic Mail*
Harmeet K. Dhillon
Assistant Attorney General
Michael E. Gates
Deputy Assistant Attorney General
U.S. Department of Justice, Civil Rights Division
950 Pennsylvania Avenue, NW – 4CON
Washington, DC 20530
voting.section@usdoj.gov

Dear AAG Dhillon and DAAG Gates:

I write in response to your letters dated August 4, 2025, and August 14, 2025, requesting an electronic copy of the Commonwealth of Pennsylvania's statewide voter registration list. Your letter dated August 14 specifically asked for detailed personal and confidential information, including driver's license numbers and social security numbers, for all Pennsylvania voters. This request, and reported efforts to collect broad data on millions of Americans, represent a concerning attempt to expand the federal government's role in our country's electoral process. Please know that the Department of State takes seriously its obligation to safeguard the integrity and accuracy of Pennsylvania's voter rolls, as well as the security of Pennsylvanians' personal information. Because your letters do not provide any legal justification for the Department to disregard this sacred obligation, we are unable to share such confidential information with you. We can, however, provide Pennsylvania's Full Voter Export, subject to the conditions below.

Pursuant to Pennsylvania law, our Full Voter Export is available through the Pennsylvania Department of State's website. This list includes all voters in the Commonwealth (with certain limited exceptions for crime victims and other confidential voters) and contains the following fields: voter ID number, name, sex, date of birth, date registered, status (i.e., active or inactive), date status last changed, party, residential address, mailing address, polling place, date last voted, all districts in which the voter votes, voter history, and date the voter's record was last changed.

In accordance with the Pennsylvania voter registration law[1] and the Statewide Uniform Registry of Electors (SURE) Regulations,[2] all requesters must agree to the terms and conditions for use of public information lists. Further information may be found on our website. Please let us know if you would like to receive this data subject to these terms and conditions.

[1] 25 Pa.C.S. Part IV.
[2] 4 Pa. Code ch. 183.

Your August 14 letter specifically asked for *all* fields in the Commonwealth's computerized statewide voter registration list, including each voter's Pennsylvania driver's license number or last four digits of their social security number. We are aware of no precedent for such a broad request for such sensitive information. While we are happy to provide the Full Voter Export, consistent with the process outlined above, we cannot provide these fields, which contain sensitive, personally identifiable information for Pennsylvania's 8.8 million voters.

As Pennsylvania's chief election official, I take seriously my obligation to ensure that our county election officials faithfully maintain our voter rolls. The Department works with Pennsylvania's 67 counties in making every reasonable effort to ensure that all electoral processes are fully compliant with federal and Pennsylvania laws, including the National Voter Registration Act and the Help America Vote Act. Likewise, I take seriously my responsibility to safeguard the private information that Pennsylvanians entrust to the care of our county election officials. Our laws do not permit the Department to release driver's license or social security numbers. These protections are consistent with other federal and state statutes that protect social security and driver's license numbers. The Department's statutory obligations are reinforced by the Pennsylvania Constitution, which requires the Department to maintain the privacy of our 8.8 million registered voters.

None of the legal bases provided in your letter justify or authorize providing these fields and disregarding the strong protections on voter privacy enshrined in our Commonwealth's laws.

*First*, the NVRA does not require the disclosure of voters' sensitive personal information. Your letter provides no explanation as to why the social security and driver's license numbers of every registered voter in Pennsylvania are necessary to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA. As explained in the Department's letters dated July 23, 2025, and August 18, 2025, and as detailed in our publicly available Annual Report on the Administration of Voter Registration in Pennsylvania, the Department does a robust job of ensuring that all of Pennsylvania's 67 counties comply with their list maintenance responsibilities pursuant to the NVRA. You have provided no basis for concluding otherwise.

*Second*, no provision of HAVA provides authority for such a request. Although the Attorney General has authority under HAVA to bring certain enforcement actions, you have identified no basis for why the social security and driver's license numbers of all Pennsylvania's registered voters is necessary to ascertain Pennsylvania's compliance with the list maintenance requirements of HAVA.

*Finally*, the Civil Rights Act of 1960 does not provide legal authority for such a broad request. You have identified no basis or purpose for why the social security and driver's license numbers of all Pennsylvania's registered voters is necessary to enforce any relevant legal requirements, nor have you shown how such a request would satisfy the requirements of the Civil Rights Act.

* * *

Consistent with Pennsylvania and federal law, the Department and Pennsylvania's 67 counties go far beyond the reasonable efforts required by the NVRA to ensure that Pennsylvania's voter rolls are accurate. The Department is also entrusted to protect and safeguard the personal information of our 8.8 million voters, and I take that obligation extremely seriously.
Please let us know if you have any further questions, or would like to proceed with obtaining the Full Voter Export, as permitted under Pennsylvania law.

Sincerely,

Al Schmidt
Secretary of the Commonwealth

# South Dakota Secretary of State

**Monae L. Johnson**
Secretary of State

**Thomas J. Deadrick**
Deputy Secretary of State

December 23, 2025

Eric Neff
Trial Attorney
Civil Rights Division
Department of Justice
150 M St. NE, Ste. 8-139
Washington, DC 20002

By Email Only

re: South Dakota list maintenance and data share

Dear Mr. Neff:

South Dakota has had access to Tennessee's, Mississippi's, and Ohio's letters to the Department of Justic (DOJ) concerning the transfer of state data roles to the DOJ. South Dakota has reviewed the same and find ourselves in agreement with the letters sent by Tennessee, Mississippi, and Ohio. As such we have liberally lifted the language found in their letters.

We are preparing to transfer Souith Dakota' statewide vote file per your request. Our goal is to have this data submitted to you as soon as possible taking into consideration the holidays.

It is our understanding that despite the concerns raised by a group of Secretaries of State last week, no amendments will be made to the draft Memorandum of Understanding (MOU). Since our concerns have not been addressed, we must decline to sign the MOU.

We are concerned that the 45-day deadline in Section VIII to remove voters identified by the Justice Department contradicts the same laws the MOU seeks to enforce, namely the National Voter Registration Act (NVRA).

As you know, the NVRA has safeguards on behalf of the voter to ensure an eligible voter is not removed inappropriately. See 52 U.S.C. § 20507. In some instances, notice to the voter is required, followed by an additional time period in which they may vote or otherwise respond to confirm their continued eligibility. The NVRA also places limits on systematic list maintenance activities within 90 days of a federal election. We cannot agree to a blanket removal provision with a 45-day deadline given the MOU's conflicting language with both South Dakota and federal law.

South Dakota is committed to maintain the security of voter data while simultaneously ensuring the integrity of South Dakota's voter roll. In accordance with communications between the DOJ and South Dakota, the South Dakota Secretary of State's Office understands that the DOJ will use the records only for legitimate

500 East Capitol Avenue, Pierre, SD 57501-5070 | Telephone: (605) 773-3537 | Fax: (605) 773-6580
www.SDSOS.gov | sdsos@state.sd.us

governmental purposes and will not disclose any of the provided records to any entity except as authorized to do so under 52 U.S.C. § 20704. Further, it is our understanding that all federal data privacy laws, including, but not limited to, the Privacy Act of 1974, 5 U.S.C. § 552(a), and Section 304 of the CRA, 52 U.S.C. § 20704, will be strictly followed.

We are aware of litigation filed by the Justice Department in other states regarding access to statewide voter files. While we believe the Justice Department has authority to request the data, we will be monitoring these cases for any clarification of the scope of the Justice Department's authority to make similar requests in the future.

We ask that any notice regarding concerns about specific voters contain sufficient information to explain why the record is being flagged. For example, if the voter record matches a record from another federal agency or another state that indicates the voter is ineligible to vote in South Dakota, please provide us with the matching data that provides the basis for the voter's potential ineligibility. We will need this information to confirm the records match and to determine the appropriate next steps for the record in question. Any action we take will be consistent with state and federal law.

Our main concern that we have consistently expressed is the protection of the personal identification information for our registered voters. This is a reasonable concern, as voters have trusted we will keep their data safe. We will submit our data via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS) after the DOJ has instructed us on how to use JEFS and approved any steps South Dakota must take in order to access and use JEFS. You have assured us and the public that you will protect the data of our fellow South Dakotans. As we submit this data, please remember the trust that is being placed in your office.

Again, please know that that our office is and has been committed to accurate voter rolls because we know how critical they are to honest elections. Our commitment to this integrity has been staunch and not wavered. If you have any questions, please let us know.

Sincerely,

Monae L. Johnson

Monae L. Johnson
Secretary of State

**State of Tennessee**

The Secretary of State
State Capitol
Nashville, Tennessee 37243-0305

Tre Hargett
Secretary of State

615-741-2819
Tre.Hargett@tn.gov

August 26, 2025

Mr. Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Mr. Gates,

We are in receipt of your letters requesting "Tennessee's statewide voter registration list and information regarding Tennessee's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*." The second letter also makes references to responsibilities under the Help America Vote Act ("HAVA"). The following summarizes Tennessee's compliance with various list maintenance activities enumerated within the NVRA and HAVA.

Please be assured that Tennessee prioritizes voter list maintenance. We pride ourselves on being a state where it is easy to vote but hard to cheat. We use federal and state resources, and we are one of the first states to use commercial resources for list maintenance. Likewise, we are one of the first states to utilize the enhanced SAVE program. In fact, we have compared more than 4 million records with the SAVE program.

We are in the midst of a special primary and general election to fill a vacancy in District 7 of the United States House of Representatives. The special primary election will be held on Tuesday, October 7, and the special general election will be held on Tuesday, December 2. We are less than a month away from in-person voting. We have much planning and many deadlines to meet in this abbreviated election schedule. These special elections, in addition to normal election duties, have caused a human resource capacity issue. Therefore, my response is to the point. Tennessee is in full compliance with the NVRA and HAVA as outlined below.

**I. Description of Tennessee's compliance with HAVA and NVRA list maintenance requirements.**

**Removal "at the request of the registrant." 52 U.S.C. § 20507(a)(3)(A).**

Tennessee complies with this provision by allowing voters to request to be removed. Once they request removal, the person is removed.

**Removal "as provided by State law, by reason of criminal conviction or mental incapacity." 52 U.S.C. § 20507(a)(3)(B).**

**"For purposes of removing names of ineligible voters from the official list of eligible voters under section 8(a)(3)(B) of such Act (42 U.S.C. 1973gg–6(a)(3)(B)) [now 52 U.S.C. 20507(a)(3)(B)], the State shall coordinate the computerized list with State agency records on felony status." 52 U.S.C. § 21083(a)(2)(A)(ii)(I).**

This office coordinates with the Tennessee Department of Correction to receive data on felony status. This is done regularly as the 90-day prohibition in the NVRA does not apply to felony convictions. Additionally, the NVRA requires each federal district court in Tennessee to provide data regarding convictions in federal court. 52 U.S.C. § 20507(g). Registered voters are removed after receiving notice of a conviction. Individuals are also removed if a court declares a person ineligible to vote because of mental incapacity.

**Removal as a result of "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant." 52 U.S.C. §§ 20507(a)(3)(C) and (a)(4)(A).**

**"For purposes of removing names of ineligible voters from the official list of eligible voters by reason of the death of the registrant under section 8(a)(4)(A) of such Act (42 U.S.C. 1973gg–6(a)(4)(A)) [now 52 U.S.C. 20507(a)(4)(A)], the State shall coordinate the computerized list with State agency records on death." 52 U.S.C. § 21083(a)(2)(A)(ii)(II).**

This office coordinates with the Tennessee Department of Health Office of Vital Records to receive information about registered voters who have died. Matches are removed from the voter list. This is done regularly as the 90-day prohibition in the NVRA does not apply to removing deceased individuals. Going beyond the requirements in federal law, we also use federal data and other commercial sources to identify deceased individuals.

**Removal as a result of "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)." 52 U.S.C. 20507 §§ (a)(3)(c), (a)(4)(B), (b), (c), and (d).**

**"The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly." 52 U.S.C. § 21083(a)(4).**

Election officials use National Change of Address data to identify potential moves. When data indicates a voter has moved outside of their jurisdiction, election officials send a forwardable confirmation notice and place the voter on inactive status. If a voter fails to respond to a confirmation notice, does not appear to vote, and does not update the voter registration between the time the notice is sent and the second regular November election held after the notice was sent, the voter is removed. This activity is done outside of the 90-day deadline because the 90-day NVRA prohibition applies.

This office runs automated comparisons nightly to identify voters who have moved within Tennessee. This office has agreements with six states to compare voter registration data to ensure voters are only registered and voting in one state.

**"The list maintenance performed under subparagraph (A) shall be conducted in a manner that ensures that the name of each registered voter appears in the computerized list; only voters who are not registered or who are not eligible to vote are removed from the computerized list; and duplicate names are eliminated from the computerized list." 52 U.S.C. § 21083(a)(2)(B)(i)-(iii).**

Tennessee complies with all three requirements of subparagraph (a)(2)(B). Specifically, this office runs automated comparisons nightly to identify voters who have moved within Tennessee and remove ineligible voters.

