# DECLARATION

I, Eric Neff, declare, pursuant to 28 U.S.C. § 1746, that:

1. I am currently Acting Chief to the Voting Section within the Civil Rights Division of the United States Department of Justice ("DOJ"). I have personal knowledge of the facts set forth in this declaration. I make this declaration in support of the United States' Motion to Stay the United States' compliance with the vacatur remedy as described in the Order (ECF 52) and Memorandum Opinion (ECF 51) filed on October 9, 2026 in *Common Cause v. U.S. Dep't of Just.*, No. CV 26-1352 (SLS), 2026 WL 3033772 (D.D.C. Oct. 9, 2026) ("*Common Cause*").

2. The *Common Cause* Order and Memorandum Opinion vacated under the Administrative Procedure Act ("APA") what the Memorandum Opinion describes as the DOJ's "Voter List Maintenance Policy." 5 U.S.C. § 706 (2). The Memorandum Opinion described the "Voter List Maintenance Policy" as follows:

> Broadly speaking, the Division began requesting states' unredacted voter rolls, disclosing the lists to other federal agencies, comparing them against a federal database to identify purportedly ineligible voters, and demanding that states remove voters from their rolls based on the results of those comparisons. Consistent with the administrative record, the Court will refer to the challenged policy as the "Voter List Maintenance Policy."

*Common Cause*, No. CV 26-1352 (SLS), 2026 WL 3033772, at *4 (D.D.C. Oct. 9, 2026).

3. The Voting Section of the Civil Rights Division is charged, among other things, with enforcing federal law related to voting. More specifically, the Voting Section enforces the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq.*, the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq.*, and the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701, *et. seq*. Pursuant to its authority under those statutes, the Voting Section began civil investigations of the states' and District of Columbia's compliance with

properly maintaining their statewide voter registration list ("SVRL") pursuant to the NVRA and HAVA. As part of the Voting Section's investigation of those states' and the District of Columbia's compliance with the NVRA and HAVA, the Voting Section, pursuant to the authority granted to the Attorney General of the United States under the CRA, demanded that each state and the District of Columbia deliver certain "records" and other "papers" to the Attorney General related to elections, including each jurisdiction's SVRL. 52 U.S.C. § 20703.

4. Eighteen states complied with the Attorney General's demand and delivered "records" and "papers" to the Voting Section, including those states' SVRLs. Twenty-nine states and the District of Columbia refused to deliver the records demanded by the Attorney General. Attorneys in the Voting Section, on behalf of the United States, commenced civil actions against the chief election officer of each of those states and the District of Columbia to obtain the records and papers the Attorney General demanded, including those states and the District of Columbia's SVRL. These civil actions are all pending either in U.S. District Courts, U.S. Circuit Courts of Appeal or within the time period for DOJ to file a petition for writ of certiorari with the U.S. Supreme Court.

5. Because the *Common Cause* Order and Memorandum Opinion "vacated" what the Order and Memorandum Opinion described as the Voting Section's "Voter List Maintenance Policy," I have undertaken the responsibility to ensure, until directed otherwise, that the Voting Section will not undertake any further action with respect to the records at issue in the above captioned action that is inconsistent with the court's Order and Memorandum Opinion.

6. The eighteen states that delivered their respective SVRLs to the Voting Section delivered them in electronic format either as a unique database file or a Microsoft Excel file.

When those SVRLs were delivered to DOJ, my predecessor and I directed that DOJ, information technology ("IT") staff restrict access to those electronic files to a limited number of specific individuals in the Voting Section, including myself.

7. After issuance of the *Common Cause* Order and Memorandum Opinion, I ordered that all DOJ persons cease working on matters related to the SVRLs that the eighteen states had delivered to DOJ. I also ordered that all employees with access to the SVRL files cease accessing those files in violation of the *Common Cause* Order and Memorandum Opinion.

8. In summary, with regard to the eighteen states who delivered their unredacted SVRLs to the Voting Section, no further work is being done to analyze those SVRLs to determine if any state's SVRL lists a person who is ineligible to vote in federal elections.

9. As a result of the *Common Cause* Order and Memorandum Opinion, below is a list of work I intended to have the Voting Section perform but which I have now stopped due to the *Common Cause* Order and Memorandum Opinion:

a. I intended to have the Voting Section do additional work comparing the SVRL a state delivered to the Voting Section pursuant to the Attorney General's demand with SVRLs delivered by other states to determine if any state SVRL contained the names of voter registrants who were also listed as voter registrants on the SVRL of another state – i.e., determine if the state SVRLs contained the names of duplicate voters. This is consistent with our role in enforcing the dual voting prohibition under the Voting Rights Act. 52 U.S.C. § 10307(e).

b. Only the Attorney General of the United States is authorized to file civil actions in federal court to enforce HAVA. 52 U.S.C. § 21111. If the Voting Section learns of information that a state is violating HAVA, the NVRA or the CRA as those statutes relate to the SVRLs, the Voting Section will not be able to undertake investigations, enforcement actions or other related actions. For instance, DOJ would be unable to investigate or continue an investigation regarding any reports that a state's SVRL contains ineligible voters, such as reports from this past summer in New Jersey. *See* Jelani Gibson, *N.J. removes 5,100 from voter rolls after huge noncitizen registration error*, NJ.com (Aug. 19, 2019), https://www.nj.com/politics/2026/08/nj-removes-5100-noncitizen-

voters-from-rolls-as-sherrill-continues-to-fix-registration-mess.html. As a result of the *Common Cause* Order and Memorandum, DOJ cannot directly address such issues with state officials should they arise.

c. The midterm nationwide election is in less than three weeks on November 3, 2026. During this three-week period, state election officials might identify potential irregularities in their SVRLs and contact the Voting Section about how those irregularities impact that state's compliance with the "list maintenance" provisions in the NVRA and HAVA. As a result of the *Common Cause* Order and Memorandum, DOJ cannot directly address these issues with the state officials, particularly if the inquiring state is one of the eighteen states that has delivered its SVRL to DOJ already.

10. Finally, in order to have time to assess the effect of the *Common Cause* Order and Memorandum Opinion on a pending appeal, DOJ has filed a motion to extend the deadline for filing a reply brief in DOJ's appeal of *United States v. Bd. of Elections*, No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921 (N.D.N.Y. July 10, 2026). *Bd. of Elections* involved DOJ's attempt to obtain a court order for New York to produce its SVRL to DOJ. This appeal of *Bd. of Elections* is currently pending in the U.S. Court of Appeals for the Second Circuit. The motion was granted on October 14, 2026. This delay is harmful to DOJ's interest in expedited review of SVRL litigation. The Civil Rights Division has sought to expedite review of those matters so it can conduct its investigatory and oversight role with all possible speed. Expedition is particularly necessary given the schedule of elections and the need for effective oversight well before those elections.

I declare under the penalty of perjury that the above statements are true and correct.

Dated: October 15, 2026, at Washington, D.C.

Eric Neff