**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMON CAUSE, *et al.*,<br>*Plaintiffs*,<br>v.<br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br>*Defendants*. | No. 1:26-cv-01352-SLS<br>Hon. Sparkle L. Sooknanan |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE AND REQUEST FOR STATUS CONFERENCE**

As ordered by the Court, Defendants the Department of Justice and Attorney General Blanche respectfully file this response to Plaintiffs' Notice and Request for Status Conference. *See* ECF No. 53 ("Notice"). As discussed in greater detail below, the recent lawsuit filed by the United States against California does not "implicate" this Court's recent vacatur order. *Id.* at 1; *see United States v. California*, No. 26-cv-12025 (C.D. Cal.). That is because, at bottom, the recent lawsuit is separate from the alleged DOJ policy that this Court vacated.[1] Accordingly, no status conference or further proceedings are required based upon that lawsuit being filed.

[1] To be clear, DOJ disagrees that this alleged policy exists or is reviewable under the Administrative Procedure Act even if it does. *See* Defs.' Motion to Stay Pending Appeal at 3–6, ECF No. 57. None of DOJ's statements herein reflect a concession of that argument or should be read as a concession of that argument.

As the Court knows, DOJ has argued that the alleged policy challenged by Plaintiffs, even if it exists, is not reviewable under the Administrative Procedure Act. *See* Defs.' Mot. to Dismiss or for Summ. J. at 28–32, ECF No. 43; Defs. Reply ISO Mot. to Dismiss or for Summ. J. at 12–14, ECF No. 43. The Court ruled otherwise, inferring based on the existence of various activities that DOJ "adopted" the purported Voter List Maintenance Policy "in response to Executive Order 14248." Mem. Op. at 41, ECF No. 51 ("Mem. Op."). The Court never clearly defined the supposed policy, instead offering multiple descriptions of what the purported policy entailed. One description included as actions "[u]nder the policy" that "DOJ's Civil Rights Division sought SVRLs, disseminated them to contractors and federal agencies, cross-checked them against the SAVE database, and demanded that states remove voters from their rolls." *Id.* at 41–42. Another description from the Court described the "contours of the policy being challenged." *Id.* at 43. Namely, "DOJ sought SVRLs from each state"; DOJ "executed memoranda of understanding with two DHS components"; DOJ "began comparing SVRLs to the SAVE database in order to identify ineligible voters"; and "DOJ offered each state a memorandum of understanding." *Id.* The Court also noted that "the Civil Rights Division [had] set out to implement [this] policy," and the Court emphasized how "the head of DOJ's Civil Rights Division" had publicly "described the policy as a comprehensive effort." *Id.* at 44 (citation omitted).

Under any of the Court's descriptions of the purported policy, the lawsuit filed by the United States against California does not "implicate" that policy. Notice at 4. First, the lawsuit against California does not stem from DOJ's "comprehensive effort to request the voter rolls from all states and the District of Columbia." *Id.* at 44. Rather, as the *California* complaint describes, U.S. Citizenship and Immigration Services (USCIS) undertook an analysis to determine whether noncitizens are on voter rolls. *See* ECF No. 53-5 ¶¶ 33–38. USCIS received California's public

voter roll—which is freely available for purchase, Cal. Elec. Code § 2188—and then "after executing" its own internal processes, ECF No. 53-5 ¶ 45, sent to Homeland Security Investigations (HSI) names that USCIS "ha[d] a high confidence are likely noncitizens who are registered to vote in [] federal election[s]," *id.* ¶ 39. "HSI then performed its investigate process" and determined "that around 20,000 noncitizens are registered to vote in California." *Id.* ¶ 46.

