**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

COMMON CAUSE, *et al.*,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

*Defendants*.

No. 1:26-cv-01352-SLS

Hon. Sparkle L. Sooknanan

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

## INTRODUCTION

Plaintiffs oppose the request from Defendants the Department of Justice and Attorney General Blanche for this Court to stay pending appeal its vacatur decision, ECF Nos. 51 & 52. Their opposition fails to muster any arguments for why the Court should not issue that stay. Indeed, a stay is even more necessary now since Plaintiffs appear to leave open the possibility that the Court's decision affects ongoing enforcement actions by DOJ. This potential roadblock to DOJ's ongoing exercise of its enforcement discretion plainly constitutes irreparable harm and, regardless, DOJ is still likely to succeed on the merits of its appeal. Thus, the Court should stay its order pending appeal.

## ARGUMENT

DOJ is fully aware that the Court has "already rejected" most of its merits arguments, a point that Plaintiffs nonetheless emphasize throughout their opposition. Pls.' Mem. in Opp'n to Defs.' Mot. for Stay Pending Appeal at 2, ECF No. 59 (Opp'n); *see also* Mot. 3 (acknowledging the Court's rejection of DOJ's arguments). Of course, that is true of almost every motion for a stay pending appeal, or otherwise there would be no preserved arguments to appeal in the first place. DOJ has filed its motion in accordance with Federal Rule of Appellate Procedure 8 and does not wish to burden the Court with repetitive arguments that have already been addressed at length and, as a result, did not in its motion (nor will it now) fully repeat all of the reasons why it respectfully disagrees with the Court's decision. Even so, a few points in Plaintiffs' opposition merit reply.

The most important concerns the interaction between this Court's decision and "ongoing Article III actions that are seeking to obtain voter rolls, including any appeals," pending in other courts. Mot. 13. As noted, DOJ does not interpret the Court's decision as "pretermitting or

requiring dismissal" of those actions. *Id.* Plaintiffs appear to agree, suggesting that allowing this Court's decision to negate or preempt enforcement actions pending elsewhere would "improperly expand the scope" of this Court's decision. Opp'n at 36–37. But elsewhere they include the district-court results of those lawsuits as part of "the investigation and oversight" regarding "voter list maintenance" that this Court supposedly vacated, *id.* at 34, and they argue that those lawsuits create "legal consequences resulting from the Policy," *id.* at 12. Faced with such unclear messaging, DOJ reiterates that if the Court views its decision as extending to the pending enforcement actions, that view would preclude DOJ from continuing ongoing cases, a plain and self-evident form of irreparable harm warranting a stay.

**I. The Government Is Likely to Succeed On The Merits.**

**a.** DOJ explained in its Motion how the Court erroneously concluded that the so-called Voter List Maintenance Policy is not a discrete agency action but rather a "series" of them that cannot be reviewed *en masse* under the APA. Defs.' Mot. for Stay Pending Appeal at 4, ECF No. 57 (Mot.). Plaintiffs suggest otherwise by asserting that the Court "recognized a single overarching Policy" and then "described the various types of administrative actions that Defendants took to *implement* that single policy." Opp'n 10. That is an inaccurate description of the Court's analysis. Rather than include the requests for rolls, storage of those rolls, memoranda of understanding with States, comparison of voter rolls to SAVE, and enforcement actions as actions to implement a policy, the Court listed those things as "the contours *of* the policy." Mem. Op. at 43, ECF No. 51 (emphasis added). Similarly, the Court said that DOJ had "adopted" the purported policy and then "under th[at] policy," had taken all of the above actions. *Id.* at 41–42. At no point did the Court describe these actions as implementation of a policy, but rather as part of the policy itself.

