**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMON CAUSE, *et al.*,<br>*Plaintiffs*,<br>v.<br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br>*Defendants*. | Civil Action No. 26-1352 (SLS)<br>Judge Sparkle L. Sooknanan |

# MEMORANDUM OPINION

In this case, the Plaintiffs challenged the Department of Justice's (DOJ) unprecedented policy of collecting, analyzing, and distributing the personal information of millions of American voters. On October 9, 2026, the Court found DOJ's policy unlawful in several respects and vacated it under the Administrative Procedure Act (APA). *See Common Cause v. DOJ*, __ F. Supp. 3d. __, No. 26-cv-1352, 2026 WL 3033772 (D.D.C. Oct. 9, 2026); Order, ECF No. 52. On October 16, 2026, the Defendants appealed the Court's decision, Notice of Appeal, ECF No. 55, and they now move to stay the Court's Order pending appeal, Defs.' Mot. Stay (Mot.), ECF No. 57. That motion is fully briefed and ripe for review. *See* Pls.' Opp'n (Opp'n), ECF No. 59; Defs.' Reply (Reply), ECF No. 60. For the reasons explained below, the Court denies the Defendants' motion.

## LEGAL STANDARD

"A stay pending appeal is an extraordinary remedy." *M.M.V. v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020) (citing *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985)). "It is 'an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right.'" *M.M.V.*, 459 F. Supp. 3d at 4 (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). "It is instead an exercise of judicial discretion, and the propriety of its issue

is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (cleaned up). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

Courts must consider four factors in connection with a stay motion: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). On the first factor, the D.C. Circuit has said that the chance of success on the merits must be "substantial[.]" *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (cleaned up). Failure to satisfy this standard is "an arguably fatal flaw for a stay application." *Citizens for Resp. & Ethics in Wash. (CREW) v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam). And a poor showing on the first factor bears on the second factor—"[w]here there is a low likelihood of success on [the] merits, a movant must show a proportionally greater irreparable injury[.]" *M.M.V.*, 459 F. Supp. 3d at 4 (citing *Cuomo*, 772 F.2d at 974).

## DISCUSSION

Despite the recent prevalence of motions for a stay pending appeal, it remains an extraordinary remedy. Here, the Defendants are not entitled to one. The Court is unpersuaded that they are likely to succeed on the merits, that they will be irreparably injured absent a stay, or that the balance of equities and public interest tip in their favor.

### A. Likelihood of Success on the Merits

The Court carefully reviewed the arguments on both sides of this dispute and penned 78 pages explaining why the challenged policy is unlawful—*i.e.*, why the Defendants cannot show that they are likely to succeed on the merits. In seeking a stay, the Defendants renew numerous

arguments that the Court considered and rejected. And they advance as-yet unraised contentions—ignoring the uncontroverted principle that "a motion to stay should not be used to . . . raise arguments which could, and should, have been made before the judgment issued." *League of Women Voters v. DHS*, 2026 WL 1972055, at *2 (D.D.C. July 8, 2026) (cleaned up). Having once again considered the arguments on both sides, the Court concludes that the Defendants have not shown a "substantial" likelihood of success on the merits—"an arguably fatal flaw" for their stay application. *CREW*, 904 F.3d at 1017–19.

**1. Agency Action**

The Defendants first contend that the challenged policy—the Voter List Maintenance Policy—is not discrete final agency action reviewable under the APA. Mot. at 3–6. But their arguments are no more persuasive the second time around.

To start, the Defendants claim that the Court "fabricat[ed]" a policy, Mot. at 5, by "amalgamat[ing] a 'boatload of individual agency actions,' and then fly[ing] a 'Policy' banner over them," Mot. at 4 (quoting *Ctr. for Bio. Diversity v. Burgum*, 826 F. Supp. 3d 18, 34 (D.D.C. 2026)). But DOJ's Civil Rights Division, not this Court, created the Voter List Maintenance Policy. The administrative record reveals that the Civil Rights Division adopted the challenged policy in response to an executive order, *Common Cause*, 2026 WL 3033722, at *4, gave it a name, *id.* (first citing CRT-7; then citing CRT-27; and then citing CRT-3397), and most glaringly, sought OLC's opinion on its proposal, *id.* at *20 (citing CRT-3330). The Defendants' colorful attacks on the Court's Memorandum Opinion do not change that.