**II. Request for Voter Registration List.**

Regarding the voter registration list, while the August 14 letter in part cites 52 U.S.C. § 21083(a)(5)(A)(i) as a basis for requesting the driver's license number or last four digits of the registrant's social security number, Tennessee is exempt from the requirements of this paragraph under 52 U.S.C. § 21083(a)(5)(D). As your letter states, the list provided shall "be made available for inspection, reproduction, and copying at the principal office of such custodian…" Perhaps this is a gray area in the law because we have not found an authority stating the list must be provided electronically.

As you know, State and local jurisdictions are responsible for ensuring that security measures must be in place to prevent unauthorized access to the information you have requested. Given that electronic production may or may not be required and our duty to keep the information safe, we believe a memorandum of understanding should be entered into between the state and the DOJ regarding any production of the electronic list. For the protection of Tennessee's voters, the MOU should state that the DOJ will be responsible if disclosure of the voter information is disclosed under the control of the DOJ. We are also interested in language that would call for the destruction of the voter data once the DOJ has finished the review and an assurance that the voter data is only used for the stated purposes in the MOU.

**III. Individuals involved in list maintenance.**

Many of the list maintenance activities mentioned occur at the local level. As such, the local level would have the list of individuals involved in list maintenance activities over the last two years. I have included the names of each county's election administrator, as well as the appropriate state office staff.

Should further clarification be required, please do not hesitate to ask.

Sincerely,

Mark Goins

Mark Goins
Coordinator of Elections

Enclosure

**Tennessee Division of Elections**

The following individuals are responsible for implementing Tennessee's general program of voter registration list maintenance at the state level. Additional staff may assist with clerical duties related to the sending of documents.

| | |
|---|---|
| Mark Goins | Coordinator of Elections |
| Beth-Henry Robertson | Assistant Coordinator of Elections |
| Andrew Dodd | Assistant Coordinator of Election |
| Steve Griffy | AES Systems Administrator |
| Allen Hall | Business Intelligence Specialist |
| Zachary Pratt | Business Intelligence Specialist |

**Administrators of Elections**

Each county employs an administrator of elections who is responsible for overseeing the maintenance of voter registration files.

| | |
|---|---|
| Mark Stephens | Anderson County Election Commission |
| Summer Leverette | Bedford County Election Commission |
| Jeff Beasley | Benton County Election Commission |
| Lisa Wheeler | Bledsoe County Election Commission |
| Moe Click | Blount County Election Commission |
| Fran Green | Bradley County Election Commission |
| Mallory Rosenfeld | Campbell County Election Commission |
| Matt Teply | Cannon County Election Commission |
| Peg Hamlett | Carroll County Election Commission |
| Tracy T. Harris | Carter County Election Commission |
| Pam Frejosky | Cheatham County Election Commission |
| Kathy Vest | Chester County Election Commission |
| Aaron Reed | Claiborne County Election Commission |
| Monica Davis | Clay County Election Commission |
| Josh Blanchard | Cocke County Election Commission |
| Andy Farrar | Coffee County Election Commission |
| Laney Tucker | Crockett County Election Commission |
| Jill Davis | Cumberland County Election Commission |
| Jeff Roberts | Davidson County Election Commission |
| Teresa Bedingfield | Decatur County Election Commission |
| Dustin Estes | Dekalb County Election Commission |
| Roxanne Hagewood | Dickson County Election Commission |
| Anita Fowlkes | Dyer County Election Commission |
| Josh Tapp | Fayette County Election Commission |
| Joey Williams | Fentress County Election Commission |
| Margaret Ottley | Franklin County Election Commission |
| Emily Brown | Gibson County Election Commission |
| Zena Dickey | Giles County Election Commission |

**Administrators of Elections (continued)**

| | |
|---|---|
| Gina Hipsher | Grainger County Election Commission |
| Justin Reaves | Greene County Election Commission |
| Garry D. Miller | Grundy County Election Commission |
| Jeffrey C. Gardner | Hamblen County Election Commission |
| Scott Allen | Hamilton County Election Commission |
| Sue Greer | Hancock County Election Commission |
| Amber Moore | Hardeman County Election Commission |
| Kim Melson | Hardin County Election Commission |
| Crystal Rogers | Hawkins County Election Commission |
| Andrea Smothers | Haywood County Election Commission |
| Robin Powers | Henderson County Election Commission |
| DeLaina Green | Henry County Election Commission |
| Martie Davis | Hickman County Election Commission |
| Annette H. Pulley | Houston County Election Commission |
| Joann Bullion | Humphreys County Election Commission |
| Drew McMillan | Jackson County Election Commission |
| Nathan Bugg | Jefferson County Election Commission |
| Cheri Lipford | Johnson County Election Commission |
| Chris Davis | Knox County Election Commission |
| Michelle Morgan | Lake County Election Commission |
| Cinda Tillman | Lauderdale County Election Commission |
| Tanya White | Lawrence County Election Commission |
| Rusty Isbell | Lewis County Election Commission |
| Shelia Allen | Lincoln County Election Commission |
| Susan Harrison | Loudon County Election Commission |
| Barry Doss | Macon County Election Commission |
| Lori Lott | Madison County Election Commission |
| David Riley | Marion County Election Commission |
| Andrew Robertson | Marshall County Election Commission |
| Chris Mackinlay | Maury County Election Commission |
| Bridgett Prichard | McMinn County Election Commission |
| Joanie Collins | McNairy County Election Commission |
| Judy McAllister | Meigs County Election Commission |
| James R. Brown | Monroe County Election Commission |
| Amanda Joslin | Montgomery County Election Commission |
| Jim Sanders | Moore County Election Commission |
| Tim Sweat | Morgan County Election Commission |
| Leigh Schlager | Obion County Election Commission |
| Craig Story | Overton County Election Commission |
| Gaye Treadwell | Perry County Election Commission |
| Tim Clark | Pickett County Election Commission |
| Nathan Hitson | Polk County Election Commission |
| Michele Honeycutt | Putnam County Election Commission |
| Felicia Goodman | Rhea County Election Commission |

**Administrators of Elections (continued)**

| | |
|---|---|
| Charles Holiway | Roane County Election Commission |
| Cathy Hamsley | Robertson County Election Commission |
| Alan Farley | Rutherford County Election Commission |
| Gabe Lowe Krahn | Scott County Election Commission |
| Jerrie Holland | Sequatchie County Election Commission |
| Nathan Whaley | Sevier County Election Commission |
| Linda Phillips | Shelby County Election Commission |
| Korinne Hill | Smith County Election Commission |
| Daniel Perigo | Stewart County Election Commission |
| Jason C. Booher | Sullivan County Election Commission |
| Lori D. Atchley | Sumner County Election Commission |
| Cindy Pinner | Tipton County Election Commission |
| Steven M. Paxton | Trousdale County Election Commission |
| Sarah J. Fain | Unicoi County Election Commission |
| Candy Booker | Union County Election Commission |
| Wayne Simons | Van Buren County Election Commission |
| Susie Davenport | Warren County Election Commission |
| Chuck Vest | Washington County Election Commission |
| Lillie Ruth Brewer | Wayne County Election Commission |
| Alex Britt | Weakley County Election Commission |
| Sherry Anderson | White County Election Commission |
| Chad Gray | Williamson County Election Commission |
| Tammy Smith | Wilson County Election Commission |

Tennessee Secretary of State
Tre Hargett

Elections Division
312 Rosa L. Parks Avenue, 7th Floor
Nashville, Tennessee 37243-1102

Mark Goins
Coordinator of Elections

615-741-7956
Mark.Goins@tnsos.gov

December 10, 2025

David D. Vandenberg
Trial Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW 4CON
Washington, D.C. 20530

Mr. Vandenberg,

Thank you for sending the draft Memorandum of Understanding (MOU) regarding access to Tennessee's statewide voter registration list on Thursday December 4, 2025.

As we have discussed, we have not had the opportunity to thoroughly review the MOU given last week's special election to fill a congressional vacancy and subsequent certification of the election. Additionally, I have been dealing with a kidney stone that has further delayed my review.

Although I have not thoroughly reviewed the draft MOU, Secretary Hargett and I have read it. Secretary Hargett has informed me that he, as well as several other secretaries, integrated some of our concerns into a recent letter to Assistant Attorney General Dhillon from Mississippi Secretary of State Watson. Secretary Hargett has also shared with me that Secretaries Landry, LaRose, and Watson are meeting with General Dhillon next week for the purpose of discussing potential modifications to the MOU. Any modification being requested will be to ensure the protection of voter's personal information and to conform with existing law.

Our office looks forward to coming to an agreement that furthers the goal of accurate voter rolls which are fundamental to the integrity of our elections. Please let me know if you have any questions.

Sincerely,

Mark Goins
Coordinator of Elections

Cc: Tennessee Secretary of State Tre Hargett

**U.S. Department of Justice**

Civil Rights Division

## CONFIDENTIAL MEMORANDUM OF UNDERSTANDING

### I. PARTIES & POINTS OF CONTACT.

Requester
Federal Agency Name: Civil Rights Division, U.S. Department of Justice
VRL/Data User:
Title:
Address:
Phone:

VRL/Data Provider
State Agency Name: Office of the Texas Secretary of State
Custodian: Adam Bitter
Title: General Counsel
Address: P.O. Box 12697, Austin, Texas 78711-2697
Phone: (512) 475-2813

The parties to this Memorandum of Understanding ("MOU" or "Agreement") are the Department of Justice, Civil Rights Division ("Justice Department" or "Department"), and the State of Texas ("Texas").

### II. AUTHORITY.

By this Agreement, Texas has agreed to, and will, provide an electronic copy of your state's complete statewide Voter Registration List ("VRL" or "VRL/Data") to the Civil Rights Division of the U.S. Department of Justice (at times referred to as the "Department"). The VRL/Data must include, among other fields of data, the voter registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social

security number as required under the HAVA to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A).

The authorities by which this information is requested by the Department of Justice are:

- National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq*.
- Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. See 52 U.S.C. § 20501(a).
- Help America Vote Act of 2002, 52 U.S.C. § 20901, *et seq.*
- Attorney General's authority to enforce the Help America Vote Act under 53 U.S.C. § 21111.
- Attorney General authority to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*.
- The Privacy Act of 1974, 5 U.S.C. § 552a, as amended.

## III. PURPOSE.

A VRL is a Voter Registration List pursuant to the NVRA and HAVA, commonly referred to as "voter roll," compiled by a state – often from information submitted by counties – containing a list of all the state's *eligible* voters. Regardless of the basis for ineligibility, ineligible voters do not appear on a state's VRL when proper list maintenance is performed by states. The Justice Department is requesting your state's VRL to test, analyze, and assess states' VRLs for proper list maintenance and compliance with federal law. In the event the Justice Department's analysis of a VRL results in list maintenance issues, insufficiency, inadequacy, anomalies, or concerns, the Justice Department will notify your state's point of contact of the issues to assist your state with curing.

The purpose of this MOU is to establish the parties' understanding as to the security protections for data transfer and data access by the Department of Justice of the electronic copy of the statewide voter registration list, including all fields requested by the Department of Justice.

## IV. TIMING OF AGREEMENT – TIME IS OF ESSENCE.

Although the Justice Department is under no such obligation as a matter of law, because this Agreement is proposed, made, and to be entered into at your state's request as part of your state's transmission of its VRL to the Justice Department, this Agreement is to be fully executed within seven (7) days of the Justice Department presenting this Agreement to you. Both parties agree that no part of this Agreement or execution is intended to, or will, cause delay of the transmission of your state's VRL to the Justice Department for analysis.

## V. TIMING OF VRL/DATA TRANSFER.

You agree to transfer an electronic copy of your state's complete statewide VRL/Data to the Civil Rights Division of the U.S. Department of Justice as described in Section III of this Agreement no later than five (5) business days from the execution of this Agreement, which is counted from the last day of the last signatory.

## VI. METHOD OF VRL/DATA ACCESS OR TRANSFER.

The VRL will be submitted by your state via the Department of Justice's secure file-sharing system, i.e., Justice Enterprise File Sharing (JEFS"). A separate application to use JEFS must be completed and submitted by your state through the Civil Rights Help Desk. JEFS implements strict access controls to ensure that each user can only access their own files. All files and folders are tied to a specific user, and each user has defined permissions that govern how they may interact with those files (e.g., read, write, or read-only).

Whenever a user attempts to access a file or folder, JEFS validates the request against the assigned permissions to confirm that the user is explicitly authorized. This process guarantees that users can only access files and folders only where they have permission. Users are also limited to the authorized type of interaction with each file or folder. Within the Department of Justice, access to JEFS is restricted to specific roles: Litigation Support, IT staff, and Civil Rights Division staff.