The above factual recitation clarifies that the California lawsuit cannot be construed as part of the same purported policy that this Court vacated. Rather than beginning with a DOJ request for a voter roll, the Department of Homeland Security performed an independent analysis under its own authority based on a voter roll that it received through a lawful purchase, resulting in the lawsuit against California. To be part of the supposedly "comprehensive effort to *request* the voter rolls from all states and the District of Columbia" that this Court vacated, the California lawsuit must at least originate from DOJ's request for California's voter roll. Mem. Op. 44 (emphasis added). It does not—the Civil Rights Division has requested California's unredacted voter roll, but to date California has not provided it. *See United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026) (dismissing DOJ's complaint), *appeal docketed* No. 26-1232 (9th Cir.). The California lawsuit thus does not follow from any such request, as shown by the lack of any materials in the administrative record regarding DHS's receipt and analysis of California's publicly accessible voter roll, including Secretary Mullin's July letter to California about DHS's independent analysis of California's roll. *See* ECF No. 1-1, *United States v. California*, No. 26-cv-12025 (C.D. Cal.). Rather, the California lawsuit is *sui generis*. It originates from an independent review by DHS (not a Defendant here) of one state's voter roll, not from a broad request for every State's voter roll. The key point is that, even if DOJ does have a Voter List Maintenance Policy (and it doesn't), the lawsuit against California looks nothing like the actions taken under that supposed policy.

Second, DHS did not use SAVE at any point in its analysis. The Government's description of USCIS's and HSI's investigative techniques in *California* does not discuss SAVE, *see generally* ECF No. 53-5 ¶¶ 33–49, and a recent declaration filed in that case confirms that the techniques DHS used are "distinct from" SAVE, ECF No. 22-4 ¶ 15, *United States v. California*, No. 26-cv-12025 (C.D. Cal.). Contrary to Plaintiffs' suggestion, *see* Notice at 4–5, the Court's opinion makes clear that DOJ's purported policy involved using SAVE. Not only did the Court expressly list comparing voter rolls to SAVE as a "contour[]" of that policy, *see* Mem. Op. 43, it also held that the voting injuries giving Plaintiffs standing arise from "DOJ's use of the modified SAVE database," *id.* at 33; *see also id.* at 42 (Court listing "cross-check[s]" of SAVE as an action taken under DOJ's purported policy). DHS's failure to use SAVE thus distinguishes its California analysis as separate from the alleged policy that this Court vacated, and the resulting lawsuit cannot fairly be described as part of that same policy for the same reasons.

Third, although DOJ maintains that even under the purported policy it has never demanded that a State remove voters from the rolls, the California lawsuit certainly includes no "demand" that voters be removed from California's voter rolls. Notice at 4. The October 13 letter requested that California review the list of names and, for those whose citizenship status California could not confirm, to "instruct the appropriate elections official to segregate—not cancel—those individuals' vote-by-mail ballots until their citizenship status can be determined." ECF No. 53-1 at 2. The complaint similarly asked for injunctive relief enjoining California from "tabulating" votes received from the individuals on the list, ECF No. 53-5 ¶ 63, and the Government's recent preliminary-injunction motion similarly seeks an order directing California to segregate those ballots, not cancel the registrations, *see* ECF No. 22-8, *United States v. California*, No. 26-cv-12025 (C.D. Cal.). Not only is segregation of ballots provided for in California's own election

regulations, *see* Cal. Code Regs. tit. 2, § 20363, but temporarily sealing ballots does not impinge on anyone's voting, due process, or other rights. Again, DOJ maintains that it has never "demanded that states remove voters from their rolls," but the Court identified that as an action under the purported policy. Mem. Op. 42. That the California lawsuit includes no such request further proves that it is not part of the purported policy vacated by this Court.

Plaintiffs' responses all fail. Plaintiffs first point to the Court's ruling that "neither the NVRA nor HAVA authorize the *federal* government to demand the disenfranchisement of registered voters." Notice at 4 (quoting Mem. Op. 54). The Government recognizes the Court stated as much in its opinion, but that ruling was still limited to the confines of the purported policy. *See* Mem. Op. 54 ("The NVRA and HAVA likewise do not authorize the remainder of the Voter List Maintenance Policy."). Because the California lawsuit falls outside those boundaries, it is not part of the purported policy nor restrained by the Court's order, and the proper determination of whether that action is barred by the NVRA or HAVA lies with the court adjudicating that lawsuit. Plaintiffs cannot challenge one purported policy and then say that their subsequent victory applies to any other government action sharing any characteristic with the purported policy. Such a result would expand the APA from a remedial scalpel against discrete agency actions into a weapon of programmatic breadth.