So did Plaintiffs. They argued in their summary-judgment papers that the purported policy "entails DOJ executing the following, unauthorized, constituent actions." ECF No. 29-1 at 4. And in their merits arguments against the purported policy, Plaintiffs chided Defendants for "try[ing] to disaggregate and defend the elements of DOJ's Policy[.]" ECF No. 35 at 26. Plaintiffs have always argued—and the Court apparently agrees—that these "constituent actions" are part of the purported policy, not mere implementation of it. ECF No. 29-1 at 4. Indeed, that must be Plaintiffs' argument. Otherwise, they would need to challenge each implementing "[a]gency action" individually to get APA review. 5 U.S.C. § 704. They would need to establish the Court's jurisdiction for every individual agency action. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("[P]laintiffs must demonstrate standing for each claim that they press[.]"). And the administrative record in this case would be much smaller because implementation of an agency action is post-decisional and therefore not part of the administrative record. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (judicial review in an APA case is based on the "full administrative record that was before [the agency] at the time [it] made [its] decision."), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Plaintiffs do not even adhere to this newfound view in their own opposition. For example, the header of their final-agency-action arguments says that "The Policy is final" and then agrees with the Court's conclusion that "[e]ach component of the policy carries legal consequences." Opp'n 11 (quoting Mem. Op. 45). If the purported policy is final because its components are final, then those components are part of the policy itself. Plaintiffs also assert that "the Policy violates the Privacy Act multiple times over," Opp'n 20, but also say that DOJ failed "to comply with the requirements of the Privacy Act in *implementing its Policy*," *id.* at 29 (emphasis added). Those two statements are irreconcilable, and Plaintiffs cannot inject their own "mischaracterizations of

this litigation" to avoid how they have framed their own challenge. *Id.* at 10. In sum, Plaintiffs have always and still do view the supposedly illegal things in their complaint to be part of the purported policy, not implementation of it. The Court appears to agree, hence DOJ's arguments that the scope of the Court's vacatur merits a stay pending appeal. *See* Mot. 4–5.

Plaintiffs' other arguments about discreteness are unpersuasive. They emphasize that DOJ requested voter rolls "in quick succession" and that DOJ made a supposedly "single, categorical offer" to all States, Opp'n 9, but Plaintiffs assiduously ignore that DOJ's response as to each State took multiple forms, including, for example, acceptance of voter rolls from 14 States without a memorandum of understanding, *see* ECF No. 32-1 9 n.3 (listing these States). Even if the offer to each State was the same, DOJ's response was hardly categorical nor "*one* particular measure" given that DOJ acted differently depending on how each State responded. Opp'n 11 (emphasis added).

Regarding finality of agency action under the APA—and as previewed above—Plaintiffs muddy the lines of the purported policy, asserting that collection of voter rolls "of course affects the privacy rights of Plaintiffs" and including DOJ's ongoing lawsuits against States as creating "legal consequences resulting from the Policy." *Id.* at 12. Mentioning the lawsuits is confusing given Plaintiffs' later suggestion that allowing this Court's decision to negate or preempt enforcement actions pending elsewhere would "improperly expand the scope" of this Court's decision. *Id.* at 36–37. If no one can use this vacatur decision to nix other lawsuits, those suits must not be part of the purported policy, and their legal consequences, if any, are irrelevant to whether the *policy* carries legal consequences.

In any event, Defendants are wrong to suggest that "the facts in the AR" show that the letters by themselves created legal consequences. *Id.* at 12. Asking States whether they intend to

provide voter rolls does not commit DOJ to taking enforcement actions against those States, *see, e.g.*, CRT-2884 (cited at Opp'n 12), nor does noting that someone "could be subject to criminal liability," Opp'n 5 n.1. In both scenarios, DOJ was not committing itself to an enforcement action—at the earliest, legal consequences arise at the earliest once DOJ actually commences an enforcement action. Those letters themselves did not create legal consequences. *See Holistic Candlers and Consumers Ass'n v. FDA*, 664 F.3d 940, 944–45 (D.C. Cir. 2012) (letters providing opportunity for voluntary compliance did not create legal consequences). DOJ otherwise stands on its arguments for why the individual portions of the purported policy are not final agency actions.

**b.** On whether election-related statutes authorize the purported policy, Plaintiffs begin their opposition with arguments that the Court did not discuss. *See* Opp'n 13–16. DOJ did not "ignore" or "fail to acknowledge" these points. *Id.* at 14–15. Instead, it did not mention them because the Court did not. And far from "abandon[ing]" an argument that the NVRA and HAVA justify the purported policy, *id.* at 13, DOJ argued it would prevail on appeal "[f]or all the reasons articulated in DOJ's dispositive-motion briefing," including arguments under the NVRA and HAVA, Mot. 3.

By contrast, the Court *did* hold that the requests lacked a sufficient statement of the basis and purpose for each request. *See* Mem. Op. 50–52. DOJ still disagrees with that conclusion. *See* Mot. 6–8. And contrary to Plaintiffs' forfeiture argument about the statute including a doublet, *see* Opp'n 17, DOJ did argue that Title III requires the Government only to "identify in a general way the reasons for [a] demand." ECF No. 32-1 at 38 (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam)). That argument necessarily advanced the proposition that the text of Title III does not require separate statements of basis and purpose. As for the substance

of Plaintiffs' response, DOJ's position would not render the text of Title III "virtually meaningless." Opp'n 17 n.13. DOJ's position is that the requirement does not impose a high burden on the Government, as the Fifth Circuit has held. *See Coleman*, 313 F.2d at 868; *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).