The Defendants' reprise of their argument that the requests to each state were not "identical[,]" Mot. at 5, is similarly unpersuasive. As the administrative record makes clear, and the Defendants do not contest, the Civil Rights Division demanded unredacted SVRLs from *all*

states, relying on the same statute, and using much of the same language. *See Common Cause*, 2026 WL 3033772, at *5 & n.2. In sum, as the Memorandum Opinion laid out in detail, the Court examined DOJ's reviewable choice to adopt the Voter List Maintenance Policy, under which DOJ "appl[ied] [] particular measure[s] across the board[.]" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990); *see Common Cause*, 2026 WL 3033772, at *19–21.

The Defendants are also wrong that the policy was not final agency action. As the Memorandum Opinion makes clear, "[e]ach component of the policy carries legal consequences." *Common Cause*, 2026 WL 3033772, at *21. Consider, for example, the Civil Rights Division's categorical demands for state voter rolls. In a surprising about-face, the Defendants now claim that "[r]equesting unredacted voter rolls does not determine legal rights or obligations" because "[s]tates had the option to provide the requested information; many did, many did not." Mot. at 5. As the Defendants now tell it, the Civil Rights Division's Title III demand letters to states were simply "requests for States to 'please' provide information[.]" Mot. at 5. The Defendants cannot make that argument with a straight face. The Division's SVRL demand letters state that "the Attorney General is *demanding* an electronic copy of [state's] complete and current VRL." *E.g.*, CRT-2347; CRT-2401; CRT-2412; CRT-2538 (emphasis added). The letters' mandatory language was not accidental; as OLC itself explained in signing off on the Civil Rights Division's proposed policy, the letters were designed to "compel states to turn over statewide voter lists[.]" CRT-3335. And of course, DOJ has sued each state that did not accede to its demands. So the Defendants' claim that the "letters did not 'require anyone to do anything[,]'" Mot. at 5 (alteration in original) (quoting *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 640 (D.C. Cir. 2019)), is false. For all the reasons detailed in the Court's Memorandum Opinion, the Voter List Maintenance Policy

constitutes final agency action reviewable under the APA. *See Common Cause*, 2026 WL 3033772, at *21.

**2. Statutory Arguments**

Next, the Defendants take another stab at defending the legality of the Voter List Maintenance Policy under the relevant statutes, including Title III of the Civil Rights Act of 1960, the Privacy Act, and the Paperwork Reduction Act (PRA).[1] Once again, the Court is not convinced.

**a. Title III**

Beginning with Title III, the Defendants take issue with the Court's interpretation and application of Title III's requirement that any demand "contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703; *see* Mot. at 6–8. The Court discussed Section 20703 at length in its Memorandum Opinion, *see Common Cause*, 2026 WL 3033772, at *22–24, and declines to rehash its analysis here. As the Court explained, the plain text of Title III "obligates DOJ to accompany a Title III demand with a single statement articulating [] 'the basis and the purpose' for its request." *Id.* at *23 (citation omitted) (quoting 52 U.S.C. § 20703).

The Defendants also argue that the Civil Rights Division met these requirements. They point to earlier letters to states that, they say, "identified discrepancies and potential anomalies in [states'] responses to" a survey from the Election Assistance Commission. Mot. at 7 (first citing CRT-2700; then citing CRT-2767; and then citing CRT-3160). But none of these letters makes any Title III demand. Instead, each requests that records be produced under a separate provision of the NVRA. *See, e.g.*, CRT-2699 (requesting records "[p]ursuant to Section 20507(i) of the

---

[1] As the Plaintiffs point out, *see* Opp'n at 13, although the Defendants' stay motion argues that "DOJ is substantially likely to prevail on appeal" "[f]or all the reasons articulated in DOJ's dispositive-motion briefing," Mot. at 3, it does not specifically take issue with this Court's conclusion that the NVRA and HAVA do not authorize the Voter List Maintenance Policy, *see Common Cause*, 2026 WL 3033772, at *25. So the Court will not retread that ground.