## VII. LOCATION OF DATA AND CUSTODIAL RESPONSIBILITY.

The parties mutually agree that the Civil Rights Division (also "Department") will be designated as "Custodian" of the file(s) and will be responsible for the observance of all conditions for use and for establishment and maintenance of security agreements as specified in this agreement to prevent unauthorized use. The information that the Department is collecting will be maintained consistent with the Privacy Act of 1974, 5 U.S.C. § 552a. The full list of routine uses for this collection of information can be found in the Systems of Record Notice ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (August 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include NVRA, HAVA, and the Civil Rights Act of 1960, and the Justice Department is making our request pursuant to those statutes. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

VRL/Data storage is similar to the restricted access provided on JEFS and complies with the SORN: Information in computer form is safeguarded and protected in accordance with applicable Department security regulations for systems of records. Only a limited number of staff members who are assigned a specific identification code will be able to use the computer to access

the stored information. However, a section may decide to allow its employees access to the system in order to perform their official duties.

All systems storing the VRL data will comply with all security requirements applicable to Justice Department systems, including but not limited to all Executive Branch system security requirements (e.g., requirements imposed by the Office of Management and Budget [OMB] and National Institute of Standards and Technology [NIST]), Department of Justice IT Security Standards, and Department of Justice Order 2640.2F.

**VIII. NVRA/HAVA COMPLIANT VOTER REGISTRATION LIST.**

After analysis and assessment of your state's VRL, the Justice Department will securely notify you or your state of any voter list maintenance issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, the Justice Department found when testing, assessing, and analyzing your state's VRL for NVRA and HAVA compliance, i.e., that your state's VRL only includes eligible voters.

You agree therefore that within forty-five (45) days of receiving that notice from the Justice Department of any issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, your state will clean its VRL/Data by removing ineligible voters and resubmit the updated VRL/Data to the Civil Rights Division of the Justice Department to verify proper list maintenance has occurred by your state pursuant to the NVRA and HAVA.

**IX. CONFIDENTIALITY & DEPARTMENT SAFEGUARDS.**

Any member of the Justice Department in possession of a VRL/Data will employ reasonable administrative, technical, and physical safeguards designed to protect the security and confidentiality of such data. Compliance with these safeguards will include secure user authentication protocols deploying either: (i) Two-Factor Authentication ("2FA"), which requires users to go through two layers of security before access is granted to the system; or (ii) the

assignment of unique user identifications to each person with computer access plus unique complex passwords, which are not vendor supplied default passwords.

The Department will activate audit logging for the records, files, and data containing the state's VRL/Data in order to identify abnormal use, as well as to track access control, on computers, servers and/or Devices containing the VRL/Data.

For all devices storing records, files, and data containing the VRL/Data: there is (i) up-to-date versions of system security agent software that includes endpoint protection and malware protection and reasonably up-to-date patches and virus definitions, or a version of such software that can still be supported with up-to-date patches and virus definitions, and is set to receive the most current security updates on a regular basis; and (ii) up-to-date operating system security patches designed to maintain the integrity of the personal information.

For all devices storing records, files, and data containing the VRL/Data: there is (i) controlled and locked physical access for the Device; and (ii) the prohibition of the connection of the Device to public or insecure home networks.

There will be no copying of records, files, or data containing the VRL/Data to unencrypted USB drives, CDs, or external storage. In addition, the use of devices outside of moving the records, files, or data to the final stored device location shall be limited.

Any notes, lists, memoranda, indices, compilations prepared or based on an examination of VRL/Data or any other form of information (including electronic forms), that quote from, paraphrase, copy, or disclose the VRL/Data with such specificity that the VRL/Data can be identified, or by reasonable logical extension can be identified will not be shared by the Department. Any summary results, however, may be shared by the Department.

In addition to the Department's enforcement efforts, the Justice Department may use the information you provide for certain routine, or pre-litigation or litigation purposes including:

present VRL/Data to a court, magistrate, or administrative tribunal; a contractor with the Department of Justice who needs access to the VRL/Data information in order to perform duties related to the Department's list maintenance verification procedures. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. § 552a(m).

## X. LOSS OR BREACH OF DATA.

If a receiving party discovers any loss of VRL/Data, or a breach of security, including any actual or suspected unauthorized access, relating to VRL/Data, the receiving party shall, at its own expense immediately provide written notice to the producing party of such breach; investigate and make reasonable and timely efforts to remediate the effects of the breach, and provide the producing party with assurances reasonably satisfactory to the producing party that such breach shall not recur; and provide sufficient information about the breach that the producing party can reasonably ascertain the size and scope of the breach. The receiving party agrees to cooperate with the producing party or law enforcement in investigating any such security incident. In any event, the receiving party shall promptly take all necessary and appropriate corrective action to terminate unauthorized access.

## XI. DESTRUCTION OF DATA.

The Department will destroy all VRL/Data associated with actual records as soon as the purposes of the list maintenance project have been accomplished and the time required for records retention pursuant to applicable law has passed. When the project is complete and such retention requirements by law expires, the Justice Department will:

1. Destroy all hard copies containing confidential data (e.g., shredding);
2. Archive and store electronic data containing confidential information offline in a secure location; and

3. All other data will be erased or maintained in a secured area.

## XII. OTHER PROVISIONS.

A. Conflicts. This MOU constitutes the full MOU on this subject between the Department and your state. Any inconsistency or conflict between or among the provisions of this MOU, will be resolved in the following order of precedence: (1) this MOU and (2) other documents incorporated by reference in this MOU (e.g., transaction charges).

B. Severability. Nothing in this MOU is intended to conflict with current law or regulation or the directives of Department, or the your state. If a term of this MOU is inconsistent with such authority, then that term shall be invalid but, to the extent allowable, the remaining terms and conditions of this MOU shall remain in full force and effect.

C. Assignment. Your state may not assign this MOU, nor may it assign any of its rights or obligations under this MOU. To the extent allowable by law, this MOU shall inure to the benefit of, and be binding upon, any successors to the Justice Department and your state without restriction.

D. Waiver. No waiver by either party of any breach of any provision of this MOU shall constitute a waiver of any other breach. Failure of either party to enforce at any time, or from time to time, any provision of this MOU shall not be construed to be a waiver thereof.

E. Compliance with Other Laws. Nothing in this MOU is intended or should be construed to limit or affect the duties, responsibilities, and rights of the User Agency under the National Voter Registration Act, 52 U.S.C. § 20501 *et seq*., as amended; the Help America Vote Act, 52 U.S.C. § 20901 *et seq*., as amended; the Voting Rights Act, 52 U.S.C. § *10301 et seq*., as amended; and the Civil Rights Act, 52 U.S.C. § 10101 et seq., as amended.

F. Confidentiality of MOU. To the extent allowed by applicable law, this MOU, its contents, and the drafts and communications leading up to the execution of this MOU are deemed

by the parties as "confidential." Any disclosures therefore could be made, if at all, pursuant to applicable laws or court orders requiring such disclosures.

**SIGNATURES**

VRL/Data Provider
State Agency Name: Office of the Texas Secretary of State
Signature: ____________________ Date of Execution: 12/5/25

Authorized Signatory Name Printed: Adam Bitter____________________

Title: General Counsel____________________

Requester
Federal Agency Name: Civil Rights Division, U.S. Department of Justice

Signature: ____________________ Date of Execution: ____________

Authorized Signatory Name Printed: ____________________

Title: ____________________

**U.S. Department of Justice**

Civil Rights Division

**CONFIDENTIAL MEMORANDUM OF UNDERSTANDING**

## I. PARTIES & POINTS OF CONTACT.

Requester
Federal Agency Name: Civil Rights Division, U.S. Department of Justice
VRL/Data User: Eric Neff
Title: Acting Chief, Voting Section
Address: 150 M St. NE, Ste. 8-139, Washington DC 20002
Phone: (202) 704-5430

VRL/Data Provider
State Agency Name: Office of the Texas Secretary of State
Custodian: Adam Bitter
Title: General Counsel
Address: P.O. Box 12697, Austin, Texas 78711-2697
Phone: (512) 475-2813

The parties to this Memorandum of Understanding ("MOU" or "Agreement") are the Department of Justice, Civil Rights Division ("Justice Department" or "Department"), and the State of Texas ("Texas").

## II. AUTHORITY.

By this Agreement, Texas has agreed to, and will, provide an electronic copy of your state's complete statewide Voter Registration List ("VRL" or "VRL/Data") to the Civil Rights Division of the U.S. Department of Justice (at times referred to as the "Department"). The VRL/Data must include, among other fields of data, the voter registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social

security number as required under the HAVA to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A).

The authorities by which this information is requested by the Department of Justice are:

- National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq*.
- Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. See 52 U.S.C. § 20501(a).
- Help America Vote Act of 2002, 52 U.S.C. § 20901, *et seq.*
- Attorney General's authority to enforce the Help America Vote Act under 53 U.S.C. § 21111.
- Attorney General authority to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq.*
- The Privacy Act of 1974, 5 U.S.C. § 552a, as amended.

## III. PURPOSE.

A VRL is a Voter Registration List pursuant to the NVRA and HAVA, commonly referred to as "voter roll," compiled by a state – often from information submitted by counties – containing a list of all the state's *eligible* voters. Regardless of the basis for ineligibility, ineligible voters do not appear on a state's VRL when proper list maintenance is performed by states. The Justice Department is requesting your state's VRL to test, analyze, and assess states' VRLs for proper list maintenance and compliance with federal law. In the event the Justice Department's analysis of a VRL results in list maintenance issues, insufficiency, inadequacy, anomalies, or concerns, the Justice Department will notify your state's point of contact of the issues to assist your state with curing.

The purpose of this MOU is to establish the parties' understanding as to the security protections for data transfer and data access by the Department of Justice of the electronic copy of the statewide voter registration list, including all fields requested by the Department of Justice.

## IV. TIMING OF AGREEMENT – TIME IS OF ESSENCE.

Although the Justice Department is under no such obligation as a matter of law, because this Agreement is proposed, made, and to be entered into at your state's request as part of your state's transmission of its VRL to the Justice Department, this Agreement is to be fully executed within seven (7) days of the Justice Department presenting this Agreement to you. Both parties agree that no part of this Agreement or execution is intended to, or will, cause delay of the transmission of your state's VRL to the Justice Department for analysis.

## V. TIMING OF VRL/DATA TRANSFER.

You agree to transfer an electronic copy of your state's complete statewide VRL/Data to the Civil Rights Division of the U.S. Department of Justice as described in Section III of this Agreement no later than five (5) business days from the execution of this Agreement, which is counted from the last day of the last signatory.

## VI. METHOD OF VRL/DATA ACCESS OR TRANSFER.

The VRL will be submitted by your state via the Department of Justice's secure file-sharing system, i.e., Justice Enterprise File Sharing (JEFS"). A separate application to use JEFS must be completed and submitted by your state through the Civil Rights Help Desk. JEFS implements strict access controls to ensure that each user can only access their own files. All files and folders are tied to a specific user, and each user has defined permissions that govern how they may interact with those files (e.g., read, write, or read-only).

Whenever a user attempts to access a file or folder, JEFS validates the request against the assigned permissions to confirm that the user is explicitly authorized. This process guarantees that users can only access files and folders only where they have permission. Users are also limited to the authorized type of interaction with each file or folder. Within the Department of Justice, access to JEFS is restricted to specific roles: Litigation Support, IT staff, and Civil Rights Division staff.

## VII. LOCATION OF DATA AND CUSTODIAL RESPONSIBILITY.

The parties mutually agree that the Civil Rights Division (also "Department") will be designated as "Custodian" of the file(s) and will be responsible for the observance of all conditions for use and for establishment and maintenance of security agreements as specified in this agreement to prevent unauthorized use. The information that the Department is collecting will be maintained consistent with the Privacy Act of 1974, 5 U.S.C. § 552a. The full list of routine uses for this collection of information can be found in the Systems of Record Notice ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (August 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include NVRA, HAVA, and the Civil Rights Act of 1960, and the Justice Department is making our request pursuant to those statutes. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

VRL/Data storage is similar to the restricted access provided on JEFS and complies with the SORN: Information in computer form is safeguarded and protected in accordance with applicable Department security regulations for systems of records. Only a limited number of staff members who are assigned a specific identification code will be able to use the computer to access

the stored information. However, a section may decide to allow its employees access to the system in order to perform their official duties.

All systems storing the VRL data will comply with all security requirements applicable to Justice Department systems, including but not limited to all Executive Branch system security requirements (e.g., requirements imposed by the Office of Management and Budget [OMB] and National Institute of Standards and Technology [NIST]), Department of Justice IT Security Standards, and Department of Justice Order 2640.2F.

## VIII. NVRA/HAVA COMPLIANT VOTER REGISTRATION LIST.

After analysis and assessment of your state's VRL, the Justice Department will securely notify you or your state of any voter list maintenance issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, the Justice Department found when testing, assessing, and analyzing your state's VRL for NVRA and HAVA compliance, i.e., that your state's VRL only includes eligible voters.

You agree therefore that within forty-five (45) days of receiving that notice from the Justice Department of any issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, your state will clean its VRL/Data by removing ineligible voters and resubmit the updated VRL/Data to the Civil Rights Division of the Justice Department to verify proper list maintenance has occurred by your state pursuant to the NVRA and HAVA.