Moreover, Plaintiffs' suggestion that an individual action elsewhere violates this Court's order appears to contradict this Court's ruling. The Court believed Plaintiffs not to be challenging "DOJ's investigatory or enforcement choices in specific matters." Mem. Op. 39. Yet now Plaintiffs identify a specific enforcement choice—namely, the decision to bring a lawsuit against California—and say it is foreclosed. Given that the Government has "authority to decide how to prioritize and how aggressively to pursue legal actions," Mem. Op. 38 (citation omitted), an order

from this Court enjoining or blocking the California lawsuit would be legally suspect at the threshold, but it would be even more unsound assuming, as the Court held, that Plaintiffs actually did not challenge enforcement choices in individual matters.

Indeed, taken at Plaintiffs' own words, the California lawsuit is different from what Plaintiffs challenged here. They objected to DOJ's policy occurring "on a dragnet basis and without any particularized investigatory purpose." Pls.' Mot. for Summ. J. at 23, ECF No. 29-1. Putting aside all other arguments for why DOJ acted lawfully, the California lawsuit certainly is not the result of a dragnet. It has a particularized purpose based on DHS's independent analysis of California's voter roll. Elsewhere, Plaintiffs challenged the supposedly "categorical" decision to "obtain and review *all* SVRLS . . . without individualized assessments." Pls.' Combined Opp. and Reply at 21, ECF No. 35 (emphasis added). A State-specific analysis and subsequent lawsuit like the California action is the kind of individualized assessment that Plaintiffs appeared to carve out from their challenge, and it certainly did not come about from any request for "all SVRLs." *Id.* If the Court intended its decision to foreclose even such a one-off enforcement action, its decision goes beyond Plaintiffs' challenge and, in any event, would be so far-reaching as to provide further impetus for a stay pending appeal. *See generally* Defs. Mot. for Stay Pending Appeal. Defendants do not understand the Court's vacatur as preventing all federal lawsuits or actions, anywhere in the country and regardless of their specific facts, designed to ensure only eligible voters vote in accordance with federal law.

Plaintiffs' other arguments should also be rejected. Plaintiffs try to link DOJ's supposed failure to consider "the reliability of [DHS's] underlying data" with this Court's conclusion that DOJ failed to consider the risk that its purported policy would disenfranchise eligible voters. Notice at 4 (citing Mem. Op. 55–56). That linkage is nonexistent. The Court ruled that DOJ failed

to consider risks arising from "the modified SAVE's inability to accurately identify certain categories of citizens." Mem. Op. 56. Although DOJ maintains that it did not act arbitrarily and capriciously, the Court's contrary holding has no application to the California lawsuit, which did not involve data from SAVE. *See* ECF No. 22-4 ¶ 15, *United States v. California*, No. 26-cv-12025 (C.D. Cal.).

Plaintiffs also assert that DOJ and HSI "contemplate[d] data flowing" between the two agencies, and Plaintiffs cite a letter from DOJ to Immigration and Customs Enforcement to support this point. Notice at 4 (citing CRT 3399–3400). That letter does discuss information sharing, but only to assist DOJ in querying SAVE. The letter notes that DHS had previously indicated an ability to enrich data "to allow for vetting via the SAVE system." CRT-3400. The letter further confirms that once enriched data is provided, "DOJ-CRT will subsequently query the SAVE system pursuant to the terms enclosed in the January 20 MOU." *Id.* Again, the lawsuit against California does not involve information gleaned from SAVE queries at all, much less by "DOJ-CRT" (referring to the Civil Rights Division). For that reason, even assuming the information sharing reflected in the letter is part of the purported policy, the California lawsuit did not stem from that sharing and therefore not from the purported policy.

For these reasons, DOJ does not believe that the recent letter to California and the subsequent lawsuit "outright violate" or even "implicate" this Court's decision. Notice at 4. The Court vacated a policy that it defined for purposes of the ruling. The California lawsuit does not fit any of the Court's descriptions of the purported policy. DOJ further respectfully submits that Plaintiffs' Notice illustrates the problems DOJ previously identified with vacating an unwritten policy consisting of several disparate actions. By inferring a policy of such breadth, the Court's decision has created confusion about which DOJ actions are prohibited, spawning Plaintiffs to

suggest that the Court vacated a separate lawsuit bearing only a superficial resemblance to what they challenged. The Notice thus provides added reason to grant DOJ's pending motion for a stay pending appeal.

DOJ respectfully submits that no status conference is necessary in light of what DOJ has said in this filing and the contours of the *California* case.

Dated: October 19, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Director
Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-5980
Email: Christian.R.Dibblee@usdoj.gov

*Counsel for Defendants*