DOJ met that burden here. *See* Mot. 7–8. Plaintiffs do not disagree that the Court did not "mention DOJ's reference" in many letters to anomalies in State responses to the Election Administration and Voting Survey, *id.* at 8, and Plaintiffs misrepresent the administrative record. DOJ did "make a Title III request for unredacted [voter rolls]" in many follow-up letters to States asking for their voter rolls. Opp'n 18; *see, e.g.*, CRT-2346; CRT-2400; CRT-2411; CRT-2537; CRT-2544; CRT-2558; CRT-2572; CRT-2593; CRT-2647; CRT-2688; CRT-2691; CRT-2702; CRT-2710; CRT-2714; CRT-2744; CRT-2759; CRT-2770; CRT-2778; CRT-2790; CRT-2818; CRT-2843; CRT-2858; CRT-2872; CRT-2891; CRT-2911; CRT-2927.[1] Those letters also stated that "[t]he purpose of the request is to ascertain [each State's] compliance with the list maintenance requirements of the NVRA and HAVA." *E.g.*, CRT-2412 (letter to Arkansas). When combined with the previous letters' statement of the basis for DOJ's inquiry, these letters stated both DOJ's purpose and basis of its request. *Accord United States v. Benson*, 187 F.4th 462, 479–80 (6th Cir. 2026) (Thapar, J., dissenting from denial of rehearing en banc) ("Yet nothing in Title III says the demand needs to be made in one letter.").

Lastly on this topic, Plaintiffs say that DOJ's requests are "pretextual." Opp'n 19. The Court chose not to resolve that argument, *see* Mem. Op. 52 n. 15, so DOJ need not address it here. But, in any event, DOJ explained why "accessing unredacted SVRLs (and demanding that states

[1] The Court can see the full universe of these follow-up letters by reviewing the joint appendix, *see* ECF No. 45, and locating the letters that DOJ sent to States after mid-August 2025. Those letters mention Title III.

remove voters identified by [DOJ]) is necessary to investigate whether a state's *processes* for removing ineligible voters is reasonable." Opp'n 19. DOJ has provided that explanation, namely that analysis of voter rolls and checking them for ineligible voters is a cogent and legitimate way to determine whether a State is accurately, *i.e.* reasonably, discharging its list-maintenance obligations under the NVRA and HAVA. *See* ECF No. 32-1 at 38–39; ECF No. 43 at 21.

**c.** Plaintiffs include numerous responses to DOJ regarding the Privacy Act. *See* Opp'n 20–29. As for DOJ's argument that the Privacy Act cannot be enforced indirectly through the APA, *see* Mot. 9–10, Plaintiffs have no explanation for why they should be permitted to circumvent the Privacy Act's remedial limitations. The D.C. Circuit held in *Doe v. Stephens* that "the Act precludes other forms of declaratory and injunctive relief," including the vacatur relief Plaintiffs obtained here. 851 F.2d 1457, 1463 (D.C. Cir. 1988). And though the statute at issue in *Stephens* borrowed the Privacy Act's substance, Plaintiffs are mistaken to assert that its "remedial scheme *is* the Privacy Act." Opp'n 28. The provision they cite governs substance and bears no resemblance to the Privacy Act's reticulated scheme for judicial review and limited remedies. *Compare* 38 U.S.C. § 5701(j) *with* 5 U.S.C. § 552a(g).

Plaintiffs also assert, as a threshold matter, that Defendants forfeited their argument that 8 U.S.C. § 1373 supersedes the Privacy Act. *See* Mot. 8–9. But Defendants argued that § 1373 prevents any legal violation from DOJ's use of SAVE because SAVE is statutorily authorized. *See* ECF No. 32-1 at 46. The Supreme Court expressly adopted that argument *DHS v. League of Women Voters*, noting that by passing § 1373, "Congress necessarily authorized DHS to request and receive" information about a person's immigration or citizenship status and foreclosed placing governmental officers "in the impossible predicament of either disclosing information consistent with section 1373 but in violation of legislation like the Social Security Act *or the Privacy Act*."