NVRA"); CRT-2766 (same); CRT-3159 (same). Title III mandates that each "demand shall *contain* a statement of the basis and the purpose therefor[,]" 52 U.S.C. § 20703 (emphasis added)—a burden that cannot be satisfied by extrinsic demands that rely on a different statute. And the Title III "form letters issued under DOJ's policy fail to articulate *any* reason to believe that states had not been complying with their list-maintenance obligations under the NVRA and HAVA." *Common Cause*, 2026 WL 3033772, at *24. Instead, as the Court's Memorandum Opinion explains, the Title III demand letters stated only that "[t]he purpose of the request is to ascertain [the state's] compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* (alteration in original) (collecting record citations). That boilerplate statement "fail[s] to assert *any* factual basis for DOJ's demands[,]" and therefore cannot satisfy Title III. *Id.*

For these and all the reasons discussed in the Court's Memorandum Opinion, Title III "does not authorize DOJ's across-the-board demands for SVRLs from 49 states." *Id.* The Defendants are thus unlikely to succeed on the merits of their claim that the Voter List Maintenance Policy falls within the authority conferred by Title III.

**b. Privacy Act**

Turning to the Privacy Act, the Defendants argue: (1) that 8 U.S.C. § 1373 renders the Privacy Act inapplicable, and (2) that the Plaintiffs cannot invoke the APA to enforce the Privacy Act's protections. Mot. at 8–10. They are wrong on both counts.

The Defendants first invoke 8 U.S.C. § 1373 as authorizing "DOJ's maintenance of citizenship-related information obtained from States and its sharing of that information with DHS and other federal agencies[.]" Mot. at 9. But the Defendants forfeited this argument by failing to

raise it in their summary judgment briefing.[2] *Cf. Ohio v. EPA*, 603 U.S. 279, 298 (2024) ("This Court normally declines to entertain arguments forfeited by the parties." (cleaned up)). The Defendants resist their forfeiture, pointing to two stray references to Section 1373 in their briefing. *See* Mot. at 8 n.1. *First*, the Defendants cite to the following sentence, which argued that the Voter List Maintenance Policy does not constitute final agency action: "DHS is required to respond to requests by a sister state or local agency for the immigration status of any individual." Defs.' Combined Mem. Supp. Mot. Dismiss/Mot. Summ. J. & Opp'n to Pls.' Mot. (Cross-Mot. & Opp'n) at 31, ECF No. 32-1 (citing 8 U.S.C. § 1373(c)). *Second*, they point to their claim that "Congress has statutorily authorized the SAVE system and its use by other agencies." Cross-Mot. & Opp'n at 46 (first citing 42 U.S.C. § 1320b-7 note; and then citing 8 U.S.C. § 1373(c)). But these two statements do not advance the argument that the Defendants now press—*i.e.*, that Section 1373 overrides the Privacy Act. So the Defendants have forfeited that argument, and the Court declines to address it in the context of an expedited stay motion. *See League of Women Voters*, 2026 WL 2643439, at *6 ("The concerns animating forfeiture principles—that late-raised arguments create 'the risk of an improvident or ill-advised opinion' by denying courts and parties normal opportunities for development, have added force" when courts must decide whether to "grant discretionary interim relief pending the appeal at an expedited preliminary stage, without the benefit of meaningful development in full merits briefing." (quoting *McBride v. Merrell Dow & Pharms., Inc.*, 800 F.2d 1208, 1210 (D.C. Cir. 1986))).

[2] Of course, the Defendants remain free to ask this Court to excuse their forfeiture through a motion under Rule 52(b) or Rule 59(e), which would permit the Parties and the Court to give the issue the thorough attention that it deserves. *See United States v. Olano*, 507 U.S. 725, 732 (1993) (discussing Rule 52(b)); *League of Women Voters v. DHS*, No. 26-5243, 2026 WL 2643439, at *6 & n. (D.C. Cir. Sept. 4, 2026) (per curiam) (explaining that Rules 52(b) and 59(e) "are routinely invoked together and provide closely related and overlapping forms of postjudgment relief in precisely the same timeframe").

Next, the Defendants repeat their assertion that the Plaintiffs cannot invoke the APA to enforce the Privacy Act's protections. *See* Mot. at 9–10. The Court has already considered and rejected that argument in detail. *Common Cause*, 2026 WL 3033772, at *27–28.