## IX. CONFIDENTIALITY & DEPARTMENT SAFEGUARDS.

Any member of the Justice Department in possession of a VRL/Data will employ reasonable administrative, technical, and physical safeguards designed to protect the security and confidentiality of such data. Compliance with these safeguards will include secure user authentication protocols deploying either: (i) Two-Factor Authentication ("2FA"), which requires users to go through two layers of security before access is granted to the system; or (ii) the

assignment of unique user identifications to each person with computer access plus unique complex passwords, which are not vendor supplied default passwords.

The Department will activate audit logging for the records, files, and data containing the state's VRL/Data in order to identify abnormal use, as well as to track access control, on computers, servers and/or Devices containing the VRL/Data.

For all devices storing records, files, and data containing the VRL/Data: there is (i) up-to-date versions of system security agent software that includes endpoint protection and malware protection and reasonably up-to-date patches and virus definitions, or a version of such software that can still be supported with up-to-date patches and virus definitions, and is set to receive the most current security updates on a regular basis; and (ii) up-to-date operating system security patches designed to maintain the integrity of the personal information.

For all devices storing records, files, and data containing the VRL/Data: there is (i) controlled and locked physical access for the Device; and (ii) the prohibition of the connection of the Device to public or insecure home networks.

There will be no copying of records, files, or data containing the VRL/Data to unencrypted USB drives, CDs, or external storage. In addition, the use of devices outside of moving the records, files, or data to the final stored device location shall be limited.

Any notes, lists, memoranda, indices, compilations prepared or based on an examination of VRL/Data or any other form of information (including electronic forms), that quote from, paraphrase, copy, or disclose the VRL/Data with such specificity that the VRL/Data can be identified, or by reasonable logical extension can be identified will not be shared by the Department. Any summary results, however, may be shared by the Department.

In addition to the Department's enforcement efforts, the Justice Department may use the information you provide for certain routine, or pre-litigation or litigation purposes including:

present VRL/Data to a court, magistrate, or administrative tribunal; a contractor with the Department of Justice who needs access to the VRL/Data information in order to perform duties related to the Department's list maintenance verification procedures. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. § 552a(m).

## X. LOSS OR BREACH OF DATA.

If a receiving party discovers any loss of VRL/Data, or a breach of security, including any actual or suspected unauthorized access, relating to VRL/Data, the receiving party shall, at its own expense immediately provide written notice to the producing party of such breach; investigate and make reasonable and timely efforts to remediate the effects of the breach, and provide the producing party with assurances reasonably satisfactory to the producing party that such breach shall not recur; and provide sufficient information about the breach that the producing party can reasonably ascertain the size and scope of the breach. The receiving party agrees to cooperate with the producing party or law enforcement in investigating any such security incident. In any event, the receiving party shall promptly take all necessary and appropriate corrective action to terminate unauthorized access.

## XI. DESTRUCTION OF DATA.

The Department will destroy all VRL/Data associated with actual records as soon as the purposes of the list maintenance project have been accomplished and the time required for records retention pursuant to applicable law has passed. When the project is complete and such retention requirements by law expires, the Justice Department will:

1. Destroy all hard copies containing confidential data (e.g., shredding);
2. Archive and store electronic data containing confidential information offline in a secure location; and

3. All other data will be erased or maintained in a secured area.

## XII. OTHER PROVISIONS.

A. Conflicts. This MOU constitutes the full MOU on this subject between the Department and your state. Any inconsistency or conflict between or among the provisions of this MOU, will be resolved in the following order of precedence: (1) this MOU and (2) other documents incorporated by reference in this MOU (e.g., transaction charges).

B. Severability. Nothing in this MOU is intended to conflict with current law or regulation or the directives of Department, or the your state. If a term of this MOU is inconsistent with such authority, then that term shall be invalid but, to the extent allowable, the remaining terms and conditions of this MOU shall remain in full force and effect.

C. Assignment. Your state may not assign this MOU, nor may it assign any of its rights or obligations under this MOU. To the extent allowable by law, this MOU shall inure to the benefit of, and be binding upon, any successors to the Justice Department and your state without restriction.

D. Waiver. No waiver by either party of any breach of any provision of this MOU shall constitute a waiver of any other breach. Failure of either party to enforce at any time, or from time to time, any provision of this MOU shall not be construed to be a waiver thereof.

E. Compliance with Other Laws. Nothing in this MOU is intended or should be construed to limit or affect the duties, responsibilities, and rights of the User Agency under the National Voter Registration Act, 52 U.S.C. § 20501 *et seq*., as amended; the Help America Vote Act, 52 U.S.C. § 20901 *et seq*., as amended; the Voting Rights Act, 52 U.S.C. § *10301 et seq*., as amended; and the Civil Rights Act, 52 U.S.C. § 10101 et seq., as amended.

F. Confidentiality of MOU. To the extent allowed by applicable law, this MOU, its contents, and the drafts and communications leading up to the execution of this MOU are deemed

by the parties as "confidential." Any disclosures therefore could be made, if at all, pursuant to applicable laws or court orders requiring such disclosures.

**SIGNATURES**

VRL/Data Provider
State Agency Name: Office of the Texas Secretary of State
Signature: ______________________ Date of Execution: 12/5/25

Authorized Signatory Name Printed: Adam Bitter

Title: General Counsel

Requester
Federal Agency Name: Civil Rights Division, U.S. Department of Justice

Signature: ______________________ Date of Execution: 12/9/2025

Authorized Signatory Name Printed: Eric Neff

Title: Acting Chief, Voting Section, Civil Rights Division

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 22, 2025

Via Mail and Email

The Honorable Wes Allen
Executive Division
State Capitol Building - Suite S-105
600 Dexter Avenue
Montgomery, AL 36130
(334) 242-7200
Laney.Rawls@sos.alabama.gov

Dear Secretary Allen:

We write to you as the chief election official for the State of Alabama to request information regarding the State's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq.

Please provide a list of the election officials who are responsible for implementing Alabama's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA. Please include both the actions taken by State officials as well as county officials.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The current electronic copy of the State of Alabama's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. In the EAVS data for Question A1b, Alabama listed 3,466,606 Total Active Voters for 2024. According to the Secretary of State's website, the statistics show 3,492,761 active voters in November 2024: Voter Registration Statistics - 2024. Please explain the discrepancy.
2. In the EAVS data for Question A1c, Alabama listed 401,434 inactive voters for 2024. According to the Secretary of State's website, the statistics show 387,354 inactive voters in November 2024: Voter Registration Statistics - 2024. Please explain the discrepancy.
3. In the EAVS data for Question A3d, Alabama had 571 voters (.02 percent) with duplicate registrations, significantly below the nationwide average of 12.7 percent. Please explain why duplicate registrations are such a low percentage of total registration transactions. Please explain what actions Alabama is taking to identify duplicate registrations and to remove those duplicates from the registration transactions.
4. Alabama failed to respond to EAVS Questions A4 – A9. Please provide data responsive to these questions or explain, in detail, why it is not possible for the State to respond to each request.
5. In the EAVS data, Question A12a shows that Alabama removed only 114,647 registrants, which is 2.96 percent of registered voters. Your removals are over three times below the national average. Please explain why the number of removals is low in Alabama relative to the national average, and what actions the State is taking to ensure that voters who should not be on the voter roll are being removed.
6. Alabama did not respond to EAVS Question A12e concerning failure to respond to a sent confirmation notice and not voting in the two most recent federal elections. Please provide responsive data or explain why Alabama is unable to respond to this request.

Please provide a description of the steps that Alabama has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures that Alabama used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen
2. Adjudicated incompetent
3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc: Jeff Elrod
Director of Elections
Elections Division
State Capitol Building - Suite E-208
600 Dexter Avenue
Montgomery, AL 36130
Jeff.Elrod@sos.alabama.gov

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 2, 2025

Via Mail and Email
The Honorable Nancy Dahlstrom
Lieutenant Governor
P.O. Box 110015
Juneau, AK 99811-0001
nancy.dahlstrom@alaska.gov

Dear Lieutenant Governor Dahlstrom:

We write to you as the chief election official for the State of Alaska to request information regarding the State's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq.

Please provide a list of the election officials who are responsible for implementing Alaska's general program of voter registration list maintenance, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA.

A review of the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS") report indicates that there are more registered voters listed as active in the State of Alaska than citizen voting age population in the State.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The most current or most updated electronic copy of the State of Alaska's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list.

Additionally, please provide the following information. The time period for these requests is January 1, 2023, to December 2024.

1. In the EAVS data for Question A3d, Alaska had 4,893 voters (.5 percent) with duplicate registrations, which was well below the national average. In the EAVS data for Question A12h, Alaska also reported it removed no voters. Please provide a list of all registrations that were cancelled based on the determination that they were duplicate registration records. If the records were merged, please provide that information.
2. A list of all registrations that were cancelled due to non-citizenship of the registrant.
3. A complete vote history of all registrants determined to be non-citizens.
4. No data was listed for Alaska regarding removals due to mental incompetence. Please provide a list of all registrants who were removed from the statewide voter registration list due to a finding of mental incompetence.

Please provide this information within 20 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

cc: Carol Beecher
Director, Division of Elections
Court Plaza Building
240 Main Street, 4th Floor
Juneau, AK 99801
carol.beecher@alaska.gov

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Nancy Dahlstrom
Lieutenant Governor
P.O. Box 110015
Juneau, AK 99811-0001
nancy.dahlstrom@alaska.gov

Re: **Complete Alaska's Voter Registration List with All Fields**

Lieutenant Governor Dahlstrom:

We have received Alaska's statewide voter registration list ("VRL"). However, as the Attorney General requested, the electronic copy of the statewide VRL must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Alaska's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Alaska's complete and current VRL. The purpose of the request is to ascertain Alaska's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Alaska must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Carol Beecher
Director, Division of Elections
Court Plaza Building
240 Main Street, 4th Floor
Juneau, AK 99801
carol.beecher@alaska.gov

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 28, 2025

Via Mail and Email

The Honorable Adrian Fontes
Arizona Secretary of State
1700 W. Washington Street, Seventh Floor
Phoenix, AZ 85007-2808
sosadmin@azsos.gov

Dear Secretary Fontes:

We write to you as the chief election official for the State of Arizona to request information regarding Arizona's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.

Please provide a list of the election officials who are responsible for implementing Arizona's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken, and when those steps were taken, to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions. *See* 52 U.S.C. § 20510.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

> The current electronic copy of Arizona's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout along with a database user manual, coding list, or other materials that define or explain how a voter record is coded into the statewide voter registration list and reported in the electronic copy of the statewide voter registration list.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. Confirmation notice data for Questions A10a through A10f was either missing or far from the national average. For example:
    a. The response to Question 10a, the total confirmation notices sent to voters, was 172.70 percent of voters, or roughly 7.5 million people. Likewise, Apache County, Maricopa County, Pima County, Gila County, Mohave County, Yavapai County, and Yuma County sent out more Confirmation Notices than the citizen voting age population.
    b. For question 10b, four counties - Mohave County, Yavapai County, Apache County, and Gila County - are below the national average. Four counties did not report any data: Maricopa, Pima, Pinal, and Yuma.
    c. For question 10c, six counties - Yavapai County, La Paz County, Yuma County, Apache County, Greenlee County, and Mohave County - are below national average. Six counties did not report address change: Cochise, Maricopa, Mohave, Pima, Pinal, and Santa Cruz.
    d. For question 10d, five counties - Graham County, Apache County, Yavapai County, La Paz County, and Gila County - fall below the national average. Six counties did not report any data: Maricopa, Navajo, Pima, Greenlee, Santa Cruz, and Yuma.
    e. 3.7 percent of Confirmation Notices throughout Arizona were returned undeliverable, less than half the national average.
    f. 94 percent of Confirmation Notices came back as status unknown (Question A10f). This is almost one and a half times the national average.

    Footnote 2 on page 183 in that section of the EAVS Report states "[s]ome jurisdictions are either unable to break down A10b and A10c or are unable to track returned notices confirming registration changes or updates." Please explain how Arizona determines who receives a confirmation notice, explain how it tracks the results for the confirmation notices sent, and explain both state and county level results using the categories in 10b-f of the EAVS Report.

2. Virtually no data was listed for Question A12h regarding duplicate registrants who were removed from the statewide voter registration database (Navajo County listed one duplicate). Please explain what actions Arizona is taking to identify duplicate registrations and to remove those duplicates from the voter registration list. Please explain when in the last two years that Arizona has searched for duplicate registrations in the statewide voter registration list. If records were merged, please provide that information.