609 U.S. —, 2026 WL 2879700, at *2 (U.S. Sept. 25, 2026) (emphasis added). That DOJ cited different provisions of § 1373 does not disturb their argument that because of § 1373, DOJ could not have violated the Privacy Act.[2]

Once the Court properly rejects the forfeiture argument, it reaches Plaintiffs' deficient merits arguments about § 1373. Plaintiffs start by suggesting that none of the information in unredacted voter rolls is "information regarding the citizenship or immigration status" of an individual. 8 U.S.C. § 1373(a); *see* Opp'n 24. That argument runs headlong into the Supreme Court's aforementioned recognition in *League of Women Voters* that Congress had "necessarily authorized" DHS to receive information from other agencies in § 1373 notwithstanding the Privacy Act. 2026 WL 2879700, at *2. Consistent with that authorization, the Court said, DHS's modified SAVE system could receive identifying information about a person, including their "first name, last name, date of birth, or full or partial SSN" to confirm that person's citizenship. *Id.* at *1. DOJ's transfers of information are identical; it plans to confirm citizenship by transmitting to DHS the same type of identifying information (and indeed, the same information) at issue in *League of Women Voters*, namely names, dates of birth, and partial SSNs. *See* Mem. Op. 9 (listing names, dates of birth, and partial Social Security Numbers as part of unredacted voter rolls). *League of Women Voters* therefore permits the DOJ to transfer that information to DHS to confirm citizenship, notwithstanding the restrictions in the Privacy Act.

At the end of their § 1373 arguments, Plaintiffs say that statute is limited to "information concerning specific individuals." Opp'n 26. The statute is not written that way. It sets forth requirements as to information about "any" individual without ever requiring that sharing under

[2] For this reason, there was no need to "file a notice of supplemental authority" after the Supreme Court's decision in *League of Women Voters*. Opp'n 22 n.15.

§ 1373 cannot be in bulk or proceed one-at-a-time. 8 U.S.C. § 1373(a), (b). Indeed, the Supreme Court expressly upheld using SAVE "to conduct bulk searches of multiple individuals at once." *League of Women Voters*, 2026 WL 2879700, at *1; *contra* Opp'n 27 n.20.

**d.** Plaintiffs have not shown that DOJ is unlikely to succeed on appeal regarding the Paperwork Reduction Act. *Contra* Opp'n 29–31. Their main response is that DOJ's argument would allow an agency to "circumvent the PRA's requirements by starting with identical questions and then adding bespoke additional questions for some recipients." Opp'n 30. That response makes little sense. Adding those kinds of additional questions creates the kind of "individualized communication[]" not governed by the PRA. *Hyatt v. OMB*, 998 F.3d 423, 425 (9th Cir. 2021). And that would not "make collections *more* burdensome" because, by definition, such an individual communication that is not identical to other communications is not a collection in the first place. Opp'n 30. As for DOJ's failure to mention 44 U.S.C. § 3518(c)(2), DOJ stands by its previous arguments for why that provision removes these letters from the PRA's definition of a collection. *See* ECF No. 32-1 at 49; ECF No. 43 at 26.

**e.** DOJ did not act arbitrarily or capriciously, and the Court's conclusion to the contrary was wrong. *See* Mot. 11–12. As an initial matter, the Court ruled that DOJ acted arbitrarily only in not considering the risk that the purported policy would result in erroneous removal of eligible voters. *See* Mem. Op. 55–56. The "several additional reasons" identified by Plaintiffs thus do not require response here, Opp'n 31 n.22, though DOJ rejects them, *see* ECF No. 32 at 36–41; ECF No. 43 at 20.

Plaintiffs' other arguments misstate certain key facts. States retain the ability to ensure that voter lists are not removed in error, *see* 52 U.S.C. § 21083(a)(4)(B); *contra* Opp'n 31–32, and Plaintiffs never contest that many States expressly reserved that ability for any voters that DOJ

might have flagged as possibly ineligible, *see* CRT-1800; CRT-1995; CRT-3126; CRT-3261; CRT-3276. They cite the memoranda of understanding offered by DOJ to States (at 33) without acknowledging that the vast majority of States who disclosed voter rolls did not sign that memorandum, and one who did preserved its ability to confirm a voter is ineligible before removing that voter, *see* CRT-25. Plaintiffs also say that DOJ does more than notify a State of an ineligible voter, but they support that statement with the recent lawsuits to obtain the voter rolls and the pending lawsuit against California. *See* Opp'n 32. Simply put, merely initiating a lawsuit to obtain a voter roll does not guarantee that DOJ will later notify a State of potentially ineligible voters, nor does it indicate that DOJ will coerce States who refuse to respond to any notification that does occur.[3] And as DOJ has made clear elsewhere, the lawsuit against California is irrelevant to the purported policy challenged and vacated here. *See generally* ECF No. 58.