In conclusion, then, the Defendants have not demonstrated that they are likely to succeed in showing that the Voter List Maintenance Policy is not contrary to the Privacy Act.

**c. PRA**

The Defendants also claim that the Voter List Maintenance Policy complies with the PRA. Here, too, they are wrong.

The Defendants once again argue that the PRA is inapplicable because the Civil Rights Division's Title III demand letters were not themselves "identical" and therefore do not impose "identical reporting . . . requirements[.]" 44 U.S.C. § 3502(3)(A)(i); *see* Mot. at 10–11. But the Defendants concede that "each letter 'ask[ed] for a common piece of data,'" Mot. at 10–11 (alteration in original) (quoting *Common Cause*, 2026 WL 3033772, at *35)—the states' unredacted SVRLs. As explained in the Court's Memorandum Opinion, that brings the Voter List Maintenance Policy within the ambit of the PRA. *See Common Cause*, 2026 WL 3033772, at *34–35.

The Defendants are also wrong to claim that the Court "disregarded" Section 3518(c)(1)(B)'s exception for investigations targeting "specific individuals or entities." Mot. at 11 (quoting 44 U.S.C. § 3518(c)(1)(B)). As the Memorandum Opinion explained and the statutory text makes clear, that PRA exception is inapplicable when, as here, an agency sets out to investigate "a category of individuals or entities." 44 U.S.C. § 3518(c)(2); *see Common Cause*, 2026 WL 3033772, at *35. Because the challenged policy is subject to the PRA and DOJ undertook

no efforts to comply with the PRA's procedural requirements, the Defendants are not likely to succeed in showing that its Voter List Maintenance Policy complies with the PRA.

### 3. Arbitrary and Capricious

Finally, the Defendants quarrel with the Court's conclusion that the Voter List Maintenance Policy was arbitrary and capricious under the APA because it "failed to consider the substantial risk that the Policy would result in the erroneous removal of eligible voters from states' SVRLs." *Common Cause*, 2026 WL 3033772, at *26 (cleaned up). They primarily take issue with the Court "assum[ing] that any risk of [the] supposed policy originates from DOJ, even though DOJ has not required States to remove anyone from voter rolls simply because SAVE cannot confirm that person as a citizen." Mot. at 11. That argument is flawed in at least two ways.

First, the APA's requirement of reasoned decisionmaking demands that agencies consider risks from predictable third-party behavior, so it is no answer that "any risk" does not "originate from DOJ[.]" Mot. at 11; *see Bus. Roundtable v. SEC*, 647 F.3d 1144, 1151 (D.C. Cir. 2011) (finding agency action arbitrary and capricious when the agency failed to consider how third-party "union and state pension funds" might use an agency rule to impose costs). Second, the Defendants conveniently gloss over an important aspect of the policy: "the memoranda of understanding between DOJ and cooperating states [] stipulat[ing] that the state shall 'remov[e] ineligible voters'" "'within [45] days of receiving [ ] notice from the Justice Department' that ineligible voters are present on voter lists." *Common Cause*, 2026 WL 3033772, at *17 (first quoting CRT-5; and then citing CRT-2058). And they seem to forget OLC's recognition that "under the Voter List Maintenance Policy, database results indicating noncitizenship may be used to 'strike the [individual's] name from the voter registration list for future elections, refer the [individual] for

prosecution, or both.'" *Common Cause*, 2026 WL 3033772, at *17 (alteration in original) (quoting CRT-3334).

All told, "the record makes clear that erroneous responses generated because of DOJ's Voter List Maintenance Policy 'sets the process in motion' that ultimately burdens the Plaintiffs' fundamental voting rights." *Common Cause*, 2026 WL 3033772, at *17 (quoting *League of Women Voters*, 2026 WL 2643439, at *5). Under the policy, DOJ has demanded the removal of voters who are deemed ineligible based on the SAVE database which—as the Defendants do not contest at this stage—contains known inaccuracies. As the Court concluded before, the Defendants are unlikely to succeed in showing that DOJ's total inattention to that risk did not amount to a "fail[ure] to consider an important aspect of the problem" that renders DOJ's adoption of the Voter List Maintenance Policy arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

* * *

In sum, as explained at length in the Court's Memorandum Opinion, the Defendants cannot show a substantial likelihood of success on the merits. Accordingly, the first stay factor—one of the two "most critical" factors, *Nken*, 556 U.S. at 434—tips strongly against them.