3. Please provide a description of the steps that Arizona has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the

procedures it used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen
2. Adjudicated incompetent
3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc: Lisa Marra
Director, Elections Division
1700 W. Washington St, 7th Floor
Phoenix, AZ 85007-2808
lmarra@azsos.gov

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

The Honorable Adrian Fontes
Arizona Secretary of State
1700 W. Washington Street, Seventh Floor
Phoenix, AZ 85007-2808
sosadmin@azsos.gov

Re: **Arizona's Voter Registration List Needs All Fields and Response to July 28 Letter**

Secretary Fontes:

This letter responds to your letter of August 8, 2025, in response to the Justice Department's July 28, 2025 letter, in which we made a request to the Secretary of State of Arizona for information regarding the state's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.

Your August 8, 2025, letter states that it will not be possible to provide the requested records by August 11, 2025, and does not specify a time frame by which the Secretary of State will provide the records.

Please provide responses to our questions regarding Arizona's answers to the most recent Election Administration and Voting Survey ("EAVS") by no later than Thursday, August 21. These questions (1 and 2) should be readily answerable based on the state's procedures for sending confirmation notices and processes for identifying and removing duplicate registrations. For example, Question 1 asks Arizona to explain how Arizona determines who receives a confirmation notice and how Arizona tracks the results of the notices sent. Question 1 also notes counties that reported no response or zero in specific A10 categories (result of confirmation notice) and particular numbers in Arizona's responses to Questions A10a through A10f and asks Arizona to explain the county- and state-level results and provide missing data. If the Secretary of State does not have access to this information, please explain why and describe how the Secretary of State plans to obtain the information.

We also requested the electronic copy of the statewide voter registration list that the state maintains under Section 303(a) of the Help America Vote Act. 52 U.S.C. § 21083(a). Please produce the list by Thursday, August 21, 2025, as well. Section 8(i) of the NVRA requires states to "make available for public inspection . . . all records concerning the implementation of programs and activities

conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Arizona's complete and current VRL. The purpose of the request is to ascertain Arizona's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Arizona must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the HAVA[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing.

---

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

To that end, please provide the requested electronic VRL with all fields to the Justice Department no later than August 21, 2025. We recognize, however, that other responses to our July 28th letter may take more time. As such, we are prepared to give the Secretary of the Commonwealth until Monday, September 15, to respond to the other requests.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Lisa Marra
Director, Elections Division
1700 W. Washington Street, Seventh Floor
Phoenix, AZ 85007-2808
lmarra@azsos.gov

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW - 4CON*
*Washington, DC 20530*

July 25, 2025

Via Mail and Email

The Honorable Cole Jester
Secretary of State
500 Woodlane Avenue, Suite 256
Little Rock, AR 72201
ar.sos@sos.arkansas.gov
electionsemail@sos.arkansas.gov

Dear Secretary Jester:

We write to you as the chief election official for the State of Arkansas to request information regarding Arkansas' procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.

Please provide a list of the election officials who are responsible for implementing Arkansas' general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken, and when those steps were taken, to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions. *See* 52 U.S.C. § 20510.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

> The current electronic copy of Arkansas' computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout along with a database user manual, coding list, or other materials that define or explain how a voter record is coded into the statewide voter registration list and reported in the electronic copy of the statewide voter registration list.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. In the EAVS data for Questions A1c, total inactive voters, and A1a, total registered voters, Arkansas reported that it has 476,064 inactive voters out of 1,835,723 total registered voters. Arkansas' percentage of inactive voters out of all registered voters, 25.93 percent, is the highest of all reporting states. Please explain Arkansas' process for determining if a voter should be listed as inactive. Please explain the process of removing inactive voters from the voter rolls.

2. In the EAVS data for Question A3d, duplicate registrations, Arkansas reported "Does not apply" for 45 out of 75 counties, reported "Data not available" for four out of 75 counties, reported zero duplicate registrations for 25 counties, and reported 58 duplicate registrations for one county. In the EAVS data for Question A12h, the number of voters removed for duplicate records, Arkansas reported 2,958 records removed (1.7 percent of all voters removed). Please provide the number of duplicate registrations for each county for Question A3d. Please explain whether Arkansas checks the voter lists for duplicate registrations, and, if so, please describe the process and how often the check is performed.

3. In the EAVS data for Question A13a, records merged or linked, Arkansas reported "Does not apply" for seven out of 75 counties, reported "Data not available" for 67 out of 75 counties, and reported 25 records merged or linked for one county. Please explain if Arkansas has a process for merging voter records and, if so, how many records it merged for each county.

4. In the EAVS data for Question A12c, Arkansas reported that it removed 39,510 records because the voters were deceased. The CDC data shows 73,613 deaths in Arkansas for 2022-23. Arkansas' ratio of the number of deaths in the state to the number of deceased voters removed is higher than that of most states who reported the relevant EAVS data. Please explain Arkansas' process for checking whether a voter on the voter lists is deceased and for removing the records of deceased voters from the voter lists.

5. In the EAVS data for Questions A10a and A1b, Arkansas reported that it sent 491,272 confirmation notices out of 1,359,659 total active registered voters. Arkansas sent confirmation notices to 36.13 percent of total active registered voters in the state, which is much higher than the national average of 19.5 percent. Please explain Arkansas' process for determining when to send a confirmation notice to an active registered voter.

6. Arkansas also reported "Does not apply" or "Data not available" for most counties for Questions A11a through A11k. Please provide the data for each county in Arkansas for A11, reasons for sending confirmation notices to voters, or explain why the data is not available.

7. In the EAVS data for Questions A12b and A12e, Arkansas reported that it removed 9,151 voters for moving outside of the jurisdiction and 115,820 voters for failure to respond to a

sent confirmation notice and not voting in the two most recent federal elections. Please explain how Arkansas uses the confirmation notice process to remove voters from the voter lists.

Please provide a description of the steps that Arkansas has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures it used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen
2. Adjudicated incompetent
3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc: Leslie Bellamy
Director, Elections Division
500 Woodlane Avenue, Suite 256
Little Rock, AR 72201
leslie.bellamy@sos.arkansas.gov

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Cole Jester
Secretary of State
500 Woodlane Avenue, Suite 256
Little Rock, AR 72201
ar.sos@sos.arkansas.gov;
electionsemail@sos.arkansas.gov

Re: **Complete Arkansas's Voter Registration List with All Fields**

Secretary Jester:

In our letter dated July 25, 2025, we made a request to you regarding your state's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq. The deadline for this request was August 8, 2025, and we have not yet received a response. Please provide a response to our request by August 21, 2025.

In addition, given responses from other states thus far, we want to clarify that the Justice Department's request to provide an electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Arkansas's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Arkansas's complete and current VRL. The purpose of the request is to ascertain Arkansas's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Arkansas must ensure that it contains *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note);

[2] In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

To that end, please provide the requested electronic Voter Registration List[3] and the responses to the Justice Department's letter of July 25, 2025, by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Leslie Bellamy
Director, Elections Division
500 Woodlane Avenue, Suite 256
Little Rock, AR 72201
leslie.bellamy@sos.arkansas.gov

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Cole Jester
Secretary of State
500 Woodlane Avenue, Suite 256
Little Rock, AR 72201
ar.sos@sos.arkansas.gov;
electionsemail@sos.arkansas.gov

Re: **Complete Arkansas's Voter Registration List with All Fields**

Secretary Jester:

In our letter dated July 25, 2025, we made a request to you regarding your state's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq. The deadline for this request was August 8, 2025, and we have not yet received a response. Please provide a response to our request by August 21, 2025.

In addition, given responses from other states thus far, we want to clarify that the Justice Department's request to provide an electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Arkansas's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Arkansas's complete and current VRL. The purpose of the request is to ascertain Arkansas's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Arkansas must ensure that it contains *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note);

[2] In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

To that end, please provide the requested electronic Voter Registration List[3] and the responses to the Justice Department's letter of July 25, 2025, by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Leslie Bellamy
Director, Elections Division
500 Woodlane Avenue, Suite 256
Little Rock, AR 72201
leslie.bellamy@sos.arkansas.gov

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 10, 2025

Via Mail and Email

The Honorable Shirley Weber
Secretary of State
1500 11th Street
Sacramento, CA 95814
secretary.weber@sos.ca.gov

Dear Secretary of State Weber:

We write to you as the chief election official for the State of California to request information regarding the state's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.

Please provide a list of the election officials who are responsible for implementing California's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken, and when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA. Please include both the actions taken by California officials as well as county officials.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions. *See* 52 U.S.C. § 20510.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

> The current electronic copy of California's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout along with a database user manual, coding list, or other materials that define or explain how a voter record is coded into the statewide voter registration list and reported in the electronic copy of the statewide voter registration list.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. In the EAVS data for Question A3d, California had 2,178,551 voters (15.6 percent) with duplicate registrations. However, seven counties failed to provide data regarding duplicate registrations. Please provide a list of all duplicate registration records in Imperial, Los Angeles, Napa, Nevada, San Bernardino, Siskiyou, and Stanislaus counties.
2. No data was listed in the EAVS survey for Question A12h for California regarding duplicate registrants who were removed from the statewide voter registration database. Please provide a list of all duplicate registrants who were removed from the statewide voter registration list including the date(s) of removal. If they were merged or linked with another record, please provide that information. Please explain California's process for determining duplicates and what happens to the duplicate registrations.
3. In the EAVS data for Question QA12c, California had 378,349 voters (11.9 percent) removed because of death, which was well below the national average. Please provide a list of all registrations that were cancelled because of death. Please explain California's process for determining who is deceased and removing them from the voter roll and when that occurs.
4. Confirmation Notice data was missing in the EAVS survey for Questions A10a through A10f for several counties in California. Please provide the data for each county in California for Questions A10a through A10f.
5. The 2022 EAVS report contained 4,984,314 inactive voters, while the 2024 report contained 2,883,995. Please explain the reason for the change in the number of inactive registrations for these years.
6. A list of all registrations, including date of birth, driver's license number, and last four digits of Social Security Number, that were cancelled due to non-citizenship of the registrant.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

Cc: Jana Lean
Chief of Elections
1500 11th Street, 5th Floor
Sacramento, CA 95814
jana.lean@sos.ca.gov

**From:** Neff, Eric (CRT) [Eric.Neff@usdoj.gov]
**Sent:** 12/1/2025 4:34:10 PM
**To:** andrew.kline@coloradosos.gov
**CC:** judd.choate@coloradosos.gov
**Subject:** Voter Registration List request follow up
**Attachments:** 20250512 Griswold from CRT.pdf; VRLData Sharing Agreement DOJ-CO.pdf; 83.pdf; SOS Letter DOJ-DHS_11.18.25_Digital (002).pdf

Mr. Kline,

I am the new contact for the Voting Section for our request for Colorado's voter registration list. This is a follow up from original correspondence that began in May (see attached letter).

The United States is prepared at this early stage to enter into an MOU with the State of Colorado regarding the sharing of the nonpublic, unredacted voter registration list. I have attached that MOU, which we believe cures all potential concerns a state might rightfully raise regarding its citizens' private data and identifying information.

However, given that Colorado has signed on to both the November 18 letter to the Attorney General and a potential amicus filing in the California litigation (both attached), I hope you find it fair that I suspect an MOU such as the one attached will not alleviate the State's various concerns such that your State will produce those records in short order (within 7 days).

As such, I would ask that by end of business tomorrow you respond with your State's intent to either refuse to enter into such an agreement and produce the requested records or to comply with our request in short order.

Thank you,
Eric

**Eric Neff**
Trial Attorney
Civil Rights Division
Department of Justice
150 M St. NE, Ste. 8-139
Washington, DC 20002
Eric.Neff@usdoj.gov
Cell: 202-532-3628

U.S. Department of Justice

Civil Rights Division

*Office of the Assistant Attorney General*
*950 Pennsylvania Ave, NW - RFK*
*Washington, DC 20530*

May 12, 2025

*Via E-Mail to: elections@coloradosos.gov*
The Honorable Jena Griswold
Secretary of State
1700 Broadway, Suite 550
Denver CO 80290

Dear Secretary Griswold:

We write to you as the Chief Election Official for the Commonwealth of Colorado to request information regarding the State's procedures for compliance with the Voting Rights Act, 52 U.S.C. §20701, titled Retention and preservation of records and papers by officers of elections. 52 U.S.C §20701 requires the preservation of all records relating to any application, registration or other act requisite to voting in an election for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, member of the House of Representatives.

We recently received a complaint alleging noncompliance by your office with the duties outlined in 52 U.S.C §20507. Additionally, 52 U.S.C. 52 U.S.C §20703 provides that any record required to be preserved by Section §20701, shall upon demand in writing by the Attorney General or her representative directed to the person having custody, possession or control of such record or paper, be made available for inspection, reproduction, and copying. As the State's Chief Election Official, we direct our inquiry to you. See Col. Rev. Statutes 1-1-107(b).

To assist our efforts in evaluating the complaint, we respectfully request that you provide us with the following information related to the above requirements:

- All records, as outlined in 52 U.S.C. § 20701, and a certification that no record required for preservation has been deleted, destroyed or altered from its original format.

- All statutes, regulations, written guidance, internal policies, or database user manuals that set out the procedures Colorado has put in place relating to implement the requirements of 52 U.S.C. §20701.