## II. The Remaining Factors Favor A Stay.

The Court's ruling has created a gap in DOJ's ability to enforce voting and elections laws, subjecting DOJ to irreparable harm contrary to the public interest. *See* Mot. 12–13. Plaintiffs' contrary arguments fail. As noted above, Plaintiffs' mixed signals about whether and how the Court's decision affects ongoing Article III lawsuits risks a self-evident irreparable harm on DOJ. DOJ views the adverse decisions in other cases as similarly affecting DOJ's ability to enforce voting laws, and this Court's decision is no different, particularly if it requires dismissal of ongoing lawsuits. *Contra* Opp'n 34 (arguing that "it is difficult to square the claim of extraordinary harm with DOJ's record of losses across the board").

[3] Similarly, notifying State election officials of the Department's view about potential criminal liability does not lock DOJ into bringing an enforcement action against those officials if they were not to remove any voters flagged by DOJ.

Plaintiffs also point to the lack of harm because any request to remove ineligible voters "cannot [begin] during the NVRA's 90-day quiet period, which began more than two months ago." *Id.* at 35. This argument misunderstands the NVRA, which prohibits only "systematic[]" programs to remove voters, not an individualized removal of ineligible voters like what DOJ is contemplating. *See* 52 U.S.C. § 20507(c)(2)(A). Plaintiffs also take aim at DOJ's efforts to identify duplicate voters, saying "nothing in the AR" suggests that "was the purpose of the [alleged] Policy." Opp'n 35. To the contrary, in its requests to States for their voter rolls, DOJ did identify potentially duplicate registrations and requested information about them. *See, e.g.*, CRT-2429 ("No data was listed in the EAVS survey for Question A12h for California . . . Please explain California's process for determining duplicates and what happens to the duplicate registrations."). Plaintiffs also say that double voting is nothing to worry about now because that is a crime only "*after* a person casts more than one ballot" and "no one has voted yet." Opp'n 36 (citing 52 U.S.C. § 10307(e)). DOJ knows of no authority that prohibits it from acting prophylactically to reduce commission of crimes, or from investigating whether someone is about to commit a crime, and the purpose of statutes like the NVRA and HAVA is to prevent fraudulent voting, including double voting.

The public interest also favors a stay pending appeal for the reasons already explained by DOJ. *See* Mot. 12–13; *Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that the stay factors regarding the public interest and any harm to the Government merge). Plaintiffs invoke a "strong interest" in keeping "*states* at the helm of maintaining their voter rolls," Opp'n 38, but there is an even greater public interest in permitting DOJ to enforce the NVRA and HAVA *as Congress said it can*, *see* 52 U.S.C. §§ 20510(a), 21111. Plaintiffs also assert that, absent a stay, "Common Cause's members and the individual Plaintiffs (as well as millions of other Americans) are also in

danger of burdens on their right to vote and 'wrongful removal' from the voter rolls." Opp'n 39. That argument is a rehash of Plaintiffs' previous arguments in this case and, yet again, disregards that States, not the Federal Government, determine when to remove a voter.[4] *See supra* § I.e. Plaintiffs also cite DOJ's "memoranda of understanding" and supposed risks attending those memoranda without acknowledging that the vast majority of States who provided their voter rolls did *not* sign those memoranda. Opp'n 40; *see supra* § I.e. Finally, Plaintiffs point to the need to protect First Amendment records. *See* Opp'n 40. That is undoubtedly important, but it does not overcome the public's interest in enforcing statutes that Congress wrote, including Title III, the NVRA, HAVA, and § 1373.

## CONCLUSION

For the reasons herein and in the original Motion for Stay Pending Appeal, ECF No. 57, the Court should stay its order entering judgment for Plaintiffs, ECF No. 52, pending the resolution of Defendants' appeal from that order to the D.C. Circuit.

---

[4] Plaintiffs say that DOJ's "recent actions" confirm the risk of wrongful removals, *see* Opp'n 39, but they cite only the *California* litigation which, as DOJ has said elsewhere, *see* ECF No. 58, arose from events that could not conceivably be part of the alleged policy vacated by this Court.

Dated: October 26, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Director
Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-5980
Email: Christian.R.Dibblee@usdoj.gov

*Counsel for Defendants*