**B. Irreparable Harm, Public Interest, and Balance of the Equities**

Given their low likelihood of success on the merits, the Defendants "must show a proportionally greater irreparable injury" to justify a stay. *M.M.V.*, 459 F. Supp. 3d at 4 (citing *Cuomo*, 772 F.2d at 974). The Defendants must also "show that issuing a stay will not 'substantially injure the other parties interested in the proceeding'" and "establish that 'the public interest' favors a stay" *Miot v. Trump*, No. 26-5050, 2026 WL 659420, at *1 (D.C. Cir. Mar. 6,

2026) (per curiam) (quoting *Nken*, 556 U.S. at 434). Considered together, these remaining factors do not advance the Defendants' cause.

The Defendants represent that "[t]he Court's decision has derailed ongoing efforts by DOJ to enforce election laws[,]" inflicting "significant irreparable harm[.]" Mot. at 12. And the Acting Chief of the Civil Rights Division's Voting Section attests that the Division can no longer perform intended analyses of the SVRL data collected from complying states—including comparisons intended to determine duplicate voter registrations—or conduct additional investigations based on SVRL data. Decl. of Eric Neff ¶¶ 8–9 (Neff Decl.), ECF No. 57-2.[3] But as the Court's Memorandum Opinion makes clear, DOJ lacked authority to categorically demand SVRLs in the first place. A stay applicant cannot show irreparable harm from an inability to engage in unlawful activity. *Cf. Danco Lab'ys, LLC v. Louisiana*, 146 S. Ct. 1192, 1196 (2026) (Alito, J., dissenting). Moreover, the Court's Order does not prevent DOJ from "taking *lawful* steps to support states' efforts to maintain accurate voter rolls," *Common Cause*, 2026 WL 3033772, at *2, as it did for countless election cycles before the adoption of this unprecedented policy. In sum, DOJ's asserted harms do not meet its "proportionally greater" burden to show irreparable harm. *M.M.V.*, 459 F. Supp. 3d at 4 (citing *Cuomo*, 772 F.2d at 974).

The final two factors—the public interest and the balance of the equities—also weigh against a stay. Considering the record as a whole, the Court cannot conclude that on the eve of an

---

[3] The Defendants also assert irreparable harm arising from *their* decision to seek an extension in an appeal arising from DOJ's Title III demand to New York "to have time to assess the effect" of this Court's Order. Neff Decl. ¶ 10. But "a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted." 11A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed., Apr. 2026 Update) (first citing *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024); and then citing *Di Biase v. SPX Corp.*, 872 F.3d 224, 235 (4th Cir. 2017)); *see also Cuomo*, 772 F.2d at 977 ("[S]elf-imposed costs are not properly the subject of inquiry on a motion for stay.").

election, the public interest is served by permitting DOJ to reinstitute a policy "that has removed United States citizens from the voter rolls in their home states and risks disenfranchising many more," particularly one that "flies in the face of duly enacted laws designed to protect Americans." *Common Cause*, 2026 WL 3033772, at *2. "There is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Id.* (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). As the Court has found, DOJ's Voter List Maintenance Policy exceeds its statutory authority, contravenes numerous federal laws, was instituted in a manner that violates the APA, and imposes a host of injuries on the Plaintiffs and countless others. And of course, the stakes here are at their zenith, given that this case implicates the fundamental right to vote. All in all, the Court will not use its equitable discretion to reinstate an unlawful policy that threatens to disenfranchise American citizens on the eve of an election.

* * *

Considering the stay factors as a whole, the Defendants have not shouldered their heavy "burden of showing that the circumstances justify" a stay. *Nken*, 556 U.S. at 434. So the Court must deny the Defendants the "extraordinary remedy[]" that they seek. *M.M.V.*, 459 F. Supp. 3d at 4 (citing *Cuomo*, 772 F.2d at 978).

**CONCLUSION**

For the foregoing reasons, the Court denies the Defendants' Motion for Stay Pending Appeal, ECF No 57.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: November 2, 2026