If your office or any state agent still has custody of 52 U.S.C. §20701 records pertaining to the November 2000 federal election, please preserve those records.

Please provide this information within 14 days of the date of this letter. The materials may be sent by email to: Maureen.riordan2@usdoj.gov. We appreciate your cooperation in our efforts to monitor compliance with federal election laws.

Sincerely,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

**U.S. Department of Justice**

Civil Rights Division

# CONFIDENTIAL MEMORANDUM OF UNDERSTANDING

## I. PARTIES & POINTS OF CONTACT.

Requester
Federal Agency Name: Civil Rights Division, U.S. Department of Justice
VRL/Data User:
Title:
Address:
Phone:

VRL/Data Provider
State Agency Name:
Custodian:
Title:
Address:
Phone:

The parties to this Memorandum of Understanding ("MOU" or "Agreement") are the Department of Justice, Civil Rights Division ("Justice Department" or "Department"), and the State of Colorado ("You" or "your state").

## II. AUTHORITY.

By this Agreement, the State of Colorado ("You" or "your state") has agreed to, and will, provide an electronic copy of your state's complete statewide Voter Registration List ("VRL" or "VRL/Data") to the Civil Rights Division of the U.S. Department of Justice (at times referred to as the "Department"). The VRL/Data must include, among other fields of data, the voter registrant's full name, date of birth, residential address, his or her state driver's license number or

the last four digits of the registrant's social security number as required under the HAVA to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A).

The authorities by which this information is requested by the Department of Justice are:

- National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq*.
- Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. See 52 U.S.C. § 20501(a).
- Help America Vote Act of 2002, 52 U.S.C. § 20901, *et seq.*
- Attorney General's authority to enforce the Help America Vote Act under 53 U.S.C. § 21111.
- Attorney General authority to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*.
- The Privacy Act of 1974, 5 U.S.C. § 552a, as amended.

## III. PURPOSE.

A VRL is a Voter Registration List pursuant to the NVRA and HAVA, commonly referred to as "voter roll," compiled by a state – often from information submitted by counties – containing a list of all the state's *eligible* voters. Regardless of the basis for ineligibility, ineligible voters do not appear on a state's VRL when proper list maintenance is performed by states. The Justice Department is requesting your state's VRL to test, analyze, and assess states' VRLs for proper list maintenance and compliance with federal law. In the event the Justice Department's analysis of a VRL results in list maintenance issues, insufficiency, inadequacy, anomalies, or concerns, the Justice Department will notify your state's point of contact of the issues to assist your state with curing.

The purpose of this MOU is to establish the parties' understanding as to the security protections for data transfer and data access by the Department of Justice of the electronic copy of the statewide voter registration list, including all fields requested by the Department of Justice.

## IV. TIMING OF AGREEMENT – TIME IS OF ESSENCE.

Although the Justice Department is under no such obligation as a matter of law, because this Agreement is proposed, made, and to be entered into at your state's request as part of your state's transmission of its VRL to the Justice Department, this Agreement is to be fully executed within seven (7) days of the Justice Department presenting this Agreement to you. Both parties agree that no part of this Agreement or execution is intended to, or will, cause delay of the transmission of your state's VRL to the Justice Department for analysis.

## V. TIMING OF VRL/DATA TRANSFER.

You agree to transfer an electronic copy of your state's complete statewide VRL/Data to the Civil Rights Division of the U.S. Department of Justice as described in Section III of this Agreement no later than five (5) business days from the execution of this Agreement, which is counted from the last day of the last signatory.

## VI. METHOD OF VRL/DATA ACCESS OR TRANSFER.

The VRL will be submitted by your state via the Department of Justice's secure file-sharing system, i.e., Justice Enterprise File Sharing (JEFS"). A separate application to use JEFS must be completed and submitted by your state through the Civil Rights Help Desk. JEFS implements strict access controls to ensure that each user can only access their own files. All files and folders are tied to a specific user, and each user has defined permissions that govern how they may interact with those files (e.g., read, write, or read-only).

Whenever a user attempts to access a file or folder, JEFS validates the request against the assigned permissions to confirm that the user is explicitly authorized. This process guarantees that users can only access files and folders only where they have permission. Users are also limited to the authorized type of interaction with each file or folder. Within the Department of Justice, access to JEFS is restricted to specific roles: Litigation Support, IT staff, and Civil Rights Division staff.

## VII. LOCATION OF DATA AND CUSTODIAL RESPONSIBILITY.

The parties mutually agree that the Civil Rights Division (also "Department") will be designated as "Custodian" of the file(s) and will be responsible for the observance of all conditions for use and for establishment and maintenance of security agreements as specified in this agreement to prevent unauthorized use. The information that the Department is collecting will be maintained consistent with the Privacy Act of 1974, 5 U.S.C. § 552a. The full list of routine uses for this collection of information can be found in the Systems of Record Notice ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (August 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include NVRA, HAVA, and the Civil Rights Act of 1960, and the Justice Department is making our request pursuant to those statutes. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

VRL/Data storage is similar to the restricted access provided on JEFS and complies with the SORN: Information in computer form is safeguarded and protected in accordance with applicable Department security regulations for systems of records. Only a limited number of staff members who are assigned a specific identification code will be able to use the computer to access

the stored information. However, a section may decide to allow its employees access to the system in order to perform their official duties.

All systems storing the VRL data will comply with all security requirements applicable to Justice Department systems, including but not limited to all Executive Branch system security requirements (e.g., requirements imposed by the Office of Management and Budget [OMB] and National Institute of Standards and Technology [NIST]), Department of Justice IT Security Standards, and Department of Justice Order 2640.2F.

**VIII. NVRA/HAVA COMPLIANT VOTER REGISTRATION LIST.**

After analysis and assessment of your state's VRL, the Justice Department will securely notify you or your state of any voter list maintenance issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, the Justice Department found when testing, assessing, and analyzing your state's VRL for NVRA and HAVA compliance, i.e., that your state's VRL only includes eligible voters.

You agree therefore that within forty-five (45) days of receiving that notice from the Justice Department of any issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, your state will clean its VRL/Data by removing ineligible voters and resubmit the updated VRL/Data to the Civil Rights Division of the Justice Department to verify proper list maintenance has occurred by your state pursuant to the NVRA and HAVA.

**IX. CONFIDENTIALITY & DEPARTMENT SAFEGUARDS.**

Any member of the Justice Department in possession of a VRL/Data will employ reasonable administrative, technical, and physical safeguards designed to protect the security and confidentiality of such data. Compliance with these safeguards will include secure user authentication protocols deploying either: (i) Two-Factor Authentication ("2FA"), which requires users to go through two layers of security before access is granted to the system; or (ii) the

assignment of unique user identifications to each person with computer access plus unique complex passwords, which are not vendor supplied default passwords.

The Department will activate audit logging for the records, files, and data containing the state's VRL/Data in order to identify abnormal use, as well as to track access control, on computers, servers and/or Devices containing the VRL/Data.

For all devices storing records, files, and data containing the VRL/Data: there is (i) up-to-date versions of system security agent software that includes endpoint protection and malware protection and reasonably up-to-date patches and virus definitions, or a version of such software that can still be supported with up-to-date patches and virus definitions, and is set to receive the most current security updates on a regular basis; and (ii) up-to-date operating system security patches designed to maintain the integrity of the personal information.

For all devices storing records, files, and data containing the VRL/Data: there is (i) controlled and locked physical access for the Device; and (ii) the prohibition of the connection of the Device to public or insecure home networks.

There will be no copying of records, files, or data containing the VRL/Data to unencrypted USB drives, CDs, or external storage. In addition, the use of devices outside of moving the records, files, or data to the final stored device location shall be limited.

Any notes, lists, memoranda, indices, compilations prepared or based on an examination of VRL/Data or any other form of information (including electronic forms), that quote from, paraphrase, copy, or disclose the VRL/Data with such specificity that the VRL/Data can be identified, or by reasonable logical extension can be identified will not be shared by the Department. Any summary results, however, may be shared by the Department.

In addition to the Department's enforcement efforts, the Justice Department may use the information you provide for certain routine, or pre-litigation or litigation purposes including:

present VRL/Data to a court, magistrate, or administrative tribunal; a contractor with the Department of Justice who needs access to the VRL/Data information in order to perform duties related to the Department's list maintenance verification procedures. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. § 552a(m).

**X. LOSS OR BREACH OF DATA.**

If a receiving party discovers any loss of VRL/Data, or a breach of security, including any actual or suspected unauthorized access, relating to VRL/Data, the receiving party shall, at its own expense immediately provide written notice to the producing party of such breach; investigate and make reasonable and timely efforts to remediate the effects of the breach, and provide the producing party with assurances reasonably satisfactory to the producing party that such breach shall not recur; and provide sufficient information about the breach that the producing party can reasonably ascertain the size and scope of the breach. The receiving party agrees to cooperate with the producing party or law enforcement in investigating any such security incident. In any event, the receiving party shall promptly take all necessary and appropriate corrective action to terminate unauthorized access.

**XI. DESTRUCTION OF DATA.**

The Department will destroy all VRL/Data associated with actual records as soon as the purposes of the list maintenance project have been accomplished and the time required for records retention pursuant to applicable law has passed. When the project is complete and such retention requirements by law expires, the Justice Department will:

1. Destroy all hard copies containing confidential data (e.g., shredding);
2. Archive and store electronic data containing confidential information offline in a secure location; and

3. All other data will be erased or maintained in a secured area.

## XII. OTHER PROVISIONS.

A. Conflicts. This MOU constitutes the full MOU on this subject between the Department and your state. Any inconsistency or conflict between or among the provisions of this MOU, will be resolved in the following order of precedence: (1) this MOU and (2) other documents incorporated by reference in this MOU (e.g., transaction charges).

B. Severability. Nothing in this MOU is intended to conflict with current law or regulation or the directives of Department, or the your state. If a term of this MOU is inconsistent with such authority, then that term shall be invalid but, to the extent allowable, the remaining terms and conditions of this MOU shall remain in full force and effect.

C. Assignment. Your state may not assign this MOU, nor may it assign any of its rights or obligations under this MOU. To the extent allowable by law, this MOU shall inure to the benefit of, and be binding upon, any successors to the Justice Department and your state without restriction.

D. Waiver. No waiver by either party of any breach of any provision of this MOU shall constitute a waiver of any other breach. Failure of either party to enforce at any time, or from time to time, any provision of this MOU shall not be construed to be a waiver thereof.

E. Compliance with Other Laws. Nothing in this MOU is intended or should be construed to limit or affect the duties, responsibilities, and rights of the User Agency under the National Voter Registration Act, 52 U.S.C. § 20501 *et seq.*, as amended; the Help America Vote Act, 52 U.S.C. § 20901 *et seq.*, as amended; the Voting Rights Act, 52 U.S.C. § *10301 et seq.*, as amended; and the Civil Rights Act, 52 U.S.C. § 10101 et seq., as amended.

F. Confidentiality of MOU. To the extent allowed by applicable law, this MOU, its contents, and the drafts and communications leading up to the execution of this MOU are deemed

by the parties as "confidential." Any disclosures therefore could be made, if at all, pursuant to applicable laws or court orders requiring such disclosures.

**SIGNATURES**

VRL/Data Provider
State Agency Name:
Signature: ________________________________________ Date of Execution:_________________

Authorized Signatory Name Printed:________________________________

Title: ________________________________

Requester
Federal Agency Name: Civil Rights Division, U.S. Department of Justice

Signature: ________________________________________ Date of Execution:_________________

Authorized Signatory Name Printed:________________________________

Title: ________________________________

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW - 4CON*
*Washington, DC 20530*

August 6, 2025

Via Mail and Email

The Honorable Stephanie Thomas
Secretary of State
P.O. Box 150470
165 Capitol Ave. Suite 1000
Hartford, Connecticut 06106
stephanie.thomas@ct.gov

Dear Secretary Thomas:

We write to you as the chief election official for the State of Connecticut to request information regarding Connecticut's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.

Please provide a list of the election officials who are responsible for implementing Connecticut's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken, and when those steps were taken, to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions. *See* 52 U.S.C. § 20510.

Please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. A review of the most recent EAVS report shows that Connecticut has one of the lowest rates in the nation for removing deceased persons from the voter registration rolls relative to the number of deaths in Connecticut, as reported by the Centers for Disease Control

and Prevention. Please explain whether there have been adjustments to the number removed for deceased that was reported in the EAVS Report. Please explain Connecticut's process for identifying and removing deceased individuals from the voter roll.

2. Connecticut's aggregated data for EAVS Questions A10b through A10f, which track the outcome of Confirmation Notices that were mailed to registrants, is larger than the number of Confirmation Notices sent out by the state. Please explain this discrepancy, as well as Connecticut's process for sending out Confirmation Notices and recording the outcomes of those Notices.

3. In response to EAVS Question A3d, no data was listed for any municipality in Connecticut, which asks for information regarding registration transactions submitted by persons already registered to vote. Please provide the data on duplicate registrations for Connecticut.

4. In response to EAVS Question A12h, there is a footnote in the EAVS report stating that Connecticut does not track information about duplicate registrations. Moreover, no data was provided for Question 13a, regarding what records were merged or linked with another record. Please explain what actions Connecticut is taking to identify duplicate registrations and to remove those duplicates from the voter registration list. Please provide a list of all duplicate registrants who were removed from the statewide voter registration list. If records were merged, please provide that information.

Please provide a description of the steps that Connecticut has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures it used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen
2. Adjudicated incompetent
3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc: Kristin Sullivan
Director of Elections
P.O. Box 150740
Hartford, CT 06106
kristin.sullivan@ct.gov

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

December 12, 2025

Via Mail and Email

The Honorable Stephanie Thomas
Secretary of State
P.O. Box 150470
165 Capitol Ave. Suite 1000
Hartford, Connecticut 06106
stephanie.thomas@ct.gov

Re: Request for Complete Connecticut's Voter Registration List with All Fields

Dear Secretary Thomas:

We write to you as the chief election official for the State of Connecticut concerning your State's compliance with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq.* Please provide a copy of Connecticut's statewide voter registration list ("VRL") within fourteen days of the date of this letter.

The electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under HAVA[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We request Connecticut's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the NVRA. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20510(a).

HAVA also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding no private right of action to enforce HAVA requirements).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" *See* 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is requesting an electronic copy of Connecticut's complete and current VRL. The purpose of this request is to ascertain Connecticut's compliance with the list maintenance requirements of the NVRA and HAVA.

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

52 U.S.C. § 20704.

HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered to be a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 522a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act explained at Civil Rights Division - Department of Justice - Privacy Policy[2].

---

[2] Available at: https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

Please provide the requested electronic VRL[3] to the Justice Department fourteen days from the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). If Connecticut would be interested in a data sharing agreement with the Civil Rights Division, please reply to voting.section@usdoj.gov prior to the expiration of the fourteen-day response window. Upon receipt, we will send you an agreement template.

Should further clarification be required, please contact Brittany E. Bennett at brittany.bennett@usdoj.gov.

Regards,

Brittany E. Bennett
Civil Rights Division

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 11, 2025

Via Mail and Email

The Honorable Anthony Albence
State Election Commissioner
905 South Governors Avenue, Suite 170
Dover, DE 19904
anthony.albence@delaware.gov

Dear Commissioner Albence:

We write to you as the chief election official for the State of Delaware to request information regarding the state's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.

Please provide a list of the election officials who are responsible for implementing Delaware's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken, and when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA. Please include both the actions taken by Delaware officials as well as county officials.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions. *See* 52 U.S.C. § 20510.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The current electronic copy of Delaware's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout along with a database user manual, coding list, or other materials that define or explain how a voter record is coded into the statewide voter

registration list and reported in the electronic copy of the statewide voter registration list.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. A review of the most recent report from EAVS report indicates that in response to Question A1b, there are nearly as many registered voters listed as active as the citizen voting age population in Delaware, with a registration rate in 2024 of 96.3 percent of the citizen voting age population. Furthermore, the EAVS report indicates that the ratio of registered voters to citizen voting age population has been unusually high for several years, with Delaware reporting a registration rate of 93.1 percent of citizen voting age population in 2022 and 98.1 percent in 2020. Please explain what actions Delaware is taking to ensure that voters who should not be on the voter roll are being removed.

2. In the EAVS data for Question A3d, Delaware had 2,044 voters (0.4 percent) with duplicate registrations, well below the nationwide average of 12.7 percent. Please provide a list of all registrations that were cancelled based on the determination that they were duplicate registration records. If the records were merged, please provide that information.

3. In the EAVS data for Question A10d, Delaware had 20,889 invalid registrations out of 56,820 confirmation notices sent (36.8 percent), more than twelve times higher than the nationwide average of 2.9 percent. Please explain why the percentage of invalid registrations was so high in Delaware compared to the number of confirmation notices sent.

Please provide a description of the steps that Delaware has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures the Delaware used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen

2. Adjudicated incompetent

3. Felony conviction

For each of those voters identified in categories 1-3 above, provide all fields of their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Anthony Albence
State Election Commissioner
905 South Governors Avenue, Suite 170
Dover, DE 19904
anthony.albence@delaware.gov

Re: **Delaware's Voter Registration List with All Fields**

Election Commissioner Albence:

We are writing in response to your letter dated July 25, 2025, in which you indicated the State of Delaware would provide only certain fields in its Voter Registration List ("VRL"), as well as the August 6, 2025, e-mail from Deputy Attorney General Emily Burton, who we have copied on this correspondence.

As the Attorney General requested, the electronic copy of the statewide VRL must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Delaware's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

HAVA, 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Delaware's complete and current VRL. The purpose of the request is to ascertain Delaware's compliance with the list maintenance requirements of the NVRA and HAVA.

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. For example, Section 304 of the CRA provides:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic VRL[2] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Emily V. Burton
Deputy Attorney General
State of Delaware
820 N. French Street, 6th Floor
Wilmington, DE 19801
Emily.Burton@Delaware.gov

[2] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

Monica Evans
Executive Director, Board of Elections
1015 Half Street S.E., Suite 750
Washington, DC 20003
mevans@dcboe.org

Re: **Complete District of Columbia's Voter Registration List with All Fields**

Executive Director Evans:

We are in the process of downloading the District of Columbia's statewide voter registration list ("VRL"). However, as the Attorney General requested, the electronic copy of the statewide VRL must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested District of Columbia's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of District of Columbia's complete and current VRL. The purpose of the request is to ascertain District of Columbia's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, District of Columbia must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Gary Thompson
Chairperson, Board of Elections
1015 Half Street S.E., Suite 750
Washington, DC 20003
director@dcboe.org

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 11, 2025

Via Mail and Email
Monica Evans
Executive Director, Board of Elections
1015 Half Street S.E., Suite 750
Washington, DC 20003
mevans@dcboe.org

Dear Ms. Evans:

We write to you as the chief election official for the District of Columbia to request information regarding your procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq.

Please provide a list of the election officials who are responsible for implementing the District of Columbia's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken, and when those steps were taken, to ensure that the District of Columbia's list maintenance program has been properly carried out in full compliance with the NVRA.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions. *See* 52 U.S.C. § 20510.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The current electronic copy of the District of Columbia's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout along with a database user manual, coding list, or other materials that define or explain how a voter record is coded into the statewide voter registration list and reported in the electronic copy of the statewide voter registration list.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. A review of the most recent report from EAVS report indicates that in response to Question A1b, there are nearly as many registered voters listed as active as the citizen voting age population in the District, with a registration rate in 2024 of 92.4 percent of the citizen voting age population. Furthermore, the EAVS report indicates that the ratio of registered voters to citizen voting age population has been unusually high for several years, with the District reporting a registration rate of 101.2 percent of citizen voting age population in 2022 and 96.5 percent in 2020. Please explain what actions the District is taking to ensure that voters who should not be on the voter roll are being removed.

2. In the EAVS data for Question A1c, the District reported having 142,935 inactive voter registrations, or 23.3 percent of total voter registrations; that percentage is more than two and one-half times the national average for 2024. The District reported an even higher percentage, 24.6 percent, in 2022. Please explain what actions the District is taking to reduce the number of inactive voter registrations.

3. In the EAVS data for Question A3d, the District reported 1,803 voters (1.5 percent) with duplicate registrations, which was well below the national average of 12.7 percent. Please provide a list of all registrations that were cancelled based on the determination that they were duplicate registration records. If the records were merged, please provide that information.

4. Data in EAVS for Question A10a shows that the percentage of confirmation notices issued to registered voters, 91.3 percent is well above the national average of 19.5 percent. Please explain why you sent notices to 91.3 percent of the total number of active voters in the District.

Please provide a description of the steps that the District of Columbia has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures the District of Columbia used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen
2. Adjudicated incompetent
3. Felony conviction

For each of those voters identified in categories 1-3 above, provide all fields of their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc:

Gary Thompson
Chairperson, Board of Elections
1015 Half Street S.E., Suite 750
Washington, DC 20003

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Cord Byrd
Secretary of State
500 South Bronough Street, Suite 100
Tallahassee, FL 32399
cord.byrd@dos.fl.gov; secretaryofstate@dos.myflorida.com

Re: **Complete Florida's Voter Registration List with All Fields**

Secretary Byrd:

We have received Florida's statewide voter registration list ("VRL"). However, as the Attorney General requested, the electronic copy of the statewide VRL must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Florida's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Florida's complete and current VRL. The purpose of the request is to ascertain Florida's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Florida must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Maria Mattews
Director, Division of Elections
500 South Bronough Street, Room 316
Tallahassee, FL 32399
maria.matthews@dos.myflorida.com

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Brad Raffensperger
Secretary of State
214 State Capitol
Atlanta, GA 30334
soscontact@sos.ga.gov

Re: **Complete Georgia's Voter Registration List with All Fields**

Secretary Raffensperger:

We understand that the time the Justice Department has provided your state to respond to the request for a statewide voter registration list ("VRL") and other information has not reached its deadline.

Given responses from other states thus far, we want to clarify that the Justice Department's request to provide an electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Georgia's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Georgia's complete and current VRL. The purpose of the request is to ascertain Georgia's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Georgia must ensure that it contains *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department by the date set for your delivery by our original letter, or by August 21, 2025, whichever is later.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Blake Evans
Director, Elections Division
Floyd West Tower
2 MLK Jr. Dr. S.E., Suite 802
Atlanta, GA 30334
bevans@sos.ga.gov

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

September 8, 2025

Via Mail and Email

The Honorable Scott T. Nago
Chief Election Officer
Office of Elections
802 Lehua Avenue
Pearl City, HI 96782
elections@hawaii.gov

Re: **Request for Complete Hawaii's Voter Registration List with All Fields**

Dear Chief Election Officer Nago:

We write to you as the chief election official for the State of Hawaii concerning your State's compliance with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq*. Please provide a copy of Hawaii's statewide voter registration list ("VRL") within fourteen days of the date of this letter.

The electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under HAVA[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We request Hawaii's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the NVRA. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20510(a).

HAVA also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding no private right of action to enforce HAVA requirements).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" *See* 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is requesting an electronic copy of Hawaii's complete and current VRL. The purpose of this request is to ascertain Hawaii's compliance with the list maintenance requirements of the NVRA and HAVA.

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

52 U.S.C. § 20704. HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered to be a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 522a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act explained at Civil Rights Division - Department of Justice - Privacy Policy[2].

Please provide the requested electronic VRL[3] to the Justice Department fourteen days from the date of this letter. The information and materials may be sent by encrypted email to

[2] Available at: https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). If Hawaii would be interested in a data sharing agreement with the Civil Rights Division, please reply to voting.section@usdoj.gov prior to the expiration of the fourteen-day response window. Upon receipt, we will send you an agreement template.

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

September 8, 2025

Via Mail and Email

The Honorable Phil McGrane
Secretary of State
P.O. Box 83720
Boise, ID 83720-0080
secretary@sos.idaho.gov;
pmcgrane@sos.idaho.gov

Re: **Request for Complete Idaho Voter Registration List with All Fields**

Dear Secretary McGrane:

We write to you as the chief election official for the State of Idaho concerning your State's compliance with the statewide voter registration list maintenance provisions of the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq*. Please provide a copy of Idaho's statewide voter registration list ("VRL") within 14 days of the date of this letter.

The electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the HAVA[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

HAVA provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Idaho's complete and current VRL. The purpose of the request is to ascertain Idaho's compliance with the list maintenance requirements of the NVRA and HAVA.

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

52 U.S.C. § 20704. HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 522a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act explained at Civil Rights Division - Department of Justice - Privacy Policy[2].

Please provide the requested electronic VRL[3] to the Justice Department by fourteen days from this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). If Idaho would be interested in a data sharing agreement with the Civil Rights Division, please reply to voting.section@usdoj.gov prior to the expiration of the seven-day response window. Upon receipt we will send you an agreement template.

---

[2] Available at: https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Guillermo Velasco
Elections Director
P.O. Box 83720
Boise, ID 83720-0080
gvelasco@sos.idaho.gov

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 28, 2025

Via Mail and Email

The Honorable Bernadette Matthews
Executive Director
State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503
bmatthews@elections.il.gov

Dear Executive Director Matthews:

We write to you as the chief election official for the State of Illinois to request information regarding the State's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq.

Please provide a list of the election officials who are responsible for implementing Illinois' general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA. Please include both the actions taken by State officials as well as county officials.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The current electronic copy of the State of Illinois' computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. In response to EAVS Question A10a, nearly one-third of Illinois' counties (32 out of 102) reported that they did not send out any confirmation notices: Bond County; Boone County; Brown County; Bureau County; Clay County; DeWitt County; Fulton County; Gallatin County; Greene County; Grundy County; Jasper County; Johnson County; Lawrence County; Livingston County; Logan County; Macoupin County; Mason County; McDonough County; Mclean County; Menard County; Monroe County; Montgomery County; Morgan County; Pope County; Putnam County; Richland County; Schuyler County; Scott County; Stark County; Stephenson County; Wabash County; and Warren County. Please explain why each of these 32 counties reported they did not send out any confirmation notices. For each of the 32 counties that have not sent confirmation notices, please explain why they did not send confirmation notices. Please explain what steps Illinois is taking to ensure that these counties are conducting list maintenance including when those steps were taken.

2. Despite the fact that nearly one-third of counties did not respond to Question A10a, Illinois reported that it sent out over 3.8 million confirmation notices, which comprised 46.9 percent of all registered voters. The national average was 19.5 percent. Please explain why the number of confirmation notices and percentage sent to all registered voters was so high. Please explain how it is determined who receives a confirmation notice.

3. A review of the county-level data accompanying the most recent EAVS report indicates that in response to Question A10a, sixteen counties in Illinois reported that the number of confirmation notices they sent was more than one hundred percent of all registered voters: Alexander County (239.3 percent); Carroll County (123.2 percent); Christian County (265 percent); Crawford County (127 percent); Edwards County (244.5 percent); Jackson County (208.2 percent); Jefferson County (143.2 percent); Jo Daviess County (678.6 percent); Lee County (131.7 percent); Macon County (139.7 percent); Massac County (128.2 percent); Mercer County (120.5 percent); Perry County (123.5 percent); Saline County (220.1 percent); Tazewell County (144.2 percent); and Washington County (232.7 percent). Please explain why the percentage of confirmation notices that these counties sent to all registered voters was so high.

4. In response to Questions A10a through Question A10i, Illinois reported that it had over 2.3 million results of confirmation notices that were "not categorized," which was 62.3 percent of all confirmation notices sent. The national average was 17.8 percent. Please explain why the number and percentage of results of confirmation notices that were "not categorized" was so high. Furthermore, of the results of confirmation notices included as "not categorized," please provide the number for each category (e.g., "valid with no

address update," "valid with address update," "invalid," "confirmation notices returned undeliverable," and "unreturned confirmation notices").

5. In response to Questions A12i through Question A12k, Illinois reported that it had 258,976 voters removed for a reason described as "other," comprising 25.8 percent of all confirmation notices sent. The national average was 3.7 percent. Please explain why the number and percentage of voters removed for the "other" reason was so high. Furthermore, of the voters removed for "other" reasons, please provide the number of voters removed for each reason that Illinois included in the "other" category.

6. A review of the county-level data accompanying the most recent EAVS report indicates that in response to Question A12i through Question A12k, eighteen counties reported more than a quarter of voters listed as being removed were removed for a reason described as "other": Clay County (30.8 percent); Cook County (67.5 percent); DeWitt County (41.7 percent); Edgar County (36.5 percent); Fulton County (71.2 percent); Greene County (50.4 percent); Grundy County (26 percent); Jefferson County (99.4 percent); Jersey County (42.2 percent); Kendall County (47.5 percent); Knox County (30.7 percent); Logan County (25.2 percent); McDonough County (39.1 percent); McHenry County (65 percent); McLean County (68.2 percent); Morgan County (51.5 percent); Washington County (51 percent); and Winnebago County (87.3 percent). Illinois' two most populous counties, Cook County and DuPage County, together accounted for 63.4 percent of the 258,976 voters Illinois reported were removed for a reason described as "other." For each of these eighteen counties, please explain why the number and percentage of voters removed for the "other" reason was so high. Furthermore, of the voters removed for "other" reasons in each county, please provide the number of voters removed for each reason that the county included in the "other" category.

Please provide a description of the steps that Illinois has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures that Illinois used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen
2. Adjudicated incompetent
3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc: Laura K. Donahue
Chair, State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503
webmaster@elections.il.gov

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Bernadette Matthews
Executive Director
State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503
bmatthews@elections.il.gov

Re: **Complete Illinois's Voter Registration List with All Fields**

Executive Director Matthews:

We have received Illinois's statewide voter registration list ("VRL"). However, as the Attorney General requested, the electronic copy of the statewide VRL must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Illinois' VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

(2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Illinois's complete and current VRL. The purpose of the request is to ascertain Illinois's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Illinois must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing.

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Laura K. Donahue
Chair, State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503
webmaster@elections.il.gov

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 14, 2025

Via Mail and Email

The Honorable Diego Morales
Secretary of State
200 West Washington Street, Room 201
Indianapolis, IN 46204
sos@sos.in.gov

Dear Secretary Morales:

We write to you as the chief election official for the State of Indiana to request information regarding the state's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.

Please provide a list of the election officials who are responsible for implementing Indiana's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken, and when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions. *See* 52 U.S.C. § 20510.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

> The current electronic copy of Indiana's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout along with a database user manual, coding list, or other materials that define or explain how a voter record is coded into the statewide voter registration list and reported in the electronic copy of the statewide voter registration list.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. Confirmation Notice data was missing in the EAVS survey for Questions A10a through A10i in Indiana. Please provide the data for each county in Indiana for Questions A10a through A10i. In EAVS data, Question a12e, Indiana reported removing 168,838 for failure to return confirmation notices. Please explain Indiana's process for sending out and keeping track of the results of Confirmation Notices.

2. In the EAVS data, Question A12a, Indiana reported that it removed 888,506 voters from the voter rolls, which was twice as high as the national average. Indiana does not categorize 714,021, 80.4 percent, of those removals. Please provide a list of all registrants removed from the statewide voter registration list including the date(s) of removal. If they were linked with another record, please provide that information. Please explain the process of how the State determines when to remove voters from the statewide voter registration database.

3. No data was listed in the EAVS survey for Question QA12c regarding the removal of voters due to death. Please explain Indiana's process for determining who is deceased and removing them from the voter roll and when that occurs.

4. Please provide a description of the steps that Indiana has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures the state used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

   1. Non-citizen
   2. Adjudicated incompetent
   3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc: J. Bradley King
Co-Director, Elections Division
302 West Washington Street, Room E-204
Indianapolis, IN 46204
bking@iec.in.gov

Angela Nussmeyer
Co-Director, Elections Division
302 West Washington Street, Room E-204
Indianapolis, IN 46204
anussmeyer@iec.in.gov

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Diego Morales
Secretary of State
200 West Washington Street, Room 201
Indianapolis, IN 46204
sos@sos.in.gov

Re: **Complete Indiana's Voter Registration List with All Fields**

Secretary Morales:

We have received Indiana's statewide voter registration list ("VRL"). However, as the Attorney General requested, the electronic copy of the statewide VRL must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Indiana's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq.* Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq.*, also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Indiana's complete and current VRL. The purpose of the request is to ascertain Indiana's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Indiana must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: J. Bradley King
Co-Director, Elections Division
302 West Washington Street, Room E-204
Indianapolis, IN 46204
bking@iec.in.gov

Angela Nussmeyer
Co-Director, Elections Division
302 West Washington Street, Room E-204
Indianapolis, IN 46204
anussmeyer@iec.in.gov

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

July 15, 2025

Via Mail and Email

The Honorable Paul D. Pate
First Floor, Lucas Building
321 East 12th Street
Des Moines, IA 50319
elections@sos.iowa.gov

Dear Secretary Pate:

We write to you as the chief election official for the State of Iowa to request information regarding the State's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq.

Please provide a list of the election officials who are responsible for implementing Iowa's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken to ensure that the State's list maintenance program has been properly carried out in full compliance with the NVRA. Please include both the actions taken by State officials as well as county officials.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The current electronic copy of the State of Iowa's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format. Please specify what delimiter is used, if applicable, or provide a file layout.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close

of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. In the EAVS data for Question A1c, Iowa listed 239,807 inactive voters for 2024. According to the Secretary of State's website, the statistics show 572,156 inactive voters: CoNov24.pdf. Please explain the discrepancy and the reason why it is more than double the total listed in EAVS.
2. In the EAVS data for Question A3a, Iowa had 1,444,451 registration transactions processed. In Question A3b, there are 116,644 new valid registrations, approximately 8.1 percent of the total transactions, which is significantly below the national average of 25.3 percent. Similarly, in Question A3e, Iowa had only 500 updates to existing registrations. Instead, Iowa lists 1,282,457 registrations as "other" registrations without explanation. Please explain those registrations listed as "other".
3. In the EAVS data for Question A3d, Iowa had 30,080 voters (2.1 percent) with duplicate registrations, more than six times below the nationwide average of 12.7 percent. Please explain why duplicate registrations are such a low percentage of the total registration applications received. Please explain what actions Iowa is taking to identify duplicate registrations and to remove those duplicates from the voter registration list.
4. Iowa does not include any data for confirmation notices sent and what happened to that confirmation notice in the EAVS survey for Question 10(a) – 10(f). Please provide data that is responsive to questions 10(a) – 10(f). Iowa law provides for use of such a program. Please explain the process by which the State and counties participate in such a program.
5. In the EAVS data, Question A12a shows that Iowa removed only 81,201 registrants, which is 3.6 percent of registered voters. Your removals are nearly three times below the national average. Please explain why the number of removals is low in Iowa and what actions the State is taking to ensure that voters who should not be on the voter roll are being removed.
6. In the EAVS data, Question A12b shows that Iowa removed only 22,504 registrants for moving outside of the jurisdiction and Questions A12e shows no voters being removed for failure to respond to confirmation notices and not voting in the two most recent federal elections. Please explain why the number of removals is low for these two categories in Iowa. Please explain the actions the State is taking to remove voters who have moved and failed to respond to a sent confirmation notice and had not voted in the two most recent federal elections.
7. No data was listed in the EAVS survey for Question A12h for Iowa regarding duplicate registrants who were removed from the statewide voter registration database. Please provide a list of all duplicate registrants who were removed from the statewide voter registration list. If they were merged or linked with another record, please provide that information.

Please provide a description of the steps that Iowa has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures that Iowa used to remove those ineligible voters from the registration list. Please identify the number of

registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen
2. Adjudicated incompetent
3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc: Bailey Kelley
Deputy Director of Elections
First Floor, Lucas Building
321 E. 12th St.
Des Moines, IA 50319
bailey.kelley@sos.iowa.gov

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Paul D. Pate
Secretary of State
First Floor, Lucas Building
321 East 12th Street
Des Moines, IA 50319
elections@sos.iowa.gov

Re: **Complete Iowa's Voter Registration List with All Fields**

Secretary Pate:

In response to the Justice Department's request, Iowa provided a form to acquire Iowa's public statewide voter registration list ("VRL"). However, as the Attorney General requested, the electronic copy of the statewide VRL, which must contain *all fields*, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Iowa's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq.* Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq.*, also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide Voter Registration List requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

(2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Iowa's complete and current VRL. The purpose of the request is to ascertain Iowa's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Iowa must ensure that it contains *all fields*, which includes the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Moreover, HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing.

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that Justice Department be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are preempted by federal law.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department within seven days or by August 21, 2025.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Bailey Kelley
Deputy Director of Elections
First Floor, Lucas Building 321 E. 12th St.
Des Moines, IA 50319
bailey.kelley@sos.iowa.gov

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Scott Schwab
Secretary of State
Memorial Hall, 1st Floor
120 SW 10th Avenue
Topeka, KS 66612-1594
sos@sos.ks.gov; kssos@ks.gov

Re: **Complete Kansas's Voter Registration List with All Fields**

Secretary Schwab:

We understand that the time the Justice Department has provided your state to respond to the request for a statewide voter registration list ("VRL") and other information has not reached its deadline.

Given responses from other states thus far, we want to clarify that the Justice Department's request to provide an electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Kansas's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Kansas's complete and current VRL. The purpose of the request is to ascertain Kansas's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Kansas must ensure that it contains *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained

[2] In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department by the date set for your delivery by our original letter, or by August 21, 2025, whichever is later.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Bryan Caskey
Director, Elections Division
Memorial Hall, 1st Floor
120 SW 10th Avenue
Topeka, KS 66612-1594
bryan.caskey@sos.ks.gov

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

August 14, 2025

Via Mail and Email

The Honorable Michael Adams
Secretary of State
700 Capital Ave., Ste. 152
Frankfort, KY 40601
sos.secretary@ky.gov

Re: **Complete Kentucky's Voter Registration List with All Fields**

Secretary Adams:

We understand that the time the Justice Department has provided your state to respond to the request for a statewide voter registration list ("VRL") and other information has not reached its deadline.

Given responses from other states thus far, we want to clarify that the Justice Department's request to provide an electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Kentucky's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Kentucky's complete and current VRL. The purpose of the request is to ascertain Kentucky's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Kentucky must ensure that it contains *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department by the date set for your delivery by our original letter, or by August 21, 2025, whichever is later.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Karen Sellers
Executive Director, Board of Elections
140 Walnut St.
Frankfort, KY 40601
karen.sellers@ky.gov

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.